UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| **Federal Trade Commission**,<br><br>    Plaintiff,<br><br>    v.<br><br>**RagingBull.com, LLC**, et al.,<br><br>    Defendants. | Case No. 1:20-cv-3538 |

**RULE 65 CERTIFICATION AND DECLARATION OF FTC COUNSEL IN SUPPORT OF FTC'S EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER**

I, Sung W. Kim, certify and declare as follows:

1.  I am an attorney for Plaintiff, the Federal Trade Commission ("FTC"), an independent agency of the United States government. I am a member of good standing of the bars of District of Columbia and State of New York. My business address is Federal Trade Commission, 600 Pennsylvania Avenue, N.W., Mail Stop CC-8528, Washington, D.C. 20580.

2.  I submit this declaration pursuant to Rule 65 of the Federal Rules of Civil Procedure in support of Plaintiff's emergency motion for a temporary restraining order with an asset freeze, appointment of a receiver, other equitable relief, and an order to show cause why a preliminary injunction should not issue ("TRO Motion"), and in support of Plaintiff's request for an emergency hearing on the TRO Motion.

3.  On December 7, 2020, counsel for Plaintiff sent copies of the Civil Cover Sheet, the Complaint, the TRO Motion, the proposed TRO, and the supporting memorandum and evidence to Defendants and their representatives via email at the following: Jeffrey Bishop (to jeff@ragingbull.com and to his personal email), Jason Bond (to jason@ragingbull.com and to his personal emails), Kyle Dennis (to kyle@ragingbull.com and to his personal email), Allan

-1-

Marshall, as representative of MFA Holdings Corp. (to his personal email account), and Susan Trahan, as general counsel of RagingBull.com LLC (to susan@ragingbull.com). In addition, Plaintiff is causing to be served by a process server copies of the aforementioned pleadings, TRO papers and evidence, as well as summonses, to each of the Defendants, in the normal course.

4. While Plaintiff has taken steps to notify Defendants of the filing of this action and the FTC's emergency motion for a TRO, the facts in this case support entry of the TRO *ex parte* if necessary.

5. As demonstrated in the TRO Motion and supporting declarations and exhibits, Defendants have engaged in a concerted course of unlawful conduct over many years, inflicting more than $137 million in consumer harm. Defendants have ample opportunity and motivation to conceal and dissipate assets and destroy important evidence given that (1) Defendants operate a business enterprise relies on misrepresentations and is pervaded by fraud, (2) Plaintiff is seeking over $137 million in monetary judgment against Defendants, (3) Defendants' assets can be easily transferred, hidden, encumbered, or dissipated to avoid discovery, and (4) electronic data and computer equipment used to run Defendants' business can be easily wiped and destroyed. Moreover, Defendants have persisted in their deceptive scheme despite receiving hundreds of consumer complaints and despite two different payment processors terminating their merchant accounts in the past two years, further demonstrating their willingness to run afoul of the law.

6. It has been the FTC's experience that defendants who have engaged in deceptive schemes and receive advance notice of the filing of an FTC action often seek to undermine the FTC's efforts by dissipating or concealing assets and destroying evidence. As illustrated by the

following examples, the immediate entry of a TRO has in some cases successfully thwarted defendants' attempts to conceal or dissipate assets:

      a.    In *FTC v. AWS, LLC, et al.*, No. 18-cv-00442 (D. Nev. 2018), the FTC sought and obtained a TRO with an asset freeze.  After being served with the TRO, one of the individual defendants attempted to dissipate more than $400,000 in violation of the asset freeze by visiting two local banks, purchasing certified checks and sending wire transfers to a business associate.  A second individual defendant immediately withdrew $2,400 from his credit union upon learning of the TRO.  The individual defendants' financial institutions alerted the FTC shortly thereafter in compliance with TRO asset freeze provisions and the transactions were successfully reversed.

      b.    In *FTC v. Goldman Schwartz Inc.,* No. 13-cv-00106 (S.D. Tex. 2013), the FTC obtained a TRO with an asset freeze against numerous defendants.  Within an hour of being served with the TRO, but before the asset freeze had been fully implemented, the owner withdrew approximately $268,000 from a corporate account.  Shortly thereafter, the owner sold approximately $160,000 in securities held in a personal trading account.  The next day, the owner's wife withdrew another $18,500 from a non-defendant corporation's account that was subject to the asset freeze.  Because the court had issued its asset freeze in advance of these dissipation efforts, the FTC and a court-appointed monitor were able to recover the money.

