# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| **FEDERAL TRADE COMMISSION,** | * | |
| *Plaintiff*, | * | |
| v. | * | Case No. 1:20-cv-03538-GLR |
| **RAGINGBULL.COM, LLC,** **f/k/a LIGHTHOUSE MEDIA LLC,** *et al.*, | * | |
| | * | |
| *Defendants*. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## DECLARATION OF ALLAN MARSHALL

I, Allan Marshall, hereby declare as follows:

1. I am over 18 years of age and have personal knowledge of the matters stated herein. If called upon to do so, I would and could testify competently to these matters.

2. I am currently the sole shareholder of MFA Holdings Corp. ("MFA").

3. MFA has two employees: me and my wife Christine Ann Otten.

4. In or around 2014, I was approached by Jeffrey Bishop concerning a potential investment in a business, Lighthouse Media, LLC, that was owned at the time by Jeffrey Bishop and Jason Bond. Before that time, I had known Jeffrey Bishop for a number of years as a professional acquaintance. To my knowledge, Lighthouse Media had existed and conducted business for approximately two years before I was approached by Mr. Bishop and Mr. Bond.

5. During my conversation with Mr. Bishop, we discussed selling to MFA a portion of Lighthouse Media, LLC.

6. In or around 2014, MFA paid Mr. Bishop and Mr. Bond, or their companies, approximately $1,400,000 in exchange for a combined total of 25% ownership interest in

DocuSign Envelope ID: E71A3217-9661-4CBF-91B1-948E30FE11BD

Lighthouse Media, LLC, now known as RagingBull.Com, LLC ("Raging Bull"). Subsequently, MFA sold 15% of MFA's overall interest in Raging Bull, leaving MFA with a 10% ownership interest in Raging Bull. MFA currently holds 10% ownership in Raging Bull.

7. MFA operates its own business, independent of Raging Bull, that invests in a portfolio of various companies, not only Raging Bull.

8. I am not, and have never been, a board member, employee, officer, or director of Raging Bull, Sherwood Ventures, Jason Bond, LLC, Winston Corp., or Winston Research, Inc.

9. No MFA employee, officer, or director is, or has ever been, a board member, employee, officer, or director of Raging Bull, Sherwood Ventures, Jason Bond, LLC, Winston Corp., or Winston Research, Inc.

10. No employee, officer, or director of Raging Bull, Sherwood Ventures, Jason Bond, LLC, Winston Corp., or Winston Research, Inc. is, or has ever been, a board member, employee, officer, or director of MFA. Bishop, Bond, and Kyle Dennis are not, and have never been, a board member, employee, officer, or director of MFA.

11. I have no, and have never had any, control in the day-to-day operations of Raging Bull, Sherwood Ventures, Jason Bond, LLC, Winston Corp., or Winston Research, Inc.

12. No MFA employee, officer, or director has, or has ever had, any control in the day-to-day operations of Raging Bull, Sherwood Ventures, Jason Bond, LLC, Winston Corp., or Winston Research, Inc.

13. Bishop, Bond, and Dennis do not formulate, direct, control, or have the authority to control MFA. Bishop, Bond, and Dennis did not have, and have never had, any role in the operations of MFA, or the authority to control, formulate, or direct MFA.

14. I do not have an office at any location of Raging Bull, Sherwood Ventures, Jason Bond, LLC, Winston Corp., or Winston Research, Inc. I have never visited the offices of Raging Bull, Sherwood Ventures, Jason Bond, LLC, Winston Corp., or Winston Research, Inc.

15. No employee, officer, or director of Raging Bull, Sherwood Ventures, Jason Bond, LLC, Winston Corp., or Winston Research, Inc. has ever visited MFA Holdings' office.

16. No MFA employee, officer, or director has an office at any location of Raging Bull, Sherwood Ventures, Jason Bond, LLC, Winston Corp., or Winston Research, Inc.

17. I do not have, and I never had, a company phone or credit card issued by Raging Bull, Sherwood Ventures, Jason Bond, LLC, Winston Corp., or Winston Research, Inc. I was provided a Raging Bull e-mail account, but I rarely use the account.

18. No employee, officer, or director of Raging Bull, Sherwood Ventures, Jason Bond, LLC, Winston Corp., or Winston Research, Inc. has ever had a company phone, credit card, or email address issued by MFA.

19. Outside of the initial investment and distributions made in accordance with MFA's arms-length agreement with Lighthouse Media – now Raging Bull – MFA does not receive funds from Raging Bull, Sherwood Ventures, Jason Bond, LLC, Winston Corp., Winston Research, Inc., Bishop, Bond, or Dennis.

20. MFA has never deposited any check or other funds made out to Raging Bull, Sherwood Ventures, Jason Bond, LLC, Winston Corp., or Winston Research, Inc., Bishop, Bond, or Dennis. MFA has never accessed, deposited, or withdrawn funds from any account held by Raging Bull, Sherwood Ventures, Jason Bond, LLC, Winston Corp., or Winston Research, Inc., Bishop, Bond, or Dennis.

21. Raging Bull, Sherwood Ventures, Jason Bond, LLC, Winston Corp., and Winston Research, Inc., are not signatories on any bank accounts used for MFA; and they are not authorized to access, deposit, or withdraw any funds from any MFA bank accounts. Bishop, Bond, and Dennis are not signatories on any bank accounts used for MFA, and they are not authorized to access, deposit, or withdraw any funds from any MFA bank accounts. To the best of my knowledge, no representative of Raging Bull, Sherwood Ventures, Jason Bond, LLC, Winston Corp., or Winston Research, Inc., Bishop, Bond, or Dennis has ever deposited any check or other funds made out to MFA. To the best of my knowledge, no representative of Raging Bull, Sherwood Ventures, Jason Bond, LLC, Winston Corp., or Winston Research, Inc., Bishop, Bond, or Dennis has ever withdrawn funds made out to MFA.

