**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cv-03538 - GLR |
| | ) | |
| RAGINGBULL.COM, LLC f/k/a | ) | |
| LIGHTHOUSE MEDIA LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STAY ENFORCEMENT OR
MODIFY TEMPORARY RESTRAINING ORDER**

      Defendants RagingBull.com, LLC ("Raging Bull"), Jeffrey M. Bishop, Jason Bond, Sherwood Ventures, LLC, and Jason Bond, LLC (collectively, "Defendants"), by and through undersigned counsel, submit this reply in further support of its Motion to Stay Enforcement or Modify Temporary Restraining Order ("Motion").

**A.**     **<u>The FTC's Reliance on David Jaffe and Emmet Moore</u>.**

      In their Response to Defendant's Motion, the FTC has attacked the more than 200 positive subscriber reviews that Raging Bull pulled together in 48 hours and submitted to the Court. Among the FTC's attacks is their claim about the following "fact": "Finally, the claim that these statements are 'unsolicited' is belied by ***<u>the fact</u>*** that Defendants Bond and Bishop have ***<u>in fact</u>*** hired a third-party company to actively garner positive reviews for Raging Bull." Resp. at 10-11 (emphasis added).

      This is not a "fact." But what is more important about the FTC's statement is ***who*** the FTC cites as the source of this "fact." The FTC cites footnote 102 of its Motion for TRO, which states: "Defendants were also accused of paying for fake testimonials in a defamation lawsuit brought

originally by Raging Bull (*see infra* note 172)." In footnote 172, the FTC cites Paragraph 104 and Attachment SSSS of exhibit PX27, which is the FTC investigator's declaration.

Paragraph 104 states: "On January 30, 2019, RagingBull.com LLC filed a defamation lawsuit in the Miami-Dade County Circuit Court against David Jaffe d/b/a Best Stock Strategy. Filings from this case are attached hereto as **Attachment SSSS**." *See* PX27, 1838. This lawsuit (the "Jaffe Lawsuit") is captioned *RagingBull.com, LLC et al. v. David Jaffe*, No. 19-003110 (Miami-Dade Co., Florida).

Attachment SSSS includes the complaint filed by Raging Bull against David Jaffe in the Jaffe Lawsuit. Mr. Jaffe is a ***direct competitor*** of Raging Bull who has attacked Raging Bull in videos and writing on the internet. Because Mr. Jaffe's attacks were false, Raging Bull filed a defamation lawsuit against Mr. Jaffe in early 2019. This is the complaint that the FTC investigator cites in Paragraph 104 of his declaration.

In Paragraph 34 of Raging Bull's defamation complaint, Raging Bull alleges the following: "In a video posted on YouTube on October 21, 2018, Jaffe states that Jason Bond pays to get fake customer testimonials…." *See* PX27, 2994. The statements in the video are false. Raging Bull obtained a permanent injunction against Mr. Jaffe. See Consent Permanent Injunction and Final Order, Jaffe Lawsuit (filed 8/30/19). Two months ago, Mr. Jaffe was sued again in another defamation lawsuit in very similar circumstance. *See Option Alpha, LLC v. David Jaffe*, No. 20-024615 (Miami-Dade Co., Florida) (complaint filed 11/10/20).

But it is Mr. Jaffe's attack on Raging Bull in this YouTube video which the FTC tells the Court is a "fact." This is untenable.

There is more to the story. In the Jaffe Lawsuit, Mr. Jaffe's defense was supported by Emmett Moore. Mr. Moore runs a website called TradingSchools.org, which Mr. Moore purports

is a "review website" that reviews investment products. *See* https://www.tradingschools.org/about-trading-schools-org/. Mr. Moore was in prison from 2003-2006 for securities fraud. *See* https://www.tradingschools.org/warning/.

Mr. Moore has published extremely negative "reviews" of Raging Bull in the past. Recently, he has published a very favorable review of his friend, David Jaffe. Mr. Moore submitted a declaration in support of Mr. Jaffe in the Jaffe Lawsuit, which was attached to the FTC investigator's declaration. *See* PX27, 3005.

