## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

FEDERAL TRADE COMMISSION,

      Plaintiff,

      v.

RagingBull.com, LLC, *et al.*,

      Defendants.

Case No. 20 Civ. 3538-GLR

**DEFENDANTS KYLE DENNIS, WINSTON RESEARCH INC., AND WINSTON CORP.'S OPPOSITION TO THE ENTRY OF A PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................................................................1

OPPOSITION TO A PRELIMINARY INJUNCTION ..............................................................2

RELEVANT FACTS .............................................................................................5

ARGUMENT ....................................................................................................6

    I.      The FTC Will Not Prevail on the Merits of its Claims....................................................6

        A.    The FTC Cannot Demonstrate the Mr. Dennis is Individually Liable for the Alleged Deceptive Practices. ................................................................................7

        B.    The Winston Entities Did Not Participate in a Common Enterprise. ..........................11

    II.      The Equities Weigh Against the Entry of a Preliminary Injunction..............................12

    III.    The FTC's Proposed Asset Freeze Is Unnecessary and Overbroad. ............................13

        A.    The FTC is Not Entitled to Monetary Relief At All, Making an Asset Freeze Unnecessary and Inequitable. ....................................................................14

        B.    Even if the FTC Were Entitled to Monetary Relief, Such Relief Would Be Limited to Mr. Dennis's and the Winston Entities' Net Profits..........................................15

CONCLUSION..................................................................................................17

i

Defendants Kyle Dennis, Winston Research Inc., and Winston Corp., submit this memorandum of law in response to the Court's Order to Show Cause why the Court should not enter a preliminary injunction against him. [ECF No. 21.]

<u>**PRELIMINARY STATEMENT**</u>

Although counsel for Mr. Dennis and the Winston Entities have only been retained within the last 48 hours and have had limited time to prepare this opposition, it is being submitted in accordance with the briefing schedule that this Court has imposed. Mr. Dennis and the Winston Entities also adopt and incorporate by reference any argument made by any other defendant, to the extent applicable to them.

In light of continuing investigation of the underlying facts, Mr. Dennis and the Winston Entities reserve the right to supplement this opposition, particularly if the preliminary injunction hearing is adjourned. As the Court is aware, all defendants have consented to the adjournment of the preliminary injunction hearing, and to continuing the TRO until then. The FTC, while indicating that it had no objection to an adjournment, conditioned its consent on the withdrawal of defendants' pending motion for relief from the TRO. The FTC's consent, however, is not necessary because the defendants are entitled to an adjournment to adequately prepare for the preliminary injunction hearing in light of their consent. As Rule 65 provides, the TRO expires at a time, not to exceed 14 days, "that the court sets, unless before that time the court, for good cause, extends it for a like period *or the adverse party consents to a longer extension*." Fed. R. Civ. P. 65(b)(2). Because all adverse parties have consented to an extension of the TRO, the Court should adjourn the injunction hearing.

Further, even if good cause were required, it exists. Counsel is still gathering the evidence it intends to present at the preliminary injunction hearing. At a minimum, however, Mr. Dennis and the Winston Entities reserve the right to submit documentary evidence and to call Mr. Dennis

– who will testify about his role and responsibilities as a non-executive employee of RagingBull.com – as a witness, as well as to examine any witness identified by any other party, including the witnesses who submitted affidavits on behalf of the FTC, and its expert witness.  A hearing and cross-examination is necessary prior to the entry of a preliminary injunction that would impose a blanket asset freeze on Mr. Dennis, Winston Research Inc., and Winston Corp. for the duration of this litigation.  The FTC has wholly misconstrued Mr. Dennis's role at Raging Bull, as he is merely an employee and one of many instructors whose services and products Raging Bull offers to consumers, and cross-examination is necessary to clarify the record prior to the entry of the extreme remedy of a preliminary injunction.  In addition, much of the evidence submitted by the FTC appears to be cherry-picked from a small subset of Raging Bull's customers and it will be important to explore some of those customers' use of the products in order to contrast it with that of other satisfied customers.  An adjournment will almost certainly allow counsel to focus their witness list and need for live cross-examination considerably.

