# Exhibit 2

# SUPREME COURT
# OF THE UNITED STATES

IN THE SUPREME COURT OF THE UNITED STATES

- - - - - - - - - - - - - - - - - -

AMG CAPITAL MANAGEMENT, LLC,          )

ET AL.,                               )

        Petitioners,          )

         v.                  ) No. 19-508

FEDERAL TRADE COMMISSION,             )

        Respondent.           )

- - - - - - - - - - - - - - - - - -

Pages:  1 through 62

Place:  Washington, D.C.

Date:   January 13, 2021

## HERITAGE REPORTING CORPORATION
*Official Reporters*
1220 L Street, N.W., Suite 206
Washington, D.C.   20005
(202) 628-4888
www.hrccourtreporters.com

1

```
 1      IN THE SUPREME COURT OF THE UNITED STATES

 2    - - - - - - - - - - - - - - - - - -

 3    AMG CAPITAL MANAGEMENT, LLC,          )

 4    ET AL.,                               )

 5                  Petitioners,            )

 6              v.                    ) No. 19-508

 7    FEDERAL TRADE COMMISSION,             )

 8                  Respondent.            )

 9    - - - - - - - - - - - - - - - - - -

10

11                  Washington, D.C.

12              Wednesday, January 13, 2021

13

14              The above-entitled matter came on for

15    oral argument before the Supreme Court of the

16    United States at 10:00 a.m.

17

18    APPEARANCES:

19    MICHAEL PATTILLO, ESQUIRE, Fernandina Beach, Florida;

20        on behalf of the Petitioners.

21    JOEL R. MARCUS, ESQUIRE, Washington, D.C.;

22        on behalf of the Respondent.

23

24

25
```

2

```
 1              C O N T E N T S

 2   ORAL ARGUMENT OF:                    PAGE:

 3   MICHAEL PATTILLO, ESQ.

 4       On behalf of the Petitioners        3

 5   ORAL ARGUMENT OF:

 6   JOEL R. MARCUS, ESQ.

 7       On behalf of the Respondent        30

 8   REBUTTAL ARGUMENT OF:

 9   MICHAEL PATTILLO, ESQ.

10       On behalf of the Petitioners       59

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S
 2                                   (10:00 a.m.)
 3              CHIEF JUSTICE ROBERTS:  We will hear
 4    argument this morning in Case 19-508, AMG
 5    Capital Management versus the Federal Trade
 6    Commission.
 7              Mr. Pattillo.
 8              ORAL ARGUMENT OF MICHAEL PATTILLO
 9                ON BEHALF OF THE PETITIONERS
10              MR. PATTILLO:  Thank you, Mr. Chief
11    Justice, and may it please the Court:
12              The FTC Act's test, structure, and
13    purpose make clear that when Section 13(b)
14    authorizes the Commission to seek a permanent
15    injunction, it means just that, a permanent
16    injunction as traditionally understood.  It does
17    not mean injunctions and all equitable relief or
18    injunctions and monetary relief for past harms.
19              Three features of the Act make that
20    especially clear.  First, 13(b) is limited to
21    cases where someone is violating or is about to
22    violate the Act.  That limit to ongoing or
23    imminent violations would make no sense if 13(b)
24    authorized retrospective monetary relief for
25    past harms.
```

1           Second, where the Act allows relief

2    beyond injunctions, it says so.  Section 5(l)

3    authorizes an injunction and further equitable

4    relief as appropriate.  That language would have

5    been pointless if the word "injunction" itself

6    implied all equitable relief.

7           Third, another provision, Section 19,

8    authorizes monetary relief for past consumer

9    injury.  But it provides safeguards, including a

10   statute of limitations, a heightened proof

11   requirement, and notice to victims.  Those

12   limits would be meaningless if they could be

13   evaded under 13(b).

14          Even if there were a presumption that

15   mentioning a specific type of equitable relief

16   meant all equitable relief, and there should not

17   be, those three features overcome it.

18          To be clear, the Commission can get

19   retrospective relief for consumer harm, but it

20   must invoke Section 19, the mechanism Congress

21   provided for that purpose.  That makes sense.

22   Because the Act's prohibitions are broad and

23   general, Congress, since 1914, made agency

24   processes the primary enforcement mechanism so

25   the agency can apply its expertise and give

1    businesses notice on what is prohibited.

2              Section 13(b), by contrast, is a

3    narrow supplement for threatened harm where the

4    Commission must come to court to stop the

5    conduct quickly.  Where there is more time, like

6    for backward-looking remedies, there was no

7    reason for Congress to bypass agency

8    responsibilities to provide guidance.

9              CHIEF JUSTICE ROBERTS:  Mr. Pattillo,

10   one of the issues with your reading of the

11   statute is that it was passed roughly 50 years

12   ago, and in the intervening years, there's been

13   a significant change in how this Court

14   interprets statute -- statutes.

15             Back when this one was passed, we had

16   a pretty free-wheeling approach.  You know, we

17   weren't as confined to the specific language.

18   You sort of looked at what Congress had in mind

19   and -- and figured out the meaning in light of

20   that.

21             And, of course, today, we have a more

22   disciplined approach, you know, I think more

23   suited to our role under the Constitution.  But

24   shouldn't we construe this statute in the

25   environment in which Congress passed it in light

1    of the, as I said, more free-wheeling approach?

2           And I think there'd be a lot more

3    leeway to your friend on the other side argument

4    about an expansive reading of some of the

5    language.

6           So why -- why do we sort of adopt a --

7    I don't know what it is -- a view that -- that

8    is current today but wasn't current back then?

9           MR. PATTILLO:  Your Honor, I have two

10   responses to that question.  The first is that

11   this Court rejected a very similar argument in

12   Alexander v. Sandoval.  The argument was made

13   that, listen, at the time that Title VI of the

14   Civil Rights Act was enacted, the Court at that

15   time followed what you referred to as the more

16   free-wheeling approach to implying causes of

17   action and implied remedies.

18          And the Court said, be that as it may,

19   you know, we have since sworn off that method of

20   statutory interpretation and we decline, you

21   know, one -- one last drink.  And I think that

22   that applies equally here.  Whether or not that

23   was the motive at the time 13(b) was enacted,

24   the reasoning of Alexander versus Sandoval --

25          CHIEF JUSTICE ROBERTS:  Yeah, no, I --

1          MR. PATTILLO:  -- holds --

2          CHIEF JUSTICE ROBERTS:  -- I know

3   that's -- I know that's what we said.  Maybe I

4   just don't find that so -- so compelling.

5   It's -- it's -- it's -- you know, we try to look

6   at language as it was understood in other

7   contexts when we're interpreting provisions.

8   You know, we go back to the, you know, 1860

9   treatise and say what did that mean back then,

10  and we don't look at a contemporary dictionary.

11          Do you have any argument besides what

12  we said in Sandoval?

13          MR. PATTILLO:  Yes, I do.  The theory

14  that Congress somehow thought permanent

15  injunction carried with it all equitable relief

16  when it enacted 13(b) itself defies the three

17  features I mentioned in my opening.

18          In the very same legislation that

19  enacted 13(b), Congress expressly authorized an

20  injunction and other and further equitable

21  relief in Section 5(l).  So that cannot be

22  reconciled with the notion that Congress somehow

23  thought in -- the word "injunction" itself

24  automatically included all equitable relief a la

25  Porter's method of interpretation, much like the

1    --

2         CHIEF JUSTICE ROBERTS:  Thank you,

3    counsel.

4         Justice Thomas.

5         JUSTICE THOMAS:  Thank you, Mr. Chief

6    Justice.

7         Counsel, let's -- continuing along the

8    lines of the Chief Justice, let's assume that we

9    did not have Sections 5 and 19 and -- but you --

10   you still have the same language that we have in

11   13.

12        Would -- would it be reasonable to say

13   that Congress legislated against -- in that

14   case, in that instance, against the backdrop of

15   cases like Porter and Mitchell, and, if so, then

16   how would that change your argument?

17        MR. PATTILLO:  This Court looks to how

18   equitable terms are traditionally understood,

19   and permanent junctions traditionally exclude

20   monetary relief as compensation for past harm,

21   as Great-West noted.  And, here, the -- the

22   phrase, 13(b) itself refers to a permanent

23   injunction.

24        And you wouldn't ordinarily think of a

25   one-time order to turn over property as a

```
 1    permanent -- as a permanent injunction, and so

 2    the -- the specific language used in 13(b)

 3    itself, even without reference, but also 13(b)

 4    is limited to cases of imminent or ongoing harm.

 5              And it wouldn't have made any sense to

 6    authorize retrospective -- to -- to -- to link

 7    the authority for retrospective monetary relief

 8    to the availability of imminent or ongoing harm.

 9    Consumers don't become more or less worthy of

10    redress for their injuries depending on whether

11    or not the conduct is ongoing.

12              JUSTICE THOMAS:  So, with that

13    argument, how would you address or deal with the

14    19th Century intellectual property cases that

15    allowed monetary relief incident to the

16    injunction?

17              MR. PATTILLO:  All of those cases

18    involve a situation where there was -- the

19    parties had a general right to seek all

20    equitable relief, and that is simply not the

21    case here.  This case, 13(b) is just limited to

22    injunctions, so whether or not the other relief

23    of an accounting might be available where all

24    equitable relief is available to the plaintiff,

25    that's not the case here.
```

```
 1              Injunction means injunction in 13(b),

 2    and we know that, and it's limited by the three

 3    features of the Act that I've mentioned.

 4              JUSTICE THOMAS:  Thank you.

 5              CHIEF JUSTICE ROBERTS:  Justice

 6    Breyer.

 7              JUSTICE BREYER:  Good morning.  Here,

 8    I thought the briefs were very good in this

 9    case.  Blue brief, I think you're right.  Red

10    brief, I think you are right.  They can't both

11    be right, that's right.  All right.  You see

12    that's the old joke, but that's where I am.

13              So I'm pretty familiar with the

14    arguments and I see which way do we go, and the

15    argument, it seems to me, that's against you --

16    and I'll put the other half to the other side.

17              The argument that's against you is

18    simply this to me:  Law isn't perfect.  Courts

19    make mistakes.  We make mistakes too.  And this,

20    if it is a mistake, has been around for 50 years

21    and there's a pretty uniform interpretation

22    before the Seventh Circuit.

23              And if we never say let bygones be

24    bygones, I mean, we're going to be here to

25    Marbury versus Madison and beyond.  So too much
```

```
1    time has passed, water under the bridge,

2    good-bye.  Why doesn't that apply?

3              MR. PATTILLO:  Well, Your Honor, this

4    is the first time that the Court was called

5    to -- to step in to -- to resolve this conflict,

6    and the mode of interpretation has -- has

7    changed over -- over time, and the -- when the

8    courts of appeals took this approach during --

9              JUSTICE BREYER:  Oh, just wait.  For

10   my question, I'm assuming you're right on all

11   that, okay?  My question is still -- it's close,

12   and still the lower courts at least have been

13   uniform for 50 years.  We cannot undo everything

14   that was, in your opinion or mine or somebody

15   else's, decided not perfectly and may be wrong.

16   That's what I just asked.

17             MR. PATTILLO:  Well --

18             JUSTICE BREYER:  And so why wouldn't I

19   follow that very basic principle about courts

20   and how the judiciary has to function in a

21   society that's continuously changing?

22             MR. PATTILLO:  There are now two

23   courts of appeals, one on either side -- or,

24   excuse me, on -- there are courts of appeals on

25   either side.  There are now two courts of
```

1    appeals that have rejected the notion that 13(b)

2    carries with it all monetary relief, and there's

3    simply no rule that the first court of appeals

4    to issue its ruling on a particular version of

5    the law wins.  And so there's no reason to give

6    a -- a presumption to the -- the courts of

7    appeals that decided it first.

8              JUSTICE BREYER:  Okay.  Thank you.

9              CHIEF JUSTICE ROBERTS:  Justice Alito.

10             JUSTICE ALITO:  Mr. Pattillo, could I

11   ask you about the practicalities of -- of this

12   case.  Have some of the money in question here

13   already been distributed to the victims of this

14   scheme?

15             MR. PATTILLO:  Yes.  My understanding

16   is that around 500 million dollars has been

17   distributed.

18             JUSTICE ALITO:  If we rule in your

19   favor, what will happen with respect to those

20   individuals?  Will they be required to return

21   that money?

22             MR. PATTILLO:  I honestly don't know.

23   I would be surprised if -- if that is the

24   result.  One option would perhaps be for -- the

25   Commission would have to repay us out of -- out

1     of the federal Judgment Fund, which, you know,

2     is a reservoir that exists for paying

3     liabilities of the United States.  I suppose it

4     would be up to the Commission to decide whether

5     the United States bears the burden of its error.

6               JUSTICE ALITO:  What is the

7     relationship between the -- the order in

8     question here and the forfeiture order that was

9     issued in the Southern District of New York in

10    Tucker's criminal case?  There, he was, as I

11    understand it, required to return 3 billion

12    dollars.  Is that -- does that encompass the

13    amount of money that's involved here?

14              MR. PATTILLO:  There is -- my

15    understanding is that there is some overlap

16    between the assets that were at issue.  I mean,

17    it -- Mr. Tucker just had -- had one pool of --

18    of resources, and to date, my understanding is

19    that the Commission and the Southern District

20    have been divvying up the different

21    responsibilities.

22              But it's also worth noting here that

23    the order in this case encompasses --

24    encompasses money paid by innocent parties, such

25    as Mrs. Tucker and Park 269, which were never

1    alleged to have been -- and that amount is over

2    27 million dollars.  They were never alleged to

3    have participated in any wrongdoing.  And so

4    those assets certainly couldn't be subject to

5    the criminal forfeiture as well.

6              JUSTICE ALITO:  Let me turn back

7    briefly to basically the same question that the

8    Chief Justice asked.  If -- I mean, most of the

9    members of Congress are not lawyers.  That was

10   true when this provision was enacted.  And even

11   those who were lawyers, perhaps like me, never

12   heard the word "equity" when they were in law

13   school.

14              So suppose one of those members said,

15   well, here, we're going to authorize the

16   Commission to seek an injunction, so I'm going

17   to look at the most recent edition of Black's

18   Law Dictionary, which defines an injunction in

19   part as "a judicial process operating in

20   personam and requiring a person to whom it is

21   directed to do or refrain from doing a

22   particular thing."

23              If the member read that definition,

24   wouldn't they think that it would authorize

25   exactly what was done here?

```
1              MR. PATTILLO:  Perhaps there --

2    injunctions are broad and flexible, and,

3    certainly, as -- as the Court explained in

4    Great-West, with lawyerly inventiveness, just

5    about any order could be framed in terms of

6    injunction -- of an injunction.

7              But this Court has held that it --

8    it's not just what Black's Law Diction --

9    Dictionary says.  It's how the terms are

10   traditionally understood in equity.  And

11   permanent injunctions traditionally exclude

12   monetary relief as compensation for past harm.

13             JUSTICE ALITO:  All right.

14             MR. PATTILLO:  The fact that the

15   Commission --

16             JUSTICE ALITO:  Thank -- thank you.  I

17   -- I think --

18             CHIEF JUSTICE ROBERTS:  Justice --

19             JUSTICE ALITO:  -- my time has

20   expired.

21             CHIEF JUSTICE ROBERTS:  -- Justice

22   Sotomayor.

23             JUSTICE SOTOMAYOR:  Counsel, you argue

24   that there would be no reason for Congress to

25   provide for monetary remedies under Section 19
```

```
 1    if the FTC could obtain disgorgement under

 2    13(b).  But it makes sense to me that the FTC

 3    might sometimes want to establish new rules

 4    through agency adjudications that are binding on

 5    absent parties and to which courts will defer.

 6            So the more important question for me

 7    is -- and I hope you can answer it -- is, why

 8    would Congress authorize the FTC to seek a

 9    permanent injunction if no other equitable

10    remedies were available?  It seems that under

11    your understanding of the statute, why would the

12    FTC ever pursue a permanent injunction under

13    13(b) rather than a cease-and-desist order that

14    could lead to monetary relief?  It could --

15            MR. PATTILLO:  The answer is that --

16            JUSTICE SOTOMAYOR:  Go ahead.

17            MR. PATTILLO:  -- sometimes -- I'm

18    sorry.  The answer is that 13(b) is a -- it's a

19    narrow supplement to the overall FTC Act, which

20    is -- which almost every other single provision

21    is about or in service of administrative

22    processes.  13(b) exists for situations where

23    there is threatened or ongoing harm, and it

24    allows the Commission to come to court to stop

25    the conduct quickly --
```

     1               JUSTICE SOTOMAYOR:  But it could do
     2     that --
     3               MR. PATTILLO:  -- in order to get --
     4               JUSTICE SOTOMAYOR:  -- it could do
     5     that with a temporary injunction, and so it
     6     doesn't need to do it with a permanent
     7     injunction.  And if it's barred from getting
     8     permanent relief and remedies, why would it ever
     9     seek a permanent injunction?
    10               MR. PATTILLO:  It would -- it just --
    11     if it -- if -- there's no need if it's a routine
    12     case where the agency doesn't need to
    13     pronounce -- as is its statutory obligation, to
    14     define whether or not -- apply its expertise and
    15     define whether particular conduct is prohibited.
    16     The -- the permanent injunction path through
    17     district court might be a -- a quicker and more
    18     expedient remedy.
    19               But the fact is that the -- the Act's
    20     prohibitions are broad and general.  And
    21     Congress made agency processes the primary
    22     enforcement mechanism, and its job is to
    23     apply its expertise --
    24               JUSTICE SOTOMAYOR:  So why -- why even
    25     give it a permanent injunction when it wasn't,

1    according to your reading, able to recover

2    anything else under that process?

