IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:20-cv-03538 - GLR |
| | ) |
| RAGINGBULL.COM, LLC f/k/a | ) |
| LIGHTHOUSE MEDIA LLC, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**NOTICE OF FILING OF RAGINGBULL.COM, LLC BUSINESS PLAN**

Defendant RagingBull.com, LLC ("Raging Bull" or the "company") and Individual Defendants Jeffrey M. Bishop and Jason Bond (the "Individual Defendants" and collectively with Raging Bull, the "Defendants"), by and through undersigned counsel, provide notice of filing of the Business Plan of Defendant RagingBull.com, LLC ("Raging Bull"), and state as follows:

1. On February 4, 2021, the Court entered an Order ("Order) that memorialized the agreements reached in the February 3, 2021 teleconference ("Teleconference") with the Parties convened by the Court. (Dkt. 165)

2. In the Teleconference, the Court noted that the Temporary Receiver had acknowledged, in his Initial Report (Dkt. 156), that he believes it to be possible for Raging Bull to operate lawfully and profitably going forward.

3. As reflected in the Order, and in light of the Temporary Receiver's acknowledgement and the issues raised by the Temporary Receiver in his Initial Report, the Court gave Raging Bull the opportunity to prepare and submit a business plan. To allow time for Raging

Bull to prepare the business plan, the Court vacated the February 4, 2021 Preliminary Injunction hearing.

4. In the Order, the Court ordered the Parties to notify the Court by February 9, 2021 of the date Raging Bull intends to submit a brief describing its proposed business plan. The Court also informed the Parties that "[u]nless otherwise agreed to by the parties, responses by the [FTC] and Temporary Receiver will be due ten (10) days after the submission of Raging Bull's brief. Raging Bull's reply will be due seven (7) days thereafter."

5. In the Order, the Court also ordered the parties to "work together collaboratively regarding whether and how Raging Bull can lawfully and profitably operate the business during what could be protracted litigation leading up to a trial on the merits some time in the distant future." To accomplish this collaboration, the Court noted that it was "willing to refer this matter to a U.S. Magistrate Judge to assist in these efforts upon request by either side." The Court directed the Parties "to inform the Court by February 9, 2021 whether they consent to a Magistrate Judge for this limited purpose."

6. On February 9, 2021, the Parties filed a Joint Notice ("Joint Notice"), which stated that "[p]ursuant to the Court's statement (Dkt. 165, n.1)" regarding the need for the parties to collaborate, "the FTC convened a conference call with the Parties on February 9, 2021." (Dkt. 167) During that FTC-initiated conference call, the FTC immediately advised the Parties that they would oppose *any* business plan and would not consent to the referral to a Magistrate Judge. The Receiver took no position.

7. Under the Joint Notice, the Parties agreed to a briefing schedule by which Raging Bull was to file its brief describing its business plan on or before February 19, 2021. On the request

of counsel for the Temporary Receiver, the Parties agreed to give the Temporary Receiver and the FTC eleven days to file their responses – one more day than provided for in the Court's Order.

8. The Court approved the Joint Notice on February 12, 2021. (Dkt. 169)

9. Pursuant to the February 12 order, Raging Bull hereby submits its Business Plan.

10. The Business Plan lays out how Raging Bull will operate lawfully and profitably during the interim time up to either a trial on the merits or other resolution of this matter.

**Raging Bull Will Operate Lawfully**

11. Raging Bull's plan to operate lawfully includes a two-part, phased approach for meeting compliance requirements during the interim period before there is a trial on the merits or this matter is otherwise resolved. The Company believes this approach will provide the optimal balance for ensuring both compliant advertising practices for consumers and scalable, long-term financial viability for the Company.

12. Phase 1 of the compliance plan will last approximately 60 days and entail several equally important priorities. The Company will concentrate on re-establishing its relationship with existing subscribers and fulfilling its service obligations to them. These subscribers are the backbone of Raging Bull and represent the most direct path to continued revenue and financial growth for the Company, through renewals, additional services, word-of-mouth referrals, and other positive publicity.

13. During this time, the Company will not engage in any advertising or marketing to potential new subscribers. Instead, the focus will be on developing and refining its advertising and compliance practices and policies. This will involve the hiring of additional full-time compliance personnel; revision of the review and approval process for marketing copy; methods for incentivizing compliance; elimination of any non-compliant online content under the Company's

control; and the implementation of new auditing and monitoring functions, among other enhancements. Likewise, the Company will strengthen its customer service, refund, renewal and cancellation policies and features, as this is a key facet for maintaining consumer trust and is an area that can be impacted by fast-growth or major external events, such as the COVID-19 pandemic.

