## SIXTH DECLARATION OF REEVE TYNDALL

### Pursuant to 28 U.S.C. § 1746

I, Reeve Tyndall, hereby state that I have personal knowledge of the facts set forth below and, if called to testify, I could and would testify as follows:

1.      I am a United States citizen. I work as a Senior Investigator for the Federal Trade Commission ("FTC") in the Bureau of Consumer Protection's Division of Marketing Practices. The Division of Marketing Practices investigates persons and entities that may be violating the FTC Act and other laws enforced by the FTC.

2.      On October 20, 2020, I captured Raging Bull's general Terms and Conditions located at ragingbull.com/tos/. See DE 13-1, PX 27 at 1811.  The T&C had the following refund policy:

**Refund Policy.** Because premium members immediately benefit from the knowledge of the stats and analytics they purchase, we do not give refunds. You should recognize that investing and trading is a marathon, not a sprint so every last piece of information that can help you learn along the way and give you "an edge" over your competitors is worth investing in, especially when that information costs less per month than a night out of dinner and drinks aka invest in your education!

3.      During the course of my investigation, I examined additional Terms and Conditions for the following Raging Bull services:  BioTech Breakouts, Bullseye Options, Daily Profits, IPO Payday, Jason Bond Picks, Penny Pro, Profit Prism, The Dollar Ace, Jason Bond Unchained, Weekly Money Multiplier, and Weekly Windfall.  These additional Terms and Conditions had the same no-refund policy as Raging Bull's general Terms and Conditions.

4.      The Terms and Conditions for Fast Five Trading also had a no-refund policy.  The Fast Five sales page, however, had a "30-Day Money Back Guarantee."  During the course of my investigation, I learned that consumers who wanted to receive the money back guarantee had to complete a knowledge test before receiving a refund.  As discussed in PX 27, I also purchased Fast Five and tried to contact Raging Bull to receive my money back under the guarantee, but was unable to reach anyone via phone at the company despite several attempts.

5.      Pursuant to the Temporary Restraining Order, the Court Appointed Receiver provided the FTC access to Raging Bull's email system.  **Attachment A** are selected emails from this system:

| Subject | Date | Beg. Page | Ending Page |
|---------|------|-----------|-------------|
| Re: Petra Picks Needs List | 7/25/2017 | 4632 | 4635 |

**PX 47, 4630**

| | | | |
|---|---|---|---|
| RagingBull Elite Subscription Refund Inquiry | 12/3/2020 | 4636 | 4637 |
| You've Got An Edited 1-Star Review | 10/20/2020 | 4638 | 4641 |
| Adding Domains | 10/12/2020 | 4642 | 4642 |
| You've Got An Edited 1-Star Review | 10/12/2020 | 4643 | 4644 |
| Tips To Help You Manage Your Reviews | 10/5/2020 | 4645 | 4645 |
| You've Got An Edited 1-Star Review | 9/25/2020 | 4646 | 4648 |
| Attention: You Are Suspended From Reporting Reviews | 9/21/2020 | 4649 | 4650 |
| You've Got An Edited 1-Star Review | 7/10/2020 | 4651 | 4652 |
| [Trustpilot Compliance] #4719233 Reported Review(s) | 4/21/2020 | 4653 | 4653 |
| LMS: Raging Bull | 5/15/2020 | 4654 | 4654 |
| Your receipt from RagingBull.com, LLC #2659-4407 | 9/28/2020 | 4655 | 4678 |
| [WePay Support] Re: Chat with Jason Pell | 11/2/2020 | 4679 | 4679 |
| Your account has been closed | 10/5/2020 | 4680 | 4680 |
| Please set up your WePay account | 9/21/2020 | 4681 | 4681 |
| Base Commerce and Bank of Fresno + Attachment | 9/23/2020 | 4682 | 4688 |
| Raging Bull Processing and Bank Statements | 9/22/2020 | 4689 | 4699 |
| Raging Bull (acct  REDACTED) Termination Notice | 9/11/2020 | 4700 | 4701 |
| Current Processor Efforts | 3/21/2020 | 4702 | 4702 |
| RagingBull.com Pend | 12/18/2019 | 4703 | 4706 |
| Discover Entitlement - Raging Bull | 1/7/2019 | 4707 | 4709 |
| Wednesday's Call | 5/22/2018 | 4710 | 4711 |
| Bank of America Merchant | 1/30/2018 | 4712 | 4713 |
| RagingBull Elite Subscription Refund Inquiry | 12/3/2020 | 4714 | 4715 |
| MasterCard Chargeback Program | 8/28/2020 | 4716 | 4716 |
| You Signed: "RagingBull Application" + Attachment | 10/20/2020 | 4717 | 4724 |
| Completed: "RagingBull Synovus Application" + Attachment | 9/28/2020 | 4725 | 4733 |
| Completed: "RagingBull BUSA Application" + Attachment | 9/25/2020 | 4734 | 4742 |
| Ending Bank of America Processing + Attachment | 7/2/2019 | 4743 | 4745 |
| Account Termination Notice + Attachment | 9/29/2020 | 4746 | 4748 |
| Alert: High Reporting Activity | 5/1/2020 | 4772 | 4773 |

\* The final email is marked Attachment D at the end of this declaration.

6.　　Pursuant to the Temporary Restraining Order, Cardflex, Inc. d/b/a Cliq provided the FTC a copy of a merchant account application submitted by Raging Bull in October 2020.  A copy of this application is attached hereto as **Attachment B**.

7.　　Pursuant to the Temporary Restraining Order, Maverick Bankcard, Inc. provided the FTC a copy of a merchant account application submitted by Raging Bull in October 2020.  A copy of this application is attached hereto as **Attachment C**.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 2, 2021.

_Reeve Tyndall_
_____
Reeve Tyndall

**PX 47, 4631**

## Re: Petra Picks needs list

| | |
|---|---|
| **From:** | Jason Bond <jason@bond.life> |
| **To:** | Jeff Bishop <jeff@ragingbull.com> |
| **Date:** | Tue, 25 Jul 2017 16:01:56 -0400 |

Anything specific you want me to ask or just see how she's doing?

On Tue, Jul 25, 2017 at 4:00 PM, Jeff Bishop <jeff@ragingbull.com> wrote:

She hasn't gotten back to me in the past few emails. Can you reach out to her and see how she's doing?

On Fri, Jul 21, 2017 at 4:50 PM, Jason Bond <jason@bond.life> wrote:

OK I'll handle it then and if it doesn't go well I'll turn it over to you. My goal will be to get her to work with Barry and I understand that this is necessary if she wants sales.

Jb

On Jul 21, 2017, at 4:49 PM, Jeff Bishop <jeff@ragingbull.com> wrote:

Yes, she is.

On Fri, Jul 21, 2017 at 4:34 PM Jason Bond <jason@bond.life> wrote:

Is she in a noncompete?

Jb

On Jul 21, 2017, at 4:27 PM, Jeff Bishop <jeff@ragingbull.com> wrote:

Ok. I'll talk to her over the weekend and explain the situation and see what she wants to do. It's really in her court, I just want to make sure she understands how this game works.

I was just about to type up an email to her but thought it's best if I wait a day. I pretty ticked at her at the moment.

On Fri, Jul 21, 2017 at 4:19 PM Jason Bond <jason@bond.life> wrote:

Yeah, that's probably a better use of his resources. I will talk to her and get back to you but I'll be honest this isn't my favorite situation, I really prefer to find people who like to trade and sell.

Jb

On Jul 21, 2017, at 4:14 PM, Jeff Bishop <jeff@ragingbull.com> wrote:

She might just need to make due with $200k in sales a year and be happy with it.  We'll do what we can to drive her traffic but she's got to be the one to sell them, or find someone to help out.

Why don't you talk to her and see what she wants to do?  I'm putting Barry to work with someone else who doesn't care about hype as long as it sells.

On Fri, Jul 21, 2017 at 4:09 PM, Jason Bond <jason@bond.life> wrote:

Well that's the problem, she's not writing anything. I'm not trying to be negative here but there is not easy to work with and we already know that Petra did not like my style from the great Wolf Lodge

Jb

On Jul 21, 2017, at 4:04 PM, Jeff Bishop <jeff@ragingbull.com> wrote:

She can write her own stuff.  Keep doing what you want Petra.

On Fri, Jul 21, 2017 at 4:03 PM Jason Bond <jason@bond.life> wrote:

Barry is a dick, probably not a good fit?

Jb

On Jul 21, 2017, at 3:45 PM, Jeff Bishop <jeff@ragingbull.com> wrote:

Petra giving Barry a hard time here.  She doesn't feel the need to sell I guess?

--------- Forwarded message ---------
From: **Barry Densa** <Barry@marketingwitandwisdom.com>
Date: Fri, Jul 21, 2017 at 3:30 PM
Subject: Re: Petra Picks needs list
To: Jeff Bishop <jeff@ragingbull.com>

Hi Jeff,

Spoke to Petra this morning.

We got off to a rocky start, but I think I may have calmed her down. But probably not to good effect.

No sooner had I said I was going to write a sales letter for her--she cut me off.

She said: if you're going to write one of those hypey, smoke and mirrors sales letters I get all the time and immediately delete, I will not approve it.

Long story short, I told her that everything that will be written will be absolutely true and verifiable, and we'll provide (she'll provide) proof of any claims made.

**Attachment A**          **PX 47, 4633**

But it will be hyped up to the extent that it doesn't read like a dry editorial in the NY Times—it's a sales letter after all. And it needs to create excitement—particularly the headline and lede.

She also added, somewhat oddly, that her Canadian readers don't like marketing and advertising.

I wanted to say, but I held my tongue, ok, screw the Canadians, this'll be for Americans.

Nonetheless, she allowed me to tell her briefly how I'll structure the letter and what I need from her. And she agreed to provide everything I requested.

But when I got to the terms/offer of a guarantee she said, no guarantee. I explained you must have at least a 30-day guarantee—you have to eliminate the risk on the part of the buyer. Or they won't buy.

She said I should talk to you. Fine. I'm talking to you.

Now I was under the impression that this was a promo for a newsletter—she said no. That it's a service. She sends out alerts and that's all (she'll provide examples of exactly what a subscriber gets).

No problem there.

But here's my problem—which is Petra. I know I can write a quality promo for her service. Which I'm willing to do.

This though is what I need from you…

If you're fine with the finished promo, and you accept it—but she refuses to have it published (she probably won't read past the headline)—I will still get paid the balance due.

In short, I'm writing this for you, not her.

I can't take the risk of spending the next 6-8 weeks writing a killer promo and she then says no because "it's one of those hypey sales letters"—which to a degree it absolutely will be.

So if you agree, I'll get started. If not, is there another one of your editor's that needs a promo?

And there you have it. Let me know your thoughts.

Thanks,
—Barry


> On Jul 19, 2017, at 12:13 PM, Barry Densa <barry@marketingwitandwisdom.com> wrote:
>
> Jeff,
>
> To get started...
>
> Please send me all promotional material for Petra Picks, including all past email series and newsletter issues.
>
> If you have old landing pages or online sales letters please include those as well.
>
> You mentioned that this promotion will be going out to subscribers of her free newsletter (how many subscribers are there?) and presumably to acquired lists.
>
> It may be a good idea to include short teaser inserts in her newsletter driving readers to the sales letter. I can provide 5 (no extra charge �).
>
> If you've done surveys of these readers, please provide whatever info you've culled. Otherwise, your best guess as to the makeup (demographics, investing history and preferences, etc.) of the average reader.

>
> What is the offer? Full price and discounted price, money back guarantee (30-, 60-day, six months, etc.?)
>
> And that should get us started.
>
> My invoice is attached.
>
> Please Fedex a check or make an ACH deposit into my █████████████████████
>

████████████████████████████████

>
> Thanks,
> —Barry
>
> <Invoice Raging Bull 7-19-2017.doc>
>
>
>



## RagingBull Elite Subscription Refund Inquiry

| | |
|---|---|
| **From:** | Tanzer <tanzer@ragingbull.com> |
| **To:** | ████████████████████████████████ |
| **Bcc:** | kaylas@ragingbull.com |
| **Date:** | Thu, 03 Dec 2020 11:26:04 -0500 |

My name is Tanzer, and we recently spoke on the phone regarding your $4,999 payment for RagingBull Elite. Attached to this email is the order form you used to purchase the product, with the refund policy next to it.

In your case this was a one-time purchase, and the order form requires you to check the terms and conditions before you go to check out. Our services physically will not let you check out without first confirming that you read and understood those terms. The terms on RagingBull Elite are attached in the picture that I have sent to you, and I circled the refund policy.

As an agent, my job is to:

1) Make sure you understand how to navigate our dashboard and systems
2) Uphold our policies that we have all across our website and app for situations exactly like this

The purpose of RagingBull Elite is to learn the trading principles of each one of our gurus so they can be applied to enhance your own trading. With Elite you have access to every program we offer here at RagingBull, as well as every program we will offer in 2021. You have access to the chatrooms, the hundreds of hours of training material, the portfolios, the watchlists, the scanners, and the trade alerts. These materials are posted all across your member dashboard, most of which are accessible 24/7.

RagingBull has a strict no refund policy which you may view on the Terms and Conditions on the Order Form you purchased your initial subscription from, as well as on this page: https://ragingbull.com/refund-policy/

I would however be more than happy to walk you through each and every part of your service. I'd be glad to schedule another call with you directly about Elite and together we'll work through the program so you can utilize every part of the service. I look forward to connecting.

**Attachment A**          **PX 47, 4636**



### 4   Place Your Order

**RAGING BULL ELITE**

| Raging Bull Elite Subscription | $4,999 |
|---|---|

**Total:  $4,999**

Your subscription will automatically renew at $9,999 **every year** unless you cancel your subscription PRIOR to your renewal date. Your first renewal will take place on the **16th of January 2022**.

Safe & Secure SSL Encrypted

**PLACE MY ORDER**

**Terms & Conditions**

RagingBull.com, LLC owns and maintains the website known as RagingBull.com ("the Site") subject to your compliance with the terms and conditions set forth in this Agreement. By using the Site, you agree to be bound by these terms and conditions. If you do not agree to these terms and conditions, please do not use the Site.

You must be at least 18 years of age to use the Site. If you are not at

Refund Policy: Raging Bull Elite delivers time-sensitive training and education, and thus a strict "no refund" policy is in place. If you wish to stop your service, please cancel prior to the renewal date listed on your profile to avoid renewing. Cancelling on/after the renewal date is considered a late cancellation and does not constitute a refund

**Card**

| Holder | Type | | Number |
|---|---|---|---|
| ███████████████████████████████████████████████ | | | |

**IDs**

| Merchant | Auth Code | Process Method | ACH Detail |
|---|---|---|---|
| ████████████████████████████████████████████████ | | | |

**Dates**

| Transaction | Capture | Created |
|---|---|---|
| 2020-11-26 00:24:56 | | 2020-11-26 00:42:21 |

All the best,

Tanzer
VIP Customer Support
RagingBull
833-265-1270

 Virus-free. www.avast.com

**Attachment A**          **PX 47, 4637**

## Re: You've got an edited 1-star review

| | |
|---|---|
| **From:** | Kayla Smith <kaylas@ragingbull.com> |
| **To:** | Stephen Prior <stephenp@ragingbull.com> |
| **Date:** | Tue, 20 Oct 2020 12:27:45 -0400 |

They wont find them other than the domains that are already made, so Guru domains that aren't made thus far we can do, but the domains we already have (based on product) can't be merged under them. So currently this is what we have and are getting funnels for-

Others that need to be made we should consider doing by product. For example we shouldn't be sending Double down and LottoX to the WWM domain, they should be separate. And so forth



**Attachment A**                    **PX 47, 4638**

Agreed. There it would be difficult to grow multiple accounts for each product.  And having them tied to the e-letter has SEO benefits.

I think creating them too makes it more likely for people to organically leave reviews.  Sure there might be a review or two that get created for a service over time but outside of DPM it hasn't really been an issue so far.

We don't really want people to organically find the funnels (ie HOO's or JasonBondTraining or MondayMovers).

On Tue, Oct 20, 2020 at 11:01 AM Jeff Bishop <jeff@bishop.me> wrote:

All we need to do is have one TP domain for each guru. Jason has his set up, and we can send people from any of his services there. Kyle does too (though we should rename it something besides BTB).  I have one started we use for Bullseye, and I am fine if we send other review from HOO or TA there.

Now we need to make sure the other gurus have one set up and we're sending out testimonial invites for them too.

****



On Tue, Oct 20, 2020 at 10:51 AM Kayla Smith <kaylas@ragingbull.com> wrote:

Currently all Kyle is going under the BTB domain, as well as Jason has his own JBP domain that funnels all of the services funnel reviews into one place.
The problem is, we can't merge domains under each guru/ stop people from creating a "free" TP domain based on the service. Once someone writes a review on a service, it will create a "free" domain which then we have to acquire under our RB umbrella so we can manage it. For example, Bullseye and Total Alpha each have their own because of this. Getting a head on building these funnels for each service, the copy from each product is how we are getting ahead now.

I emailed our Rep Corey to see what we can do there on merging the domains, and if we have to have a domain for each service then we can start implementing the isoft funnels to get reviews based on each domain we already have up. We can discuss more tomorrow

On Mon, Oct 19, 2020 at 5:42 PM Jeff Bishop <jeff@bishop.me> wrote:

We don't have TP reviews set up for all these services yet, nor do I think we need to.  Each guru should have one place we are sending people, but not 7 different services for Kyle for example.

We need to get a streamlined system in place for how we solicit the testimonials for each service and make sure it is happening each week.  That is a big part of the reporting.

****



On Mon, Oct 19, 2020 at 5:15 PM Lily Mills <lmills@ragingbull.com> wrote:

I've added these to the reporting. I just need some help finding some of those metrics. I know it is looking pretty blank right now, but once all of the domains are done and isoft funnels are built we should start seeing actual numbers pop up.

Stephen, can you show me how to get the metrics on the emails sent out to customers for TP?

**Attachment A**                    **PX 47, 4639**

On Mon, Oct 19, 2020 at 2:01 PM Jeff Bishop <jeff@bishop.me> wrote:

Great.  Let's look at total ranking also, WoW movement, and maybe most importantly how many new links we sent out to qualified members of each service each week and what the response was there.

Bret / SP... late make a note to discuss this all in more detail this week.



On Mon, Oct 19, 2020 at 1:46 PM Lily Mills <lmills@ragingbull.com> wrote:

Here is what we are working on in terms of reporting.
https://docs.google.com/spreadsheets/d/1eWViVNf0cPivyvIFvyZkmPld-l8cu9cQihocUVNW33U/edit#gid 

On Mon, Oct 19, 2020 at 1:37 PM Stephen Prior <stephenp@ragingbull.com> wrote:

Looking at this one in particular,  Lily already started the process. Looks like a troll for sure.

At 4.1 score as of this morning

On Mon, Oct 19, 2020 at 1:35 PM Jeff Bishop <jeff@bishop.me> wrote:

When can we start getting a weekly report on our efforts on the review front?

This person either needs to be deleted or totally humiliated in a response from us for their stupidity.


---------- Forwarded message ---------
From: **Trustpilot** <noreply.notifications@trustpilot.com>
Date: Mon, Oct 19, 2020 at 12:31 PM
Subject: You've got an edited 1-star review
To: Jeff Bishop <jeff@bishop.me>

just updated a review

Hi Jeff Bishop,

**Attachment A**                    **PX 47, 4640**

███████████████ has updated their 1-star review of RagingBull:

*Purchased "Fast 5 Trades" from "RagingBull" more than 4 months ago with a 30 day refund promise, asked refund after less than 3 weeks from purchasing, phone number was false, they didn't answer for 2 weeks at email and after answering they wrote that I need to confirm that I want refund, so I wrote that I confirm, after that I never got an answer even tough I contacted them again more than 10 times, they're just gone. No answer, no refund. Scam, Scam, Scam. Don't even get near their services, they have bad service, and if they promise something before you purchase - don't believe them, they will not answer not phone calls and no email inquiries. Once you purchase - they are gone, you're warned.*

**See updated review**

Or see the review on your profile page: https://www.trustpilot.com/reviews/5f8dbb30798e6f04a417f06b

Trustpilot A/S

Pilestraede 58, 5th Floor, 1112 Copenhagen K
Company no.: 30276582

To manage your notifications, please go to your **account settings**.

--

**Kayla Smith**
**Director of Operations**
kaylas@ragingbull.com
https://www.linkedin.com/company/ragingbull
https://www.facebook.com/RagingBullTrading
833-265-1270

--

**Kayla Smith**
**Director of Operations**
kaylas@ragingbull.com
https://www.linkedin.com/company/ragingbull
https://www.facebook.com/RagingBullTrading
833-265-1270

**Attachment A**         **PX 47, 4641**

# Adding Domains

| | |
|---|---|
| **From:** | Kayla Smith <kaylas@ragingbull.com> |
| **To:** | Corey Lakow <col@trustpilot.com> |
| **Date:** | Mon, 12 Oct 2020 09:22:20 -0400 |

Hello Corey!

Long time no talk, I hope all is well!

I was seeing if we can get the following Domain on one account- Daily Profit Machine. Could we get a new contract to get that added?

Also, any reviews with the word "scam" should be automatically removed from my understanding? How would I go about getting those down/ reported.

Best,
**Kayla Smith**
**Director of Operations**
kaylas@ragingbull.com
https://www.linkedin.com/company/ragingbull
https://www.facebook.com/RagingBullTrading
833-265-1270

**Attachment A          PX 47, 4642**

## Re: You've got an edited 1-star review

| | |
|---|---|
| **From:** | Lily Mills <lmills@ragingbull.com> |
| **To:** | Stephen Prior <stephenp@ragingbull.com> |
| **Cc:** | Jeff Bishop <jeff@bishop.me>, Bret Holmes <bret@ragingbull.com>, Kayla Smith <kaylas@ragingbull.com> |
| **Date:** | Mon, 12 Oct 2020 08:20:26 -0400 |

I'm reviewing that now. It also appears he removed Jasons last name from the review...

On Mon, Oct 12, 2020 at 8:18 AM Stephen Prior <stephenp@ragingbull.com> wrote:

Has a member of CS reached out to him? What does he want?

On Fri, Oct 9, 2020 at 6:26 PM Jeff Bishop <jeff@bishop.me> wrote:

We need to get rid of this guy but more importantly we need positive reviews to start flowing in that we are soliciting from our customers who like us.

On Fri, Oct 9, 2020 at 4:15 PM Lily Mills <lmills@ragingbull.com> wrote:

He's just updating his review over and over again.

On Fri, Oct 9, 2020 at 4:09 PM Stephen Prior <stephenp@ragingbull.com> wrote:

Is he doing multiple reviews?

I've noticed he keeps updating his review. Didn't realize he made others

On Fri, Oct 9, 2020 at 4:03 PM Jeff Bishop <jeff@bishop.me> wrote:

This one guy keeps trolling our account. I don't know if he's getting removed all the time but it's definitely bad for us as he constantly suggests to people they turn us into the authorities. We gotta stop that

--------- Forwarded message ---------
From: **Trustpilot** <noreply.notifications@trustpilot.com>
Date: Fri, Oct 9, 2020 at 3:07 PM
Subject: You've got an edited 1-star review
To: Jeff Bishop <jeff@bishop.me>

 just updated a review

Hi Jeff Bishop,

**Attachment A**          **PX 47, 4643**

█████████ has updated their 1-star review of RagingBull:

*Horrible. Classic oversell and underdeliver. The only thing they're good at is marketing with slick and clever videos to make it appear they have nothing but huge gains but in reality that's far from the truth. They will constantly harass you to keep buying more and more services. There Forte is greed. Jason Bond's real last name is Kowalik...big waste of money.. when you contact customer service and call them out on all their bold claims they tell you this is just for educational purposes only. Update, I sent Raging Bull my information via the TrustPilot email I received confirming I am a paid customer of Raging Bull and I have credit card statements that I could also upload if necessary. I'm now considering filing a complaint with the state of Florida Consumer Protection Division for false and misleading advertising and the FTC.*

**See updated review**

Or see the review on your profile page: https://www.trustpilot.com/reviews/5f7e96ef798e6f0784a84166

**Trustpilot A/S**

Pilestraede 58, 5th Floor, 1112 Copenhagen K
Company no.: 30276582

To manage your notifications, please go to your **account settings**.

--

**Lily Mills**
**Chargeback Specialist**
lmills@ragingbull.com
https://www.linkedin.com/company/ragingbull
https://www.facebook.com/RagingBullTrading
833-265-1270

**Attachment A**          **PX 47, 4644**

# Fwd: Tips to help you manage your reviews

**From:** Jeff Bishop <jeff@bishop.me>

**To:** Kayla Smith <kaylas@ragingbull.com>, Lily Mills <lmills@ragingbull.com>, Stephen Prior <stephenp@ragingbull.com>

**Date:** Mon, 05 Oct 2020 20:07:59 -0400

--------- Forwarded message ---------
From: **Trustpilot** <noreply.notifications@trustpilot.com>
Date: Mon, Oct 5, 2020 at 8:01 PM
Subject: Tips to help you manage your reviews
To: Jeff Bishop <jeff@bishop.me>

Hi Jeff Bishop,

We've noticed that your account has reported quite a few reviews lately.
Here are some helpful tips to keep in mind when managing your reviews:

- Turn negative reviews into an advantage with a reply
- Get to know our list of reasons for which companies can report a review
- Be fair and don't report reviews simply because they're negative
- Be specific and precise about the problem and only report reviews that breach our User Guidelines

You can also get more tips on how to manage and respond to negative reviews in our webinar "When Bad Reviews Happen".

If you have any questions, please don't hesitate to ask!

Best regards,

Corey Lakow
**Customer Success Manager**

**Attachment A**          **PX 47, 4645**

# Re: You've got a new 1-star review

**From:**  Bret Holmes <bret@ragingbull.com>
**To:**  Lily Mills <lmills@ragingbull.com>
**Cc:**  Stephen Prior <stephenp@ragingbull.com>, Jeff Bishop <jeff@bishop.me>, Kayla Smith <kaylas@ragingbull.com>
**Date:**  Fri, 25 Sep 2020 10:48:08 -0400

MIssion critical - let's treat this as triage - and move quickly please

On Fri, Sep 25, 2020 at 9:33 AM Lily Mills <lmills@ragingbull.com> wrote:

Kayla and I are going to go over everything today and then I'll be getting the ball rolling.

On Fri, Sep 25, 2020 at 6:19 AM Stephen Prior <stephenp@ragingbull.com> wrote:

How are we doing here?  Any movement on this review?

On Wed, Sep 23, 2020, 10:16 AM Lily Mills <lmills@ragingbull.com> wrote:

Of course, engagement is key!

On Wed, Sep 23, 2020 at 10:13 AM Jeff Bishop <jeff@bishop.me> wrote:

Let's also remember that a majority of our reviews are positive. I want you to be sure to comment and cheerlead these people. Tell them what a great job they're doing and using the service like it supposed to be done.

A big part of this job is building and defending the RB brand out there on the review sites, social media and anywhere else we're being talked about.

On Wed, Sep 23, 2020 at 10:09 AM Lily Mills <lmills@ragingbull.com> wrote:

I can easily see all CS history, so that shouldn't be too difficult, I say stuff like this all day to my CBs.

On Wed, Sep 23, 2020 at 8:27 AM Jeff Bishop <jeff@bishop.me> wrote:

Yes, always reference the CS history with them. Say "we have no record of you requesting a refund"... or "you requested this on 9/22 but that was 2 weeks past the refund period you agreed to in your initial purchase. I am happy to help you if you decide you do not want this service to renew again."..... or maybe "I do see that you requested the refund, and the process you agreed to is very straightforward. I do not see a record that you completed your short training we require to process this refund. Can you provide that for me?"

Make these guys look dumb for not doing what they are supposed to do. We are not giving them an inch anymore when it comes to bashing us on reviews. We are here to fight.

**Attachment A**          **PX 47, 4646**

On Wed, Sep 23, 2020 at 8:21 AM Stephen Prior <stephenp@ragingbull.com> wrote:

Absolutely.

Lily - this one was submitted 2 hours ago. I would suggest waiting until later today or tomorrow AM to do the find reviewer tool.  Less likely to reply.  The replies I have received in the past seem to come when i've jumped the gun too fast.

With the nature of this, I would maybe have CS look into this though. Doesn't hurt to find out why the refund wasn't given.  I assume they didn't complete the LMS but who knows.

On Wed, Sep 23, 2020 at 7:57 AM Jeff Bishop <jeff@bishop.me> wrote:

People like this need to be requested to be removed if they aren't verified members, or we need to combat this claim and tell them they didn't do the LMS like they agreed when they bought the product or whatever the reason is we didn't honor a refund.

Take the time to break down their complaint to the point where it just looks stupid they would even be posting this.

---------- Forwarded message ---------
From: **Trustpilot** <noreply.notifications@trustpilot.com>
Date: Wed, Sep 23, 2020 at 6:53 AM
Subject: You've got a new 1-star review
To: Jeff Bishop <jeff@bishop.me>

███████████████  left a new review

Hi Jeff Bishop,

███████████████ just left a new 1-star review of Jason Bond Picks:

*I purchased the course with 30 day refund guarantee*

*then I didn't find useful then I contacted them and they refuse to give me the refund. shame on you . THIS IS STEALING !! AND NOT A PROFESSIONAL WAY .. I ADVISE YOU NOT TO DEAL WITH THIS WEBSITE ..*

See this review and reply

**Attachment A                    PX 47, 4647**

Or see the review on your profile page: https://www.trustpilot.com/reviews/5f6b2592798e6f0aa4e2651e

.

**Trustpilot A/S**

Pilestraede 58, 5th Floor, 1112 Copenhagen K
Company no.: 30276582

To manage your notifications, please go to your **account settings**.

.





# Fwd: Attention: You are Suspended from Reporting Reviews

| | |
|---|---|
| **From:** | Kayla Smith <kaylas@ragingbull.com> |
| **To:** | Stephen Prior <stephenp@ragingbull.com> |
| **Date:** | Mon, 21 Sep 2020 13:17:49 -0400 |

---------- Forwarded message ---------
From: **Trustpilot** <noreply.notifications@trustpilot.com>
Date: Sun, Sep 20, 2020 at 8:01 PM
Subject: Attention: You are Suspended from Reporting Reviews
To: Kayla Smith <kaylas@ragingbull.com>

Hi Kayla Smith,

Despite our previous warning, you continued to misuse our reporting tool and violate our Guidelines for Businesses. As a result, your access to the reporting tool has been suspended for the domain jasonbondpicks.com.

> **Your access to our reporting tool is now suspended from September 21, 2020- October 5, 2020**

Did you know?
By overreporting reviews, you can harm your brand. Current and potential customers can see that you have systematically attempted to hide feedback instead of communicating with your customers.

**Trustpilot A/S**

Pilestraede 58, 5th Floor, 1112 Copenhagen K
Company no.: 30276582

.

--
.

**Kayla Smith**
**Director of Operations**

**Attachment A**          **PX 47, 4649**

kaylas@ragingbull.com
https://www.linkedin.com/company/ragingbull
https://www.facebook.com/RagingBullTrading
833-265-1270

## Re: You've got a new 1-star review

| | |
|---|---|
| **From:** | Stephen Prior <stephenp@ragingbull.com> |
| **To:** | Kayla Smith <kaylas@ragingbull.com> |
| **Date:** | Fri, 10 Jul 2020 11:49:44 -0400 |

♥  ♥  ♥   ❖❖❖

On Fri, Jul 10, 2020, 11:49 AM Kayla Smith <kaylas@ragingbull.com> wrote:

The word scam means it can automatically come down!

On Fri, Jul 10, 2020 at 11:41 AM Stephen Prior <stephenp@ragingbull.com> wrote:

:(

---------- Forwarded message ---------
From: **Trustpilot** <noreply.notifications@trustpilot.com>
Date: Fri, Jul 10, 2020 at 11:34 AM
Subject: You've got a new 1-star review
To: Stephen Prior <stephenp@ragingbull.com>

  left a new review

Hi Stephen Prior,

 just left a new 1-star review of RagingBull:

*IT IS A COMPLETE SCAM! ALL OF THEIR PROGRAMS. These guys Jason Bond and Jeff Bishop don't know how to trade stocks or options. I subscribed two programs Jason Bond's picks and jeff bishop high octane. Bond's pick is supposed to be money back guaranteed. I called and called no one every answer your call or respond to your emails. only way to get hold of someone is getting one of their new program as new subscriber then someone will take your call. I also paid $1499 for jeff bishop's high octane. every single trade i made with them was losing money deal. I lost money in thousands. However, I recovered money from doing exactly the opposite what they recommended. for example, jason bond recommended everyone short a GSX stocks based on some off track report and a law suit. I lost $2600 but i got back most of it back by long the options. even as of today jason bond still refused to admit he knows nothing about how to read stock charts or the information company or market reports provided. Bottomline once you get on to one of their video conference they will scam you, and you paid something to them they will send over 50 emails in a week mostly introduce another scams cooked up by their partners. watch internet and youtube reviews before you join any of their high pressure sales pitch webinars. Please be careful and be alert for the scammers out there.*

<div style="background:blue">See this review and reply</div>

**Attachment A**          **PX 47, 4651**

Or see the review on your profile page: https://www.trustpilot.com/reviews/5f0887173f06f202a45a8014

**Trustpilot A/S**

Pilestraede 58, 5th Floor, 1112 Copenhagen K
Company no.: 30276582

To manage your notifications, please go to your **account settings**.

--
.

**Kayla Smith**
**Assistant Director of Client Services**
kaylas@ragingbull.com
https://www.linkedin.com/company/ragingbull
https://www.facebook.com/RagingBullTrading
833-265-1270

**Attachment A**        **PX 47, 4652**

# [Trustpilot Compliance] - #4719233 Reported review(s) - jasonbondpicks.com

| | |
|---|---|
| **From:** | Trustpilot Content Integrity <compliance@trustpilot.com> |
| **To:** | Kayla Smith <kaylas@ragingbull.com> |
| **Date:** | Tue, 21 Apr 2020 17:09:58 -0400 |

**Tyler** (Trustpilot)

Apr 21, 23:09 CEST

Dear Sir/Madam,

Thank you for your inquiry about the review posted by ███████████████████████████

We understand that you have reported the review because you dispute the reviewer's description of events.

Trustpilot provides a space for reviewers to share their opinions. But because we're not a court of law, we're not in a position to decide what is factually correct or incorrect. Therefore, we have no other option than to take a neutral stance in disputes relating to the course of events.

If a reviewer can document a genuine buying or service experience **and/or** their review doesn't contravene our guidelines for the reason that it has been reported, we have no basis on which to remove it or ask the reviewer to edit it. While we understand that this can be frustrating for companies, we have to reinstate the review on Trustpilot.

However, if you disagree with the content of a review, we recommend that you reply to the reviewer. You can do this by leaving a company response below the review (log in to your company's business account). For tips on replying to reviews, see our article "How should I respond to reviews".

In our experience, direct dialogue in a friendly tone between companies and reviewers is often the best way to resolve any issues. And Trustpilot reviewers are always able to edit their reviews to reflect their latest correspondence with a company.

If you have any questions, please visit our Support Center or ask us by replying to this email.

Best regards,

Trustpilot A/S
Pilestraede 58, 5th floor, 1112 Copenhagen K, Denmark
Company no. 30276582

Trustpilot privacy policy

**Attachment A**          **PX 47, 4653**

**From:**   Gavin Harrison <gharrison@ragingbull.com>
**Sent:**   Fri, 15 May 2020 12:23:36 -0400
**Subject:** LMS: Raging Bull
**To:**   mparks@tradeforlifeteam.com
**Cc:**   Bret Holmes <bret@ragingbull.com>, Jeff Bishop <jeff@ragingbull.com>

Hey Michael,

Hope all is well!  I was hoping to link up with you to discss the LMS you built out for the Trade for Life Team in Utah.

When we talked on the phone a few weeks back, I mentioned that we are attempting to implement something similar with our suite of products and use and LMS as refund tool (i.e. clients must complete the LMS within 30 days to qualify for a refund)

With that being said, we have launched the LMS for two of our services, however we are not seeing the same results as the TFL team did with theirs.

Any chance you could hop on a call next week to discuss some of the nuances of what you were able to put together for Brandon and the TFL team?

Really apprciate any insights you can offer here.

Let me know of your availability.

Have a nice weekend!

*Gavin Harrison*
*Director of VIP Trading Services*
gharrison@ragingbull.com
(833) 265 1270
https://ragingbull.com/
https://www.linkedin.com/company/ragingbull/
https://www.facebook.com/RagingBullTrading/
https://ragingbull.com/faqs/ - Frequently Asked Questions

**Attachment A**          **PX 47, 4654**

**Sent:** Mon, 28 Sep 2020 10:56:50 -0700 (PDT)
**From:** ▮▮▮▮▮▮▮
**To:** "RagingBull.com Support" <support@ragingbull.com>
**Cc:** Jeff Bishop <jeff@weeklymoneymultiplier.com>, dailyprofit@dailyprofitmachine.com, drew@ragingbull.com, jeff@totalalphatrading.com, adam@ragingbull.com, ben@dailyprofitmachine.com
**Subject:** Re: [RagingBull.com] Re: Re: Your receipt from RagingBull.com, LLC #2659-4407

I just went through a disappointing, long, drawn out process with Raging Bull, that dragged out for months, where I feel like I got the 'shaft' from you. After thinking about that for a while, I still have one subscription open with two months remaining on it (Fast Five) that I would like to forfeit. Can you please cancel & close my account with raging bull & remove my name from your mailing lists. It is time for me to cut ties with your outfit. I will not be renewing anything, purchasing anything else from you or attending any webinars or reading any more of your email correspondence. I do not wish any bad things on you. I hope you stay happy as long as you can. I am walking away from you and will count this as an expensive lesson never to do business with Raging Bull again. It would be nice if you could take care of this request today (9/28/20).

▮▮▮▮▮▮▮

---

**From:** ▮▮▮▮▮▮▮
**To:** "RagingBull.com Support" <support@ragingbull.com>
**Cc:** "Jeff Bishop" <jeff@weeklymoneymultiplier.com>, dailyprofit@dailyprofitmachine.com, drew@ragingbull.com, jeff@totalalphatrading.com, adam@ragingbull.com, ben@dailyprofitmachine.com
**Sent:** Friday, August 14, 2020 1:26:37 PM
**Subject:** Re: [RagingBull.com] Re: Re: Your receipt from RagingBull.com, LLC #2659-4407

Request has not been solved to my satisfaction. What Raging Bull
presented to my bank totally disregarded and ignored Ben's original offer to me
through the webinar.

So it looks as if you have been successful in stealing from me and
forever alienating me as a future customer of Raging Bull.

You have proven to me that you do not care about customer service
or honoring your word.

Please enjoy the, what I am going to consider, a stolen subscription fee.

▮▮▮▮▮▮▮

Your request (838099) has been solved. To reopen this request, reply to this email. See the latest comments below:

---

**Haley** (Daily Deposits )

Aug 14, 2020, 1:58 PM EDT

.

Hey ▮▮▮ ,

I attached the screenshot of the dispute that stated you were not getting a refund.  You will have Daily Deposits for the year let me know and I will reactivate it for you.

**Attachment A**        **PX 47, 4655**

Haley
VIP Client Services
(833) 265-1270
https://ragingbull.com
https://ragingbull.com/our-experts
https://www.linkedin.com/company/ragingbull
https://www.facebook.com/RagingBullTrading

---

**From:** ███████████
**To:** "RagingBull.com Support" <support@ragingbull.com>
**Cc:** "Jeff Bishop" <jeff@weeklymoneymultiplier.com>, dailyprofit@dailyprofitmachine.com,
drew@ragingbull.com, jeff@totalalphatrading.com, adam@ragingbull.com, ben@dailyprofitmachine.com
**Sent:** Friday, August 14, 2020 10:37:49 AM
**Subject:** Re: [RagingBull.com] Re: Re: Your receipt from RagingBull.com, LLC #2659-4407

This is exactly what has frustrated me about your response
to a legitimate request and your customer service responses.

I get an email from 'Haley' who informed me that you do
not handle refunds via email and that I would have
to call her.

I call, get placed in the hold queue, was given an
option to leave my number for a call back instead
of sitting in the queue, left my number at about 11am 8/13/20.

Guess what <mark>no call back yesterday or today.</mark>

I have been bounced from person to person, forced
to repeat myself and waste months on something that
you offered that should have been easily handled
months ago.

I, for the life of me, cannot see what is so hard about
honoring your part of the agreement.

Have someone call me about the refund, not to ask me
what this all about, it is all in the email string below.

████████████████████

**From:** ███████████
**To:** "RagingBull.com Support" <support@ragingbull.com>
**Cc:** "Jeff Bishop" <jeff@weeklymoneymultiplier.com>, dailyprofit@dailyprofitmachine.com,
drew@ragingbull.com, jeff@totalalphatrading.com, adam@ragingbull.com, ben@dailyprofitmachine.com
**Sent:** Thursday, August 13, 2020 11:08:08 AM
**Subject:** Re: [RagingBull.com] Re: Re: Your receipt from RagingBull.com, LLC #2659-4407

**Attachment A**                    **PX 47, 4656**

Haley, I called the customer service number and I was informed that due to Covid the wait times in the hold queue are exceptionally long. Not sure why that is.

I sat in that hold queue before and it was more than I could bear.

I left a voice mail for you (Haley) to call me back per your email below.

███████████████

---

**From:** "Haley (Daily Profit Machine)" <support@dailydeposits.zendesk.com>
**To:** ████████████████
**Sent:** Thursday, August 13, 2020 10:53:03 AM
**Subject:** [Daily Deposits ] Re: Contact Form: ██████████ - billing

##- Please type your reply above this line -##
Your request (838072) has been solved. To reopen this request, reply to this email. See the latest comments below:

---

**Haley** (Daily Deposits )

Aug 13, 2020, 11:53 AM EDT

,

Thank you for reaching out and allowing me to help you today. For our services, it outlines the terms and conditions before you purchase them.We are sad to hear that you are not able to utilize the service in the way it was intended and that you are not seeing the success you imagined.

As far as cancellations and refunds we do not handle this via email for your personal account security, so I am going to point you in the right direction.

For your request ██████, can you give me a call or call one of our agents here?

We are in the office Monday through Friday 9am to 5pm eastern standard time and are more than happy to help you with this request.Just as a heads up, if the lines are busy, please leave your number for us to call you back so we can get you the fastest help possible!

Haley
VIP Client Services
(833) 265-1270
https://ragingbull.com
https://ragingbull.com/our-experts
https://www.linkedin.com/company/ragingbull
https://www.facebook.com/RagingBullTrading

**Attachment A**                    **PX 47, 4657**

**From:** ████████████

**To:** "RagingBull.com Support" <support@ragingbull.com>

**Cc:** "Jeff Bishop" <jeff@weeklymoneymultiplier.com>, dailyprofit@dailyprofitmachine.com, drew@ragingbull.com, jeff@totalalphatrading.com, adam@ragingbull.com, ben@dailyprofitmachine.com

**Sent:** Thursday, August 13, 2020 10:45:37 AM

**Subject:** Re: [RagingBull.com] Re: Re: Your receipt from RagingBull.com, LLC #2659-4407

I signed up for a webinar, am told by Ben Sturgill toward the end, FOLKS I AM SO CONFIDENT IN THIS PRODUCT THAT I AM GOING TO OFFER A 30 DAY NO QUESTIONS ASKED MONEY BACK GUARANTEE.

That pushed me over the fence to try it.

After that it has been a customer service nightmare to get Raging Bull to honor that. As soon as I decided it was not going to work for me, inside my 30 day window, I emailed, was told to phone, phoned, and was only then informed that there was **'conditions'** to the refund offer.

Not sure what part of '30 DAYS, NO QUESTIONS ASKED' would allow for additional conditions.

I am then told that it was communicated during the webinar, no it was not, was then told it was in my welcome email to the service, I went back and double checked that and guess what, no it wasn't, I was then told it was in the fine print on the check out page, then something else as Raging Bull scrambled to keep my money.

Raging Bull was some how not prepared to deal with what Ben announced at the close of the webinar, not sure if he went off script without permission or what but he did push me over the fence with the GUARANTEE.

There was plenty of confusing info on your part, I have been bounced around from person to person and ignored for a while and denied access to the product, but still have to pay for it.

You are now offering me access for the remainder of the year after having stolen about 2 months.

And you somehow feel like you have been 'honored' and justified in the customer service response to this incident? WOW!

Good customer service would honor the guarantee Ben offered over the webinar. He essentially was saying he does not want anyone's money if they are not 100% satisfied that this will work for them.

Raging Bull apparently does not share that and is determined to keep my Money.

Stephen I want a 100% refund for all the bungling, confusion and forcing me to deal with multiple parties not to mention all the time

**Attachment A**                    **PX 47, 4658**

**Raging Bull customer service has cost me.**

Is business that bad for Raging Bull that customer satisfaction and
care take a back seat to subscription costs and fees?

I am afraid to continue a relationship with Raging Bull if this is
the way you are 'honored/satisfied' in dealing with issues that arise.

I was told 'Sorry for all the confusion' then I was told 'Let's find
some middle ground', now you are saying 'We won and were honored,
you lost, get over it'.

I want a 100% refund like I was promised.

▮▮▮▮▮▮▮

Your request (833461) has been updated. To add additional comments, reply to this email.

**Steven** (Daily Deposits )

Aug 11, 2020, 12:58 PM EDT



This is Steven and I am here to let you know that the dispute was honored in our favor meaning the terms and
conditions were clear.

So from here you have two choices
1) You can keep the subscription for the full year that you were supposed to have it

Or

2) You can use it for something else that is not related to day trading

Let me know how you would like to proceed so I can help you get set up for that.

Steven
VIP Client Services
(833) 265–1270
https://ragingbull.com
https://ragingbull.com/our-experts
https://www.linkedin.com/company/ragingbull
https://www.facebook.com/RagingBullTrading

**From:** ██████████████
**To:** "RagingBull.com Support" <support@ragingbull.com>
**Cc:** "Jeff Bishop" <jeff@weeklymoneymultiplier.com>, dailyprofit@dailyprofitmachine.com, drew@ragingbull.com, jeff@totalalphatrading.com, adam@ragingbull.com, ben@dailyprofitmachine.com
**Sent:** Tuesday, August 11, 2020 10:55:02 AM
**Subject:** Re: [RagingBull.com] Re: Re: Your receipt from RagingBull.com, LLC #2659-4407

Here we go again, with what I am going to call inconsiderate and incompetent customer service which is frustrating me to 'no not end!!!!!'

Below I get an email from a new and different person named 'Tanzer' who is all confused about what is going on.

Tanzer, are you trying to tell me that this got dumped in your lap and you do not have a clue what it is about or referring to?

Did you read the email string that you just responded to?

Does not look like it to me.

Why don't you start at the bottom of this email string and read all the way back up to here and you will then know what all the fuss is about..

I am shocked at how this is being handled (not) and pushed around. Worst customer experience I have had in good while.

██████████████

##- Please type your reply above this line -##
    Your request (834232) has been solved. To reopen this request, reply to this email. See the latest comments below:

**Tanzer** (Daily Deposits )

Aug 10, 2020, 8:01 AM EDT

Hey ████ ,

Tanzer here with RagingBull. Sorry there have been some issues in the past – I'm here to help in any way that I can. I understand you had a LMS course to complete for JBP. It doesn't look like you have that service on your account anymore, and there appears to be an active dispute. What is the service you are inquiring regarding a partial refund?

Tanzer
VIP Client Services
(833) 265–1270
https://ragingbull.com
https://ragingbull.com/our-experts
https://www.linkedin.com/company/ragingbull
https://www.facebook.com/RagingBullTrading

**Attachment A**                    **PX 47, 4660**

**From:** ███████████
**To:** "RagingBull.com Support" <support@ragingbull.com>
**Cc:** "Jeff Bishop" <jeff@weeklymoneymultiplier.com>, dailyprofit@dailyprofitmachine.com,
drew@ragingbull.com, jeff@totalalphatrading.com, adam@ragingbull.com, ben@dailyprofitmachine.com
**Sent:** Saturday, August 8, 2020 7:51:12 PM
**Subject:** Re: [RagingBull.com] Re: Re: Your receipt from RagingBull.com, LLC #2659-4407

Adam, thanks for getting back to me. I believe that you are sorry for the
confusion but I don't think you understand my frustration or disappointment
in the unprofessional way I believe I have been treated & I would not
feel comfortable making further purchases from Raging Bull until this is
resolved to my satisfaction.

If you want to 'meet me in the middle somewhere' like you stated in your
response below, then I would accept a 50% refund **and** you open the service
back up to me for another 60 days. After that cancel the subscription/access
and we can call it good.

If that is beyond your scope of authority then push this up to your supervisor
for approval.

Otherwise I consider my self robbed and stiff armed by Raging Bull.

Mr. ███████

 Your request (833461) has been updated. To add additional comments, reply to this email.

**Adam B** (Daily Deposits )

Aug 7, 2020, 4:38 PM EDT

Hey ████ ,

I understand you are upset. And I also realize you are a paying customer. I would like to try and meet you in the
middle somewhere and help you as much as I can.

I'm sorry for the confusion or if there was not enough emphasis on the Learning Center completion.
Unfortunately, this was something you agreed to when paying for the service and it is not in my power to grant
a refund. Now this does not mean there isn't a possibility for switching you over to a different service of the
same price.

If you would like, I can talk to my supervisor and maybe either get you access to the subscription again since
you did pay for it, or switch you over to a different service. I truly do want to help you out but please
understand I can only do so much at this point. I would like to resolve this for you and I do understand why you
would be angry.

If you would like me to talk to my supervisor regarding a possible switch or reopening the service, please let
me know. Thank you for your patience.

**Attachment A**          **PX 47, 4661**

Adam B
VIP Client Services
(833) 265-1270
https://ragingbull.com
https://ragingbull.com/our-experts
https://www.linkedin.com/company/ragingbull
https://www.facebook.com/RagingBullTrading

---

**From:** ███████████
**To:** "RagingBull.com Support" <support@ragingbull.com>
**Cc:** "Jeff Bishop" <jeff@weeklymoneymultiplier.com>, dailyprofit@dailyprofitmachine.com, drew@ragingbull.com, jeff@totalalphatrading.com, adam@ragingbull.com, ben@dailyprofitmachine.com
**Sent:** Friday, August 7, 2020 3:13:01 PM
**Subject:** Re: [RagingBull.com] Re: Re: Your receipt from RagingBull.com, LLC #2659-4407

Adam, I was never informed about the stipulation to take a course to get my refund. If you had it listed in some fine print or the order page, it was never clearly made known to me.

Your customer service dept, told me it was voiced in the original webinar, **it was not**, then I was told it was in my welcome email to the service, **it was not**, I included a copy of that below, now you are telling me something else.

The fact that you cancelled my subscription because I got my bank involved was due to the fact that I was not getting any help from your customer service team to help resolve it. But that means Raging Bull is ok with saying '<mark>screw you, you were warned</mark>'.

Are you ok with taking my money, cancelling my subscription and **not giving me any compensation?**

That does not seem fair, a good way to treat paying customers or to do business. (When I say paying customer, I have purchased at least 3 other subscriptions, two still active).

Seems like to me you would want to resolve this so that everyone wins.

Mr. ██████████

---

**From:** "Adam B (Daily Profit Machine)" <support@dailydeposits.zendesk.com>
**To:** "████████████████
**Sent:** Friday, August 7, 2020 2:21:40 PM
**Subject:** [Daily Deposits ] Re: Contact Form: ███████████ - billing

##- Please type your reply above this line -##

**Attachment A**          **PX 47, 4662**

Your request (833098) has been solved. To reopen this request, reply to this email. See the latest comments below:

---

**Adam B** (Daily Deposits )

Aug 7, 2020, 3:21 PM EDT



Thanks for reaching out. I took a look at your subscription to Daily Deposits, and it looks like you started the subscription on April 15th. When agreeing to the terms and conditions of the 30-day money back guarantee, which you would have had to have done to start the service, you agreed to completing the Learning Center courses within the 30 days to qualify for the refund. After reviewing your progress in the Learning Center, you had started the courses but never actually completed the Learning Center. This means you did not qualify for the refund. The subscription ended on June 17th, which would have meant you had more than 30 days to complete it.

So regardless of whether or not you called /emailed to be refunded, you still had to have completed the LMS courses before you could be refunded. I am sorry but we are unable to refund you at this time as part of our terms and conditions in which you agreed to.

The reason the service was canceled even though you didn't get the refund is because you made a dispute with your bank. We can not continue the subscription if it has been disputed. I am truly sorry for the inconvenience but since you agreed to reading the terms and conditions before purchasing the service, there's not much I am able to do. I hope you understand.

Adam B
VIP Client Services
(833) 265-1270
https://ragingbull.com
https://ragingbull.com/our-experts
https://www.linkedin.com/company/ragingbull
https://www.facebook.com/RagingBullTrading

---

**From:** ████████████
**To:** "RagingBull.com Support" <support@ragingbull.com>
**Cc:** "Jeff Bishop" <jeff@weeklymoneymultiplier.com>, dailyprofit@dailyprofitmachine.com, drew@ragingbull.com, jeff@totalalphatrading.com, adam@ragingbull.com, ben@dailyprofitmachine.com
**Sent:** Friday, August 7, 2020 10:50:34 AM
**Subject:** Re: [RagingBull.com] Re: Re: Your receipt from RagingBull.com, LLC #2659-4407

So, I purchased a one year subscription that came
with a 30 day, no questions asked money back guarantee for
Daily Profit Machines thur a webinar given by Ben Stugill, the
guarantee was verbal thru the webinar but was what pushed me
to give it a shot

**Attachment A**          **PX 47, 4663**

I decided I day trading does not fit my trading style and won't work for me, but wanted to give it a try.

Inside the 30 days, I emailed and called to cancel and get the refund.

No such luck, I have had to fight with Raging Bull ever since.

At this point you have cancelled my access to the subscritption and kept my money which feels like theft to me.

We are outside the 30 day window now, but that is not my fault I started the ball rolling on time. But you seemed to feel justified ignoring me and keeping my money.

I am asking for a full refund today (8/7/20), again.

███████████

---

**From:** ███████████
**To:** "RagingBull.com Support" <support@ragingbull.com>
**Cc:** "Jeff Bishop" <jeff@weeklymoneymultiplier.com>, dailyprofit@dailyprofitmachine.com, drew@ragingbull.com, jeff@totalalphatrading.com, adam@ragingbull.com
**Sent:** Friday, July 31, 2020 9:29:47 AM
**Subject:** Re: [RagingBull.com] Re: Re: Your receipt from RagingBull, LLC #2659-4407

It appears that not one 'manager' over there is willing to work with a customer dispute and everyone is ok ignoring my requests for resolution. Not one return email or phone call.

You made a '30 DAY, NO QUESTIONS ASKED, MONEY BACK GUARANTEE'

That promise was the only thing that made me comfortable enough to make the purchase because I am not a day trader, but with your promise I felt it might be time to try it under Ben's Guidance. Without that promise I would have had to pass on your webinar offer.

Now you are making me fight for it (see the sting below).

That is dishonest on your part.

My subscription fee, that I feel has been hijacked with no compensation, is more important to you all than a satisfied customer, that is the message I am getting here.

Is anyone going to work with me in obtaining my refund?

Mr. ███████████

---

**From:** ███████████
**To:** "RagingBull.com Support" <support@ragingbull.com>
**Cc:** "Jeff Bishop" <jeff@weeklymoneymultiplier.com>, dailyprofit@dailyprofitmachine.com, drew@ragingbull.com, jeff@totalalphatrading.com, adam@ragingbull.com
**Sent:** Wednesday, July 29, 2020 9:48:22 AM

**Attachment A**          **PX 47, 4664**

**Subject:** Re: [RagingBull.com] Re: Re: Your receipt from RagingBull.com, LLC #2659-4407

I wonder if Jeff Bishop & Ben Sturgill are ok with Raging Bull revoking my access to my subscription and not giving me a refund. So the message I get is that fees matter more to Raging
Bull than good customer service.

==This just amounts to theft on your part.== I need a call from the customer service manager.

I tried calling your cust serv dept, several times. Sitting in your hold que has not worked out for me.

████████████ #888-889-2861

If I am unable to answer the call, have them leave their name and a direct number to call them back, not the general customer service pool number to sit in. ==This has escalated beyond that.==

==See email string below if you are unaware of what my problem is.==

████████████

---

**From:** ████████████
**To:** "RagingBull.com Support" <support@ragingbull.com>
**Cc:** "RagingBull.com Support" <support@ragingbull.com>
**Sent:** Friday, July 24, 2020 9:38:56 AM
**Subject:** Re: [RagingBull.com] Re: Re: Your receipt from RagingBull.com, LLC #2659-4407

As of June 11th, you have revoked my access to Ben Sturgill's Daily Profit Machine, however you never refunded my subscription price ($799)

Ben is the one on the webinar that offered a
**'30 DAY, NO QUESTIONS ASKED, MONEY BACK GUARANTEE'**

==Now, not only have you not honored that, but have made me 'fight' with you about it. Worst customer service I have ever experienced in this industry thus far.==

So at this point I have no access to the product nor do I have a refund, **which amounts to theft on your part.**

I am demanding this be escalated to the top manager in customer service and a full refund immediately.

Mr. ████████

---

**From:** ████████████
**To:** "RagingBull.com Support" <support@ragingbull.com>
**Cc:** support@ragingbull.com
**Sent:** Thursday, June 11, 2020 7:33:29 AM
**Subject:** Re: [RagingBull.com] Re: Re: Your receipt from RagingBull.com, LLC #2659-4407

I must have asked Raging Bull several times to turn off auto renew for me on all my subscriptions.

I just logged in this morning and see they are still turned on.

What do I have to get you to turn those off? Now? Today?

**Attachment A**                                   **PX 47, 4665**

I do not want an email notification a month before renewal I want all auto renews turned off, so I do not have to fight again with you at some later date.

You have already proven to me the collection of subscription fees is more important to you than customer satisfaction.

**Turn all auto renews, for all my current subscriptions off, today.**

**Mr.** ▮▮▮▮▮▮▮

**From:** ▮▮▮▮▮▮▮
**To:** "RagingBull.com Support" <support@ragingbull.com>
**Sent:** Wednesday, June 3, 2020 8:55:09 AM
**Subject:** Re: [RagingBull.com] Re: Re: Your receipt from RagingBull.com, LLC #2659-4407

You are not going to be able to keep me as a customer. I am done purchasing things from Raging Bull.

Make sure that all my current subscriptions have **NO auto-renew feature turned on.**

Hope you are satisfied in alienating a customer for the price of a subscription, instead of working with me to honor your word.

Your customer service has been a bad experience for me, calling your #, sitting in a hold queue, not receiving calls back and you email responses which has cost me a lot of time I did not have.

I have disputed this charge with my credit card, that is where it sits now.

If I end up paying for something I cannot use, I am still done with Raging Bull, forever.

Mr. ▮▮▮▮▮▮

**From:** "Steven (RagingBull.com Support)" <support@ragingbull.com>
**To:** "▮▮▮▮▮▮▮▮▮▮
**Sent:** Tuesday, June 2, 2020 8:33:41 PM
**Subject:** [RagingBull.com] Re: Re: Your receipt from RagingBull.com, LLC #2659-4407

##- Please type your reply above this line -##
Your request (753474) has been updated. To add additional comments, reply to this email.

**Steven** (RagingBull.com)

Jun 2, 2020, 9:33:38 PM EDT



1) We did not "bury" the terms and conditions, they are clearly stated directly next to the place order button.
2) It was stated multiple times during the webinar.
3) You can not even place an order without agreeing to the terms and conditions that are stated.

This service is now non refundable as I have kindly let you know since you did not uphold your end of the product that you authorized and paid for.

So your only option is to keep the service, or to use your credit towards another service.

**Attachment A**                                   **PX 47, 4666**

Steven
VIP Client Services
(833) 265-1270
https://ragingbull.com
https://ragingbull.com/our-experts
https://www.linkedin.com/company/ragingbull
https://www.facebook.com/RagingBullTrading

▮▮▮▮

May 31, 2020, 5:27:50 PM EDT

==Steven, I looked at the check out page, much different==
==from the one I saw. **At first I was being told**:==

=='It was in your Welcome email', which I copied below and it was==
==not there, **now you are telling me**:==

=='It was on the check out page'. It was neither.==

Issue a refund like you promised and let us part as friends.

▮▮▮▮▮▮▮

_____
_____
From: "Steven (RagingBull.com Support)" <support@ragingbull.com>
To: ▮▮▮▮▮▮▮
Sent: Sunday, May 31, 2020 3:10:26 PM
Subject: [RagingBull.com] Re: Re: Your receipt from RagingBull.com, LLC #2659-4407

▮▮▮▮

May 31, 2020, 5:13:17 PM EDT

No Steven, it was not mentioned in the webinar, nor was this evident on the check out page where you conveniently admitted that you buried it in the fine print, so that you could have a way to tell people after the fact that you will not honor your word for a '30 DAY, NO QUESTIONS ASKED, MONEY BACK GUARANTEE'

You have a customer that is not satisfied and you want to keep the money instead of working with me. Shame on you.

If I end up paying for this service, I will never purchase another product from Raging Bull.

Go into my acct and make sure that all products I have already purchased have the 'AUTO RENEW' FEATURE

**Attachment A**              **PX 47, 4667**

CANCELLED.

Customer Service has been poor.

███████████████

_____
From: "Steven (RagingBull.com Support)" <support@ragingbull.com>
To: ███████████████████████████
Sent: Sunday, May 31, 2020 3:10:26 PM
Subject: [RagingBull.com] Re: Re: Your receipt from RagingBull.com, LLC #2659-4407

**Steven** (RagingBull.com)

May 31, 2020, 4:10:24 PM EDT



We can not issue a refund for this service.

My colleague Derek reached out to you previously before your service was outside of the 30 day Money Back Guarantee period in which he let you know ==that the service had ad 30 day Money Back Guarantee that requires you to complete the learning center.==

It was mentioned in the webinar as well as on the checkout page which I have included for you at the picture below.

Steven
VIP Client Services
(833) 265-1270
https://ragingbull.com
https://ragingbull.com/our-experts
https://www.linkedin.com/company/ragingbull
https://www.facebook.com/RagingBullTrading



May 28, 2020, 2:58:10 PM EDT

==Adam, it seems like you would want to work this out.==

==But going all the way back to 5/12, my emails and phone attempts are falling on deaf ears. Seems like==

**Attachment A**                    **PX 47, 4668**

==somebody over there should care when a customer has a problem that is not being solved.==

███████████

_____

███████████████

To: "RagingBull.com Support" <support@ragingbull.com>
Cc: support@ragingbull.com
Sent: Wednesday, May 27, 2020 9:36:59 AM
Subject: Re: [RagingBull.com] Re: Re: Your receipt from RagingBull.com, LLC #2659-4407

Adam, is there some reason, Raging Bull is refusing to issue a cancellation & refund of my subscription referred to in the email string below?

You are the ones who offered a '30 DAY, NO QUESTIONS ASKED, MONEY BACK GURENTEE' All attempts to work with your support team have been largely ignored. I was told that in my welcome email I was informed that I had to take a class to get my refund in that 30 day window. My welcome email is copied below, there was no such information ever communicated to me.

I was told that refunds are only handled by phone, the times I phoned, I was placed in a hold que for so long, I was forced to leave my number & hang up. I either got no call back or a call from someone that said, we can't help but will have someone else call you.

If there is some way you can help get this resolved, I would appreciate it. My phone # is in the string below.

███████████

_____

From: ███████████████
To: "RagingBull.com Support" <support@ragingbull.com>
Cc: support@ragingbull.com
Sent: Tuesday, May 26, 2020 9:55:24 AM
Subject: Re: [RagingBull.com] Re: Re: Your receipt from RagingBull.com, LLC #2659-4407

==Adam, I am having a problem believing how customer service is getting handled here.==

==Yes I disputed the charge, after repeated failed contact with the support team.==

==Yes the charge is still in dispute, see the email string below to catch up on things.==

==In a nutshell, I signed up for a service by Ben Sturgill after a webinar in April, at the end when the service was pitched, Ben offered a '30 DAY, NO QUESTIONS ASKED MONEY BACK GURENTEE'.==

==I signed up, tried the service, decided it was not for me, emailed to cancel (inside my 30 day window), was informed you only handle cancellations via phone, called (inside my 30 day window), got put in a hold que, left my phone # & opted to have someone call me back rather than spend any more time than I already sat & waited in the hold que.==

==**Never got a call back.**==

Emailed several more times, finally got a call from someone who could not help me and informed me a

supervisor would, call, someone else called, got my voice mail & left me a message to call back and get in the hold que again instead of giving me a number to contact them directly about this issue.

I refused that option, emailed again and asked the 'supervisor/director' to call me back at a different number, never got a call back.

<mark>Called my credit card and have put this in dispute. I don't know what part of:</mark>

<mark>'30 DAY, NO QUESTIONS ASKED MONEY BACK GURENTEE' is all of</mark>

<mark>a sudden a problem for your customer service staff.</mark>

To resolve this, cancel my subscription to Ben's service, issue a refund & we can call it closed and resolved. I have purchased other products from Raging Bull & will look to continue doing business with you.

Thanks for looking into this for me.

█████████

Adam (RagingBull.com)

May 26, 2020, 9:31:51 AM EDT

Hello,
How is everything going?
We noticed that you disputed a charge from us recently. We wanted to reach out and make sure everything was all right with your purchase and see if there's anything we can do to resolve any problems you might have had. Alternatively, if the dispute was a mistake, you could easily withdraw it by calling the number on the back of your credit card. Thanks so much -- we really appreciate your business and look forward to working with you! Reach out shortly,

Adam
VIP Client Services
(833) 265-1270

_____
From: ██████████████████
To: "RagingBull.com Support" <support@ragingbull.com>
Cc: support@ragingbull.com
Sent: Friday, May 22, 2020 9:18:48 AM
Subject: Re: [RagingBull.com] Re: Re: Your receipt from RagingBull.com, LLC #2659-4407

Stehpen can call me this morning at █████████ to get the cancellation & refund taken care of.

_____
From: ██████████████
To: "RagingBull.com Support" <support@ragingbull.com>
Cc: support@ragingbull.com

Sent: Thursday, May 21, 2020 1:02:54 PM
Subject: Re: [RagingBull.com] Re: Re: Your receipt from RagingBull.com, LLC #2659-4407

Attention: Stephen (Director Level), HI PRIORITY

I called again this morning, was put on hold for over 10 mins, I still have employment obligations and cannot stay on hold all day.

I elected to have my place in the que held and get a call back. That call came about 2hrs later, I spoke to someone named Shaday (not sure of that spelling).

She informed that neither her nor Derek could process the refund & she would have her supervisor call me back.

I received a voice mail from someone named Stephen, who identified himself as a director asking me to call 833-265-1270.

There is no way I am going to call that number again for a 3rd time and sit in that hold que again. He should have given me his direct number and not the general, sit in the hold que again number. (very frustrated with the level of customer service I getting here)

Stephen asked for some details, I am assuming he has not read the thread below. So here are the details, again:

I attended a webinar hosted by Ben Sturgill where at the end he pitched his Daily Profit Machine subscription, I was hesitant, but he pushed me over the fence when he offered a '30 DAY – NO QUESTIONS ASKED – MONEY BACK GUARENTEE'

I have other subscriptions with Raging Bull, but decided to try this one.

Toward the end, but prior to the 30 days expiring, I decided to cancel and obtain a refund.

At that point I was told that in order to get the refund I had to 'PROVE
I HAD TAKEN SOME COURSE'. No such thing was ever communicated
to me.

I went back and reviewed my welcome email and there was no such stipulation in there ( it is copied below), nor did Ben communicate that would be required.

I emailed, called, and then went through several more emails where no one responded to me. I am somewhat disappointed with my customer service experience so far.

At this point I want the Daily Profit Machine subscription cancelled and a refund issued. Nothing personal to Ben, he appears to be a seasoned, skilled trader.

As far as now insisting I have to prove I took some course, that I was not informed  about in my welcome email was in any way part of the '30 DAY – NO QUESTIONS ASKED – MONEY BACK GUARENTEE'

Stehpen can call me at [REDACTED] to get the cancellation & refund taken care of.

If I don't hear back from you by end of day, I will be calling my credit card company about this subscription charge.

**Attachment A**          **PX 47, 4671**

==Even if I missed something in the welcome email, to keep a satisfied customer it would be a good idea to honor your 30 day promise.==

==See below for my welcome email & my communications thread which started on the 12th.==

█████████

Welcome to Daily Deposits!

If you haven't done so already I encourage you to watch my short welcome video; (https://mr141.infusion-links.com/api/v1/click/5902728572960768/5290400578273280)

I am excited to welcome you to Daily Deposits, and thank you for subscribing!

First thing is first... I want to make something super clear:

I WANT TO HEAR ABOUT YOUR PROFITS!

People always ask me "Ben why do you wake up so early?"

Well the honest answer is... I love coming to work everyday and helping traders like yourself who are trying to make a profit every day. That is my motivation.

So I want to hear about your all of your Daily Deposit wins! You can reach me by sending tweets to @MakeDailyProfit (https://mr141.infusion-links.com/api/v1/click/6651232656293888/5290400578273280) .

I read every single one of them and sometimes I even retweet the good ones!

Second, I'm up early because (after some good coffee!) it's a time I am able to do some of my best thinking. I scan the global indexes, research and analyze the markets, I start to formulate the Trade of the Day for you, my Daily Deposits subscribers.

To formulate this Trade of the Day, I summarize what I'm seeing in the market and I create a video daily with this summary. And so every trading day you can expect a daily video update with my thoughts and commentary, and I normally send this out around 6.30 a.m. – 7.30 a.m. eastern time so that it is in your inbox ready for you.

Then, about 30 minutes before the markets open (which is normally at 9.30 a.m. eastern), I'll send out my Trade of the Day.

What's a Trade of the Day?

As you may already be aware every company on the stock market has a ticker symbol, which is a few letters indicating the company's stock. Apple, for example, has the ticker of AAPL, Facebook is FB, and Johnson & Johnson's ticker is JNJ, to name a few.

Every Trade of the Day is always for one ticker; SPY. This is the S&P ETF (exchange-traded fund) of the 500 large-cap companies, and is the largest ETF in the world.

In the Trade of the Day, I pinpoint what I believe will be the direction and a price target for SPY for that day.

The other component of our trading plan which I provide in the Trade of the Day email is the support or

resistance levels or trading pattern trigger for the Trade of the Day. If you already know how to spot chart patterns, great! But if you're unsure or just getting started, there is no need to worry because after I send out the Trade of the Day, I follow up with an alert when the pattern triggers.

In Daily Deposits, remember that I do all the heavy lifting!

If all you want to do is to receive the Trade of the Day and run with it, then welcome. But as I state in the welcome video, I would love to see you grow as a trader and I believe that as you grow, your account will grow. So an important benefit of my service in that I share the "why" and the "how" behind my trades. And so keep an eye out for my videos and updates so you can learn more than just what I'm doing, buy why and how I'm doing it.

Becoming a Better Trader!

Some of the things I will share with you may be new to you, and some of them may already be familiar. But whether you consider yourself an absolute beginner or a seasoned trader, I believe that you can benefit enormously from Daily Deposits. First and foremost there is the opportunity each day to profit from the Trade of the Day! And judging by some of the comments and social media posts I've seen, many of my members are profiting from my research.

But the other area of profit is that of the knowledge of how to trade. To this end, you will find that many of the video updates and market commentaries I provide every day will help to build your depth of understanding of how this seemingly random game of trading all comes together! I will be sharing not only trading ideas but introducing you to some of the charts and patterns that can help you in your trading.

One video that will help you get started, is this video on how to set up the platform (https://mr141.infusion-links.com/api/v1/click/5283610855473152/5290400578273280) I use to trade on my computer, TD Ameritrade's Think or Swim program. Again, if you are just getting started, this will allow you to "Paper Trade" or practice, until you feel comfortable. This video (https://mr141.infusion-links.com/api/v1/click/5397476740431872/5290400578273280) will show you how to set up that platform (and give you a link to just import it). This video will also walk you through some of the indicators that I use as I watch the trade of the day set up. Pretty soon you will be able to watch out for and set alerts yourself when these patterns begin, indicating that the Trade of the Day has been triggered.

What to Expect From Me

Daily Deposits uses a very simple idea; one trade a day! And the way I've set it up is designed to help you get the most from it as quickly as possible.

Each trading day, you can expect my market updates and the Trade of the Day; I send these in the morning, every trading day. I will also send out regular videos and updates, and short, easy-to-grasp lessons and tips to you on a regular basis. All of these are to help bring you up to speed and to a deeper level of confidence about trading. I want you to feel that you "get it" and understand what is going on without you feeling overwhelmed or in any way out of your depth.

Remember; my trading system is designed to be easy, and that's how it should feel. If you have any questions please reach out and let me know if there is any way that I can help to make things easier, more successful, or clearer for you. In the end, I WANT TO SEE YOU GROW and so your account can grow as well. So don't hesitate to ask questions. This is how growth happens.

THANK YOU for joining me in Daily Deposits!

Now... here's to your success, your growth and profits!

Sincerely,

Ben Sturgill

Excited about Daily Deposits? Tweet me @MakeDailyProfit (https://mr141.infusion-links.com/api/v1/click/4929803590041600/5290400578273280) !

------------------------------

From: ██████████████

To: "RagingBull.com Support" <support@ragingbull.com>

Cc: support@ragingbull.com

Sent: Thursday, May 21, 2020 7:48:31 AM

Subject: Re: [RagingBull.com] Re: Re: Your receipt from RagingBull.com, LLC #2659-4407

==I tried that once back on the 13th, got put in a hold que, ended up leaving a message & never, to this day (21st), got a return call.==

==I will try it again today.==

████████████

------------------------------

---

**Derek** (RagingBull.com)

May 20, 2020, 8:42:05 PM EDT



We do not handle refunds via email.

Please give us a call at (833) 265-1270 during market hours.

Sincerely,

Derek

VIP Client Services

(833) 265-1270

https://ragingbull.com

https://ragingbull.com/our-experts

https://www.linkedin.com/company/ragingbull

https://www.facebook.com/RagingBullTrading

**Attachment A          PX 47, 4674**



May 19, 2020, 4:54:22 PM EDT

Derek, or who ever in support gets this. I am not a 'tire kicker' and have purchased other products thru Raging Bull. This particular product did come with a 30 day money back guarentee, I emailed prior to the end of my 30days to inform that I would be cancelling this subscription and expecting a refund.

I phoned, got put in a hold que, left a message, never got a call back, several emails are included in the string below.

I have not heard anything in days, but the last communication I received suggested that you will not be honoring the 30 day money back guarentee.

I am left with no choice. If I do not hear from you by tomorrow, I will be calling my credit card company to dispute the charge.

Was really hoping you would honor your side of the offer.

Looking forward to hearing from you on this by tomorrow.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮

------------------------------
From: ▮▮▮▮▮▮▮▮▮▮▮▮
To: "RagingBull.com Support" <support@ragingbull.com>
Cc: support@ragingbull.com
Sent: Monday, May 18, 2020 8:39:42 AM
Subject: Re: [RagingBull.com] Re: Re: Your receipt from RagingBull.com, LLC #2659-4407

Derek or who ever in support gets this. As of this morning, I am still getting alerts from Daily Profit Machine. Are you having trouble with that cancellation & refund?

Let me know what you are doing to close this out for me. Kick it up to your supervisor if you have to.

Thanks.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮

------------------------------
From: ▮▮▮▮▮▮▮▮▮▮▮▮
To: "RagingBull.com Support" <support@ragingbull.com>
Cc: support@ragingbull.com
Sent: Friday, May 15, 2020 3:27:59 PM
Subject: Re: [RagingBull.com] Re: Re: Your receipt from RagingBull.com, LLC #2659-4407

Derek or whoever gets this,

1st off, I am customer who has purchased products. No where was I informed that I needed to prove I took a quiz to cancel the service in the 1st 30 days.

**Attachment A**          **PX 47, 4675**

If you are not going to issue a refund for this according to the announcement by Ben Sturgill during the initial offer to subscribe to Daily Profits on the webinar. That will damage our relationship going forward most likely beyond repair.

I sent an email request on the 12th. for cancellation.

I phoned on the 13th, left a voice mail, never heard anything back.

==I am resorting back to email so I have a record of my attempts to work this out with you.==

I would appreciate a response ASAP so that I know what to expect or do going forward.

████████████

––––––––––––––––––––––––––––––
From: ████████████
To: "RagingBull.com Support" <support@ragingbull.com>
Cc: support@ragingbull.com
Sent: Friday, May 15, 2020 1:46:20 PM
Subject: Re: [RagingBull.com] Re: Re: Your receipt from RagingBull.com, LLC #2659–4407

Derek, I need to know what you are going to do today to make sure this is processed.

████████████

––––––––––––––––––––––––––––––
From: ████████████
To: "RagingBull.com Support" <support@ragingbull.com>
Sent: Friday, May 15, 2020 9:02:31 AM
Subject: Re: [RagingBull.com] Re: Re: Your receipt from RagingBull.com, LLC #2659–4407

Derek, I just need to have you execute the refund for me.

Now when I signed up, there was no mention about the any course that had to be taken. If so, I would have gladly taken it, which I am apparently out of time for now.

==No one mentioned anything about that.==

==Ben only said there would be a 30 day 'NO QUESTIONS ASKED MONEY BACK GUARENTEE' that would include a 'did you take the course that you were not aware of?' question.==

I was going in & out of the members section when I had time over these last 30 days and was only able to look at a few of the options lessons.

Mostly I was logging in to watch the pre market videos with Ben & then waiting for the email with the trade details.

==So, I don't like being told at the last minute that I was supposed to take a course to get my refund if I decide this would not work for me.==

==I am going to stick with my original request to have the subscription cancelled and a refund issued.==

If you are now going to insist I take the course, to get my refund, then you are not honoring the 'NO QUESTIONS ASKED' statement voiced by Ben in the webinar.



_____

**Derek** (RagingBull.com)

May 15, 2020, 8:38:23 AM EDT



Thank you for reaching out and allowing me to help you today. We are sad to hear that you are not able to utilize the Daily Deposits in the way it was intended and that you are not seeing the results you imagined. As far as cancellations and refunds we do not handle this via email for your personal account security, so I am going to point you in the right direction. I would like to schedule a call to discuss the issues that may be occurring.

As for the Daily Deposits, the Learning Center was engineered by Ben to provide the education and training materials needed to be successful not only in that particular strategy but the market in any given condition. What will benefit you the most, is witnessing our traders trading in real-time each day. You see what they're thinking, and even more importantly, why they make the decisions they do. Our Experts at RagingBull would not recommend blindly following any trade alert as these are their personal positions. If you would like to follow any of their alerts, it would be under your own discretion.

If you would like to give me more details I would be happy to construct an education plan to get you where you would like to be, or switch you into another service of equal value that might be more suitable for you. ==I would however be glad to honor the 30 Day Money Back guarantee if you can provide me proof of the certificate of completion to the Learning Center.== Please let me know how you would like to proceed. We'd hate to see you leave, and I'd love to speak with you about how I might be able to steer you in the right direction.

The course must be completed within 30 days of your initial purchase in order to get a refund. Here is the link to the course: https://lms.ragingbull.com/learn/course/daily-deposits/daily-deposits-spy-crash-course

Derek
VIP Client Services
(833) 265-1270
https://ragingbull.com
https://ragingbull.com/our-experts
https://www.linkedin.com/company/ragingbull
https://www.facebook.com/RagingBullTrading

**Attachment A**                    **PX 47, 4677**



May 14, 2020, 6:05:17 PM EDT

I sent in an email on the 12th, made a phone call and left a voice mail msg on the 13th. I have not heard anything back yet.

I need someboby to take care of this for me. See string below.

I am not a 'tire kicker' have purchased other products from Raging Bull & have other active subscriptions.



_____
From: 
To: "RagingBull.com Support" <support@ragingbull.com>
Sent: Wednesday, May 13, 2020 12:19:09 PM
Subject: Re: [RagingBull.com] Re: Re: Your receipt from RagingBull.com, LLC #2659-4407

Derek, I called the office, like you instructed, got put in a hold que, after a while, I was offered an opportunity to leave a voice mail, can't stay on hold at this point, have to tend to some other obligations.

Nutshell, I signed up for Ben Strugill's Daily Profit Machine last month, I was intruguied with this option, along with wanting to give it a try, Ben sealed the deal for me when he announced he would be offering a 30 day NO QUESTIONS ASKED MONEY BACK REFUND. I know that is not normal for raging bull but that is what sealed the deal, else I would have passed on it that night of his presentation.

I would like to exercise that option & cancel, please get that ball rolling for me.



_____
From: "Derek (RagingBull.com Support)" <support@ragingbull.com>
To: 
Sent: Wednesday, May 13, 2020 11:13:12 AM
Subject: [RagingBull.com] Re: Re: Your receipt from RagingBull.com, LLC #2659-4407

**Attachment A          PX 47, 4678**

## [WePay Support] Re: Chat with Jason Pell

| | |
|---|---|
| **From:** | WePay Customer Delight <support@wepay.com> |
| **To:** | Jason Pell <jpell@ragingbull.com> |
| **Date:** | Mon, 02 Nov 2020 15:02:58 -0500 |

## For replies, all text above is added to the ticket ##

Ticket #2173299: Chat with Jason Pell

Your request (#2173299) has been updated!

**Jason Pell**

Nov 2, 2020, 12:02 PM PST

Chat started: 2020-11-02 07:51 PM UTC

(07:51:32 PM) Jason Pell: how do I issue a refund there is no red button to refund?
(07:51:57 PM) *** Jazzmine joined the chat ***
(07:52:24 PM) Jazzmine: If the payment is older than 60 days you will be unable to issue a refund.
(07:52:34 PM) Jazzmine: Let me take a look at your account.
(07:55:28 PM) Jason Pell: its from the 5th of october
(07:55:49 PM) Jason Pell: Oct 05, 2020 Payment from ███████████
(07:56:06 PM) Jason Pell: $999.00
(07:56:07 PM) Jazzmine: I see that your account has been closed by our Trust and Safety team due to being high risk for chargebacks. Unfortunately, you will be unable to issue refunds from within your dashboard.

I do see that you have an available balance in your account. I will have to escalate this to the Trust and Safety team for more information and assistance.
(07:57:49 PM) Jazzmine: As well as for assistance in refunding that payment.
(07:58:08 PM) Jason Pell: ok well he called din we would like to refund him in full.
(08:00:02 PM) Jazzmine: ok. I will check with the Trust and Safety team and follow up with you through email shortly (ticket #2173299)

Still need help? You can reply to this email to add additional comments.

Support Hours: 6AM-6PM PST, Monday-Friday
This email is a service from WePay.
WePay, a CHASE company
350 Convention Way, Suite 200
Redwood City, CA

**Attachment A**          **PX 47, 4679**

# Your account has been closed

| | |
|---|---|
| **From:** | WePay.com <support@wepay.com> |
| **To:** | jpell@ragingbull.com |
| **Date:** | Mon, 05 Oct 2020 17:17:35 -0400 |

Hi Jason,

Upon review, we have determined that we will no longer be able to process payments for your WePay Payments account. Any pending payments into your account have been canceled and you will not be able to withdraw funds at this time.

Thank you for understanding and we apologize that we couldn't offer a better solution.

Sincerely,
WePay Team

To opt out of these notifications please click here

**Attachment A**          **PX 47, 4680**

# Please set up your WePay account

| | |
|---|---|
| **From:** | WePay.com <support@wepay.com> |
| **To:** | jpell@ragingbull.com |
| **Date:** | Mon, 21 Sep 2020 11:29:49 -0400 |

Hi Jason,

Hello, Jason!

Please click below to create your WePay account and complete the setup process.

You will set a password for your WePay account, complete a short application, and then connect your business bank account so that you can receive funds.

Need Help? Call toll free: 1-866-800-0004
Monday to Friday, 6am - 6pm MST

Please click below to verify your account. If you do not complete this step within 14 days of your first received payment, your account will be disabled from receiving additional payments and all payments will be refunded to your payers.

Once you confirm your email, make sure you also log in and provide accurate identification information about yourself and your bank account. If you do not provide this information, WePay Payments will refund all payments to your payers 30 days after you accept your first payment.

Set Up Your Account

To opt out of these notifications please click here

**Attachment A**          **PX 47, 4681**

**Sent:**      Wed, 23 Sep 2020 08:44:14 -0600
**Subject:**   Re: Base Commerce and Bank of Fresno
**From:**      Jordan Reyna <jordan@ragingbull.com>
**To:**        Cache Decker <cdecker@cmsonline.com>

RagingBull_merchant-application-SIGNED 9:23:2020v3.08.1.pdf

Here you go. Fingers crossed.

On Tue, Sep 22, 2020 at 3:33 PM Jordan Reyna <jordan@ragingbull.com> wrote:

Cache,
Working on this. Wanted to make sure I understand. So Fresno Bank says they looked at some of our info already and are preapproving us for some volume? Glad to hop on a quick call to make sure that's the case. My concern is that this is another application and I don't want to make too many MID inquiries for fear of spooking our current active MID. You feel that this has a great chance to work out?

Jordan

On Tue, Sep 22, 2020 at 10:07 AM Cache Decker <cdecker@cmsonline.com> wrote:

Jordan, here is an app for Base Commerce and Bank of Fresno… the received a pre app and said they can give you some volume.

Attached is the application that is almost all filled out, there are a few questions that are highlighted as well as the areas needing to be signed by Jeff and Jason.

Please let me know if you have any questions.

Thanks,

**Attachment A**          **PX 47, 4682**

DocuSign Envelope ID: 8C578EB7-1CCE-4CA1-8CF8-914316D1DAEB

# MERCHANT APPLICATION
## BASE COMMERCE, LLC

### MERCHANT APPLICATION INSTRUCTIONS

| Complete the Merchant Application for each Merchant ID (M D) required. | Application Outline | ISO Office |
|---|---|---|
| • Generally, each physical location and each independent payment-enabled website requires a unique MID. <br> • Complete only one Merchant Application for a Retail location with a complementary website. <br> • Updating an Active MID Account will be noted here. | 1. Legal entity information <br> 2. Card brand and processing information <br> 3. Pricing and acceptance <br> 4. Business entity information <br> 5. Internet Location Questionnaire <br> 6. Retail Terminal Location Questionnaire <br> 7. Retail POS Location Questionnaire <br> 8. MOTO Location Questionnaire | Agent <br><br> Agent Phone <br><br> Program |

### LEGAL ENTITY INFORMATION

| Legal Name ("Merchant") <br> RagingBull com, LLC | Business Entity Type <br> LLC | |
|---|---|---|
| Physical Street Address <br> 62 Calef Hwy #233 | Federal Tax D <br> ▮▮▮ | Incorporation State <br> Delaware |
| City, State, Zip Code <br> Lee, NH 03861 | Entity Start Date <br> 2013 | Length of Current Ownership <br> 2013 |
| Mailing Address (if different) | City, State, Zip Code | |

### OWNER OR OFFICER INFORMATION - CIP PATRIOT ACT REQUIREMENTS

To help the government fight the funding of terrorism and money laundering activities, the US Patriot Act requires all financial institutions to obtain, verify, and record information that identifies each person (including business entities) who opens an account. What this means for you: When you open an account, we will ask for your name, physical address, date of birth, taxpayer identification number, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

Your Business and Personal information is secure with Base Commerce, LLC ("ISO"). View our Privacy Policy at https://www.basecommerce.com/privacy-policy .

To be completed by the authorized person opening the account and signing the application.

| Owner / Officer Name <br> Jeff Bishop | Email Address <br> jeff@ragingbull com | |
|---|---|---|
| Title <br> CEO | Mobile Phone <br> ▮▮▮ | Office / Business Phone |
| Residence Address <br> ▮▮▮ | SSN <br> ▮▮▮ | Date of Birth |
| Residence City, State, Zip Code <br> Lee, NH 03861 | % of Equity Ownership <br> 65 | ☑ Owner ☐ Officer |

Personal Note Personal identifying information on any individual with a 25% or greater ownership interest in the applying entity must be included on the last page as a Beneficial Owner.

### BANK DISCLOSURE

| Member Bank Information Fresno First Bank • 7690 N. Palm Avenue, Fresno, CA 93711 • 559-439-0200 | Merchant Information <br> Refer to this Merchant Application above. |
|---|---|
| **Important Bank Responsibilities** | **Important Merchant Responsibilities** |
| 1. A Visa Member is the only entity approved to extend acceptance of Visa products directly to a merchant. | 1. Ensure compliance with cardholder data security and storage requirements. <br> 2. Maintain fraud and chargebacks below established thresholds. <br> 3. Review and understand the terms of the Merchant Agreement. <br> 4. Comply with Visa International Operating Regulations. |
| 2. The Visa Member is responsible for educating Merchants on pertinent Visa International Operating Regulations with which Merchants must comply. | The responsibilities listed above do not supersede terms of the Agreement, and are provided to ensure Merchant understands some important obligations of each party and that Fresno First Bank, as the member bank, is the ultimate authority should Merchant have any problems. |
| 3. The Visa Member is responsible for and must provide settlement funds to the Merchant. | |
| 4. The Visa Member is responsible for all funds held in reserve that are derived from settlement. | DocuSigned by: <br> Merchant Name: RagingBull com, LLC <br> *Jeff Bishop* |
| 5. A Visa Member must be a principal (signer) to the Merchant Card Processing Agreement. | Signature: *Jeff Bishop* 49778BD5343C4A4 <br> 9/23/2020 |

The responsibilities listed above do not supersede terms of the Merchant Card Processing Agreement and are provided to ensure the Merchant understands some important obligations of each party and that the Visa and MasterCard member Fresno First Bank is the ultimate authority should the Merchant have any problems.

| Signature *Jeff Bishop* 49778BD5343C4A4 | Printed Name <br> Jeff Bishop | Title <br> CEO | 9/23/2020 |
|---|---|---|---|





Attachment A                 PX 47, 4683

DocuSign Envelope ID: 8C578EB7-1CCE-4CA1-8CF8-914316D1DAEB

## REQUESTED PROCESSING TYPES

☑ BankCard ☐ Retail (swiped) MIDs ☑ Moto / Internet (Card-Not-Present) MIDs ☐ ACH

## REQUESTED CARD BRANDS

All payment types will be submitted for approval, unless specific card types are selected below.

☑ Visa Debit ☑ Visa Credit
☑ MasterCard Debit ☑ MasterCard Credit ☑ American Express² AMEX MID Number (existing only)
☑ Discover Debit ☑ Discover Credit

**American Express Merchant Application**

You, as Merchant, have the option of accepting MasterCard credit cards, Visa credit cards, American Express credit cards, credit cards issued by the Discover® Network, MasterCard signature debit cards (MasterMoney Cards), or Visa signature debit cards (Check Cards), or debit cards issued by the Discover Network. Merchant may elect to accept any or all of these card types for payment. If Merchant does not specifically indicate otherwise, the Merchant Application will be processed to accept ALL MasterCard, American Express, Discover Network, and Visa card types.

☑ By checking this obx, Merchant opts out of receiving future commercial marketing communications from American Express.

| VISA, MASTERCARD, DISCOVER | | AMEX | | ACH | |
|---|---|---|---|---|---|
| **Item** | **Amount** | **Item** | **Amount** | **Item** | **Amount** |
| Average Single Transaction | 700 | Average Single Transaction | 700 | Average Single Transaction | - |
| Average Monthly Volume | 6,000,000 | Average Monthly Volume | 1,000,000 | Average Monthly Volume | - |
| Max. Single Transaction | 10,000 | Max. Single Transaction | 10,000 | Max. Single Transaction | - |
| Max. Monthly Volume | 8,000,000 | Max. Monthly Volume | 2,000,000 | Max. Monthly Volume | - |
| Retail Volume % | 0 | | | Written Volume % | - |
| Internet Volume % | 75 | | | Internet Volume % | - |
| Mail Order Volume % | 0 | | | Conversion Volume % | - |
| Telephone Order Volume % | 25 | | | Telephone Order Volume % | - |

## CREDIT CARD QUESTIONNAIRE

| Does Merchant currently take payment cards at this location? | Reason for leaving current acquiring bank? |
|---|---|
| ☐ Yes ☑ No | Poor service and support, does not facilitate growth |
| Has Merchant or any Principal been terminated as a Visa / MasterCard Merchant (TMF)? | Does any Contractor, Agent, Third Party, or Affiliated Entity have access to Cardholder Data? |
| ☐ Yes ☑ No | ☐ Yes ☑ No |
| Is Cardholder Data stored locally, including names, numbers, and expiration dates, by Merchant or Contractor, Agent, Third Party, or Affiliated Entity who has access to Cardholder Data? | Contractor, Agent, Third Party, or Affiliated Entity who has access to Cardholder Data: |
| ☐ Yes ☑ No | Name: _____ Phone: _____ |
| | Address: _____ |
| By: ☐ Merchant   ☐ Contractor, Agent, Third Party, or Affiliated Entity | City / State / Zip Code: _____ |
| Are Visa, MasterCard, Discover, and AMEX signage in place? | Recurring Payments? |
| ☑ Yes ☐ No | ☑ Yes ☐ No |

| VISA, MASTERCARD, DISCOVER | | | AMEX OPTBLUE | | | CARD SERVICES | |
|---|---|---|---|---|---|---|---|
| **Item** | **Per Item** | **Rate** | **Item** | **Per Item** | **Rate** | **Item** | **Rate** |
| Pass-through Plus ᴾᵀᴾ | - | - | Pass-through Plus ᴾᵀᴾ | - | - | Monthly Min. Discount | 25.00 |
| Qual Discount Rate Credit | .10 | 2 95 | Qual Discount Rate | .10 | 2 95 | Monthly Service | - |
| Qual Discount Rate Debit | .10 | 2 95 | Mid-Qual Surcharge | | 3 39 | Online Reporting/Statement | 15.00 |
| Mid-Qual Debit/Credit Surcharge | | 3 39 | Non-Qual Surcharge | | 3 89 | Chargeback ³ | 25.00 |
| Non-Qual Debit/Credit Surcharge | | 3 89 | Bundled Single Rate Program | - | | Retrieval³ | 15.00 |
| Bundled Single Rate Program | | - | AMEX OptBlue Authorization | - | | Early Termination | 199.00 |
| PIN Debit | - | - | **CARD SERVICES** | | | Terminal Support | - |
| Authorization | - | | Gateway Monthly Fee | | - | Wireless | - |
| Batch Settlement | .10 | | Gateway Transaction | | | EBT Access | - |
| Address Verification Service (AVS) | .10 | | Monthly PCI | | 15.00 | | |
| Other: | - | | Monthly Non-Compliance ⁴ | | 79 99 | | |
| ☑ Card Brand Fee Passthrough | | | | | | | |

⁴ See Section 18(iv) in the Terms and Conditions.

**Attachment A**      **PX 47, 4684**

DocuSign Envelope ID: 8C578EB7-1CCE-4CA1-8CF8-914316D1DAEB

## ACH QUESTIONNAIRE

| Transaction Descriptor on Client Statement | ACH Issue Credits ☐ Yes ☐ No | ACH Issue Debits ☐ Yes ☐ No | Recurring Payments ☐ Yes ☐ No |
|---|---|---|---|

Payments to / from:
☐ Consumers / Individuals   ☐ Businesses / Organizations

ACH Merchant Reports ☐ Yes ☐ No   ACH Reporting Email:

Payments Submitted via (check all that apply)
☐ Virtual Terminal   ☐ Gateway   ☐ Web Services   ☐ Batch Submission

ACH Custom Validation & Verification Services (check all that apply)
☐ Bank Account   ☐ Consumer Identity   ☐ Available Funds
☐ Negative Check Writers Database

## ACH

| Item | Rate | Item | Rate | Item | Rate |
|---|---|---|---|---|---|
| Per Item Fee | | Payment Discount | | Return or Exception | |
| Unauthorized Returns | | Monthly Service Fee | | ACH Verification Fee | |
| ACH Minimum Fee | | ACH Compliance Fee | | ACH Funding ---- | |

☐ Merchant has reviewed the ACH Authorization Guide and agrees to acquire Payer Authorizations as indicated and retain such Proof of Payer Authorization for a period of no less than two years from the effective date. View and download the ACH Authorization Guide at: https://www.basecommerce.com/docs/authorization-guide.pdf

## FEE SCHEDULE ACKNOWLEDGEMENT

| Signature *Jeff Bishop* | Printed Name Jeff Bishop | Title CEO | 9/23/2020 |
|---|---|---|---|

## MERCHANT LOCATION INFORMATION

| DBA Name RagingBull.com | Location Contact Name Jordan Rayna |
|---|---|
| Location Address 11311 McCormick Rd Ste 200 | Location Contact Email Address jordan@ragingbull.com |

| Location City, State, Zip Code Hunt Valley, MD 21031 | Location Phone ▋ | Location Chargeback Fax ▋ |
|---|---|---|
| Website RagingBull.com | Location Customer Service Phone 833-265-1270 | Location Fax |

Have Merchant, Owners, or Principals ever filed business bankruptcy or personal bankruptcy? ☐ Yes ☑ No

If yes, please explain and provide the date and jurisdiction where the bankruptcy case was filed:

## BUSINESS INFORMATION

| Types of Goods and Services Sold Educational Services | MCC (Internal Only) |
|---|---|
| Additional Description of Business | |

How are goods shipped?
☐ FedEx   ☐ DHL   ☐ UPS   ☐ USPS   ☑ Other: Internet, digital goods

Days Between Order and Delivery: 0 (instant)

Cardholder is Charged at Time of:
☑ Purchase   ☐ Shipment

| Deposit Required? ☐ Yes ☑ No | Deposit % of Total Purchase Price: | Return Policy ☐ Full Refund ☐ Partial Refund ☑ No Refunds | Return Policy Time Period (e.g. 30 Days) |
|---|---|---|---|

## SETTLEMENT BANK INFORMATION

| Bank Name Eastern Bank | Business Name as it Appears on Checks RagingBull.com | Routing Number ▋ | Account Number ▋ |
|---|---|---|---|

**AUTHORIZATION FOR AUTOMATIC FUNDS TRANSFER (ACH)** The Merchant Bank (defined on Page 1) is authorized to initiate or transmit automatic credit and/or debit and/or check entries to the Settlement Bank indicated and/or to the account identified in the **attached voided check** for all services contemplated under this Merchant Card Processing Agreement. Said authority is granted to Merchant Bank's processor and their agent.

## AUTHORIZED CONTACTS

| Name Jordan Reyna | Email jordan@ragingbull.com | Mobile ▋ |
|---|---|---|

## FULFILLMENT VENDOR

| Fulfillment Vendor Utilized? ☐ Yes ☑ No | Who owns the Inventory? ☑ Merchant ☐ Vendor | Fulfillment Vendor Name | Fulfillment Vendor Phone |
|---|---|---|---|

## BATCH INFORMATION

| Request for Tip Line ☐ Yes ☑ No | Request for Auto-Batch ☐ Yes ☑ No | Auto-Batch Time 12:00am | Auto-Batch Time EST | Signature Floor Limit ☐ $25 ☐ $50 ☑ None |
|---|---|---|---|---|

Attachment A                    PX 47, 4685

DocuSign Envelope ID: 8C578EB7-1CCE-4CA1-8CF8-914316D1DAEB

| STANDALONE TERMINAL QUESTIONNAIRE | | | | | |
|---|---|---|---|---|---|
| Model Type | Quantity | Implementation<br>☐ New  ☐ Reprogram | Connection Type<br>☐ Ethernet  ☐ Dial Up | Billing<br>☐ Merchant  ☐ Partner | Ship to Address<br>Ship To Location |
| Model Type | Quantity | Implementation<br>☐ New  ☐ Reprogram | Connection Type<br>☐ Ethernet  ☐ Dial Up | Billing<br>☐ Merchant  ☐ Partner | Ship to Address<br>Ship To Location |

### INTERNET QUESTIONNAIRE

| The following policies are clearly accessible on the website:<br>☐ Privacy Policy  ■ Return Policy  ■ Terms and Conditions | % of Sales to Non-US Cards<br>5 | SSL Certificate Issuer<br>https://letsencrypt.org/ | SSL Certificate Number<br>▮ |
|---|---|---|---|
| ☐ Gateway Vendor  ☐ Base Commerce  ■ Other:<br>USAePay | VAR Sheet Required?<br>■ Yes  ☐ No | VAR Sheet Email To: | Website IP Address:<br>▮ |
| Applicant Owns Web Domain and Content<br>■ Yes  ☐ No | Shopping Cart Vendor<br>Nexio | Web Host Vendor<br>- | Temp Login Credentials, if necessary<br>- |

### POS QUESTIONNAIRE

| POS Vendor Name | POS Make | POS Model |
|---|---|---|
| POS Vendor Contact Name | POS Version | POS Type |
| POS Vendor Contact Phone | Gateway or Encryption Software Name | Gateway or Encryption Software Version |

| Model Type | Quantity | Implementation<br>☐ New  ☐ Reprogram | Connection Type<br>☐ Ethernet  ☐ Dial Up | Billing<br>☐ Merchant  ☐ Partner | Ship to Address<br>Ship to Location |
|---|---|---|---|---|---|

### MAIL ORDER / TELEPHONE ORDER (MOTO) QUESTIONNAIRE

| Processing Method: ☐ Key Entered Terminal  ■ Virtual Terminal / Gateway | Virtual Terminal / Gateway: ☐ Base Commerce  ■ Other: usaepay |
|---|---|
| Upon processing, order forms obtained by mail or telephone are:<br>☐ Destroyed  ☐ Retained | Software or method used to retain customer information:<br>nexio |
| MA L ORDER ONLY: Outbound marketing solicitation is best described as:<br>☐ Catalog  ☐ Envelope  ☐ Print Ad  ☐ Postcards  ■ Other na | TELEPHONE ORDER ONLY: Applicant confirms NO UNSOLICITED OUTBOUND<br>TELEMARKETING IS CONDUCTED: ☐ Yes  ■ No |

### COMPLETE THIS SECTION IF PROCESSING IS LESS THAN 75% CARD-PRESENT TRANSACTIONS:

What percentage of sales are to:  Business Consumers 10 %  Individual Consumers 90 %

Method of Marketing:  ☐ Newspaper / Magazine  ☐ Television / Radio  ■ Internet  ☐ Direct Mail, Brochure and/or Catalog  ☐ Outbound Telemarketing Sales

Other:

Percentage of products sold via:  Telephone Orders 25 %   Mail / Fax Orders _____ %   Internet Orders 75 %   Other _____ %

Who processes the order?  ■ Merchant  ☐ Fulfillment Center  ☐ Other _____

Who enters credit card information into the processing system?  ■ Merchant  ☐ Fulfillment Center  ☐ Consumer  ☐ Other _____

If credit card payment information is taken over the internet, is payment channel encrypted by SSL or better?  ■ Yes  ☐ No

If Merchant is an e-commerce Merchant, is a Merchant Certificate utilized?  ■ Yes  ☐ No   If Yes, please provide the following:

Certificate Number _____   Certificate Issuer _____   Exp Date _____

Is certificate  ☐ Individual  ☐ Shared

Do you own the product / inventory?  ■ Yes  ☐ No   Is the product stored at your business?  ■ Yes  ☐ No   If No, where is it stored? _____

After charge authorization, how long until product ships? 5 days   Who ships the product?  ■ Merchant  ☐ Fulfillment Center

Product shipped by:  ☐ US Mail  ■ Other: digital _____   Delivery receipt requested? ■ Yes  ☐ No

DocuSign Envelope ID: 8C578EB7-1CCE-4CA1-8CF8-914316D1DAEB

## DATA SECURITY STANDARD COMPLIANCE

Security Policies and Procedures and completing an Annual Self-Assessment Questionnaire. For Internet merchants, this can include recurring Security Scans and other measures. For their own protection, Base Commerce requires its Merchants to participate in a PCI Support Program, including $100,000 in Data Breach Insurance protection. To learn more about the value, features, and benefits of this program, please visit  https://www.basecommerce.com/pci. ALL ENTITIES accepting Visa, MasterCard, Discover, or American Express transactions must complete a Payment Card Industry Data Security Standard Self-Assessment Questionnaire and evaluation by the Acquirer in order to determine the applicable data security requirements for each entity and confirm that Merchant's card terminals, PIN pads, software, website, methods of accepting cards, and management and storage of Cardholder data are compliant with industry requirements.

## VISA, MASTERCARD, DISCOVER NETWORK, AND AMERICAN EXPRESS CARD ACCEPTANCE

Pass-through Plus (PTP) rates and fees are based on standard Interchange categories, plus the Discount and Fees stated here. 1) Designate specific card brands or network types only. 2) Denotes services, programs, equipment, and American Express OptBlue program fees, which are provided by Processor and/or Processor's Contractors and not by Merchant Bank; Merchant Bank has no responsibility or liability therefor. 3) Chargeback processing and retrieval fees are subject to change at the sole discretion of Processor or Merchant Bank. B N Sponsorship fees may apply if the Merchant account is designated as high risk in nature. BIN fees compensate Sponsor Bank for assumption of additional risk associated with this type of account. Merchant will be notified within their activation email if a BIN fee will apply and this fee will be disclosed on your Merchant statement. Please note that for each and every month wherein a chargeback to net sales ratio of any Merchant account is greater than 1% (One Percent), a penalty non-compliance fee of 0.60% (six tenths of one percent) of gross sales shall apply for that month and this fee shall appear as a line item on your Merchant statement.

## ACH AGREEMENT

☒  Merchant wishes to originate ACH (Automated Clearing House) debit and/or credit items as a form of payment for goods or services or to facilitate funds transfer utilizing ACH PROCESSOR. Merchant has received and read the ACH (Automated Clearing House) Processing Agreement. By signing Merchant Acceptance, Signatures, and Guarantor Signatures below, Merchant agrees to be bound by the terms and conditions of the ACH Processing Agreement. The terms and conditions of the ACH Processing Agreement are incorporated herein by this reference, and constitute part of the entire Merchant Card Processing Agreement. Furthermore, Merchant authorizes ACH PROCESSOR to debit and/or credit the bank account indicated herein with respect to the receipt of settled funds, returned items, and/or ACH Fees. Signer represents and warrants that he or she is an officer or representative of Merchant and that he or she is duly authorized to enter into this Merchant Card Processing Agreement on Merchant's behalf. CLIENT MAY VIEW AND DOWNLOAD A COPY OF THE ACH PROCESSING AGREEMENT TERMS AND CONDITIONS AThttps://www.basecommerce.com/docs/ach-terms-and-conditions-v5.8.19.pdf

## MERCHANT ACCEPTANCE, SIGNATURES, AND GUARANTOR SIGNATURES

For the purpose of this application, "Processor" is Base Commerce, having its business address at 5555 E. Washington Street, Suite 300, Phoenix, AZ 85034 who can be contacted at 1 (800) 848-5826 and "Bank" is Fresno First Bank, 7690 N. Palm Avenue, Fresno, CA 93711, 559-439-0200 (Capitalized terms not defined in herein have the meanings set forth below in the Terms and Conditions).

Agreement Signature By signing below, each of the Merchant and Guarantor(s) (1) certifies, under penalty of perjury, that all information and documents submitted with this Application are true and complet e; (2) authorizes Bank, Processor, and their respective agents to verify any of the information given, including credit references, and to obtain individual and/or business credit reports, including requesting reports from consumer reporting agencies on persons signing below as a principal or owner of Merchant or as a Guarantor (if such person asks Bank whether or not a consumer report was requested, Bank will disclose if such a request was made. If Bank received a consumer report, Bank will give such person the name and address of the agency that furnished it); (3) acknowledges that they have reviewed and retained a copy of the Merchant Card Processing Agreement, which follows this Application, including the Continuing Guaranty ("Guaranty") contained within the Application, Special Services Addendum and the CNP Addendum, and the CNP Addendum, and the Merchant Use and Disclosure of B N Information Addendum (each, an "Addendum"), each of which documents is incorporated herein by this reference and are collective referred to herein as the "Agreement," including the Continuing Guaranty section thereof (to which reference is made in the "Guaranty" set forth below in this Application) and agrees to be bound by and perform in accordance with all provisions, terms and conditions of the Agreement, the Guaranty, and each such Addendum; (4) agrees to be bound by and perform in accordance with all terms, conditions, and provisions of any Merchant Card Processing Agreement  Terms and Conditions between any Merchant Affiliate of Merchant, Processor and its agents, and Bank ("Merchant Affiliate Agreement"), regardless of whether such Merchant Affiliate Agreement currently exists or is executed, amended, or supplemented at some future date; (5) agrees that Processor and its agents and Bank may rely upon copies or facsimiles of this Application bearing Merchant's and Guarantor(s)'s signatures, or on copies or facsimiles of other documents bearing Merchant's or Guarantor(s)'s signatures, and that any such copies or facsimiles shall be treated for all purposes as originals of the Application or other document; and (6) certifies that Merchant does not and will not provide, offer, or facilitat e gambling services, including offering or facilitating internet gambling services, or establishing quasi-cash, credits, or monetary value of any type that may be used to conduct gambling.

If Merchant is a corporation, limited liability company, or partnership, the individual(s) executing this Merchant Application represent, warrant, acknowledge, and agree that he or she has the requisite legal power and authority to complete this Merchant Application on behalf of Merchant and to make and provide the acknowledgments, authorizations, and agreements set forth herein on behalf of Merchant and individually and to bind Merchant to the terms of this Agreement, as may be amended from time to time.     By executing this Agreement, Merchant further represents, warrants, acknowledges, and agrees (i) the information contained in this Merchant Application is provided for the purpose of obtaining, or maintaining, a merchant account for Merchant with the Bank, and Bank and Processor will rely on the information provided herein in its approval process and in setting the applicable discount rate, approved average ticket, and approved monthly Card volume; (ii) Bank and Processor are authorized to investigate, either through their own agents or through credit bureaus/agencies, the credit of Merchant and each person listed on this Merchant Application; (iii) Bank and Processor will determine all rates, fees, and charges and notify Merchant of the approved fees and by Merchant's submission and acceptance of Merchant's first settled transaction, Merchant agrees to pay such fees in accordance with the terms of this Agreement; (iv) the Agreement will not take effect until Merchant has been approved by Bank and Processor and a merchant identification number ("MID") has been issued to Merchant; and (v) Merchant and the undersigned have received, read, and understood the Agreement, and Merchant agrees to be bound by the terms of the Agreement. Merchant acknowledges that this Agreement is being submitted to Bank, as the member bank of the Card Networks, and Processor is also a party to this Agreement. Merchant acknowledges that Processor will rely on the representations and warranties set forth in this Agreement, and unless otherwise speci fied or prohibited by the Network Rules or Law, Processor will have certain rights under this Merchant Application and Agreement.

Review, Download, and Save a copy of the Merchant Card Processing Agreement at https://www.basecommerce.com/docs/fresno/merchant-agreement-v3 08.19.pdf

For American Express OptBlue, applicable terms and conditions are contained in the Merchant Operating Guide found at https://www.basecommerce.com/optblue

The undersigned acknowledges that Bank (i) does not sponsor Processor into the American Express or Diner's Club or Carte Blanche or JCB Network, (ii) is not providing or agreeing to provide Merchant any services hereunder with respect to American Express or Diner's Club (except only as set forth in the Merchant Card Processing Agreement with regard to certain transactions made with Diner's International Cards which also carry the MasterCard mark and are processed as MasterCard transactions) or Carte Blanche or JCB Network Card transactions, and has no responsibility or liability therefor, and (iii) does not determine or approve or agree upon any fees, charges, pricing, or any other terms and conditions, relating to American Express or Diner's Club (except as noted above, for certain transactions processed as MasterCard transactions) or Carte Blanche or JCB Network Card transactions. If American Express is selected above, by signing below, Merchant represents that the information provided on the Application is complete and accurate and Merchant authorizes Processor to share transaction and Merchant data with American Express  Travel Related Services Company, Inc ("American Express"), and Merchant authorizes American Express to verify the information on this Application and to receive and exchange information about Merchant, including, requesting reports from consumer reporting agencies. If Merchant asks American Express whether or not a consumer report was requested, American Express will tell Merchant, and if American Express received a report, American Express will give Merchant the name and address of the agency that furnished it. Merchant agrees that American Express may utilize the information obtained in the Merchant Application in regard to Card marketing and administrative purpos      es. Merchant expressly authorizes Processor to submit transactions to, and receive settlement from, American Express on behalf of Merchant. Merchant understands that by accepting the American Express card for the purchase of goods and/or services, Merchant agrees to be bound by the Merchant Card Processing Agreement and the OptBlue Merchant Operating Guide. Merchant acknowledges that Processor may convert Merchant to a direct party relationship with American Express if Merchant is not eligible for American Express acceptance through the processor program.

If you have questions or concerns in regard to the terms and conditions of this Merchant Application and Merchant Card Processing Agreement, email us at info@basecommerce. com, or contact us at (800) 848-5826 at prior to signing.

| Signature | *Jeff Bishop* 49778BD5343C4A4 | Printed Name Jeff Bishop | Title CEO | 9/23/2020 |
| Owner / Officer Signature | *Jason Bond* F90CC87D8E494C5 | Owner / Officer Printed Name Jason Bond | Title Vice President | 9/23/2020 |

Attachment A          PX 47, 4687

DocuSign Envelope ID: 8C578EB7-1CCE-4CA1-8CF8-914316D1DAEB

| PERSONAL GUARANTY |
|---|

CONTINU NG PERSONAL GUARANTY PROVISION ("GUARANTY") - PERSONAL GUARANTOR  The undersigned Guarantor(s), individually and severally, guarantee the full and faithful performance and payment by the Merchant (identified above in the portion of this Application which precedes this Guaranty) of each and all of Merchant's duties and obligations to Merchant Bank and Processor, as provided in Section 25 of the Merchant Card Processing Agreement, which Merchant Card Processing Agreement, and this Application and the Addendums mentioned above, are incorporated into this Guaranty by this reference. **Merchant applications from churches, charities, and non-profit organizations do not require that the applicant provide the personal guaranty by.

| | Signature *Jeff Bishop* | **Printed Name** Jeff Bishop | **Title** CEO | | 9/23/2020 |
|---|---|---|---|---|---|
| **Guarantor/Owner/Officer Signature** *Jason Bond* | | **Add'l Guarantor/Owner/Officer Name** Jason Bond | **Title** Vice President | | 9/23/2020 |

| FOR INTERNAL USE ONLY |
|---|

| Acceptance by Processor | Date | Acceptance by Merchant Bank | Date |
|---|---|---|---|
| | | | |

| CERTIFICATION OF BENEFICIAL OWNER(S) |
|---|

To help the government fight financial crime, Federal regulation requires certain financial institutions to obtain, verify, and record information about the beneficial owners of legal entity customers. Legal entities can be abused to disguise involvement in terrorist financing, money laundering, tax evasion, corruption, fraud, and other financial crimes. Requiring the disclosure of key individuals who own or control a legal entity (i.e., the beneficial owners) helps law enforcement investigate and prosecute these crimes.

By signing the Application, I attest that I have accurately provided the name, address, date of birth, and Social Security Number (SSN) for the follwing individuals (i.e. the **beneficial owners**):

  i.   Each individual, if any, who owns directly or indirectly, twenty-five (25) percent or more of the equity interests of the legal entity customer (e.g., each natural person that owns twenty-five (25) percent or more of the shares of a corporation); **and**

  ii.  An individual with significant responsibility for managing the legal entity customer (e.g., a Chief Executive Officer, Chief Financial Officer, Chief Operating Officer, Managing Member, General Partner, President, Vice President, or Treasurer).

The number of individuals that satisfy this definition of "beneficial owners" may vary. Under section (i.), depending on the factual circumstances, up to four individuals (but as few as zero) may need to be identified. Regardless of the number of individuals identified under section (i.), you must provide the identifying information of one individual under section (ii.)  t is possible that in some circumstances, the same individual must be identified under both sections (e.g., the President of Acme, Inc    who also holds a 30% equity interest). Thus, a completed form will contain the identifying information of at least one individual (under section (ii.)), and up to five individuals (ie., one individual under section (ii.) and four twenty-five (25) percent equity holders under section (i.))

| | Signature *Jeff Bishop* | **Printed Name** Jeff Bishop | **Title** CEO | | 9/23/2020 |
|---|---|---|---|---|---|

| CIP / LIST OF BENEFICIAL OWNERS HOLDING AN INTEREST OF 25% OR GREATER |
|---|

| Owner / Officer Name Jason Bond | Social Security Number | Date of Birth |
|---|---|---|
| % of Equity Ownership 25 | Residence Address          Durham, NH 03824 | |
| Owner / Officer Name | Social Security Number | Date of Birth |
| % of Equity Ownership | Residence Address | |
| Owner / Officer Name | Social Security Number | Date of Birth |
| % of Equity Ownership | Residence Address | |
| Owner / Officer Name | Social Security Number | Date of Birth |
| % of Equity Ownership | Residence Address | |

| IDENTIFY A SINGLE INDIVIDUAL WHO HAS A SIGNIFICANT RESPONSIBILITY TO CONTROL A MERCHANT (i.e. CEO, CFO, COO, Managing Member, General Partner, President, Vice President, or Treasurer) |
|---|

| Name Jeff Bishop | Title CEO |
|---|---|
| Social Security Number | Date of Birth |
| Address          Lee, NH 03861 | |

**From:**     Tyler Heugly < ███ @smbglobalpayments.com>
**Sent:**     Tue, 22 Sep 2020 23:45:00 -0600
**Subject:**  Fwd: Raging Bull Processing and Bank Statements and Updated Financials
**To:**       Jordan Reyna <jordan@ragingbull.com>

Jordan,

Please see Moe's email below. Need a response on this at your earliest convenience tomorrow. Please send over what Moe needs as well.

Thanks,


---------- Forwarded message ---------
From: **Moe Tassoudji** < ███ @nuvei.com>
Date: Tue, Sep 22, 2020 at 11:41 PM
Subject: RE: Raging Bull Processing and Bank Statements and Updated Financials
To: Tyler Heugly < ███ @smbglobalpayments.com>

Tyler

Please see enclosed processing summary for RB. Can you please forward me the activity summary for August and MTD for September, so we can assess the Chargeback trend on this account.  It is going to be very hard to get ESQ's concurrence

for the increase based on the chargeback stats. Do you know the reason for this spike? Has the merchant received their VMP notification?

**Attachment A**          **PX 47, 4689**

| MONTH | SALES | VOLUME | REFUND | VOLUME | Refund % | Refund$% | CHARGEBACK | VOLUME |
|---|---|---|---|---|---|---|---|---|
| Mar-20 | 14250 | $ 6,605,614.31 | 779 | $ 403,282.67 | 5.47% | 6.11% | 82 | $ 74,915.92 |

**Attachment A**          **PX 47, 4691**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Apr-20 | 27318 | $ 10,293,937.72 | 1324 | $ 853,897.37 | 4.85% | 8.30% | 85 | $ 63,865.00 |
| May-20 | 30570 | $ 14,464,751.45 | 1853 | $ 1,113,093.66 | 6.06% | 7.70% | 189 | $ 159,865.98 |
| Jun-20 | 30180 | $ 15,757,422.42 | 2016 | $ 1,299,972.22 | 6.68% | 8.25% | 351 | $ 280,870.79 |
| Jul-20 | 31991 | $ 11,807,383.79 | 2430 | $ 1,219,318.33 | 7.60% | 10.33% | 486 | $ 378,605.92 |

Thanks

Moe

**Attachment A**          **PX 47, 4692**



**Moe Tassoudji**

VP, Strategic Accounts Group

**T** (877) 462-7486 Ext: 4738



This e-mail message and any
attachments are strictly

**Attachment A**      **PX 47, 4693**

confidential and may contain
information that is exempt from
disclosure under applicable law. If
you are not

the intended recipient, please
immediately notify the sender by
return e-mail and then delete the e-
mail. If you are not  he intended
recipient, you are hereby notified
that any dissemination, distribution
or copying of this communication
is strictly prohibited.

**From:** Tyler Heugly <tyler@smbglobalpayments.com>

**Sent:** Monday, September 21, 2020 4:09 PM

**To:** Jordan Reyna <jordan@ragingbull.com>; Moe Tassoudji <mtassoudji@nuvei.com>; Patrick Gardner <pgardner@nuvei.com>

**Subject:** Raging Bull Processing and Bank Statements and Updated Financials

[External email -- Courriel externe]

**Attachment A**        **PX 47, 4694**

Jordan,

Thank you for hopping on a quick call with me. Per our discussion, we need the following:

1. Last 6 months worth of Processing Statements from Stripe

2. Last 6 months worth. of Business Bank Statements

**Attachment A**                    **PX 47, 4695**

3. Updated 2020 P&L and Balance Sheet

Please get these over to us today/tonight if at all possible.

Thanks,

--

**Attachment A**                                    **PX 47, 4696**



Tyler
Heugly

**Attachment A**          **PX 47, 4697**

President

**SMB
Global**

m:        801-882-5217

w:        www.smbglobalpayments.com  e: tyler@smbglobalpayments.com

--
--

**Tyler Heugly**

President
**SMB Global**
m: ██████████
w: www.smbglobalpayments.com  e: tyler@smbglobalpayments.com

**Sent:**    Fri, 11 Sep 2020 22:39:05 +0000
**From:**    Stripe Support <support@stripe.com>
**To:**      Jeff <accounting@ragingbull.com>
**Cc:**      Jordan Reyna <jordan@ragingbull.com>, "jason pell (jpell@ragingbull.com)" <jpell@ragingbull.com>
**Subject:** Raging Bull (acct_███████████) Termination Notice



Hi,

We've identified that your business is in violation of the Stripe Services Agreement, section a.7.b ("Restricted Businesses and Activities") as described here: https://stripe.com/restricted-businesses. These restrictions are firm with no flexibility, therefore we will be required to offboard Raging Bull from Stripe by September 16, 2020. After this period of time, you will not be able to process new charges on your account. In addition, because of the elevated dispute risk on your account, we'll need to place your full account balance on reserve for the next 120 days. During this time, the reserved funds will help cover any disputes or refunds on your account. The remaining balance will transfer to your bank account at the end of this period[1].

We understand you may have to transition to a different payment processor. We are happy to coordinate a call on Monday to answer questions about the offboarding process. Please note that this decision has already been finalized at Stripe, so the call will be focused on offboarding.

Thanks,

Stripe

[1] https://dashboard.stripe.com/transfers

Stripe, 510 Townsend Street, San Francisco, CA 94103

**Sent:**     Tue, 31 Mar 2020 08:11:50 -0600
**Subject:**  Current Processor Efforts
**From:**     Jordan Reyna <jordan@ragingbull.com>
**To:**       "Michael J. LaCrosse" <mlacrosse@blumshapiro.com>

Michael,
Hope you are well. I wanted to download some info on our current processing efforts and see where a proper hand off to you would be good.

Right now, I'm in talks with Balanced Processing, SMB Global and Nuvei. They have all been in process the past few months with a lot of back and forth on merchant and credit card requirements for them to do business with us.

To be 100% honest with you, each of them have been challenging to work with and we haven't even started processing with them. This was all to have a backup processor in case Stripe decided to part ways for any reason. You may have some better options with a smoother onboarding. If so, I am glad to hand off that effort to you if you find that in the company's best interest. I'd be glad to help wherever possible. If you'd like to schedule a quick call sometime, I'd be glad to hop on with you.

Reach out if you have any questions.

Take care,

Jordan Reyna
RagingBull.com

**Attachment A**          **PX 47, 4702**

**Sent:**       Wed, 18 Dec 2019 08:21:30 -0700
**Subject:**    Re: RagingBull.com Pend
**From:**       Jordan Reyna <jordan@ragingbull.com>
**To:**         Patrick Gardner <pgardner@nuvei.com>
**Cc:**         Tyler Heugly <tyler@smbglobalpayments.com>, Moe Tassoudji <mtassoudji@nuvei.com>

image006.png
image007.png
image008.png
image009.png
image010.png
image011.png
image012.png
image013.png
image014.png
image015.png

1. The URL on the merchant application, www.ragingbull.com, does not appear to have any products available for purchase. Please clarify what URL payments will be accepted at through this merchant account. **Yes, the purchased will be made via our app or RagingBull.com (app.ragingbull.com). All purchases are made in that area for all services we offer.**

2. Please provide documentation that reflects how the MOTO payments are accepted (phone script, service contract, and/or payment authorization form). **I will have the Head of Telesales get this over to me. He should have to me by end of day today!**

3. Please confirm what average monthly volume the merchant expects to process through this account. **To start, we expect $2-3 million, but would eventually double that we move the majority of our processing over to you over time/as things progress.**

4. The DBA address provided appears to be for a PO Box at a postal center. Please provide an updated DBA address.
As a small biz, we do primarily operate out of a P.O. Box for mailing. However, we are in the process of changing our HQ to our Baltimore offices which came online three months ago. The address is below but this is not the offical HQ yet, but we are in the process of amending our operating agreement to make this the new HQ.
11311 MCCORMICK ROAD
HUNT VALLEY, MD. 21031
5. Please note that the merchants website(s) will be reviewed with FTC marketing guidelines in mind. Per the FTCs advertising requirements, it is considered unfair or deceptive to make earnings claims to a prospective purchaser unless the following items are included in a business marketing: a. Reasonable basis for the claim, including written materials that substantiate the claim b. An earnings claim statement, which includes the title EARNINGS CLAIM STATEMENT REQUIRED BY LAW in capital, bold type letters c. The name of the person making the earnings claim and the date of the claim d. The beginning and ending date when the represented earnings were achieved e. The number and percentage of all persons who purchased the business opportunity who achieved at least the stated level of earnings --- **We collect proof from client testimonials before we utilize them as marketing materials. We aim to maintain the highest ethical standards and that has served our business well and separated us from the competition.**

6. It appears that before August, the merchant processing a substantial amount through their Bank of America merchant account. Please clarify the merchants current relationship with Bank of America. Will they be opening a third merchant account through Nuvei or transferring volume? We were working with Bank of America from the launch of RagingBull through the end of last year. **Their small business online features were very limited and not user friendly. We ultimately decided to move banks over to Chase and have been much more pleased with their support, feature rich small biz dashboard and timelines of implementation. Bank of America was a positive relationship, but we simply outgrew what they had to offer.**

On Tue, Dec 17, 2019 at 7:19 PM Jordan Reyna <jordan@ragingbull.com> wrote:

I'll get this over to your team first thing tomorrow morning. Thanks for the patience.

On Mon, Dec 16, 2019 at 3:56 PM Patrick Gardner <pgardner@nuvei.com> wrote:

Hey Jordan, I hope all is well. Just wanted to follow up here and see how these items are coming along. Thanks



**Patrick Gardner**

AVP, Business Development

**Attachment A            PX 47, 4703**



T (877) 462-7486 Ext: 4743

This e-mail message and any attachments are strictly confidential and may contain information  hat is exempt from disclosure under applicable law. If you are not the intended recipient, please immediately notify the sender by return e-mail and then delete the e-mail. If you are not the intended recipient, you are hereby notified that any dissemination, distribu ion or copying of this communication is strictly prohibited.

**From:** Patrick Gardner
**Sent:** Wednesday, December 11, 2019 1:54 PM
**To:** Jordan Reyna <jordan@ragingbull.com>; Tyler Heugly <tyler@smbglobalpayments.com>
**Cc:** Moe Tassoudji <mtassoudji@nuvei.com>
**Subject:** RE: RagingBull.com Pend

Ok no problem, we will be ready when you have them. Thanks Jordan!



**Patrick Gardner**

AVP, Business Development

T (877) 462-7486 Ext: 4743



This e-mail message and any attachments are strictly confidential and may contain information  hat is exempt from disclosure under applicable law. If you are not the intended recipient, please immediately notify the sender by return e-mail and then delete the e-mail. If you are not the intended recipient, you are hereby notified that any dissemination, distribu ion or copying of this communication is strictly prohibited.

**From:** Jordan Reyna <jordan@ragingbull.com>
**Sent:** Wednesday, December 11, 2019 1:37 PM
**To:** Tyler Heugly <tyler@smbglobalpayments.com>
**Cc:** Patrick Gardner <pgardner@nuvei.com>
**Subject:** Re: RagingBull.com Pend

[External email -- Courriel externe]

I was planning on having the remaining items today but it may get pushed to tomorrow due to some other urgent items. Top priority later this evening/tmo morn. Thanks for the time on the call earlier today guys.

**Attachment A**          **PX 47, 4704**

On Wed, Dec 11, 2019 at 10:43 AM Tyler Heugly <tyler@smbglobalpayments.com> wrote:

Jordan,

We just received the below from the bank:

Hello, In order to proceed with an Underwriting review, please address each of the following items. Please let me know if a phone call would be preferred to discuss any of these items. Underwriting can be reached directly at 877-462-7486 ext. 4745.

1. The URL on the merchant application, www.ragingbull.com, does not appear to have any products available for purchase. Please clarify what URL payments will be accepted at through this merchant account.

2. Please provide documentation that reflects how the MOTO payments are accepted (phone script, service contract, and/or payment authorization form).

3. Please confirm what average monthly volume the merchant expects to process through this account.

4. The DBA address provided appears to be for a PO Box at a postal center. Please provide an updated DBA address.

5. Please note that the merchants website(s) will be reviewed with FTC marketing guidelines in mind. Per the FTCs advertising requirements, it is considered unfair or deceptive to make earnings claims to a prospective purchaser unless the following items are included in a business marketing: a. Reasonable basis for the claim, including written materials that substantiate the claim b. An earnings claim statement, which includes the title EARNINGS CLAIM STATEMENT REQUIRED BY LAW in capital, bold type letters c. The name of the person making the earnings claim and the date of the claim d. The beginning and ending date when the represented earnings were achieved e. The number and percentage of all persons who purchased the business opportunity who achieved at least the stated level of earnings

6. It appears that before August, the merchant processing a substantial amount through their Bank of America merchant account. Please clarify the merchants current relationship with Bank of America. Will they be opening a third merchant account through Nuvei or transferring volume?

If you could help with answering the above at your earliest convenience, that would be greatly appreciated.

--

Tyler Heugly

President

**Attachment A**                    **PX 47, 4705**

**SMB Global**

m: 801-882-5217

w: www.smbglobalpayments.com   e: tyler@smbglobalpayments.com

**Sent:**     Mon, 7 Jan 2019 10:01:48 -0700
**Subject:**  Re: Discover Entitlement - Raging Bull
**From:**     Jordan Reyna <jordan@ragingbull.com>
**To:**       "Glass, Tyler" <Tyler.Glass@firstdata.com>

Thanks Tyler. Wish they would give us more clarity on their "external research." A conversation could make all the difference and I think there's a lot of confusion on both ends. I think it would be fair for them to hear us out before giving us the death penalty.

On Mon, Jan 7, 2019 at 9:52 AM Glass, Tyler <Tyler.Glass@firstdata.com> wrote:

> Hello Jordan,
>
>
> Wanted to get back to you regarding the Discover entitlement. Please see below response:
>
>
> "Hi Tyler, despite BAMS' commitment to work with the client, Discover has advised that they will not allow the merchant to re-enable Discover, based on their business model and external research relating to cardholder complaints."
>
>
> Sorry we could not help regain the Discover entitlement.
>
>
> On another note, the account is scheduled to be reviewed again. Can you please send FYE 2017 statements when they are available?
>
>
> Thank you,
>
> Tyler Glass
>
>
>
> **From:** Jordan Reyna <jordan@ragingbull.com>
> **Sent:** Friday, December 21, 2018 9:32 AM
> **To:** Glass, Tyler <Tyler.Glass@firstdata.com>
> **Subject:** Re: Discover Entitlement - Raging Bull
>
>
> Great, thanks for the update.
>
>
> On Fri, Dec 21, 2018 at 7:24 AM Glass, Tyler <Tyler.Glass@firstdata.com> wrote:
>
>> Jordan,

**Attachment A**          **PX 47, 4707**

Saw your email and I've forwarded it to Michael and requested he advise on next steps.


Stay tuned. I will let you know what I hear.


Thank you,

Tyler Glass


**From:** Jordan Reyna <jordan@ragingbull.com>
**Sent:** Friday, December 21, 2018 9:15 AM
**To:** Glass, Tyler <Tyler.Glass@firstdata.com>
**Subject:** Re: Discover Entitlement - Raging Bull


Sent you Verifi's written reply confirming they do not have access to client credit card information. Please keep me posted as we'd like to get Discover back up and running and hopefully Michael Park can help us with some connections there.


Jordan


On Wed, Dec 19, 2018 at 7:15 AM Jordan Reyna <jordan@ragingbull.com> wrote:

Tyler,


We no longer have the letter unfortunately. However, thanks for the info regarding the Verifi request. They do not see credit card information. I will get a written letter verifying this. Hopefully this is the only hoop we have to jump through to move this forward. Thanks for your efforts on this so far.


Jordan


On Wed, Dec 19, 2018 at 7:03 AM Glass, Tyler <Tyler.Glass@firstdata.com> wrote:

Hello Jordan,


Please see below response regarding getting Discover entitlement back.


"Tyler, we would also need to confirm that the services performed by Verifi do not include access to full cardholder data.   Currently , Verifi is not registered as a TPSP with BAMS.    So, we would

**Attachment A                PX 47, 4708**

need confirmation from Verifi in writing that they do not perform services for any BAMS merchant that includes access to full cardholder data.   Otherwise, we would need to get them registered as a TPSP.

We would need to confirm this information and get a comfort level from BAMS Credit, before we could reach out to Discover to request a re-enablement of the acceptance."

See if you can get the above and I will pass it along.

Also, were you able to get a copy of that letter from Bank of America?

Thank you,

Tyler Glass

The information in this message may be proprietary and/or confidential, and protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify First Data immediately by replying to this message and deleting it from your computer.

**Attachment A**                    **PX 47, 4709**

**From:**    "Glass, Tyler" <Tyler.Glass@firstdata.com>
**To:**    Jordan Reyna <jordan@ragingbull.com>, Anthony Bell <anthony@ragingbull.com>
**Subject:**    RE: Wednesday's Call
**Sent:**    Tue, 22 May 2018 14:19:46 +0000

Jordan,

The main talking point of the call will be chargebacks. The levels have been extremely high for a long time. The analyst who preceded me, Rosemarie, was even working with you guys to reduce chargebacks, but levels remain high. Additionally, processing volume has significantly increased this year which inherently increases our risk.

Another conversation point on our call will be the products offered. A lot of our risk is derived from prepayment risk. That is, the time it takes between when a credit card is charged and when the products/services are rendered. I know Raging Bull offers annual subscriptions so we believe our risk figure may even be understated.

Any information you can provide pertaining to the above points would be great.

Thank you,
Tyler Glass

**From:** Jordan Reyna [mailto:jordan@ragingbull.com]
**Sent:** Tuesday, May 22, 2018 9:50 AM
**To:** Glass, Tyler; Anthony Bell
**Subject:** Re: Wednesday's Call

Also, please let us know if there is any information you would like for us to have on hand for the meeting so that we can make it the most beneficial/productive as possible. We'd like to get an idea of what will be discuss as we are flying blind a bit going into the meeting.

Jordan

On Tue, May 22, 2018 at 8:48 AM, Jordan Reyna <jordan@ragingbull.com> wrote:
Yes, sounds good. Thanks.

On Tue, May 22, 2018 at 8:46 AM, Glass, Tyler <Tyler.Glass@firstdata.com> wrote:
It appears there are some conflicts on our end for 12:30pm. Can you do 1:30pm?

Thank you,
Tyler Glass

**From:** Jordan Reyna [mailto:jordan@ragingbull.com]
**Sent:** Tuesday, May 22, 2018 9:30 AM
**To:** Glass, Tyler
**Subject:** Wednesday's Call

I need to push back 30 mins to 12:30pm EST.

Jordan

The information in this message may be proprietary and/or confidential, and protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify First Data immediately by replying to this message and deleting it from your computer.

**Attachment A**          **PX 47, 4710**

**From:** "Glass, Tyler" <Tyler.Glass@firstdata.com>
**To:** "Cedeno, Jessica (BAMS)" <Jessica.Cedeno@bankofamericamerchant.com>, Jordan Reyna <jordan@ragingbull.com>
**Subject:** RE: Re: Bank of America Merchant
**Sent:** Tue, 30 Jan 2018 16:59:06 +0000

Hello Jordan,

How have you been doing with reducing chargebacks? With the increase in processing volume, it seems that chargebacks have increased as well.

I want to stress the importance of reducing chargeback levels. Visa and Mastercard reserve the right to charge fines to merchant's with excessive chargebacks, which depending on the circumstances can be very large.

Chargeback levels for the last few months are as follows:
- Oct 2017 – 7.18% by volume, 5.66% by count
- Nov 2017 – 4.72% by volume, 3.19% by count
- Dec 2017 – 1.64% by volume, 2.24% by count
- Jan 2018 – 3.64% by volume, 4.57% by count

Clearly, chargeback levels looked to be showing a positive trend from October to December. However, January levels shot up again. Aside from breaking out each entity into its own processing MID, what is the company doing to reduce these chargeback levels?

Thank you,

**Tyler Glass**
Credit Risk Manager
131 Varick Street
New York, NY 10013
Office: (212) 515-1052
Email: Tyler.Glass@firstdata.com



---

**From:** Cedeno, Jessica (BAMS)
**Sent:** Monday, January 22, 2018 1:28 PM
**To:** Jordan Reyna
**Cc:** Glass, Tyler
**Subject:** RE: Re: Bank of America Merchant

*Hi Jordan,*

*Happy New Year! Jordan, you should be able to retrieve chargeback details from Client Line. If you were to contact Client Line Support directly they'll gladly assist you with setting up your notifications, preferences as well as create a report(s) of most occurrences including chargebacks. Here's that number 1.800.285.3978 . Thank you for your ongoing commitment to address our chargeback concerns. As always, please feel free to contact me as needed. Have a GREAT day!*

Jessica Cedeno
Client Relations Field Manager
Bank of America Merchant Services
Mobile:  817.691.3213| Fax: 402.916.2171
jessica.cedeno@bankofamericamerchant.com



Customer Service: 800.430.7161 | Clover Support: 855.853.8340

**Attachment A**          **PX 47, 4711**

The information in this message may be proprietary and/or confidential, and protected from disclosure.  If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify Bank of America Merchant Services immediately by replying to this message and deleting it from your computer.

**From:** Jordan Reyna [mailto:jordan@ragingbull.com]
**Sent:** Monday, January 22, 2018 11:09 AM
**To:** Glass, Tyler
**Cc:** Cedeno, Jessica (BAMS)
**Subject:** Re: Re: Bank of America Merchant

I have access to clientline since that's who we handle chargebacks through but from what I see I am not sure on how to find out which ones we've won or lost.

Jessica - Do you have any insights on how I can figure this out? I'd like to start finding that information and using it for my reporting. Also, we are in the process of engaging chargebacks911 to help with our chargeback rate. We are still in the prelim stages but are committed to getting that rate down.

On Mon, Jan 22, 2018 at 10:57 AM, Glass, Tyler <Tyler.Glass@firstdata.com> wrote:
Jordan,

I can see a brief overview of chargeback activity but all merchants should have access to more detailed chargeback media on Client Line. Do you have access to it?

If not, I believe Jessica can help with that. Unfortunately, I do not deal too much with Client Line?

Thank you,

**Tyler Glass**
Credit Risk Manager
131 Varick Street
New York, NY 10013
Office: (212) 515-1052
Email: Tyler.Glass@firstdata.com

**First Data**™

**From:** Jordan Reyna [mailto:jordan@ragingbull.com]
**Sent:** Monday, January 22, 2018 11:05 AM
**To:** Glass, Tyler
**Subject:** Fwd: Re: Bank of America Merchant

Tyler,
Are you my contact regarding chargebacks? I need to find out which chargebacks we've won and lost recently.
If you aren't the guy, can you point me in the right direction?

Jordan

---------- Forwarded message ----------
From: **Jordan Reyna** <jordan@ragingbull.com>
Date: Wed, Jan 17, 2018 at 11:41 AM
Subject: Re: Re: Bank of America Merchant
To: "Glass, Tyler" <Tyler.Glass@firstdata.com>

Thanks. Sent!

**Attachment A**          **PX 47, 4712**

Jordan

On Wed, Jan 17, 2018 at 11:36 AM, Glass, Tyler <Tyler.Glass@firstdata.com> wrote:

     

This is a secure message.

Click here within 14 days of receiving the message on a mobile
device. After 14 days, please download the attachment to read
this email.

More Info

**First Data Privacy Statement**: For support e-mail: administration@e-customer-service.com
Protecting the privacy of users of the secure mail system is important to us. Our Online
Privacy Statement is designed to inform you about our collection and use of personal
information on this web site. To read more about the First Data's Privacy statement click on
the URL http://www.firstdata.com/en_us/privacy.html

Secured by Proofpoint Encryption, Copyright © 2009-2017 Proofpoint, Inc. All rights
reserved.

The information in this message may be proprietary and/or confidential, and protected from disclosure. If the reader of
this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended
recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly
prohibited. If you have received this communication in error, please notify First Data immediately by replying to this
message and deleting it from your computer.

**Attachment A**          **PX 47, 4713**

# RagingBull Elite Subscription Refund Inquiry

| | |
|---|---|
| **From:** | Tanzer <tanzer@ragingbull.com> |
| **To:** | ████████████ |
| **Bcc:** | kaylas@ragingbull.com |
| **Date:** | Thu, 03 Dec 2020 11:26:04 -0500 |

Good morning ██ ,

My name is Tanzer, and we recently spoke on the phone regarding your $4,999 payment for RagingBull Elite. Attached to this email is the order form you used to purchase the product, with the refund policy next to it.

In your case this was a one-time purchase, and the order form requires you to check the terms and conditions before you go to check out. Our services physically will not let you check out without first confirming that you read and understood those terms. The terms on RagingBull Elite are attached in the picture that I have sent to you, and I circled the refund policy.

As an agent, my job is to:

1) Make sure you understand how to navigate our dashboard and systems
2) Uphold our policies that we have all across our website and app for situations exactly like this

The purpose of RagingBull Elite is to learn the trading principles of each one of our gurus so they can be applied to enhance your own trading. With Elite you have access to every program we offer here at RagingBull, as well as every program we will offer in 2021. You have access to the chatrooms, the hundreds of hours of training material, the portfolios, the watchlists, the scanners, and the trade alerts. These materials are posted all across your member dashboard, most of which are accessible 24/7.

RagingBull has a strict no refund policy which you may view on the Terms and Conditions on the Order Form you purchased your initial subscription from, as well as on this page: https://ragingbull.com/refund-policy/

I would however be more than happy to walk you through each and every part of your service. I'd be glad to schedule another call with you directly about Elite and together we'll work through the program so you can utilize every part of the service. I look forward to connecting.

**Attachment A**      **PX 47, 4714**



**4 Place Your Order**

RAGING BULL ELITE

| Raging Bull Elite Subscription | $4,999 |
|---|---|

**Total: $4,999**

Your subscription will automatically renew at $9,999 **every year** unless you cancel your subscription PRIOR to your renewal date. Your first renewal will take place on the **16th of January 2022**.

SECURE PAYMENT — Safe & Secure SSL Encrypted
VISA MasterCard DISCOVER AMERICAN EXPRESS

**PLACE MY ORDER**

**Terms & Conditions**

RagingBull.com, LLC owns and maintains the website known as RagingBull.com ("the Site") subject to your compliance with the terms and conditions set forth in this Agreement. By using the Site, you agree to be bound by these terms and conditions. If you do not agree to these terms and conditions, please do not use the Site.

You must be at least 18 years of age to use the Site. If you are not at

Refund Policy: Raging Bull Elite delivers time-sensitive training and education, and thus a strict "no refund" policy is in place. If you wish to stop your service, please cancel prior to the renewal date listed on your profile to avoid renewing. Cancelling on/after the renewal date is considered a late cancellation and does not constitute a refund

**Card**

| Holder | Type | | Number |
|---|---|---|---|
| ████ | | | ████ |

**IDs**

| Merchant | Auth Code | Process Method | ACH Detail |
|---|---|---|---|
| ████ | ████ | 12 | MjAtOTA2NzYtMjAxMTl3LTkyMzUwMDYyNzAwMjM0 Nw== |

**Dates**

| Transaction | | Capture | | Created |
|---|---|---|---|---|
| ████ | | | | |

All the best,

Tanzer
VIP Customer Support
RagingBull
833-265-1270



Virus-free. www.avast.com

**Attachment A**      **PX 47, 4715**

# MasterCard Chargeback Program

| | |
|---|---|
| **From:** | erickn@stripe.com |
| **To:** | kaylas@ragingbull.com, Austin <austin@ragingbull.com>, nickrousseau@stripe.com |
| **Date:** | Fri, 28 Aug 2020 19:07:55 -0400 |

Hello Austin and Kayla,

I just received a notice from our Risk team that Raging Bull did hit the MasterCard Chargeback program for the month of July. Below is the official communication regarding that information.

If you have questions on this item or want to sync with me early next week to brainstorm some quick actions we can take (outside of your ongoing projects to influence this), I'd be happy to setup a session and work through this with you.

We are also available to answer any questions over E-Mail if that is more convenient for you!

Thanks,

Erick

██████████

RagingBull.com, LLC was identified this month for MasterCard's excessive chargeback program (ECM). MasterCard's program is such that your August 2020 identification is based on chargebacks from the previous month, July 2020, over charges from the month before that, June 2020.**THRESHOLDS AND FINES**
Here are your account's figures passed on to us from Mastercard for July 2020:
- July 2020 Chargeback count: 140
- June 2020 Sales count: 8531
- CB/S ratio: 1.64%  You can track your dispute activity in the Analytics section of your
Dashboard: https://dashboard.stripe.com/dashboard**THRESHOLDS AND FINES**
Businesses are placed in the Excessive program when they've met or exceeded 100 chargebacks AND a 1.5% or more chargeback-to-sales count ratio for two consecutive months. Fines can be assessed immediately at these levels. For more details about ECM, please refer to our monitoring programs guide here: https://stripe.com/docs/disputes/monitoring-programs#ecm**NEXT STEPS**
If we have recently been in communication regarding your ECM status, if you have an active remediation plan ongoing, or if your account is no longer active with Stripe, no immediate action is required. Otherwise, expect a follow up note from a chargeback specialist shortly. We will also notify you when we receive the official fine amount.Please do reach out if you have any questions in the meantime-we're always happy to help.
.

**Attachment A**          **PX 47, 4716**

**Sent:** Tue, 20 Oct 2020 11:00:00 -0700 (PDT)
**From:** Adept Payments <echosign@echosign.com>
**To:** Tyler Hester <tyler@adeptpayments.com>, Jeff Bishop <jeff@ragingbull.com>
**Subject:** You signed: "RagingBull Application"

RagingBull Application - signed.pdf





You're done signing
**RagingBull Application**
**Open agreement**

Attached is the final agreement for your reference. You can also **open it online** to review its activity history.

Need your own documents signed? Adobe Sign can help save you time. Learn more.

To ensure that you continue receiving our emails, please add echosign@echosign.com to your address book or safe list.

© 2020 Adobe. All rights reserved.

**Attachment A**          **PX 47, 4717**



# MERCHANT APPLICATION

1 City Blvd W.
18th Floor - 1850
Orange, CA 92868
Phone: 800-770-5520

Please carefully complete the Merchant Application and read the Terms and Conditions and other additional form, as applicable to you, which together make up the Merchant Processing Agreement. The Terms and Conditions can be viewed at www.ec-processing.com/tandc. Please retain the website to review the Terms and Conditions as well a copy of the Merchant Application for your records. Electronic Commerce, LLC ("EC") and Member Bank's acceptance of this Application will be made in a manner authorized in the Agreements and/or Terms and Conditions.

**Sales Representative Name**

| A | d | e | p | t |  | P | a | y | m | e | n | t | s |  |  |  |  |  |  |  |  |  |  |  |  |  |  |

## SECTION 1   BUSINESS INFORMATION

| Business Legal Name: (Must Match Business Tax Return Name) | Contact Name: |
|---|---|
| RagingBull.com LLC | Jordan Reyna |

| Business Name (DBA):        ☐ Check here if Corporate Headquarters | Email address (REQUIRED): | Website: |
|---|---|---|
| RagingBull.com | jordan@ragingbull.com | ragingbull.com |

| Business Location Address: | Business Billing Address: (if different from location address) |
|---|---|
| 11311 McCormick Rd STE 200 | 62 Calef HWY #233 |

| City, State, Zip: | City, State, Zip: |
|---|---|
| Hunt Valley, MD, 21031 | Lee, NH, 03861 |

| Phone #: | Fax #: | Phone #: | Fax #: |
|---|---|---|---|
| 833-265-1270 |  | 833-265-1270 |  |

## SECTION 2   OWNERSHIP INFORMATION - SEE ADDENDUM FOR ANY INDIVIDUAL WITH 25% OR MORE EQUITY INTEREST

Ownership:   ☐ Sole Prop.   ☐ Corporation   ☐ Partnership   ☑ LLC   ☐ Government (Federal/State/Local)   ☐ Tax-Exempt Organization (501C)

| Owner/Officer/Principal Name: | % Ownership | Title: |
|---|---|---|
| Jeff Bishop | 65 | CEO |

## SECTION 3   BUSINESS PROFILE AND ASSUMPTIONS

| ☐ Ownership or Legal Entity Change | Business Established Date: | Gross Sales (CASH/CHECK/CREDIT) | Annual Volume (VISA/MC) | Annual Volume (DISCOVER®) | Annual Volume (AMERICAN EXPRESS®) | Average Ticket (Visa/MC/DS/AX) | Highest Ticket (Visa/MC/DS/AX) |
|---|---|---|---|---|---|---|---|
|  | 2013 | 180,000,000 | 140,000,000 | 20,000,000 | 20,000,000 | 750 | 10,000 |

| ☐ Add'l. Location   1st Location MID: | ☐ Never Accepted Cards   ☐ Processor Change –   How many processing statements are you including? |
|---|---|

| % Card Present / Swipe | % Card Not Present / Moto | % Internet | Total = 100% | % B2B | % International Cards |
|---|---|---|---|---|---|
|  | 20 | 80 |  |  |  |

| Detailed Description of Products/Services Sold: Educational Services | REFUND POLICY (Check One): ☐ No Refund   ☐ Merchandise exchange only |
|---|---|
| Seasonal Sales: ☐ Yes ☑ No   Closed Months: ☐ JAN ☐ FEB ☐ MAR ☐ APR ☐ MAY ☐ JUN  ☐ JUL ☐ AUG ☐ SEP ☐ OCT ☐ NOV ☐ DEC | ☑ Refund in 30 days or less   ☐ Other: (explain) |

## SECTION 4   IMPORTANT DISCLOSURES        Merchant acknowledges receipt of EC's documentation, which includes Merchant Processing Agreement Version 08/17.

**IMPORTANT MEMBER BANK RESPONSIBILITIES:** (1) A Visa Member is the only entity approved to extend acceptance of Visa products directly to a Merchant. (2) A Visa Member must be a principal (signer) to the Merchant Agreement. (3) The Visa Member is responsible for educating Merchants on pertinent Visa Operating Regulations with which Merchants must comply. (4) The Visa Member is responsible for and must provide settlement funds to the Merchant. (5) The Visa Member is responsible for all funds held in reserve that are derived from settlement.

**IMPORTANT MERCHANT RESPONSIBILITIES:** (1) Ensure compliance with cardholder data security and storage requirements. (2) Maintain fraud and chargeback below thresholds. (3) Review and understand the terms of the Merchant Agreement. (4) Comply with Operating Regulations. The responsibilities listed above do not supersede the terms of the Merchant Agreement and are provided to ensure the Merchant understands some important obligations of each party and that the Visa Member (Acquirer) is the ultimate authority should the Merchant have any problems.

**MEMBER BANK:**
Commercial Bank of California
19752 MacArthur Blvd
Ste.100 Irvine, CA 92612
(800)770-5520

| Signature (Signature may be evidenced by facsimile) | Name (please print) | Date |
|---|---|---|
| X Jeff Bishop   Jeff Bishop (Oct 20, 2020 13:59 EDT) | Jeff Bishop | 10/20/2020 |

## SECTION 5   PATRIOT ACT AND BACKGROUND AUTHORIZATION

To help the government fight the funding of terrorism and money laundering activities, the USA Patriot Act requires all financial institutions to obtain, verify and record information that identifies each person (including business entities) who opens an account. What this means for you: When you open an account, we will ask for your name, physical address, date of birth, taxpayer identification number and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents. The undersigned entity(ies) and individuals hereby unconditionally authorize EC and Member Bank or its agents to (i) investigate the information and references contained herein, and to obtain additional information about the Merchant and such individual(s) by pulling credit bureau and criminal background checks on the Merchant and its principals, including obtaining reports from consumer reporting agencies on individuals signing below as an owner or general partner of Merchant, or providing their Social Security Number on the Application (if such individual asks EC or Member Bank whether or not a consumer report was requested, EC and/or Member Bank will tell such individual and, if EC and/or Member Bank received a report, EC and/or Member Bank will give the individual the name and address of the agency that furnished it) and (ii) update such information periodically throughout the terms of service of the Merchant Agreement. By providing your SSN and signing this Application, you, in your individual capacity, unconditionally authorize EC and Member Bank to obtain your consumer credit report.

**Attachment A**                    **PX 47, 4718**

Merchant's Business Name (DBA): _RagingBull.com_

---

### SECTION 6    COMPLIANCE INFORMATION

Do you (MERCHANT) have a ☑ 3rd party software application/gateway or ☐ POS Terminal    If Third Party Software/Gateway, is it PCI DSS and/or PA DSS compliant? ☑ YES   ☐ NO

Third Party Software/Gateway Vendor Name and Address:

Nexio

| Have you been notified by Visa, Mastercard or Discover® that you have been the victim of a compromise of cardholder data?<br>☐ YES   ☑ NO<br>If yes, have you completed remediation?<br>☐ YES   ☑ NO | Do you store cardholder data?<br><br>Paper: ☐ YES   Electronic: ☐ YES<br>☑ NO   ☑ NO | Does software store cardholder information?<br><br>☑ YES<br>☐ NO |

All merchants must comply with the Payment Card Industry Data Security Standard ("PCI DSS"). Merchant is required to maintain the security of card data and to comply with the requirements of the PCI DSS. Merchant must validate its compliance with the PCI DSS and provide EC with evidence that Merchant (a) has successfully completed a Self Assessment Questionnaire and scan(s), if applicable, and (b) is compliant with the PCI DSS. EC has created the PCI Program (the "PCI Program") to assist merchants in securing card data and complying with PCI DSS. You are enrolled in the PCI Program and the applicable fees will be assessed in accordance with the terms of the PCI Program. Information and the applicable fees on the PCI Program are set forth in Section 15 of the Terms and Conditions. All gateway or other vendor supplied software must be compliant with the Payment Application Data Security Standard rules ("PA DSS").

### SECTION 7   MERCHANT BANK ACCOUNT INFORMATION

In accordance with the terms set out in the Merchant Processing Agreement, funds will be transferred to/from the account as delineated. If nothing is checked, MERCHANT will receive Premium ACH. ACH can be performed by the following entities: Member Bank, EC or any authorized agent of EC.
*Subject to special approval  PLEASE SUPPLY VOIDED PREPRINTED CHECK OR BANK LETTER FOR EACH ACCOUNT REQUESTED

Deposit Time Frame:    ☐ Premium ACH   ☑ Next Day Funding*          Deposit Type:   ☑ Combined      ☐ By Batch

Any Account Number indicated must be a valid account number for handling ACH deposits and withdrawals.          If more than one account is indicated, account #1 will be used for Sales.

Routing #1  ██████████████████████████████████████

Account #1  ██████████████████████████████████████

Routing #2  | | | | | | | | | |    DDA Account Type:   ☐ Checking      ☐ Savings

Account #2  | | | | | | | | | |                              *If a second account, this account is used for fees/debits.

### SECTION 8    ACH AUTHORIZATION- EQUIPMENT FEE / SET-UP FEE

I hereby authorize EC to initiate a one-time debit entry to my account indicated below at the depository financial institution named below, hereinafter called DEPOSITORY, and to debit the same to such account for the amount and frequency as indicated below.

I acknowledge that the origination of ACH transactions to my account must comply with the provisions of U.S. law.

| Depository Bank Name | Branch (City, State, Zip Code) |
| --- | --- |
| Routing Number | Checking Account Number |
| Frequency (One-Time, Weekly, Monthly) | ACH Debit Description |
| Amount | Effective Date(MM/DD/YYYY) |

The specified debit to my account authorized herein may only post on or after the EFFECTIVE DATE listed above-and in no event may the debit transaction post to my account prior to said date. This authorization is to remain in full force until Electronic Commerce, LLC has received written notification from me of termination in such time and in such manner as to afford Electronic Commerce, LLC and DEPOSITORY a reasonable opportunity to act. I may only revoke this authorization by contacting Electronic Commerce,LLC directly at the address and phone number listed within my Merchant Agreement.

| Merchant Name | Date |
| --- | --- |
| Merchant Signature | Sales Representative Name |

### SECTION 9    UNLIMITED PERSONAL GUARANTY AND CREDIT INFORMATION AUTHORIZATION

PERSONAL GUARANTEE: In exchange for EC's and Member Bank's acceptance of this Merchant Agreement, each person signing immediately below this paragraph (each such person, a "Guarantor") is signing this Merchant Agreement as a Guarantor of the Merchant identified on page 1 of the Merchant Agreement. By signing below, each Guarantor (i) accepts and agrees to be bound by the Continuing Unlimited Guaranty provisions starting in Section 11 of the Terms and Conditions, and (ii) acknowledges and confirms that, prior to signing, he or she received and read those Continuing Guaranty provisions. Each Guarantor individually authorizes EC, Member Bank, and/or either of their representatives to conduct an initial and ongoing comprehensive credit investigation of him or her by utilizing a third-party credit reporting agency and/or to obtain a criminal background check. Guarantor acknowledges receipt of the Merchant Agreement, which is incorporated herein by reference as if fully set forth herein and has reviewed the Continuing Unlimited Guaranty provisions therein.

| Authorized Signature of Guarantor: (Do Not Include Title)<br>_Jeff Bishop_ | Name of Guarantor: (Do Not Include Title)<br><br>Jeff Bishop | ████████ | Date of Signature:<br><br>10/20/2020 |

**Attachment A**                    **PX 47, 4719**

Merchant's Business Name (DBA): RagingBull.com

## SECTION 10   SCHEDULE OF FEES

**APPLICATION TYPE:** ☐ Tiered⁵  ☐ Flat Rate⁴  ☐ Cash Discount ⁴  **DISCOUNT:** ☐ Daily
☐ Interchange³  ☑ ERR ⁵⁵  ☑ Monthly

**BUSINESS TYPE :**  ☐ Retail  ☐ Restaurant  ☐ Mail/Telephone Order⁴⁴  ☑ Internet⁴⁴

| VISA/MASTERCARD/DISCOVER (V/MC/D) Rate Category | Discount Rate | Transaction Fee | AMERICAN EXPRESS Rate Category⁴ | | Discount Rate | Transaction Fee |
|---|---|---|---|---|---|---|
| Base | 2.95 % | $ 0.15 | Base | | 2.95 % | $ 0.15 |
| Mid-Qualified¹ | 1.00 % | $ 0.15 | Mid-Qualified¹ | | 1.00 % | $ 0.15 |
| Non-Qualified² | 1.49 % | $ 0.15 | Non-Qualified² | | 1.49 % | $ 0.15 |
| Base Debit NON PIN-Based³ (Same as V/MC/D Discount Rate if left blank) | % | $ | Additional Services | Quantity | Setup Fee | Monthly Hosting Fee | Total Monthly Fee |
| | | | Wireless Service⁵⁵ | | $ | $ | $ |
| Debit PIN-Based⁴ / EBT⁶   FNS #: | % | $ | EC Pay | | $ | $ | $ |
| Other Volume / Item Fees | % | $ | Virtual Terminal | | $ | $ | $ |

Transaction fees are charged for all transaction authorization attempts. ¹Added to Base discount rate and transaction fee. ²Added to applicable Mid-Qualified discount rate and transaction fee. ³ Transaction fee is in addition to the applicable Base, Mid -Qualified, or Non Qualified transaction fee, regardless of transaction qualification. ⁴Debit Network interchange, sponsorship, switch and gateway fee, and any miscellaneous fees will be assessed or allocated to Merchant at the then current rate determined in accordance with EC's standard operating procedures. ⁵EBT See Schedule I of the Terms and Conditions for additional information.

⁵ TIERED MERCHANTS ONLY- Commercial card transactions that do not meet the requirements to qualify for preferred rates will be assessed an additional fee of 0.50% (0.0050) on such sales volume. ⁵⁵Regulated applies to all Base NON Pin debit transactions from issuers that are not exempt pursuant to 12 CFR Part 235, on Pin debit transactions from exempt issuers under the Base V/MC/D discount rate. If a rate is identified but the Regulated Only box is not checked then this rate applies to all Base Non Pin debit transactions ⁵⁵ If the Retail Key Entered/MOTO/Internet/Dial Pay Business type is selected, Rewards cards will be charged a discount rate plus 0.11% (0.0011) on all transactions. EC's processing fees and Card Brand interchange fees are included in the discount rate. All other Card Brand fees will be assessed or allocated to the Merchant at the then current rate determined in accordance with EC's standard operating procedures.

* INTERCHANGE MERCHANTS ONLY- CARD ORGANIZATION FEES:
Visa, MasterCard, American Express and Discover interchange fees, assessments and other fees will be assessed or allocated to Merchant at the then current rate determined in accordance with EC's standard operating procedures. All other Card Brand fees will be assessed or allocated to the Merchant at the standard rates determined in accordance with EC's standard operating procedures.

⁴ FLAT RATE MERCHANTS ONLY - CARD ORGANIZATION FEES:
All fees are included in discount rate and transaction fee above except fees related to international transactions, unless otherwise noted.

⁵⁵ERR MERCHANTS ONLY - CARD ORGANIZATION FEES:
Card transactions that do not meet the requirements to qualify for qualified rates will be downgraded and assessed additional fees on such sales volume deemed as Non-Qualified, Visa, MasterCard, Discover, and American Express interchange fees, and assessments. All other Card Brand fees will be assessed or allocated to Merchant at the standard rates determined in accordance with EC's standard operating procedures.

⁴AMERICAN EXPRESS  -  Existing American Express Number ☐ YES  ☐ NO   If Yes, Existing American Express Account Number:
Annual Estimated or Actual American Express Volume <$1,000,000.00 ☐ YES  ☐NO   If No, Merchant is not eligible for the American Express Program.

## SECTION 11   OCCURRENCE FEES

| | | | | | Merchant Advantage Program |
|---|---|---|---|---|---|
| Account On File | 10.00 / month | Retrieval/Chargeback⁵ | 25.00 / each | | ☐ Standard MAP-$149.00 / year  ☐ Ultimate MAP- $324.00 / year |
| Batch Fee | 0.10 / each | Monthly Minimum | 25.00 / month | | |
| Voice Auth/DialPay | 1.75 / each | Early Deconversion Fee† | 500 / each | PCI Fee†† | ☑ $90.00 / year (excludes breach insurance)  ☐ $165.00 / year (includes $50,000 breach insurance) |
| Debit Access | 10.00 / month | CardBrand Usage | 0.04% & $0.04 / each | | |
| Annual Fee 99.00 | Charged In Month of DEC | 1099-K Reporting is provided at No Charge | | EC Interface Reporting | ☐ Yes  ☑ No |

Return ACH(s) are subject to a $25.00 fee for each occurrence. ⁵Applies to Visa and MasterCard as Discover and American Express are defaulted to $25.00 each. †The initial term of the Merchant Agreement is 3 years and automatically renews for additional 2-year periods. If this Agreement is terminated prior to the expiration of the initial term or any renewal term, you will be subject to an Early Deconversion Fee ("EDF") in accordance with the terms of Section 7.B. of the Terms and Conditions. If limited by state law, these fees may be modified in accordance with Section 7.B. of the Terms and Conditions. ††See PCI Program of the Terms and Conditions for additional information. ⁵⁵ See Schedule II of the Terms and Conditions for additional information. Enrolled in electronic statements unless otherwise requested. You are responsible for any collection fees, legal fees, and other expenses we incur or may assess in recovering your delinquent amounts.

## SECTION 12   MERCHANT ACKNOWLEDGEMENTS AND SIGNATURE

Merchant agrees to and accepts the terms and conditions set forth in this Application and the Terms and Conditions which are incorporated herein by reference (GEN.0817) as if fully set forth herein (collectively, the "Merchant Agreement") and acknowledges receipt of all parts of the Merchant Agreement. Merchant acknowledges that no handwritten changes have been made to the printed text of the Merchant Agreement and that the parties may produce and rely on a copy or electronically stored image of the Merchant Agreement for all legal purposes. Merchant represents, warrants and certifies to EC and Member Bank that it has reviewed all 4 pages of this Application, that all information provided herein is true, correct and complete and that EC and Member Bank may rely on the information contained in this Application, without further investigation, for all purposes. Merchant acknowledges and agrees that EC and Member Bank are in no way responsible or liable for the actions, inactions, performance or lack of performance of any third party provider of independent sales representative. Merchant represents that it has chosen for itself any services, equipment or third party selected in connection with the Merchant Agreement, and it has not relied on any promises, representations, warranties, or covenants of the independent sales representative, EC or others. Merchant acknowledges and agrees that the Merchant Agreement shall not be altered by any prior, contemporaneous or subsequent oral representations made by any party. Merchant further authorizes the release of Merchant information in accordance with the provisions of Section 10 of the Terms and Conditions.

IN WITNESS WHEREOF Merchant has caused this Agreement to be executed by its duly authorized representative effective in accordance with the terms of the Terms and Conditions. The Agreement shall be binding upon Merchant upon the earlier of Merchant's execution below or Merchant's first processed electronic transaction.

**MERCHANT**

| Signature (Signature may be evidenced by facsimile) | Name (please print) | Date |
|---|---|---|
| X *Jeff Bishop* | Jeff Bishop | 10/20/2020 |

**Attachment A**          **PX 47, 4720**

Merchant's Business Name (DBA): RagingBull.com

Opt 1 ☐ Opt 2 ☐ Opt 3 ☐ / B. Eligible? ☐ Yes

| SECTION 13   EQUIPMENT SETUP | |
|---|---|
| **REQUIRED INFORMATION** | **OPTIONAL INFORMATION** |

| REQUIRED INFORMATION | OPTIONAL INFORMATION |
|---|---|
| Merchant Email: (CLOVER/GATEWAY): | ☐ Pin Debit        ☐ Internal Pin Pad        ☐ External Pinpad |
| Terminal Type: | Pin Pad Type: |
| ☐ New Shipment        ☐ Reprogram - Serial #: | |
| ☐ Loaner Terminal (Premier Service Agreement)        ☐ Swap Terminal | ☐ EBT - Electronic Benefit Transfer (FNS#): |
| ☐ Online Gateway: | ☐ Tip Processing |
| ☐ Retail        ☐ Restaurant        ☐ Multi-Merchant | ☐ Tip in Transaction        ☐ Tip Adjust |
| ☐ Cash Discount % : (must be equal to discount rate) | |
| Terminal to Process Over:  ☐ IP   ☐ Dial   ☐ Cellular   ☐ WIFI | ☐ Password Protect: (when available) |
| Batch Type:  ☐ Auto   ☐ Manual | ☐ Sale        ☐ Void        ☐ Return |
| Auto Batch (In Military Time): | ☐ Batch        ☐ Reports |

| Ship To: ☐ Merchant  ☐ ISO | SHIPPING METHOD | NOTES |
|---|---|---|
| Name: | ☐ Priority Overnight | |
| Address: | ☐ Standard Overnight | |
| | ☐ 2-Day Express | |
| City:              State: | ☐ 3-Day Express | |
| Zip Code: | ☐ Ground | |
| Phone Number: | ☐ Local Pick-Up | |

Shipping Method cost varies based upon location and weight.

**Default of FedEx Ground shipped to merchant if no option is selected.

| BILLING METHOD | CREDIT CARD PAYMENT INFORMATION | | |
|---|---|---|---|
| ☐ Credit Card (2% Additional Fee Will Apply) | Card Holder Name | Billing Address | TOTAL $: |
| ☐ ACH on File (Section 8 Required) | Credit Card Number | City        State        Zip Code | |
| ☐ Lease Financing (Lease, D&A, DL, Check Required) | Exp. Date        Security Code | Authorized Signature | |

| SECTION 14   SITE INSPECTION INFORMATION | |
|---|---|

I represent and warrant that the information set forth in the application is true and accurate to the best of my knowledge. In addition, I hereby certify that (check which applies):

| | |
|---|---|
| ☑ I have physically inspected the business premises of the merchant at this address, personally confirmed the identity of the person listed in the Owner/Officer Information Section, and witnessed their signing of the Agreement. | **Business/Inventory/Shipments:** |
| | Does business appear as represented?                    ☑ YES  ☐ NO |
| | Is business open and operating?                             ☑ YES  ☐ NO |
| ☐ An EC approved third party site inspection vendor will supply inspection within 15 days of my signature below or I have informed EC that a site inspection is needed. | Is inventory sufficient for business type?                ☑ YES  ☐ NO |
| | Are goods and services delivered at the time of sale?  ☑ YES  ☐ NO |
| ☐ I have not physically inspected the business premises of the Merchant, but have verified the validity of the business using outside sources and confirmed the identity of the person listed under the Owner/Officer Information Section. | ☑ 1-4 days    ☐ 5-15 days |
| | ☐ 16-30 days    ☐ 30+ days: (Please Explain) |
| If Fulfillment House or 3rd party supplier is used, please complete the following: | Goods and services charged to credit card on:   ☑ Order  ☐ Shipment |
| 3rd Party Company Name, Contact Name, Address, and Phone # or Email Address: | Are good and services delivered:  ☑ Digitally  ☐ Physically  ☐ Both |
| | If goods are shipped, is a Fulfillment House used?   ☐ YES  ☑ NO |
| | Is Fulfillment House PCI DSS Compliant?        % of shipments by this vendor |
| | ☐ YES     ☐ NO |

| Location Type: | ☐ Retail Store Front  ☑ Office Building  ☐ Residence  ☐ Industrial Building  ☐ Trade Show  ☐ Mobile |
|---|---|
| Sales Organization: Adept Payments Inc | Sales Rep Signature: | Application Date: 10/20/2020 |

ECMA.0817   Electronic Commerce, LLC is a registered ISO/MSP of Commercial Bank of California, 19752 MacArthur Blvd, Suite 100, Irvine, CA, 92612

Page 4 of 4

**Attachment A**                              **PX 47, 4721**



## CERTIFICATION REGARDING BENEFICIAL OWNERS OF LEGAL ENTITY CUSTOMER

This form must be completed by the person opening a new account on behalf of a Legal Entity with certain U.S. financial institutions.

CERTIFICATION OF BENEFICIAL OWNER(S)
Persons opening an account on behalf of a legal entity must provide the following information:

A. Name and title of natural person opening account:

Jeff Bishop                                    CEO
_____    _____
NAME                                              TITLE

B. Name and address of legal entity for which the account is being opened:

RagingBull.com LLC
_____
BUSINESS LEGAL NAME

62 Calef HWY #233                         Lee                    NH
_____    _____    _____
ADDRESS                                         CITY                  STATE

C. The following information for each individual, if any, who, directly or indirectly, through any contract, arrangement, understanding, relationship or otherwise, owns 25 percent or more of the equity interests of the legal entity listed above:

**(If no individual meets this definition, please write ("Not Applicable") in each column. In lieu of a passport number, foreign persons may also provide an alien identification card number, or number and country of issuance of any other government-issued document evidencing nationality or residence and bearing a photograph or similar safeguard.

| NAME | DATE OF BIRTH (MM/DD/YY) | ADDRESS (STREET ADDRESS, CITY, STATE, ZIP) | FOR U.S. PERSONS: SSN FOR FOREIGN PERSONS : Passport Number and Country of Issuance, or other ID++ | OWNERSHIP PERCENTAGE | |
|---|---|---|---|---|---|
| Jeff Bishop | | | | 65 | % |
| Jason Bond | | | | 25 | % |
| | | | | | % |
| | | | | | % |

D. The following information for one individual with significant responsibility for managing the Legal Entity listed above (b), such as:

- An executive officer or senior manager (e.g., Chief Executive Officer, Chief Financial Officer, Chief Operating Officer, Managing Member, General Partner, President, Vice President, Treasurer); or

- Any other individual who regularly performs similar functions.
(If appropriate, an individual listed under section (c) above may also be listed in this section (d)).

| NAME | DATE OF BIRTH (MM/DD/YY) | ADDRESS( STREET ADDRESS, CITY, STATE, ZIP) | FOR U.S. PERSONS: SSN FOR FOREIGN PERSONS: PASSPORT NUMBER AND COUNTY OF ISSUANCE, OR OTHER ID++ |
|---|---|---|---|
| Jeff Bishop | | | |

Jeff Bishop
I,_____(name of natural **Person Opening Account**), hereby certify, to the best of my knowledge, that the information provided above is complete and correct.

*Jeff Bishop*
Jeff Bishop (Oct 20, 2020 13:05 EDT)          CEO                                    10/20/2020
_____    _____    _____
SIGNATURE                                     LEGAL ENTITY INDENTIFIER (OPTIONAL)    DATE

**Attachment A**                                    **PX 47, 4722**



# RESERVE ACKNOWLEDGEMENT AND ACCEPTANCE

MERCHANT LEGAL NAME: RagingBull.com LLC

MERCHANT DBA NAME: RagingBull.com                               DATE: 10/20/2020

Electronic Commerce has reviewed your application for a merchant account and has determined a reserve will be required based upon a mixture of the following criteria;

- Requested Annual Processing Volume
- Business Type
- Card Acceptance Method
- Financial Statements

- Principal FICO Score
- Time in Business
- Online Reputation
- Requested Average/High Ticket

An upfront reserve in the amount of $0 will be required immediately prior to approval of your merchant account. Reserves are collected upon each batch deposit at a rate of 10 % to your average monthly processing volume.

This reserve provision is in addition to the Merchant Processing Agreement and nothing herein in any way limits or reduces any of the rights set forth in the Merchant Processing Agreement.  Reserves are typically held for the term of the account and reviewed for release (180) days from termination or closure of the Merchant Processing Agreement or last monetary activity. All releases of reserves will be determined exclusively by Electronic Commerce based on several factors including but not limited to: account performance, closure reason, customer disputes, and length of time since closure. Reserve requirements may increase if monthly approved volume is increased.

Please sign and return this form to signify your understanding and acceptance of the terms and conditions stated in this letter.

## MERCHANT SIGNATURE:

| | | |
|---|---|---|
| Jeff Bishop | *Jeff Bishop*<br>Jeff Bishop (Oct.20, 2020 13:59 EDT) | 10/20/2020 |
| PRINTED NAME | SIGNATURE | DATE |

Processed by Electronic Commerce:  (ADMIN ONLY)

| | | |
|---|---|---|
| PRINTED NAME | SIGNATURE | DATE |

**Attachment A**          **PX 47, 4723**

# RagingBull Application

**Final Audit Report**                                           2020-10-20

| | |
|---|---|
| Created: | 2020-10-20 |
| By: | Tyler Hester (tyler@adeptpayments.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAApgxm8DzIsPiggWz22IEkTpseOwuPYwS |

## "RagingBull Application" History



Document created by Tyler Hester (tyler@adeptpayments.com)
2020-10-20 - 5:39:24 PM GMT- IP address: ███████

Document emailed to Jeff Bishop (jeff@ragingbull.com) for signature
2020-10-20 - 5:45:17 PM GMT

Email viewed by Jeff Bishop (jeff@ragingbull.com)
2020-10-20 - 5:56:54 PM GMT- IP address: ███████

Document e-signed by Jeff Bishop (jeff@ragingbull.com)
Signature Date: 2020-10-20 - 5:59:57 PM GMT - Time Source: server- IP address: ███████

Agreement completed.
2020-10-20 - 5:59:57 PM GMT

**Adobe Sign**

**Attachment A**                        **PX 47, 4724**

## Completed: "RagingBull Synovus Application"

| | |
|---|---|
| **From:** | Adept Payments Inc. <echosign@echosign.com> |
| **To:** | Jason Bond <jason@ragingbull.com>, Tyler Hester <tyler@adeptpayments.com>, Jeff Bishop <jeff@ragingbull.com> |
| **Date:** | Mon, 28 Sep 2020 18:59:01 -0400 |
| **Attachments:** | RagingBull Synovus Application - signed.pdf (1.79 MB) |





### All parties finished
**RagingBull Synovus Application**
**Open agreement**

Attached is the final agreement between:
- Adept Payments, Inc.
- Jeff Bishop
- Jason Bond

You can also **open it online** to review its activity history.

Need your own documents signed? Adobe Sign can help save you time. **Learn more.**

To ensure that you continue receiving our emails, please add echosign@echosign.com to your address book or safe list.

© 2020 Adobe. All rights reserved.

**Attachment A**          **PX 47, 4725**

# PRIORITY
PAYMENT SYSTEMS®

## MERCHANT PROCESSING APPLICATION AND AGREEMENT

| Relationship | | Association | |
|---|---|---|---|
| Sales Rep Name | Adept Payments | Application Date | 9/28/2020 |

Page 1 of 4

### 1. GENERAL INFORMATION | 2. BUSINESS LOCATION INFORMATION | 3. BUSINESS STRUCTURE

| Client's Business Name (Doing Business As) | Client's Corporate/Legal Name (Must match IRS income tax filing) | | |
|---|---|---|---|
| RagingBull | RagingBull.com LLC | | |

| Location Address | Corporate Address (If Different Than Location) | | |
|---|---|---|---|
| 11311 McCormick Rd STE 200 | 62 Calef HWY #233 | | |

| City | State | Zip | City | State | Zip |
|---|---|---|---|---|---|
| Hunt Valley | MD | 21031 | Lee | NH | 03861 |

| Location Phone | Location Fax | Contact Name | Contact Phone |
|---|---|---|---|
| 833-265-1270 | | Jordan Reyna | 972-533-1496 |

| Customer Service Phone | Prior Security Breach? | Business Email | D&B# |
|---|---|---|---|
| 833-265-1270 | ☐ Yes  ☑ No | jordan@ragingbull.com | |

| Business Website Address | Tax Type |
|---|---|
| ragingbull.com | LLC |

| Multiple locations? ☐ Yes ☑ No | If Yes, enter # of locations ▢ | Tax Filing Name |
|---|---|---|
| Additional location to existing MID | | RagingBull.com LLC |

| Send retrieval/chargeback requests to | Date Business Started | Length Current Ownership |
|---|---|---|
| ☑ Corporate Address   ☐ Location Address | 2013 | 7 Years |

| Send monthly merchant statements to | ☑ Corporate Address | ☐ Location Address | ☐ Do Not Mail |
|---|---|---|---|

☐ Sole Prop   ☐ Partnership   ☑ LLC/LLP   ☐ C Corp   ☐ S Corp   ☐ Govt. (Local/State/Federal)   ☐ 501c/Tax Ex.   State Filing: DE

☐ I certify that I am a foreign entity / nonresident alien. (If checked, please attach IRS Form W-8.)

NOTE: Failure to provide accurate information may result in a withholding of merchant funding per IRS regulations. (See Part IV, Section A.3 of your Program Guide for further information.)

### 4. OWNERS/PARTNERS/OFFICERS | 5. TRADE REFERENCE

| OWNER/PARTNER/OFFICER 1 | OWNER/PARTNER/OFFICER 2 | TRADE REFERENCE |
|---|---|---|

| Name | Name | Business Name |
|---|---|---|
| Jeff Bishop | Jason Bond | |

| Title | % Ownership | Title | % Ownership | Business Address |
|---|---|---|---|---|
| Owner | 65 | Vice President | 25 | |

| | | | | City | State | Zip |
|---|---|---|---|---|---|---|

Contact

Telephone

Prior Bankruptcies? ☐ Yes ☑ No
Business and/or Personal  Date Discharged

| Email Address | Email Address |
|---|---|
| jeff@ragingbull.com | jason@ragingbull.com |

Patriot Act Notice: To fight the funding of terrorism and money laundering, we are required to obtain, verify and record information that identifies each person (including business entities) who opens an account. To allow us to identify you, we will ask for your name, physical address, date of birth and tax payer ID and may ask for other information, such as your driver's license or other documents.

### 6. NATURE OF BUSINESS | 7. TRANSACTION INFORMATION (see Section 9 American Express)

Business Type:  ☐ Retail   ☐ Restaurant   ☑ Internet   ☐ Government   ☐ Lodging   ☐ Supermarket   ☐ Mail/Telephone Order
☐ Petroleum   ☐ Utilities   ☐ Healthcare   ☐ Education   ☐ QSR   ☐ Charity/Non Profit   ☐ B2B   ☐ Other

| Requested Monthly Payment Card Volume | 15,000,000 | Card Present Swiped | | Sales to Consumers | 100 |
|---|---|---|---|---|---|
| Requested Average Payment Card Ticket | 750 | Card Present Not Swiped | | Sales to Business | |
| Requested Highest Payment Card Ticket | 10,000 | MOTO | | Sales to Govt. | |
| Seasonal Merchant? ☐ Yes ☑ No (circle peak months if yes) | | Internet (Ecommerce) | 100 | Days to Delivery | 1 |

J  F  M  A  M  J  J  A  S  O  N  D

| Previous Processor | Stripe |
|---|---|
| Reason For Leaving | Service |

| Description of products or services sold |
|---|
| Educational Services |

| Describe your return policy |
|---|
| Full Refund |

### 8. BANKING ACCOUNT INFORMATION

| Deposit Bank Name | ACH Method: |
|---|---|
| Eastern Bank | ☑ Combined   ☐ Individual |
| Fees Bank Name | |
| Eastern Bank | |

PPS0719

Priority Payment Systems is a registered ISO/MSP of Synovus Bank, Columbus, GA

PPS0719

**Attachment A**          **PX 47, 4726**

## 9. SERVICE ACCEPTANCE AND FEE SCHEDULE

Page 2 of 4

Select all card types you wish to accept (See Section 1.9 of the Program Guide for details regarding limited acceptance)

[✓] Visa Credit  [✓] Visa Non-PIN Debit  [✓] MasterCard Credit  [✓] MasterCard Non-PIN Debit  [✓] Discover Network  [✓] American Express  [ ] PIN Debit

**Select VI/MC/Discover Network Discount Plan:** (Based on Gross Sales Volume)

[✓] Tiered Basic   [ ] Flat Rate

[ ] Pass Through I/C

**Select PinDebit Discount Plan:**

— Pin Debit Network Fee Pass-through + ——— % Markup

**Discount Payment Method:** ——— Daily  X Monthly

**Assessments:** ——— Included  X Bill Separately
(If Pass Through I/C - Assessments MUST Bill Separately)

**Brand Fees:** ——— Included  X Bill Separately
(If Pass Through I/C - Brand Fees MUST Bill Separately)

### Discount Fees

| QUALIFICATION | DISC. FEE (%) | PER ITEM ($) | QUALIFICATION | DISC. FEE (%) | PER ITEM ($) | QUALIFICATION | DISC. FEE (%) | PER ITEM ($) |
|---|---|---|---|---|---|---|---|---|
| **MasterCard** | | | **Visa** | | | **Discover Network** | | |
| Credit Qual | 2.85 | 0.10 | Credit Qual | 2.85 | 0.10 | Credit Qual | 2.85 | 0.10 |
| Credit Mid-Qual | 3.25 | 0.10 | Credit Mid-Qual | 3.25 | 0.10 | Credit Mid-Qual | 3.25 | 0.10 |
| Credit Non-Qual | 3.85 | 0.10 | Credit Non-Qual | 3.85 | 0.10 | Credit Non-Qual | 3.85 | 0.10 |
| CheckCard Qual | 2.85 | 0.10 | CheckCard Qual | 2.85 | 0.10 | CheckCard Qual | 2.85 | 0.10 |
| CheckCard Mid-Qual | 3.25 | 0.10 | CheckCard Mid-Qual | 3.25 | 0.10 | CheckCard Mid-Qual | 3.25 | 0.10 |
| CheckCard Non-Qual | 3.85 | 0.10 | CheckCard Non-Qual | 3.85 | 0.10 | CheckCard Non-Qual | 3.85 | 0.10 |
| Credit Pass Through IC | | | Credit Pass Through IC | | | Credit Pass Through IC | | |
| CheckCard Pass Through IC | | | CheckCard Pass Through IC | | | CheckCard Pass Through IC | | |
| ERR | | | ERR | | | ERR | | |
| Voyager | | | All applicable Association fees will be passed through to the merchant at the applicable costs assigned by the Association. Fees include, but are not limited to, Visa's APF, Misuse of Authorization Fee, Zero Floor Limit Fee, Acquirer ISA Fee, and MasterCard's NABU Fee, Acquirer Support Fee, Cross Border Fee, and Discover IPF, ISF, Data Usage fee, Amex Net Work Fee et al. | | | | | |

### American Express

| | | | | | **OptBlue℠** | | **Amex Direct** | |
|---|---|---|---|---|---|---|---|---|
| QUALIFICATION | DISC. FEE (%) | PER ITEM ($) | OptBlue℠ Monthly Card Volume | | 1,000,000 | | | |
| Credit Qual | 2.85 | 0.10 | OptBlue℠ Average Card Ticket | | 750 | | ——— Order New | ——— Use Existing |
| Credit Mid-Qual | 3.25 | 0.10 | OptBlue℠ Highest Card Ticket | | 10,000 | | CAP # | |
| Credit Non-Qual | 3.85 | 0.10 | SE # | | | | Existing SE # | |
| Credit Pass Through IC | | | Select OptBlue℠ Discount Plan: | | | | Monthly flat fee of $7.95 or Discount Rate may apply | |
| ERR | | | [✓] Tiered Basic  [ ] Flat Rate | | | | | |
| | | | [ ] Pass Through I/C | | | | | |
| | | | [ ] Enhanced Recover Reduction (ERR) | | | | | |

Fee applies to all American Express Programs

**[fine print paragraph]**

[ ] By checking this box, you opt out of receiving future commercial marketing communications from American Express.

Note that you may continue to receive marketing communications while American Express updates its records to reflect your choice. Opting out of commercial marketing communications will not preclude you from receiving important transactional or relationship messages from American Express.

### Authorization Fees / Monthly Fees

| Authorization Fees | | | | Monthly Fees | | |
|---|---|---|---|---|---|---|
| Visa/MC/Discover Network | 0.10 | Electronic AVS | 0.10 | Monthly Minimum | 25.00 | Industry Compliance 0 |
| Amex/Fleet/Other | 0.10 | Voice Authorization | 1.00 | Wireless Fee | 0 | Monthly Service Fee 10.00 |
| Pin Debit Authorization | 0 | Voice AVS | 1.75 | PIN Debit Fee | | Misc Monthly Fee 0.00 |
| EBT Authorization | | | | Industry Non-Compliance (Up $24.95) | NH | (If applicable per Section 4.8 of the Merchant Program Guide) |

### Miscellaneous Fees / MX Merchant Fees

| Miscellaneous Fees | | | | | MX Merchant Fees | |
|---|---|---|---|---|---|---|
| Sales Transaction Fee (All card types) | 0 | (per item) | Chargeback Fee | 25.00 (per occurrence) | MX Merchant Monthly Fee | 0 |
| Retrieval Fee (All card types) | 15.00 | (per occurrence) | Return Transaction Fee | 0.10 (per item) | MX Merchant Plan | [ ] Reporting [✓] Basic [ ] Plus |
| Batch Fee | 0.10 | (per item) | Annual Fee | 0 | MX Gateway Transaction Fee | [ ] Premium [ ] Enterprise |
| ACH Reject | 25.00 | (per occurrence) | Annual Fee Bill Month | Oct | Bill to | [ ] Statement [ ] Separate |

In the event that this Agreement is terminated early, Merchant will be responsible for the payment of $500 early termination fee in accordance with Part III, Section A.3 of the Merchant Program Guide.

**Attachment A          PX 47, 4727**

## 10. OTHER CARD TYPES

Page 3 of 4

| | | | |
|---|---|---|---|
| Accept EBT | ☐ Yes  ☐ No | Order Voyager  ☑ Yes  ☐ No | Order ACH/Check Services (Must attach addendum with app copy) ☐ Yes  ☐ No |
| Accept EBT Cash Benefit | ☐ Yes  ☐ No | Order Wright Express  ☑ Yes  ☐ No (Must attach Wright Express application and Debranding letter with app copy) | Order Gift Card (Must attach addendum with app copy) ☐ Yes  ☐ No |

## 11a. EQUIPMENT / PROCESSING METHOD

Application Type       Retail ☐   Retail w/ Tip ☐   MOTO ☐   Restaurant w/ Tip ☐   Quick Serve Restaurant (no tip) ☐   Hotel ☐   Auto Rental ☐

| Terminal Features | Yes | No | | Yes | No | | Yes | No |
|---|---|---|---|---|---|---|---|---|
| Fraud Check (last 4-digits) | ☐ | ☐ | Purchasing Card | ☐ | ☐ | Invoice/Purchase Order # | ☐ | ☐ |
| AVS + CVV2 | ☐ | ☐ | Server/Clerk # | ☐ | ☐ | Auto Close  Y ☐  N ☐  If yes, time? _____ | | |

IP Connection?    Yes ☐  No ☐  If yes, Terminal Serial_____    Special Requests (Multi-Mid, Dial 9, etc):_____

Wireless?    Yes ☐  No ☐  Wireless Info: MAN/Serial_____    SIM Card Number _____

| TYPE OF EQUIPMENT | | | | PRODUCT NAME | QUANTITY | DEPLOYMENT | | | |
|---|---|---|---|---|---|---|---|---|---|
| Terminal ☐ | Pinpad ☐ | Printer ☐ | VAR* ☑ | Nexio | 1 | Existing ☐  Agent ☑ | New Order (attach order form) ☐ | |
| Terminal ☐ | Pinpad ☐ | Printer ☐ | VAR* ☐ | | | Existing ☐  Agent ☐ | New Order (attach order form) ☐ | |
| Terminal ☐ | Pinpad ☐ | Printer ☐ | VAR* ☐ | | | Existing ☐  Agent ☐ | New Order (attach order form) ☐ | |
| Terminal ☐ | Pinpad ☐ | Printer ☐ | VAR* ☐ | | | Existing ☐  Agent ☐ | New Order (attach order form) ☐ | |

*Manufacturer/product/version of PC/Internet Software

Do you use any third party to store, process, or transmit cardholder data?    ☐ Yes    ☐ No

If yes, give name/address: _____

ORDER LEASE_____    Lease Company _____    Lease Term _____ Mos.    Annual Tax Handling Fee    $10.20

Total Monthly Lease Charge_____  w/o taxes, lates fees, or other charges that may apply – See Lease Agreement for details.

This is a NON-CANCELLABLE lease for the full term indicated    Client's Initials:_____

## 11b. CARD NOT PRESENT INFORMATION

If you process more than 30% of your bankcard transactions, or volume, without swiping and/or examining the credit card, please complete this section and provide the information requested.

1. Please submit your Product catalog; brochures; promotional materials; a current price list; and a copy of your service agreement with card holder if applicable. If on the internet, please include screen-prints of your website address if your site is not yet active.

2. If internet, please check your type of business:

☐ Web Hosting    ☐ Domain Registration    ☐ Web page Design    ☐ Auction    ☐ Internet Service Gateway

☑ Selling Digital Service    ☐ Advertisement    ☐ Selling Hard Goods    ☐ Other: _____

If using the internet, list encryption method, vendor, and controls used to secure transaction information

Nexio Gateway

3. How will the product be advertised or promoted?   Website _____

4. Billing Methods: (Check all that apply)

_____ Monthly - _____ %    X Yearly - 20 %    _____ Quarterly - _____%    X One Time - 80 %    _____ Hourly - _____%

5. List the name(s) and address(es) of the vendor(s) from which supplies are purchased.

N/A

6. Who performs product/service fulfillment? If direct from vendor, please provide Vendor Name, address and phone number in full:

In House Via Website Digitally

7. Please describe how a sale takes place from beginning of order until completion of fulfillment:

Order is placed online and access to educational services is on website

Priority Payment Systems is a registered ISO/MSP of Synovus Bank, Columbia, GA

**Attachment A          PX 47, 4728**

**12a. SITE INSPECTION (Completed by Sales Agent)** Page 4 of 4

I have personally conducted a Site Inspection for this merchant, visually inspected the merchant's inventory (if applicable), verified the merchant's payment application is PABP (Payment Application Best Practices) validated (if applicable), and represent that the information in this merchant application is accurate, as to the best of my knowledge. I am subject to criminal penalties and/or financial losses for false or misleading information.

| Sales Agent Name (printed) | Tyler Hester | Signature X | *Tyler Hester* |
|---|---|---|---|

**13. SIGNATURES**

Client certifies that all information set forth in this completed Merchant Processing Application is true and correct and that Client has received a copy of the Program Guide (Version PPS0714) and Confirmation Page, which is part of this Merchant Processing Application (consisting of Sections 1-13) and by this reference incorporated herein. Client acknowledges and agrees that we, our Affiliates and our third party subcontractors and/or agents may use automatic telephone dialing systems to contact Client at the telephone number(s) Client has provided in this Merchant Processing Application and/or may leave a detailed voice message in the event that Client is unable to be reached, even if the number provided is a cellular or wireless number or if Client has previously registered on a Do Not Call list or requested not to be contacted Client for solicitation purposes. Client hereby consents to receiving commercial electronic mail messages from us, our Affiliates and our third party subcontractors and/or agents from time to time. Client further agrees that Client will not accept more than 20% of its card transactions via mail, telephone or Internet order. However, if your Application is approved based upon contrary information stated in Section 7, Transaction Information section and Section 9, American Express above, you are authorized to accept transactions in accordance with the percentages indicated in that section. This signature page also serves as a signature page to the Equipment Lease Agreement appearing in the Third Party Section of the Program Guide, if selected, the undersigned Client being the "Lessee" for purposes of such Equipment Lease Agreement. Client authorizes PRIORITY PAYMENT SYSTEMS ("PRIORITY") and SYNOVUS Bank ("BANK") and

their respective agents to investigate the references, statements and other data contained herein and to obtain additional information from credit bureaus and other lawful sources, including persons and companies named in this Merchant Processing Application. Client authorizes PRIORITY and BANK and their respective agents (a) to procure information form any consumer reporting agency bearing his/her personal credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living, and (b) to contact all previous employers, personal references and educational institutions. Each of the undersigned also authorizes us and our Affiliates to provide amongst each other the information contained in this Merchant Processing Application and Agreement and any information received from all references, including banks and consumer reporting agencies. It is our policy to obtain certain information in order to verify your identity while processing your account application. If the Application is approved, each of the undersigned also authorizes us to obtain subsequent consumer reports in connection with the maintenance, updating, renewal or extension of the Agreement.

Client authorizes PRIORITY and BANK and their affiliates to debit Client's designated bank account via Automated Clearing House (ACH) for costs associated with the equipment hardware, software and shipping.

You further acknowledge and agree that you will not use your merchant account and/or the Services for illegal transactions, for example, those prohibited by the Unlawful Internet Gambling Enforcement Act, 31 U.S.C. Section 5361 et seq, as may be amended from time to time , or processing and acceptance of transactions in certain jurisdictions pursuant to 31 CFR Part 500 et seq, and other laws enforced by the Office of Foreign Assets Control (OFAC).

Client certifies, under penalties of perjury, that the federal taxpayer identification number and corresponding filing name provided herein are correct.

Social Security numbers are classified as "Confidential" information under the PRIORITY Data Classification Retention and Disposal Policy. As such, Social Security numbers may only be accessed by and disclosed to PRIORITY team members and others with a legitimate business "need to know' in accordance with applicable laws and regulations. Social Security numbers, whether in paper or electronic form, are subject to physical, electronic and procedural safeguards, and must be stored, transmitted and disposed of in accordance with the provision of the information applicable to Confidential information. These restrictions apply to all Social Security numbers collected or retained by PRIORITY.

Client agrees to all the terms of this Merchant Processing Application and Agreement. This Merchant Processing Application and Agreement shall not take effect until Client has been approved and this Agreement has been accepted by PRIORITY and BANK.

**Client's Business Principal / Officer**

| Signature X | *(signature)* | Title | CEO |
|---|---|---|---|
| Print Name of Signer | Jeff Bishop | Date | 9/28/2020 |

| Signature X | *Jason Bond* | Title | Vice President |
|---|---|---|---|
| Print Name of Signer | Jason Bond | Date | 9/28/2020 |

Personal Guarantee: In exchange for PRIORITY and Synovus Bank (the Guaranteed Parties) acceptance of, as applicable, the Agreement, and/or the Equipment Lease Agreement, the undersigned unconditionally and irrevocably guarantees the full payment and performance of Client's obligations under the foregoing agreements, as applicable, as they now exist or as modified from time to time, whether before or after termination or expiration of such agreements and whether or not the undersigned has received notice of any amendment of such agreements. The undersigned waives notice of default by Client and agrees to indemnify the Guaranteed Parties for any and all amounts due from Client under the foregoing agreements. The Guaranteed Parties shall not be required to first proceed against Client to enforce any remedy before proceeding against the undersigned. This is a continuing personal guaranty and shall not be discharged or affected for any reason. The undersigned understands that this is a Personal Guaranty of payment and not of collection and that the Guaranteed Parties are relying upon this Personal Guaranty in entering into the foregoing agreements, as applicable.

| Personal Guarantee Signature X | *(signature)* | Print Name: | Jeff Bishop | Date | 9/28/202 |
|---|---|---|---|---|---|

| Personal Guarantee Signature X | *Jason Bond* | Print Name: | Jason Bond | Date | 9/28/202 |
|---|---|---|---|---|---|

**Accepted By**

| Priority Payment Systems, LLC | Synovus Bank |
|---|---|
| P.O. BOX 246, Alpharetta, GA 30009-0246 | 1111 Bay Ave, Columbus, GA 31901 |
| Signature X | Signature X |

**Attachment A**          **PX 47, 4729**

| PPS0719 | **PART I: CONFIRMATION PAGE** | Page 5 of 5 |

PROCESSOR    Name:    **Priority Payment Systems**
INFORMATION:  Address:    P.O. Box 246, Alpharetta, GA 30009-0246

URL: https://www.prioritypaymentsystems.com/manuals/programguide.2.6.1.pdf  Customer Service  #: 1-855-813-5293

Please read the Program Guide in its entirety. It describes the terms under which we will provide merchant processing Services to you.

From time to time you may have questions regarding the contents of your Agreement with Bank and/or Processor. The following information summarizes portions of your Agreement in order to assist you in answering some of the questions we are most commonly asked.

1. **Your Discount Rates** are assessed on transactions that qualify for certain reduced interchange rates imposed by MasterCard and Visa. Any transactions that fail to qualify for these reduced rates will be charged an additional fee (see Section 19 of the Program Guide).

2. We may debit your bank account from time to time for amounts owed to us under the Agreement.

3. There are many reasons why a Chargeback may occur. When they occur we will debit your settlement funds or settlement account. For a more detailed discussion regarding Chargebacks see Section 10 of Card Processing Operating Guide.

4. If you dispute any charge or funding, you must notify us within 60 days of the date of the statement where the charge or funding appears for Card Processing.

5. **The Agreement limits our liability to you.** For a detailed description of the limitation of liability see Section 21 of the Card Processing General Terms.

6. We have assumed certain risks by agreeing to provide you with Card processing or check services. Accordingly, we may take certain actions to mitigate our risk, including termination of the Agreement, and/or hold monies otherwise payable to you (see Card Processing General Terms, Events of Default Section 24 and, Reserve Account, Security Interest 25), under certain circumstances.

7. By executing this Agreement with us you are authorizing us and our Affiliates to obtain financial and credit information regarding your business and the signers and guarantors of the Agreement until all your obligations to us and our Affiliates are satisfied.

8. The Agreement contains a provision that in the event you terminate the Agreement early, you will be responsible for the payment of an early termination fee as set forth in Part III, Section A.3 of the Merchant Program Guide.

9. **If you lease equipment from Processor**, it is important that you review Section 1 in Third Party Agreements. Bank is not a party to this Agreement. THIS IS A NON-CANCELABLE LEASE FOR THE FULL TERM INDICATED.

10. For questions regarding your Merchant Processing Application and Agreement, please contact Customer Service at 1-855-813-5293, and / or refer to important Phone Numbers on the Additional Important Information Page, Part III, Section A.4.

11. **Card Organization Disclosure**

**Visa and MasterCard Member Bank Information: Synovus Bank**

The Bank's mailing address is 1111 Bay Avenue, Columbus, Georgia 31901, and its phone number is (706) 649-4900.

**Important Member Bank Responsibilities:**

a) The Bank is the only entity approved to extend acceptance of Card Organization products directly to a Merchant.

b) The Bank must be a principal (signer) to the Merchant Agreement.

c) The Bank is responsible for educating Merchants on pertinent Visa and MasterCard rules with which Merchants must comply; but this information may be provided to you by Processor.

d) The Bank is responsible for and must provide settlement funds to the Merchant.

e) The Bank is responsible for all funds held in reserves that are derived from settlement.

**Important Merchant Responsibilities:**

a) Ensure compliance with Cardholder data security and storage requirements. b) Maintain fraud and Chargebacks below Card Organization thresholds.

c) Review and understand the terms of the Merchant Agreement.

d) Comply with Card Organization rules.

e) Retain assigned copy of this Disclosure Page.

f) You may download "Visa Regulations" from Visa's website at: https://usa.visa.com/dam/VCOM/download/about-visa/visa-rules-public.pdf

g) You may download "MasterCard Regulations" from Master card's website at: https://www.mastercard.us/content/dam/mccom/global/documents/mastercard-rules.pdf

Print **Client's Business Legal Name:** RagingBull.com LLC

By its signature below, Client acknowledges that it has received (either in person, by facsimile, or by electronic transmission) the complete Program Guide [version PPS0714(la)] consisting of 34 pages (including this confirmation).

Client further acknowledges reading and agreeing to all terms in the Program Guide, which shall be incorporated into Client's Agreement. Upon receipt of a signed facsimile or original of this Confirmation Page by us, Client's Application will be processed.

Client understands that a copy of the Program Guide is also available for downloading from the Internet at:

https://prioritypaymentsystems.com/manuals/programguide.2.6.1.pdf

NO ALTERATIONS OR STRIKE-OUTS TO THE PROGRAM GUIDE WILL BE ACCEPTED.

**Client's Business Principal:**

Signature (Please sign below):

X _Bishop_

| Jeff Bishop | CEO | 9/28/2020 |
|---|---|---|
| **Please Print Name of Signer** | **Title** | **Date** |

Priority Payment Systems is a registered ISO of Synovus Bank, Columbus Georgia

Merchant Beneficial Ownership and Management Information Certification:   The following information and certifications concerning beneficial ownership, and the identification of beneficial owner(s), of the Merchant identified in the Merchant Application referenced below, must be provided for the Merchant if a legal entity (legal entity includes a corporation, limited liability company or other entity that is formed by filing of a public document with a Secretary of State or similar office, a general partnership, and any similar business entity formed in the United States). (This form need not be used for a Merchant identified in the Merchant Application as a "sole proprietor" or "sole proprietorship", provided the prescribed forms of Merchant Application including any Patriot Act/customer identification forms and taxpayer identification/withholding forms included therein or prescribed for use therewith reflect such sole proprietorship status and are completed and executed by such sole proprietor and the Processor's representative.) The beneficial ownership/management information and certification in this form is in addition to, not a substitute for, the information and certifications regarding the Merchant legal entity required elsewhere in the prescribed form of Merchant Application including any other Patriot Act/customer identification forms and taxpayer identification/withholding forms included therein or prescribed for use therewith. Notice: To help the government fight the funding of terrorism and money laundering activities, the USA Patriot Act requires all financial institutions to obtain, verify and record information that identifies each person (including business entities) who opens an account. What this means for you: When you open an account we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents. In some instances we may use outside sources to confirm the information. Priority Payment System's privacy policy can be found at www.prioritypaymentsystems.com.

**Section 1:  Merchant Application Information** (Must match information in Merchant Application): Date Application Signed (by Authorized Signer named below): 9/28/2020

Merchant Legal Name: RagingBull.com LLC    Merchant Federal Tax ID (as it appears on income tax return █████████  Merchant State of formation/Incorporation: DE
Merchant Address: 62 Calef HWY #233, Lee, NH, 03861                                                    Merchant Entity Type LLC

**Section 2:   Beneficial Ownership and Management Information.** Provide the information below on each individual who directly or indirectly, through any contract, arrangement, understanding, relationship or otherwise, owns 25% or more of the equity interests of the Merchant legal entity identified above.  If the total ownership of those individuals does not exceed 50% of the equity interests of the Merchant, provide the information below on additional beneficial owners so that the total ownership interests of individuals for which information is provided below exceeds 50%. (Use extra copies if needed.)  Information must be provided for one individual with significant responsibility for managing the legal entity listed in Section 1, a "Control Prong". Examples of a Control Prong include, but are not limited to: Chief Executive Officer, Chief Financial Officer, Chief Operating Officer, Managing Member, General Partner, President, Vice President or Treasurer. If no other Beneficial Owner identified below is identified in the right column as the Control Prong, the Control Prong section below must be completed.

| Beneficial Owner Legal Name | Title | % of Legal Entity |
|---|---|---|
| Jeff Bishop | CEO | Ownership: 65_% |
| ███████████████████ | ███████████████ | ███████████ |
| Beneficial Owner Legal Name | Title | % of Legal Entity |
| Jason Bond | Vice President | Ownership: 25_% |
| ███████████████████ | ███████████████ | ███████████ |

| Beneficial Owner Legal Name | Title | % of Legal Entity Ownership: ___% |
|---|---|---|
| Individual's Home (Street) Address (No P.O. Box) | City, State, Zip | Date of Birth |
| Individual has a Social Security Number or Individual Taxpayer Identification Number issued by US Government? ☐ Yes  ☐ No | Social Security No. (SSN)/Individual Taxpayer Identification No. (ITIN): | Control Prong? ☐ Yes |
| ID Type:*  ☐ Driver's License   ☐ Other State photo ID showing residence ☐ Passport  ☐ Resident Alien ID   ☐ Other ID± | State/Country of Issuance | Date Issued | Expiration Date | Number on ID: |

| Beneficial Owner Legal Name | Title | % of Legal Entity Ownership: ___% |
|---|---|---|
| Individual's Home (Street) Address (No P.O. Box) | City, State, Zip | Date of Birth |
| Individual has a Social Security Number or Individual Taxpayer Identification Number issued by US Government? ☐ Yes  ☐ No | Social Security No. (SSN)/Individual Taxpayer Identification No. (ITIN): | Control Prong? ☐ Yes |
| ID Type:*  ☐ Driver's License   ☐ Other State photo ID showing residence ☐ Passport  ☐ Resident Alien ID   ☐ Other ID± | State/Country of Issuance | Date Issued | Expiration Date | Number on ID: |

| ☐ Control Prong (and/or ☐ additional Beneficial Owner) Legal Name | Title | % of Legal Entity Ownership: ___% |
|---|---|---|
| Individual's Home (Street) Address (No P.O. Box) | City, State, Zip | Date of Birth |
| Individual has a Social Security Number or Individual Taxpayer Identification Number issued by US Government? ☐ Yes  ☐ No | Social Security No. (SSN)/Individual Taxpayer Identification No. (ITIN): | |
| ID Type:*  ☐ Driver's License   ☐ Other State photo ID showing residence ☐ Passport  ☐ Resident Alien ID   ☐ Other ID± | State/Country of Issuance | Date Issued | Expiration Date | Number on ID: |

* For US persons provide unexpired Driver's License unless there is none; for non-US persons ID Type may be unexpired Resident Alien ID, or Passport/Other ID± and Country of issuance.
± Specify type of "Other ID", which may be any other unexpired government-issued document evidencing nationality or residence and bearing a photograph or similar safeguard.

**Certifications and Signatures:**
The undersigned Authorized Signer, listed above as a Beneficial Owner or Control Prong, who has signed the Merchant Application on behalf of the Merchant, hereby certifies that he/she is authorized to open accounts for the Merchant at financial institutions, that all information provided above about the Merchant legal entity is complete and correct and that, to the best of his/her knowledge, all information provided above about each individual listed above is complete and correct and there is no individual who directly or indirectly owns 25% or more of the Merchant legal entity's equity interests whose information is not provided above. The Authorized Signer and the Processor's Representative, each hereby certify that the information listed above regarding the identity and the identification document of each individual listed above, is complete and correct and was personally observed on the indicated document.

| Authorized Signer Signature | Date Signed | Authorized Signer Printed Name | Processor's Rep. Signature | Date Signed | Processor's Rep. Printed Name |
|---|---|---|---|---|---|
| _(signature)_ | 9/28/2020 | Jeff Bishop | | | |

**Attachment A**                          **PX 47, 4731**



2001 Westside Parkway Suite 155
Alpharetta, GA 30004
1.800.935.5961
www.prioritypaymentsystems.com

## MERCHANT RESERVE ACKNOWLEDGMENT AND ACCEPTANCE

The undersigned Merchant hereby acknowledges and accepts that as a condition of approval or continuance of his/her merchant credit card processing account(s) (identified below), and for other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, Priority Payment Systems LLC and its agents, including a processing Bank designated by Priority have the authority to establish a reserve account in accordance with Section 25.1 of the Merchant Processing Application and Agreement which includes the  Program Guide Terms and Conditions ("MPA") as follows:

1.  The reserve account will be established by:

    a.  A certified check made payable to Priority Payment Systems LLC in the amount of $_____.                          _____ (initials)

    b.  Withholding_10_____ % from each gross deposit.   _____ (initials)

2.  The reserve account will be used to offset any amounts owed by Merchant under the MPA. Merchant will forward to Priority funds to replenish the reserve account if any funds are debited from it.

3.  The balance of the reserve account, if any, will be returned to Merchant up to 270 days after termination of the MPA or Merchant's last transmission of sales drafts, whichever is later.

Merchant acknowledges that if there is any conflict between the terms of this merchant reserve acknowledgment and acceptance and the terms of the MPA, the terms of the MPA will govern.

Acknowledged and Agreed to this _28_____ day of __September_____, 20_20__.


Signature: _____

Name & Title: _Jeff Bishop_____ CEO_____

Merchant Legal Business Name: _RagingBull.com LLC____

DBA Name: _RagingBull_____

Merchant Account No.:  (if applicable): _____

Accepted: _____
    Priority Payment Systems LLC

**Attachment A**              **PX 47, 4732**

# RagingBull Synovus Application

**Final Audit Report**                                                                 2020-09-28

| | |
|---|---|
| Created: | 2020-09-28 |
| By: | Tyler Hester (tyler@adeptpayments.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAxi8BnD9pEsLo0XA6sY5upoZf6jd47s4j |

## "RagingBull Synovus Application" History

📄 Document created by Tyler Hester (tyler@adeptpayments.com)
  2020-09-28 - 10:38:10 PM GMT- IP address: ▮▮▮▮▮▮

📧 Document emailed to Jeff Bishop (jeff@ragingbull.com) for signature
  2020-09-28 - 10:48:38 PM GMT

📄 Email viewed by Jeff Bishop (jeff@ragingbull.com)
  2020-09-28 - 10:49:16 PM GMT- IP address: ▮▮▮▮▮▮

✏️ Document e-signed by Jeff Bishop (jeff@ragingbull.com)
  Signature Date: 2020-09-28 - 10:53:28 PM GMT - Time Source: server- IP address: ▮▮▮▮▮▮

📧 Document emailed to Jason Bond (jason@ragingbull.com) for signature
  2020-09-28 - 10:53:30 PM GMT

📄 Email viewed by Jason Bond (jason@ragingbull.com)
  2020-09-28 - 10:58:25 PM GMT- IP address: ▮▮▮▮▮▮

✏️ Document e-signed by Jason Bond (jason@ragingbull.com)
  Signature Date: 2020-09-28 - 10:58:59 PM GMT - Time Source: server- IP address: ▮▮▮▮▮▮

✅ Agreement completed.
  2020-09-28 - 10:58:59 PM GMT

🅰 **Adobe Sign**

**Attachment A**                    **PX 47, 4733**

## Completed: "RagingBull BUSA Application"

| | |
|---|---|
| **From:** | Adept Payments Inc. <echosign@echosign.com> |
| **To:** | Jason Bond <jason@ragingbull.com>, Jeff Bishop <jeff@ragingbull.com>, Tyler Hester <tyler@adeptpayments.com> |
| **Date:** | Fri, 25 Sep 2020 14:08:57 -0400 |
| **Attachments:** | RagingBull BUSA Application - signed.pdf (315.67 kB) |





### All parties finished
**RagingBull BUSA Application**
**Open agreement**

Attached is the final agreement between:
- Adept Payments, Inc.
- Jeff Bishop
- Jason Bond

You can also **open it online** to review its activity history.

Need your own documents signed? Adobe Sign can help save you time. **Learn more.**

To ensure that you continue receiving our emails, please add echosign@echosign.com to your address book or safe list.

© 2020 Adobe. All rights reserved.

**Attachment A**          **PX 47, 4734**

## MERCHANT PROCESSING APPLICATION AND AGREEMENT

| | | |
|---|---|---|
| Sales Office: BankCard USA | Sales Rep Name: Tyler Hester | Bank: ☐ Wells Fargo Bank, N.A., Concord, CA. |
| Phone Number: 800-589-8200 | | ☐ Westamerica Bank, 3750 Westwind Blvd , uite 210  anta Rosa, CA 95403 |

| BUSAb1712(a) | BU INE INFORMATION | Page 1 of 3 v9 6 |
|---|---|---|

| | |
|---|---|
| Client s Business Name (Doing Business As)<br>RagingBull | Client s Corporate/Legal Name (Use Also For Headquarter s Information)<br>RagingBull.com LLC |
| Business Address:<br>11311 McCormick Rd STE 200 | Billing Address (If Different Than Location Address):<br>62 Calef HWY #233 |

| City:<br>Hunt Valley | State:<br>MD | Zip Code:<br>21031 | City:<br>Lee | State:<br>NH | Zip Code:<br>03861 |
|---|---|---|---|---|---|

| Location Phone #:<br>833-265-1270 | Location Fax #: | Contact Name:<br>Jordan Reyna |
|---|---|---|
| Business E-mail Address:<br>jordan@ragingbull.com | | Contact Fax # / E-mail Address:<br>jordan@ragingbull.com |
| Business Website Address:<br>ragingbull.com | | Contact Phone #: |

| Customer Service Phone #:<br>833-265-1270 | Customer Service E-mail Address:<br>jordan@ragingbull.com | Send Retrieval Requests to: ☐ Business Location ☑ Corp/Legal Location<br>Send Merchant Monthly Statement to: ☐ Business Location ☑ Corp/Legal Location |
|---|---|---|

| | | |
|---|---|---|
| ☐ INDIVIDUAL/SOLE PROPRIETORSHIP: State in which Certificate of<br>Assumed Name Filed:                              State: | ☐ TAX EXEMPT ORGANIZATION (501C)   State:<br>☐ INTERNATIONAL ORGANIZATION | ☐ GOVERNMENT (Federal, State, Local)<br>☑ LIMITED LIABILITY COMPANY |
| ☐ CORPORATION – CHAPTER.S, C          State: | Location Filed: | State Filed: DE |
| ☐ MEDICAL OR LEGAL CORPORATION       State: | ☐ ASSOCIATION/ESTATE/TRUST   State Filed: | ☐ PARTNERSHIP        State Filed: |

| Name (as it appears on your income tax return)<br>RagingBull.com LLC | | I cer ify that I am a foreign entity/<br>☐ nonresident alien (If checked, please<br>attach IRS Form W-8.) |
|---|---|---|

NOTE: Failure to provide accurate information may result in a withholding of merchant funding per RS regulations. (See Part III, Section A.4 of your Program Guide for further information.)

| SIC / MCC | IATA/ARC | (MCC 4722 Only) |
|---|---|---|

Note   If your business is classified as High Risk and assigned (or is later assigned based upon your activity) any of the following Merchant Category Codes (MCC) 4814  4816  5966 5967  7273  and 7441
then registration is required with Visa and/or MasterCard within 30 days from when your account becomes active. An Annual Registration Fee of $500 may apply for Visa and/or MasterCard (total registration fees
could be $1,000.00). Failure to register could result in fines in excess of $10,000 00 for violating Visa and/or MasterCard regulations².
¹ Registration for MCC 7841 is only required for non-face-to-face adult content.
² Information herein, including applicable MCCs, is subject to change.

| Detailed Explana ion of Type of Merchandise, Products or Services Sold:<br>Educational Services |
|---|

### 2. OWNERS / PARTNERS / OFFICERS

| OWNER / PARTNER / OFFICER 1 | | OWNER / PARTNER / OFFICER 2 | |
|---|---|---|---|
| Name: (First, MI, Last)<br>Jeff Bishop | % Ownership:<br>65 | Name: (First, MI, Last)<br>Jason Bond | % Ownership:<br>25 |
| Title: CEO | | Title: Vice President | |

### 3. COMPANY HISTORY

| Date Business Started: 2013 | Prior Bankruptcies?  ☑ No  ☐ Yes  ☐ Business  and / or  ☐ Personal |
|---|---|

### 4. SETTLEMENT INFORMATION

| Deposit Bank: Eastern Bank | Bank Contact |
|---|---|

| ACH Detail Flag:  ☐ Individual  ☐ Combined  ☑ Separate (defaults to Combined if option not selected) |
|---|

### 5. EQUIPMENT/THIRD PARTY INFORMATION

| Network (Front End)  ☐ Omaha  ☐ North  ☐ Nashville  ☐ Buypass  ☐ TSYS |
|---|
| Do  you use any third party to store, process or transmit cardholder data?  ☐ Yes  ☐ No |
| If yes, give name/address: |
| Please identify any Software used for storing, transmitting, or processing Card Transactions or Authorization Requests |

### 6. SERVICE FEE SCHEDULE

Accept all MasterCard  Visa  Discover Network and American Express Transactions (presumed  unless any selections below are checked)

| MasterCard Acceptance | Visa Acceptance | Discover Network Acceptance | American Express Acceptance |
|---|---|---|---|
| ☐ Accept MC Credit Transactions only | ☐ Accept Visa Credit Transactions only | ☐ Accept Discover Network Credit Transactions only | ☐ Accept Amex Transactions only |
| ☐ Accept MC Non-PIN Debit Trans. only | ☐ Accept Visa Non-PIN Debit Trans. only | ☐ Accept Discover Network Non-P N Debit Trans. only | |
| ☑ Discount Collected  ☑ Daily  ☐ Monthly | See Section 1 9 of the Program Guide for details regarding limited acceptance. | | |

Initial → **JB**

**Attachment A          PX 47, 4735**

DBA Name: **RagingBull**  Merchant #:  Page 2 of 3 v9 6

| BUSAb1712(ia) | | | | | BUSAb1712(ia) | |
|---|---|---|---|---|---|---|
| | **6. SERVICE FEE SCHEDULE** *(cont d)* | | | | | |

| | | Discount Fee | Non-Qual Fee | | | |
|---|---|---|---|---|---|---|
| ☑ ERR | Visa/MC/Discover Network | 2.95 % | 1.49 % | Monthly Service Fee | $ 10.00 | Electronic AVS Fee  $ 0.15  *(per item)* |
| ☐ TIERED | Check / Debit Cards | 2.95 % | 1.49 % | Application Fee | $ 0 | Voice Auth. Fee  $ 1.25  *(per item)* |
| | Credit Card | 2.95 % | 1.49 % | Portfolio Manager | $ 0 | ARU Fee  $ 1.00  *(per item)* |

The following fees will be passed through: Each card organization (Visa, MasterCard, Discover, American Express) assess fees to merchants in connection with transactions outside of the bank's control, such as dues and assessments, fixed acquirer network fees, MasterCard location fee, monthly voltage encryption fee, international/cross-border transaction fees, network access and data usage charges, and other fees payable to all merchants based in the United States, regardless of bank, processor or ISO affiliation. Because these fees are frequently modified by the card organizations, a detailed list of these fees has been posted online at www.bankcardusa.com/cardassociationfees where these fees are kept up to date. As an added value, these fees are passed through at cost to you, the merchant, and are not marked up. Should you have any questions about these pass-through fees and how they appear on your monthly statement, please contact the customer service number on your monthly statement. By signing this application you accept and agree to these pass-through fees and understand that these fees may change from time-to-time without notice.

| | | | | | |
|---|---|---|---|---|---|
| | | | Interchange + | Min. Monthly Discount Fee | $ 25.00 |
| | | | _____ % | Wireless Fee *(per unit)* | $ 0 |
| | | | | Retrieval Fee | $ 15.00 |
| | | | | Chargeback Fee | $ 25.00 |

Termination Fee $ 500
TIN/TFN Invalid $9.95 (Monthly)
TIN/TFN Storage $3.95 (Monthly)
PCI Compliance $9.30 (Monthly)

| **TRANSACTIONS** | Per Trans / Communication | American Express Per Trans / Communication | MPG TXN Fee (per downgrade) | PIN Debit (plus the applicable network fees) | Debit Network Access | $ 0 |
|---|---|---|---|---|---|---|
| Per Batch | | | | | Clover & TransArmor Srvc Monthly Fee *(per station)* | $ 0 |
| $ 0.10 | $ 0.10 | $ 0.10 | $ 0.10 | $ 0 | Other | |

| **AMERICAN EXPRESS** | New Service Requested? ☑ Yes ☐ No | American Express Discount Rate: 3.5 ___ % | Flat Per Transaction Fee $ 0.15 |
|---|---|---|---|
| American Express Prepaid Discount Rate: ___ % | | Flat Per Transaction Fee $ ___ | |

*American Express Monthly Flat or Discount Rate may apply. The 0.30% non-swiped fee is applied to any Charge for which American Express did not receive both(i) the full Magnetic Stripe and (ii) the indicator as to whether the Card was swiped. 0.30% downgrade will be charged by American Express for transactions whenever a CNP or Card Not Present Charge occurs. CNP means a Charge for which the Card is not present at the point of purchase. Note: The CNP Fee is applicable to transactions on all American Express Cards, including Prepaid Cards. This fee applies to all American Express programs. Networ Access fee of 0.15% will apply to all American Express transactions.

---

**7 TRAN ACTION INFORMATION**

| **FINANCIAL DATA** | | **WHERE IS SALE TRANSACTED?** | (must = 100%) |
|---|---|---|---|
| Average Monthly MC/Visa/Discover Network/American Express Volume | $ 2,000,000 | Store Front / Swiped | ___ % |
| Average MC/Visa/Discover Network/American Express Ticket | $ 700 | Internet | 100 % |
| Annual American Express Volume | $ 6,000,000 | Mail Order / Telephone Order | ___ % |
| Highest MC/Visa/Discover Network/American Express Ticket | $ 10,000 | Face to Face Keyed | ___ % |
| Seasonal? ☐ No ☑ Yes  High Volume Months Open: _____ | | Total | 100 % |

---

**8. SIGNATURE (S)**

Client certifies that all information set forth in this completed Merchant Processing Application is true and correct and that Client has received a copy of the Program Guide and Confirmation Page which is part of this Merchant Processing Application (consisting of Sections 1-8), and by this reference incorporated herein. Client acknowledges and agrees that we, our third party subcontractors and/or agents may use automatic telephone dialing systems to contact Client at the telephone number(s) Client has provided in this Merchant Processing Application and/or may leave a detailed voice message in the event that Client is unable to be reached, even if the number provided is a cellular or wireless number or if Client has previously registered on a Do Not Call list or requested not to be contacted Client for solicitation purpose. Client hereby consents to receiving commercial electronic mail messages from us, our Affiliates and our third party subcontractors and/or agents from time to time. Client further agrees that Client will not accept more than 20% of its card transactions via mail, telephone or Internet order. However, if your Application is approved based upon contrary information stated in Section 7 Transaction Information section above you are authorized to accept transactions in accordance with the percentages indicated in that section

By signing below, each of the undersigned authorizes us, our Affiliates and our third party subcontractors and/or agents to verify the information contained in this Application and to request and obtain from any consumer reporting agency and other sources, including bank references, personal and business consumer reports and other information and to disclose such information amongst each other for any purpose permitted by law. If the Application is approved, each of the undersigned also authorizes us, our Affiliates and our third party subcontractors and/or agents to obtain subsequent consumer reports and other information from other sources, including bank references, in connection with the review maintenance updating renewal or extension of the Agreement or for any other purpose permitted by law and disclose such information amongst each other. Each of the undersigned furthermore agrees that all references, including banks and consumer reporting agencies, may release any and all personal and business credit financial information to us, our Affiliates and our third party subcontractors and/or agents. Each of the undersigned authorizes us, our Affiliates and our third party subcontractors and/or agents to provide amongst each other the information contained in this Merchant Processing Application and Agreement and any information received subsequent thereto from all references, including banks and consumer reporting agencies for any purpose permitted by law. It is our policy to obtain certain information in order to verify your identity while processing your account application.

As part of our approval, processing services, continuing fraud prevention and account review processes, the undersigned consents to the use of information gathered online or that you submit to us, and/or automated electronic computer security screening, by us or our third party vendors.

Client authorizes BUSA and Bank and their affiliates to debit Client's designated bank account via Automated Clearing House (ACH) for costs associated with equipment hardware, software and shipping. You further acknowledge and agree that you will not use your merchant account and/or the Services for illegal transactions, for example, those prohibited by the Unlawful Internet Gambling Enforcement Act, 31 U.S.C. Section 5361 et seq as may be amended from time to time or processing and acceptance of transactions in certain jurisdictions pursuant to 31 CFR Part 500 et seq and other laws enforced by the Office of Foreign Assets Control (OFAC)

Client certifies, under penalties of perjury, that the federal taxpayer identification number and corresponding filing name provided herein are correct. Client agrees to all the terms of this Merchant Processing Application and Agreement. This Merchant Processing Application and Agreement shall not take effect until Client has been approved and this Agreement has been accepted by BUSA and Bank. **Client's Business Principal/Officer**

Merchant certifies that all individuals who own, directly or indirectly, 25% or more of the equity interest in the legal entity and an individual with responsibility for managing the legal entity on this Application are listed on this Merchant Application an/or supplemental documents provided to the ISO and Bank. The financial institution may also ask to see a copy of a driver's license or other identifying document for each beneficial owner listed on this form.

If approved for Opt Blue the attached following conditions apply to MERCHANT's participation in the AMERICAN EXPRESS OptBlue Program ( AMERICAN EXPRESS CARD ACCEPTANCE ) The American Express Merchant Operating Guide ("MOG") sets forth the policies and procedures governing Merchant's acceptance of the American Express Card. It is a part of, and is hereby incorporated by reference into, the Agreement. MERCHANT agrees to be bound by and accept all provisions in the MOG (as changed from time to time) as if fully set out in the Agreement and as a condition of MERCHANT's agreement to accept the Card. MERCHANTS may obtain the latest version of the MOG by visiting www.americanexpress.com/merchantopguide or by contacting BANK.

| Signature X **Jeff Bishop** | Title: CEO | Signature X **Jason Bond** | Title: Vice President |
|---|---|---|---|
| Jeff Bishop (Sep 24, 2020 19:42 EDT) | | Jason Bond (Sep 25, 2020 14:08 EDT) | |
| Print: Jeff Bishop | Date: 9/24/2020 | Print: Jason Bond | Date: 9/24/2020 |

**Personal Guarantee** The undersigned guarantees the performance of this Agreement, and any addendum thereto by Client, and in the event of default, hereby waives Notice of Default and agrees to indemnify the other parties, including payment of all sums due and owing and costs associated with enforcement of the terms thereof. BUSA and Bank shall not be required to first proceed against Client or enforce any other remedy before proceeding against the under signed individual. This is a continuing guarantee and shall not be discharged or affected by the death of the under signed and shall bind the heirs, administrators, representatives and assigns and be enforced by or for the benefit of any successor of BUSA and Bank. The term of this guarantee shall be for the duration of the Merchant Processing Application and Agreement, and the American Express Card Acceptance Agreement, if applicable and any addendum thereto, and shall guarantee all obligations which may arise or occur in connection with my activities during the term thereof, though enforcement may be sought subsequent to any termination.

**Personal Guarantee**

| Signature X **Jeff Bishop** | | Signature X **Jason Bond** | |
|---|---|---|---|
| Jeff Bishop (Sep 24, 2020 19:47 EDT) | | Jason Bond (Sep 25, 2020 14:08 EDT) | |
| Print: Jeff Bishop | 9/24/2020 | Print: Jason Bond | Date: 9/24/2020 |

| Accepted By BankCard USA Merchant Services, Inc. | | Bank | |
|---|---|---|---|
| Signature X | Title: | Signature X | Title: |
| Print: | Date: | Print: | Date: |

If your application is denied, you have the right to a written statement of the specific reason for the denial. To obtain the statement, please contact: the Member Bank listed on Part I Confirmation Page within 60 days from the date you are notified of our decision. We will send you a written statement or reason for the denial within 30 days of receiving your request for the statement.

BankCard USA Merchant Services is a registered ISO/MSP of Wells Fargo Bank, N.A., Concord, CA and Westamerica Bank, Santa Rosa, CA.

**Attachment A**   **PX 47, 4736**

DBA Name: **RagingBull**                                                     Merchant #:                                    Page 3 of 3 v9 6

## 9  ADDITIONAL CREDIT / ITE  URVE  INFORMATION

Are you using a Vendor? ☐ Yes ☑ No  If yes, please supply a copy of Vendor's report.

1. Zone: ☑ Business District ☐ Industrial ☐ Residential
2. Location: ☐ Mall ☐ Office ☐ Home ☐ Shopping Area
   ☐ Mixed ☐ Apartment ☐ Isolated
3. How many employees: 140
4. How many registers / Terminals: 1
5. Is proper license visible? ☑ Yes ☐ No, explain:
6. Where is the merchant name displayed at the site?
   ☑ Window ☐ Door ☐ Store Front
7. Merchant Occupies: ☑ Ground Floor  Other
8. # of Floors/Levels: ☑ 1 ☐ 2-4 ☐ 5-10 ☐ 11+
9. Remaining Floor(s) Occupied by:
   ☐ Residential ☑ Commercial ☐ Combination
10. Approximate Square Footage:
    ☐ 0-250 ☐ 251-500 ☐ 501-2,000 ☑ 2,001 plus
11. Are customers required to leave a deposit?
    ☑ No ☐ Yes  If Yes, % of deposit required:
12. Return Policy: ☑ Full Refund ☐ Exchange Only ☐ None
13. Do you have a refund policy for MC / Visa / Discover Network /
    Amex Express? ☑ Yes ☐ No  If yes, check one:
    ☐ Exhange ☐ Store Credit ☑ MC / Visa / Discover Network
    ☑ American Express
    If MC / Visa / Discover Network / American Express,
    within how many days do you submit credit transactions?
    ☑ 0-3 ☐ 4-7 ☐ 8-14 ☐ Over 14
14. Advertising Method *(Attach at least one):*
    ☐ Catalog ☐ Brochure ☐ Direct Mail ☐ TV / Radio
    ☑ Internet ☐ Phone ☐ Newspaper ☐ Other
    *Marketing Materials required for Mail Order, B to B, Internet over*
    *$1 Million in annual volume. Attach Web Page for Internet Merchant.*

15. Your Previous Processor: Stripe
16. Check Reason For Leaving:
    ☑ Rate ☑ Service ☐ Terminated  O her:

### Mail / Telephone Order / Business to Business / Internet Information
*(All Questions must be Answered)*

1. What % of total sales represent business to business  *vs business to consumer):*
   Business to Business _____ % + Business to Consumer ___ 100 % = 100% (sales)
2. What % of bankcard sales represent business to business  *(vs business to consumer):*
   Business to Business _____ % + Business to Consumer ___ 100 % = 100% (sales)
3. What is the time frame from transaction to delivery?  *(% of orders delivered in):*
   **0-7 days** 100 % + 8-14 days ___% + 15-30 days ___ % + over 30 days ___% = 100%
4. MC/Visa/Discover Network/American Express sales are deposited?
   ☑ Date of order ☐ Date of delivery  Other:
5. Who performs product / service fulfillment? ☑ Direct ☐ Vendor ☐ Other if vendor, add
   Name:
   Address:
   City:              State:       Zip:         Phone:
   *Please describe how the transaction works, from order taking to merchant fulfillment*
   *(attach additional sheet if necessary)*

6. Does any of your cardholder billing involve automatic renewals or recurring transactions
   (i.e. cardholder authorizes initial sale only?) ☑ Yes ☐ No

Sales Representative Signature: Tyler Hester              Date: 9/24/2020

BankCard USA Merchant Services is a registered ISO/MSP of Wells Fargo Bank, N.A., Concord, CA and Westamerica Bank, Santa Rosa, CA.

**Attachment A**                    **PX 47, 4737**

BUSAb1712(ia)

**C O N F I R M A T I O N   P A G E**

| | |
|---|---|
| **PROCESSOR INFORMATION:** | **Name:** BankCard USA Merchant Services, Inc. |
| | **Address:** 2625 Townsgate Road, Suite 100, Westlake Village, CA 91361 |
| | **URL:** www.bankcardusa.com          **Customer Service #:** 1-800-589-8200 |

**Please read the Program Guide in its entirety. It describes the terms under which we will provide merchant processing Services to you.**

**From time to time you may have questions regarding the contents of your Agreement with Bank and/or Processor. The following information summarizes portions of your Agreement in order to assist you in answering some of the questions we are most commonly asked.**

**1. Your Discount Rates are assessed** on transactions that qualify for certain reduced interchange rates imposed by MasterCard and Visa. Any transactions that fail to qualify for these reduced rates will be charged an additional fee (see Section 19 of the Program Guide).

**2. We may debit your bank account** from time to time for amounts owed to us under the Agreement.

**3. There are many reasons why a Chargeback may occur.** When they occur we will debit your settlement funds or settlement account. For a more detailed discussion regarding Chargebacks see Section 10 of Card Processing Operating Guide.

**4. If you dispute any charge or funding,** you must notify us within 60 days of the date of the statement where the charge or funding appears for Card Processing.

**5. The Agreement limits our liability to you.** For a detailed descrip tion of the limitation of liability see Section 21 of the Card Processing General Terms.

**6. We have assumed certain risks** by agreeing to provide you with Card processing or check services. Accordingly, we may take certain actions to mitigate our risk, including termination of the Agreement, and/or hold monies otherwise payable to you (see Card Processing General Terms in Section 24, Term; Events of Default and Section 25, Reserve Account; Security Interest), under cer tain circumstances.

**7. By executing this Agreement with us** you are authorizing us and our Affiliates to obtain financial and credit information regarding your busi ness and the signers and guar antors of the Agreement until all your obliga tions to us and our Affiliates are satisfied.

**8. The Agreement contains a provision** that in the event you terminate the Agreement early, you will be responsible for the payment of an early termi nation fee as set forth in Part III, A.3 under "Additional Fee Information."

**9. Card Organization Disclosure**
**Visa and MasterCard Member Bank Information:** Westamerica Bank
The Bank's mailing address is 3750 Westwind Blvd., Suite 210 Santa Rosa, CA 95403, and its phone number is (800) 939-9942.

**Important Member Bank Responsibilities:**

a) The Bank is the only entity approved to extend acceptance of Card Organization products directly to a Merchant.

b) The Bank must be a principal (signer) to the Merchant Agreement.

c) The Bank is respons ble for educating Merchants on pertinent Visa and MasterCard rules with which Merchants must comply; but this information may be provided to you by Processor.

d) The Bank is responsible for and must provide settlement funds to the Merchant.

e) The Bank is responsible for all funds held in reserve that are derived from settlement.

**Important Merchant Responsibilities:**

a) Ensure compliance with Cardholder data security and storage requirements.

b) Maintain fraud and Chargebacks below Card Organization thresholds.

c) Review and understand the terms of the Merchant Agreement.

d) Comply with Card Organization rules.

e) Retain a signed copy of this Disclosure Page.

f) You may download "Visa Regulations" from Visa's website at: http://usa.visa.com/merchants /operations/op_regulations.html

g) You may download "MasterCard Regulations" from MasterCard's website at: http://www.mastercard.com/us/merchant/support/rules.html

Print Client's Business Legal Name: RagingBull.com LLC

**By its signature below, Client acknowledges that it has received the complete Program Guide [version BUSAb1712(ia)] consisting of 40 pages (including this confirmation).**

**Client further acknowledges reading and agreeing to all terms in the Program Guide, which shall be incorporated into Client's Agree ment. Upon receipt of a signed facsimile or original of this Confirmation Page by us, Client's Application will be processed.**

**NO ALTERATIONS OR STRIKE-OUTS TO THE PROGRAM GUIDE WILL BE ACCEPTED.**

Client's Business Principal:
Signature *(Please sign below)* :

**Signature** X Jeff Bishop
Jeff Bishop (Sep 24, 2020 19:42 EDT)          Title: CEO          Date: 9/24/2020

Please Print Name of Signer: Jeff Bishop

BUSAb1712(ia)

BUSAb1712(ia)

**C O N F I R M A T I O N   P A G E**

| | |
|---|---|
| **PROCESSOR INFORMATION:** | **Name:**  BankCard USA Merchant Services, Inc. |
| | **Address:**  2625 Townsgate Road, Suite 100, Westlake Village, CA 91361 |
| | **URL:**  www.bankcardusa.com          **Customer Service #:** 1-800-589-8200 |

**Please read the Program Guide in its entirety. It describes the terms under which we will provide merchant processing Services to you.**

**From time to time you may have questions regarding the contents of your Agreement with Bank and/or Processor. The following information summarizes portions of your Agreement in order to assist you in answering some of the questions we are most commonly asked.**

**1. Your Discount Rates are assessed** on transactions that qualify for certain reduced interchange rates imposed by MasterCard and Visa. Any transactions that fail to qualify for these reduced rates will be charged an additional fee (see Section 19 of the Program Guide).

**2. We may debit your bank account** from time to time for amounts owed to us under the Agreement.

**3. There are many reasons why a Chargeback may occur.** When they occur we will debit your settlement funds or settlement account. For a more detailed discussion regarding Chargebacks see Section 10 of Card Processing Operating Guide.

**4. If you dispute any charge or funding,** you must notify us within 60 days of the date of the statement where the charge or funding appears for Card Processing.

**5. The Agreement limits our liability to you.** For a detailed descrip tion of the limitation of liability see Section 21 of the Card Processing General Terms.

**6. We have assumed certain risks** by agreeing to provide you with Card processing or check services. Accordingly, we may take certain actions to mitigate our risk, including termination of the Agreement, and/or hold monies otherwise payable to you (see Card Processing General Terms in Section 24, Term; Events of Default and Section 25, Reserve Account; Security Interest), under cer tain circumstances.

**7. By executing this Agreement with us** you are authorizing us and our Affiliates to obtain financial and credit information regarding your busi ness and the signers and guar antors of the Agreement until all your obliga tions to us and our Affiliates are satisfied.

**8. The Agreement contains a provision** that in the event you terminate the Agreement early, you will be responsible for the payment of an early termi nation fee as set forth in Part III, A.3 under "Additional Fee Information."

**9. Card Organization Disclosure**
**Visa and MasterCard Member Bank Information:** Wells Fargo Bank N.A.
The Bank's mailing address is PO Box 6079, Concord, CA 94524, and its phone number is (844) 284-6834.

**Important Member Bank Responsibilities:**
a) The Bank is the only entity approved to extend acceptance of Card Organization products directly to a Merchant.
b) The Bank must be a principal (signer) to the Merchant Agreement.
c) The Bank is respons ble for educating Merchants on pertinent Visa and MasterCard rules with which Merchants must comply; but this information may be provided to you by Processor.
d) The Bank is responsible for and must provide settlement funds to the Merchant.
e) The Bank is responsible for all funds held in reserve that are derived from settlement.

**Important Merchant Responsibilities:**
a) Ensure compliance with Cardholder data security and storage requirements.
b) Maintain fraud and Chargebacks below Card Organization thresholds.
c) Review and understand the terms of the Merchant Agreement.
d) Comply with Card Organization rules.
e) Retain a signed copy of this Disclosure Page.
f) You may download "Visa Regulations" from Visa's website at:
http://usa.visa.com/merchants /operations/op_regulations.html
g) You may download "MasterCard Regulations" from MasterCard's website at:
http://www.mastercard.com/us/merchant/support/rules.html

Print Client's Business Legal Name:  RagingBull.com LLC

**By its signature below, Client acknowledges that it has received the complete Program Guide [version BUSAb1712(ia)] consisting of 40 pages (including this confirmation).**

**Client further acknowledges reading and agreeing to all terms in the Program Guide, which shall be incorporated into Client's Agree ment. Upon receipt of a signed facsimile or original of this Confirmation Page by us, Client's Application will be processed.**

**NO ALTERATIONS OR STRIKE-OUTS TO THE PROGRAM GUIDE WILL BE ACCEPTED.**

Client's Business Principal:
Signature *(Please sign below)* :

**Signature** X _Jeff Bishop_
Jeff Bishop (Sep 24, 2020  9:42 EDT)          Title: CEO          Date: 9/24/2020

Please Print Name of Signer:  Jeff Bishop

BUSAb1712(ia)

**Attachment A**          **PX 47, 4739**

BENEFICIAL OWNERSHIP ADDENDUM

MERCHANT APPLICATION INFORMATION

| | |
|---|---|
| Merchant Legal Name: RagingBull.com LLC | Mailing Address: 62 Calef HWY #233, Lee, NH, 03861 |
| Merchant DBA Name: RagingBull | Physical Address: 11311 McCormick Rd STE 200, Hunt Valley, MD, 21031 |

This Beneficial Ownership Addendum shall be attached to and made a part of the original Merchant Agreement between Westamerica, BankCard USA and the undersigned.

To help the government fight financial crime, Federal regulation requires certain financial institutions to obtain, verify, and record information about the beneficial owners of legal entity customers. Legal entities can be abused to disguise involvement in terrorist financing, money laundering, tax evasion, corruption, fraud, and other financial crimes. Requiring the disclosure of key individuals who own or control a legal entity (i.e., the beneficial owners) helps law enforcement investigate and prosecute these crimes.

By signing below, I attest that I have accurately provided the name, address, date of birth and Social Security Number (SSN) for the following individuals (i.e. the beneficial owners):

   (i)      Each individual, if any, who owns directly or indirectly, 25 percent or more of the equity interests of the legal entity customer (e.g., each natural person that owns 25 percent or more of the shares of a corporation); AND

   (ii)     An individual with significant responsibility for managing the legal customer (e.g., a Chief Executive Officer, Chief Financial Officer, Chief Operating Officer, Managing Member, General Partner, President, Vice President, or Treasurer).

The number of individuals that satisfy this definition of "beneficial owner" may vary. Under section (i), depending on the factual circumstances, up to four individuals (buy as few as zero) may need to be identified. Regardless of the number of individuals identified under section (i), you must provide the identifying information of one individual under section (ii). It is possible that in some circumstances the same individual might be identified under both sections (e.g., the President of Acme, Inc. who also holds a 30% equity interest). Thus, a completed form will contain the identifying information of at least one individual (under section (ii)), and up to five individuals (i.e., one individual under section (ii) and four 25 percent equity holders under section (i)).

BENEFICIAL OWNERS OF THE BUSINESS - SECTION 1 (NO P.O. BOXES)

| First Name: Jeff | Last: Bishop | | Percent Owner: 65 | Title: CEO |
|---|---|---|---|---|
| Email: jeff@ragingbull.com | | | | |
| First Name: Jason | Last: Bond | | Percent Owner: 25 | Title: Vice President |
| Email: jason@ragingbull.com | | | | |
| First Name | Last | SSN | Percent Owner | Title |
| Residence Address | City | State / Zip | Phone | DOB |
| Email | | Gov't Issued ID | Issued By | Exp. Date |
| First Name | Last | SSN | Percent Owner | Title |
| Residence Address | City | State / Zip | Phone | DOB |
| Email | | Gov't Issued ID | Issued By | Exp. Date |

MANAGEMENT RESPONSIBILITY / INDIVIDUAL WITH SIGNIFICANT CONTROL - SECTION 2 (NO P.O BOXES)

| First Name: Jeff | Last: Bishop | | Percent Owner: 65 | Title: CEO |
|---|---|---|---|---|
| Email: jeff@ragingbull.com | | | | |

I, (print name) Jeff Bishop _____, hereby certify, to the best of my knowledge, that the information provided on this form is complete and correct for all accounts. It is further agreed that BankCard USA and Westamerica Bank will be immediately by the legal entity of any change in such information provided on this form.

Signature: Jeff Bishop _____  Date: 9/24/2020 _____
Jeff Bishop (Sep 24, 2020 19:42 EDT)

**Attachment A**      **PX 47, 4740**

## RESERVE/ACH HOLD ACKNOWLEGEMENT AND ACCEPTANCE

Your application for merchant processing is approved pending acknowledgement and acceptance of the following reserve terms.   These terms are incorporated into and made part of the terms and conditions of your Merchants Application and Agreement.

The merchant ("Merchant") whose name is set forth at the bottom of this Reserve Acknowledgement And Acceptance Agreement hereby agrees that at the request of BankCard USA (BUSA) it will immediately deposit into a non-interest bearing account or accounts ("Merchant Reserve Account") with the Bank, funds to be used as a security deposit against amounts owed to the Bank or BUSA by the Merchant in accordance with the terms of  "BankCard USA" ("Merchant Agreement") and the terms of the BUSA "Merchant Account Application" ("Application").  Merchant Reserve Account may be required in the form of a security deposit account established prior to the commencement of transaction processing ("Up Front Reserve") and held for a length of time determined by BUSA and the Bank.  Such reserved funds will remain the asset of the Merchant, but may not be withdrawn by the Merchant until such time as released by the Bank pursuant to the Merchant Agreement.  BUSA may require certain merchants to have a ("Rolling") reserve with the (Upfront Reserve).  Merchants on BUSA's rolling reserve program will either be on a 6 month or 12 month rolling cycle depending on the risk level of the merchant.

In accordance with the terms of the Merchant Agreement, the BUSA Application and this Acknowledgement, the Merchant authorizes BUSA to debit the specified percentage from their total daily gross sales to be placed into the reserve account.   Merchant understands that BUSA or the Bank is authorized by the merchant to debit the reserve account for any and all fees owed to BUSA or the Bank. All fees will include but are not limited to processing fees, chargeback fees, investigation fees, association fines/fees, and any other amounts due to BUSA or Bank.

After the Rolling Reserve Holding Period, BUSA will begin to release reserves for the first month that reserves accrued as long as the merchant is in good standing.  Merchant's chargebacks must be below 1% and merchant must be processing according to their approved volumes.  BUSA or the Bank reserves the right to hold any releases or increase reserves without notice to the merchant due to suspicious activity on the merchant account, exceeding approved volume, excessive chargebacks, NSF's, or the merchant violating any portion of the merchant agreement with BUSA.  BUSA or the Bank will use their discretion in releasing reserves once BUSA or the Bank is no longer exposed to potential losses.

Merchant Name:  RagingBull

Principal's Name:  Jeff Bishop

Numbers of days ACH hold:  1 day

Percentage UP Front Deposit:   Percentage of Rolling Reserve:  10 %

Length of Time Rolling Reserve funds held in reserve: 6      months.

I have read and understand the above, the Merchant Agreement and hereby give my consent to the terms specified, in addition to any provisions in the BankCard USA (BUSA) Merchant Account Application, which are hereby confirmed:

Jeff Bishop
Jeff Bishop (Sep 24, 2020 19:42 EDT)                                                     (Merchant signature) Date:  9/24/2020

**Attachment A**          **PX 47, 4741**

# RagingBull BUSA Application

**Final Audit Report**                                        2020-09-25

| | |
|---|---|
| Created: | 2020-09-24 |
| By: | Tyler Hester (tyler@adeptpayments.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAApPo_gXIpUIcJC4GnLHp7JUCnoUdS3UwT |

## "RagingBull BUSA Application" History

🗐 Document created by Tyler Hester (tyler@adeptpayments.com)
2020-09-24 - 10:59:04 PM GMT- IP address: ▮▮▮▮▮▮

📧 Document emailed to Jeff Bishop (jeff@ragingbull.com) for signature
2020-09-24 - 11:03:29 PM GMT

🗐 Email viewed by Jeff Bishop (jeff@ragingbull.com)
2020-09-24 - 11:03:50 PM GMT- IP address: ▮▮▮▮▮▮

🖋 Document e-signed by Jeff Bishop (jeff@ragingbull.com)
Signature Date: 2020-09-24 - 11:42:06 PM GMT - Time Source: server- IP address: ▮▮▮▮▮▮

📧 Document emailed to Jason Bond (jason@ragingbull.com) for signature
2020-09-24 - 11:42:08 PM GMT

🗐 Email viewed by Jason Bond (jason@ragingbull.com)
2020-09-24 - 11:42:18 PM GMT- IP address: ▮▮▮▮▮▮

🗐 Email viewed by Jason Bond (jason@ragingbull.com)
2020-09-25 - 6:08:18 PM GMT- IP address: ▮▮▮▮▮▮

🖋 Document e-signed by Jason Bond (jason@ragingbull.com)
Signature Date: 2020-09-25 - 6:08:55 PM GMT - Time Source: server- IP address: ▮▮▮▮▮▮

✅ Agreement completed.
2020-09-25 - 6:08:55 PM GMT

📥 **Adobe Sign**

**Attachment A**                    **PX 47, 4742**

# Ending Bank of America Processing

| | |
|---|---|
| **From:** | Jordan Reyna <jordan@ragingbull.com> |
| **To:** | Jeff Bishop <jeff@ragingbull.com>, Anthony Bell <anthony@ragingbull.com> |
| **Date:** | Tue, 02 Jul 2019 16:05:31 -0400 |
| **Attachments:** | Raging Bull Termination Notice 7-2-19.pdf (399.38 kB) |

Jeff,

I spoke with BofA and they are terminating out relationship fully with them. We have 35 days from today to transfer all future renewal and end processing with them. Here are more details from the call.

-BofA to collect $300k in collateral that will be returned 90 days after dormancy (for any future cbs that may come in after account closes)
- The $300k will be collected at an amount of 25% daily over the next 35 days.

If we can close our processing with them sooner than that I think we can skip giving them so much collateral since they won't be able to pull it from our processing.

I'd like to get priority with Pell and the dev team to make this transition complete. I'll also be working with Chase to further look into processing with them to diversify.

WE need to find a way to get all future renewals scheduled for BofA to be redirected to Stripe.

Jordan

**Attachment A**                    **PX 47, 4743**



Bank of America

Merchant Services

VIA FEDEX

July 2, 2019

Jordan Reyna
RagingBull.Com LLC (f/k/a Lighthouse Media LLC)
62 Calef Highway
Lee, NH 03861

<div align="center">

NOTICE OF TERMINATION
RagingBull.com (MID: ████████████ )

</div>

Dear Jordan:

We are writing pursuant to the Merchant Processing Application and Agreement, including the Program Guide thereto (as amended from time to time, collectively, the "**Merchant Agreement**") entered into by and among **RagingBull.com (formerly known as Lighthouse Media LLC)** ("**you**"), Banc of America Merchant Services, LLC ("**BAMS**"), and Bank of America, N.A. ("**Bank**" and together with BAMS, "**we**" or "**us**") on or around February 21, 2014.  Upon review of your merchant account, it has been determined that we cannot continue providing services under the Merchant Agreement.  Accordingly, we will terminate the Merchant Agreement effective thirty-five (35) days from the date of this letter (the "**Termination Date**").  You should make alternative arrangements for accepting card payments prior to the Termination Date.

In connection with the termination of your Merchant Agreement and in accordance with your Merchant Agreement, we will be increasing the Reserve Account by an additional amount of **Three Hundred Thousand and 00/100 Dollars ($300,000.00)**, for a total Reserve Account amount of **Eight Hundred Thousand and 00/100 Dollars ($800,000)**.  This is the amount we believe is necessary to cover any unbilled processing costs plus our estimated exposure based on reasonable criteria for chargebacks, unshipped merchandise and/or unfulfilled services as applicable, and any other liabilities anticipated under the Merchant Agreement. We will begin funding the additional amount of the Reserve Account effective **July 8, 2019** by holdback of **25%** of daily deposits until the Reserve Account is fully funded.  In general, we will attempt to collect amounts that you owe to us in the same manner that we collect such amounts today.  However, we reserve the right, at any time, to collect any amounts by debiting the Reserve Account or in any other manner permitted under the Merchant Agreement.

After the Termination Date, all sales and refunds must be submitted to your new service provider.  If any sales are processed through your merchant account with us after the Termination Date, we will divert those sales to a Reserve Account and any refunds without an offsetting sale will be rejected.  Any funds moved into the Reserve Account will be returned to you after the expiration of all chargeback periods and after we have determined that there will be no further exposure or liability to us arising from the transactions that you have submitted through us.  Depending upon the activity in your account, this period should be less than ten months from your final processing date.

**Attachment A**          **PX 47, 4744**

Certain obligations under the Merchant Agreement survive termination, including your financial responsibility to reimburse us for any chargebacks, fines, fees, and/or assessments that arise from or relate to the transactions you submit to us for processing, even if received after the Termination Date.

Nothing contained herein shall be deemed a waiver of any rights we may have under the Merchant Agreement or otherwise, and we expressly reserve all such rights.

If you have any questions, please feel free to contact us.


Sincerely,


Tyler Glass
Bank of America Merchant Services Credit Risk Department

**Attachment A**                    **PX 47, 4745**

**From:**   Philippe Panneton <Philippe.Panneton@nuvei.com>
**To:**   "jordan@ragingbull.com" <jordan@ragingbull.com>, "jeff@ragingbull.com" <jeff@ragingbull.com>, "jason@ragingbull.com" <jason@ragingbull.com>
**Subject:**   Account Termination Notice
**Sent:**   Tue, 29 Sep 2020 15:00:08 +0000
███████ - Termination Notice.pdf

Hello,

After a review of your account it was determined that we are unable to support the requested monthly volume increase; based on the same review we have also determined that we will be terminating our relationship. Please see attached notice which outlines the closure of your account.

Should you wish to discuss further, please let me know and we will find a mutually convenient time.

Regards,



**Philippe Panneton, ETA CPP**
VP, Loss Mitigation and Disputes Center of Excellence
VP, Centre d'excellence, réduction des pertes et litiges

**T** (866) 585-3180 x8051  |  **F** (866) 587-9692



This e-mail message and any attachments are strictly confidential and may contain information that is exempt from disclosure under applicable law. If you are not the intended recipient, please immediately notify the sender by return e-mail and then delete the e-mail. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.

Ce message électronique et ses annexes sont strictement confidentiels et peuvent contenir de l'information qui ne doit pas être divulguée en vertu des lois applicables. Si vous n'en êtes pas le destinataire prévu, veuillez en aviser l'expéditeur immédiatement par retour du courrier électronique et le supprimer. De plus, si vous n'êtes pas le destinataire prévu, vous êtes par la présente avisé que toute diffusion, distribution ou reproduction de cette communication est strictement interdite.

**Attachment A**          **PX 47, 4746**



1375 N. Scottsdale Road, Suite 400, Scottsdale, AZ 85257
1 877-462-7486

**SENT BY E-MAIL**                                    ████████ **PREJUDICE**
                                                     September 29, 2020

**RAGINGBULL.COM LLC**
jordan@ragingbull.com
jeff@ragingbull.com
jason@ragingbull.com

**NOTICE OF TERMINATION – MERCHANT ACCOUNT #** ████████

Dear Merchant,

        The present is to give you notice of termination of the Merchant Application and
Agreement, dated November 22, 2019 **("Agreement").**, by and between Nuvei Technologies
Inc. **("Nuvei")** and Ragingbull.com LLC **("Raginbull.com")**. ████████

        In accordance with section 4.2(b)(ii) of the Agreement, which is copied below for your
benefit, such termination shall be effective as of **October 6th, 2020**.

> **"4.2. Termination**
> (…)
> (b) For Cause. **Servicer may terminate this Agreement in its sole discretion**,
> effective immediately, upon written or verbal notic████████ Merchant's point-
> of-sale terminal, if Servicer reasonably determines that any of the following
> conditions exists: (…) **(ii) there is a material adverse change in Merchant's
> financial condition (…)"** – *our marks.*

        Please be further advised that the mentioned account is currently on full hold, as per
Sections 3.5 and 5.1 of the Agreement, and any reserve balances will be reviewed for release no
sooner than 180 days post the date of the last transaction pro████████account, and a
reasonable period thereafter during which cardholder disputes may remain valid under applicable
Card Association Rules.

        The reserve balance will be returned to the Ragingbull.com after Nuvei is able to
reasonably determine that the risk of chargebacks and other fees, fines, expenses, losses or
liabilities has ended and after deducting all amounts that Ragingbull.com owes now or may in
the future owe in relation to the Agreement. ████████



**Attachment A          PX 47, 4747**



Additionally, please note that pursuant to the Agreement ████████ liable for timely payment of any refunds, chargebacks, fines or fees incurred on your account. Therefore, you must maintain adequate bank balances at all times to cover these fees.

Finally, this notice is being sent without prejudice and under reserve of all our rights under the Agreements and otherwise. Should you require further information, please contact the undersigned.

Sincerely,

Philippe Panneton

Digitally signed by Philippe Panneton
DN: cn=Philippe Panneton, o, ou,
email=ppanneton@nuvei.com, c=US
Date: 2020.09.29 10:48:57 -04'00'

**Philippe Panneton**
VP, Loss Mitigation and Disputes Center of Excellence
VP, Centre d'excellence, réduction des pertes et litiges
T (866) 585-3180 x8051 | F (866) 587-9692

**Attachment A**          **PX 47, 4748**

DocuSign Envelope ID: 28D64CB7-1C0E-4191-8298-727CB3DD99B3

**Cliq**
Costa Mesa, CA 92626
1.866.634.3044
www.cliq.com

| Office | |
|--------|--|
| Agent  | |

## Merchant Processing Application

### BUSINESS INFORMATION ("Merchant")

| | |
|--|--|
| DBA (Doing Business As): **RagingBull.com** | Legal Name: **RagingBull.com, LLC** |

| | | | | |
|--|--|--|--|--|
| Descriptor (23 Characters): **Educational Services** | Federal Tax ID | | | Number of Locations: **1** |

| | |
|--|--|
| Location Address: **11311 McCormick Rd Ste 2** | Legal Address: **62 Calef Hwy Ste #233** |

| | | | | | | |
|--|--|--|--|--|--|--|
| City: **Hunt Valley** | State: **MD** | Zip: **21031** | City: **LEE** | | State: **NH** | Zip: **03861** |

| | | | |
|--|--|--|--|
| Location Phone: **833-265-1270** | Location Fax: | Legal Phone: **833-265-1270** | Legal Fax: |

Mail To: ☐ DBA ☒ Legal Address ☐ Other: **NA**

| | | |
|--|--|--|
| Contact Name: **JORDAN** | Contact Phone: **833-265-1270** | Contact Email(s): **JORDAN@RAGINGBULL.COM** |

| | |
|--|--|
| Website Address: **RAGINGBULL.COM** | Customer Service #: **833-265-1270** |

### BUSINESS PROFILE

Type of Ownership: ☐ Sole Proprietor ☐ Partnership ☒ LLC ☐ Corp (State of Incorp: DE    ) ☐ Government ☐ Tax Exempt ☐ Other:

| | | | |
|--|--|--|--|
| Number of Years in Business: **7** | Number of Years of Current Ownership: **7** | Stock Symbol (if Publicly Traded): | MCC/SIC Code: |

| | |
|--|--|
| Prior Bankruptcy? ☐ Yes ☒ No   Date Discharged:<br>If Yes, describe: | Name of previous Visa/MC/Discover/American Express Processor:<br>(Please attach most recent 3 months statements)<br>**STRIPE** |

Have you ever been terminated from accepting bankcards? ☐ Yes ☒ No   If yes, please explain:

Have you been placed on a payment association's chargeback monitoring program in the last 2 years? ☐ Yes ☒ No

Description of Products / Services Sold:
**STOCK MARKET EDUCATIONAL SERVICES**

### PROCESSING PROFILE

#### Credit Card Processing

| | | | |
|--|--|--|--|
| Sales Method:    % Swiped +    % Imprinted + **25** % MO/TO + **75** % Internet = 100% | | Indicate Visa, MC, Discover,<br>AMEX types NOT to accept: | |
| Visa/MC/Discover<br>Average Ticket | **$500** | Visa/MC/Discover<br>Maximum Ticket | **$10,000** | Visa/MC/Discover<br>Monthly Volume | **$3,000,000** |
| American Express<br>Average Ticket | **$500** | American Express<br>Maximum Ticket | **$10,000** | American Express<br>Monthly Volume | **$1,000,000** |

☐ AMEX Merchants: By checking this box, you opt out of receiving future commercial marketing communications from American Express.

#### ACH Processing

| | | |
|--|--|--|
| Corporate Credit or Debit<br>☐ CCD Credit ☐ CCD Debit | Pre-arranged Payment and Deposits<br>☐ PPD Credit ☐ PPD Debit | Web Initiated Entry<br>☐ WEB Debit |

| | | |
|--|--|--|
| Descriptor (Limited to 15 Characters): | Authorized Signor (for Changes and Requests): | |

| | | | | | |
|--|--|--|--|--|--|
| **Merchant's Activity** | Average Items / Month | # | Average Item Amount | $ | Average Returns / Month | # |
| **Requested Maximum Limits** | Max Transaction Amount | $ | Max Daily Volume | $ | Max Monthly Volume | $ |
| | Daily Transaction Count | # | Monthly Transaction Count | # | | |

#### PROCESSING DETAILS
(Required for card not present transactions)

| | |
|--|--|
| What is the delivery timeframe to the consumer?<br>☒ 0-7 Days ☐ 8-14 Days ☐ 15-30 Days ☐ 30+ Days | Who owns the product? ☒ Merchant ☐ Vendor |
| Are consumers required to place a deposit? ☐ Yes    % ☒ No, paid in full | Name and address of the fulfillment house, if any:<br>N/A |
| How far in advance do you take payments?<br>   % days    % days | Name and address of your supplier, if any:<br>N/A |
| What is your return, cancelation, or refund policy?<br>NO REFUND | How do you advertise? ☐ Catalog ☐ TV or Radio ☒ Direct Mail ☒ Internet<br>☐ Other: |
| Will the product be marketed or sold outside of the U.S.? ☐ Yes ☒ No<br>If Yes, Describe: | What is your warranty/guaranty?<br>NONE |
| What percentage of sales transactions are with international cards?    % | Is your business seasonal? ☐ Yes ☒ No  Months:    to |

**Attachment B          PX 47, 4749**

DocuSign Envelope ID: 28D64CB7-1C0E-4191-8298-727CB3DD99B3

**Cliq**

| PRINCIPALS/BENEFICIAL OWNERS/PARTNERS/OFFICERS | | |
|---|---|---|
| (All persons or legal entities holding, directly or indirectly, through any contract, arrangement, understanding, relationship or otherwise, at least 25% of the equity interests of the company must be listed) | | |
| *Note: This information is used solely to satisfy "Know Your Customer" identity verification requirements. If a credit check is performed on this application, it will only be conducted on the person(s) signing the application.* | | |

| (1) Name (print):JEFF BISHOP | Title:CEO | Equity/Ownership: 65 % |
|---|---|---|
| ██████████████████████████████ | ██████████████████████████████ | ██████████████████ |

| (2) Name (print):JASON BOND | Title:CO-OWNER | Equity/Ownership: 25 % |
|---|---|---|
| ██████████████████████████████ | ██████████████████████████████ | ██████████████████ |

| (3) Name (print): | | Title: | | Equity/Ownership:_____% |
|---|---|---|---|---|
| Date of Birth: | Driver's License #: | State: | SSN: | Home Phone: |
| Home Address: | City: | | State: | Zip Code: |

| (4) Name (print): | | Title: | | Equity/Ownership:_____% |
|---|---|---|---|---|
| Date of Birth: | Driver's License #: | State: | SSN: | Home Phone: |
| Home Address: | City: | | State: | Zip Code: |

| Controlling Person | | |
|---|---|---|
| Any individual with significant management responsibility (example: CEO, CFO, Treasurer, President, VP, etc.) | | |

| Name (print):   JEFF BISHOP | Title:CEO | Equity/Ownership: 65 % |
|---|---|---|
| ██████████████████████████████ | ██████████████████████████████ | ██████████████████ |

To help the government fight financial crime, Federal law requires financial institutions to obtain, verify, and record information about the beneficial owners of legal entity customers. Legal entities can be abused to disguise involvement in terrorist financing, money laundering, tax evasion, corruption, fraud, and other financial crimes. Requiring the disclosure of key individuals who own or control a legal entity (i.e., the beneficial owners) helps law enforcement investigate and prosecute these crimes.

By signing below, I attest that I have accurately provided the name, address, date of birth, Social Security Number (SSN) and other applicable information for all beneficial owners holding 25% or more of the company and for all controlling persons.

| Merchant Signature: X | *Jeff Bishop* | Title: | President | Date: | 10/2/2020 | 11:58 AM PDT |
|---|---|---|---|---|---|---|
| | DocuSigned by | | | | | |

| BANK INFORMATION | | |
|---|---|---|
| For Deposits | ██████████████████████████████████████ | |
| For Fee Debits *(if Different)*   Account Number: | Routing Number: | |
| Please provide a copy of a Voided Check or Bank Letter signed by a bank officer with Bank Name, ABA and DDA listed. Please be advised that Starter Checks are not acceptable | | |

**Attachment B**                    **PX 47, 4750**

DocuSign Envelope ID: 28D64CB7-1C0E-4191-8298-727CB3DD99B3

## Cliq

### Credit Card Processing

| ■ INTERCHANGE PLUS | □ TIERED | □ ERR |
|---|---|---|

**■ INTERCHANGE PLUS**

Includes dues and assessments

**BASED ON GROSS**

MasterCard/Visa/Discover Credit    1.50 %

MasterCard/Visa/Discover Debit    1.50 %

Other Item Rate    $_____

Other Volume    _____ %

**□ TIERED**

| | Discount | Trans Fee |
|---|---|---|
| MC/V/Disc Debit Qual | _____ % | $_____ |
| MC/V/Disc Credit Qual | _____ % | $_____ |
| MC/V/Disc Mid-Qual | _____ % | $_____ |
| MC/V/Disc Non-Qual | _____ % | $_____ |

**□ ERR**

| | Discount | Non-Qual |
|---|---|---|
| MC/V/Disc Credit Qual | _____ % | _____ % |
| MC/V/Disc Debit Qual | _____ % | _____ % |

### OTHER TRANSACTION FEES (ALL CARD TYPES)

Authorization Fee.................. $.12    Item Fee.................. $0.00    Return Transaction Fee.................. $_____

Electronic AVS.................. $.10    Gateway Transaction Fee.................. $_____    Wireless Transaction Fee.................. $_____

### PER OCCURENCE FEES

Batch Fee.................. $.20    Chargeback Fee.................. $30    Retrieval Fee.................. $15

### MONTHLY FEES

Statement Fee.................. $10    Monthly Minimum.................. $25    Online Reporting.................. $0.00

### OTHER CARD TYPES (IF APPLICABLE)

PIN Debit    Monthly Debit Access Fee  $_____    Other Volume _____ %    Other Item Rate  $_____

EBT    □ Food Stamps  □ Cash Benefits    FNS# _____    Other Item Rate  $_____

Special Fee Conditions / Notes:

Preferred Discount Method *(Final Determination Made by Processor)*: □ Daily  □ Monthly

■ Pass Through All Brand Fees    ■ Pass through Dues and Assessments

**Other Fees**

Voice Authorization.................. $1.00 per transaction
ARU Authorization.................. $1.00 per transaction
Monthly PCI Compliance Fee.. $4.95
Annual PCI Compliance Fee__ $59.99
PCI Non-Compliance Fee.. $29.99 per month
Per ACH Reject Fee.................. $25.00
TIN Mismatch Fee.................. $24.99
Government Compliance....... $4.95 per month
Dispute Resolution.................. $35.00
Annual Fee.................. $69.99

### American Express

□+ American Express Opt Blue    □ AMEX ESA (Over $1M annually)    □ Decline Amex

ESA SE#: _____

| Interchange Plus | Discount | 1.50 % | Tiered Discount | Qualified | _____ % |
|---|---|---|---|---|---|
| | Other Volume | _____ % | | Mid-Qual | _____ % |
| | Other Item Rate | $.12 | | Non-Qual | _____ % |

Estimated Annual Amex Volume: $_____    Pass American Express Network Fee: Yes

### ACH Processing

Item Fee: $_____ and _____% each item    Monthly Fee: $_____    Setup Fee: $_____

Monthly Minimum: $25.00    Inquiry Fee: $5.00    Overdraft Fee: $25.00  each occurrence

Over Monthly Limit Surcharge: $0.10 + 0.10%    File Load Fee: $0.50 / Batch

Returned Item Fee: $5.00    Late Returned Item Fee: $20.00  *(Each rejected or corrected item)*

Excessive Return (>1%) Fee: $1.00 / Item    Excessive Late Return (>10%) Fee: $3.00 / Item

### EQUIPMENT

| Type of Equipment | Model / Description | Quantity | Amount | Reprogram? | Charge |
|---|---|---|---|---|---|
| □ Terminal □ Printer □ PIN Pad ■ VAR □ Other | NEXIO | | $ | □ Yes ■ No | ■ Merchant □ ISO |
| □ Terminal □ Printer □ PIN Pad □ VAR □ Other | | | $ | □ Yes □ No | □ Merchant □ ISO |

Terminal Setup   Time Zone:    □ Retail □ Restaurant □ Lodging □ MO/TO □ Other:    □ Auto Batch Time:    □ "8" □ "9"

□ Dial-up □ IP  Programming By: □ ISO/Agent □ Cliq  Contact:    Phone:    Deliver To: □ Merchant □ ISO

| Gateway | □ Cliq □ Auth.net □ USA ePay □ Other: | Gateway Setup Fee: $ | Gateway Monthly Fee: $ |
|---|---|---|---|
| Notes: | | Wireless Setup Fee: $ | Wireless Monthly Fee: $ |

**Attachment B    PX 47, 4751**

DocuSign Envelope ID: 28D64CB7-1C0E-4191-8298-727CB3DD99B3

**Cliq**

## BANK AND ASSOCIATION DISCLOSURE

**Merchant Service Provider Information ("ISO"):** CardFlex Inc (DBA "Cliq"), 2900 Bristol Street Suit F-201, Costa Mesa, CA 92626, www.cliq.com, 866-634-3044
**Member Bank Information ("Bank"):** Evolve Bank and Trust, 6070 Poplar Avenue, Memphis, TN 38119 901-624-5500
**Important Bank Responsibilities:**
- Bank is the only entity approved to extend acceptance of VISA products directly to a Merchant.
- Bank is and must be a principal (signor) to the Merchant Agreement.
- Bank is responsible for educating Merchants on pertinent VISA Operating Regulations with which Merchants must comply.
- Bank is responsible for and must provide Settlement funds to the Merchant.
- Bank is responsible for all funds held in reserve that are derived from settlement.

**Important Merchant Responsibilities:**
- Ensure compliance with Cardholder data security, transmission, disclosure and storage requirements.
- Maintain fraud and chargebacks below thresholds.
- Review and understand the terms of the Merchant Agreement.
- Comply with VISA, MasterCard, and Discover Operating Regulations, including not using a Merchant Servicer unless approved by Bank and ISO.
- You may download Visa Regulations from their website at:  http://usa.visa.com/merchants/operations/op_regulations.html
- You may download MasterCard Regulations from their website at:  http://www.mastercard.com/us/merchant/support/rules.html
- You may download merchant information from their website at http://www.discovernetwork.com/merchants/index.html

Nothing in this Application is intended to supersede or vary the terms of the Merchant Agreement, which is hereby incorporated by reference. To the extent any conflict arises between this Application and the Merchant Agreement, the latter shall be deemed controlling. Merchant is hereby further advised that the Bank is the ultimate authority should the Merchant have any problems.

| Merchant Signature: X _Jeff Bishop_ | Title: President | Date: 10/2/2020 \| 11:58 AM PDT |

## MERCHANT ACCEPTANCE AND DECLARATIONS

**Resolution:** (Note: only applicable if the business submitting this Application is a corporation, partnership, limited liability partnership or limited liability company) The undersigned hereby certifies that a resolution a substantially similar to the following was adopted by the Board of Directors (or partners/members as applicable) of the organization submitting this application (the "Merchant"), at which a quorum was present; and that such resolutions are in conformity with the provisions of the articles and bylaws (or partnership or operating agreement) of the Merchant; and that such resolutions are now in full force and effect and have not been amended or revoked. "RESOLVED, that the individual who has signed the Merchant Agreement set forth below is hereby authorized and directed to prepare, execute, and make an application to ISO and Bank (collectively, "Service Providers") for payment card processing under the Service Provider's Merchant Agreement (the "Agreement"), and such person, as well as any other officer/partner/member of the Merchant is authorized to negotiate and amend the terms and conditions of the Agreement on behalf of and in the name of the Merchant, thereby binding the Merchant, and the Merchant shall be responsible for the payment of all amounts owing to Service Providers pursuant to the terms and conditions of the Agreement from time to time; RESOLVED, that the Secretary/General Partner/Manager of the Merchant (whether or not the same person who will or has signed the Agreement) is authorized and directed to certify in connection with an application for the Agreement that the foregoing resolutions and the provisions thereof are in conformity with, as applicable, the articles and bylaws (or operating agreement) of the Merchant and that the foregoing resolutions and the authority contained therein shall remain in full force and effect until the following conditions are met: (i) the Merchant notifies Service Providers to the contrary in writing, and (ii) the Merchant terminates the Agreement; provided, however, the Merchant acknowledges that, in any case, following termination Merchant will remain obligated for all amounts due under the Agreement; and FURTHER RESOLVED, that the individual who has signed Agreement, as well as any officer/partner/member of the Merchant is hereby authorized to perform such other acts as may be necessary and proper in connection with the Merchant's obligations under the Agreement."

**Initials of Person Making Certification:** _JB_

**Term of Merchant Agreement:** By signing below the individual(s): (1) Certifies that he/she is the Merchant or is authorized to make and execute this application on behalf of the Merchant, and that all information and documents submitted in connection with this Application are true and complete; (2) Authorizes Service Providers: (a) to verify any of the information provided on this Application; (b) to investigate, obtain, and exchange reports and information, including information from the Internal Revenue Service, regarding the creditworthiness of both that individual and, if different, the Merchant; (c) if this Application is approved, to update that information from time to time; and (d) to share this information with its affiliates; (3) Acknowledges having retrieved, printed and read a copy of the Service Provider's Merchant Program Agreement (the "Cliq Agreement") www.cliq.com.log (version 20190605) the terms and conditions of which are incorporated herein by this reference. Service Providers may amend, add to or delete ("Change") any of the provisions in, to or of the Cliq Agreement from time to time, as provided in the Cliq Agreement; (4) Agrees that (a) any transactions submitted after the effective date of any such Change will be subject to the terms and conditions of the Cliq Agreement as so Changed and that if Merchant does not wish to accept any Change, Merchant must cease tendering Card items prior to the effective date of such change and notify Service Providers in writing of Merchant's intention to terminate participation in the program, as contemplated by the Merchant Agreement; (b) Merchant will be bound by each card transaction submitted to ISO or Bank and Merchant Agreement; and (c) Merchant will submit card transactions to Service Providers only in accordance with the information provided by Merchant in this Application, and will immediately inform Service Providers in writing if any information in this Application changes. This Application is subject to approval by Service Providers.

**I have viewed the Merchant Agreement at www.cliq.com/mpa** _JB_

**Term of ACH Processing Agreement:** The undersigned hereby authorizes Cliq, in accordance with this Application and the Merchant Agreement, to initiate debit and credit entries to the business checking account as indicated on the enclosed voided check. This authority is to remain in full force and effect until (a) Cliq has received written notification from Merchant of its intent to cancel in such manner as to afford Cliq reasonable opportunity to act on it; and (b) all obligations of Merchant to Cliq that have arisen under the Cliq Agreement have been paid in full, including, without limitation, those obligations described in paragraph 7 of this Agreement. This authorization extends to such entries in said account concerning lease, rental or purchase agreements for software and/or accompanying equipment. By signing below, the undersigned hereby certifies that the information provided in this Application is, to the best of his/her knowledge, complete and correct, and acknowledges having retrieved, printed and read a copy of the ACH Processing Agreement and all exhibits thereto. (see www.cliq.com/achpg version 1.4) the terms and conditions of which are incorporated herein by reference. The undersigned further certifies that he/she is an individual holding significant responsibility for managing the business listed above, such as a corporate officer (CEO, etc.), senior executive or other individual who regularly performs similar functions and able to bind the company into legal contracts.

**I have viewed the ACH Processing Agreement at www.cliq.com/achpg** _JB_

Any disputes or claims between the parties hereto, including their successors, assigns, affiliates, third party subcontractors, and/or agents, arising out of or relating to this agreement or the services to be provided hereunder (whether based on contract, tort, fraud, equitable relief, or any other legal theory, including state and federal statutory claims), at the option of either party, shall be resolved exclusively by neutral binding arbitration conducted and administered by and under the applicable rules of the American Arbitration Association ("AAA"). The Parties agree to waive the right to bring or participate in any consolidated or class action and agree that all forms of class action or class arbitration are expressly prohibited. The Parties understand they will not have the right to a trial by a court or a jury and that the information that can be obtained in discovery from each other or from third parties in arbitration is generally more limited than in a lawsuit. In addition, other rights that the parties would have in court may not be available in arbitration.

| Owner/Officer Signature #1: X _Jeff Bishop_ | Title: President | Date: 10/2/2020 \| 11:58 AM PDT |
| Owner/Officer Signature #2: X | Title: | Date: |

## PERSONAL GUARANTEE

**Personal Guaranty:** The undersigned (each a "Guarantor") hereby, individually, agree to the terms set forth in section 2.12 of the Merchant Agreement. The undersigned Guarantors further agree to pay to the Service Providers all expenses (including attorney fees and court costs) paid or incurred by the Service Providers in collecting such obligations and in enforcing this Guaranty.

| Guarantor Signature #1: X _Jeff Bishop_ DocuSigned by: | Title: President | Date: 10/2/2020 \| 11:58 AM PDT |
| Guarantor Signature #2: X _Jason Bond_ DocuSigned by: | Title: co-founder | Date: 10/2/2020 \| 11:48 AM PDT |

**Attachment B**          **PX 47, 4752**



## Certificate Of Completion

Envelope Id: 28D64CB71C0E41918298727CB3DD99B3
Subject: Please DocuSign: MERCHANT_APPLICATION - RAGINGBULL- Signature.pdf
Source Envelope:

| | | |
|---|---|---|
| Document Pages: 4 | Signatures: 5 | Status: Completed |
| Certificate Pages: 5 | Initials: 6 | |
| AutoNav: Enabled | | Envelope Originator: |
| EnvelopeId Stamping: Enabled | | Ryan Robbins |
| Time Zone: (UTC-08:00) Pacific Time (US & Canada) | | 4580 Thousand Oaks Blvd |
| | | #125 |
| | | Westlake Village, HIDDEN_NO_SELECT 91362 |
| | | ryan@goatpayments.com |
| | | IP Address |

## Record Tracking

| | | |
|---|---|---|
| Status: Original | Holder: Ryan Robbins | Location: DocuSign |
| 10/2/2020 11:40:23 AM | ryan@goatpayments.com | |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Jason Bond | *Jason Bond* | Sent: 10/2/2020 11:46:11 AM |
| Jason@ragingbull.com | E20C4337BA1245B... | Viewed: 10/2/2020 11:47:53 AM |
| co-founder | | Signed: 10/2/2020 11:48:22 AM |
| Security Level: Email, Account Authentication (None) | Signature Adoption: Pre-selected Style Using IP Address | |
| **Electronic Record and Signature Disclosure:** Accepted: 10/2/2020 11:47:53 AM ID: 8f37d3f5-3742-44aa-aee2-ea95bfde8b06 | | |
| Jeff Bishop | *Jeff Bishop* | Sent: 10/2/2020 11:46:11 AM |
| Jeff@ragingbull.com | 4E00838D3C7A4AB... | Viewed: 10/2/2020 11:57:53 AM |
| President | | Signed: 10/2/2020 11:58:24 AM |
| Security Level: Email, Account Authentication (None) | Signature Adoption: Pre-selected Style Using IP Address | |
| **Electronic Record and Signature Disclosure:** Accepted: 10/2/2020 11:57:53 AM ID: 6fd233b0-87bb-4997-bc62-db608a7b5e5e | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 10/2/2020 11:46:11 AM |
| Certified Delivered | Security Checked | 10/2/2020 11:57:53 AM |
| Signing Complete | Security Checked | 10/2/2020 11:58:24 AM |
| Completed | Security Checked | 10/2/2020 11:58:24 AM |

| Payment Events | Status | Timestamps |
|---|---|---|

| Electronic Record and Signature Disclosure |
|---|

**Attachment B**                    **PX 47, 4754**

Electronic Record and Signature Disclosure created on: 9/26/2018 10:42:21 AM
Parties agreed to: Jason Bond, Jeff Bishop

## ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, Impact Merchant Solutions (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

### Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

### Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

### Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

### All notices and disclosures will be sent to you electronically

**Attachment B**                    **PX 47, 4755**

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Impact Merchant Solutions :**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: lauren@impactmerchantsolutions.com

**To advise Impact Merchant Solutions of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us
at lauren@impactmerchantsolutions.com and in the body of such request you must state: your previous email address, your new email address. We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Impact Merchant Solutions**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email
to lauren@impactmerchantsolutions.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Impact Merchant Solutions**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to lauren@impactmerchantsolutions.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Impact Merchant Solutions as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Impact Merchant Solutions during the course of your relationship with Impact Merchant Solutions .

**Attachment B**          **PX 47, 4757**

# maverick

26520 Agoura Road 1st Floor,
Calabasas, CA 91302
P:(800) 464-9777 | F:(888) 772-9106

Avidia Bank
42 Main St, Hudson, MA 01749 | (800)
508-2265

## MERCHANT ACCOUNT APPLICATION AND AGREEMENT V1.5

### INTERNAL USE ONLY

| Merchant # | Agent/Sales Partner |
|---|---|
| RagingBull com, LLC | Goat Payments |

## GENERAL INFORMATION

**CORPORATE / LEGAL NAME**
RagingBull.com, LLC

| LOCATION ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|
| 62 Calef Hwy #233 | Lee | New Hampshire | 03861 |

**MERCHANT NAME(DBA OR TRADE NAME)**    ☐ Information same as above corporate / legal
RagingBull.com

| LOCATION ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|
| 11311 McCormick Rd Ste 200 | Hunt Valley | Maryland | 21031 |

## CONTACT INFORMATION

| CUSTOMER SERVICE NUMBER | CONTACT TELEPHONE | FAX NUMBER |
|---|---|---|
| +1 833-265-1270 | +1 833-265-1270 | |

| CUSTOMER SERVICE EMAIL | CONTACT EMAIL ADDRESS |
|---|---|
| jordan@ragingbull.com | jordan@ragingbull.com |

| YEARS IN BUSINESS | WEBSITE ADDRESS | # OF LOCATIONS |
|---|---|---|
| 7 | http://ragingbull.com | |

**DOES THIS BUSINESS CURRENTLY PROCESS CARDS?**   **CURRENT PROCESSOR**      **FEDERAL TAX ID NUMBER**
☐ YES   ☑ NO      ▮▮▮▮▮▮▮

| AVERAGE TRANSACTION AMOUNT | MAXIMUM TRANSACTION AMOUNT | MONTHLY VOLUME | PLEASE CHOOSE MAILING ADDRESS: |
|---|---|---|---|
| $500 | $10000 | $3000000 | ☐ DBA ADDRESS   ☑ LEGAL ADDRESS |

**DESCRIBE YOUR PRODUCT/SERVICE:**    **MCC/SIC CODE:**
EDUCTAIONAL SERVICES

PAYMENT CARD INDUSTRY DATA SECURITY STANDARD  MUST PROVIDE COPY OF SELF ASSESSMENT QUESTIONNAIRE  IF APPLICABLE, MUST PROVIDE CERTIFICATE OF COMPLIANCE  MERCHANTS HAVE 90 DAYS AFTER BOARDING TO BECOME PCI COMPLIANT BY PROVIDING SAQ AND/OR SCAN, OR WILL BE CHARGED NON-COMPLIANCE FEE

## OWNERSHIP TYPE

☐ INDIVIDUAL / SOLE PROPRIETOR   ☐ PARTNERSHIP   ☐ CORPORATION   ☐ GOVERNMENT   ☑ LLC
☐ NON-PROFIT (MUST PROVIDE 501C3 LETTER)   ☐ PUBLICLY TRADED PA/PC

## LOCATION

| **BUILDING TYPE** | ☐ SHOPPING CENTER | ☑ OFFICE BUILDING | ☐ INDUSTRIAL BUILDING | ☐ RESIDENCE |
|---|---|---|---|---|
| **MERCHANT** | ☐ OWNS | ☑ RENTS | | |
| **AREA ZONED** | ☑ COMMERCIAL | ☐ INDUSTRIAL | ☐ RESIDENTIAL | |
| **SQUARE FOOTAGE** | ☐ 0-500 | ☐ 501-2500 | ☐ 2501-5000 | ☐ 5000-10000   ☑ 10,000+ |

## PRINCIPALS (MUST HAVE AT LEAST 51% COMBINED OWNERSHIP)

PLEASE LIST ALL PRINCIPALS WHO, DIRECTLY OR INDIRECTLY, THROUGH ANY CONTRACT, ARRANGEMENT, UNDERSTANDING, RELATIONSHIP OR OTHERWISE, OWN 25 PERCENT OR MORE OF THE EQUITY INTERESTS OF THE LEGAL ENTITY LISTED IN THIS APPLICATION

**1. PRINCIPAL NAME**

| FIRST | MIDDLE | LAST | | %OWNERSHIP | TITLE: |
|---|---|---|---|---|---|
| Jeff | | Bishop | ▮▮ | 65 | CEO |

**2. PRINCIPAL NAME**

| FIRST | MIDDLE | LAST | | %OWNERSHIP | TITLE: |
|---|---|---|---|---|---|
| Jason | | Bond | ▮▮ | 25 | Co-Owner |

**Attachment C**          **PX 47, 4758**

## CONTROLLING PERSON

COMPLETE THE FOLLOWING INFORMATION FOR ONE INDIVIDUAL WITH SIGNIFICANT RESPONSIBILITY FOR MANAGING THE LEGAL ENTITY LISTED IN THIS APPLICATION, SUCH AS • AN EXECUTIVE OFFICER OR SENIOR MANAGER (E.G., CHIEF EXECUTIVE OFFICER, CHIEF FINANCIAL OFFICER, CHIEF OPERATING OFFICER, MANAGING MEMBER, GENERAL PARTNER, PRESIDENT, VICE PRESIDENT, TREASURER); OR • ANY OTHER INDIVIDUAL WHO REGULARLY PERFORMS SIMILAR FUNCTIONS. IF APPROPRIATE, AN INDIVIDUAL LISTED UNDER THE SECTION ABOVE MAY ALSO BE LISTED IN THIS SECTION

IS THIS INDIVIDUAL ALREADY LISTED IN THE PRINCIPAL SECTION. *(If No, please complete the next section)*

■ YES    ☐ NO

| FIRST | MIDDLE | LAST | ████ | TITLE: |
|-------|--------|------|------|--------|
| Jeff | | Bishop | ████ | CEO |

████████████████████████████

## MERCHANT ACCOUNT APPLICATION AND AGREEMENT V1.5

**HAVE MERCHANT OR OWNERS / PRINCIPALS EVER FILED**

☐ BUSINESS BANKRUPTCY     ☐ PERSONAL BANKRUPTCY     ■ NEVER FILED     (If yes, please explain:)

**HAVE MERCHANT OR OWNERS / PRINCIPALS EVER BEEN TERMINATED FROM ACCEPTING BANKCARDS FOR THIS BUSINESS OR ANY OTHER BUSINESSES?**

■ NO     ☐ YES     (If yes, please explain:)

**WHICH PAYMENTS WOULD YOU LIKE TO ACCEPT? (CHECK ALL THAT APPLY.)**

■ VISA, MASTERCARD, DISCOVER, AMERICAN EXPRESS OPTBLUE®     ☐ PIN DEBIT     ☐ EBT - EBT FNS NUMBER _____

NOTES:

### SALES METHOD (MUST EQUAL 100%)

| RETAIL SWIPED | 0 % | MAIL/PHONE | 25 % | INTERNET | 75 % |
|---------------|-----|------------|------|----------|------|

### BANK ACCOUNT INFORMATION (ATTACH VOIDED CHECK FOR BANK ACCOUNT WHERE FUNDS ARE TO BE DEPOSITED)

| ROUTING NUMBER | ACCOUNT NUMBER |
|----------------|----------------|
| ████ | ████ |

### MERCHANT QUESTIONNAIRE (PLEASE PROVIDE ALL APPLICABLE INFORMATION)

**A. FOR ALL MERCHANTS**

i PLEASE DESCRIBE YOUR REFUND/RETURN POLICY

No Refunds

ii PLEASE LIST EQUIPMENT AND/OR SOFTWARE USED TO PROCESS CARDS (POINT-OF-SALE, TERMINAL, PAYMENT GATEWAY, ETC.)

Nexio Gateway

**B. FOR CARD-NOT PRESENT MERCHANTS (E-COMMERCE & MOTO)**

i INVENTORY MAINTAINED

☐ ON-SITE     ☐ OFF-SITE (I.E. WAREHOUSE)  IF SO, PROVIDE ADDRESS _____

☐ 3RD PARTY FULFILLMENT CENTER. IF SO, PROVIDE FULLY EXECUTED FULFILLMENT AGREEMENT     ■ SERVICE ONLY(NO PRODUCTS SOLD)

ii ARE THERE ANY OTHER COMPANIES INVOLVED IN SHIPPING OR FULFILLING PRODUCT/SERVICE (I.E. FULFILLMENT CENTER)?

■ NO     ☐ YES. IF SO, PROVIDE FULLY EXECUTED FULFILLMENT AGREEMENT

iii DO YOU OFFER RECURRING AND TIME-EXTENDED SERVICES (SUBSCRIPTIONS, MEMBERSHIPS, RECURRING PLANS, ETC.)? IF YES, PLEASE DESCRIBE AND INCLUDE DURATION

The Merchant offers several different payment plans monthly up to yearly.

iv CUSTOMER PROFILE (ESTIMATE THE PERCENTAGE OF SALES IN EACH CATEGORY - MUST ADD UP TO 100%)

| INDIVIDUAL CONSUMERS 90 % | BUSINESSES 10 % | GOVERNMENT 0 % |
|---------------------------|-----------------|----------------|

v CUSTOMER LOCATION PROFILE (ESTIMATE THE PERCENTAGE OF EACH CARDHOLDER'S LOCATION - MUST ADD UP TO 100%)

| LOCAL 0 % | NATIONAL 95 % | INTERNATIONAL 5 % |
|-----------|---------------|-------------------|

vi HOW LONG AFTER CHARGING THE CUSTOMER IS THE PRODUCT FULFILLED OR DOES THE SERVICE BEGIN?

WITHIN   ■ 24 HOURS   ☐ 2 DAYS   ☐ 3-10 DAYS   ☐ 11-30 DAYS   ☐ 31-90 DAYS   ☐ 90 + DAYS   ☐ Other

Other:

vii HOW LONG AFTER THE TIME OF ORDER DOES THE CARDHOLDER RECEIVE THE PRODUCT OR SERVICE?

WITHIN   ■ 24 HOURS   ☐ 2-5 DAYS   ☐ 6-10 DAYS   ☐ 11+ DAYS   ☐ Other

**Attachment C**          **PX 47, 4759**

**Other:**

viii  IS THE CARDHOLDER CHARGED AT

☑ TIME OF ORDER          ☐ UPON SHIPMENT / COMPLETION OF SERVICES

xi  DO YOU HAVE A RETAIL LOCATION (FOR MOTO/INTERNET MERCHANTS)? IF YES, PLEASE CONFIRM PHYSICAL ADDRESS

no

x  HOW DO YOU ADVERTISE (INTERNET, MAGAZINES, TV, ETC )? LIST ALL THAT APPLY

Internet, Magazine, Print.

xi  IS YOUR BUSINESS SEASONAL?

☐ YES      ☑ NO      IF YES, WHICH MONTHS?

| ☐ JANUARY | ☐ FEBRUARY | ☐ MARCH | ☐ APRIL | ☐ MAY |
| ☐ JUNE | ☐ JULY | ☐ AUGUST | ☐ SEPTEMBER | ☐ OCTOBER |
| ☐ NOVEMBER | ☐ DECEMBER | | | |

## MERCHANT ACCOUNT APPLICATION AND AGREEMENT V1.5

### MERCHANT ACCEPTANCE AND AGREEMENT

By executing this Merchant Application on behalf of the merchant described above (the "Merchant"), the undersigned individual(s)  (i) represent(s) and warrant(s) that all information contained in this Merchant Application is true, correct and complete as of the date of this Merchant Application, and that such individual(s) have the requisite corporate power and authority to complete and submit this Merchant Application and make and provide the acknowledgements, authorizations and agreements set forth below, both on behalf of the Merchant and individually; (ii) acknowledge(s) that the information contained in this Merchant Application is provided for the purpose of obtaining, or maintaining a merchant account with Bank and ISO on behalf of the Merchant; (iii) authorize Bank and ISO to investigate the credit of the Merchant and each person listed on this Merchant Application; (iv) agree, on behalf of the Merchant and in the event this Merchant Application is accepted and executed by Bank and ISO, to the Fee Schedule set forth above and to the Terms and Conditions included with and incorporated into this Merchant Agreement  Merchant understands that this Agreement shall not take effect until Merchant has been approved by Bank and ISO, and a merchant number is issued

**Merchant**  (Legal Name of Business)

RagingBull.com, LLC

**Principal 1**  (Signature of Principal/Owner) | Title:
|  | CEO

**Principal 2**  (Signature of Principal/Owner) | Title:
|  | Co-Owner

**Avidia Bank**  (Signature) | Name and Title:

**Maverick BankCard, Inc.**  (Signature) | Name and Title:

### PERSONAL GUARANTEE

In consideration of Bank's and ISO's acceptance of this Agreement, the undersigned Principal ("Guarantor") (jointly and severally if more than one) unconditionally guarantees the performance of all obligations of Merchant to Bank and ISO under the Agreement, and payment of all sums due there under, and in the event of default, hereby waives notice of default and agrees to indemnify Bank and ISO for all funds due from Merchant pursuant to the terms of the Agreement  Guarantor waives any and all rights of subrogation, reimbursement or indemnity

Attachment C                    PX 47, 4760

derived from Merchant, and further waives any and all rights or defenses arising by reason of any modification or change in the terms of the Agreement whatsoever, including, without limitation, the renewal, extension, acceleration, or other change in the time any payment or other performance there under is due, and / or any change in any interest or discount rate or fee there under  Guarantor confirms that Guarantor, collectively or individually, is a party to the Agreement, and unconditionally and specifically authorizes Bank and ISO or their authorized agents, to debit any overdue fees, costs, chargebacks, fines, fees, penalties, expenses or obligations under the Agreement and / or any contractual relationship with Bank and ISO from any personal checking account or other account owned or controlled by Guarantor, and further to report any default hereunder on Guarantor's personal Credit Bureau Report  Guarantor agrees to pay all costs and expenses of whatever nature, including attorneys' fees and other legal expenses, incurred by or on behalf of Bank in connection with the enforcement of this Guaranty

**Guarantor 1**                                                    Date:

|  | Oct 1, 2020 |
|--|--|

**Guarantor 2**                                                    Date:

|  | Oct 1, 2020 |
|--|--|

**Attachment C**                          **PX 47, 4761**

## MERCHANT ACCOUNT APPLICATION AND AGREEMENT V1.5

### BANK DISCLOSURE: Member Bank Information

Avidia Bank | 42 Main St | Hudson, MA 01749

**Important Bank Responsibilities**

1. Avidia Bank is the only entity approved to extend acceptance of VISA products directly to a Merchant.

2. Avidia Bank must be a principal (signor) to the Merchant Agreement

3. Avidia Bank is responsible for educating Merchants on pertinent VISA Operating Regulations with which Merchants must comply.

4. Avidia Bank is responsible for and must provide settlement funds to the Merchant

5. Avidia Bank is responsible for all funds held in reserve that are derived from settlement.

**Important Merchant Responsibilities**

1. Ensure compliance with cardholder data security and storage requirements.

2. Maintain fraud and chargebacks below thresholds

3. Review and understand the terms of the Merchant Agreement.

4. Comply with VISA Operating Regulations

The responsibilities listed above do not supersede terms of the Merchant Agreement and are provided to ensure the Merchant understands some important obligations of each party and that the VISA Member – Avidia Bank - is the ultimate authority should the Merchant have any problems.

........................................................................................................................................................................................

| Principal 1 Signature | Date | Principal 1 Printed Name & Title |
|---|---|---|
|  | Oct 1, 2020 | Jeff Bishop |

| Principal 2 Signature | Date | Principal 2 Printed Name & Title |
|---|---|---|
|  | Oct 1, 2020 | Jason Bond |

**Attachment C**                          **PX 47, 4762**

# MERCHANT AGREEMENT V1.5

In consideration of the mutual promises and covenants contained in this Merchant Agreement ("Agreement"), and the agreement of Merchant to participate in the card processing services program established by Bank, the parties agree as follows

## 1. Parties

The parties to this Agreement are Avidia Bank, a federally chartered bank whose address is 42 Main Street, Hudson MA 01749 ("Bank"), Maverick BankCard, Inc., a California corporation, whose address is 26520 Agoura Road 1st Floor, Calabasas CA 91302 ("ISO"), and the Merchant set forth on the Merchant Application form to which this Agreement is attached ("Merchant")

## 2. Definitions

For the purposes of this Agreement and the Schedules referred to herein, the following definitions apply unless the context otherwise requires

"Address Verification" means a service that allows Merchant to verify the home address of Cardholders with the relevant Issuer

"Applicable Law" means  (i) all applicable federal, state and local laws, rules and regulations; and (ii) the Rules

"Association(s)" means VISA U S A , Inc ("Visa"), MasterCard International Incorporated ("MasterCard") and Discover Financial Services LLC ("Discover")

"Authorization" means an affirmative response, by or on behalf of an Issuer to a request to effect a Transaction, that a Transaction is within the relevant Cardholder's available credit limit and that the Cardholder has not reported the Card lost or stolen  All Transactions requiring Authorization by the Associations must be authorized

"Authorization Center" means the facility or facilities designated from time to time by Bank or ISO to which Merchant shall submit all requests for Authorization

"Business Day" means any day other than  (i) a Saturday or Sunday; or (ii) a day on which banking institutions in New York are authorized by law or executive order to be closed (and on which Bank is in fact closed)

"Card(s)" means either a Visa, MasterCard or Discover credit card, debit card (or other similar card that requires a PIN for identification purposes), or pre-paid, stored-value or gift card

"Cardholder" means a person authorized to use a Card

"Chargeback" means a Transaction that Bank returns to Merchant pursuant to this Agreement

"Forced Sale" means a sales Transaction processed without an approved electronic Authorization number being obtained for the full amount of the sales Transaction at the time the Transaction is processed

"Full Recourse Transactions" means mail orders, telephone orders, e-commerce (Internet) orders, Pre-Authorized Recurring Order Transactions, and other "card not present" sales

"Issuer" means a member of an Association that enters into a contractual relationship with a Cardholder for the issuance of one or more Cards

"Merchant Statement" means an itemized monthly statement of all charges and credits to the Operating Account (as that term is defined in Section 5 of this Agreement)

"Monthly Chargeback Violation " for any given calendar month, means that more than five Chargebacks have been processed in that month and that the Transaction Chargeback Ratio for that month is equal to or greater than 1%

"Mid-Qualified Transactions" means any Transaction categorized as such by the processor designated by Bank to settle Transactions with the Associations

"Non-Qualified Transactions" means  (i) any Transaction submitted for processing more than 48 hours past the time the Authorization occurred; (ii) any Transaction missing required data; and (iii) any Transaction categorized as such by the processor designated by Bank to settle Transactions with the Associations

"Normal Transaction" means a Transaction in which the Card is swiped through a terminal, register or other device, capturing the Card information encoded on the Card's magnetic strip

"Pre-Authorized Recurring Order Transaction" means a Transaction that has been preauthorized by the Cardholder and for which the goods or services are to be delivered or performed in the future by Merchant without having to obtain approval from the Cardholder each time

"Qualified Transactions" means any Transaction categorized as such by the processor designated by Bank to settle Transactions with the Associations

"Rules" means all rules, regulations, by-laws, standards and procedures adopted and/or amended from time to time by the Associations (including, without limitation, the Payment Card Industry Data Security Standard), Bank and each relevant Issuer  "Rules" shall be deemed to include the MOG, as defined in Section 46(o)

"Services" means the transaction processing services described on the attached Schedule A, as the same may be amended from time to time by Bank, in its sole discretion

"Transaction" means the acceptance of a Card or information embossed on the Card for payment for goods sold and/or leased or services provided to Cardholders by Merchant and receipt of payment from Bank, whether the Transaction is approved, declined, or processed as a Forced Sale  The term "Transaction" also includes credits, errors, returns and adjustments

"Transaction Chargeback Ratio " for any given calendar month, means the number of Chargebacks processed in that month divided by the total number of Transactions processed in that month

## 3. Services Provided to Merchant

During the term of this Agreement, subject to the terms and conditions of this Agreement (i) ISO shall provide technical documentation as needed, and technical support and customer support (in- cluding, without limitation, Authorization, settlement and Chargeback processing and reporting), twenty-four hours each day, seven days each week, in order to allow Merchant to accept and process Transactions; and (ii) Bank shall provide the Services to Merchant

## 4. Term and Termination Fee

This Agreement shall become effective when all parties sign the Merchant Application form to which this Agreement is attached (or in connection with which this Agreement is provided) and, unless sooner terminated, shall remain in effect for a term of three (3) years  This Agreement shall renew automatically for successive terms of one (1) year each, unless any party provides written notice of termination to the other parties at least 90 days prior to the end of the then-current term  All existing obligations, warranties, indemnities and agreements with respect to Transactions entered into be- fore such termination shall remain in full force and effect, and, regardless of any such termination, Merchant shall remain liable for all obligations to Cardholders and Bank that are incurred while this Agreement is in effect  In the event this agreement is terminated early, Merchant hereby authorizes Bank or ISO to charge an "Early Termination Fee" and charge, deduct, and/or offset as authorized herein an amount equal to the average overall monthly fees multiplied by remaining months in agreement (provided in no event shall either such amount exceed the maximum amount permitted by applicable state law)  The parties agree that the amount set forth in the previous sentence is not a penalty, but instead a fair calculation of the damages that ISO and/or Bank would suffer, and that such amount is otherwise extremely difficult if not impossible to calculate due to the specific nature and complexities of the electronic payment processing industry  The termination fee shall not be ISO or Bank's exclusive remedy and shall apply in the event of early termination for any reason whatsoever related to Merchant's breach of this Agreement regardless of the party that ultimately terminates the Agreement

## 5. Merchant Operating Account

Prior to accepting any Cards, Merchant shall establish or maintain a demand deposit account at Bank, or at a financial institution approved by ISO (the "Operating Account")). through which fees, charges, the Early Termination Fee, and credits due to Merchant in accordance with this Agreement may be processed, charged and collected by Bank and ISO  Merchant authorizes Bank to debit all amounts Merchant owes Bank hereunder or any other agreement entered into between Merchant and Bank from the Operating Account, whether maintained at Bank or another financial institution, at times deemed appropriate by Bank, through the ACH Banking Network or by a manual debit of the Operating Account  Merchant waives any and all claims for loss or damage arising out of any such charges or debits to the Operating Account  Merchant agrees that during the Term of this Agreement and for a period of at least 12 months following termination, Merchant shall maintain the Operating Account in good standing and shall maintain the balance of the Operating Account in an amount sufficient to satisfy its obligations hereunder

## 6. Reserve Account

Upon, or at any time after, execution of this Agreement, Merchant authorizes Bank to establish a non-interest-bearing reserve account at Bank in Bank's name (the "Reserve Account") in such amount as Bank or ISO from time to time may determine in their sole discretion that are sufficient to satisfy Merchant's current or future obligations related to transactions processed or otherwise incurred by Bank or ISO on Merchant's behalf under this Agreement, applicable law or private regulation, including amounts owed to cover any Chargebacks, refunds, fees, fines, actual or potential losses, or risks, (collectively the "Liabilities")  Bank or ISO may fund the Reserve Account by deducting amounts from payments due to Merchant, by effecting a charge against Merchant's Operating Account or against any of Merchant's accounts at Bank or any other account authorized by Merchant via ACH payment as authorized herein, or by demanding payment from Merchant (which payment Merchant shall make within ten (10) days after receipt of any such demand)  The Reserve Account will be maintained for a minimum of nine months after the date on which this Agreement terminates or until such time as Bank determines that the release of the funds to Merchant is prudent, in the best interest of Bank and ISO, and commercially reasonable, and that Merchant's account with Bank under this Agreement and any other agreement entered into between Merchant and Bank is fully resolved  Merchant and ISO acknowledge and agree that only Bank, and not ISO, may authorize or effect any release of funds from the Reserve Account to Merchant  Bank and ISO may withdraw funds from the Reserve Account at any time to offset any indebtedness of Merchant to Bank that may arise out of or relate to the obligations of Merchant under this agreement (including, but not limited to, Chargebacks and fees) or to offset any other indebtedness of Merchant to Bank under any other agreement entered into between Merchant and Bank  Upon expiration of this nine-month period, or greater time if required under the Rules, any balance remaining in the Reserve Account will be paid to Merchant  Bank will inform Merchant in writing of any charges debited to the Reserve Account during this nine-month period, or greater time if required under the Rules  Notwithstanding the foregoing, Bank, in its sole discretion, may release funds from the Reserve Account prior to the expiration of such nine-month period based on its assessment of the risks associated with effecting such release  Bank may deposit into the Reserve Account funds it would otherwise be obligated to pay Merchant, if it determines such action is reasonably necessary to protect its interest (Bank, on its own behalf or at ISO's request, may, without notice to Merchant, apply deposits in the Reserve Account against any outstanding amounts Merchant owes under this Agreement or any other agreement between Merchant and Bank or ISO  Merchant acknowledges and agrees that Merchant's interest in the Reserve Account is strictly limited to surplus funds in the Reserve Account, if any should exist, after satisfac- tion of all Liabilities  In the event that a court for any reason determines at any time that Bank is not the sole and exclusive owner of the funds in the Reserve Account, then Merchant also grants to Bank and ISO a security interest in and lien to all funds held in the Reserve Account, regardless of source, as part of a security agreement within the meaning of the Uniform Commercial Code  Merchant also grants to Bank and ISO a security interest in and lien upon  (i) the Bank Account (as set forth in Section 5 10) and all funds at any time in the Bank Account, whatever the source of such funds; (ii) future Transactions; and (iii) all Merchant's rights relating to this Agreement including, without limitation, all rights to receive any payments or credits under this Agreement (collectively, the "Secured Assets")  Upon request of Bank and ISO, Merchant will execute one or more financing statements or other documents to evidence this security interest  Merchant authorizes and appoints ISO and Bank its attorney in fact to sign its name to any financing statement used for the perfection of any security interest or lien granted in this Agreement  Merchant represents and warrants that no other party has a security interest in the Secured Assets  These security interests and liens will secure all of Merchant's obligations under this Agreement and any other agreements between Merchant, ISO and Bank  With respect to such security interests and liens, Bank and ISO will have all rights afforded under the Uniform Commercial Code, any other applicable law and in equity  Merchant will obtain from Bank and ISO written consent prior to granting a security interest of any kind in the Secured Assets to a third party  In the event of a bankruptcy proceeding, Bank and ISO may exercise their rights under this Agreement to debit the Reserve Account for amounts due Bank and ISO regardless of the pre-petition or post-petition nature of the amount due Bank and/or ISO, and Merchant promises not to contest any Motion for Relief from Automatic Stay that Bank and ISO may decide to file to debit the Reserve Account  Further, Bank and

Attachment C                    PX 47, 4763

ISO do not consent to the assumption of this Agreement in the event of a bankruptcy proceeding  Nevertheless if this Agreement is assumed Merchant agrees that, in order to establish adequate assurance of future performance within the meaning of 11 U S C  Sec 365, as amended from time to time, Merchant must establish or maintain a Reserve Account in an amount satisfactory to Bank and ISO; (c) Bank and ISO have the right of recoupment and set-off  This means that they may offset any outstanding/uncollected amounts owed to them from  (i) any amounts they would otherwise be obligated to deposit into the Account; and (ii) any other amounts ISO and Bank may owe Merchant under this Agreement or any other agreement; (d) The rights conferred upon Bank and ISO in this Section are not intended to be exclusive of each other or of any other rights and remedies of Bank and ISO under this Agreement, at law or in equity  Rather, each and every right of Bank and ISO at law or in equity will be cumulative and concurrent and in addition to every other right

### 7. Fees

Merchant shall pay all fees to Bank and ISO as specified on Schedule A, as amended by Bank or ISO from time to time  Bank or ISO shall collect all fees due in the manner set forth on the Agreement  Merchant may request a change to its billing by contacting ISO for approval  For each Transaction, Bank or ISO will charge Merchant as follows

(a) An amount ("Merchant Discount Fees") equal to a specified percentage of the total cash price of each sales and cash withdrawal Transaction ("Merchant Discount Rate");

(b) A specified amount per Transaction ("Transaction Fee"); and

(c) A specified amount per Authorization ("Authorization Fee")

The Merchant Discount Rate, Authorization Fees and Transaction Fees are set forth on Schedule A  Different Merchant Discount Rates apply to Qualified, Mid-Qualified and Non-Qualified Transactions, as shown on Schedule A  Merchant agrees that Bank will, and authorizes Bank to, deduct Merchant Discount Fees from the Operating Account or Reserve Account on a daily basis unless a monthly basis is specified on Schedule A  Merchant also agrees to pay to Bank or ISO the amount of any fees, charges or penalties assessed against Bank or ISO by any Association or Issuer for Merchant's vi- olation of any Applicable Law, its breach of this Agreement, or violation of any Association rule or regulation  Merchant shall pay Bank or ISO for any other services provided to Merchant by Bank or ISO and for all other fees shown on Schedule A, including, but not limited to, monthly minimum fees, Chargeback fees and customer service fees

### 8. Billing

All amounts Merchant owes to Bank or ISO, for any reason, may be charged to the Operating Account or Reserve Account, recouped by adjustment to any credits due to Merchant, or set off against any account or property Bank or ISO holds for or on behalf of Merchant

### 9. Security Interest

As security for the performance by Merchant of all of its obligations under this Agreement, Merchant hereby grants to Bank and ISO a security interest in: (i) the funds held in the Operating Account and in the Reserve Account; and (ii) any inventory with respect to which a Transaction has occurred but has not yet been fulfilled  Merchant will execute and deliver to Bank and ISO such documents, in form satisfactory to Bank and ISO, as Bank and ISO may reasonably request in order to perfect Bank's and ISO's security interest in the Operating Account, Reserve Account and such inventory, and will pay all costs and expenses associated with filing the same or this Agreement in all public filing offices, where filing is deemed by Bank and ISO to be necessary or desirable  Bank and ISO are authorized to file financing statements relating to the Operating Account, the Reserve Account and such inventory without ISO or Bank, respectively, where authorized by law  Merchant appoints Bank and ISO as its attorney-in-fact to execute such documents as are necessary or desirable to accomplish perfection of any security interests  This appointment is coupled with an interest and shall be irrevocable as long as Merchant owes any amount to Bank or ISO

### 10. Processing Transactions

(a) Merchant shall obtain Authorizations and process Transactions using such equipment and software as may be approved from time to time by Bank and ISO, in its sole discretion (the "Equipment")  Merchant shall validate Cards and Cardholders in face-to-face transactions as required by Applicable Law

(b) Merchant shall obtain Authorizations for Transactions in a manner required by Applicable Law and in the manner, and following the processes and procedures, determined from time to time by Bank, in its sole discretion, and communicated to Merchant by either Bank or ISO

(c) Merchant shall not submit a Transaction to Bank (electronically or otherwise) until Merchant has performed its obligations to the Cardholder in connection with the Transaction or obtained Cardholder's consent for a Pre-Authorized Recurring Order Transaction

(d) Merchant shall not transmit any Transaction to Bank that Merchant knows or should have known to be illegal, fraudulent or not authorized by the Cardholder

(e) Merchant shall not process a Transaction that does not result from an act between a Cardholder and Merchant

(f) Merchant shall not request or use any Card number for any purpose other than as payment for its goods or services

(g) Merchant may transmit a Transaction that effects a prepayment of services or full prepayment of custom-ordered merchandise, manufactured to a Cardholder's specifications, if Merchant advises Cardholder of the immediate billing at the time of the Transaction and within time limits established by the Associations

### 11. Prohibited Transactions. Merchant shall not do any of the following

(a) Establish a minimum on debit cards or greater than $10 00 on credit cards or a maximum dollar Transaction amount;

(b) Obtain multiple Authorizations for amounts less than the total sale amount;

(c) Obtain Authorization for the purpose of setting aside the Cardholder's credit line for use in future sales;

(d) Extend credit for or defer the time of payment of the total cash price in any Transaction;

(e) Honor a Card in a Transaction where a total cash price is due and payable;

(f) Make any special charge to or extract any special agreement or security from any Cardholder in connection with any Transaction;

(g) Transmit or accept payment for any Transaction that was not originated directly between Merchant and a Cardholder for the sale or lease of goods or the performance of services of the type indicated in the Merchant Application form to which this Agreement is attached;

(h) Honor or accept a Card as payment for any legal services or expenses arising out of or related to  (i) any domestic relations matter where such services or expenses are furnished to a person whose name is not embossed on a Card; or (ii) any bankruptcy, insolvency, compromise, composition or other process affecting Cardholder's creditors;

(i) Use Merchant's own Card, or one to which Merchant has access, to process a Transaction for the purpose of obtaining credit for Merchant's own benefit;

(j) Re-process any Transaction that was previously charged back to Bank and subsequently returned to Merchant, irrespective of Cardholder approval;

(k) Initiate a Transaction credit without a preceding debit at least equal to the credit;

(l) Initiate a Transaction credit without a balance in the Operating Account at least equal to the credit;

(m) Use the Equipment or any data received thereon for any other purpose other than for determining whether or not Merchant should accept checks or Cards in connection with a current sale or lease of goods or services;

(n) Use the Equipment or any data received thereon for credit inquiry purposes or any other purpose not authorized by this Agreement;

(o) Draw or convey any inference concerning a person's creditworthiness, credit standing, credit capacity, character, general reputation, personal characteristics or mode of living when any Card or check is processed as non-accepted;

(p) Disclose any information obtained through the Equipment to any person except for necessary disclosures to affected Cardholders, Bank and/or the Issuer;

(q) Disburse funds in the form of travelers cheques, if the sole purpose is to allow the Cardholder to make a cash purchase of goods or services from Merchant;

(r) Disburse funds in the form of cash;

(s) Accept a Card to collect or refinance an existing debt (whether originally owed to Merchant or otherwise) that is considered uncollectible (for example, payments to a collection agency or attempts to recover funds for a dishonored check) except to the extent specifically permitted by Applicable Law;

(t) Issue a Transaction credit in respect of goods or services acquired in a cash transaction which are returned;

(u) Make any cash refund to a Cardholder who has made a purchase with a credit Card (all Transaction credits shall be issued to the same credit Card account number used in the sale);

(v) Require a Cardholder to complete a postcard or similar device that includes the Cardholder's account number, Card expiration date, signature or any other Card account data in plain view when mailed;

(w) Accept a Card for the purchase of Scrip (as defined by applicable VISA regulations), except to the extent specifically permitted by Applicable Law;

(x) Accept any payment directly from a Cardholder for previous Card charges incurred and processed by Merchant;

(y) Require, through an increase in price or otherwise, any Cardholder to pay any surcharge in connection with any Transaction or to pay any part of any charge imposed on Merchant by Bank except, in either case, as expressly permitted by, and under terms and conditions that comply in full with, Applicable Law;

(z) Provide cash to a Visa cardholder unless Merchant is either (i) participating in Visa Cash-Back Services or (ii) a hotel or cruise line;

(aa) Cause any Cardholder to waive its right to dispute a Transaction;

(bb) Request the Card Verification Value 2 data (as defined by Visa) on any paper order form;

(cc) Request a Cardholder account number for any purpose that is not related to payment for goods or services;

(dd) Add any tax to Transactions, unless applicable law expressly requires that a merchant be permitted to impose a tax, and only if such tax is included in the Transaction amount and not collected separately;

(ee) Process payments for a product or service that has not been disclosed and approved by Bank and ISO  This includes web processing and processing on a website that has not been approved by Bank and ISO  Merchant shall disclose to Bank and ISO all URLs through which Merchant processes transactions or otherwise accepts at the time of executing this Agreement, upon request, and before processing through any URL not previously disclosed

Should Merchant engage in any of the prohibited transactions, including without limit that Merchant offers any products or services that are not bona fide and compliant with the Rules, Merchant shall be responsible to pay ISO an amount equal to the damages that ISO could suffer related to such pro- hibited conduct to include a penalty of $10,000 per occurrence, plus all costs, fees, fines, attorneys' fees and other costs and expenses incurred by ISO

**Attachment C**        **PX 47, 4764**

### 12. Prohibition of Furnishing Account Information

Use of Third Parties  Merchant shall not, without the Cardholder's consent, sell, purchase, provide or exchange any Card information in the form of Transaction documents, carbon copies of imprinted Transaction documents, mailing lists, tapes, journal rolls or other media obtained through the use of a Card to any third party  Merchant may use third parties that do not have a direct agreement with Bank as Merchant's agent for the direct delivery of Transactions for clearing and settlement if

(a) Merchant advises Bank that it will use a third-party processor in this capacity, identifying the third party so selected by Merchant;

(b) Merchant agrees that Bank will reimburse Merchant only for the Visa Transactions delivered by that third-party processor to VisaNet; and

(c) Merchant assumes responsibility for any failure by its third-party processor to comply with Applicable Law

Merchant shall notify Bank of the identity of any third party performing services to Merchant in connection with which such third party has access to any Card information

### 13. Daily Reconciliation of Transactions

(a)  Electronically Transmitted Transactions  Bank shall control and disburse all Transaction-related settlement funds to Merchant  Transactions with respect to which Bank receives payment from or through the Associations will be settled on a daily basis, and, except as otherwise expressly provided or permitted pursuant to the terms of this Agreement, Bank shall deliver payment to Merchant in connection with such Transactions by effecting a credit to the Operating Account equal to the reconciled and paid summary Transaction total of all of Merchant's total paid summary Transactions since the previous credit  Notwithstanding the foregoing, Bank may, in its sole discretion, effect a credit to the Operating Account in connection with any Transaction prior to the point in time Bank receives payment in connection therewith from or through the Associations  In either case, Bank may, if necessary or appropriate, reduce any credit made to the Operating Account by, and/or Bank may require that Merchant pay to Bank an amount equal to  (i) the sum of all Cardholder charges denied, refused or charged back;  (ii) all refunds processed on account of Cardholders during said time period;  (iii) the amounts, fees and charges, including (but not limited to) Chargebacks, Merchant owes Bank hereunder or under any other agreement entered into between Bank and Merchant;  (iv) all taxes, penalties, charges, fees and other items incurred by Bank that are reimbursable pursuant to this Agreement;  (v) all applicable rates, fees and charges described on Schedule A;  (vi) any amount Bank previously credited to the Operating Account that Bank determines, in good faith, was incorrectly so credited; and  (vii) any amount Bank determines, in its sole discretion, represents unacceptable risk to the Operating Account for Bank  Any application of funds associated with the settlement of Transactions that differs from the foregoing must be agreed to, in writing, by Bank and Merchant and may not, in any respect, violate Applicable Law

(b) Reconciliation of Transactions  Merchant shall reconcile each settled Transaction within fifteen (15) days after the date on which such Transaction is submitted to Bank for payment, and shall notify Bank and ISO immediately of any discrepancies or errors  Merchant notes as a result of such reconciliation  Neither Bank nor ISO shall have any responsibility or liability for Transaction-related errors or omissions that are brought to their attention more than thirty (30) days after the date on which the Transaction to which such error or omission relates is first presented to Bank for settlement

(c) Provisional Credit  Any credits to the Operating Account are provisional only and subject to revocation by Bank until such time that the Transaction is final and no longer subject to Chargeback by the Issuer, Cardholder or Associations  Bank may withhold payment for a Transaction to Merchant, for any reason, until such time as the Transaction has been verified as legitimate by the relevant Issuer, or Bank receives adequate supporting documentation from Merchant to authenticate the Transaction and mitigate Chargeback risk

### 14. Adjustments and Returns

Merchant will maintain a fair exchange and return policy and make adjustments with respect to goods and services sold and/or leased to its customers whenever appropriate  If Merchant limits its acceptance of returned merchandise, or if Merchant is an Electronic Commerce Merchant, Merchant will ensure that its return policy are clearly set forth on the Transaction receipt or on Merchant's website, as required by Applicable Law  If goods are returned, or services are terminated or can- celed, or any price is adjusted, Merchant will prepare and transmit a credit or return Transaction, either electronically or by paper, for the amount of the adjustment as a deduction from the total amount of Transactions transmitted that day  If the amount of credit or return Transactions exceeds the amount of sales Transactions, Merchant shall pay the excess to Bank  Merchant shall make no cash refunds on credit Transactions and shall handle all credit adjustments as provided in this Section 14  If no refund or return will be given, Merchant must advise Cardholder in writing, at the time of the Transaction, that the sale is a "final sale" and "no returns" are permitted  Merchant must advise Cardholder in writing of any policy of Merchant that provides for no-cash refunds and in-store credit only  Merchant shall follow Association reservation/no-show policies, and shall notify Cardholders in writing of this policy on all advance reservations  Merchant shall also notify Cardholders at the time of the reservation of the exact number of days required for reservation deposit refunds

### 15. Chargebacks

The acceptance by Bank of any Transaction processed in accordance with the terms of this Agreement shall be without recourse to Merchant, except for

(i) Full Recourse Transactions;

(ii) as otherwise indicated in this Agreement; and

(iii) under any of the following circumstances

(a) No specific prior Authorization for the Transaction was obtained from the Authorization Center, the approval number does not appear in the electronic transmittal that is maintained by Bank, or the Transaction was submitted to the Bank or ISO thirty (30) days or more after the date on which the goods and/or services to which the Transaction relates were purchased or leased by the relevant Cardholder;

(b) The Transaction was based on a pre-authorization form, the Card on which the Authorization was based was canceled and Merchant was so notified prior to the Transaction

(c) The Card giving rise to the Transaction was canceled and prior to, or at the time of, the Transaction, and Merchant received notice of the cancellation through the electronic terminal, in writing or otherwise;

(d) The Card expired prior to the date of the Transaction or the date of the Transaction was prior to the validation date, if any, indicated on the Card;

(e) The Transaction information required by this Agreement was not submitted to Bank, or the procedures required by this Agreement to be followed in connection with processing a Transaction were not followed;

(f) Bank or Issuer receives a complaint from or on behalf of a Cardholder stating that there is an unresolved dispute or defense to a charge (whether or not valid) between Merchant and Cardholder;

(g) The Cardholder makes a written complaint to Bank or Issuer that the Cardholder did not make or authorize the Transaction;

(h) A setoff or counterclaim of any kind exists in favor of any Cardholder against Merchant that may be asserted in defense of an action to enforce payment against the Cardholder in the Transaction;

(i) The Transaction was made at or by a merchant other than Merchant;

(j) The Transaction otherwise violates the terms of this Agreement or any Applicable Law;

(k) A Transaction is charged back by an Issuer; or

(l) Any representation or warranty made by Merchant in connection with the Transaction is false or inaccurate in any respect

In any such case, Bank shall not be obligated to accept a Transaction for credit to the Operating Account  If Bank has credited the Operating Account or Reserve Account for such a Transaction, Bank may return the Transaction to the Merchant, and Merchant shall pay Bank the amount of the Transaction  Merchant agrees that it is solely responsible for all Chargebacks, and that ISO or Bank, without prior notice to Merchant, may  (i) charge the amount of the Transaction to the Operating Account or Reserve Account; (ii) recoup the amount of the Transaction by adjustment of the credits due to Merchant; and/or (iii) set off the amount of the Transaction against any account or property held by Bank for or on behalf of Merchant  If Merchant disagrees with ISO's or Bank's de- cision to charge back a Transaction, Merchant must so notify ISO in writing within 10 days of the Chargeback, and provide documentation that the dispute has been resolved to Cardholder's satis- faction or proof that a credit has been issued  Without limiting the generality of any other provision of this Agreement, if Bank or ISO, if ISO has indemnified Bank, takes legal action against Merchant for any Chargebacks or any amounts due Bank or ISO hereunder, Merchant shall pay the costs and attorneys' fees incurred by Bank and/or ISO, whether suit is commenced or not

In addition to any other remedy available to Bank, upon the occurrence of a Monthly Chargeback Violation, Merchant must pay to Bank a fee that is calculated as follows (where X in the table below is the Transaction Chargeback Ratio for the relevant calendar month and Y is the number of Chargebacks processed during the relevant calendar month)

| Y | 1 0% ≤X≤ 1 5% | 1 5% <X≤ 2% | 2% <X≤ 2 25% | 2 25% <X≤ 2 5% | 2 5% <X≤ 3% | 3% <X≤ 3 5% | 3 5% <X≤ 5% | 5% <X≤ 7 5% | 7 5% <X |
|---|---|---|---|---|---|---|---|---|---|
| 5 - 25 | $0 | $10 | $10 | $15 | $15 | $20 | $25 | $40 | $50 |
| 26 - 50 | $10 | $10 | $15 | $15 | $20 | $20 | $25 | $40 | $50 |
| 51 - 75 | $15 | $20 | $20 | $20 | $25 | $25 | $30 | $50 | $50 |
| 76 - 100 | $15 | $20 | $20 | $25 | $25 | $30 | $35 | $50 | $50 |
| 101 - 125 | $20 | $20 | $25 | $25 | $30 | $30 | $35 | $60 | $60 |
| 126 - 150 | $20 | $25 | $25 | $30 | $35 | $35 | $40 | $75 | $75 |
| 151 - 175 | $25 | $30 | $30 | $35 | $35 | $40 | $40 | $75 | $100 |
| 175 + | $25 | $30 | $35 | $35 | $40 | $40 | $50 | $100 | $100 |

At least once each month, Bank (a) shall provide a statement (the "Merchant Statement") to Merchant  All information appearing on the Merchant Statement shall be deemed accurate and affirmed by Merchant unless Merchant objects by written notice specifying the particular item in dispute with- in 30 days of the date of the Merchant Statement

### 16. Retention of Information

Merchant shall retain the information required to be submitted in connection with a Transaction or to be maintained in connection with a complaint for seven years from the date of the Transaction or the complaint  At the request of Bank, Merchant shall provide such information to Bank or ISO, as directed by Bank, within five (5) days of receipt of a request from Bank  Failure to meet such time frame or non-delivery of any item or delivery of an illegible copy of an item requested by an Issuer shall, among other things, constitute a waiver by Merchant of any claims and may result in an irrevocable Chargeback for the full amount of the Transaction

### 17. Recovery of Cards

Merchant will use its best efforts to reasonably and peaceably recover and retain any Card with re- spect to which Merchant receives notification of cancellation, restrictions, theft or counterfeiting  This notice may be given  (i) electronically through the Equipment; (ii) by the Authorization Center through any means; or (iii) by listing on any canceled Card or restricted Card list  Merchant shall also take reasonable steps to recover a Card that it has reasonable grounds to believe is counterfeit, fraudulent or stolen

### 18. Customer Complaints

Merchant shall respond promptly to inquiries from Cardholders and shall attempt to resolve any disputes amicably  If unresolved disputes occur with a frequency unacceptable to Bank, Bank may terminate this Agreement  Bank reserves the right to charge Merchant reasonable fees and reimbursement on account of excessive Ca rd holder inq uiries, refunds or Chargebacks  Merchant agrees to maintain the following information in writing with respect to each claim or defense asserted by a Cardholder for which Merchant has received notice

(a) The Cardholder's name;

(b) The Card account number;

(c) The date and time the Cardholder asserted the claim or defense;

(d) The nature of the claim or defense; and

(e) The action that Merchant took in an attempt to resolve the dispute

Upon request, Merchant shall furnish Bank with this information in writing within 10 days

Attachment C                    PX 47, 4765

## 19. Confidentiality

Merchant shall treat all information received in connection with this Agreement as confidential  Merchant shall prevent the disclosure of this information except for necessary disclosures to affected Cardholders, to Bank, to ISO and to Issuers

## 20. Compliance with Applicable Law

a  General  Merchant represents and warrants that it has obtained all necessary regulatory approvals, certificates and licenses, and that it is in compliance with all Applicable Law, in connection with the operation of its business  Merchant represents and warrants that it understands the importance of complying with Applicable Law in connection with any and all actions it takes in connection with Transactions (including, without limitation, complying with requirements relating to Transaction information, storage and disclosure), and covenants at all times to comply in full with all Applicable Law  Merchant further acknowledges and agrees that it is responsible for the actions of all of its employees while in Merchant's employ

b  Data Security Rules  Without limiting the generality of the foregoing or any other provision of this Agreement, Merchant understands that it and all of its employees, agents, representatives and service providers must comply with the Rules, including without limitation, those relating to Cardholder information security issues, non-disclosure of Cardholder information and Transaction documents, retention and storage of Cardholder and Transaction information and other security procedures adopted by the Associations  Merchant hereby confirms its agreement to abide by and fully comply with such Rules, including, without limitation, the Rules and procedures described below

i  Visa Cardholder Information Security Program and MasterCard Site Data Protection Program  Visa and MasterCard have implemented programs to protect Cardholder data  The Visa Cardholder Information Security Program ("CISP") and MasterCard Site Data Protection Program ("SDP") apply to Merchant if Merchant processes or stores Cardholder data as a result of Internet or mail/telephone acceptance of Visa or MasterCard Card account information  A copy of the complete Visa Cardholder Information Security Standards manual and a SelfAssessment Worksheet can be obtained online at www.visa com/cisp or from Bank, and a copy of the SDP provisions can be obtained from Bank  Visa and MasterCard may impose restrictions, fines, or prohibit Merchant from participating in Visa or MasterCard programs if it is determined that Merchant is non-compliant  Merchant may be required to comply with an audit to verify compliance with security procedures  The following list describes some of the current CISP and SDP program requirements, with all of which Merchant may be required to comply, if applicable to Merchant  (A) install and maintain a working network firewall to protect data accessible via the Internet; (B) keep security patches up-to-date; (C) encrypt stored data; (D) encrypt data sent across networks; (E) use and regularly update anti-virus so"ware; (F) restrict access to data by business "need to know"; (G) assign a unique ID to each person with computer access to data; (H) don't use vendor-supplied defaults for system passwords and other security parameters; (I) track access to data by unique ID; (J) maintain a policy that addresses information security for employees and contractors; and (K) restrict physical access to Cardholder information  Merchant must also comply with the requirements of Section 10 3 of the Visa Rules in connection with suspected or confirmed losses, thefts, compromises of information, and fraud or laundering associated with information  Please also note that this is not intended to be a complete list, and Merchant remains solely responsible for understanding and complying in full with all of the applicable CISP and SDP requirements

ii  Transaction Information  Merchant acknowledges that the sale or disclosure of databases containing Cardholder account numbers, personal information, or other Transaction information to third parties is strictly prohibited by the Rules  Unless Merchant obtains consents from Bank, and each applicable Association, issuing bank and Cardholder, Merchant must not use, disclose, sell or disseminate any Cardholder information obtained in connection with a Transaction (including without limitation, the names, addresses and Card account numbers of Cardholders, copies of imprinted sales drafts and/or credit records, mailing lists, tapes or other media obtained in connection with a sales draft and/or credit record) except for purposes of authorizing, completing and settling Transactions and resolving any Chargebacks, retrieval requests or similar issues involving Transactions, other than pursuant to a court or governmental agency request, subpoena or order  Merchant shall use proper controls for, limit access to, and render unreadable prior to discarding all records containing Cardholder account numbers and Card imprints

Merchant may not retain or store magnetic stripe data after a Transaction has been authorized  If Merchant stores any electronically captured signature of a Cardholder, Merchant may not reproduce such signature except upon the specific request of Bank  Merchant shall store all media containing Cardholder names, Cardholder account information, and other personal information, as well as Card imprints (such as sales drafts and credit records, auto rental agreements, and carbons) in an area limited to selected personnel and, prior to discarding any such information, destroy it in a manner that renders the data unreadable

Merchant further warrants and agrees that in the event of its failure, including bankruptcy, insolvency, or other suspension of business operations, it will not sell, transfer or disclose any materials that contain Cardholder account numbers, personal information, or Transaction information to third parties, and shall return the information to Bank and provide acceptable proof of destruction to Bank

## 21. Taxes

Each party hereto shall report its income and pay its own taxes to any applicable jurisdiction  If either Bank or ISO is required to pay any taxes, interests, fines or penalties owed by Merchant, said amount shall become immediately due and payable by Merchant to Bank or ISO  If excise, sale or use taxes are imposed on Transactions, Merchant shall be responsible for the collection and payment thereof  Merchant shall not add any tax to any Transaction unless Applicable Law expressly provides that Merchant is permitted to impose a tax, and any such tax amount, if so allowed, shall be included in the Transaction amount and not collected separately  Bank or ISO shall be entitled to recover from Merchant any of said taxes paid by it on behalf of Merchant immediately after payment

## 22. Limitation of Liability

In addition to all other limitations on the liability of Bank and ISO contained in this Agreement, nei- ther Bank nor ISO shall be liable to Merchant or Merchant's customers or any other person for any of the following

(a) Any loss or liability resulting from the denial of credit to any person or Merchant's retention of any Card or any attempt to do so; Any loss caused by a Transaction downgrade resulting from defective or faulty Equipment, even if such Equipment is owned by Bank or ISO;

(b) The unavailability of Services caused by the termination of contracts with computer hardware vendors, processors or installers, whether terminated by Bank, ISO or any other

person or for any reason; or

(c) Interruption or termination of any Services caused by any reason except for failure of ISO to re- pair or replace Equipment at Merchant's expense (in which case, any resulting liability shall be for the sole account of ISO)  At no time will ISO's liability exceed

the amount of fees collected or reasonably expected to be collected from Merchant for this delay period

NEITHER BANK NOR ISO SHALL BE LIABLE FOR ANY LOST PROFITS, PUNITIVE, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES TO MERCHANT OR TO ANY THIRD PARTY IN CONNECTION WITH ORARIS- ING OUT OF THISAGREEMENT OR AW OFTHE SERVICESTO BE PERFORMED BY BANK OR ISO PURSU- ANT TO THIS AGREEMENT  MERCHANT ACKNOWLEDGES THAT BANK HAS PROVIDED NO WARRANTIES, EITHER EXPRESS OR IMPLIED, WRITTEN OR ORAL, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, WITH RESPECT TO ANY EQUIPMENT AND THAT BANK HAS NO LIABILITY WITH RESPECT TO ANY EQUIPMENT  BANK MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, REGARDING THE SERVICES IT PROVIDES HEREUNDER  IF THERE ARE ERRORS, OMISSIONS, INTERRUPTIONS OR DELAYS RESULTING FROM BANK'S OR ISO'S PERFORMANCE OR ANY FAILURE TO PERFORM, BANK'S AND ISO'S LIABILITY SHALL BE LIMITED TO CORRECTING SUCH ERRORS, IF COMMERCIALLY REASONABLE

## 23. Credit Investigation on Damages

In no case shall Merchant be entitled to recover damages from ISO or Bank that exceed the fees retained by Bank and ISO pursuant to this Agreement during the six month period immediately prior to the event giving rise to the claim for damages

## 24. Indemnification

Merchant agrees to indemnify and hold Bank and ISO harmless from any and all losses, claims, damages, liabilities and expenses, including attorneys' fees and costs (whether or not an attorney is an employee of Bank or Bank's affiliates, ISO or affiliates of ISO) arising out of any of the following

(a) Merchant's failure to comply with this Agreement;

(b) Any act or omission of Merchant;

(c) Merchant's failure to comply with any Equipment's user's guide;

(d) Merchant's failure to comply with any Applicable Law;

(e) Any dispute concerning the quality, condition or delivery of any merchandise or the quality of performance of any service;

(f) The fraud or dishonesty of Merchant or Merchant's employees, licensees, successors, agents and/or assigns;

(g) Merchant's selection of an Internet service provider or other telecommunication services provider;

(h) The theft of or damage or destruction to any Equipment; or

(i) Full Recourse Transactions, unauthorized Transactions and prohibited Transactions

## 25. Credit Investigation and Bank/ISO Auditing

Bank or ISO may audit, from time to time, Merchant's compliance with the terms of this Agreement  Merchant shall provide all information requested by Bank or ISO to complete the respective audit  Merchant authorizes parties contacted by Bank or ISO to release the credit information requested by ISO or Bank, and Merchant agrees to provide a separate authorization for release of credit in- formation, if requested by Bank or ISO  Merchant shall deliver to Bank or ISO such information as Bank or ISO may reasonably request from time to time, including without limitation, financial state- ments and information pertaining to Merchant's financial condition  Such information shall be true, complete and accurate  Without limiting the generality of the foregoing, Merchant shall provide to Bank and ISO its balance sheet and income statements not less frequently than every three calendar months during the term of this Agreement

## 26. Termination of Agreement by Bank and ISO

Bank or ISO may terminate this Agreement upon at least 30 days' prior written notice to the other parties  In addition, Bank may terminate this Agreement immediately upon written notice to Merchant upon the occurrence of any of the following (each, an "Event of Default"

(a) Any information concerning Merchant obtained by Bank is unsatisfactory to Bank, in Bank's sole discretion

(b) Any act of fraud or dishonesty is committed by Merchant, its employees or agents, or Bank or ISO believes in good faith that Merchant, its employees or agents have committed, are committing or are planning to commit any acts of fraud or misrepresentation

(c) Chargebacks are excessive, in the opinion of Bank or ISO

(d) There is a breach of any representation or warranty made by Merchant to Bank or ISO, or Merchant defaults in the performance of any of its obligations under this Agreement

(e) Merchant files a petition under any bankruptcy or insolvency law

(f) Bank or ISO determines that the continuation of this Agreement may create harm or the loss of goodwill to Bank or any Association

(g) Merchant fails to maintain sufficient funds in the Operating Account to cover the amounts due to Bank or ISO hereunder

(h) Merchant's percentage of error Transactions or retrieval requests is excessive in the opinion of Bank or ISO

(i) Any insurance policy obtained by Bank, ISO or Merchant relating to Transactions and/or Chargebacks is cancelled or terminated for any reason

(j) Merchant fails to provide financial statements suitable to Bank on request

(k) ISO does not or cannot perform its duties under this Agreement and Bank determines that it is not feasible to provide the Services contemplated by this Agreement to Merchant  Bank is not obligated to provide replacement Services if ISO does not or cannot perform

(l) Any Association requests or demands that this Agreement be terminated  Bank or ISO may selectively terminate one or more of Merchant's approved locations without terminating this entire Agreement

In the event of termination, all obligations of Merchant incurred or existing under this Agreement prior to termination shall survive the termination  Merchant's obligations with respect to any Transaction shall be deemed incurred and existing on the date of such

Attachment C                    PX 47, 4766

Transaction  In the event Bank terminates this Agreement following any Event of Default, Merchant

(i) agrees that Bank may place Merchant on each Association's "Terminated Merchant File" (or any other list or file serving a similar purpose); and

(ii) agrees to indemnify and hold Bank and ISO harmless from and against any and all costs, expenses and liabilities incurred by Bank and/ or ISO in connection with or arising out of such Event of Default

### 27. Termination of Agreement by Merchant

Merchant may terminate this Agreement upon at least 30 days' prior written notice and an oppor- tunity to cure and refund to the other parties if within the previous 60 days, Bank or ISO amended Schedule A pursuant to Section 31 to increase the rates, fees or charges Merchant pays hereunder, except for fees or rates that result from a pass through from an Association

### 28. Setoff

In addition to any other legal or equitable remedy available to it in accordance with this Agreement or by law, Bank and ISO may set off any amounts due to it against any property of Merchant in its possession or under its control

### 29. Web Processing

Merchant shall disclose to Bank and ISO all URLs for which merchant processes transactions or otherwise accepts payments at the time of executing this agreement, upon agreement, upon request, and before processing through any URL not previously disclosed If Merchant processes through an unapproved URL or URLs, it may result in termination and/or funds being held with or without notice to Merchant

### 30. Amendments to this Agreement

From time to time Bank may amend this Agreement as follows

(a) Bank or ISO may amend or delete Cards or Services listed in Schedule A by notifying Merchant in writing of any such amendment  All provisions of this Agreement shall apply to Cards or Services added to this Agreement  Bank or ISO shall notify Merchant of the fees to be charged for processing the additional Cards and Services  Acceptance by Merchant of a new approved Card as payment for a Transaction or use of a new Service after Bank has sent Merchant notice of an amendment shall constitute Merchant's agreement to the amendment and the fees or charges related to these additions

(b) From time to time, Bank or ISO may change all rates, fees and charges set forth on Schedule A  Bank or ISO will provide written notice to Merchant of all such amendments  Bank or ISO may change the rates, fees and charges without prior written notice if Merchant's sales volume or average Trans- action amount does not meet Merchant's projections contained in the Merchant Application form to which this Agreement is attached or if the risk factors associated with processing Transactions increase  If notice is required, Bank or ISO will give written notice on the Merchant Statement  All new rates, fees and charges will become effective for the month immediately following the month in which the notice appeared on the Merchant Statement unless Merchant terminates this Agreement in accordance with Section 28

(c) Bank or ISO may amend this Agreement in any manner other than as described in Section 31(a) or 31(b) above simply by providing written notice of such amendment to Merchant, and such amend- ment shall become effective on the latter of  (i) the date on which such written notice is received by Merchant; or (ii) a date specified by Bank in such written notice

### 31. Assignment

This Agreement may not be assigned by Merchant without the prior written consent of Bank and ISO  Bank or ISO may assign this Agreement without limitation  Assignment of this Agreement by Bank or ISO shall relieve Bank or ISO of any further obligations under this Agreement

### 32. Financial Accommodations

Bank, ISO and Merchant intend this Agreement to be construed as a contract to extend financial accommodations for the benefit of Merchant

### 33. Waiver

To the extent that Merchant becomes a debtor under any chapter of title 11 of the United States Code and such event does not result in the termination of this Agreement, Merchant hereby unconditionally and absolutely waives any right or ability that Merchant may otherwise have had to oppose, defend against or otherwise challenge any motion filed by Bank for relief from the automatic stay of 11 U S C § 362(a) to enforce any of Bank's rights or claims under this Agreement

### 34. Cooperation

In their dealings with one another, each party agrees to act reasonably and in good faith and to fully cooperate with each other in order to facilitate and accomplish the transactions contemplated hereby

### 35. Entire Agreement

This Agreement, together with the Schedules attached hereto, supersedes any other agreement, whether written or oral, that may have been made or entered into by any party (or by any officer or officers of any party) relating to the matters covered herein and constitutes the entire agreement of the parties hereto

### 36. Severability

If any provisions of this Agreement sha ll be held, or deemed to be, or shall in fact be, inoperative or unenforceable as applied in any particular situation, such circumstance shall not have the effect of rendering any other provision or provisions herein contained invalid, inoperative or unenforceable to any extent whatsoever  The invalidity of any one or more phrases, sentences, clauses or sections herein contained shall not affect the remaining portions of this Agreement or any part hereof

### 37. Notices

Except for notices provided by Bank to Merchant on the Merchant Statement, all notices, requests, demands or other instruments which may are or required to be given by any party hereunder shall be in writing and each shall be deemed to have been properly given when

(i) served personally on an officer of the party to whom such notice is to be given,

(ii) upon expiration of a period of three (3) business days from and after the date of mailing thereof when mailed postage prepaid by registered or certified mail, requesting return receipt, or

(iii) upon delivery by a nationally recognized overnight delivery service, addressed as follows

If to BANK  Avidia Bank

BANK ADDRESS  42 Main St, Hudson MA 01749

If to ISO  Attn  President

Maverick BankCard, Inc

26520 Agoura Road 1st Floor, Calabasas, CA 91302

If to MERCHANT

Address listed on the application to which this Agreement is attached

Any party may change the address to which subsequent notices are to be sent by notice to the others given as aforesaid

### 38. Governing Law

This Agreement shall be governed and construed in accordance with the laws of the State of California, without regard to internal principles of conflict of laws, and federal law

### 39. BINDING ARBITRATION

ANY DISPUTE OR CLAIM BETWEEN THE PARTIES ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL BE FULLY AND FINALLY RESOLVED BY BINDING ARBITRATION IN LOS ANGELES COUNTY CALIFORNIA IN ACCORDANCE WITH THE COMMERCIAL ARBITRATION RULES AND PRAC- TICES OF THE AMERICAN ARBITRATION ASSOCIATION ("AAA") FROM TIME TO TIME IN FORCE AND EFFECT  THIS AGREEMENT TO ARBITRATE SHALL BE SPECIFICALLY ENFORCEABLE AND IS THE EXCLUSIVE REMEDY FOR THE RESOLUTION OF SUCH DISPUTES UNDER THIS AGREEMENT  THERE SHALL BE A SINGLE ARBITRATOR, WHO MUST BE (I) A LAWYER ENGAGED FULL-TIME IN THE PRACTICE OF LAW AND A MEMBER IN GOOD STANDING OF THE STATE BAR OF CALIFORNIA AND (II) ON THE AAA REGISTER OF ARBITRATORS  WITHIN THIRTY (30) DAYS OF THE CONCLUSION OF THE ARBITRATION HEARING, THE ARBITRATOR SHALL PREPARE WRITTEN FINDINGS OF FACT AND CONCLUSIONS OF LAW  JUDGMENT ON THE WRITTEN AWARD MAY BE ENTERED AND ENFORCED IN ANY STATE OR FEDERAL COURT LOCATED IN LOS ANGELES COUNTY CALIFORNIA  THE PARTIES HEREBY SUBMIT TO THE EXCLUSIVE JURISDICTION OF THE TRIBUNAL SO SELECT- ED, TO THE EXCLUSION OF ANY OTHER COURT WHICH MIGHT HAVE HAD JURISDICTION APART FROM THIS SECTION, WAIVE ANY DEFENSE OR LACK OF IN PERSONAM JURISDICTION OF SUCH COURTS AND AGREE THAT SERVICE OF PROCESS IN ANY ACTION BEFORE SUCH COURTS MAY BE MADE BY MAILING IT TO THE PARTY TO BE SERVED AT THE ADDRESS PROVIDED HEREIN  IT IS MUTUALLY AGREED THAT THE WRITTEN DECISION OF THE ARBITRATOR SHALL BE VALID, BINDING, FINAL AND NON-APPEALABLE; PROVIDED HOWEVER, THAT THE PARTIES AGREE THAT THE ARBITRATOR SHALL NOT HAVE THE AUTHORITY TO AWARD PUNITIVE DAMAGES AGAINST ANY PARTY TO SUCH ARBITRATION  THE ARBITRATOR SHALL REQUIRE THE NON-PREVAILING PARTY TO PAY THE ARBITRATOR'S FULL FEES AND EXPENSES OR, IF IN THE ARBITRATOR'S OPINION THERE IS NO PREVAILING PARTY, THE ARBITRATOR'S FEES AND EXPENSES WILL BE BORNE EQUALLY BY THE PARTIES THERETO  EACH OF THE PARTIES HERETO FURTHER AGREES THAT IT WILL NOT BECOME A MEMBER OF ANY CLASS-WIDE LITIGATION OR ARBITRATION AND WILL NOT INITIATE ANY CLASS ACTION LITIGATION OR ARBITRATION AGAINST THE OTHER PARTY  FURTHER THE PARTIES AGREE THAT THEY WILL NOT ASSERT ANY CLAIMS AGAINST THE OTHER PARTY AS A REPRESENTATIVE OF ANY GROUP, CLASS, OR OTHERWISE SIMILARLY SITUATED IN-DIVIDUAL OR ENTITY

### 40. Captions

Captions in this Agreement are for convenience of reference only and are not to be considered as defining or limiting in any way the scope or intent of the provisions of this Agreement

### 41. No Waiver

Any delay, waiver or omission by Ba n k to exercise any right or power arising from any breach or default of the other party in any of the terms, provisions or covenants of this Agreement shall not be construed to be a waiver of any subsequent breach or default of the same or any other terms, provisions or covenants on the part of the other party  All remedies afforded by this Agreement for a breach hereof shall be cumulative

### 42. Force Majeure

The parties shall be excused from performing any of their respective obligations under this Agreement which are prevented or delayed by any occurrence not within their respective control including but not limited to strikes or other labor matters, destruction of or damage to any building, natural disasters, accidents, riots or any regulation, rule, law, ordinance or order of any federal, state or local government authority

### 43. Cooperation

Merchant covenants and agrees that, if it is undergoing forensic investigation at the time this Agreement is signed, Merchant will fully cooperate with the investigation until it is completed

### 44. Limited Acceptance

Visa Rules allow Merchant to become a Limited Acceptance Merchant as part of its use of Bank's Services  A "Limited Acceptance Merchant," as defined by Visa, is a merchant that accepts either, but not both, of the following

Visa Credit and Business Category Cards

Visa Debit Category Cards

Merchant has elected to become a Limited Acceptance Merchant by choosing to accept ONLY (please mark the applicable card category below)

Visa Credit and Business Category Cards

Visa Debit Category Cards

Merchant's failure to select one of the Limited Acceptance Categories above means that Merchant has elected to accept BOTH Visa Credit and Business Category Cards and Visa Debit Category Cards
If Merchant elects to be a Limited Acceptance Merchant, Merchant must properly display the Visa-approved signage that represents the Limited Acceptance Category that Merchant has selected above

Attachment C                    PX 47, 4767

### 45. Special Merchant Categories

(a) If Merchant is a Health Care Merchant (as defined by the Visa Core Rules and Visa Product and Service Rules (the "Visa Core Rules")), Merchant acknowledges that it must comply with the provisions of Section 5.9.12 of the Visa Core Rules

(b) If Merchant is a T&E Merchant (as defined by the Visa Core Rules), Merchant acknowledges that it must comply with all of the provisions of the Visa Core Rules relating to T&E Merchants, including Sections 5.9.6, 5.10.4.1, 7.3.12, and 11.1.3.2  Merchant further agrees that, if it is an International Airline Program Merchant (as defined by the Visa Core Rules), the terms of the attached International Airline Program Merchant Addendum apply

(c) If Merchant receives BIN Information, Merchant agrees that the terms of the attached Merchant Receiving BIN Information Addendum apply

(d) If Merchant is an Electronic Commerce Merchant (as defined by the Visa Core Rules and Visa Product and Service Rules (2014)—the "VCR"), the following terms apply (references following each requirement indicate whether the requirement is located in the VCR or the Visa Acquirer Risk Program Standards Guide (2010) (VPSG); capitalized terms that are not otherwise defined in this Agreement are used as defined in the VCR)

i  Merchant must display its consumer data privacy policy on its website  (VPSG)

ii  Merchant must display the security method it uses for the transmission of payment data on its website  (VPSG)

iii  Merchant must offer Cardholders a secure transaction method and a data protection method, such as Secure Sockets Layer (SSL), 3-D Secure and/or Verified by Visa  (VPSG; VCR Section 1.5.6.2)

iv  For Non-Secure Transactions and Non-Authenticated Security Transactions, Merchant must attempt to obtain a Visa Card expiration date and submit it as part of the Authorization Request  (VCR Section 5.8.4.1)

v  Merchant's website must contain all of the following

(A) Customer service contact, including email address or telephone number

(B) The address, including the country, of Merchant's permanent establishment, either

(1) On the same screen view as the checkout screen used to present the final Transaction amount; or

(2) Within the sequence of web pages the Cardholder accesses during the checkout process

(C) Policy for delivery of multiple shipments

(D) Security capabilities and policy for transmission of payment card details

(E) In addition, on an Online Gambling Merchant's homepage or payment page, all of the following

(1) The statement "Internet gambling may be illegal in the jurisdiction in which you are located; if so, you are not authorized to use your payment card to complete this transaction";

(2) A statement of the Cardholder's responsibility to know the laws concerning online gambling in the Cardholder's country;

(3) A statement prohibiting the participation of minors;

(4) A complete description of the rules of play, cancellation policies, and pay-out policies;

(5) A statement recommending that the Cardholder retain a copy of Transaction records and Merchant policies and rules; and

(6) An Authorization number identifier specified by Visa  (VCR Section 5.9.3.1)

vi  Merchant must not display the full Account Number to the Cardholder online  (VCR Section 5.9.3.2)

vii  If Merchant is a Verified by Visa Merchant, Merchant acknowledges that its Electronic Commerce Transactions are not eligible for Chargeback protection from Chargeback reason codes 75 (Transaction Not Recognized) and 83 (Fraud-Card-Absent Environment) if either

(A) The Merchant is classified with one of the following MCCs

(1) MCC 4829 (Wire Transfer Money Orders);

(2) MCC 5967 (Direct Marketing – Inbound Teleservices Merchant);

(3) MCC 6051 (Non-Financial Institutions – Foreign Currency, Money Orders [not Wire Transfer], Travelers' Cheques); or

(4) MCC 7995 (Betting, including Lottery Tickets, Casino Gaming Chips, Off-Track Betting, and Wagers at Race Tracks); or

(B) Merchant has been identified in the Merchant Chargeback Monitoring Program or Risk Identification Service Online  Merchant remains ineligible while it is in either program, and for an additional 4 months after exiting the program  This condition also applies if Merchant enabled Verified by Visa while identified in either program  (VCR Section 5.9.3.5)

viii  Merchant must include the following in its transaction receipts

(A) Customer service contact;

(B) Merchant country; and

(C) Conditions of sale, including return and cancellation policy  (VCR Section 5.10.3.3)

ix  In an Authorization Request, Merchant must not transmit Authentication Data specific to one Transaction with another Transaction, except where either

(A) 2 Transactions are related due to delayed delivery; or

(B) All items of an order cannot be shipped at the same time  (VCR Section 10.15.3.2)

(e) If Merchant limits its acceptance of returned merchandise or is an Electronic Commerce Merchant, Merchant must ensure that its return policies are clearly indicated to a Cardholder on the Transaction Receipt or on Merchant's website, as follows (VCR Section 5.4.2.4)

| Location | Required Disclosure | To be used for the following Merchant Policies |
|---|---|---|
| Transaction Receipt (all copies, near the Cardholder signature area or in an area easily seen by the Cardholder) | "No Refund" "No Exchanges" "All Sales Final" | Merchant does not • Accept merchandise as a return or exchange • Issue a refund to a Cardholder |
| | "Exchange Only" | Merchant accepts merchandise in exchange for merchandise of equal value to the original Transaction amount |
| | "In-Store Credit Only" | Merchant accepts merchandise in exchange for an in-store credit document that both • Equals the value of the returned merchandise • Must be used at the Merchant location |
| Website (on checkout screen or in sequence of web pages before final checkout) | "Click to accept" or other acknowledgement button or checkbox | All return/refund policies and other purchase terms and conditions |

### 46. Participation in the American Express OptBlue® Program

By checking the "Accept" checkbox next to AMERICAN EXPRESS OptBlue® on [the application], Merchant has elected to participate in the American Express OptBlue program ("American Express Card Acceptance")  The following terms and conditions apply to Merchant's participation in American Express Card Acceptance

(a) The definition of "Association(s)" is changed to read as follows

"Association(s)" means VISA U.S.A., Inc.  ("Visa"), MasterCard International Incorporated ("MasterCard"), Discover Financial Services LLC ("Discover") and American Express Travel Related Services Company, Inc  ("American Express")

(b) The definition of "Card(s)" is changed to read as follows

"Card(s)" means either a Visa, MasterCard, Discover or American Express credit card, debit card (or other similar card that requires a PIN for identification purposes), or pre-paid, stored-value or gift card

(c) The definition of "Issuer" is changed to read as follows

"Issuer" means American Express or a member of an Association that enters into a contractual relationship with a Cardholder for the issuance of one or more Cards

(d) Merchant authorizes Bank and/or its affiliates to submit American Express Transactions to, and receive settlement on such Transactions from, American Express on behalf of Merchant

(e) Merchant agrees that Bank may disclose to American Express information regarding Merchant and Transactions to American Express, and that American Express may use such information

(i) to perform its responsibilities in connection with American Express Card Acceptance;

(ii) to promote American Express;

(iii) to perform analytics and create reports; and

(iv) for any other lawful business purposes, including commercial marketing communications purposes within the parameters of American Express Card Acceptance, and important transactional or relationship communications from American Express  American Express may use the information about Merchant obtained in this Agreement at the time of setup to screen and/or monitor Merchant in connection with American Express marketing and administrative purposes  Merchant agrees it may receive messages from American Express, including important information about American Express products, services, and resources available to its business  These messages may be sent to the mailing address, phone numbers, email addresses or fax numbers of Merchant  Merchant may be contacted at its wireless telephone number and the communications sent may include autodialed short message service (SMS or "text") messages or automated or prerecorded calls  Merchant agrees that it may be sent fax communications

(f) Merchant may opt-out of receiving future commercial marketing communications from American Express by contacting ISO; however, Merchant may continue to receive marketing communications while American Express updates its records to reflect this choice  Opting out of commercial marketing communications will not preclude Merchant from receiving important transactional or relationship messages from American Express

(g) Merchant acknowledges that it may be converted from American Express Card Acceptance to a direct relationship with American Express if and when its American Express-related Transaction volumes exceed the eligibility thresholds for American Express Card Acceptance  If this occurs, upon such conversion ;

(i) Merchant will be bound by American Express's thencurrent Card Acceptance Agreement; and (ii) American Express will set pricing and other fees payable by Merchant

(h) Merchant will not assign to any third party any payments due to it under American Express Card Acceptance, and all indebtedness arising from Transactions will be for bona fide sales of goods and services (or both) at its business locations and free of liens, claims, and encumbrances other than ordinary sales taxes; provided, however, that Merchant may sell and assign future American Express-related Transaction receivables to Bank, its affiliated entities and/or any other cash advance funding source that partners with Bank or its affiliated entities, without consent of American Express  Notwithstanding the foregoing, Bank prohibits Merchant from selling or assigning future American Express-related Transaction receivables to any third party

(i) Notwithstanding anything in this Agreement to the contrary, American Express shall have third-party beneficiary rights, but not obligations, to the terms of this Agreement applicable to American Express Card Acceptance to enforce such terms against Merchant

(j) By contacting Bank or ISO Merchant may opt out of accepting American Express at any time without directly or indirectly affecting its rights to accept other Cards

Attachment C                    PX 47, 4768

(k) Bank and ISO have the right to terminate Merchant's participation in American Express Card Acceptance immediately upon written notice to Merchant

(i) if Merchant breaches any of the provisions of this Section 46 or any other terms of this Agreement applicable to American Express Card Acceptance, including, but not limited to, the American Express Merchant Operating Guide; or

(ii) for cause or fraudulent or other activity, or upon American Express's request  In the event Merchant's participation in American Express Card Acceptance is terminated for any reason, Merchant must immediately cease all use of and remove all American Express branding and marks from Merchant's website and wherever else they are displayed

(l) Merchant's refund policies for American Express-related Transactions must be at least as favorable as its refund policy for purchase with any other Card, and the refund policy must be disclosed to Cardholders at the time of purchase and in compliance with Applicable Law  Merchant may not bill or attempt to collect from any cardholder for any American Expressrelated Transaction unless a Chargeback has been exercised, Merchant has fully paid for such Chargeback, and it otherwise has the right to do so

(m) Merchant must accept American Express as payment for goods and services (other than those goods and services prohibited by this Agreement, the MOG, or Applicable Law) sold, or (if applicable) for charitable contributions made at all of its business locations and websites, except as expressly permitted by state statute  Merchant is jointly and severally liable for the obligations of Merchant's business locations and websites under this Agreement

(n) Merchant or American Express may elect to resolve any claim against each other, or against Bank or ISO with respect to American Express-related Transactions, by individual, binding arbitration, decided by a neutral arbitrator, in accordance with the MOG

(o) Merchant will comply in full with American Express's Merchant Operating Guide ("MOG") (as the same may be amended from time to time)  The current MOG can be found at www.americanexpress.com/merchantopguide   The term "Rules" shall be deemed to include the MOG

(p) American Express has the right to modify the terms of this Section 46 and any other provisions of this Agreement that relate to American Express Card Acceptance, and to terminate Merchant's acceptance of American Express-related Transactions and to require an investigation of Merchant's activities with respect to American Express-related transactions

(q) A copy of the American Express Data Security Requirements ("DSR") can be obtained online at www.americanexpress.com/dsr   Merchant shall abide by and fully comply with DSR and Payment Card Industry Data Security Standard (PCI DSS)

(r) Merchant acknowledges and agrees that

(i) Merchant will ensure data quality and that Transaction Data and customer information is processed promptly, accurately, and completely, and complies with the American Express Technical Specifications,

(ii) Merchant must report all instances of a Data Incident immediately to Bank or ISO after discovery of an incident, and

(iii) Merchant is responsible for being aware of and adhering to privacy and data protection laws and providing specific and adequate disclosures to Cardmembers of collection use and processing of personal data

(s) All capitalized terms not defined in this Section 46 shall be as defined by American Express, whether in the MOG, American Express Operating Regulations, DSR, American Express Technical Specifications, or other American Express materials

### 47. Participation in PayPal In-Store Checkout

Unless Merchant otherwise specifically indicates to Bank that Merchant does not wish to accept any PayPal Payment Method as a method of payment for goods services at Merchant's point(s) of sale, the following terms and provisions will apply  If Merchant elects American Express Card Acceptance and does opt out of the application of this Section 47, the application of Section 46 and this Section 47 will be deemed to be cumulative and not in the alternative

(a) Merchant acknowledges and agrees that all of its actions associated with the acceptance of Merchant of a PayPal Method as the method of payment for goods or services at a point of sale, and in connection with processing any sale, credit, chargeback, representment, reversal or correction or settlement activity associated with any such transaction is subject to the terms and conditions of the Program Documents, as that term is defined in the PayPal Operating Regulations for In-Store Checkout (as the same may be amended or replaced from time to time, the "PayPal Operating Regulations")  Merchant will comply in full, at all times, will all relevant provisions of the Program Documents, a copy of which Merchant acknowledges and agrees it has received and reviewed  Capitalized and italicized terms used in this Section 47 that are not otherwise defined are used as defined in the PayPal Operating Regulations

(b) The definition of "Card(s)", as used throughout this Agreement, is changed to read as follows

"Card(s)" means any of the following

(i) a Visa, MasterCard or Discover credit card, debit card (or other similar card that requires a PIN for identification purposes), or pre-paid, stored-value or gift card; and

(ii) any PayPal Payment Method

(c) The definition of "Issuer", as used throughout this Agreement, is changed to read as follows

"Issuer" means a member of an Association that enters into a contractual relationship with a Cardholder for the issuance of one or more Cards and PayPal, Inc  ("PayPal"), in connection with any PayPal Payment Method

(d) Merchant will comply in full with the Program Documents in connection with all of its activities associated with PayPal Acceptance and associated Transaction processing and Settlement of Transactions

(e) Merchant acknowledges and agrees that Acquirer may disclose Transaction Data and Merchant information to PayPal, regulatory authorities and other entities to which PayPal is required to provide such information for the purposes deemed necessary and related to performing Transactions or to comply with Applicable Law, including, by way of example and without limitation

(i) Detailed information about the Transactions conducted by Merchant, including Transaction Data required by the Program Documents, to be delivered to PayPal in connection with Authorization Requests, Transaction Data, and Dispute responses;

(ii) Merchant information and detail about the transactions accepted by Merchant, including the Merchant Category Code assigned by Bank to Merchant;

(iii) Collective and detailed information about Merchant's Transactions, Disputes and other information reasonably required by PayPal during any investigation of Merchant;

(iv) Information regarding the aggregate number, type, and kind of Transactions accepted by Merchant, in the Authorized Jurisdiction; and

(v) Business and registration information provided by Merchant and/or its principals in connection with any application submitted by Merchant to Bank

(f) Merchant acknowledges and agrees that each of the following is strictly and expressly prohibited

(i) Any use, storage, or disclosure by Merchant of PayPal's confidential information, any PayPal Account Holder Data or Transaction Data, other than as necessary to complete a Transaction

(ii) The retention or storage of PayPal Account Numbers, Track Data or Transaction Data

(iii) Any use of any PayPal Account Holder's personal information for marketing and/or other purposes without explicit consent from the PayPal Account Holder

(g) Bank may terminate Merchant's PayPal Acceptance and/or this Agreement for any of the reasons set forth in the PayPal Operating Regulations or for any violation by Merchant of the terms that Bank is required to enforce against Merchant in the PayPal Operating Regulations  PayPal may directly contact Merchant if Merchant is terminated by Bank for any reason, including investigating compliance by Merchant with the Security Requirements set forth in Section 13 of the PayPal Operating Regulations

(h) "PayPal Marks" mean the brands, emblems, trademarks, and/or logos that identify PayPal Acceptance  The PayPal Marks are described in Appendix A of the PayPal Operating Regulations  Merchant may use the PayPal Marks only to promote PayPal products, offers, services, processing and/or acceptance  Merchant use of the PayPal Marks is restricted to the display of decals, signage, advertising, and marketing materials provided or approved by PayPal in writing pursuant to the process set forth in the PayPal Operating Regulations  Merchant shall not use the PayPal Marks in such a way that PayPal Account Holders could believe that the products or services offered by Merchant are sponsored or guaranteed by the owners of the PayPal Marks  Merchant recognizes that it has no ownership rights in the PayPal Marks  Merchant shall not assign to any third party any of the rights to use the PayPal Marks  Merchant is prohibited from using the PayPal Marks, not permitted above, unless expressly authorized in writing by PayPal

Attachment C                PX 47, 4769



# Certificate Of Completion

Document Name:   **Boarding Application**
Time Zone: (UTC-08:00) Pacific Time (US & Canada)

| Signer Events | Signature | Timestamp |
|---|---|---|
| Jeff Bishop<br>JEFF@RAGINGBULL.COM<br>Security Level: Email, Account<br>Authentication (NONE) | *(signature)*<br>This was eSigned. | Signed: Sep 30, 2020 11:45 AM |

**IP Information**



Using IP:

| Signer Events | Signature | Timestamp |
|---|---|---|
| Jason Bond<br>jason@ragingbull.com<br>Security Level: Email, Account<br>Authentication (NONE) | *(signature)*<br>This was eSigned. | Signed: Sep 30, 2020 11:51 AM |

**IP Information**



Using IP:

**Bank Verification**

**Attachment C**          **PX 47, 4770**

Banking policy accepted and bank account information confirmed for the following :

**Acquiring**
Routing number: 
Bank account number:

# Re: Alert: High Reporting Activity

| | |
|---|---|
| **From:** | Stephen Prior <stephenp@ragingbull.com> |
| **To:** | Kayla Smith <kaylas@ragingbull.com> |
| **Date:** | Fri, 01 May 2020 12:42:34 -0400 |

Okay great.  I dont need to be on it but let me know how it goes.

On Fri, May 1, 2020 at 12:03 PM Kayla Smith <kaylas@ragingbull.com> wrote:

> Call set up with Corey our TP rep at 2pm on Monday. Gonna see how I can get all those fake reviews removed and what reporting of those reviews is being misused/invalid.
> Kayla

On Thu, Apr 30, 2020 at 3:51 PM Stephen Prior <stephenp@ragingbull.com> wrote:

> Where did we land with this?
>
> *Sent from my Google Pixel 4XL... Please excuse any typos*

On Wed, Apr 29, 2020, 11:34 PM Marvin Chacon <marvin@ragingbull.com> wrote:

> What's up guys -
>
> No I have never seen this. Kayla, let's talk about it tomorrow. Maybe we could reach out the rep and see what's going on. We'll say they're fake. They can't prove their not.
>
> Best,
> Marvin Chacon

On Wed, Apr 29, 2020 at 7:54 PM Stephen Prior <stephenp@ragingbull.com> wrote:

> Marvin - have you received this warning in the past? If not we gotta figure out what we are doing differently
>
> Kayla - see below.
>
> We're using this page on our new funnel so it's really important we get a handle on it.
>
> Cant have the average stars drop
>
> *Sent from my Google Pixel 4XL... Please excuse any typos*

On Wed, Apr 29, 2020, 10:50 PM Jeff Bishop <jeff@bishop.me> wrote:

> I'm not sure who's handling this but let's find a way to make sure we're only reporting fake reviewers
>
> ---------- Forwarded message ---------
> From: **Trustpilot** <noreply.notifications@trustpilot.com>
> Date: Wed, Apr 29, 2020 at 8:04 PM
> Subject: Alert: High Reporting Activity
> To: Jeff Bishop <jeff@bishop.me>

**Attachment D**          **PX 47, 4772**

From January 30, 2020-April 30, 2020 you reported 14 of the 1-2 star reviews on jasonbondpicks.com. 6 of these reports were invalid.

This is a misuse of our reporting tool and a breach of our Company Guidelines.

If you continue to misuse our reporting tool, your access to the reporting tool will be suspended.

Did you know?
A quick reply to a review can make the conversation easier and showcase your customer service. When a business shows all of their reviews, they prove they have nothing to hide.

**Trustpilot A/S**

Pilestraede 58, 5th Floor, 1112 Copenhagen K
Company no.: 30276582



.
--
Se

**Kayla Smith**
**Assistant Director of Client Services**
kaylas@ragingbull.com
https://www.linkedin.com/company/ragingbull
https://www.facebook.com/RagingBullTrading
833-265-1270

**Attachment D          PX 47, 4773**