# EXHIBIT 19

# STATE OF NEW HAMPSHIRE
## DEPARTMENT OF STATE

## BUREAU OF SECURITIES REGULATION

| | |
|---|---|
| **IN THE MATTER OF:** | ) |
| | ) **ORDER TO CEASE AND DESIST** |
| RagingBull.com,LLC, | ) |
| Jason Bond a/k/a Jason Kowalik, | ) |
| Sherwood Ventures, LLC, | ) |
| Jeffrey M. Bishop, and | ) **COM2018-000019** |
| MFA Holdings Corp | ) |
| | ) |
| Respondents | ) |
| | ) |

### NOTICE OF ORDER

This Order commences an adjudicative proceeding under the provisions of RSA 421-B:6-613.

### LEGAL AUTHORITY AND JURISDICTION

Pursuant to RSA 421-B:6-604(a)(1), the Secretary of State has the authority to issue and cause to be served an order requiring any person appearing to him to be engaged or about to be engaged in any act or practice constituting a violation of RSA 421-B or any rule or order thereunder, to cease and desist from violations of RSA 421-B.

Pursuant to RSA 421-B:5-508, any person who willfully violates a cease and desist order issued pursuant to RSA 421-B:6-603 or RSA 421-B:6-604 shall be guilty of a class B felony.

Pursuant to RSA 421-B:6-604(d), the Secretary of State has the authority to impose administrative penalties of up to $2,500.00 for a single violation.

Pursuant to RSA 421-B:6-604(g), the Secretary of State may charge the actual cost of an investigation or proceeding for a violation of this chapter or an order issued under this chapter.

## <u>NOTICE OF RIGHT TO REQUEST A HEARING</u>

Under the provisions of RSA 421-B:6-604, the above named respondents have the right to request a hearing on this order to cease and desist.

Any such request for a hearing shall be in writing, shall be signed by the respondents, or by the duly authorized agent of the above named respondents, and shall be delivered either by hand or certified mail, return receipt requested, to the Bureau of Securities Regulation, Department of State, 25 Capitol Street, Concord, New Hampshire 03301.

Under the provisions of RSA 421-B: 6-604(b), within 15 days after receipt of a request in a record from the respondents, the matter will be scheduled for a hearing.  If the respondents subject to the order do not request a hearing and none is ordered by the secretary of state within 30 days after the date of service of the order, the order becomes final.  If a hearing is requested or ordered, the secretary of state, after notice of and opportunity for hearing to the respondents subject to the order, may modify or vacate the order or extend it until final determination.  If the respondents  to whom a cease and desist order is issued fails to appear at the hearing after being duly notified, such respondents shall be deemed in default, and the proceeding may be determined against them upon consideration of the cease and desist order, the allegations of which may be deemed to be true.

## STATEMENT OF ALLEGATIONS

The allegations contained in the Staff Petition for Relief dated December 7, 2020 (a copy of which is attached hereto) are incorporated by reference hereto.


## ORDER

WHEREAS, finding it necessary and appropriate and in the public interest, and for the protection of investors and consistent with the intent and purposes of the New Hampshire securities laws, and

WHEREAS, finding that the allegations contained in the Staff Petition, if proved true and correct, form the legal basis for the relief requested,

It is hereby ORDERED, that:

1. The Respondents RagingBull.com,LLC, Jason Bond a/k/a Jason Kowalik, Jeffrey M. Bishop and Sherwood Ventures, LLC (collectively referred to herein as Jeffrey M. Bishop), and MFA Holdings, Corp.are hereby ordered to immediately cease and desist from further violations of RSA 421-B.

2. Respondents shall jointly and severally pay administrative fines and penalties of $2,500 per violation for the aforementioned violations of the N.H. Securities Act.

3. Respondents shall jointly and severally pay the Bureau's costs in an amount to be determined by a hearing officer.

4. Respondents shall jointly and severally pay restitution in an amount to be determined by a hearing officer.

5. The hearing officer may upon hearing, suspend, revoke, or deny any registration or license of the Respondents or bar Respondents from registration or licensure pursuant to N.H. RSA 421-B:6-604

4. Failure to request a hearing within 30 days from receipt off this Order shall result in a default judgment being rendered and administrative penalties being imposed upon the defaulting respondent.