      c.    In *FTC v. Lakhany*, Case No. 12-337-CJC (C.D. Cal. 2012), the day after the court granted an *ex parte* TRO, but before the FTC could effect service, the defendant's employee notified the defendant of the FTC's lawsuit and receivership.  The individual defendant proceeded to withdraw $204,000 from corporate bank accounts in violation of the

asset freeze. The defendant later stipulated to contempt, and the majority of the funds were recovered.

   d. In *FTC v. Prime Legal Plans*, et al, Case No. 0:12-cv-61872-RNS (S.D. Fla. 2012), upon hearing that the TRO had been granted, the Defendants went straight to the bank and transferred $1.7 million in assets to a girlfriend and a mother.  The bank was able to claw most of the money back, but the Commission, and thus consumers, ended up losing about $200,000.

   e. In *FTC v. Latrese & Kevin Enterprises, Inc., et al.*, Case No. 3:08-01001-MMH- JRK (M.D. Fla. 2008), the FTC sought and obtained a TRO with an asset freeze in conjunction with a motion to show cause why the defendants should not be held in contempt. After being personally served with the TRO, one defendant withdrew $17,800 from a frozen bank account the same day.  To avoid being held in contempt of the TRO, the defendant returned all but a few thousand dollars.

   f. In *FTC v. American Entertainment Distribs., Inc.*, Case No. 1:04-cv-22431-JEM (S.D. Fla. 2004), the Court entered an order that froze assets of ten corporate and individual defendants.  Within hours of receiving notice of the asset freeze, one of the individual defendants withdrew $39,500 from his bank.  Because the asset freeze had been in place, the FTC was able to compel the individual defendant to return the money.

   g. In *FTC v. 4049705 Canada Inc.*, Case No. 1:04-cv-04694 (N.D. Ill. 2004), the FTC filed a complaint and motion for a TRO and asset freeze, with notice to defendants. Defendants made several substantial money transfers after receiving notice of the FTC's action but before the asset freeze was imposed.

    h.  In *FTC v. Check Investors, Inc.*, Case 2:03-cv-02115-KSH-PS (D.N.J. 2003), the FTC filed for an *ex parte* temporary restraining order with asset freeze.  The Court required that the FTC give the defendants 24 hours' notice before holding a hearing on the FTC's motion. At the conclusion of the hearing, the Court granted the FTC's motion and ordered the defendants' assets frozen.  Documents obtained during discovery showed that the defendants had previously purchased approximately $650,000 in gold coins, bullion, and certificates, of which only approximately $192,000 was found.  Records showed that on May 19, 2013, the same day that the Court entered the TRO, the individual defendant's wife visited their safe deposit box.  The remaining gold was never recovered.

    i.  In *FTC v. Access Res. Servs., Inc.,* Case No. 0:02-cv-60226-ASG (S.D. Fla. 2002), a defendant who learned about the FTC's action attempted to dissipate $579,600 by paying off the mortgage on his residence, which was protected by Florida's homestead protection laws.

    j.  In *FTC v. The Tungsten Group,* No. 2:01-CV-00773-RAJ (E.D. Va. 2001), the FTC obtained a TRO with an asset freeze.  One defendant wired money out of a frozen account before the freeze could be imposed by the bank, but later returned it on advice of counsel.  Another defendant tried to withdraw cash from a frozen account immediately after being served with the TRO, but he was blocked by the asset freeze.

    k.  In *FTC v. SkyBiz.com, Inc.*, Case No. 4:01-cv-00396-CVE-FHM (N.D. Okla. 2001), within days of the service of the TRO with an asset freeze provision, one of the primary defendants convinced an overseas trustee to withdraw $1 million from the offshore account of a foreign affiliate.  Because a domestic correspondent bank had been served with the

TRO, it refused to transfer the funds.  The money in the offshore account was preserved, and ultimately used to provide $20 million for consumer redress.

l. In *FTC v. National Consumer Council, et al.*, No. SACV04-0474 CJC (C.D. Cal. 2004), the FTC obtained a TRO with asset freeze and prohibition against destruction of business records against all of the defendants, and the appointment of a temporary receiver over all but one of the corporate defendants.  One individual defendant deleted electronic files on the defendants' shared network server by accessing his account through a computer under the control of the corporate defendant not under the receivership.  The files were never recovered.

7. Consequently, there is good cause to believe that, absent an expedited hearing and entry of the requested noticed TRO, immediate and irreparable damage will result to consumers and the Court's ability to craft complete and effective final relief from:  (1) the concealment, transfer, or destruction of Defendants' records; and (2) the concealment or transfer of Defendants' assets.

I declare under penalty of perjury that the foregoing statement is true and correct.

Dated: December 7, 2020.

_____
Sung W. Kim

Attorney for Plaintiff
FEDERAL TRADE COMMISSION