22. I have no influence or control over the advertising or marketing for Raging Bull, Sherwood Ventures, Jason Bond, LLC, Winston Corp., or Winston Research, Inc. I have never approved, created or modified advertisements, or marketing or promotional materials; or customer service, return, or billing practices of Raging Bull, Sherwood Ventures, Jason Bond, LLC, Winston Corp., or Winston Research, Inc. No MFA employee, officer, or director has ever approved, created or modified advertisements or marketing, or customer service, return, or billing practices of Raging Bull, Sherwood Ventures, Jason Bond, LLC, Winston Corp., or Winston Research, Inc.

23. MFA is not involved with the operations of Raging Bull, Sherwood Ventures, Jason Bond, LLC, Winston Corp., or Winston Research, Inc.

24. MFA does not share any employees, officers, or office space with Raging Bull, Sherwood Ventures, Jason Bond, LLC, Winston Corp., or Winston Research, Inc.

DocuSign Envelope ID: E71A3217-9661-4CBF-91B1-948E30FE11BD

25. MFA receives a report approximately once a month concerning MFA's return on investment in Raging Bull and receives occasional company summaries. MFA has no input on the contents of any of the reports or summaries it has received and receives.

26. I reviewed the complaint, motion for temporary restraining order, and certain exhibits to the motion for temporary restraining order in the case *Federal Trade Commission v. RagingBull.com, LLC et al.,* Case No. 1:20-cv-3538 (D. Md.), Docket Numbers 1, 2-1. It is my understanding that the Federal Trade Commission alleges that MFA provided $135,000 to Raging Bull to finance its operations in 2019-2020. These funds were not provided for the operation of Raging Bull, Sherwood Ventures, Jason Bond, LLC, Winston Corp., Winston Research, Inc., or any other entity. Rather, in 2019, Raging Bull inadvertently paid the entire cost of a membership fee for FlexJet (a private jet service) instead of splitting the cost of the membership fees with MFA. After learning that Raging Bull had paid for MFA's portion of the membership fee, I transferred MFA's portion of the membership fee, $135,000, to Raging Bull to reimburse it for the amount of MFA's membership fee. I instructed Raging Bull to refrain from paying for my personal use of FlexJet because I used that service for non-Raging Bull purposes.

27. It is my understanding that the FTC alleges that MFA signed bank documents in 2019 that authorized the opening of a bank account under Raging Bull's name that subsequently was used to collect consumer payments. However, neither MFA nor any of its employees were authorized to, or did in practice, deposit funds to or withdraw funds from the account. MFA did not maintain any bank accounts for Raging Bull. MFA also did not deposit any payments made to Raging Bull into an MFA account, and Raging Bull did not deposit any payments made to MFA into any Raging Bull account.

DocuSign Envelope ID: E71A3217-9661-4CBF-91B1-948E30FE11BD

28. I reviewed the document provided in PX Exhibit 4, pages 220-223, concerning a July 28, 2017, post on the Jason Bond Daily Watch List (ECF No. 9-4 at 68-71). The first time I saw that webpage was when I reviewed the FTC's exhibit on December 12, 2020. In the post, there is a reference to a new business coaching program featuring me, Mr. Bishop, and Mr. Bond. I did not start or feature in any business coaching program discussed in the post. I also have not assisted Kyle Dennis in his investments. I vaguely recall meeting Mr. Dennis once, but have no specific recollection of meeting or speaking with him.

29. I reviewed the document provided in PX Exhibit 23, pages 1587-1597 (ECF No. 12-6 at 7-11), which appears to be a marketing email about a service called Angel Investing Insider. The first time I saw that email was when I reviewed the FTC's exhibit on December 12, 2020. I do not know what Angel Investing Insider is, nor did I authorize the use of my name in its marketing email.

30. I did not authorize the use of my name in any of the advertising or other materials set forth in the preceding two paragraphs.

31. MFA invests in several companies other than Raging Bull, including an informational technology infrastructure company, an advertising technology company, a cannabis advertising company, and a company that manufactures consumer health products. MFA does not itself engage in any consumer-facing activity. Rather, companies in which it invests are consumer-facing.

32. The asset freeze is preventing MFA from investing and making capital infusions into the companies in which it has ownership interests. Thus, the asset freeze is preventing the operations of not only MFA but of the businesses in which it invests that have nothing to do with

Raging Bull. This, in turn, prevents the companies MFA owns from receiving capital that they can use to continue and grow their operations at a time when job growth could not be more critical.

33. If the asset freeze continues then the harm to MFA and the businesses, it funds will only be exacerbated. The companies will not have the resources and funding necessary to purchase required assets. For example, MFA previously agreed to provide $250,000 in funding to a company in which it invested to purchase manufacturing equipment. If MFA is unable to access its assets, it will be unable to provide this funding and the business will be unable to acquire the needed manufacturing equipment.

34. The preliminary injunction would also prevent MFA from selling any stocks, which would in turn prevent MFA from continuing its ordinary business and investment activities. Thus, the preliminary injunction would effectively prohibit MFA from engaging in its ordinary business activities, which will have a direct negative impact on the companies in which MFA has invested.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 12, 2020
Las Vegas, Nevada

*DocuSigned by:*
*Allan Marshall*
73C43F288D2A499...

Allan Marshall