A few days ago, Individual Defendants Bishop and Bond received the following email from Mr. Moore, copying his friend Mr. Jaffe:

From: **Emmett Moore** <emmett@tradingschools.org>
Date: Fri, Dec 11, 2020 at 6:40 PM
Subject: Who did this to you?
To: Jeff Bishop <jeff@ragingbull.com>, Jason Bond <jason@ragingbull.com>, David Jaffee <davejaffee@gmail.com>

Hi Jeff and Jason,

Hope both of you are having a fine day.

I want you to know who this did this to. It's important you know it was me.

I told you Jeff, when you sued David Jaffee, that **you were going to pay**. That you went too far. And now you are paying the price.

Very shortly, after the hearing on the TRO, I will publish everything. The entire story of how this whole thing went down. You will like it. It will be a great story. You will see all the threads come together and all the missing pieces that you cannot understand will suddenly be revealed.

I can't wait to testify. See you in court.

**Revenge is a dish best served cold. Have a nice day.**

Emmett Moore
TradingSchools.Org

--
Sent from Mobile 817.707.6901

As this email states, the FTC's investigation and Complaint against Defendants is rooted in revenge, wrought by a securities fraudster (Mr. Moore) and direct competitor (Mr. Jaffe) who defamed the company. It appears, based on Mr. Moore's email, the FTC intends to call Mr. Moore as a witness. Neither Mr. Moore nor Mr. Jaffe are credible, and the FTC has no likelihood of success on the merits of a case which relies on Mr. Moore and Mr. Jaffe.

**B.** **The TRO Should be Stayed Pending the Outcome of *AMG Capital* Before the U.S. Supreme Court.**

As described in Defendants' Motion to Stay Enforcement or Modify Temporary Restraining Order ("Defendants' Motion"), the TRO was entered under the significant cloud of the FTC's legal authority under FTC Act Section 13(b), 15 U.S.C. § 53(b), because it is the text of that section upon which Plaintiff primarily rests its claims for the requested relief. This very section, and the issue of whether the FTC even has authority under Section 13(b) to seek the relief it requests as the predicate for the TRO's asset freeze and appointment of a Receiver, is the subject of a U.S. Supreme Court case for which oral arguments will be heard on January 13, 2021.[1] Indeed, the very question presented to the Supreme Court in that case is "Whether §13(b) of the Act, by authorizing 'injunction[s],' also authorizes the Commission to demand monetary relief such as restitution - and if so, the scope of the limits or requirements for such relief."[2]

To distract from the fact that this Court should stay the asset preservation and related non-conduct portions of the TRO because the Supreme Court may soon rule in *AMG Capital* that the FTC is precluded from seeking nearly all of its requested equitable relief, the FTC boldly (and erroneously) claims that the requested stay should be denied because "the FTC would still be able

---

[1] *See AMG Capital Management, LLC v. Federal Trade Commission*, No. 19-508 (cert. granted July 9, 2020) ("*AMG*").

[2] *See* AMG Capital Management, LLC v. Federal Trade Commission Questions Presented, *available at* https://www.supremecourt.gov/qp/19-00508qp.pdf (last visited Dec. 12, 2020).

to seek redress for victims of the Defendants' fraud under § 19." (Opp. at 5.) The FTC knowingly overstates its ability to seek restitution in this case under § 19 and the FTC's attempts to falsely equate its § 5 claims brought under § 13b with the ROSCA claim brought under § 19 should be rejected.

Section 19 of the FTCA authorizes the FTC to seek equitable relief in federal court in only two circumstances: (1) when a party violates a rule promulgated under the FTCA; and (2) when a party engages in any unfair or deceptive act or practice with respect to which the FTC has issued a final cease and desist order applicable to that party. *See* 15 U.S.C. § 57b(a)(1), (2).