## OPPOSITION TO A PRELIMINARY INJUNCTION

In this case, the FTC seeks to hold Kyle Dennis, an employee of Defendant RagingBull.com, LLC with no equity or managerial role in the company, and two entities he controls jointly and severally liable for $137 million.  Neither the law nor the facts support such an outcome, yet the FTC seeks a preliminary injunction that imposes a blanket asset freeze on Mr. Dennis's personal assets, in addition to the assets of two entities, Winston Research Inc. and Winston Corp. (the "Winston Entities"), that had no role in the allegedly deceptive conduct at issue.  Such a preliminary injunction is improper.

First, the FTC will not succeed on the merits of its claims against Mr. Dennis or the Winston Entities.  Critically, the FTC has not pointed to a single deceptive, false, or misleading statement that Mr. Dennis has made to any consumer.  Mr. Dennis provides trading information to

consumers, and the language used in marketing his products is at most mere puffery or opinion that is not actionable under the FTC Act.  As a threshold matter, the FTC will not be able to demonstrate a probability of success on the merits against the Winston Entities because, as explained above, the Complaint is insufficient as to them.  But even looking past that, the FTC's evidence does not remotely suffice to hold the Winston Entities liable.  Here, the FTC essentially contends that Mr. Dennis is guaranteeing consumers that they will make money on the stock market when following the trading strategies.  But that is simply not the case.  As Mr. Dennis will demonstrate at the hearing, he actually engages in trades using his own money, demonstrates his trading rationales for interested consumers, and does not guarantee any specific returns.  He is a successful trader who shares his trading philosophy and, as the evidence will show, has many customers who are entirely satisfied with his efforts.  Here, the FTC has cherry-picked consumer complaints about Raging Bull's products and services while entirely ignoring the overwhelming majority of customers who are satisfied with the product they have purchased. And as to the remaining conduct described in the Complaint—Raging Bull's practices regarding cancellation of recurring billing of consumers' credit cards—the FTC has not pointed to a single piece of evidence suggesting that Mr. Dennis, who is only a mere instructor-employee at Raging Bull, participated in that conduct or had any authority to control it.

As to the Winston Entities, the FTC's evidence cannot and will not support holding them liable under a theory of common enterprise liability.  As an initial matter, the FTC's complaint will surely be dismissed against them because it contains *literally* no allegations about them other than their corporate existence (Compl. ¶¶ 14, 18, 19) and the entirely conclusory allegation that all of the Corporate Defendants have "operated as a common enterprise," (*id.* ¶ 20).  And in support of an injunction, the FTC cites no evidence connecting the Winston Entities to the allegedly

deceptive practices whatsoever aside from the fact that they received money from Raging Bull. Merely receiving such money does not give rise to common enterprise liability under well-established precedent, making a preliminary injunction against the Winston Entities improper. Thus, the FTC is unlikely to succeed on the merits of its case against Mr. Dennis and the Winston Entities.

Second, the equities weigh against preliminary injunctive relief. Here, the FTC asks this Court to impose a blanket asset freeze on all of Mr. Dennis and the Winston Entities' assets in order to preserve $137 million for consumers. But the FTC ignores Mr. Dennis's role as a mere employee of Raging Bull, and the Winston Entities' lack of any role whatsoever in the allegedly deceptive conduct at issue. The FTC attempts to conflate all of the defendants together using group pleading and hyperbolic language unsupported by any evidence, but the reality is that imposing an asset freeze on everything that Mr. Dennis owns and holds in the Winston Entities is unjust and inequitable considering that Mr. Dennis is one of 160 employees at Raging Bull, and one of many "gurus" whose products and services Raging Bull sells. Further, in addition to his work for Raging Bull, Mr. Dennis also works as an independent trader and that is a major source of his income. Indeed, much of Mr. Dennis' personal assets are from work entirely outside of Raging Bull. The scope of the relief sought by the FTC is overbroad and would essentially preclude Mr. Dennis from participating in activities that have nothing to do with Raging Bull despite the fact that *he is only an employee with no control over, or ownership of, the business.*

Finally, the asset freeze that the FTC seeks over Mr. Dennis's personal assets is overbroad, unnecessary, and not supported by law. Recent Supreme Court precedent limits the FTC's potential recovery against Mr. Dennis and the Winston Entities to their own net profits, if it is able to recover monetary relief in this case at all. Yet the asset freeze that the FTC proposes would

freeze *all* of Mr. Dennis's assets.  Such an asset freeze would have devastating consequences on Mr. Dennis.  The FTC has failed to demonstrate why an asset freeze is necessary to ensure that permanent relief is available.  The FTC cannot meet its burden of justifying a preliminary injunction, an "extraordinary and drastic remedy," against Mr. Dennis and the Winston Entities.