3           It could always do a temporary

4    injunction and stop impend -- and stop impending

5    harm that way and then always have to pursue

6    administrative process to get monetary relief.

7    It makes no sense to me.

8           MR. PATTILLO:  Because sometimes that

9    would be -- that would be good enough.

10   Sometimes just stopping the conduct is a

11   sufficient remedy in and of itself.  There won't

12   always need to be consumer redress in every

13   case.  And, in fact, you know, for most of

14   the -- most of the FTC's early history, it had

15   no authority to seek consumer redress whatsoever

16   until it was enacted in -- in Section 19.

17   Stopping the conduct was its primary

18   responsibility.

19          CHIEF JUSTICE ROBERTS:  Justice Kagan.

20          JUSTICE KAGAN:  Mr. Pattillo, I'd like

21   to go back to the Chief Justice's first

22   questions about which approach we're supposed to

23   use, our old approach, which was very liberal in

24   finding rights and remedies, or our new

25   approach, which is decidedly not.

```
 1              And you said, well, Alexander v.
 2    Sandoval, and the Chief asked you to put that --
 3    the Chief Justice asked you to put that aside.
 4    And I'd like you to put that aside as well.  I
 5    think it's at least arguably very different.
 6              Do you have a -- a theoretical
 7    argument for why it is that we should be using
 8    the new approach?  Because I would have thought
 9    that the whole idea behind the new approach is
10    that what matters most is what Congress thinks
11    about a question, not what the Court thinks
12    about it, and that that would suggest, well,
13    we're supposed to be looking at what Congress
14    thought in 1973 given the backdrop of all of our
15    precedents.
16              MR. PATTILLO:  Well, as I mentioned,
17    the -- the words of the statute are the law.
18    The words of the statute tell you what Congress
19    intended.  And even under the old approach, what
20    -- if we're trying to discern whether Congress
21    thought that -- you know, that "injunction"
22    actually meant all relief, all we need to know
23    is that at the same time that Congress enacted
24    13(b) it also enacted Section 5(l).  And at that
25    time --
```

1          JUSTICE KAGAN:  So that --

2          MR. PATTILLO:  -- it expressly

3     authorized --

4          JUSTICE KAGAN:  -- that's an argument

5     -- I mean, that's an argument on a different

6     point, the point about what Congress would have

7     understood back then, but -- but I take that to

8     be assuming my premise, which is that the very

9     issue is -- I mean, that the thing we're

10    supposed to be figuring out is what Congress

11    would have assumed back then, isn't it?

12         MR. PATTILLO:  Yes, but I think we --

13    in -- in under -- in trying to think what

14    Congress understood about Porter and Mitchell,

15    we have to look at what else Porter and Mitchell

16    said, and notwithstanding Porter and Mitchell's

17    broad language, Congress also would have known

18    that Porter and Mitchell said you have to look

19    at the entire statute --

20         JUSTICE KAGAN:  Well, in -- in just --

21         MR. PATTILLO:  -- and you have to see

22    the --

23         JUSTICE KAGAN:  Sorry, Mr. Pattillo.

24    In -- in -- in -- in just two years before

25    Congress enacted this legislation, the Second

1    Circuit, you know, obviously, an important

2    circuit when it comes to these matters, held

3    that the FTC had power to seek restitution

4    because its statute said that the agency could

5    seek an injunction, the exact same question as

6    is -- as -- as we're confronting.

7         And the Second Circuit relies on

8    Porter, relies on Mitchell, relies on all the

9    old cases that you say are distinguishable, and

10   -- and said yes, an injunction includes

11   restitution according to Supreme Court law on

12   the subject.

13        So doesn't that suggest that the FTC

14   has a pretty good point about what Congress

15   understood in 1973?

16        MR. PATTILLO:  No, I don't think so.

17   If -- if the -- if Congress were looking to what

18   Porter held, Porter acknowledged that it was

19   looking to see whether an implied remedy was

20   consist -- it had to look and see if the implied

21   remedy was consistent with the statutory scheme.

22   And Porter found that even though there was

23   nothing that precluded an implied restitution

24   remedy, it said, look, there is another section

25   of the Emergency Price Control Act and that

1    provision addresses damages.  So the fact that

2    the -- that the statute elsewhere mentions

3    damages supersedes the possibility that there

4    could be an implied damages remedy.

5              JUSTICE KAGAN:  Thank you, Mr.

6    Pattillo.

7              MR. PATTILLO:  So, if Congress wanted

8    --

9              JUSTICE KAGAN:  Thank you very much.

10             CHIEF JUSTICE ROBERTS:  Justice

11   Gorsuch.

12             JUSTICE GORSUCH:  Good morning,

13   counsel.  I'd like your help with a -- a

14   line-drawing problem.  I -- I -- I think you

15   agree that an injunction can be used to provide

16   certain forms of equitable relief, including

17   restitution perhaps, an accounting, requiring a

18   freezing of assets, or handing over a thing of

19   value, but -- but it's -- it -- it can't go this

20   far.

21             How would you have us draw that line

22   and describe it?

23             MR. PATTILLO:  I think it's a -- I

24   think it's a fairly simple line, and we can look

25   to how Justice Story described it.  There's a

1    difference between -- there's a difference

2    between the initial determination as to who owns

3    the property, whether property should be

4    returned, and that principle is articulated in

5    terms of other equitable doctrines, such as

6    restitution.

7          Now there were instances in the past,

8    and these were, you know, more the -- certainly,

9    more the exception than the rule, where an

10   injunction might use -- be used to enforce that

11   prior decree, where -- where someone had already

12   been given the award of restitution that

13   determines the property right.

14         And then, if there was some other

15   reason why an additional coercive remedy was

16   needed, the injunction might issue to force

17   that.  As Justice Story explained in his

18   treatise, that type of injunction was issued

19   "after a decree in the nature of an execution to

20   enforce the underlying decree."  And that's

21   completely different from what the Commission

22   seeks here.

23         The Commission doesn't seek to use an

24   injunction to enforce a right to restitution.

25   It doesn't have a right to restitution under

     1     13(b).  It -- it's trying to -- to bootstrap

     2     that.  And so I -- I think that the distinction

     3     at equity was actually pretty clear.

     4             JUSTICE GORSUCH:  Thank you, counsel.

     5             CHIEF JUSTICE ROBERTS:  Justice

     6     Kavanaugh.

     7             JUSTICE KAVANAUGH:  Thank you, Chief

     8     Justice.

     9             And good morning, counsel.  Your

    10     argument here is strikingly similar to the

    11     argument advanced in the dissent in Porter by

    12     Justice Rutledge, joined by Justices Reed and

    13     Frankfurter, and the dissent in Mitchell written

    14     by Justice Whittaker, joined by Justices Black

    15     and Clark.

    16             The Rutledge dissent, Justice Rutledge

    17     dissent in Porter, for example, said "Congress

    18     could not have been ignorant of the remedy of

    19     restitution.  It knew how to give remedies it

    20     wished to confer.  There was no need to add this

    21     one, nor do I think it did so.  It did not give

    22     it expressly."  That kind of argument.

    23             What do we do with Porter and Mitchell

    24     if we decide this case in your favor?  In other

    25     words, how should we write the opinion with

1    respect to those cases?

2         MR. PATTILLO:  This Court doesn't need

3    to overrule Porter and Mitchell any more than it

4    needed to do so in Meghrig, which held that in

5    the context of RCRA, "injunction" did not mean

6    all equitable relief.

7         Neither Porter nor Mitchell involved a

8    statute with the three features that I mentioned

9    at the outset.  In neither case did Congress

10   elsewhere authorize an injunction and other and

11   further equitable relief, making it clear that

12   Congress didn't presume that an injunction

13   carried with it all equitable relief.

14        Neither Porter nor Mitchell addressed

15   a statute limited to ongoing or threatened

16   violations, which is the sort of thing that an

17   injunction would address but is totally

18   inconsistent with backwards-looking monetary

19   relief.

20        And neither statute in Porter or

21   Mitchell provided the very same monetary relief

22   in a separate provision -- here, that's Section

23   19 -- subject to various protections like a

24   statute of limitations that would be rendered

25   entirely meaningless if the Commission could

1    implicitly get the same relief under 13(b)

2    instead.

3          So Porter and Mitchell are entirely

4    distinguishable based on the statutory scheme.

5          JUSTICE KAVANAUGH:  And picking up on

6    one of Justice Breyer's questions, when you have

7    the combination of Porter and Mitchell plus some

8    maybe broad, you would say too tangential, but

9    some Congressional ratification argument, and

10   all the court of appeals for a number of years

11   interpreting it in the FTC's favor, at some

12   point, does all that combine, do you think, to

13   get us to a point of leave well enough alone?

14         I mean, certainly, stability in the

15   law is important.  And when you have Porter and

16   Mitchell plus ratification plus courts of

17   appeals, at some point, does that kick in?

18         MR. PATTILLO:  I -- I don't think so.

19   Long-standing error doesn't make it any less

20   error.  The statute is still the statute, and

21   now that the issue is before this Court, it's

22   the Court's duty to give the correct

23   interpretation of the statute, notwithstanding a

24   long history of error.

25         JUSTICE KAVANAUGH:  Thank you.

1          CHIEF JUSTICE ROBERTS:  Justice

2     Barrett.

3          JUSTICE BARRETT:  Counsel, let's say

4     that we agree with you about 13(b).  Your

5     client, I don't understand you to be arguing

6     that he has clean hands.  I mean, he's been

7     convicted.  He has the dubious distinction of

8     being the subject of an episode of "Dirty Money"

9     on Netflix.

10          But you -- you suggested in your brief

11     that because of the safeguards of Section 19, in

12     particular, you know, the -- the reasonable man

13     standard, knowing and understanding that the

14     conduct was deceptive, that the FTC couldn't

15     have gotten a monetary remedy from him under 19.

16          So is -- is it your position that if

17     we adopt your view, there's no way for the FTC

18     to get the ill-gotten gains back from someone

19     who has violated the law like your client?

20          MR. PATTILLO:  I'm sorry, I didn't

21     mean to suggest that the FTC could not have

22     proven its case under Section 19, although I --

23     I do think there is a substantial question about

24     that.

25          In the -- in Judge Bea's dissent in

1    the decision below, he noted that, you know, the

2    three judges on the Ninth Circuit have looked at

3    the disclosures and they thought that they were

4    accurate and they were not deceived by that.

5          But notwithstanding that, the fact is

6    that, you know, the decision here doesn't just

7    affect my client, it doesn't just affect, you

8    know, payday lenders.  As our amici, the

9    Chamber, has pointed out and as, you know,

10   this -- the sweep of the FTC Act is about as

11   broad as you can get, reaching into every single

12   area of commerce, and it's precisely because the

13   prohibitions of the Act are so broad and general

14   that it's important to hold the Commission to

15   its primary responsibility of, you know, telling

16   businesses what the law is prospectively instead

17   of running to court instead, you know, trying to

18   seek retrospective monetary relief.

19          JUSTICE BARRETT:  Thank you, counsel.

20          CHIEF JUSTICE ROBERTS:  A minute to

21   wrap up, Mr. Pattillo.

22          MR. PATTILLO:  The question here is

23   whether 13(b)'s reference to "permanent

24   injunction" means permanent injunction or

25   whether it instead means all equitable relief

1    and money for past harms.

2            The three features of the Act that

3    I've discussed confirm that "injunction" is

4    limited to an injunction as that term was

5    traditionally understood.

6            To be any clearer, Congress would have

7    to take the absurd step of saying, and by

8    "injunction," we mean only injunction, not other

9    remedies.  But this Court does not impose and

10   never has imposed any such requirement.

11           The FTC Act, moreover, is striking in

12   its consistent focus on agency processes to

13   prospectively define prohibited conduct.  Yet,

14   under the Commission's view, the single

15   sentence, second-level proviso in 13(b)

16   authorizing permanent injunctions is virtually

17   all the statute it needs.

18           The Commission can get all the

19   injunctions and monetary relief it wants without

20   the burdens of the administrative processes that

21   were its very reason for being.  That cannot be

22   right.  The Court should return the Commission

23   to the limits that Congress placed on its

24   authority.

25           CHIEF JUSTICE ROBERTS:  Thank you,

1    counsel.

2              Mr. Marcus.

3              ORAL ARGUMENT OF JOEL R. MARCUS

4                 ON BEHALF OF THE RESPONDENT

5              MR. MARCUS:  Thank you, Mr. Chief

6    Justice, and my it please the Court:

7              The Petitioners are asking you to rule

8    that when Congress allowed the Commission to

9    enforce the FTC Act in federal court, it

10   intended that the Court would merely stop the

11   violations while letting the violator keep his

12   stolen money.

13             Such a ruling would radically depart

14   from the foundational principle of equity

15   recognized just last term in Liu that wrongdoers

16   should not profit from their own wrongdoing.

17             It would also profoundly deviate from

18   the understanding of injunctive remedies that

19   was embedded in the law when Congress enacted

20   Section 13(b), as many of the Court's questions

21   have recognized.

22             Courts of equity have recognized since

23   before the founding that the equitable power to

24   issue an injunction inherently includes the

25   power to order the return of unlawful gains.  As

1    the Court summed it up in Porter, nothing is

2    more clearly the subject of a suit for an

3    injunction than the recovery of that which has

4    been illegally acquired and which has given rise

5    to the necessity for injunctive relief.

6           Sections 19 and 5(l) of the Act, which

7    provide remedies when the Commission chooses to

8    enforce the Act administratively, do not create

9    an unmistakable inference that Congress intended

10   to limit traditional equitable powers when the

11   Commission chooses instead to proceed in court.

12   Section 19 expressly says otherwise in the

13   savings clauses.  Section 5(l) serves a

14   fundamentally different role in the Act than

15   Section 13(b), and its language reflects its

16   function.

17          A cease-and-desist order works like a

18   prohibitory injunction.  Congress therefore had

19   to specify the additional remedies it wanted for

20   a violation.  It did not need to do that in

21   Section 13(b) but could instead invoke its

22   understanding of the traditional equitable

23   powers of injunction without the need for

24   elaboration.

25          Together, the -- Sections 9 --

1    Sections 13(b), 19, and 5(l) work in harmony to

2    give the Commission a choice between effective

3    enforcement pathways that can provide meaningful

4    relief to victimized consumers.

5            CHIEF JUSTICE ROBERTS:  Counsel, a lot

6    of the cases you -- you cite in support of a

7    broad reading of injunction -- injunction and

8    equitable powers -- in fact, I think most of

9    them involve courts, not agencies.  And -- and

10   courts have broad inherent equitable power.  You

11   -- you don't sort of parse and construe their

12   authority very carefully, at least I don't think

13   so.  But this involves an agency, and an agency

14   only has the authority delegated to it by

15   Congress.  And I'm not sure we can assume that

16   those precedents involving courts apply so

17   smoothly in the context of an agency.

18           MR. MARCUS:  Well, certainly, the

19   agency has whatever power Congress has accorded

20   it, which is exactly why Congress had to be more

21   specific when it was talking about remedies for

22   the agency's own adjudicatory orders.

23           But Section 5 -- I'm sorry, Section

24   13(b) says the Commission may seek and the court

25   may grant a permanent injunction.  So what

1    Congress is saying there is that the Commission

2    can invoke the courts' equitable authority.  And

3    that then puts the issue squarely within the

4    courts' authority, as you just alluded to.

5            CHIEF JUSTICE ROBERTS:  Well, I'm not

6    sure that follows.  I mean, "the agency can seek

7    and the court can enforce" doesn't mean that the

8    same authority that a court has the agency has;

9    just that the court can enforce whatever

10   authority the agency has.