14. Phase 1 will conclude with the validation of the Company's efforts by an independent, Court-appointed Compliance Monitor. The Compliance Monitor will audit, certify, and provide to the Court a written report regarding the Company's compliance measures. Provided the Court concurs with the progress of the steps taken and the Compliance Monitor's certification, the Company will be permitted to move into Phase 2.

15. Phase 2 will allow for Raging Bull to expand its services to its existing subscribers and market to potential new subscribers, subject to ongoing compliance and oversight by the Compliance Monitor. To provide further assurances to the Court, the Company requests that the Compliance Monitor be permitted, at his/her discretion, to withdraw any prior certification, thereby suspending the Company's ability to operate at Phase 2.

16. The Company believes that this phased approach, with an appropriate combination of attention to current subscribers, internal updates and refinements, and external controls, will ensure the Company's compliance with the compliance plan while allowing for significant financial success.

**Raging Bull Will Operate Profitably**

17. The Business Plan also addresses the concerns raised by the Temporary Receiver in his Initial Report that the Company faces obstacles to operating profitably.

18.     Raging Bull has always run a profitable business. The Temporary Receiver's skepticism seems to be driven by his view that the Company has had a negative net equity balance since its inception, and that the distributions to partners were from unearned income. The Temporary Receiver is wrong – an error based on a misapplication of accounting principles by the forensic accountant engaged by the Temporary Receiver to analyze Raging Bull's financial history and circumstances.

19.     To demonstrate this for the Court, Raging Bull submits the Initial Expert Report of A. Christine Davis, who concludes that the Company has always been profitable, paid all distributions to partners from earned income, and always had positive net equity until Fall of 2020, when, due to the company's growth, the Company was advised to convert from the cash basis of accounting to the accrual basis of accounting. This change was due to the changing in accounting basis and not the financial performance of the Company or the cash distributions to the partners.

20.     Raging Bull also includes with its Business Plan detailed financial projections, which demonstrate the Company will continue to operate profitably going forward and will have positive cash balances at the end of each year presented.

21.     Defendants are committed to saving their Company, which they have worked hard to build. By re-starting operations and committing substantial personal funds to do so, Raging Bull can be part of the solution in getting this matter resolved. Raging Bull has a clear plan for operating lawfully and profitably, which will allow the Company to fulfil its obligations to its subscribers – most of whom, the evidence shows – are happy with Raging Bull and want their services to continue. Servicing those subscribers, and building the business with new subscribers, will generate assets and reduce liabilities through the earning of deferred revenues and avoiding exposure to demands for refunds. This will increase, rather than diminish, the cash available for

consumers as part of any ultimate resolution of this matter. It will also serve to employ or re-employ members of public as well as provide a service to consumers who want to learn to trade stocks.

22. Accordingly, Raging Bull believes that it can and should be allowed to operate its business in this interim period consistent with the plan it has presented. While the FTC has indicated they will oppose any business plan by Raging Bull, the Raging Bull Defendants remain hopeful that the FTC will keep an open mind and that working together the Parties can come up with a consensual resolution as to how they may move forward. To that end, the Raging Bull Defendants renew their request for referral to a Magistrate Judge to assist the Parties in that effort.

Dated: February 19, 2021

Respectfully submitted,

RagingBull.com, LLC, Jeffrey M. Bishop and Jason Bond

By: /s/ *David G. Barger*
David G. Barger (DCB# 469095)
Greenberg Traurig LLP
1750 Tysons Blvd.
Suite 1200
McLean, VA 22102
Tel: (703) 749-1300
Email: bargerd@gtlaw.com

Andrew G. Berg (admitted *pro hac vice*)
2101 L Street, N.W.
Suite 1000
Washington DC 20037
Tel: (202) 331- 3100
Email: berga@gtlaw.com

Miriam G. Bahcall (admitted *pro hac vice*)
Brett M. Doran (admitted *pro hac vice*)
Greenberg Traurig, LLP
77 West Wacker Drive
Suite 3100
Chicago, IL 60601
Tel: (312) 476-5135

                Email: bahcallm@gtlaw.com
                Email: doranb@gtlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of February 2021 a true and accurate copy foregoing Notice of Filing of RagingBull.com, LLC Business Plan, was properly served on all parties through the ECF system.

/s/ *Brett M. Doran*
Brett M. Doran (admitted *pro hac vice*)
Greenberg Traurig, LLP
77 West Wacker Drive
Suite 3100
Chicago, IL 60601
Tel: (312) 476-5135
Email: doranb@gtlaw.com

*Counsel for RagingBull.com, LLC,*
*Jeffrey M. Bishop and Jason Bond*