SIGNED,

WILLIAM M. GARDNER
SECRETARY OF STATE
BY HIS DESIGNEE:

Dated: _12·7·2020_

Barry J. Glennon, Director
N.H. Bureau of Securities Regulation

STATE OF NEW HAMPSHIRE
BUREAU OF SECURITIES REGULATION
DEPARTMENT OF STATE
CONCORD, NEW HAMPSHIRE

| | |
|---|---|
| **STAFF PETITION FOR RELIEF IN THE MATTER OF:** )<br><br>**RagingBull.com, LLC,** )<br><br>**Jason Bond aka Jason Kowalik,** )<br><br>**Sherwood Ventures, LLC,** )<br><br>**Jeffrey M. Bishop,** )<br><br>**and MFA Holdings Corp.** )<br><br>**Respondents** ) | No.COM2018-000019 |

## STATEMENT OF FACTS

I.     The Bureau of Securities Regulation, Department of State, State of New Hampshire (hereinafter referred to as "the Bureau"), hereby petitions the Director, and makes the following statements of fact:

## Introduction

1.     RagingBull.com, LLC (hereinafter "RB") is a business entity with a principal office address located at 62 Calef Highway, Suite 233, Lee, NH 03861. RB is a Delaware registered limited liability company formed in 2014 under the name Lighthouse Media, LLC. RB sells subscriptions for their online educational services meant to teach securities trading to individual customers through multiple online methods mainly consisting of training videos, text alerts, and livestream real money trading. The principals and owners of RB are MFA Holdings Corp. owned by Allan Marshall, as part owner of RB (hereinafter "MFA"), Sherwood Ventures, LLC owned by Jeffrey M. Bishop, as part owner of RB, and Jeffrey M. Bishop, as a principal of RB (collectively referred to herein as "JB"), and Jason Bond aka Jason Kowalik, as part owner and a principal of RB (hereinafter "Bond"). Bond resides in Durham, New Hampshire, and JB resides in Barrington, New Hampshire. MFA is located in Tampa, Florida.

RB operates various trading services with multiple names such as Jason Bond Picks, Weekly Money Multiplier, and Bullseye Trades. RB advertises that they have over twenty products and seven traders (hereinafter the seven traders are collectively referred to as "RB traders"). RB has thousands of customers across the country, including customers in New Hampshire. Numerous complaints about RB have been filed with New Hampshire state agencies, federal agencies, and with the New Hampshire Better Business Bureau ("BBB"). Their BBB rating is F (the BBB's lowest rating).

2.    RB advertises their services on social media, including Facebook, Twitter, Instagram, and YouTube, and on their website at www.ragingbull.com. RB's advertisements emphasize high percentage returns on stock and option trading, which, as RB touts, can be easily duplicated by the subscriber. The ads also create the expectation that a customer can achieve quick and high profits, can earn those profits even if the customer is fully employed (meaning, the customer has limited time to trade), and can succeed to live an extravagant, millionaire lifestyle. In RB's ads, the traders are often in or near a luxury automobile, yacht, mansion, or a jet plane. (See Exhibit 1). The traders then claim customers could live like them. However, as to a jet plane, RB does not own one. Bond also claimed to have spoken at Harvard Business School. However, Bond was never invited by Harvard University to speak at its school nor did he present at a speaking engagement hosted by Harvard University. Bond paid money to speak in a Harvard building with the impression that the event was affiliated with Harvard University when the event was affiliated neither with Harvard Business School nor Harvard University, nor was it a Harvard University program or activity.

3.    The method of teaching securities trading for all of the RB services is generally the same. RB traders scan various securities to be placed on a watch list if they show potential for profits that could accumulate in a matter of hours or within a few days. The securities are usually those of small-capitalized companies, whose securities are susceptible to rapid movement. RB also trades in option contracts as well. The watch list is then narrowed to a subset of securities, which show a promise for gains, to be sent as alerts to subscribers. A RB trader will send an alert as to the price or contract terms at which he/she bought and the parameters at which he/she will sell. The traders will livestream their personal trading accounts so the subscriber can see in real time the security's movement, as well as any adjustments made to the trader's account. The alerts are meant to teach in real time trading strategies that attempt to predict a security's movement and its ultimate gain and profit. The alerts are accompanied by training videos and chatroom opportunities for subscribers to learn about trading patterns and what certain trading patterns indicate. RB encourages and expects subscribers to copy or "mirror" the trades of each RB trader.

2

4.    Subscribers of RB services pay a set rate for the service either on a periodic basis or annual basis. The profits from the subscriptions are divided among the respective traders based on a percentage, and the remainder goes to RB where it is distributed monthly to the owners based on percentage of ownership. In addition to a percentage of subscription revenue, RB traders are provided a base salary; while others, however, are only compensated with a salary. RB traders execute trades in accounts owned by RB and, separately, in personal accounts owned by the traders. Profits from the RB account are divided among the owners based on percentage of ownership of RB. A portion of the trading profits are donated to charity.