The only proper basis the FTC would have here for getting in the courthouse door under § 19 in this case is through an allegation of a violation of ROSCA pursuant to § 19(a)(1). *See* 15 U.S.C. § 8404(a) (stating that a violation of ROSCA "shall be treated as a violation of a rule under" the FTCA). With respect to the FTC's § 5 claims, the FTC must first obtain a cease and desist order through an administrative proceeding before it can bring those claims in federal court under § 19. *See* 15 U.S.C. § 57b(a)(2); *Fed. Trade Comm'n v. AbbVie Inc*, 976 F.3d 327, 376 (3d Cir. 2020) ("Section 19 likewise requires the FTC to … initiate an administrative proceeding to obtain a cease-and-desist order."); *Fed. Trade Comm'n v. Credit Bureau Ctr., LLC*, 937 F.3d 764, 771 (7th Cir. 2019) (explaining that the FTC must obtain a cease and desist order to sue the violator in federal court under section 19(a)(2)). Of course, there has been no administrative proceeding against these Defendants and the FTC has not issued any cease and desist orders with respect to its claims which would allow it to sue in this Court under § 19(a)(2). As such, the FTC cannot seek restitution (much less sue in federal court) under § 19 for **any** of its claims other than its alleged violation of ROSCA – a small portion of its overall case as filed and its claimed basis for a TRO.

It is disingenuous for the FTC to assert that §§ 13(b) and 19 are co-extensive, *i.e.*, that the FTC can obtain its drastically overbroad equitable relief covering all of its claims under either section 13(b) or section 19. The FTC knows this and had similar precise arguments rejected as a basis for opposing a stay in *Federal Trade Commission v. Match Grp. Inc.*, No. 3:19-cv-02281-K (N.D. Tex. 2020). In *Match Group* (where, as here, the FTC alleged section 5 deceptive act or practice violations in addition to ROSCA/TSR violations), the FTC argued that the trial court should not stay the action pending the Supreme Court's decision in *AMG Capital* because "the FTC's Section 19 allegations including the equitable monetary relief and civil penalties we seek – are entirely unaffected by the scope of Section 13(b)." *Id.*, FTC's Opp. to Mot. to Stay at 8, Dkt. No. 52 (N.D. Tex. Sept. 15, 2020). The court specifically rejected that argument and ordered that the case be stayed notwithstanding that some of the FTC's claims (the § 19 allegations) would not be affected by the Supreme Court's forthcoming decision in *AMG Capital*. *Id.*, Dkt. No. 54, Order Granting Motion to Stay (N.D. Tex. Oct. 9, 2020). The same result should obtain here. The ROSCA claim brought under § 19(a)(1) does not allow the FTC to improperly bootstrap the vast majority – specifically the non-ROSCA allegations – of its case for violations of § 5 and obtain relief for those alleged violations under § 19(b).[3] As the Supreme Court is currently reviewing whether the FTC's ability to get restitution relief under § 13(b), this Court should stay the asset preservation and related non-conduct portions of the TRO.

Defendants reiterate their respectful request of the Court that, in the interests of justice, while the TRO's "substantive" provisions be maintained during the pendency of these proceedings, the TRO's "process" provisions be stayed or modified to allow Raging Bull to continue to operate

---

[3] In any event, the FTC did not even seek relief in the TRO under section 19, only section 13(b). *See* TRO at 4 ("This Court has authority to issue this Order pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b); Federal Rule of Civil Procedure 65; and the All Writs Act, 28 U.S.C. § 1651.").

pending a decision on the *AMG* case, as other courts have done.[4] *Preston v. United States*, No. CIV.A. ELH-14-01920, 2015 WL 221633, at *9 (D. Md. Jan. 15, 2015) (staying action pending Supreme Court's resolution of case with similar issue) (citing *Amdur v. Lizars,* 372 F.2d 103, 106 (4th Cir. 1967) (holding that a District Court has "discretion to stay proceedings on its docket pending the outcome of a similar suit.")). To not do so, and to allow unimpeded the full asset freeze that Raging Bull became subject to the day after being served the Complaint with no prior knowledge, would lead to the inequitable result of effectively ending a company's existence solely by taking the FTC at its word.

1. **Defendants Meet the Standards for Showing the Necessity of a Stay Referenced in the FTC's Response**

In its Opposition, the FTC quotes a 1936 Supreme Court case to articulate the view that "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis v. North Am. Waters & Elec. Co.*, 299 U.S. 248, 255 (1936). Aside from leaving open the possibility of a stay for cases such as this one, the same case also notes that "[…] the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis,* 299 U.S. at 247 (citation omitted).