## **RELEVANT FACTS**

Raging Bull is a subscription-based publisher that provides subscribers with training and educational materials to learn trading strategies for their own investing activity.  [Bishop Decl. at ¶ 3, ECF No. 28-1.]  Raging Bull teaches its subscribers how to trade stocks through the publication of training materials, analysis and commentary, and real-time trading examples. [*Id.* at ¶¶ 4–5.]

Raging Bull currently employs approximately 160 employees [*id.* at ¶ 6], one of whom is Kyle Dennis.  Mr. Dennis is a trading instructor (or a "guru") at Raging Bull. [Compl. ¶ 14.]   As Mr. Dennis will prove at the preliminary injunction hearing, he has no managerial responsibilities over any other employees at Raging Bull and holds no equity in the company.  Mr. Dennis began as a student of Defendants Bond and Bishop, and joined as an independent contractor in 2016 and then as an employee in 2018.  [Compl. ¶ 23.]  Today, Raging Bull offers both paid and free content that provides consumers with information on Mr. Dennis's and many other instructors' trading strategies, including videos, stock watch lists, exemplar trading activity in real time, and live chat rooms.  [Bishop Decl. ¶¶ 4, 9.]   As with all of Raging Bull's gurus, Mr. Dennis educates his subscribers through a "teach by doing" method, providing examples of trades that he has actually made or is currently making, and explaining the strategies behind those trades. [*Id.*]

On December 7, 2020, the FTC filed a Complaint against the Defendants, alleging that they defrauded consumers by misrepresenting how much money consumers will make in relying on Defendants' trading advice in trading stocks and options on the stock market in violation of the FTC Act. [ECF No. 1.]  The FTC also filed a motion for a Temporary Restraining Order ("TRO")

against Defendants.  [ECF No. 2.]  This Court entered a TRO against Defendants on December 8, before any defendants had the opportunity to oppose or otherwise respond to the FTC's motion. [ECF No. 21.]  As part of the TRO, the Court ordered the assets of the corporate and individual Defendants frozen and ordered the appointment of a temporary Receiver.  [*Id.* pts. IV, V XIV.]

## ARGUMENT

A preliminary injunction is "'an extraordinary and drastic remedy' prior to trial."  *Ultimate Outdoor Movies, LLC v. FunFlicks, LLC*, 2019 WL 2642838, at *6 (D. Md. June 27, 2019) (quoting *Munaf v. Green*, 553 U.S. 674, 689–90 (2008)).  In obtaining a preliminary injunction, the FTC bears the burden of demonstrating that such an injunction would be in the public interest, considering (1) the FTC's likelihood of success on the merits; and (2) whether the equities weigh in favor of a preliminary injunction.  *See FTC v. Food Town Stores, Inc.*, 539 F.2d 1339, 1343 (4th Cir. 1976).  The FTC can demonstrate neither in this case.

### I.      The FTC Will Not Prevail on the Merits of its Claims.

The FTC cannot meet its burden of demonstrating likelihood of success on the merits as to either Mr. Dennis or the Winston Entities.  First, Mr. Dennis did not participate in any deceptive practices because nothing he conveyed to consumers was false, misleading, or otherwise deceptive in any way.  Nor did Mr. Dennis have the authority to control any of the purportedly deceptive practices alleged in the Complaint, as he is just an employee-instructor at Raging Bull with no managerial power or control.  Second, the FTC has not pointed to a single fact supporting holding the Winston Entities liable under a common enterprise theory of liability, and its Complaint is plainly insufficient as to them.  That the Winston Entities received payments from Raging Bull is not nearly enough to hold them liable, and the fact that the FTC has accumulated no other evidence as to the Winston Entities' involvement in the alleged scheme after many months of investigating this case makes it clear that the FTC will not succeed on the merits of its claims against them.