11           MR. MARCUS:  It doesn't say "enforce";

12   it says "grant."  And the court can enforce

13   under a different provision, Section 5, the

14   Commission's own orders.  But what Section 13(b)

15   is doing is it's giving the Commission the

16   ability to go to court to seek the relief that a

17   court can grant.  This is no different than what

18   the price administrator did in Porter or the

19   Department of Labor in --

20           CHIEF JUSTICE ROBERTS:  The -- your

21   friend on the other side makes the point that

22   "injunction" appears in the United States Code

23   throughout the code hundreds of times.  And is

24   your position that, whenever it does, a broader

25   range of equitable powers is conferred on an

1    agency?

2              MR. MARCUS:  Well, again, it's not

3    that the power is conferred on the agency; it's

4    that the court has inherent powers.  Now, in --

5    in many cases, it -- it may be appropriate in --

6    in conjunction with an injunction to engage in

7    other types of equitable remedies, but it's not

8    always appropriate.  These are case-by-case

9    determinations.

10             CHIEF JUSTICE ROBERTS:  Thank you,

11   counsel.

12             Justice Thomas.

13             JUSTICE THOMAS:  Thank you, Mr. Chief

14   Justice.

15             Mr. Marcus, Section 13(b)(1) says that

16   whenever the Commission has reason to believe

17   that a person, partnership, or corporation is

18   violating or is about to violate any provision

19   of law.  That seems to suggest that that

20   provision is focused on forward-looking,

21   preventing a -- a future or a present action.

22             It seems that what you're doing here

23   is using it for something that has already

24   happened.  Would you be kind enough to reconcile

25   your approach with the language of 13(b)?

 1          MR. MARCUS:  I'd be happy to, Justice

 2    Thomas.  "Is or is about to" echoes the standard

 3    for the grant of an injunction.  For example,

 4    the -- typically, an injunction requires there

 5    to be ongoing or expected conduct, and -- but,

 6    once the court's equity jurisdiction has been

 7    properly invoked, the court can order associated

 8    remedial relief.  And that's what happened in

 9    all of the 19th Century intellectual property

10    cases.  And, in fact, in the Root case in

11    particular, the Court said your injunction --

12    I'm sorry, your patent has expired.  Therefore,

13    you can't seek an injunction and you cannot get

14    a naked monetary remedy.

15          But, here, there was ongoing conduct

16    at the time the FTC sued.  The court granted an

17    injunction.  And the question is, once the court

18    has had its authority triggered, once the court

19    has exercised that authority, can it also engage

20    in the traditional mechanisms of injunctive

21    relief?  And I think the answer in centuries of

22    law is pretty clear.

23          JUSTICE THOMAS:  Would you just take a

24    minute and explain again why -- from my

25    perspective, it seems as though what you're

 1    doing here fits more comfortably under Section

 2    19.  But would you explain why the Commission

 3    chooses to use Section 13 rather than Section 19

 4    again?

 5          MR. MARCUS:  Certainly.  Well, it --

 6    for one thing, it is easier to use Section 13 in

 7    many respects than it is in Section 19.  But,

 8    also, there are many cases where it doesn't take

 9    a lot of Commission expertise to explain why a

10    particular act is deceptive.  And, here,

11    certainly, it did not take the agency or even

12    the U.S. Attorney's Office for that matter to

13    explain to Scott Tucker that misleading people

14    about the terms of their loan was a deceptive

15    act.  So, when the Commission feels that it

16    doesn't need to expound on the -- the meaning

17    and boundaries of the FTC Act, it can bring

18    cases under Section 13.

19          Now, keep in mind, when it does that,

20    it gives up a bunch of stuff.  It gives up the

21    ability to find its own facts.  It gives up the

22    somewhat broader remedies that Section 19

23    allows, including -- Section 19 allows us to sue

24    in state court, as well as federal court.

25          And so each -- it's a little bit like

1    the choice between rulemaking and adjudication

2    in, you know, Bell Aerospace.  Congress wanted

3    the Commission to have flexibility to choose

4    between enforcement pathways.  They both --

5                CHIEF JUSTICE ROBERTS:  Justice

6    Breyer.

7                JUSTICE BREYER:  History matters.  I

8    think Justice Brandeis, when he started, was

9    faced with a business community that was very

10   suspicious of the FTC's power and thought it

11   would be abused and a progressive community that

12   thought it's absolutely necessary to bring bad

13   business practices under control.  So they

14   compromised.

15               The compromise was you've got to do

16   what the FTC says, but before it tells you to do

17   something, it will find that what you're doing

18   now is wrong.  It will find that.  It will be a

19   cease-and-desist order, later expanded under

20   Moss-Magnuson, I think, to include violation of

21   a rule.

22               So Section 5, cease-and-desist order

23   or violation of a rule, ha, damage of some kind.

24   Nineteen, the same thing.  And now we have right

25   in the middle 13, no protection like that

1    whatsoever.  Do not worry, says the FTC, we will

2    only use it in exceptional cases.

3              Ha!  In 2012, they repeal that.  And

4    now, 10 years later, after this has been in

5    effect for a few years, I read that 100 cases

6    under this provision are in the courts, compared

7    with 10 or 12 under the regular cases.

8              And you say it's just obvious, we're

9    going to get those people who think their bad

10   conduct is obvious.  Look at Skechers.  Look at

11   the Cardinal case.  Go back to the famous Unburn

12   case.  Add substantiation.

13             People wouldn't know that it is an

14   unfair practice that a chiropractor who was

15   married to a wife who had some income from the

16   company and therefore is a conclusion as to the

17   muscle toning of the company should be

18   discounted.  And that's the kind of case they're

19   bringing now.

20             Now do you see my point?  On the one

21   hand, it's well-established law in the lower

22   court.  On the other hand, if we interpret it

23   your way, we -- we -- we say your fears,

24   business community, were absolutely right.  It

25   is now up to the FTC.  Before you know the thing

```
1    is wrong, they hit you with bad damages.

2              This case?  Perhaps you're right.  But

3    Skechers, Cardinal, even Unburn, build strong

4    bodies eight ways, that was Wonder Bread.  They

5    only did it six ways.  I mean, you see, it's

6    giving the FTC -- that -- that -- you get my

7    point.  Now I'd like to hear an answer.

8              MR. MARCUS:  I do get your point,

9    Justice Breyer, and the answer is that in 1914,

10   when the -- when the Commission was created,

11   there was a bargain struck.  And in 1973, when

12   consumer fraud became rampant in the economy and

13   people were complaining about the toothless FTC,

14   there was a new bargain struck where the

15   Commission could go into court and seek remedies

16   in court as a litigant in the first instance.

17             Courts are, of course, bound by

18   principles of constitutional due process and

19   notice.  And if the court concludes that the --

20   that the chiropractor couldn't possibly

21   understand what was required of him, it will

22   find that a remedy is not available.

23             Many of the cases that you're

24   referring to, though, Justice Breyer, actually

25   involve settlements that were made with the
```

1    Commission in the course of administrative

2    proceedings.  These things do get complicated.

3    But those are companies that agreed to settle.

4              CHIEF JUSTICE ROBERTS:  Justice Alito.

5              JUSTICE ALITO:  In answer to Justice

6    Thomas's question, well, his -- your answer to

7    Justice Thomas's question leads me to ask this:

8    If the activity here had ceased before this

9    order was entered, would the court have been

10   able to enter it?

11             MR. MARCUS:  Well, so, if the activity

12   had ceased and it was -- there was no

13   possibility that it could have resumed again,

14   then the answer is typically no.  Of course,

15   there are some people who, when the FTC starts,

16   you know, inquiring about them, they stop for

17   the time being, only to resume again later.  But

18   if they --

19             JUSTICE ALITO:  And why would Congress

20   -- why would Congress draw that line?  Why would

21   it provide a -- a -- a restitution remedy when

22   there is still ongoing activity but no

23   restitution remedy when all of the harm has

24   already been completed?

25             MR. MARCUS:  Well -- well, because the

1    -- the remedy goes along with the injunctive

2    remedy.  It's inherent in the injunction that

3    the court can issue.  And that's what the

4    Congress has traditionally done.  It's what it

5    did in the 19th Century patent and copyright

6    cases.

7              JUSTICE ALITO:  What would be the

8    policy -- what would be the policy justification

9    for doing that?  Why would Congress draw that

10   line?

11             MR. MARCUS:  I can't tell you why

12   Congress would want to have a less-than-complete

13   remedy, but it's -- it's something that Congress

14   does quite often.  It does -- it's still to this

15   day in the Securities and Exchange Act cases.

16   It requires -- it -- there is an about to

17   requirement -- before they can get the equitable

18   relief.

19             JUSTICE ALITO:  We asked Mr. Pattillo

20   questions about how this provision would have

21   been understood in 1973.  His brief cites

22   comments made by a former FTC official,

23   Mr. FitzGerald, that addresses that directly,

24   and they are pretty damaging to your position.

25             Mr. FitzGerald says that when 13(b)

1    was enacted, nobody on the Commission imagined

2    that it would become an important part of its --

3    the Commission's consumer protection program.

4         But the Commission decided that

5    Section 19 was too time-consuming, so it

6    wanted -- it looked for a workaround, and

7    "neither the text of 13(b) nor its legislative

8    history disclosed a basis to argue for broad

9    equitable relief.  The Commission's attorneys

10   thought these arguments were not going to

11   succeed, but, to their surprise, they were

12   successful."

13        And you don't say anything about

14   Mr. FitzGerald.  Do you want to say something

15   about him now?

16        MR. MARCUS:  I'd be happy to, Justice

17   Alito.  Mr. FitzGerald, for one thing, is not

18   Congress.  So the question is what Congress

19   understood.  And there was a huge body of law

20   indicating that Congress understood what it was

21   doing.

22        But, beyond that, what

23   Mr. FitzGerald's article does indicate is that

24   in the 1970s, at the time when people were

25   complaining that the FTC was lackadaisical about

```
1     enforcement, the Commission's mindset was all

2     about rulemaking, making broad rules to govern

3     large industrial sectors, and it did take a

4     little while for the Commission's mindset to

5     change from a rulemaking to an enforcement

6     perspective.

7              But, once it did, it vigorously

8     started invoking Section 13(b), and, as has been

9     pointed out by the questioning, courts for 40

10    years now have accepted those things.  And

11    before the FTC even did this, courts had been

12    accepting the exact same arguments in the SEC

13    context.

14             JUSTICE ALITO:  All right.  Thank you.

15             CHIEF JUSTICE ROBERTS:  Justice

16    Sotomayor.

17             JUSTICE SOTOMAYOR:  Counsel, how do

18    you explain Section 5(l), which was passed at

19    the same time as Section 13(b) and separately

20    authorizes mandatory injunctions and further

21    equitable relief?

22             Why would Congress use a different

23    language for injunctive relief in one section

24    and just stop at "injunctive relief" and in the

25    other add "and further equitable relief" in a
```

1   different section?

2           MR. MARCUS:  Well, the textual

3   differences in the two provisions reflect their

4   functional differences.  Section 5(l) is used to

5   enforce cease-and-desist orders, the

6   administrative orders, and -- and so there

7   already basically is an injunction on the books,

8   and it's an injunction that doesn't come with

9   any traditional remedies.  So Congress had to

10   say exactly what remedies it wanted.  And that's

11   why it's limited to mandatory injunctions and

12   other equitable relief.

13           But, in Section 13, Congress didn't

14   need to do that.  It could rely on, could

15   piggyback on, all of the traditional remedies

16   inherent in a permanent injunction, which is

17   different from a mandatory injunction.  And so,

18   you know, you could look at it that, in fact,

19   what Congress wanted to make sure of was that,

20   no matter how the Commission proceeded, whether

21   it proceeded by administrative, by a

22   cease-and-desist order, or whether it went into

23   court as a litigant, that each time consumers

24   were harmed they would have the opportunity to

25   get redress for their victimization.

1          JUSTICE SOTOMAYOR:  Now I'm following

2    up slightly on Justice Alito's question.

3    Legislative history is not unimportant to me.

4    What am I to make of the fact that I saw nothing

5    in the history of this bill suggesting that

6    Congress understood that Section 13(b)

7    authorizes monetary awards?

8          Quite to the contrary, the prior

9    version of what became Section 19 triggered

10   extensive debate because there wasn't money

11   damages available, and Section 19 was passed to

12   remedy what was perceived as a fault in the bill

13   as it existed.

14         So what am I missing in terms of the

15   absence of anything to do with this issue before

16   Congress?

17         MR. MARCUS:  Well, you are correct,

18   Justice Sotomayor, that the legislative history

19   does not -- 13(b) itself does not explicitly

20   address money.  But there is a presumption that

21   Congress legislates against the backdrop of the

22   law.  And the backdrop of the law of injunction

23   really couldn't be clearer.

24         Now, when it comes to Section 19, the

25   debate about monetary remedies in Section 19 had

  1    to do with the Commission's own ability to order

  2    monetary remedies in its own administrative

  3    processes as part of a cease-and-desist order.

  4    The -- as Section 19 was being debated, the

  5    Ninth Circuit ruled in the Heder case, which is

  6    cited in our brief, that the Commission could

  7    not order monetary remedies in its own

  8    proceedings, and that's why money was front and

  9    center in Congress's mind.  But it --

 10            CHIEF JUSTICE ROBERTS:  Justice Kagan.

 11            JUSTICE KAGAN:  Mr. Marcus, it seems

 12    to me that the best argument against your

 13    position, and -- and it's a strong one, comes

 14    from Section 5 and Section 19, which have these

 15    protections in them that Section 13 do not, that

 16    there has to be a repeated violation, that there

 17    has to be a certain kind of mens rea and so

 18    forth.

 19            And -- and it -- it does seem as

 20    though your interpretation of Section 13 makes

 21    those pretty much entirely irrelevant.  I mean,

 22    you say, well, this is a choice.  There are two

 23    pathways of different kinds of administrative

 24    action.

 25            But what -- what -- what seems

1    significant about those two pathways as you've

2    led them -- as you've laid them out, is that one

3    is so clearly better from the agency's

4    perspective.  And so I'm wondering if that's the

5    kind of choice that Congress really gave to the

6    agency.

7            MR. MARCUS:  Well, Justice Kagan, the

8    -- I think that the core of the answer goes back

9    to what Justice Breyer was describing in his

10   answer to me, which was a fear of Congress that

11   an agency would have too much power, and if

12   Congress gave the Commission the ability to

13   address economy-wide practices in -- in -- under

14   fairly broad terms, and it was concerned that

15   the agency was going to declare novel practices

16   to be deceptive or unfair or anticompetitive.

17           And so Congress was understandably

18   concerned and, therefore, included procedural

19   protections in -- you know, in -- in the

20   provisions regarding relief for agency

21   processes.  But what it --

22           JUSTICE KAGAN:  It seems as though

23   that's exactly why we should maintain the

24   integrity of those protections rather than your

25   interpretation, which essentially makes them

```
 1    irrelevant.  It was nice that Congress once
 2    thought that, but we don't have to deal with
 3    that anymore.
 4              MR. MARCUS:  It -- it doesn't make
 5    them irrelevant.  It just makes one pathway more
 6    attractive in certain instances than another,
 7    but, if the Commission does encounter a novel
 8    practice or if the Commission wishes to make its
 9    own fact-finding in -- in particularly
10    complicated cases or difficult cases, then it
11    can do that only in the administrative pathway.
12              So it's not just a -- it's not just a
13    freebie.  The Commission has to give something
14    up when it decides to go to federal court.  It
15    just so happens that, you know, there's a lot of
16    cases that we deal with that are not
17    particularly complicated and that do not require
18    a lot of explanation of what deception is.
19    There are scams that run amok all over the
20    place.
21              JUSTICE KAGAN:  If you could --
22              MR. MARCUS:  It's happening right now.
23              JUSTICE KAGAN:  Just going back to
24    Justice Breyer's numbers, I mean, can you give
25    me any sense of the empirics of this, how often
```

1    the FTC uses the cease-and-desist order route as

2    opposed to the go-to-court route?

3                MR. MARCUS:  I don't have exact

4    numbers for you, Justice Kagan, but, in most

5    antitrust cases, the Commission uses the

6    administrative route.  Of -- in at least several

7    cases a year, the Commission uses the

8    administrative route in consumer protection

9    cases, but there's no question that the agency

10   brings far more cases in court than it does in

11   the administrative process.

12               CHIEF JUSTICE ROBERTS:  Justice

13   Gorsuch --

14               MR. MARCUS:  But, again, that largely

15   reflects the --

16               CHIEF JUSTICE ROBERTS:  Justice

17   Gorsuch.

18               JUSTICE GORSUCH:  Oh, counsel, finish

19   your answer.  I'm -- I'm interested.

20               MR. MARCUS:  Oh, thank you.  That

21   largely reflects the -- the kind of basic

22   deceptiveness of much of the stuff that we deal

23   with on the consumer protection side.