5.    The Bureau has received multiple complaints about RB's trading services. The Bureau is also aware that over two hundred complaints about RB services have been filed with the BBB. The nature of the complaints vary; however, the main focus of the complaints is that the security picks by RB traders are not profitable and subscriber requests for refunds based on a dissatisfaction with the respective service are ignored or denied by RB. Other complaints describe how subscribers are misled by the expectation of high profits when they "mirror" trade their accounts based on the trading of RB traders, and by the expectation that a subscriber can successfully follow an RB trader while at the same time keeping a full time job during exchange trading hours, which RB touts as easily achievable. Subscribers also complain that the trade alerts are of no value as oftentimes the alerts are delayed causing the price to move out of a profitable range.

**Subscriber Complaints**

6.    Investor #1 from Mason, Ohio, an experienced options trader, purchased several RB subscription services including one called Bullseye Trades offered by JB in early June 2020 for $599. According to an internal memo of RB entitled Product Matrix, Bullseye Trades "is designed to offer Jeff's best option pick each week, delivered to client's pre-market, every Monday morning via e-mail. There is only one trade alerted each week." Investor #1 was attracted to the RB offer to purchase this service from their website and a video presented by JB (See, as an example Exhibit 2). In one ad JB is seen exiting a private jet and Investor #1 was lured to the appearance of success. Investor #1 was lead to believe that if he followed the trades of JB he would make a profit. JB touted double and triple profits from trading with his strategy. Bullseye Trades is a RB service that promises to make at least a 100 percent profit. The service costs $49 per month. On the video, JB is seen and heard saying that he will present one security pick on a weekly basis that is expected to profit by at least 100 percent. The effort of searching for and finding the one pick is left up to JB. The design of the service is for subscribers to follow his trade recommendations. In fact, JB is quoted as saying, "[I] do all the work for you", and "[n]ot only do I give a map, I take the wheel".

3

7.     Investor #1 filed a complaint against RB with the BBB and requested a refund. He allegedly lost money and did not receive the alerts on time to get the price touted by JB. He believed that JB was front running the stocks because he saw in the RB chat room that many others complained about the same thing—they could not obtain the price at which JB executed his trade. Investor #1 observed that the service had no special insight into options trading. He believed content was basic and could be obtained easily online for free.

8.     Investor #2 from Hacienda Heights, California was attracted to Bullseye Trades through Facebook and then, in or around July 2020, subscribed to it for $49 dollars using RB's website. Investor #2 understood from the service that he was to follow JB's recommended trades. Investor #2 also complained about RB to the BBB because he did not get the alerts. He stated that the design of the ad and the Bullseye Trades service was directed at getting subscribers to mimic and follow JB's trade picks. Investor #2's complaint was very similar to that of Investor #1. He also saw in the ad that JB was pictured with a private jet in the background giving the allure of wealth and success. JB was also pictured in front of a mansion and on a yacht.

9.     Other subscribers to the RB trading services also complained to the BBB about RB trading ahead of investors. Investor #3's son, from Sparta, New Jersey, reported to the Bureau the following: that Investor #3, his mother who is also from Sparta, New Jersey, subscribed to RB from 2017 to 2019; that Investor #3 was not aware when she subscribed for the service that Bond sent the alerts after Bond entered the trade; and that Investor #3 believed Bond was providing investment advice. RB discloses to subscribers, however, that they reserve the right to buy and sell the shares of any company mentioned at any time. Investor #3's son also reported to the Bureau that, since Bond is an investment adviser, Bond should send out the alert first and then enter the trade.

10.     Investor #4 from Rancho Palos Verdes, California had the same complaint about RB. He states that he was lead to believe he was buying an advisory service about options, and, in or around July 2020, he subscribed to RB. He is an experienced options trader. He states that he did not realize that the RB traders act on their own advice which is not helpful because it makes the price move.

11.     Investor #5 from St. Louis, Missouri also complained to the BBB. He states that, in or around October 2019, he subscribed to a RB options trading strategy called Weekly Windfalls. He also bought a subscription for Weekly Money Multiplier. He was attracted to the service because Bond stated that subscribers did not have to have any trading experience to make money.

Investor #5 states that he was lead to believe that the subscriber was
supposed to follow the trades of the RB trader. He states that by the time he
got the alert the price changed and so he was not able to take advantage of
the alerted trade recommendation.