---

[4] At least two district courts have stayed cases in which the FTC is a plaintiff and seeks monetary relief pending the decision in *FTC v. Credit Bureau Center, LLC*, No. 19-825 (cert. granted July 9, 2020), the case with which *AMG* was previously consolidated before the U.S. Supreme Court. See Fed. Trade Comm'n v. Lending Club Corp., No. 18-CV-02454-JSC, 2020 WL 4898136, at *4 (N.D. Cal. Aug. 20, 2020) (staying all proceedings); Federal Trade Commission v. Match Grp. Inc., No. 3:19-cv-02281-K (N.D. Tex. Oct. 9, 2020) (Order, Dkt. No. 54) (staying action pending resolution of FTC v. Credit Bureau Center, LLC).

Indeed, such interests and *even balance*, in this case, favor the Defendants, who became subject to a business-ending TRO without the knowledge or opportunity to defend or review or potentially correct any of the alleged harms to consumers that the FTC could have helped correct by contacting the Defendants. Instead, the FTC preferred a surprise approach after at least six months of investigation, which by its own logic would have contributed to alleged consumer harm, and now seeks to benefit from its lack of working with the Defendants to justify an immediate end to the business's practical operations—to the chagrin of tens of thousands of customers who appreciate and rely on Raging Bull's educational services, and to the detriment of numerous employees during a global pandemic and holiday season—all without having proved its case in court. Simply put, this is the type circumstance contemplated by the *Landis* court that calls for the exercise of judgment in maintaining an even balance.

The FTC states that "[t]he burden of showing the necessity for a stay rests with the moving party and is heightened when a stay will 'work damage' to another party." *Int'l Refugee Assistance Project v. Trump*, 323 F. Supp. 3d 726, 731 (D. Md. 2018) (quoting *Landis*, 299 U.S. at 255)." Plaintiff's Opp. at 4. It further states that "[c]ourts considering motions to stay a matter based on a potential decision by the Supreme Court typically rely on factors articulated in *Landis*, namely "(1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party." *United States ex rel. Tusco, Inc. v. Clark Constr. Grp., LLC*, 235 F. Supp. 3d 745, 755 (D. Md. 2016) (quotation omitted)." In this case, the interests in judicial economy would be served by not having the Court prematurely expend time and resources on a case predicated on authority currently being evaluated by the U.S. Supreme Court; the hardship and inequity suffered by the Defendants by the asset freeze—a cessation of all business operations and revenue-generating activities, during the year-end holiday

period no less—is undeniably existential if not stayed; and the FTC and consumers would not be prejudiced in this matter as, even putting aside the Defendants' vehement argument that the FTC's underlying allegations of violations are not accurate, even if they were, the substantive stipulations of Defendants' Motion obviate the need for further relief and prevent prejudice to the non-moving party. Accordingly, the criteria set forth in *Landis* are facially met.

###   2.   The Court is Within its Power to Stay or Modify the TRO, Particularly Given its Partial Nature and Defendants' Stipulations

In its TRO Memo, the FTC states "Section 13(b) […] gives the Court authority to issue permanent injunctive relief to enjoin practices that violate any law enforced by the FTC and to award 'complete relief.'"[5] The reference to "complete relief" is, of course, not found in the statute's text—Section 13(b) is titled "Temporary Restraining Orders; Preliminary Injunctions"— but rather in case law that developed years after the enactment of that section. While it is true that the Fourth Circuit via the *Ross* case has read into Section 13(b) the possible inclusion of monetary consumer redress as a form of equitable relief, this is conspicuously absent from the text of the law.[6] Indeed, this ambiguity and the circuit court split noted on this issue in the Plaintiff's Opp. at footnote 6 is the very reason the Supreme Court will be hearing and deciding upon this issue. The matter is best summarized in the FTC's own words, in its petition for certiorari in the *Credit Bureau Center* case: "The court of appeals' decision creates a square circuit split on an important and recurring question: whether, in a suit brought under Section 13(b), a district court may order a defendant to both cease its illegal practices and return the money it gained as a result of those

---

[5] TRO Memo at 37.
[6] *FTC v. Ross*, 743 F.3d 886 (4th Cir. 2014).