**A.      The FTC Cannot Demonstrate the Mr. Dennis is Individually Liable for the Alleged Deceptive Practices.**

The FTC will be unable to meet its burden of proving that Mr. Dennis is individually liable for any of the allegedly deceptive practices at issue in this case.  Mr. Dennis did not directly participate in any deceptive practice—his own statements and products are not deceptive and include mere puffery, at most.  Nor did he have the authority to control any allegedly deceptive practices because, as a mere employee of Raging Bull, he has no authority over Raging Bull's auto-renewal or cancellation policies or the conduct of the other individual defendants in this matter or any other Raging Bull employee.

Section 5 of the FTC Act bars "unfair or deceptive acts or practices in or affecting commerce."  15 U.S.C. § 45(a).  To show that an act or practice is deceptive, the FTC must establish (1) that there was a representation; (2) that the representation was likely to mislead consumers; and (3) that the misleading representation was material.  *FTC v. Agora Fin., LLC*, 447 F. Supp. 3d 350, 359 (D. Md. 2020).  Puffery, that is "exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely," is not actionable under the FTC Act.  *FTC v. Direct Mktg. Concepts, Inc.*, 624 F.3d 1, 11–12 (1st Cir. 2010).  Further, an individual may be found liable under Section 5 only if he: "(1) participated directly in the deceptive practices or had authority to control those practices, *and* (2) had or should have had knowledge of the deceptive practices."  *F.T.C. v. Ross*, 743 F.3d 886, 892 (4th Cir. 2014) (emphasis added).  The FTC will be unable to meet its burden of demonstrating that Mr. Dennis participated directly in any deceptive practices or had the authority to control any deceptive practices or even knew about any deceptive practices.

The FTC has not pointed to a single piece of credible evidence demonstrating that Mr. Dennis participated directly in any deceptive practice.  The FTC Act claims in the Complaint fall

into two categories: (1) false or misleading representations about income that consumers who purchase Raging Bull's services are likely to earn and (2) false or misleading statements about the amount of experience, effort, and money required to earn such income. [Compl. ¶¶ 105, 108.] The FTC points to several categories of statements that Mr. Dennis has made in his various Raging Bull programming, selectively choosing quotations that are taken out of context and which are not deceptive in any sense.

As to representations about income that consumers who purchase Raging Bull's service are likely to earn, such statements are classic examples of puffery that is not actionable under the FTC Act. For example, the FTC points to Mr. Dennis's newsletter, Sniper Report, and Mr. Dennis's statement that the newsletter is "strategically developed to only deliver high probable [sic] trades with the power to make 100%, 200%, 300% return [sic] on each trade." [FTC Br. at 11, ECF No. 2-1 (citing PX 27, ¶ 118(a), Att. FFFFF, p. 3045).] This is nothing more than puffery. Puffery includes promises of "a great investment or an amazing return on . . . money." *Dunn v. Borta*, 369 F.3d 421, 431 (4th Cir. 2004); *see also In re Sanctuary Belize Litig.*, No. CV PJM 18-3309, 2020 WL 5095531, at *29 (D. Md. Aug. 28, 2020) (property developer's representations to prospective lot purchasers that lot values would greatly appreciate was puffery and did not violate FTC Act). Further, the very words used in Mr. Dennis's statement make clear that there is only a *potential* to make certain trades using his program and that those traders only have "*the power to*" result in high returns.

As to the ease of earning income using Raging Bull's methods, the FTC cites Mr. Dennis's statement in a marketing video for his Fast Five program in which he says that he made "about $9,100 per day" in 2019. [Compl. ¶ 53; FTC Br. at 8 (citing PX 27, ¶ 24, Att. EE, p. 1997).] But in the very next sentence, which the FTC omits from its papers, Mr. Dennis explains to the

audience that he had to first develop trading skills before he was able to make such sums of money and that his biology degree has assisted him in becoming a successful trader: "It didn't start off like that, though. . . . Now trading wasn't a walk in the park at the beginning. I actually lost 7,000 dollars and almost took myself out of the game, but I didn't quit. . . That Degree actually wasn't a complete waste of time, because now I exploit the biotech market, among others, every single day." [PX 27, Att. EE at 1997–98.] The allegations in the FTC's complaint are rife with these types of omissions that make their allegations misleading and lacking in context.