24               JUSTICE GORSUCH:  Well, let -- let's

25   focus on the consumer protection side because I

1    think the antitrust side, there are a lot more

2    standards out there that people are familiar

3    with.  But -- but Justice Breyer really does

4    remind us of -- of the history here.  The FTC

5    was set up in part to enact rules about

6    deceptive conduct.  It chose not to go that

7    route, preferred an enforcement route.  And --

8    and recognizing that a term like "deceptive

9    practices" in Section 5 is not exactly

10   self-defining -- it may lack some of the

11   substance that we now have at least under the

12   Sherman Act in the antitrust context -- laid out

13   a bunch of protections in Section 19 before your

14   money can be taken away.

15          We've all kind of wandered around this

16   question, but is -- isn't -- I think our core

17   concern is you're rendering that -- those

18   protections superfluous, that there's very

19   little incentive for the agency to ever comply

20   with them, and it's just a -- another step away

21   from what Congress had anticipated would be a

22   regulatory regime that's never materialized.

23          MR. MARCUS:  Well, certainly, Justice

24   Gorsuch, Congress did seem to recognize the

25   issue, and that's why it included savings

1    clauses in Section 19.  You know, I -- I -- I

2    don't see much other explanation for very broad

3    provisions that clearly on their face say this

4    is in addition to other remedies and you can't

5    use the existence of this provision to interpret

6    other remedies.

7                JUSTICE GORSUCH:  Let -- let me put

8    the question a different way:  What incentive

9    does the Commission have today to use Section

10   19?

11               MR. MARCUS:  The -- the Commission has

12   the incentive that I discussed, which are if it

13   wishes to engage in its own fact-finding and

14   use -- and draw its own legal conclusions to

15   address novel conduct --

16               JUSTICE GORSUCH:  Yes, but it -- it's

17   inherently difficult, and Section 13 is so

18   comparatively easy.  What -- what incentive

19   remains to do that?  I know it can, but why

20   would it?  Just as it can come up with rules

21   defining what unfair trade practices are but --

22   but chooses not to do so.

23               MR. MARCUS:  Well, it -- well, it

24   does.  I mean, so it -- it doesn't do it as

25   often, but it does do it.  And so that proves

1    that there are cases where the Commission thinks

2    we need to take this one.  This one's difficult

3    enough.  This one's uncertain enough.  This one

4    requires our application of agency expertise,

5    and the Commission has to give up all that when

6    it goes to federal court.

7            Now some would say that it's actually

8    better to have a commission litigating cases in

9    federal court than it is to have the Commission

10   making broad-based rules that may apply to

11   non-parties.

12           JUSTICE GORSUCH:  Thank you, counsel.

13           MR. MARCUS:  So --

14           CHIEF JUSTICE ROBERTS:  Justice

15   Kavanaugh.

16           JUSTICE KAVANAUGH:  Thank you, Chief

17   Justice.

18           And good morning, Mr. Marcus.  Good to

19   be with you again.  I want to pick up on Justice

20   Alito's question and Mr. FitzGerald's article,

21   which I've read.  You obviously put forward good

22   arguments on Porter and the Court's precedent

23   and Congress's intent, as well as the body of

24   court of appeals cases, but it seems that the

25   problem you have is the text.  And in that

1    sense, this case really is a separation of

2    powers case.

3         I -- I -- I worked in the Executive

4    Branch for many years, so I understand how this

5    happens.  When you're in the Executive Branch or

6    an independent agency, you want to do good

7    things and prevent or punish bad things, and

8    sometimes your statutory authority is

9    borderline.  And it could be war policy or

10   immigration or environmental or what have you,

11   but with good intentions, the agency pushes the

12   envelope and stretches the statutory language to

13   do the good or prevent the bad.

14        The problem is -- is it results in a

15   transfer of power from Congress to the Executive

16   Branch to decide whether to exercise this new

17   authority.  That's a particular concern, at

18   least for me, with independent agencies.  So --

19   now why isn't the answer here, for the agency to

20   seek this new authority from Congress, for us to

21   maintain the principle that separation of

22   powers, that the agency should stick to the

23   authority in the -- in the text and not -- and

24   not go beyond that?

25        A 30,000-foot question.  Interested in

1    your responses to that.

2              MR. MARCUS:  Well, so, again, the

3    question, the real question, is what was

4    Congress's intent when it gave the Commission

5    the authority to seek a permanent injunction in

6    federal court.  And if it intended to accord the

7    agency the -- the ability to go ask the court

8    for all of the inherent equitable remedies, then

9    I think that resolves your concern about

10   separation of powers issues.

11             And, you know, again, it -- it

12   couldn't be clearer that -- that Congress,

13   legislating against the backdrop of injunctions,

14   would have had the intent to accord all the

15   traditional equitable remedies.

16             And, you know, this is not a -- this

17   is not a new question.  Even, you know, in the

18   California versus American Stores cases we cite

19   in our brief, the Court held that "injunction"

20   as used in the Clayton Act indicates Congress's

21   intention that traditional principles of equity

22   govern the grant of injunction -- of injunctive

23   relief.

24             And so, you know, ultimately, I -- I

25   think the -- the -- your concern is a valid one

1    but is resolved if you look at what Congress

2    would have understood the words to mean when it

3    used them.  And there was, in fact, a common

4    understanding of what "injunction" meant in

5    1973.

6              JUSTICE KAVANAUGH:  Appreciate it, Mr.

7    Marcus.  Thank you.

8              CHIEF JUSTICE ROBERTS:  Justice

9    Barrett.

10              JUSTICE BARRETT:  Counsel, the -- the

11    damages award here or the money at stake here

12    was 1.3 billion dollars and then the 27 million

13    dollars collected from Mr. Tucker's wife.  And

14    when Justice Alito asked Mr. Pattillo how much

15    of that had been distributed to the victims, he

16    said about 500 million dollars.  So I -- I take

17    it the rest of that is in the Treasury, or does

18    the FTC have it right now?

19              MR. MARCUS:  So I'm glad you ask that

20    question, Justice Barrett.  I will get you a

21    clarification on what Mr. Pattillo said because

22    the money that's actually been distributed from

23    consumers comes from a different defendant, not

24    Tucker, not Mrs. Tucker, not any of the

25    Petitioners before this Court.  It comes from a

1    bank that settled separately with the government

2    and agreed to a restitution remedy in the

3    criminal case that the Justice Department then

4    turned over to the FTC to distribute to

5    consumers.  So none of that money is the

6    judgment in this particular case.

7            JUSTICE BARRETT:  So what happens or

8    has happened to the judgment, the money flowing

9    from the judgment, in this particular case?

10           MR. MARCUS:  So, right now, there's

11   some money that is being held in an account

12   separately for -- for redress should the

13   Commission ultimately wind up with the ability

14   to distribute --

15           JUSTICE BARRETT:  How much money --

16           MR. MARCUS:  -- that money.

17           JUSTICE BARRETT:  -- in that account

18   compared to the 1.3 billion?

19           MR. MARCUS:  I don't know the exact

20   number, but it's tens of millions.  It's a --

21   it's a lot of money.

22           JUSTICE BARRETT:  But this is what I'm

23   -- I'm getting at.  It seems to me that

24   equitable remedies attempt to restore the

25   plaintiff to the position in which the plaintiff

```
1    stood before the plaintiff was defrauded.  This

2    money isn't traceable back to the FTC, and the

3    money that's gained isn't all being distributed

4    to the plaintiffs.  So it seems like it

5    functions almost more like a fine.  It doesn't

6    really seem analogous to, say, restitution to

7    me.

8              MR. MARCUS:  Well, I -- I'm not sure

9    that's quite correct, because the point here is

10   that it's a -- it's -- it's an equitable remedy

11   meant to restore the victims to the place that

12   they were in before they were ripped off, and --

13             JUSTICE BARRETT:  But, if the victims

14   don't get the money or if all the money is not

15   traceable to the victims, that -- then all the

16   money is not remedying that wrong.

17             MR. MARCUS:  Well, no, we know -- we

18   know who the victims were and we know how much

19   they were -- we know how much was stolen from

20   each of them.  It's just a matter of collecting

21   the money, figuring out from this case whether

22   we are allowed to give back the money, and then

23   basically cutting checks to everybody.  Right

24   now, the money's being held in safekeeping.

25             JUSTICE BARRETT:  So the full 1.3
```

1    billion dollars will be distributed to the

2    victims?

3            MR. MARCUS:  As much of it as we can

4    get, yes.  We're not going to get 1.3 billion

5    dollars.  A lot of it was spent and it doesn't

6    exist anymore, and, you know, Tucker is now

7    judgment-proof for the most part.  But there

8    were bank accounts, houses, race cars, whatever,

9    assets that were seized and are being held

10   basically in trust forever.

11           JUSTICE BARRETT:  Thank you, counsel.

12   My time's expired.

13           CHIEF JUSTICE ROBERTS:  A minute to

14   wrap up, Mr. Marcus.

15           MR. MARCUS:  Thank you, Chief Justice.

16           I want to reiterate that a court with

17   the power of injunction sits as -- as a court of

18   equity.  And one thing that the Court should not

19   overlook is the basic principle of equity that

20   wrongdoers have to give back the money that they

21   took unlawfully.  AMG asks the Court to

22   disregard that principle.  But the Court should

23   have that principle firmly in mind when it

24   decides this case.

25           It should uphold the history and

```
 1    tradition and affirm once again that a permanent

 2    injunction includes the power to restore victim

 3    money that was wrongfully taken from them.  And

 4    I don't think that -- that anything in Sections

 5    19 or 5(l) rise to the level of an unmistakable

 6    inference, which is the standard that is

 7    required under Porter.

 8              So the Court should affirm the

 9    judgment below.  Thank you.

10              CHIEF JUSTICE ROBERTS:  Thank you,

11    counsel.

12              Rebuttal, Mr. Pattillo.

13         REBUTTAL ARGUMENT OF MICHAEL PATTILLO

14              ON BEHALF OF THE PETITIONERS

15              MR. PATTILLO:  I heard the Commission

16    say that this case should be decided by looking

17    at Congress's intent when it enacted 13(b).  And

18    the way we determine Congress's intent is by

19    looking at the words on the page.

20              Congress used the word "injunction"

21    with a clear historical meaning.  Even if, in

22    certain cases like Porter and Mitchell, that

23    term might be construed to carry with it other

24    equitable remedies, we know that's not the case

25    here.
```

1           Even under Porter and Mitchell, Porter

2       and Mitchell make clear that you must look at

3       the statute and ask if another feature impliedly

4       precludes broader relief.  The Commission

5       suggests that standard isn't met here.  But all

6       we have to do is look at Porter.

7           In Porter, the existence of another

8       provision providing a damages remedy was

9       sufficient for the Court to conclude that it

10      should not also imply that same damages remedy

11      into the provision at issue.  That is precisely

12      what the Commission is trying to do here.  It is

13      trying to get precisely the same relief that

14      would have been available under 5(l),

15      injunctions and other equitable relief.

16          It's trying to get precisely the same

17      relief available under Section 19 but without

18      complying with any of its safeguards.  I heard

19      the Commission say that sometimes pathways --

20      one pathway might be more attractive.  Well, of

21      course, it's going to be more attractive for the

22      Commission to proceed under Section 13 than

23      Section 19, where it doesn't have to comply

24      with, for example, the heightened proof

25      requirement, where it doesn't have to comply

```
 1    with the limitations period.  I -- I didn't hear

 2    a single response to why Congress would have

 3    intended to allow the same relief under two

 4    pathways yet only provide protections in one but

 5    not the other.

 6            And the absence of a limitations

 7    period is something that Meghrig pointed out.

 8    It would be truly striking for a statute to

 9    award retrospective monetary relief but not

10    include a statute of limitations.  That applies

11    equally here but even more so when you consider

12    what the Commission's core mission is here.

13            Here, the -- the Commission first

14    investigated this conduct, it first asked

15    Mr. Tucker about his disclosures, in 2002.  Yet,

16    subject to no limitations period, it sat on its

17    hands for a decade.

18            Now, if it were following the

19    prescriptions that Congress provided, in 2002,

20    if it thought that there was something wrong

21    with the disclosures, it should have gone in

22    then.  It should have thought to bring a stop to

23    it.  It could have gone -- it should have gone

24    to administrative processes to make clear that

25    this particular remedy -- or, excuse me, that
```

1    these particular disclosures, which are

2    widespread throughout the industry, were, in

3    fact, not acceptable and a violation of the 5(l)

4    act.  But it didn't do that.  And this case

5    shows precisely why holding the Commission to

6    its core mission of providing prospective

7    monetary -- prospective guidance to business

8    about what conduct is prohibited is so

9    important.  It's exactly what Congress intended.

10          And the entire structure of the -- of

11   the Commission's mission is being altered by it

12   choosing to go down the easy path of render --

13   racking up huge judgments under 13(b) without

14   the protections that Congress provided under

15   Section 19.

16          If there are no further questions, I

17   would ask that the judgment of the court of

18   appeals be reversed.  Thank you.

19          CHIEF JUSTICE ROBERTS:  Thank you,

20   counsel.  The case is submitted.

21          (Whereupon, at 11:07 a.m., the case

22   was submitted.)

23

24

25

## 1

**1.3** [4] 55:12 56:18 57:25 58:4
**10** [2] 38:4,7
**10:00** [2] 1:16 3:2
**100** [1] 38:5
**11:07** [1] 62:21
**12** [1] 38:7
**13** [11] 1:12 8:11 36:3,6,18 37:25 44:13 46:15,20 51: 17 60:22
**13(b** [38] 3:13,20,23 4:13 5: 2 6:23 7:16,19 8:22 9:2,3, 21 10:1 12:1 16:2,13,18,22 19:24 24:1 26:1 27:4 29: 15 30:20 31:15,21 32:1,24 33:14 34:25 41:25 42:7 43: 8,19 45:6,19 59:17 62:13
**13(b)'s** [1] 28:23
**13(b)(1** [1] 34:15
**1860** [1] 7:8
**19** [31] 4:7,20 8:9 15:25 18: 16 25:23 27:11,15,22 31:6, 12 32:1 36:2,3,7,22,23 42: 5 45:9,11,24,25 46:4,14 50: 13 51:1,10 59:5 60:17,23 62:15
**19-508** [1] 3:4
**1914** [2] 4:23 39:9
**1970s** [1] 42:24
**1973** [5] 19:14 21:15 39:11 41:21 55:5
**19th** [3] 9:14 35:9 41:5

## 2

**2002** [2] 61:15,19
**2012** [1] 38:3
**2021** [1] 1:12
**269** [1] 13:25
**27** [2] 14:2 55:12

## 3

**3** [2] 2:4 13:11
**30** [1] 2:7
**30,000-foot** [1] 53:25

## 4

**40** [1] 43:9

## 5

**5** [6] 8:9 32:23 33:13 37:22 46:14 50:9
**5(l** [11] 4:2 7:21 19:24 31:6, 13 32:1 43:18 44:4 59:5 60:14 62:3
**50** [3] 5:11 10:20 11:13
**500** [2] 12:16 55:16
**59** [1] 2:10

## 9

**9** [1] 31:25

## A

**a.m** [3] 1:16 3:2 62:21
**ability** [6] 33:16 36:21 46:1

**47:**12 54:7 56:13
**able** [2] 18:1 40:10
**above-entitled** [1] 1:14
**absence** [2] 45:15 61:6
**absent** [1] 16:5
**absolutely** [2] 37:12 38:24
**absurd** [1] 29:7
**abused** [1] 37:11
**acceptable** [1] 62:3
**accepted** [1] 43:10
**accepting** [1] 43:12
**accord** [2] 54:6,14
**accorded** [1] 32:19
**according** [2] 18:1 21:11
**account** [2] 56:11,17
**accounting** [2] 9:23 22:17
**accounts** [1] 58:8
**accurate** [1] 28:4
**acknowledged** [1] 21:18
**acquired** [1] 31:4
**Act** [22] 3:19,22 4:1 6:14 10: 3 16:19 21:25 28:10,13 29: 2,11 30:9 31:6,8,14 36:10, 15,17 41:15 50:12 54:20 62:4
**Act's** [3] 3:12 4:22 17:19
**action** [3] 6:17 34:21 46:24
**activity** [4] 40:8,11,22
**actually** [5] 19:22 24:3 39: 24 52:7 55:22
**add** [2] 24:20 38:12 43:25
**addition** [1] 51:4
**additional** [2] 23:15 31:19
**address** [5] 9:13 25:17 45: 20 47:13 51:15
**addressed** [1] 25:14
**addresses** [2] 22:1 41:23
**adjudication** [1] 37:1
**adjudications** [1] 16:4
**adjudicatory** [1] 32:22
**administrative** [13] 16:21 18:6 29:20 40:1 44:6,21 46:2,23 48:11 49:6,8,11 61:24
**administratively** [1] 31:8
**administrator** [1] 33:18
**adopt** [2] 6:6 27:17
**advanced** [1] 24:11
**Aerospace** [1] 37:2
**affect** [2] 28:7,7
**affirm** [2] 59:1,8
**agencies** [2] 32:9 53:18
**agency** [30] 4:23,25 5:7 16: 4 17:12,21 21:4 29:12 32: 13,13,17,19 33:6,8,10 34:1, 3 36:11 47:6,11,15,20 49:9 50:19 52:4 53:6,11,19,22 54:7
**agency's** [2] 32:22 47:3
**ago** [1] 5:12
**agree** [2] 22:15 27:4
**agreed** [2] 40:3 56:2
**ahead** [1] 16:16
**AL** [1] 1:4