**Unlicensed Investment Advice**

12.   RB is not a licensed investment adviser, and MFA, JB, and Bond are not
      licensed investment adviser representatives. Yet, RB's educational and
      teaching services, specifically, the Bullseye Trades service, fits the
      definition of investment advise in that the Respondents advise others for
      compensation, either directly or indirectly or through publications or
      writings as to the value of securities or the advisability of investing in,
      purchasing, or selling securities or that, for compensation and as part of a
      regular business, issues or promulgates analyses or reports relating to
      securities. New Hampshire RSA 421-B:1-102 (D) excludes from the
      definition of investment adviser a publisher of a bona fide newspaper, news
      magazine, or business or financial publication of general and regular
      circulation. However, RB, MFA, JB, and Bond are not excluded from the
      New Hampshire investment adviser definition. RB's business is specifically
      designed to motivate subscribers to trade into positions of specific stocks
      picked by RB traders, and, knowing that many subscribers will hold
      positions in the picked-stocks, to trade out of their positions as directed by
      RB traders. The advice is not a bona fide publication with regular
      circulation. Rather, it is connected to the real time trading of the RB trader's
      account and not based on a regular and predetermined trading pattern.

**The RB Subscription Service is Fraudulent**

13.   RB, MFA, JB, and Bond employed a device, scheme, or artifice to defraud
      subscribers, or engaged in an act, practice, or course of business that
      operated or would operate as a fraud or deceit upon another person by
      publishing images that were false, by making false claims, and by failing to
      disclose material information to subscribers.

14.   RB touts that Bond is a "millionaire trader," and RB ads often describe
      Bond as a "self-made millionaire trader." This directly implies that Bond
      has personally made at least one million dollars in trading profits. However,
      documentation reviewed by the Bureau do not show that Bond has
      personally made a million dollars in trading profits and the documentation
      does not support that he was a "self-made millionaire trader."

15.   Bond broadcasted a presentation about RB purporting to be sponsored by
      Harvard Business School or affiliated with Harvard University (See
      Exhibit 3) when the presentation had no connection to Harvard University,
      nor specifically to Harvard Business School, in any official capacity. Bond

5

broadcasted images intended to give the appearance that he was invited to speak by Harvard University when he was not.

16. Bond and JB repeatedly touted to subscribers the ability to obtain high profits and acquire wealth by subscribing to and following RB trading services by broadcasting images of themselves with private jets when RB, Bond, and JB did not own a private jet.

17. RB, MFA, JB, and Bond repeatedly broadcast to subscribers through ads and publications the ability to make profits following their trade recommendations, but failed to disclose that they traded ahead of subscribers allowing RB traders to receive a better price than the subscribers.

## STATEMENTS OF LAW

II.    The Bureau hereby petitions the Director and makes the following statements of law under the New Hampshire Revised Statutes Annotated, RSA 421-B (hereinafter referred to as the Act):

1. RB, Bond, JB and MFA, are each a "Person" within the meaning of N.H. RSA 421-B:1-102(39).

2. RB is operating as an investment adviser as defined by N.H. RSA 421-B:1-102(26) (2016), since 2017 to present. JB and Bond are operating as investment adviser representatives of RB as defined by N.H. RSA 421-B:1-102(27), since 2017 to present.

3. Pursuant to N.H. RSA 421-B:4-403 and 4-404 (2016), it is unlawful for any person to transact business in this state as an investment adviser or investment adviser representative unless such person is licensed under RSA 421-B or exempt from licensing. RB is in violation of this section for transacting business in New Hampshire as an unlicensed investment adviser firm and JB and Bond are in violation of this section for transacting business in New Hampshire as unlicensed investment adviser representatives.

4. Pursuant to N.H. RSA 421-B:4-412(c) and (d)(2), if the secretary of state finds that the order is in the public interest and subsection (d) other than subsection (d)(7), (d)(11), or (d)(14) authorizes the action, an order under this chapter may censure, impose a bar, or impose a civil penalty in an amount not to exceed a maximum of $2,500 for each violation on a registrant if the registrant is (i) an investment adviser, (ii) any partner, officer, or director, any person having similar functions, or (iii) any person directly or indirectly controlling the investment adviser. RB, MFA, JB, and Bond are subject to this provision.