practices. [...] The court of appeals' decision neuters Section 13(b) within the Seventh Circuit and makes the remedies available to the Commission depend on the happenstance of geography."[7]

The FTC states that "[i]t is pure speculation to assume the Supreme Court will overturn the case on which *Ross* is based, *Porter v. Warner Holding Co.*, 328 U.S. 395 (1946), which has been on the books and favorably sited by the Supreme Court for more than six decades." Plaintiff's Opp. at 5 (footnote omitted). On the contrary, Defendants made no such speculation but only raises the reality that the Supreme Court has taken up the matter precisely because it is a matter ripe for judicial review.[8] And, as the FTC knows full well, the Supreme Court need not "overturn" the *Porter* case in *AMG* to affect the Supreme Court's interpretation of the power, or lack thereof, that the FTC has to seek monetary relief of a federal district court under FTCA Section 13(b). Indeed, the seriousness and the real possibility that this result could ensue is evidenced by the Supreme Courts grant of certiorari itself, in light of the extremely low grant rate of such petitions— approximately 1% each year by one estimate.[9]

---

[7] FTC Pet. for Writ of Cert. at 11, FTC v. Credit Bureau Ctr., LLC, No. 19-825 (U.S. Dec. 19, 2019). This case is no longer consolidated with the *AMG* case and, as of Nov. 9, 2020, the previously granted petition for cert has been vacated.

[8] Moreover, the Supreme Court need not overturn *Porter* because that case did not involve the FTCA but rather the Emergency Price Control Act. *See Porter*, 328 U.S. at 396. And it is not grand speculation that the Supreme Court will overturn *Ross* as the Court recently held in *Liu v. SEC*, that a court can order disgorgement under the term "equitable relief" contained in § 78u(d)(5) of the Securities Exchange Act so long as the disgorgement does not exceed a wrongdoer's net profits and is awarded for victims. 140 S. Ct. 1936, 1947 (2020). The Supreme Court determined that that definition of disgorgement was traditional equitable relief which was expressly authorized by the statute. *Id.* at 1944-46. In its forthcoming decision in *AMG*, the Court would undermine its recent holding in *Liu* if it held that the term "injunction" in Section 13(b) included a full range of equitable relief which otherwise is not expressly mentioned in the statute. *See also Fed. Trade Comm'n v. Credit Bureau Ctr., LLC*, 937 F.3d 764, 786 (7th Cir. 2019) ("Even in the realm of statutory interpretation, a Supreme Court decision on an analogous issue that compels us to reconsider our position counts as a compelling reason to overturn precedent.") (quotations omitted).

[9] *See* SCOTUS Blog, "Supreme Court Procedure," *available at*: https://www.scotusblog.com/reference/ educational-resources/supreme-court-procedure/ (noting "In most circumstances, the Supreme Court has discretion whether or not to grant review of a particular case. Of the 7,000 to 8,000 cert petitions filed each term, the court grants certiorari and hears oral argument in only about 80. Granting a cert petition requires the votes of four justices.").

It would be a wasteful use of the present Court's judicial resources to allow a TRO and asset freeze to continue, with such injurious effects on the Defendants as to be existential, when the very authority upon which to do so is close to being clarified for *all* circuits and district courts by the highest court in the land, with the Supreme Court's grant of cert demonstrating the critical importance of the matter.

For this reason, multiple federal courts have stayed TROs or proceedings pending clarification of this issue. The Defendants respectfully ask that this Court do the same, as allowing the unmodified TRO and asset freeze to continue will effectively end Raging Bull, a legitimate business with approximately 160 employees and tens of thousands of customers extremely satisfied with Raging Bull's popular educational services, despite the FTC's one-sided presentation of fact—for which Defendants were not afforded a realistic opportunity to be heard prior to entry of the TRO. If the TRO and asset freeze were allowed to continue as is, then even if the FTC's authority for the asset freeze is not upheld by the Supreme Court or even if Defendants ultimately prevail on the merits of this case, the irreparable harm will have already been done to the Individual and Corporate Defendants, leading to a clear miscarriage of justice.