The FTC also points to Mr. Dennis's statements in his Dollar Ace promotional videos that his strategies and products are "perfect for someone with a small account;" "perfect" "[e]ven if you've never, ever traded options before;" and "requires a little bit of time to implement, just minutes per day." [FTC Br. at 20 (PX 27, ¶ 24, Att. DD, pp. 1992, 1994-1995).] Such statements, again, are nothing more than puffery that do not constitute a violation of the FTC Act. *See Baney Corp. v. Agilysys NV, LLC*, 773 F. Supp. 2d 593, 609 (D. Md. 2011) (defendant's statement that a program would be "easy to use and perfect for a multi-property environment" was "mere puffery").

The reality is that Raging Bull's products and services featuring Mr. Dennis include disclaimers approved by counsel making clear that Mr. Dennis is an experienced trader and that consumers should not expect to be as successful as he right away. For example, the FTC itself points to one video advertising the Trade With Kyle webinars in which Mr. Dennis spends thirty seconds explaining to consumers that "trading is risky." [Compl. ¶ 84.] Other videos include disclaimers that inform consumers that they "should not expect to replicate" Mr. Dennis's own trading results. [Compl. ¶ 84.] And it is also clear that Mr. Dennis "puts his money where his mouth is" – he actually engages in the trading that he is describing to consumers. This is simply

9

not the type of case where some bogus trading scheme is being proffered, which is what the FTC suggests in its papers.

Nor can the FTC meet its burden of proving that Mr. Dennis instead had the authority to control any allegedly deceptive practices, including statements by the other individual defendants and Raging Bulls' cancellation policies and practices. As he will prove at the preliminary injunction hearing, Mr. Dennis is an employee, not an owner or manager of Raging Bull, and has no control over any other instructor's programs or marketing materials. And contrary to the FTC's contention that Mr. Dennis is "intimately involved in Raging Bull's advertising" it points to no evidence that Mr. Dennis was at all involved in the marketing or advertising of anything other than his own products and services, which are not deceptive, as described above. [*See* FTC Br. at 48–49.]

As to its claims under the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. §§ 8401 *et seq*., the FTC has not pointed to any evidence that Mr. Dennis was involved in cancellation polices, auto-renewal, consumer refunds, or any other illegal conduct under ROSCA. In the only example the FTC points to of Mr. Dennis receiving any complaints about auto-renewal charges, Mr. Dennis directed the consumer to management because he has no control over such policies and practices. [FTC Br. at 36 (citing PX 19, ¶ 39)).] Mr. Dennis's lack of authority and control over such practices stands in stark contrast to cases in which courts have found individual liability for practices in which the individuals were not directly involved. *See, e g.*, *F.T.C. v. Moses*, 913 F.3d 297, 307–08 (2d Cir. 2019) (holding that defendant had authority to control deceptive practices where he "admitted to having the power to hire and reprimand employees . . . responsible for the Corporate Defendants' violations of the FTCA").

Because the FTC *must* prove that Mr. Dennis "participated directly in the practices or acts or had the authority to control them" to hold him individually liable in this matter, and because it cannot do so, the Court should deny the FTC's application for a preliminary injunction against Mr. Dennis.

**B.      The Winston Entities Did Not Participate in a Common Enterprise.**

Nor has the FTC demonstrated that the Winston Entities were involved in the common enterprise that perpetrated the allegedly deceptive scheme.  As a threshold matter, the FTC will not be able to demonstrate a probability of success on the merits against the Winston Entities because, as explained above, the Complaint is insufficient as to them.  But even looking past that, the FTC's evidence does not remotely suffice to hold the Winston Entities liable.