**Alexander** [3] 6:12,24 19:1
**Alito** [16] 12:9,10,18 13:6 14:6 15:13,16,19 40:4,5,19 41:7,19 42:17 43:14 55:14
**Alito's** [2] 45:2 52:20
**alleged** [2] 14:1,2
**allow** [1] 61:3
**allowed** [3] 9:15 30:8 57: 22
**allows** [4] 4:1 16:24 36:23, 23
**alluded** [1] 33:4
**almost** [2] 16:20 57:5
**alone** [1] 26:13
**already** [5] 12:13 23:11 34: 23 40:24 44:7
**altered** [1] 62:11
**although** [1] 27:22
**American** [1] 54:18
**AMG** [3] 1:3 3:4 58:21
**amici** [1] 28:8
**amok** [1] 48:19
**amount** [2] 13:13 14:1
**analogous** [1] 57:6
**another** [6] 4:7 21:24 48:6 50:20 60:3,7
**answer** [3] 16:7,15,18 35: 21 39:7,9 40:5,6,14 47:8, 10 49:19 53:19
**anticipated** [1] 50:21
**anticompetitive** [1] 47:16
**antitrust** [3] 49:5 50:1,12
**appeals** [1] 11:8,23,24 12: 1,3,7 26:10,17 52:24 62:18
**APPEARANCES** [1] 1:18
**appears** [1] 33:22
**application** [1] 52:4
**applies** [2] 6:22 61:10
**apply** [4] 4:25 11:2 17:14, 23 32:16 52:10
**Appreciate** [1] 55:6
**approach** [5] 5:16,22 6:1, 16 11:8 18:22,23,25 19:8,9, 19 34:25
**appropriate** [3] 4:4 34:5,8
**area** [1] 28:12
**arguably** [1] 19:5
**argue** [2] 15:23 42:8
**arguing** [1] 27:5
**argument** [24] 1:15 2:2,5,8 3:4,8 6:3,11,12 7:11 8:16 9:13 10:15,17 19:7 20:4,5 24:10,11,22 26:9 30:3 46: 12 59:13
**arguments** [4] 10:1 4 42: 10 43:12 52:22
**around** [3] 10:20 12:16 50: 15
**article** [2] 42:23 52:20
**articulated** [1] 23:4
**aside** [1] 19:3,4
**asks** [1] 58:21
**assets** [4] 13:16 14:4 22: 18 58:9

**associated** [1] 35:7
**assume** [2] 8:8 32:15
**assumed** [1] 20:11
**assuming** [2] 11:10 20:8
**attempt** [1] 56:24
**Attorney's** [1] 36:12
**attorneys** [1] 42:9
**attractive** [3] 48:6 60:20, 21
**authority** [9] 9:7 18:15 29: 24 32:12,14 33:2,4,8,10 35: 18,19 53:8,17,20,23 54:5
**authorize** [5] 9:6 14:15,24 16:8 25:10
**authorized** [3] 3:24 7:19 20:3
**authorizes** [5] 3:14 4:3,8 43:20 45:7
**authorizing** [1] 29:16
**automatically** [1] 17:24
**availability** [1] 9:8
**available** [7] 9:23,24 16:10 39:22 45:11 60:14,17
**award** [3] 23:12 55:11 61:9
**awards** [1] 45:7
**away** [2] 50:14,20

## B

**Back** [5] 5:15 6:8 7:8,9 14: 6 18:21 20:7,11 27:18 38: 11 47:8 48:23 57:2,22 58: 20
**backdrop** [3] 8:14 19:14 45:21,22 54:13
**backward-looking** [1] 5:6
**backwards-looking** [1] 25:18
**bad** [5] 37:12 38:9 39:1 53: 7,13
**bank** [2] 56:1 58:8
**bargain** [2] 31:11,14
**barred** [1] 17:7
**Barrett** [13] 27:2,3 28:19 55:9,10,20 56:7,15,17,22 57:13,25 58:11
**based** [1] 26:4
**basic** [3] 11:19 49:21 58:19
**basically** [4] 14:7 44:7 57: 23 58:10
**basis** [1] 42:8
**Bea's** [1] 27:25
**Beach** [1] 1:19
**bears** [1] 13:5
**became** [2] 39:12 45:9
**become** [2] 9:9 42:2
**behalf** [8] 1:20,22 2:4,7,10 3:9 30:4 59:14
**behind** [1] 19:9
**believe** [1] 34:16
**Bell** [1] 37:2
**below** [2] 28:1 59:9
**besides** [1] 7:11
**best** [1] 46:12
**better** [2] 47:3 52:8

**between** [7] 13:7,16 23:1,2 32:2 37:1,4
**beyond** [4] 4:2 10:25 42:22 53:24
**bill** [2] 45:5,12
**billion** [5] 13:11 55:12 56: 18 58:1,4
**binding** [1] 16:4
**bit** [1] 36:25
**Black** [1] 24:14
**Black's** [2] 14:17 15:8
**Blue** [1] 10:9
**bodies** [1] 39:4
**body** [2] 42:19 52:23
**books** [1] 44:7
**bootstrap** [1] 24:1
**borderline** [1] 53:9
**both** [2] 10:10 37:4
**bound** [1] 39:17
**boundaries** [1] 36:17
**Branch** [3] 53:4,5,16
**Brandeis** [1] 37:8
**Bread** [1] 39:4
**Breyer** [11] 10:6,7 11:9,18 12:8 37:6,7 39:9,24 47:9 50:3
**Breyer's** [2] 26:6 48:24
**bridge** [1] 11:1
**brief** [6] 10:9,10 27:10 41: 21 46:6 54:19
**briefly** [1] 14:7
**briefs** [1] 10:8
**bring** [3] 36:17 37:12 61:22
**bringing** [1] 38:19
**brings** [1] 49:10
**broad** [13] 4:2 15:2 17:20 20:17 26:8 28:11,13 32:7, 10 42:8 43:2 47:14 51:2
**broad-based** [1] 52:10
**broader** [3] 33:24 36:22 60: 4
**build** [1] 39:3
**bunch** [2] 36:20 50:13
**burden** [1] 13:5
**burdens** [1] 29:20
**business** [4] 37:9,13 38:24 62:7
**businesses** [2] 5:1 28:16
**bygones** [1] 10:23,24
**bypass** [1] 5:7

## C

**California** [1] 54:18
**called** [1] 11:4
**came** [1] 1:14
**cannot** [4] 7:21 11:13 29: 21 35:13
**CAPITAL** [1] 1:3 3:5
**Cardinal** [2] 38:11 39:3
**carefully** [1] 32:12
**carried** [2] 7:15 25:13
**carries** [1] 12:2
**carry** [1] 59:23
**cars** [1] 58:8

Official - Subject to Final Review

**Case** [32] 3:4 8:14 9:21,21, 25 **10:**9 **12:**12 **13:**10,23 **17:** 12 18:13 24:24 25:9 27:22 **35:**10 38:11,12,18 39:2 46: 5 **53:**1,2 56:3,6,9 57:21 58: 24 59:16,24 62:4,20,21
**case-by-case** [1] 34:8
**cases** [30] 3:21 8:15 9:4,14, 17 21:9 25:1 32:6 34:5 35: 10 36:8,18 38:2,5,7 39:23 41:6,15 48:10,10,16 49:5,7, 9,10 52:1,8,24 54:18 59:22
**causes** [1] 6:16
**cease-and-desist** [8] 16: 13 31:17 37:19,22 44:5,22 46:3 49:1
**ceased** [2] 40:8,12
**center** [1] 46:9
**centuries** [1] 35:21
**Century** [3] 9:14 35:9 41:5
**certain** [4] 22:16 46:17 48: 6 59:22
**certainly** [8] 14:4 15:3 23: 8 26:14 32:18 36:5,11 50: 23
**Chamber** [1] 28:9
**change** [3] 5:13 8:16 43:5
**changed** [1] 11:7
**changing** [1] 11:21
**checks** [1] 57:23
**CHIEF** [42] 3:3,10 5:9 6:25 7:2 8:2,5,8 10:5 12:9 14:8 15:18,21 18:19,21 19:2,3 22:10 24:5,7 27:1 28:20 29:25 30:5 32:5 33:5,20 34:10,13 37:5 40:4 43:15 46:10 49:12,16 52:14,16 55:8 58:13,15 59:10 62:19
**chiropractor** [2] 38:14 39: 20
**choice** [4] 32:2 37:1 46:22 47:5
**choose** [1] 37:3
**chooses** [4] 31:7,11 36:3 51:22
**choosing** [1] 62:12
**chose** [1] 50:6
**Circuit** [6] 10:22 21:1,2,7 28:2 46:5
**cite** [2] 32:6 54:18
**cited** [1] 46:6
**cites** [1] 41:21
**Civil** [1] 6:14
**clarification** [1] 55:21
**Clark** [1] 24:15
**clauses** [2] 31:13 51:1
**Clayton** [1] 54:20
**clean** [1] 27:6
**clear** [9] 3:13,20 4:18 24:3 25:11 35:22 59:21 60:2 61: 24
**clearer** [3] 29:6 45:23 54: 12
**clearly** [3] 31:2 47:3 51:3

**client** [2] 27:5,19 28:7
**close** [1] 11:11
**Code** [2] 33:22,23
**coercive** [1] 23:15
**collected** [1] 55:13
**collecting** [1] 57:20
**combination** [1] 26:7
**combine** [1] 26:12
**come** [4] 5:4 16:24 44:8 51: 20
**comes** [5] 21:2 45:24 46: 13 55:23,25
**comfortably** [1] 36:1
**comments** [1] 41:22
**commerce** [1] 28:12
**COMMISSION** [57] 1:7 3:6, 14 4:18 5:4 12:25 13:4,19 14:16 15:15 16:24 23:21, 23 25:25 28:14 29:18,22 30:8 31:7,11 32:2,24 33:1, 15 34:16 36:2,9,15 37:3 39:10,15 40:1 42:1,4 44: 20 46:6 47:12 48:7,8,13 49:5,7 51:9,11 52:1,5,8,9 54:4 56:13 59:15 60:4,12, 19,22 61:13 62:5
**Commission's** [9] 29:14 33:14 42:3,9 43:1,4 46:1 61:12 62:11
**common** [1] 55:3
**community** [3] 37:9,11 38: 24
**companies** [1] 40:3
**company** [2] 38:16,17
**comparatively** [1] 51:18
**compared** [2] 38:6 56:18
**compelling** [1] 7:4
**compensation** [2] 8:20 15: 12
**complaining** [2] 39:13 42: 25
**completed** [1] 40:24
**completely** [1] 23:21
**complicated** [2] 40:2 48: 10,17
**comply** [3] 50:19 60:23,25
**complying** [1] 60:18
**compromise** [1] 37:15
**compromised** [1] 37:14
**concern** [4] 50:17 53:17 54:9,25
**concerned** [2] 47:14,18
**conclude** [1] 60:9
**concludes** [1] 39:16
**conclusion** [1] 38:16
**conclusions** [1] 51:14
**conduct** [15] 5:5 9:11 16: 25 17:15 18:10,17 27:14 29:13 35:5,15 38:10 50:6 51:15 61:14 62:8
**confer** [1] 24:20
**conferred** [2] 33:25 34:3
**confined** [1] 5:17
**confirm** [1] 29:3

**conflict** [1] 11:5
**confronting** [1] 21:6
**Congress** [27] 4:20,23 5:7, 18,25 7:14,19,22 8:13 14:9 15:24 16:8 17:21 19:10,13, 18,20,23 20:6,10,14,17,25 21:14,17 22:7 24:17 25:9, 12 29:6,23 30:8,19 31:18 32:15,19,20 33:1 37:2 40: 19,20 41:4,9,12,13 42:18, 18,20 43:22 44:9,13,19 45: 6,16,21 47:5,10,12,17 48:1 50:21,24 53:15,20 54:12 55:1 59:20 61:2,19 62:9, 14
**Congress's** [6] 46:9 52:23 54:4,20 59:17,18
**Congressional** [1] 26:9
**conjunction** [1] 34:6
**consider** [1] 61:11
**consist** [1] 21:20
**consistent** [2] 21:21 29:12
**Constitution** [1] 5:23
**constitutional** [1] 39:18
**construe** [2] 5:24 32:11
**construed** [1] 59:23
**consumer** [9] 4:8,19 18:12, 15 39:12 42:3 49:8,23,25
**Consumers** [5] 9:9 32:4 44:23 55:23 56:5
**contemporary** [1] 7:10
**context** [4] 25:5 32:17 43: 13 50:12
**contexts** [1] 7:7
**continuing** [1] 8:7
**continuously** [1] 11:21
**contrary** [1] 45:8
**contrast** [1] 5:2
**Control** [2] 21:25 37:13
**convicted** [1] 27:7
**copyright** [1] 41:5
**core** [4] 47:8 50:16 61:12 62:6
**corporation** [1] 34:17
**correct** [3] 26:22 45:17 57: 9
**couldn't** [5] 14:4 27:14 39: 20 45:23 54:12
**counsel** [18] 8:3,7 15:23 22:13 24:4,9 27:3 28:19 30:1 32:5 34:11 43:17 49: 18 52:12 55:10 58:11 59: 11 62:20
**course** [5] 5:21 39:17 40:1, 14 60:21
**COURT** [67] 1:1,15 3:11 5: 4,13 6:11,14,18 8:17 11:4 12:3 15:3,7 16:24 17:17 19:11 21:11 25:22 26:10,21 28:17 29:9,22 30:6,9,10 31:1,11 32:24 33:7,8,9,12, 16,17 34:4 35:7,11,16,17, 18 36:24,24 38:22 39:15, 16,19 40:9 41:3 44:23 48:

14 **49:**10 **52:**6,9,24 **54:**6,7, 19 **55:**25 **58:**16,17,18,21, 22 **59:**8 **60:**9 **62:**17
**Court's** [4] 26:22 30:20 35: 6 52:22
**Courts** [18] 10:18 11:8,12, 19,23,24,25 12:6 16:5 26: 16 30:22 32:9,10,16 38:6 39:17 43:9,11
**courts'** [2] 33:2,4
**create** [1] 31:8
**created** [1] 39:10
**criminal** [3] 13:10 14:5 56: 3
**current** [2] 6:8,8
**cutting** [1] 57:23

---

# D

**D.C** [2] 1:11,21
**damage** [1] 37:23
**damages** [8] 22:1,3,4 39:1 45:11 55:11 60:8,10
**damaging** [1] 41:24
**date** [1] 13:18
**day** [1] 41:15
**deal** [4] 9:13 48:2,16 49:22
**debate** [2] 45:10,25
**debated** [1] 46:4
**decade** [1] 61:17
**deceived** [1] 28:4
**deception** [1] 48:18
**deceptive** [6] 27:14 36:10, 14 47:16 50:6,8
**deceptiveness** [1] 49:22
**decide** [3] 13:4 24:24 53: 16
**decided** [4] 11:15 12:7 42: 4 59:16
**decidedly** [1] 18:25
**decides** [2] 48:14 58:24
**decision** [2] 28:1,6
**declare** [1] 47:15
**decline** [1] 6:20
**decree** [3] 23:11,19,20
**defendant** [1] 55:23
**defer** [1] 16:5
**defies** [1] 7:16
**define** [3] 17:14,15 29:13
**defines** [1] 14:18
**defining** [1] 51:21
**definition** [1] 14:23
**defrauded** [1] 57:1
**delegated** [1] 32:14
**depart** [1] 30:13
**Department** [2] 33:19 56:3
**depending** [1] 9:10
**describe** [1] 22:22
**described** [1] 22:25
**describing** [1] 47:9
**determination** [1] 23:2
**determinations** [1] 34:9
**determine** [1] 59:18
**determines** [1] 23:13
**deviate** [1] 30:17