6

5. Pursuant to N.H. RSA 421-B:5-502(a) (2016), it is unlawful for any person that advises others for compensation, either directly or indirectly or through publications or writings, as to the value of securities or the advisability of investing in, purchasing, or selling securities or that, for compensation and as part of a regular business, issues or promulgates analysis or reports relating to securities to employ a device scheme or artifice to defraud another person, or to engage in an act, practice, or course of business that operates or would operate as a fraud or deceit upon another person.  RB, JB, and Bond violated this section and engaged in a fraudulent course of business or scheme by:

   a. Providing investment adviser services without seeking state or federal licensure;

   b. Failing to disclose that it would be very difficult or impossible to obtain the same or better stock prices at which RB traders were executing trades at since RB, JB, and Bond trade ahead of their subscribers and then communicate the information to hundreds or thousands of subscribers after the fact, causing a flurry of trades in that security and making those prices difficult or impossible to achieve notwithstanding the delay in sending and receiving a trade alert; and

   c. Publishing false advertising images and false statements in connection with offering investment adviser services giving the appearance that they were successful millionaire traders, owned a private jet, and were invited to speak at Harvard University.

6. Pursuant to N.H. RSA 421-B:5-503 (2016), the burden of proving an exemption, preemption, or an exception from a definition is upon the person claiming it. RB, MFA, JB, and Bond have not established any valid exemption or exception from proper licensing.

7. Pursuant to N.H. RSA 421-B:6-604(a) (1) (2016), whenever it appears to the secretary of state that any person has engaged or is about to engage in any act or practice or materially aids in acts constituting a violation of this chapter or any rule under this chapter, he shall have the power to issue and cause to be served upon such person an order requiring the person to cease and desist from violations of this chapter. RB, MFA, JB, and Bond are subject to this section for conducting unlicensed investment adviser services and committing fraud in connection with offering of investment adviser services.

8. Pursuant to N.H. RSA 421-B:6-604(d) (2016), any person who violates any provisions of this chapter may, upon hearing, and in addition to any other penalty provided for by law, be subject to a bar from any registration or license, or an administrative fine not to exceed $2,500, or both.  Each of the

7

acts specified shall constitute a separate violation. RB, MFA, JB, and Bond are subject to a bar and a fine for violations of N.H. RSA 421-B:4-403 (2016), N.H. RSA 421-B:4-404 (2016) and N.H. RSA 421-B:5-502 (2016).

9.   Pursuant to N.H. RSA 421-B:6-604(e) (2016), after notice and hearing, the secretary of state may enter an order of rescission, restitution, or disgorgement directed to a person who has violated this chapter, or a rule or order under this chapter.  RB, MFA, JB, and Bond are subject to this provision and should be ordered to pay restitution for fees collected from subscribers while conducting unlicensed investment adviser services and committing fraud in connection with offering of investment adviser services, in an amount to be determine by the hearing officer.

10.  Pursuant to N.H. RSA 421-B:6-604(g) (2016), RB, MFA, JB and Bond should be assessed the costs of the investigation, as determined by the hearing officer.

## **RELIEF REQUESTED**

III.   The Bureau makes the following requests for relief in the above-referenced matter as permitted under the Act.

1.   Find as fact the statements contained in section I of the Statements of Fact.

2.   Make conclusions of law relative to the statements contained in section II of the Statements of Law.

3.   Pursuant to N.H. RSA 421-B:6-604, issue an order to cease and desist against RB, MFA, JB, Bond for  violations under the Act.

4.   Assess administrative fines and penalties of $2,500 per violation against RB, MFA, JB and Bond jointly and severally for the above-referenced violations under the Act.

5.   Order restitution against RB, MFA, JB, and Bond, in an amount to be determined by a hearing officer.

6.   Order costs against RB, MFA, JB, and Bond jointly and severally.

7.   Issue an order denying or barring any license and registration privileges of the Respondents pursuant to N.H. RSA 421-B:6-604.

8.   Take any other just and equitable relief as permitted under the Act.

**RIGHT TO AMEND**

The Bureau's staff reserves the right to amend this Petition for Relief and requests that the Director of Securities Regulation take further enforcement action.

Respectfully submitted by:

Jeffrey Spill
Deputy Director

_01/7/20_
Date

Eric Forcier
Staff Attorney

_12/7/20_
Date

Noah Abrahams

Staff Attorney

_12/7/2020_
Date

9









Staff Petition for Relief in the Matter of:
RagingBull.com, LLC; Jason Bond aka Jason Kowalik;
Sherwood Ventures, LLC; Jeffrey Bishop; and MFA Holdings Corp.

No. COM2018-000019

EXHIBIT 1