For the Plaintiff's Opposition broad assertion that "[n]umerous other FTC cases have proceeded during this same time period without Courts granting stays," the FTC cites to a single off-point authority from this District where the court exercised its discretion to deny a stay based on the pending Supreme Court decision in *AMG Capital Mgmt., LLC v. FTC*, No. 19-508. (*See* Opp. at 5-6 (citing *In re Sanctuary Belize Litig.*, No. CV PJM 18-3309, 2020 WL 5095531, at *69 n.61 (D. Md. Aug. 28, 2020)). That single case is easily distinguishable as its procedural posture was markedly different from the situation here. The decision should be given no weight. In *Belize*, the defendants filed their motion to stay more than a year after the court "held an extensive

evidentiary hearing on the FTC's request for a Preliminary Injunction" and, more importantly, approximately seven months after the court concluded a three-week bench trial on the merits. *See In re Sanctuary Belize Litig.*, 2020 WL 5095531, at *4. Notably, the Supreme Court did not grant certiorari in *AMG Capital Mgmt., LLC v. FTC* until approximately five months (July 2020) after the trial on the merits in *Belize*.[10] In exercising its discretion "as part of its inherent power to control its own docket," the trial court denied the motion to stay where doing so would in effect stay the execution of the judgment ***after*** a finding that defendants had in fact violated the FTCA. *See id*. at *69 n.61, *79 (quoting *United States for use & benefit of Tusco, Inc. v. Clark Constr. Grp., LLC*, 235 F. Supp. 3d 745, 755 (D. Md. 2016)).

Unlike in *Belize*, where a preliminary injunction had already been in effect for over year and a trial on the merits was concluded before the request for stay, here, the preliminary injunction hearing has not yet occurred and there has been no finding of liability for any Defendant. As the oral argument in *AMG* is a matter of weeks away, this Court can consider the Supreme Court's grant of certiorari with fresh eyes at the beginning of the case (unlike the court in *Belize*) and before maintaining the draconian asset preservation portions of a TRO which will undoubtedly destroy Defendants' business. The Supreme Court will soon decide a core issue in this case – whether the FTC can freeze assets and obtain the appointment of a receiver – and it would be reckless for this Court to decide to destroy a business employing 160 people when that decision may soon be rendered unlawful. *See Fed. Trade Comm'n v. Lending Club Corp.*, No. 18-CV-02454-JSC, 2020 WL 4898136, at *3 (N.D. Cal. Aug. 20, 2020) (staying entire action where

---

[10] The FTC also points to a Fourth Circuit decision in the *Belize* case issued in January 2020 just before the trial on the merits for further support that this Court should deny the requested stay here. (Opp. at 6 (citing *In re Pukke*, 790 Fed. Appx. 513 (4th Cir. 2020).) That decision is inapposite because: (i) when it was decided the Supreme Court had not yet granted certiorari in *AMG Capital Mgmt., LLC v. FTC*; and (ii) Defendants here, significantly, do not seek to stay an entire action as the defendants did in *Belize*.

discovery had closed and "[g]oing forward with trial would needlessly burden [defendant] to put on a trial defense only to possibly have the entire enterprise mooted by the FTC's inability to seek any monetary relief under Section 13(b)"); *McNamara v. Patten*, No. 217CV02968GMNNJK, 2020 WL 5534262, at *1 (D. Nev. Sept. 14, 2020) (staying entire action where discovery was closed, witnesses had been deposed and documents exchanged, and where the Supreme Court's upcoming ruling may "prevent[s] rulings on the merits that might later be undermined."); *see also See Boger v. Citrix Sys., Inc.*, No. 8:19-CV-01234-PX, 2020 WL 1939702, at *2 (D. Md. Apr. 22, 2020) (granting stay pending decision of Supreme Court decision as it "promotes judicial economy and preserves litigation resources"); *Consumer Fin. Prot. Bureau v. Access Funding, LLC*, No. CV ELH-16-3759, 2019 WL 7185557, at *6 (D. Md. Dec. 23, 2019) (granting stay pending decision in Supreme Court regarding the validity of a statute where oral argument was scheduled for March with a decision to be issued no later than June); *Benisek v. Lamone*, 266 F. Supp. 3d 799, 815 (D. Md. 2017), aff'd, 138 S. Ct. 1942, 201 L. Ed. 2d 398 (2018) (staying case pending decision in Supreme Court even when the decision may not be dispositive of present case because "the Court's analysis undoubtedly will shed light on critical questions in this case, and the parties and the panel will be best served by awaiting that guidance."). The FTC's attempt to shoehorn this case into the procedural posture that existed in *Belize* should be rejected.[11]