To determine whether a group of defendants operated as a common enterprise, courts "look to a variety of factors, including: common control, the sharing of office space and officers, whether business is transacted through a maze of interrelated companies, the commingling of corporate funds and failure to maintain separation of companies, unified advertising, and evidence which reveals that no real distinction existed between the Corporate Defendants." *CFTC v. Noble Wealth Data Info. Servs. Inc.*, 90 F. Supp. 2d 676, 691 (D. Md. 2000) (quoting *FTC v. Wolf*, No. 94-5119, 1996 WL 812940, *7 (S.D. Fla. Jan. 31, 1996) (citations omitted)).  Entities that become entangled in a scheme to deceive through their legitimate, non-deceptive business practices (or lack thereof) are not agents of the scheme and are not liable for the acts of the members of the scheme.  For example, a company that does "payroll and accounting functions" cannot, without more, "be considered part of a 'common enterprise' . . . where the conduct at issue is the marketing and offering of loans and collection practices." *F.T.C. v. PayDay Fin. LLC*, 989 F. Supp. 2d 799, 809 (D.S.D. 2013).

Here, the FTC points to not a single piece of evidence supporting *any* of the common enterprise factors as to the Winston Entities. The *only* facts that the FTC alleges about the Winston Entities are (1) that they received money from Raging Bull and (2) that aside from Mr. Dennis, who owns and controls the Winston Entities, the Winston Entities have no other officers or employees. [FTC Br. at 32 (citing PX 24, ¶ 12; PX 24, Att. A, p. 1662; PX 27, ¶¶ 7–8, 15–16, 92).] Such facts are woefully deficient to justify the extraordinary remedy of a preliminary injunction and receivership, as after months of investigating this case, the FTC has nothing else to show for its theory that the Winston Entities should be held jointly and severally liable for Raging Bull's alleged deceptive practices.

## II.     The Equities Weigh Against the Entry of a Preliminary Injunction.

"In considering the second requirement for an injunction, whether the equities weigh in favor of preliminary relief, the Court balances Defendants' private interests against the interest of the public." *FTC v. Agora Fin., LLC*, 447 F. Supp. 3d 350, 359 (D. Md. 2020). "[I]njunctive relief should be no more burdensome to the defendant[s] than necessary," *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). The FTC seeks an overbroad injunction against Mr. Dennis and the Winston Entities without showing how an injunction would promote the public interest or grappling with the crippling effects of the injunction on them. Instead, the FTC makes conclusory arguments that the equities favor an injunction to preserve assets and records and to prevent further injury to consumers. These reasons are neither supported by evidence nor sufficient to tip the equities in favor of a far-reaching preliminary injunction.

As explained above, and as Mr. Dennis will testify before the Court, Mr. Dennis is an employee of Raging Bull, not an owner and manager, and is just one of many gurus whose advice and trading strategies Raging Bull sells. Yet the FTC seeks to hold Mr. Dennis liable for the *entire amount* of monetary to which it says it is entitled and to freeze *all* of his personal assets

accordingly.  This is despite the fact that the FTC itself alleges that Mr. Dennis, through the Winston Entities, has received only $4.4 million from the alleged scheme from April 2017 to July 2020, a small percentage of the $137 million to which the FTC says it is entitled from the same time period.  [FTC Br. at 51 (citing PX 24 ¶ 12-14).]  Further, the proposed restriction on Mr. Dennis's assets prevents him from performing work that he does independent of his employment for Raging Bull in order to earn money to support himself—stock trading.  In addition to his work for Raging Bull, Mr. Dennis also works as an independent trader and that is a major source of his income.  Indeed, much of Mr. Dennis' personal assets are from work entirely outside of Raging Bull.  The scope of the relief sought by the FTC is overbroad and would essentially preclude Mr. Dennis from participating in activities that have nothing to do with Raging Bull despite the fact that *he is only an employee with no control over, or ownership of, the business.*

Against the distressing effects on Mr. Dennis, and his role as a mere employee-instructor at Raging Bull, the FTC offers scant support for the claim that an injunction offers any contribution to the public interest.  The FTC argues that it seeks injunctive relief to prevent further injury to consumers, but there is no evidence or reason to believe that Mr. Dennis will deplete assets the Court may award as restitution or disgorgement.  In fact, the evidence the FTC cites for the proposition that "[t]here is also strong evidence of diversion and dissipation of funds by the Defendants" does not relate to Mr. Dennis himself (or the Winston Entities) at all.  [FTC Br. at 51 n.252 (citing PX 24 ¶¶ 20–22, 31–23).]  In the end, the FTC has failed to support any of its claims that the equities weigh in favor of entering the preliminary injunction against Mr. Dennis and the Winston Entities.