**Diction** [1] 15:8
**dictionary** [3] 7:10 14:18 15:9
**difference** [1] 23:1,1
**differences** [2] 44:3,4
**different** [13] 13:20 19:5 20:5 23:21 31:14 33:13,17 43:22 44:1,17 46:23 51:8 55:23
**difficult** [3] 48:10 51:17 52: 2
**directed** [1] 14:21
**directly** [1] 41:23
**Dirty** [1] 27:8
**discern** [1] 19:20
**disciplined** [1] 5:22
**disclosed** [1] 42:8
**disclosures** [4] 28:3 61:15, 21 62:1
**discounted** [1] 38:18
**discussed** [2] 29:3 51:12
**disgorgement** [1] 16:1
**disregard** [1] 58:22
**dissent** [5] 24:11,13,16,17 27:25
**distinction** [2] 24:2 27:7
**distinguishable** [2] 21:9 26:4
**distribute** [2] 56:4,14
**distributed** [6] 12:13,17 55:15,22 57:3 58:1
**District** [3] 13:9,19 17:17
**divvying** [1] 13:20
**doctrines** [1] 23:5
**doing** [7] 14:21 33:15 34: 22 36:1 37:17 41:9 42:21
**dollars** [8] 12:16 13:12 14: 2 55:12,13,16 58:1,5
**done** [2] 14:25 41:4
**down** [1] 62:12
**draw** [4] 22:21 40:20 41:9 51:14
**drink** [1] 6:21
**dubious** [1] 27:7
**due** [1] 39:18
**during** [1] 11:8
**duty** [1] 26:22

---

# E

**each** [3] 36:25 44:23 57:20
**early** [1] 18:14
**easier** [1] 36:6
**easy** [2] 51:18 62:12
**echoes** [1] 35:2
**economy** [1] 39:12
**economy-wide** [1] 47:13
**edition** [1] 14:17
**effect** [1] 38:5
**effective** [1] 32:2
**eight** [1] 39:4
**either** [2] 11:23,25
**elaboration** [1] 31:24
**else's** [1] 11:15
**elsewhere** [2] 22:2 25:10

---

Heritage Reporting Corporation

embedded [1] 30:19
Emergency [1] 21:25
empirics [1] 48:25
enact [1] 50:5
enacted [12] 6:14,23 7:16, 19 14:10 18:16 19:23,24 20:25 30:19 42:1 59:17
encompass [1] 13:12
encompasses [2] 13:23, 24
encounter [1] 48:7
enforce [10] 23:10,20,24 30:9 31:8 33:7,9,11,12 44:5
enforcement [7] 4:24 17:22 32:3 37:4 43:1,5 50:7
engage [3] 34:6 35:19 51:13
enough [5] 18:9 26:13 34:24 52:3,3
enter [1] 40:10
entered [1] 40:9
entire [2] 20:19 62:10
entirely [3] 25:25 26:3 46:21
envelope [1] 53:12
environment [1] 5:25
environmental [1] 53:10
episode [1] 27:8
equally [2] 6:22 61:11
equitable [3] 3:17 4:3,6, 15,16 7:15,20,24 8:18 9:20, 24 16:9 22:16 23:5 25:6, 11,13 28:25 30:23 31:10, 22 32:8,10 33:2,25 34:7 41:17 42:9 43:21,25 44:12 54:8,15 56:24 57:10 59:24 60:15
equity [9] 14:12 15:10 24:3 30:14,22 35:6 54:21 58:18, 19
error [4] 13:5 26:19,20,24
especially [1] 3:20
ESQ [2] 2:3,6,9
ESQUIRE [2] 1:19,21
essentially [1] 47:25
establish [1] 16:3
ET [1] 1:4
evaded [1] 4:13
Even [13] 4:9 3:14:10 17:24 19:19 21:22 36:11 39:3 43:11 54:17 59:21 60:1 61:11
everybody [1] 57:23
everything [1] 11:13
exact [4] 21:5 43:12 49:3 56:19
exactly [6] 14:25 32:20 44:10 47:23 50:9 62:9
example [3] 24:17 35:3 60:24
exception [1] 23:9
exceptional [1] 38:2
Exchange [1] 41:15

exclude [2] 8:19 15:11
excuse [2] 11:24 61:25
execution [1] 23:19
Executive [3] 53:3,5,15
exercise [1] 53:16
exercised [1] 35:19
exist [1] 58:6
existed [1] 45:13
existence [2] 51:5 60:7
exists [2] 13:2 16:22
expanded [1] 37:19
expansive [1] 6:4
expected [1] 35:5
expedient [1] 17:18
expertise [4] 4:25 17:14, 23 36:9 52:4
expired [2] 15:20 35:12 58:12
explain [4] 35:24 36:2,9,13 43:18
explained [2] 15:3 23:17
explanation [2] 48:18 51:2
explicitly [1] 45:19
expound [1] 36:16
expressly [4] 7:19 20:2 24:22 31:12
extensive [1] 45:10

                F

face [1] 51:3
faced [1] 37:9
fact [11] 15:14 17:19 18:13 22:1 28:5 32:8 35:10 44:18 45:4 55:3 62:3
fact-finding [2] 48:9 51:13
facts [1] 36:21
fairly [2] 22:24 47:14
familiar [2] 10:13 50:2
famous [1] 18:4
far [2] 22:20 49:10
fault [1] 45:12
favor [2] 12:19 24:24 26:11
fear [1] 47:10
fears [1] 38:23
feature [1] 60:3
features [6] 3:19 4:17 7:17 10:3 25:8 29:2
FEDERAL [9] 1:7 3:5 13:1 30:9 36:24 48:14 52:6,9 54:6
feels [1] 36:15
Fernandina [1] 1:19
few [1] 38:5
figured [1] 5:19
figuring [2] 20:10 57:21
find [5] 7:4 36:21 37:17,18 39:22
finding [1] 18:24
fine [1] 57:5
finish [1] 49:18
firmly [1] 58:23
First [9] 3:20 6:10 11:4 12:3,7 18:21 39:16 61:13,14
fits [1] 36:1

FitzGerald [4] 41:23,25 42:14,17
FitzGerald's [1] 42:23 52:20
flexibility [1] 37:3
flexible [1] 15:2
Florida [1] 1:19
flowing [1] 56:8
focus [2] 29:12 49:25
focused [1] 34:20
follow [1] 11:19
followed [1] 6:15
following [4] 45:1 61:18
follows [1] 33:6
force [1] 23:16
forever [1] 58:10
forfeiture [2] 13:8 14:5
former [1] 41:22
forms [1] 22:16
forth [1] 46:18
forward [1] 52:21
forward-looking [1] 34:20
found [1] 21:22
foundational [1] 30:14
founding [1] 30:23
framed [1] 15:5
Frankfurter [2] 14:13
fraud [1] 39:12
free-wheeling [3] 5:16 6:1, 16
freebie [1] 48:13
freezing [1] 22:18
friend [2] 6:3 33:21
front [1] 46:8
FTC [30] 3:12 16:1,2,8,12, 19 21:3,13 27:14,17,21 28:10 29:11 30:9 35:16 36:17 37:16 38:1,25 39:6,13 40:15 41:22 42:25 43:11 49:1 50:4 55:18 56:4 57:2
FTC's [3] 18:14 26:11 37:10
full [1] 57:25
function [1] 11:20 31:16
functional [1] 44:4
functions [1] 57:5
Fund [1] 13:1
fundamentally [1] 31:14
further [3] 4:3 7:20 25:11 43:20,25 62:16
future [1] 34:21

                G

gained [1] 57:3
gains [2] 27:18 30:25
gave [3] 47:5,12 54:4
general [4] 4:23 9:19 17:20 28:13
getting [2] 17:7 56:23
give [12] 4:25 12:5 17:25 24:19,21 26:22 32:2 48:13, 24 52:5 57:22 58:20
given [3] 19:14 23:12 31:4
gives [3] 36:20,20,21

giving [2] 33:15 39:6
glad [1] 55:19
go-to-court [1] 49:2
good-bye [1] 11:2
Gorsuch [11] 22:11,12 24:49:13,17,18,24 50:24 51:7,16 52:12
got [1] 37:15
gotten [1] 27:15
govern [2] 43:2 54:22
government [1] 56:1
grant [5] 32:25 33:12,17 35:3 54:22
granted [1] 35:16
Great-West [2] 8:21 15:4
guidance [2] 5:8 62:7

                H

ha [2] 37:23 38:3
half [1] 10:16
hand [2] 38:21,22
handing [1] 22:18
hands [2] 27:6 61:17
happen [1] 12:19
happened [3] 34:24 35:8 56:8
happening [1] 48:22
happens [3] 48:15 53:5 56:7
happy [1] 35:1 42:16
harm [9] 4:19 5:3 8:20 9:4, 8 15:12 16:23 18:5 40:23
harmed [1] 44:24
harmony [1] 32:1
harms [3] 3:18,25 29:1
hear [3] 3:3 39:7 61:1
heard [3] 14:12 59:15 60:18
Heder [1] 46:5
heightened [2] 4:10 60:24
held [8] 15:7 21:2,18 25:4 54:19 56:11 57:24 58:9
help [1] 22:13
historical [1] 59:21
history [9] 18:14 26:24 37:7 42:8 45:3,5,18 50:4 58:25
hit [1] 39:1
hold [1] 28:14
holding [1] 62:5
holds [1] 7:1
honestly [1] 12:22
Honor [2] 6:9 11:3
hope [1] 16:7
houses [1] 58:8
huge [2] 42:19 62:13
hundreds [1] 33:23

                I

idea [1] 19:9
ignorant [1] 24:18
ill-gotten [1] 27:18
illegally [1] 31:4
imagined [1] 42:1

immigration [1] 53:10
imminent [3] 3:23 9:4,8
impend [1] 18:4
impending [1] 18:4
implicitly [1] 26:1
implied [4] 6:6 21:7 21:19, 20,23 22:4
impliedly [1] 60:3
imply [1] 60:10
implying [1] 6:16
important [10] 16:6 21:1 26:15 28:14 42:2 62:9
impose [1] 29:9
imposed [1] 29:10
incentive [4] 50:19 51:8,12, 18
incident [1] 9:15
include [2] 37:20 61:10
included [3] 7:24 47:18 50:25
includes [3] 21:10 30:24 59:2
including [3] 4:9 22:16 36:23
income [1] 38:15
inconsistent [1] 25:18
independent [2] 53:6,18
indicate [1] 42:23
indicates [1] 54:20
indicating [1] 42:20
individuals [1] 12:20
industrial [1] 43:3
industry [1] 62:2
inference [2] 31:9 59:6
inherent [3] 32:10 34:4 41:2 44:16 54:8
inherently [2] 30:24 51:17
initial [1] 23:2
injunction [69] 3:15,16 4:3, 5 7:15,20,23 8:23 9:1,16 10:1,1 14:16,18 15:6,6 16:9,12 17:5,7,9,16,25 18:4 19:21 21:5,10 22:15 23:10, 16,18,24 25:5,10,12,17 28:24,24 29:3,4,8,8 30:24 31:3,18,23 32:7,7,25 33:22 34:6 35:3,4,11,13,17 41:2 44:7,8,16,17 45:22 54:5,19,22 55:4 58:17 59:2,20
injunctions [3] 3:17,18 4:2 9:22 15:2,11 29:16,19 43:20 44:11 54:25 60:15
injunctive [7] 30:18 31:5 35:20 41:1 43:23,24 54:22
injuries [1] 9:10
injury [1] 4:9
innocent [1] 13:24
inquiring [1] 40:16
instance [2] 8:14 39:16
instances [2] 23:7 48:6
instead [2] 26:28:16,17, 25 31:11,21
integrity [1] 47:24
intellectual [2] 9:14 35:9

Heritage Reporting Corporation

intended [6] 19:19 30:10
31:9 54:6 61:3 62:9
intent [5] 52:23 54:4,14 59:
17,18
intention [1] 54:21
intentions [1] 53:11
interested [2] 49:19 53:25
interpret [2] 38:22 51:5
interpretation [7] 6:20 7:
25 10:21 11:6 26:23 46:20
47:25
interpreting [2] 7:7 26:11
interprets [1] 5:14
intervening [1] 5:12
inventiveness [1] 15:4
investigated [1] 61:14
invoke [3] 4:20 31:21 33:2
invoked [1] 35:7
invoking [1] 43:8
involve [3] 9:18 32:9 39:25
involved [2] 13:13 25:7
involves [1] 32:13
involving [1] 32:16
irrelevant [3] 46:21 48:1,5
isn't [7] 10:18 20:11 50:16
53:19 57:2,3 60:5
issue [1] 12:4 13:16 20:9
23:16 26:21 30:24 33:3 41:
3 45:15 50:25 60:11
issued [2] 13:9 23:18
issues [2] 5:10 54:10
itself [7] 4:5 7:16,23 8:22 9:
3 18:11 45:19

J

January [1] 1:12
job [1] 17:22
JOEL [3] 1:21 2:6 30:3
joined [2] 24:12,14
joke [1] 10:12
Judge [1] 27:25
judges [1] 28:2
Judgment [6] 13:1 56:6,8,
9 59:9 62:17
judgment-proof [1] 58:7
judgments [1] 62:13
judicial [1] 14:19
judiciary [1] 11:20
junctions [1] 8:19
jurisdiction [1] 35:6
JUSTICE [145] 3:3,11 5:9 6:
25 7:2 8:2,4,5,6,8 9:12 10:
4,5,5,7 11:9,18 12:8,9,9,10,
18 13:6 14:6,8 15:13,16,18,
18,19,21,21,23 16:16 17:1,
4,24 18:19,19,20 19:3 20:1,
4,20,23 22:5,9,10,10,12,25
23:17 24:4,5,5,7,8,12,14,
16 26:5,6,25 27:1,1,3 28:
19,20 29:25 30:6 32:5 33:
5,20 34:10,12,13,14 35:1,
23 37:5,5,7,8 39:9,24 40:4,
4,5,5,7,19 41:7,19 42:16
43:14,15,15,17 45:1,2,18

46:10,10,11 47:7,9,22 48:
21,23,24 49:4,12,12,16,16,
18,24 50:3,23 51:7,16 52:
12,14,14,16,17,19 55:6,8,8,
10,14,20 56:3,7,15,17,22
57:13,25 58:11,13,15 59:
10 62:19
Justice's [1] 18:21
Justices [2] 24:12,14
justification [1] 41:8

K

Kagan [15] 18:19,20 20:1,4,
20,23 22:5,9 46:10,11 47:7,
22 48:21,23 49:4
Kavanaugh [7] 24:6,7 26:
5,25 52:15,16 55:6
keep [2] 30:11 36:19
kick [1] 26:17
kind [8] 24:22 34:24 37:23
38:18 46:17 47:5 49:21 50:
15
kinds [1] 46:23
knowing [1] 27:13
known [1] 20:17

L

la [1] 7:24
Labor [1] 33:19
lack [1] 50:10
lackadaisical [1] 42:25
laid [1] 47:2 50:12
language [11] 4:4 5:17 6:5
7:6 8:10 9:2 20:17 31:15
34:25 43:23 53:12
large [1] 43:3
largely [2] 49:14,21
last [2] 6:21 30:15
later [3] 37:19 38:4 40:17
Law [17] 10:18 12:5 14:12,
18 15:8 19:17 21:11 26:15
27:19 28:16 30:19 34:19
35:22 38:21 42:19 45:22,
22
lawyerly [1] 15:4
lawyers [2] 14:9,11
lead [1] 16:14
leads [1] 40:7
least [6] 11:12 19:5 32:12
49:6 50:11 53:18
leave [1] 26:13
led [1] 47:2
leeway [1] 6:3
legal [1] 51:14
legislated [1] 8:13
legislates [1] 45:21
legislating [1] 54:13
legislation [2] 7:18 20:25
legislative [3] 42:7 45:3,18
lenders [1] 28:8
less [2] 9:9 26:19
less-than-complete [1]
41:12
letting [1] 30:11

level [1] 59:5
liabilities [1] 13:3
liberal [1] 18:23
light [2] 5:19,25
limit [2] 3:22 31:10
limitations [6] 4:10 25:24
61:1,6,10,16
limited [7] 3:20 9:4,21 10:2
25:15 29:4 44:11
limits [2] 4:12 29:23
line [4] 22:21,24 40:20 41:
10
line-drawing [1] 22:14
lines [1] 8:8
link [1] 4:20
listen [1] 6:13
litigant [2] 39:16 44:23
litigating [1] 52:8
little [3] 36:25 43:4 50:19
Liu [1] 30:15
LLC [1] 1:3
loan [1] 36:14
long [1] 26:24
Long-standing [1] 26:19
look [14] 7:5,10 14:17 20:
15,18 21:20,24 22:24 38:
10,10 44:18 55:1 60:2,6
looked [3] 5:18 28:2 42:6
looking [5] 19:13 21:17,19
59:16,19
looks [1] 8:17
lot [8] 6:2 32:5 36:9 48:15,
18 50:1 56:21 58:5
lower [2] 11:12 38:21