---

[11] Similarly, the FTC's attempts to distinguish *Int'l Refugee Assistance Project v. Trump*, 323 F. Supp. 3d 726 (D. Md. 2018) and *Preston v. United States*, No. CIV.A. ELH-14-01920, 2015 WL 221633 (D. Md. Jan. 15, 2015) fail. In *Int'l Refugee Assistance Project*, the court stated (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 256 (1936)) that "where the Supreme Court may shortly provide definitive guidance on key legal questions that could impact the viability of some or all of the claims asserted by Plaintiffs, considerations of judicial economy strongly counsel in favor of a stay." 323 F. Supp. 3d at 734. In *Preston*, the court issued a stay because a pending Supreme Court decision would determine whether equitable tolling applied such that the plaintiff's claim would not be time-barred. 2015 WL 221633, at *9. In other words, the Supreme Court's decision would impact the scope of the plaintiff's claims. *See id.* Those exact scenarios exist here. Should the asset preservation portions of the TRO not be stayed, Defendants will "justifiably seek re-litigation of [those issues] in light of the new guidance" from the Supreme Court. *See Int'l Refugee Assistance Project*, 323 F. Supp. 3d at 734.

Moreover, Defendants do not seek the broad stay sought by the defendants in *Belize* and in other cases where courts denied stays pending the Supreme Court's forthcoming decision. Defendants only seek to stay the asset preservation portions of the TRO – not the entire order – as described in Defendants' Motion.[12] Thus, the circumstances which other courts have pointed to as a reason for denying a stay pending the decision in *AMG Capital Mgmt., LLC v. FTC* are not present here. Because Defendants are not asking for a stay of the entire action, this case is more like *Lending Club Corp.* and *McNamara* as there are no concerns that discovery may become unavailable to the FTC or that this action can otherwise proceed. The limited requested stay of the asset preservation portions of the TRO is appropriate.

**C.      The FTC's Argument on the Substance Requirements of the TRO is Irrelevant to the Motion, and Wrong.**

The FTC's suggests the Court reached a finding that the FTC was likely to succeed on the merits of the action based on the FTC's "voluminous evidentiary submission." Resp. at 7. The FTC omits the fact the TRO was entered *ex parte* within 24 hours of the FTC's motion being filed. Defendants did not have the opportunity to be heard.

Additionally, the FTC misleadingly claims that Defendants' "studiously avoid addressing the merits" of the FTC's allegations. The FTC also suggests that Defendants "all but concede" they violated the law because Defendants are willing to stipulate to the substantive prohibitions

---

[12] *See* Defendants' Motion at 3-4 ("To that end, Defendants propose that they will stipulate to comply with the substantive requirements of the TRO, including the provisions in Sections I, II, and III. Defendants will further agree to strict limitations prohibiting the disbursement or distribution of any assets to any defendant, or related person, or any other third party that is not business-critical. We ask that the TRO be modified to allow the company to continue to operate pending a decision on the preliminary injunction motion currently scheduled for December 18, 2020. The asset freeze should be removed and the Receiver should not be appointed at this time, or at most, appointed only for the limited purpose consistent with the appropriate objectives of this TRO – the preservation of assets and operations and not the cessation of Raging Bull's lawful activities. Alternatively, the TRO should be modified to clarify that the Receiver is not authorized, without prior Court approval, to take actions to shut the company down.").

(but not the process restrictions) in the TRO. Resp. at 7. If the FTC's goal is to **_discourage_** **_cooperation_** from Defendants in this matter, they went about it the right way by assuming that any level of cooperation by Defendants is an admission of guilt. The FTC's position is not only unfortunate and counter-productive, but it is also wrong.