III.     **The FTC's Proposed Asset Freeze Is Unnecessary and Overbroad.**

The FTC seeks an asset freeze in the amount of $137 million against Mr. Dennis and the Winston Entities.  The Court should deny that request for at least two reasons.

A.     **The FTC is Not Entitled to Monetary Relief At All, Making an Asset Freeze Unnecessary and Inequitable.**

The plain language of Section 13(b) provides only for a temporary restraining order or a preliminary injunction, not monetary remedies.  Specifically, section 13(b) provides that, where the FTC "has reason to believe" a person "is violating, or is about to violate" a law enforced by the FTC, the FTC it may seek "a temporary restraining order or a preliminary injunction" if "enjoining" such act "pending the issuance" and resolution "of a complaint by the Commission" is in the public interest.  15 U.S.C. § 53(b). Thus, section 13(b) does not expressly authorize monetary remedies.

The Supreme Court has rejected implied remedies and limited statutes to the relief Congress specifically authorized. *See Meghrig v. KFC Western, Inc.*, 516 U.S. 487–88 (1996).  At its core, the issue boils down to the scope of a district court's equitable jurisdiction in the absence of specific statutory language defining its breadth.  In a recent decision, the Seventh Circuit applied *Meghrig* to the FTC Act and Section 13(b), recognizing that "the Supreme Court has clarified that courts must consider whether an implied equitable remedy is compatible with a statute's express remedial scheme.  And it has specifically instructed us not to assume that a statute with 'elaborate enforcement provisions' implicitly authorizes other remedies." *FTC v. Credit Bureau Ctr., LLC*, 937 F.3d 764, 767 (7th Cir. 2019) (*citing Meghrig*, 516 U.S. at 487–88).  The Seventh Circuit reasoned that "[m]ost notably, the FTCA has two detailed remedial provisions that expressly authorize restitution if the Commission follows certain procedures [and] [o]ur current reading of section 13(b) allows the Commission to circumvent these elaborate enforcement provisions and seek restitution directly through an implied remedy."  *Id*.  The court therefore held "that section 13(b) does not authorize restitutionary relief."  And other courts have followed suit.  *See FTC v. AbbVie Inc.*, No. 18-2621, 2020 WL 5807873 (3d Cir. Sept. 30, 2020); *see also FTC v. AMG*

14

*Capital Management, LLC*, 910 F.3d 417 (9th Cir. 2018) (O'Scannlain, J., concurring) (suggesting that FTC's interpretation of section 13(b) is "no longer tenable").

The Supreme Court's rejection of implied statutory remedies was confirmed in a decision last term, *Liu v. SEC*, which limited the relief available to the SEC under a statute providing for "any equitable relief that may be appropriate or necessary for the benefit of investors." 140 S. Ct. 1936 (2020). The Court held that the statute's text excludes punitive monetary sanctions and only authorizes disgorgement of "a defendant's net profits from wrongdoing." *Id.* at 1946. *Liu* also listed the various names for equitable monetary remedies, such as restitution, disgorgement, and accounting—none of which appear in Section 13(b). *Liu* thus confirms that Section 13(b) authorizes neither monetary remedies nor asset freezes.

After *Liu* was decided, the Court granted certiorari on a Ninth Circuit case raising the issue of whether Section 13(b) allows the FTC to recover monetary relief, *AMG Capital Management, LLC v. FTC*. The Supreme Court's reason for granting cert in *AMG* is clear: the opinion in *Liu*, which construed the applicable statute narrowly, sets the stage for reading the even narrower language of Section 13(b) – which authorizes only "injunctions," not "any equitable relief" as in *Liu* – by its plain terms. In light of this case law, the FTC cannot show that it will successfully obtain restitution under section 13(b), rendering an asset freeze inappropriate. The uncertain state of the law, and the substantial likelihood that the FTC's authority to obtain monetary relief will be undercut in *AMG*, also tips the balance of the equities against the FTC.