M

made [6] 4:23 6:12 9:5 17:
21 39:25 41:22
Madison [1] 10:25
maintain [2] 47:23 53:21
man [1] 47:7
MANAGEMENT [2] 1:3 3:
5
mandatory [3] 43:20 44:11,
17
many [6] 30:20 34:5 36:7,8
39:23 53:4
Marbury [1] 10:25
MARCUS [41] 1:21 2:6 30:
2,3,5 32:18 33:11 34:2,15
35:1 36:5 39:8 40:11,25
41:11 42:16 44:2 45:17 46:
11 47:7 48:4,22 49:3,14,20
50:23 51:11,23 52:13,18
54:2 55:7,19 56:10,16,19
57:8,17 58:3,14,15
married [1] 38:15
materialized [1] 50:22
matter [4] 1:14 36:12 44:20
57:20
matters [3] 19:10 21:2 37:
7
mean [19] 3:17 7:9 10:24
13:16 14:8 20:5,9 25:5 26:

14 27:6,21 29:8 33:6,7 39:
5 46:21 48:24 51:24 55:2
meaning [3] 5:19 36:16 59:
21
meaningful [1] 32:3
meaningless [2] 4:12 25:
25
means [4] 3:15 10:1 28:24,
25
meant [4] 4:16 19:22 55:4
57:11
mechanism [3] 4:20,24 17:
22
mechanisms [1] 35:20
Meghrig [2] 25:4 61:7
member [1] 14:23
members [2] 14:9,14
mens [1] 46:17
mentioned [4] 7:17 10:3
19:16 25:8
mentioning [1] 4:15
mentions [1] 22:2
merely [1] 30:10
met [1] 60:5
method [2] 6:19 7:25
MICHAEL [5] 1:19 2:3,9 3:
8 59:13
middle [1] 37:25
might [7] 9:23 16:3 17:17
23:10,16 59:23 60:20
million [4] 12:16 14:2 55:
12,16
millions [1] 56:20
mind [4] 5:18 36:19 46:9
58:23
mindset [2] 43:1,4
mine [1] 11:14
minute [3] 28:20 35:24 58:
13
misleading [1] 36:13
missing [1] 45:14
mission [3] 61:12 62:6,11
mistake [1] 10:20
mistakes [2] 10:19,19
Mitchell [17] 8:15 20:14,15,
18 21:8 24:13,23 25:3,7,14,
21 26:3,7,16 59:22 60:1,2
Mitchell's [1] 20:16
mode [1] 11:6
monetary [3] 3:18,24 4:8
8:20 9:7,15 12:2 15:12,25
16:14 18:6 25:18,21 27:15
28:18 29:19 35:14 45:7,25
46:2,7 61:9 62:7
money [28] 12:12,21 13:13,
24 27:8 29:1 30:12 45:10,
20 46:8 50:14 55:11,22 56:
5,8,11,15,16,21 57:2,3,14,
14,16,21,22 58:20 59:3
money's [1] 57:24
moreover [1] 29:11
morning [5] 3:4 10:7 22:12
24:9 52:18
Moss-Magnuson [1] 37:

20
most [8] 14:8,17 18:13,14
19:10 32:8 49:4 58:7
motive [1] 6:23
much [12] 7:25 10:25 22:9
46:21 47:11 49:22 51:2 55:
14 56:15 57:18,19 58:3
muscle [1] 38:17
must [4] 4:20 5:4 60:2

N

naked [1] 35:14
narrow [2] 5:3 16:19
nature [1] 23:19
necessary [1] 37:12
necessity [1] 31:5
need [17] 6:11,12 18:12
19:22 24:20 25:2 31:20,23
36:16 44:14 52:2
needed [2] 25:16 25:4
needs [1] 29:17
Neither [5] 25:7,9,14,20 42:
7
Netflix [1] 27:9
never [6] 10:23 13:25 14:2,
11 29:10 50:22
New [9] 13:9 16:3 18:24 19:
8,9 39:14 53:16,20 54:17
nice [1] 48:1
Nineteen [1] 37:24
Ninth [1] 28:2 46:5
nobody [1] 42:1
non-parties [1] 52:11
none [1] 56:5
nor [4] 24:21 25:7,14 42:7
noted [2] 8:21 28:1
nothing [3] 21:23 31:1 45:
4
notice [3] 4:11 5:1 39:19
noting [1] 13:22
notion [2] 7:22 12:1
notwithstanding [3] 20:
16 26:23 28:5
novel [3] 47:15 48:7 51:15
number [2] 26:10 56:20
numbers [2] 48:24 49:4

O

obligation [1] 17:13
obtain [1] 16:1
obvious [2] 38:8,10
obviously [2] 21:1 52:21
Office [1] 36:12
official [1] 41:22
often [3] 41:14 48:25 51:25
okay [2] 11:11 12:8
old [4] 10:12 18:23 19:19
21:9
once [6] 35:6,17,18 43:7
48:1 59:1
one [23] 5:10,15 6:21,21 11:
23 12:24 13:17 14:14 24:
21 26:6 36:6 38:20 42:17
43:23 46:13 47:2 48:5 52:

2,3 **54:**25 **58:**18 **60:**20 **61:** 4
**one's** [2] **52:**2,3
**one-time** [1] **8:**25
**ongoing** [9] **3:**22 **9:**4,8,11 **16:**23 **25:**15 **35:**5,15 **40:**22
**only** [7] **29:**8 **32:**14 **38:**2 **39:** 5 **40:**17 **48:**11 **61:**4
**opening** [1] **7:**17
**operating** [1] **14:**19
**opinion** [2] **11:**14 **24:**25
**opportunity** [1] **44:**24
**opposed** [1] **49:**2
**option** [1] **12:**24
**oral** [5] **1:**15 **2:**2,5 **3:**8 **30:**3
**order** [18] **8:**25 **13:**7,8,23 **15:**5 **16:**13 **17:**3 **30:**25 **31:** 17 **35:**7 **37:**19,22 **40:**9 **44:** 22 **46:**1,3,7 **49:**1
**orders** [4] **32:**22 **33:**14 **44:** 5,6
**ordinarily** [1] **8:**24
**other** [24] **6:**3 **7:**6,20 **9:**22 **10:**16,16 **16:**9,20 **23:**5,14 **24:**24 **25:**10 **29:**8 **33:**21 **34:** 7 **38:**22 **43:**25 **44:**12 **51:**2, 4,6 **59:**23 **60:**15 **61:**5
**otherwise** [1] **31:**12
**out** [11] **5:**19 **12:**25,25 **20:** 10 **28:**9 **43:**9 **47:**2 **50:**2,12 **57:**21 **61:**7
**outset** [1] **25:**9
**over** [7] **8:**25 **11:**7,7 **14:**1 **22:**18 **48:**19 **56:**4
**overall** [1] **16:**19
**overcome** [1] **4:**17
**overlap** [1] **13:**15
**overlook** [1] **58:**19
**overrule** [1] **25:**3
**own** [10] **30:**16 **32:**22 **33:**14 **36:**21 **46:**1,2,7 **48:**9 **51:**13, 14
**owns** [1] **23:**2

**P**

**PAGE** [2] **2:**2 **59:**19
**paid** [1] **13:**24
**Park** [1] **13:**25
**parse** [1] **32:**11
**part** [5] **14:**19 **42:**2 **46:**3 **50:** 5 **58:**7
**participated** [1] **14:**3
**particular** [5] **12:**4 **14:**22 **17:**15 **27:**12 **35:**11 **36:**10 **53:**17 **56:**6,9 **61:**25 **62:**1
**particularly** [2] **48:**9,17
**parties** [3] **9:**19 **13:**24 **16:**5
**partnership** [1] **34:**17
**passed** [6] **5:**11,15,25 **11:**1 **43:**18 **45:**11
**past** [3] **3:**18,25 **4:**8 **8:**20 **15:**12 **23:**7 **29:**1
**patent** [2] **35:**12 **41:**5
**path** [2] **17:**16 **62:**12

**pathway** [3] **48:**5,11 **60:**20
**pathways** [6] **32:**3 **37:**4 **46:** 23 **47:**1 **60:**19 **61:**4
**PATTILLO** [47] **1:**19 **2:**3,9 **3:**7,8,10 **5:**9 **6:**9 **7:**1,13 **8:** 17 **9:**17 **11:**3,17,22 **12:**10, 15,22 **13:**14 **15:**1,14 **16:**15, 17 **17:**3,10 **18:**8,20 **19:**16 **20:**2,12,21,23 **21:**16 **22:**6,7, 23 **25:**2 **26:**18 **27:**20 **28:**21, 22 **41:**19 **55:**14,21 **59:**12, 13,15
**payday** [1] **28:**8
**paying** [1] **13:**2
**people** [7] **36:**13 **38:**9,13 **39:**13 **40:**15 **42:**24 **50:**2
**perceived** [1] **45:**12
**perfect** [1] **10:**18
**perfectly** [1] **11:**15
**perhaps** [5] **12:**14 **14:**11 **15:**1 **22:**17 **39:**2
**period** [3] **61:**1,7,16
**permanent** [22] **3:**14,15 **7:** 14 **8:**19,22 **9:**1,1 **15:**11 **16:** 9,12 **17:**6,8,9,16,25 **28:**23, 24 **29:**16 **32:**25 **44:**16 **54:**5 **59:**1
**person** [2] **14:**20 **34:**17
**personam** [1] **14:**20
**perspective** [3] **35:**25 **43:**6 **47:**4
**Petitioners** [8] **1:**5,20 **2:**4, 10 **3:**9 **30:**7 **55:**25 **59:**14
**phrase** [1] **8:**22
**pick** [1] **52:**19
**picking** [1] **26:**5
**piggyback** [1] **44:**15
**place** [2] **48:**20 **57:**11
**placed** [1] **29:**23
**plaintiff** [4] **9:**24 **56:**25,25 **57:**1
**plaintiffs** [1] **57:**4
**please** [2] **3:**11 **30:**6
**plus** [3] **26:**7,16,16
**point** [11] **20:**6,6 **21:**14 **26:** 12,13,17 **33:**21 **38:**20 **39:**7, 8 **57:**9
**pointed** [3] **28:**9 **43:**9 **61:**7
**pointless** [1] **4:**5
**policy** [3] **41:**8,8 **53:**9
**pool** [1] **13:**17
**Porter** [28] **8:**15 **20:**14,15, 16,18 **21:**8,18,22,22 **24:**11, 17,23 **25:**3,7,14,20 **26:**3,7, 15 **31:**1 **33:**18 **52:**22 **59:**7, 22 **60:**1,1,6,7
**Porter's** [1] **7:**25
**position** [5] **27:**16 **33:**24 **41:**24 **46:**13 **56:**25
**possibility** [2] **22:**3 **40:**13
**possibly** [1] **39:**20
**power** [11] **21:**3 **30:**23,25 **32:**10,19 **34:**3 **37:**10 **47:**11 **53:**15 **58:**17 **59:**2

**powers** [8] **31:**10,23 **32:**8 **33:**25 **34:**4 **53:**2,22 **54:**10
**practicalities** [1] **12:**11
**practice** [2] **38:**14 **48:**8
**practices** [5] **37:**13 **47:**13, 15 **50:**9 **51:**21
**precedent** [1] **52:**22
**precedents** [2] **19:**15 **32:** 12
**precisely** [5] **28:**12 **60:**11, 13,16 **62:**5
**precluded** [1] **21:**23
**precludes** [1] **60:**4
**preferred** [1] **50:**7
**premise** [1] **20:**8
**prescriptions** [1] **61:**19
**present** [1] **34:**21
**presume** [1] **25:**12
**presumption** [2] **4:**14 **12:**6 **45:**20
**pretty** [8] **5:**16 **10:**13,21 **21:** 14 **24:**3 **35:**22 **41:**24 **46:**21
**prevent** [2] **53:**7,13
**preventing** [1] **34:**21
**Price** [2] **21:**25 **33:**18
**primary** [4] **4:**24 **17:**21 **18:** 17 **28:**15
**principle** [7] **11:**19 **23:**4 **30:** 14 **53:**21 **58:**19,22,23
**principles** [2] **39:**18 **54:**21
**prior** [2] **23:**11 **45:**8
**problem** [3] **22:**14 **52:**25 **53:**14
**procedural** [1] **47:**18
**proceed** [2] **31:**11 **60:**22
**proceeded** [2] **44:**20,21
**proceedings** [2] **40:**2 **46:**8
**process** [5] **14:**19 **18:**2,6 **39:**18 **49:**11
**processes** [4] **4:**24 **16:**22 **17:**21 **29:**12,20 **46:**3 **47:**21 **61:**24
**profit** [1] **30:**16
**profoundly** [1] **30:**17
**program** [1] **42:**3
**progressive** [1] **37:**11
**prohibited** [4] **5:**1 **17:**15 **29:**13 **62:**8
**prohibitions** [3] **4:**22 **17:** 20 **28:**13
**prohibitory** [1] **31:**18
**pronounce** [1] **17:**13
**proof** [2] **4:**10 **60:**24
**properly** [1] **35:**7
**property** [8] **8:**25 **9:**14 **23:**3, 3,13 **35:**9
**prospective** [2] **62:**6,7
**prospectively** [2] **28:**16 **29:**13
**protection** [5] **37:**25 **42:**3 **49:**8,23,25
**protections** [8] **25:**23 **46:** 15 **47:**19,24 **50:**13,18 **61:**4 **62:**14

**proven** [1] **27:**22
**proves** [1] **51:**25
**provide** [7] **5:**8 **15:**25 **22:** 15 **31:**7 **32:**3 **40:**21 **61:**4
**provided** [4] **4:**21 **25:**21 **61:** 19 **62:**14
**provides** [1] **4:**9
**providing** [2] **60:**8 **62:**6
**provision** [3] **4:**7 **14:**10 **16:**20 **22:**1 **25:**22 **33:**13 **34:** 18,20 **38:**6 **41:**20 **51:**5 **60:** 8,11
**provisions** [4] **7:**7 **44:**3 **47:** 20 **51:**3
**proviso** [1] **29:**15
**punish** [1] **53:**7
**purpose** [2] **3:**13 **4:**21
**pursue** [2] **16:**12 **18:**5
**pushes** [1] **53:**11
**put** [6] **10:**16 **19:**2,3,4 **51:**7 **52:**21
**puts** [1] **33:**3

**Q**

**question** [25] **6:**10 **11:**10, 11 **12:**12 **13:**8 **14:**7 **16:**6 **19:**11 **21:**5 **27:**23 **28:**22 **35:** 17 **40:**6,7 **42:**18 **45:**2 **49:**9 **50:**16 **51:**8 **52:**20 **53:**25 **54:** 3,3,17 **55:**20
**questioning** [1] **43:**9
**questions** [5] **18:**22 **26:**6 **30:**20 **41:**20 **62:**16
**quicker** [1] **17:**17
**quickly** [2] **5:**5 **16:**25
**quite** [3] **41:**14 **45:**8 **57:**9

**R**

**race** [1] **58:**8
**racking** [1] **62:**13
**radically** [1] **30:**13
**rampant** [1] **39:**12
**range** [1] **33:**25
**rather** [3] **16:**13 **36:**3 **47:**24
**ratification** [2] **26:**9,16
**RCRA** [1] **25:**5
**rea** [1] **46:**17
**reaching** [1] **28:**11
**read** [4] **14:**23 **38:**5 **52:**21
**reading** [4] **5:**10 **6:**4 **18:**1 **32:**7
**real** [1] **54:**3
**really** [5] **45:**23 **47:**5 **50:**3 **53:**1 **57:**6
**reason** [6] **5:**7 **12:**5 **15:**24 **23:**15 **29:**21 **34:**16
**reasonable** [2] **8:**12 **27:**12
**reasoning** [1] **6:**24
**REBUTTAL** [3] **2:**8 **59:**12, 13
**recent** [1] **14:**17
**recognize** [1] **50:**24
**recognized** [3] **30:**15,21, 22