In their Motion, Defendants stated its willingness to stipulate to the substantive restrictions of Sections I, II and III of the TRO. The stated reason for this is to take those issues off the table so Defendants can focus the Court on the far more immediate threat to its very existence – the complete asset freeze and appointment of a temporary Receiver who (as Defendants understood at the time) was intent on shutting operations down immediately.

The merits of the FTC's likelihood of success on their substantive allegations are to be considered at the preliminary injunction hearing. In their Motion, Defendants make clear that they dispute the allegations of misleading marketing and improper trading activities. *See* Mot. at 13. But given the **_immediate_** threat to the company's existence by the asset freeze and temporary Receiver's threat to shut the company down, Defendants did not put the merits at issue in their Motion.

Rather than address the one example Defendants presented in the Motion, the FTC tries to attack other practices. Defendants dispute each of the FTC's contentions, which will be taken on directly at the preliminary injunction hearing.

**D.**     **If the TRO is Not Stayed, the Asset Freeze Must be Lifted for the Company to Survive.**

At the time Defendants submitted their Motion, the Receiver had informed Defendants that he intended to shut down the company's operations, terminate its email system and modes of communication, halt the company's subscriber fulfillment services, and not pay the company's 160 employees. Since the Motion has been filed, Defendants have been attempting to work with

the Receiver, who has expressed at least a willingness to keep the company running. However, Defendants have not yet reached an accord with the Receiver to accomplish this. As a result, the company's peril has reached its breaking point.

The company cannot operate while the Receiver learns the company and the business. Funds that must be paid are not being paid.

Most problematic, just two days ago – Friday, December 11, 2020 – the Receiver did not allow the company to make payroll. As a result, 160 employees did not get paid. It is not a surprise that employees are leaving the company. It will get much worse very fast tomorrow.

The Receiver has the obligation under the TRO to suspend business operations if "in the judgment of the Receiver" such operations cannot be continued legally and profitably." TRO, ¶ XIV.T. The Receiver is conducting the investigation that he understandingly must do (given that he is new to the company and the business) in order to exercise his judgment. *See* Resp. of Temp. Receiver, at 3. But with the asset freeze in place, and the complete control over the business, its assets, and its operations, the company will not last long enough for the Receiver to do so.[13]

## CONCLUSION

For the reasons stated herein, Raging Bull respectfully requests the Court grant this Motion and issue the relief sought in its Motion, and any further relief as appropriate. Should the Court wish to have a hearing on Defendant's Motion, Counsel will make ourselves available.

Dated: December 13, 2020                           Respectfully submitted,

---

[13] The FTC is fine with this, unfortunately. They even offer an absurd "recommendation" to survive – "Defendants can seek a bridge loan, borrow from family and friends, or allocate the $25,000 each from their personal accounts that the TRO has already authorized for release to Defendants." Resp. at 12.

RagingBull.com, LLC, Jeffrey M. Bishop,
Jason Bond, Sherwood Ventures, LLC, Jason
Bond, LLC, Winston Research Inc., and
Winston Corp.

By: /s/ *David G. Barger*
David G. Barger (DCB# 469095)
Greenberg Traurig LLP
1750 Tysons Blvd.
Suite 1200
McLean, VA 22102
Tel: (703) 749-1300
Email: bargerd@gtlaw.com

Andrew G. Berg
2101 L Street, N.W.
Suite 1000
Washington DC 20037
Tel: (202) 331- 3100
Email: berga@gtlaw.com
*Pro Hac Vice Pending*

Miriam G. Bahcall
Greenberg Traurig, LLP
77 West Wacker Drive
Suite 3100
Chicago, IL 60601
Tel: (312) 476-5135
Email: bahcallm@gtlaw.com
*Pro Hac Vice Pending*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 13th day of December 2020 a true and accurate copy

foregoing DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STAY ENFORCEMENT

OR MODIFY TEMPORARY RESTRAINING ORDER was properly served on all parties through

the ECF system.

/s/ *David Barger*
David G. Barger (DCB# 469095)
Greenberg Traurig LLP
1750 Tysons Blvd.
Suite 1200
McLean, VA 22102
Tel: (703) 749-1300
Email: bargerd@gtlaw.com

*Counsel for Defendants*