**B.      Even if the FTC Were Entitled to Monetary Relief, Such Relief Would Be Limited to Mr. Dennis's and the Winston Entities' Net Profits.**

The FTC argues that the Defendants' revenue from the alleged scheme, minus chargebacks, is $137 million, and that Defendants are jointly and severally liable for that amount. [PX24 ¶ 10; FTC Br. at 36.] But, in accordance with the Supreme Court's decision in *Liu*, the FTC will not be

able to hold Mr. Dennis and the Winston Entities liable for that amount for two reasons, making a blanket asset freeze wholly unnecessary and inequitable.

First, in holding that "courts must deduct legitimate expenses before ordering disgorgement," *Liu* limits asset freezes to net profits, not revenues.  140 S. Ct. at 1950; *see also id.* at 1949–50 ("Courts may not enter disgorgement awards that exceed the gains 'made upon any business or investment, when both the receipts and payments are taken into the account.'" (quoting *Providence Rubber Co. v. Goodyear*, 76 U.S. 788, 804 (1869)).  "A rule to the contrary that 'make[s] no allowance for the cost and expense of conducting [a] business' would be 'inconsistent with the ordinary principles and practice of courts of chancery.'" *Id.* (quoting *Tilghman v. Proctor*, 125 U.S. 136, 145 (1888)).  Here, the FTC seeks to disgorge the revenues of the allegedly deceptive practice, that is, profits before the deduction of expenses.  Doing so would be improper, thus rendering its proposed asset freeze both overbroad and wholly unsupported by any evidence of Raging Bull's net profits for the time period in question.

Second, and critically as to Mr. Dennis and the Winston Entities, *Liu* confirmed that joint-and-several liability is "at odds with the common-law rule requiring individual liability for wrongful profits."  *Liu*, 140 S.Ct at 1949.  The Supreme Court warned that the "practice could transform any equitable profits-focused remedy into a penalty," because it "runs against the rule to not impose joint liability in favor of holding defendants 'liable to account for such profits only as have accrued to themselves . . . and not for those which have accrued to another." *Id.* (quoting *Belknap v. Schild*, 161 U.S. 10, 25–26 (1896)).  Accordingly, the FTC's theory of liability allowing for an asset freeze of all of the Defendants' assets up to the total amount of gross revenue from the allegedly deceptive practices falls apart because, under *Liu*, the asset freeze may only reach each defendant's *own* net profits.  *See id.* at 1949–50.  Here, the FTC contends that Mr. Dennis, through

16

the Winston Entities, has received over $4.4 million from the scheme from April 2017 to July 2020.  [FTC Br. at 51 (citing PX24 ¶ 12-14).]  Although the FTC makes no attempt to differentiate Mr. Dennis's net profits from gross revenues, the FTC could not conceivably obtain more than $4.4 million from Mr. Dennis, rendering a blanket asset freeze entirely overbroad and unlawful. At worst, any asset freeze against Mr. Dennis must be limited to the approximately $4.4 million that the FTC claims he received.

## CONCLUSION

For the reasons stated above, the Court should deny the FTC's request for the entry of a preliminary injunction against Mr. Dennis and the Winston Entities.

Dated: December 13, 2020
      Washington, D.C.

Respectfully,

  /s/ Jonathan Shaw
Jonathan Shaw
BOIES SCHILLER FLEXNER LLP
1401 New York Ave, NW
Washington, DC 20005
Tel: 202 274 1123
E-mail: jshaw@bsfllp.com

Matthew L. Schwartz (pro hac vice forthcoming)
John T. Zach (pro hac vice forthcoming)
Sabina Mariella (pro hac vice forthcoming)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, New York
Tel.: (212) 446-2300
E-mail: mlschwartz@bsfllp.com
      jzach@bsfllp.com
      smariella@bsfllp.com

Brian Levin (pro hac vice forthcoming)
Levin Law, P.A.
2665 South Bayshore Drive
Penthouse 2B
Miami, Florida 33133
Tel: (305) 539-0593
E-mail: brian@levinlawpa.com

*Counsel for Defendants Kyle Dennis, Winston Research Inc., and Winston Corp.*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 13th day of December 2020 a true and accurate copy

foregoing was properly served on all parties through the ECF system.

/s/ Jonathan Shaw
Jonathan Shaw
BOIES SCHILLER FLEXNER LLP
1401 New York Ave, NW
Washington, DC 20005
Tel: 202 274 1123
E-mail: jshaw@bsfllp.com