**recognizing** [1] **50:**8
**reconcile** [1] **34:**24
**reconciled** [1] **7:**22
**recover** [1] **18:**1
**recovery** [1] **31:**3
**Red** [1] **10:**9
**redress** [9] **9:**10 **18:**12,15 **44:**25 **56:**12
**Reed** [1] **24:**12
**reference** [2] **9:**3 **28:**23
**referred** [1] **6:**15
**referring** [1] **39:**24
**refers** [1] **8:**22
**reflect** [1] **44:**3
**reflects** [3] **31:**15 **49:**15,21
**refrain** [1] **14:**21
**regarding** [1] **47:**20
**regime** [1] **50:**22
**regular** [1] **38:**7
**regulatory** [1] **50:**22
**reiterate** [1] **58:**16
**rejected** [2] **6:**11 **12:**1
**relationship** [1] **13:**7
**relief** [55] **3:**17,18,24 **4:**1,4, 6,8,15,16,19 **7:**15,21,24 **8:** 20 **9:**7,15,20,22,24 **12:**2 **15:** 12 **16:**14 **17:**8 **18:**6 **19:**22 **22:**16 **25:**6,11,13,19,21 **26:** 1 **28:**18,25 **29:**19 **31:**5 **32:** 4 **33:**16 **35:**8,21 **41:**18 **42:** 9 **43:**21,23,24,25 **44:**12 **47:** 20 **54:**23 **60:**4,13,15,17 **61:** 3,9
**relies** [3] **21:**7,8,8
**rely** [1] **44:**14
**remains** [1] **51:**19
**remedial** [1] **35:**8
**remedies** [7] **5:**6 **6:**17 **15:** 25 **16:**10 **17:**8 **18:**24 **24:**19 **29:**9 **30:**18 **31:**7,19 **32:**21 **34:**7 **36:**22 **39:**15 **44:**9,10, 15 **45:**25 **46:**2,7 **51:**4,6 **54:** 8,15 **56:**24 **59:**24
**remedy** [2] **17:**18 **18:**11 **21:**19,21,24 **22:**4 **23:**15 **24:** 18 **27:**15 **35:**14 **39:**22 **40:** 21,23 **41:**1,13 **45:**12 **56:**2 **57:**10 **60:**8,10 **61:**25
**remedying** [1] **57:**16
**remind** [1] **50:**4
**render** [1] **62:**12
**rendered** [1] **25:**24
**rendering** [1] **50:**17
**repay** [1] **12:**25
**repeal** [1] **38:**3
**repeated** [1] **46:**16
**require** [1] **48:**17
**required** [4] **12:**20 **13:**11 **39:**21 **59:**7
**requirement** [4] **4:**11 **29:** 10 **41:**17 **60:**25
**requires** [3] **35:**4 **41:**16 **52:** 4
**requiring** [2] **14:**20 **22:**17

Official - Subject to Final Review

**reservoir** [1] 13:2
**resolve** [1] 11:5
**resolved** [1] 55:1
**resolves** [1] 54:9
**resources** [1] 13:18
**respect** [2] 12:19 25:1
**respects** [1] 36:7
**Respondent** [4] 1:8,22 2:7 30:4
**response** [1] 61:2
**responses** [2] 6:10 54:1
**responsibilities** [2] 5:8 13:21
**responsibility** [2] 18:18 28:15
**rest** [1] 55:17
**restitution** [13] 21:3,11,23 22:17 23:6,12,24,25 24:19 40:21,23 56:2 57:6
**restore** [3] 56:24 57:11 59:2
**result** [1] 12:24
**results** [1] 53:14
**resume** [1] 40:17
**resumed** [1] 40:13
**retrospective** [6] 3:24 4:19 9:6,7 28:18 61:9
**return** [4] 12:20 13:11 29:22 30:25
**returned** [1] 23:4
**reversed** [1] 62:18
**Rights** [2] 6:14 18:24
**ripped** [1] 57:12
**rise** [2] 31:4 59:5
**ROBERTS** [30] 3:3 5:9 6:25 7:2 8:2 10:5 12:9 15:18, 21 18:19 22:10 24:5 27:1 28:20 29:25 32:5 33:5,20 34:10 37:5 40:4 43:15 46:10 49:12,16 52:14 55:8 58:13 59:10 62:19
**role** [2] 5:23 31:14
**Root** [1] 35:10
**roughly** [1] 5:11
**route** [6] 49:1,2,6,8 50:7,7
**routine** [1] 17:11
**rule** [6] 12:3,18 23:9 30:7 37:21,23
**ruled** [1] 46:5
**rulemaking** [1] 37:1 43:2,5
**rules** [5] 16:3 43:2 50:5 51:20 52:10
**ruling** [2] 12:4 30:13
**run** [1] 48:19
**running** [1] 28:17
**Rutledge** [3] 24:12,16,16

**S**

**safeguards** [1] 4:9 27:11 60:18
**safekeeping** [1] 57:24
**same** [15] 7:18 8:10 14:7 19:23 21:5 25:21 26:1 33:8 37:24 43:12,19 60:10,13,
16 61:3
**Sandoval** [4] 6:12,24 7:12 19:2
**sat** [1] 61:16
**savings** [2] 31:13 50:25
**saw** [1] 45:4
**saying** [2] 29:7 33:1
**says** [4] 2:15 9:31 12:32:24 33:12 34:15 37:16 38:1 41:25
**scams** [1] 48:19
**scheme** [3] 12:14 21:21 26:4
**school** [1] 14:13
**Scott** [1] 36:13
**SEC** [1] 43:12
**Second** [3] 4:1 20:25 21:7
**second-level** [1] 29:15
**Section** [9] 3:13 4:2,7,20 5:2 7:21 15:25 18:16 19:14 21 24:24 25:22 27:11,22 30:20 31:12,13,15,21 32:23,23 33:13,14 34:15 36:1, 3,3,6,7,18,22,23 37:22 42:5 43:8,18,19,23 44:1,4,13 45:6,9,11,24,25 46:4,14,14, 15,20 50:9,13 51:1,9,17 60:17,22,23 62:15
**Sections** [5] 8:9 31:6,25 32:1 59:4
**sectors** [1] 43:3
**Securities** [1] 41:15
**see** [8] 10:11,14 20:21 21:19,20 38:20 39:5 51:2
**seek** [17] 3:14 9:19 14:16 16:8 17:9 18:15 21:3,5 23: 23 28:18 32:24 33:6,16 35: 13 39:15 53:20 54:5
**seeks** [1] 23:22
**seem** [4] 16:19 50:24 57:6
**seems** [11] 10:15 16:10 34: 19,22 35:25 46:11,25 47: 22 52:24 56:23 57:4
**seized** [1] 58:9
**self-defining** [1] 50:10
**sense** [7] 3:23 4:21 9:5 16: 2 18:7 48:25 53:1
**sentence** [1] 29:15
**separate** [1] 25:22
**separately** [3] 43:19 56:1, 12
**separation** [3] 53:1,21 54: 10
**serves** [1] 31:13
**service** [1] 16:21
**set** [1] 50:5
**settle** [1] 40:3
**settled** [1] 56:1
**settlements** [1] 39:25
**Seventh** [1] 10:22
**several** [1] 49:6
**Sherman** [1] 50:12
**shouldn't** [1] 5:24
**shows** [1] 62:5

**side** [8] 6:3 10:16 11:23,25 33:21 49:23,25 50:1
**significant** [2] 5:13 47:1
**similar** [2] 6:11 24:10
**simple** [1] 22:24
**simply** [3] 9:20 10:18 12:3
**since** [4] 4:23 6:19 30:22
**single** [4] 16:20 28:11 29: 14 61:2
**sits** [1] 58:17
**situation** [1] 9:18
**situations** [1] 16:22
**six** [1] 39:5
**Skechers** [2] 38:10 39:3
**slightly** [1] 45:2
**smoothly** [1] 32:17
**society** [1] 11:21
**somebody** [1] 11:14
**somehow** [2] 7:14,22
**someone** [3] 3:21 23:11 27:18
**sometimes** [6] 16:3,17 18: 8,10 53:8 60:19
**somewhat** [1] 36:22
**sorry** [5] 16:8 20:23 27:20 32:23 35:12
**sort** [5] 5:18 6:6 25:16 32: 11
**Sotomayor** [10] 15:22,23 16:16 17:1,4,24 43:16,17 45:1,18
**Southern** [2] 13:9,19
**specific** [4] 4:15 5:17 9:2 32:21
**specify** [1] 31:19
**spent** [1] 58:5
**squarely** [1] 33:3
**stability** [1] 26:14
**stake** [1] 55:11
**standard** [4] 27:13 35:2 59: 6 60:5
**standards** [1] 50:2
**started** [2] 37:8 43:8
**starts** [1] 40:15
**state** [1] 36:24
**STATES** [5] 1:1,16 13:3,5 33:22
**statute** [21] 4:10 5:11,14, 24 16:11 19:17,18 20:19 21:4 22:2 25:8,15,20,24 26:20,20,23 29:17 60:3 61: 8,10
**statutes** [1] 5:14
**statutory** [6] 6:20 17:13 21: 21 26:4 53:8,12
**step** [3] 11:5 29:7 50:20
**stick** [1] 53:22
**still** [6] 8:10 11:11,12 26:20 40:22 41:14
**stolen** [2] 30:12 57:19
**stood** [1] 57:1
**stop** [8] 5:4 16:24 18:4,4 30:10 40:16 43:24 61:22
**stopping** [2] 18:10,17

**Stores** [1] 54:18
**Story** [2] 22:25 23:17
**stretches** [1] 53:12
**striking** [2] 29:11 61:8
**strikingly** [1] 24:10
**strong** [2] 39:3 46:13
**struck** [2] 39:11,14
**structure** [2] 3:12 62:10
**stuff** [2] 36:20 49:22
**subject** [6] 14:4 21:12 25: 23 27:8 31:2 61:16
**submitted** [2] 62:20,22
**substance** [1] 50:11
**substantial** [1] 27:23
**substantiation** [1] 38:12
**succeed** [1] 42:11
**successful** [1] 42:12
**sue** [1] 36:23
**sued** [1] 35:16
**sufficient** [2] 18:11 60:9
**suggest** [4] 9:19 12 21:13 27:21 34:19
**suggested** [1] 27:10
**suggesting** [1] 45:5
**suggests** [1] 60:5
**suit** [1] 31:2
**suited** [1] 5:23
**summed** [1] 31:1
**superfluous** [1] 50:18
**supersedes** [1] 22:3
**supplement** [2] 5:3 16:19
**support** [1] 32:6
**suppose** [2] 13:3 14:14
**supposed** [3] 18:22 19:13 20:10
**SUPREME** [3] 1:1,15 21: 11
**surprise** [1] 42:11
**surprised** [1] 12:23
**suspicious** [1] 37:10
**sweep** [1] 28:10
**sworn** [1] 6:19

**T**

**tangential** [1] 26:8
**tells** [1] 37:16
**temporary** [2] 17:5 18:3
**tens** [1] 56:20
**term** [4] 29:4 30:15 50:8 59: 23
**terms** [7] 8:18 15:5,9 23:5 36:14 45:14 47:14
**test** [1] 3:12
**text** [3] 42:7 52:25 53:23
**textual** [1] 44:2
**theoretical** [1] 19:6
**theory** [1] 7:13
**there'd** [1] 61:1
**there's** [12] 5:12 10:21 12: 2,5 17:11 22:25 23:1 27: 17 48:15 49:9 50:18 56:10
**therefore** [4] 31:18 35:12 38:16 47:18
**thinks** [3] 19:10,11 52:1

**Third** [1] 4:7
**Thomas** [8] 8:4,5 9:12 10: 4 34:12,13 35:2,23
**Thomas's** [2] 40:6,7
**though** [5] 21:22 35:25 39: 24 46:20 47:22
**threatened** [3] 5:3 16:23 25:15
**Three** [7] 3:19 4:17 7:16 10: 2 25:8 28:2 29:2
**throughout** [2] 33:23 62:2
**time's** [1] 58:12
**time-consuming** [1] 42:5
**Title** [1] 6:13
**today** [3] 5:21 6:8 51:9
**Together** [1] 31:25
**toning** [1] 38:17
**took** [2] 11:8 58:21
**toothless** [1] 39:13
**totally** [1] 25:17
**traceable** [2] 57:2,15
**TRADE** [3] 1:7 3:5 51:21
**tradition** [1] 59:1
**traditional** [7] 31:10,22 35: 20 44:9,15 54:15,21
**traditionally** [3] 7:3 16:18, 19 15:10,11 29:5 41:4
**transfer** [1] 53:15
**Treasury** [1] 55:17
**treatise** [2] 7:9 23:18
**triggered** [2] 35:18 45:9
**true** [1] 14:10
**truly** [1] 61:8
**trust** [1] 58:10
**try** [1] 7:5
**trying** [7] 19:20 20:13 24:1 28:17 60:12,13,16
**Tucker** [7] 13:17,25 36:13 55:24,24 58:6 61:15
**Tucker's** [2] 13:10 55:13
**turn** [2] 8:25 14:6
**turned** [1] 56:4
**two** [8] 6:9 11:22,25 20:24 44:3 46:22 47:1 61:3
**type** [2] 4:15 23:18
**types** [1] 34:7
**typically** [2] 35:4 40:14

**U**

**U.S** [1] 36:12
**ultimately** [2] 54:24 56:13
**Unburn** [2] 38:11 39:3
**uncertain** [1] 52:3
**under** [32] 4:13 5:23 11:1 15:25 16:1,10,12 18:2 19: 19 20:13 23:25 26:1 27:15, 22 29:14 33:13 36:1,18 37: 13,19 38:6,7 47:13 50:11 59:7 60:1,14,17,22 61:3 62:13,14
**underlying** [1] 23:20
**understand** [4] 13:11 27:5 39:21 53:4
**understandably** [1] 47:17

Official - Subject to Final Review

**understanding** [8] 12:15
13:15,18 16:11 27:13 30:
18 31:22 55:4
**understood** [13] 3:16 7:6
8:18 15:10 20:7,14 21:15
29:5 41:21 42:19,20 45:6
55:2
**undo** [1] 11:13
**unfair** [3] 38:14 47:16 51:
21
**uniform** [2] 10:21 11:13
**unimportant** [1] 45:3
**UNITED** [5] 1:1,16 13:3,5
33:22
**unlawful** [1] 30:25
**unlawfully** [1] 58:21
**unmistakable** [2] 31:9 59:
5
**until** [1] 18:16
**up** [18] 13:4,20 26:5 28:21
31:1 36:20,20,21 38:25 45:
2 48:14 50:5 51:20 52:5,
19 56:13 58:14 62:13
**uphold** [1] 58:25
**uses** [3] 49:1,5,7
**using** [2] 19:7 34:23

**V**

**valid** [1] 54:25
**value** [1] 22:19
**various** [1] 25:23
**version** [2] 12:4 45:9
**versus** [4] 3:5 6:24 10:25
54:18
**VI** [1] 6:13
**victim** [1] 59:2
**victimization** [1] 44:25
**victimized** [1] 32:4
**victims** [8] 4:11 12:13 55:
15 57:11,13,15,18 58:2
**view** [3] 6:7 27:17 29:14
**vigorously** [1] 43:7
**violate** [1] 3:22 34:18
**violated** [1] 27:19
**violating** [2] 3:21 34:18
**violation** [5] 31:20 37:20,
23 46:16 62:3
**violations** [3] 3:23 25:16
30:11
**violator** [1] 30:11
**virtually** [1] 29:16

**W**

**wait** [1] 11:9
**wandered** [1] 50:15
**wanted** [6] 22:7 31:19 37:2
42:6 44:10,19
**wants** [1] 29:19
**war** [1] 53:9
**Washington** [2] 1:11,21
**water** [1] 11:1
**way** [6] 10:14 18:5 27:17
38:23 51:8 59:18
**ways** [2] 39:4,5

**Wednesday** [1] 1:12
**well-established** [1] 38:
21
**whatever** [3] 32:19 33:9
58:8
**whatsoever** [2] 18:15 38:1
**whenever** [2] 33:24 34:16
**Whereupon** [1] 62:21
**Whether** [15] 6:22 9:10,22
13:4 17:14,15 19:20 21:19
23:3 28:23,25 44:20,22 53:
16 57:21
**Whittaker** [1] 24:14
**whole** [1] 19:9
**whom** [1] 14:20
**widespread** [1] 62:2
**wife** [2] 38:15 55:13
**will** [11] 3:3 12:19,20 16:5
37:17,18,18 38:1 39:21 55:
20 58:1
**wind** [1] 56:13
**wins** [1] 12:5
**wished** [1] 24:20
**wishes** [2] 48:8 51:13
**within** [1] 33:3
**without** [5] 9:3 29:19 31:
23 60:17 62:13
**Wonder** [1] 39:4
**wondering** [1] 47:4
**word** [4] 4:5 7:23 14:12 59:
20
**words** [5] 19:17,18 24:25
55:2 59:19
**work** [1] 32:1
**workaround** [1] 42:6
**worked** [1] 53:3
**works** [1] 31:17
**worry** [1] 38:1
**worth** [1] 13:22
**worthy** [1] 9:9
**wrap** [2] 28:21 58:14
**write** [1] 24:25
**written** [1] 24:13
**wrongdoers** [2] 30:15 58:
20
**wrongdoing** [2] 14:3 30:
16
**wrongfully** [1] 59:3

**Y**

**year** [1] 49:7
**years** [10] 5:11,12 10:20 11:
13 20:24 26:10 38:4,5 43:
10 53:4
**York** [1] 13:9

Heritage Reporting Corporation