IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cv-03538 - GLR |
| | ) | |
| RAGINGBULL.COM, LLC f/k/a | ) | |
| LIGHTHOUSE MEDIA LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## **ORDER**

On December 7, 2020, Plaintiff, the Federal Trade Commission ("FTC") filed its

Complaint for Permanent Injunction and Other Equitable Relief pursuant to Sections 13(b)

and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b,

and Section 5 of the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. §

8404, and moved, pursuant to Federal Rule of Civil Procedure 65, for a temporary

restraining order, asset freeze, other equitable relief, and for an order to show cause why a

preliminary injunction should not issue against Defendants RagingBull.com, LLC

("Raging Bull" or the "Company"), Sherwood Ventures LLC, Jason Bond LLC, Winston

Research Inc., Winston Corp., Jeffrey M. Bishop, Jason Bond, and Kyle W. Dennis

("Defendants").[1] (ECF No. 2) ("Motion to Show Cause").

---

[1] The FTC's initial motion also requested a temporary restraining order and
preliminary injunction as to defendant MFA Holdings Corp. The FTC has since withdrawn
its request for a preliminary injunction as to MFA Holdings Corp. and has dropped MFA
Holdings Corp. as a defendant in this case.

On December 8, 2020, the Court granted the FTC's motion ex parte and entered the Temporary Restraining Order ("TRO") with an asset freeze and appointment of a Temporary Receiver. (ECF No. 21). On December 17, 2020, the Court entered a modified TRO. (ECF No. 64). On December 30, 2020, based on consent of the parties and the Temporary Receiver, the Court extended the duration of the TRO until after the preliminary injunction hearing, which was rescheduled to February 5, 2021. (ECF No. 104).

On February 3, 2021, after briefing on the Motion to Show Cause was completed and the Temporary Receiver had filed his Initial Status Report, the Court directed Defendants Raging Bull, Jeffrey M. Bishop, Jason Bond ("Raging Bull Defendants") to submit a Business Plan outlining how the Company would operate lawfully and profitably on an interim basis until a trial on the merits or the case is otherwise resolved. Raging Bull Defendants submitted the Business Plan on February 19, 2021, and briefing has been completed.

## FINDINGS

The Court, having considered the initial Complaint, the FTC's Motion to Show Cause and the parties' briefing thereto, the Temporary Receiver's Initial Status Report, and Raging Bull's Business Plan and the briefing thereto, and having conducted a preliminary injunction hearing on March 19, 2021, during which the Court heard argument presented by the FTC and Defendants, makes the following findings of fact and conclusions of law:

A.     This Court has jurisdiction over the subject matter of this case, and there is good cause to believe that it will have jurisdiction over all parties hereto and that venue in this district is proper.

B.     Raging Bull Defendants consent to the entry of this Order, including the appointment of Affiliated Monitors, Inc. as compliance monitor over Raging Bull; the incorporation of Raging Bull's Business Plan as part of this Order; and compliance with the terms of this Order as outlined below.

C.     Individual Defendants Bishop and Bond consent to the creation and funding of an escrow account in the amount of $10 million to cover, on an as-needed basis, any shortfall associated with the cost of compliance.

D.     The Business Plan, in conjunction with Raging Bull Defendants' consent to this Order, provides sufficient detail and assurances that Raging Bull will operate lawfully on a preliminary basis pending resolution of this matter, and that such operation is reasonably likely to decrease the liabilities and increase the assets of Raging Bull Defendants.

E.     In order for the Court to enter a preliminary injunction, the FTC must demonstrate: (1) a likelihood of success on the merits of its claims; and (2) that the equities weigh in favor of a preliminary injunction.

F.     For the reasons stated on the record, and having weighed the equities and considered Raging Bull Defendants' consent to the aforementioned terms and provisions, the Court finds that the FTC has not satisfied its burden of demonstrating that the equities

3

weigh in favor of its requested preliminary injunctive relief. Accordingly, the FTC's request for a preliminary injunction will be denied.

G.      Nonetheless, the Court enters the following Order as proposed and consented to by Raging Bull Defendants. The provisions of this Order are subject to the Court's enforcement powers contained within federal statutes and the Federal Rules of Civil and Criminal Procedure.

H.      This Court has authority to issue this Order pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b); Federal Rule of Civil Procedure 65; and the All Writs Act, 28 U.S.C. § 1651.

### DEFINITIONS

For the purpose of this Order, the following definitions shall apply:

A.      "Asset" means any legal or equitable interest in, right to, or claim to, any property, wherever located and by whomever held.

B.      "Billing Information" means any data that enables any person to access a customer's account, such as a credit card, checking, savings, share or similar account, utility bill, mortgage loan account, or debit card.

C.      "Charge," "Charged," or "Charging" means any attempt to collect money or other consideration from a consumer, including causing Billing Information to be submitted for payment, including against the consumer's credit card, debit card, bank account, or other account.

4

D.     "Corporate Defendant(s)" means RagingBull.com, LLC f/k/a Lighthouse Media, Sherwood Ventures LLC, Jason Bond LLC, Winston Research Inc., Winston Corp., and each of their subsidiaries, affiliates, successors, and assigns.

E.     "Covered Goods or Services" means Defendants' investment training or trading services, or functionally similar such goods or services.

F.     "Defendant(s)" means Corporate Defendants and Individual Defendants (as defined below), individually, collectively, or in any combination.

G.     "Document" is synonymous in meaning and equal in scope to the usage of "document" and "electronically stored information" in Federal Rule of Civil Procedure 34(a), and includes writings, drawings, graphs, charts, photographs, sound and video recordings, images, Internet sites, web pages, websites, electronic correspondence, including e-mail and instant messages, contracts, accounting data, advertisements, FTP Logs, Server Access Logs, books, written or printed records, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, computer records, customer or sales databases and any other electronically stored information, including Documents located on remote servers or cloud computing systems, and other data or data compilations from which information can be obtained directly .or, if necessary, after translation into a reasonably usable form. A draft or nonidentical copy is a separate document within the meaning of the term.

H.     "Earnings Claim" means any representation to consumers, specific or general, about income, financial gains, percentage gains, profit, net profit, gross profit, or

return on investment. Earnings Claims include, but are not limited to: (a) the details of specific profitable trades, whether actual or hypothetical; (b) references to quitting one's job, not having to work, or living off of income from trading; (c) references to increased purchases or savings, including a home, vacations, or travel; (d) claims that consumers will not lose money if they use a particular trading strategy; (e) claims that profits are likely, probable, or the "mathematical" result of applying a particular trading strategy; and (f) any representation, even hypothetical, of how much money a consumer could or would earn.

I.      "Individual Defendant(s)" means Jeffrey M. Bishop, Jason Bond f/k/a Jason P. Kowalik, and Kyle W. Dennis, individually, collectively, or in any combination.

J.      "Monitor" means the compliance monitor appointed in Section V of this Order and any deputy monitors that shall be named by the monitor.

K.      "Negative Option Feature" means, in an offer or agreement to sell or provide any good or service, a provision under which the consumer's silence or failure to take affirmative action to reject a good or service or to cancel the agreement is interpreted by the seller or provider as acceptance or continuing acceptance of the offer.

L.      "Raging Bull Defendant(s)" means RagingBull.com, LLC f/k/a Lighthouse Media, Jeffrey M. Bishop, and Jason Bond f/k/a Jason P. Kowalik.

M.      "Temporary Receiver" means the temporary receiver that was appointed in Section XIII of the TRO and any deputy receivers that were named by the temporary receiver.

N.      "Receivership Entity" or "Receivership Entities" means Corporate Defendants as well as any other entity that the Temporary Receiver determined is

6

controlled or owned by any Defendant and (1) conducted any business related to Defendants' advertising, marketing, distributing, promoting, or selling of investment training or trading services or negative option offers, (2) commingled or pooled any Assets with any Defendant, or (3) otherwise participated in the transfer of Assets stemming from the advertising, marketing, distributing, promoting, or selling of investment training or trading services or negative option offers.

## I.

## PROHIBITED BUSINESS ACTIVITIES

IT IS THEREFORE ORDERED that Raging Bull Defendants and their officers, agents, employees, and attorneys, and all other persons in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, or offering for sale of any Covered Goods or Services, are preliminarily restrained and enjoined from:

A.      Making any Earnings Claim, expressly or by implication, unless the Earnings Claim is non-misleading, and, at the time such claim is made, Defendants: (1) have a reasonable basis for the claim; (2) have in their possession written materials that substantiate that the claimed earnings are typical for consumers similarly situated to those to whom the claim is made; and (3) make the written substantiation available upon request to the consumer, potential purchaser, and the FTC;

B.      Making any claim, expressly or by implication, about (1) the level of experience required for consumers to effectively use Defendants' Covered Goods or

Services, (2) the time or effort required for consumers to effectively use Defendants' Covered Goods or Services, or (3) the amount of capital required for consumers to effectively use Defendants' Covered Goods or Services s, unless the claim is non-misleading, and, at the time such claim is made, Defendants: (a) have a reasonable basis for the claim; (b) have in their possession written materials that substantiate that the claim is typical for consumers similarly situated to those to whom the claim is made; and (c) make the written substantiation available upon request to the consumer, potential purchaser, and the FTC; or

      C.     Misrepresenting or assisting others in misrepresenting, expressly or by implication, any other fact material to consumers concerning any Covered Goods or Services, such as: the total costs; any refund policy; any material restrictions, limitations, or conditions; or any material aspect of its performance, efficacy, nature, or central characteristics.

      Defendants' advertising, marketing, promoting, or offering for sale of any Covered Goods or Services shall be subject to the prior compliance review and approval by the Monitor as specified in greater detail at Section VI of this Order.

II.

## SIMPLE MECHANISM TO CANCEL NEGATIVE OPTION FEATURE

      IT IS FURTHER ORDERED that Raging Bull Defendants and their officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in

8

connection with promoting or offering for sale any Covered Goods or Services with a Negative Option Feature, are preliminarily restrained and enjoined from:

A.     Failing to provide a simple mechanism for the consumer to: (1) avoid being Charged, or Charged an increased amount, for the Covered Goods or Services and (2) immediately stop any recurring Charges. Such mechanism must not be difficult, costly, confusing, or time consuming, and must be at least as simple as the mechanism the consumer used to initiate the Charge(s);

B.     For consumers who entered into the agreement to purchase a Covered Good or Service including a Negative Option Feature over the Internet, such as through a web-based application, Defendant must provide a mechanism, accessible on the same Internet website or through the same web-based application, that consumers can easily use to cancel the product or service and to immediately stop all further Charges; and

C.     For consumers who entered into the agreement to purchase a Covered Good or Service including a Negative Option Feature through an oral offer and acceptance, Defendants must maintain a telephone number and a postal address that consumers can easily use to cancel the product or service and to immediately stop all further Charges. Defendants must ensure that all calls to this telephone number are answered during normal business hours and that mail to the postal address is read regularly.

## III.

### COMPLIANCE MONITORING OVER DEFENDANTS

IT IS FURTHER ORDERED that Raging Bull Defendants and their officers, agents, employees, and all other persons in active concert or participation with any of them, who

9

receive actual notice of this Order, whether acting directly or indirectly, in connection with advertising, marketing, promoting, offering for sale of any Defendants' Covered Goods or Services, are hereby enjoined from:

A.      Failing to take all reasonable steps necessary to monitor and ensure that Defendants' agents, representatives, employees, and independent contractors act in compliance with this Order. For purposes of this Section, an individual's status as a participant alone does not render him or her an agent, representative, employee, or independent contractor of Defendants; and

B.      Failing to record Defendants' live sales events in conjunction with the offering for sale of any of Defendants' Covered Goods or Services.

## IV.

## RAGING BULL BUSINESS PLAN

IT IS FURTHER ORDERED that Business Plan filed with the Court on February 19, 2021 (ECF No. 177) is hereby incorporated into this Order. Raging Bull Defendants' operation of the Company shall be in compliance with provisions of this Order, including the Business Plan as incorporated herein.

## V.

## APPOINTMENT OF MONITOR

IT IS FURTHER ORDERED that Affiliated Monitors, Inc. is appointed as compliance monitor for the purpose of further ensuring Defendants' compliance with this Order. Jesse Caplan and Gerald Coyne of Affiliated Monitors, Inc. shall serve as the lead

monitors. The Monitor shall be the agent of this Court and solely the agent of this Court in

acting as Monitor under this Order. The Monitor shall be accountable directly to this Court.

## VI.

## **DUTIES AND AUTHORITY OF THE MONITOR**

IT IS FURTHER ORDERED that the Monitor shall have the following duties and

authority:

A.     All duties and authority as described in further detail in the Business Plan.

B.     Monitor Raging Bull Defendants' compliance with this Order, including by

diligently and competently:

1.     Ensuring that Raging Bull Defendants' record live sales events; and

2.     As further specified in the compliance monitoring description in the

Business Plan, identifying, assessing, reviewing, and approving for compliance with

Sections VI of this Order, and certifying to the Court, Defendants' marketing materials and

other Documents that reflect Defendants' marketing, advertising, promotion, offer for sale,

or sale of their Covered Goods and Services, including, but not limited to, radio ads,

television ads, direct mail, email, search engine advertising, Internet banner

advertisements, websites, online videos, webinars, social media, live sales events,

recordings of live sales events, including recordings of franchisee-owned training centers'

events, handouts, slide decks, workbooks, telephone calls (both live and recorded), call

logs, call detail records, and reports. The Monitor will determine the number of live sales

events, recordings of live sales events, and calls to review, and will determine in its

discretion which additional materials or Documents to review in conjunction with the Monitor's performance of its duties under this Order.

     C.    The Monitor shall have immediate, unfettered access to:

        1.    All information or Documents the Monitor deems necessary or appropriate to carrying out the Monitor's duties pursuant to this Order;

        2.    Access to all property or premises in possession of, owned by, or under the control of Defendants related to the marketing, advertising, promotion, offer for sale, or sale of their Covered Goods or Services, wherever located;

        3.    The right to copy or image any and all Documents as the Monitor deems necessary or appropriate to carrying out the Monitor's duties pursuant to this Order, including any Documents in the custody, or control of Individual Defendants Bishop and/or Bond;

        4.    The right to interview any current or former employee, independent contractor, principal, owner, manager, member, or other person affiliated with Defendants, to obtain and copy pertinent information; and

        5.    The right to interview any Defendant's current or former officer, manager, independent contractor, subcontractor, financial institution, vendor, telecommunications provider, agent, service bureau, or other entity involved in the provision of any services from, to, or on behalf of Defendants to obtain and copy pertinent information.

     D.    The Monitor is authorized to choose, engage, and employ attorneys, investigators, and other independent contractors and technical specialists, as the Monitor

deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order.

E.      The Monitor shall report to the Court on Defendants' compliance with this Order or on any other matters that the Monitor believes should be brought to the Court's attention. The Monitor shall make its first report within thirty (30) days of entry of this Order. The Monitor shall make each subsequent report every sixty (60) days for the duration of this Order.

F.      The Monitor may apply to the Court for any relief necessary or appropriate to ensure the Monitor can carry out his duties.

G.      If, at any time, the Monitor determines that Defendants are not in substantial compliance with this Order, the Monitor shall notify the Court immediately, and may take any such additional action, in the Monitor's discretion, as further described in the compliance monitoring description in the Business Plan.

## VII.

## **PROVISION OF INFORMATION TO THE MONITOR**

IT IS FURTHER ORDERED that Raging Bull Defendants shall provide to the Monitor, immediately upon request, without need of any subpoena or further order, the following:

A.      A list of all Documents pertaining to Defendants' Earnings Claims and other representations related to the marketing, advertising, promotion, offer for sale, or sale of their Covered Goods or Services, including any such Documents belonging to other

persons or entities whose interests are under the direction, custody, or control, or in the possession, of Defendants;

B.    A list of all locations where Documents of Raging Bull Defendants are located, and the means to access such Documents, within twenty-four (24) hours of the Monitor's request; and

C.    A list of all agents, employees, independent contractors, officers, attorneys, and those persons in active concert and participation with Defendants, or who have been associated or done business with Defendants since December 7, 2017, in connection with the marketing, advertising, promotion, offer for sale, or sale of their Covered Goods or Services.

## VIII.

## COOPERATION WITH THE MONITOR

IT IS FURTHER ORDERED that Raging Bull Defendants and their officers, agents, employees, and attorneys, all other persons in active concert or participation with any of them, and all other persons or entities served with a copy of this Order shall fully cooperate with and assist the Monitor. This cooperation and assistance shall include, but is not limited to, providing information to the Monitor that the Monitor deems necessary or appropriate to exercise the authority and discharge the responsibilities of the Monitor under this Order.

## IX.

## NON-INTERFERENCE WITH THE MONITOR

IT IS FURTHER ORDERED that Raging Bull Defendants and their officers, agents, employees, attorneys, and all other persons in active concert or participation with any of

them, who receive actual notice of this Order, and any other person served with a copy of this Order, are hereby preliminarily restrained and enjoined from directly or indirectly:

      A.     Interfering with the Monitor's efforts to carry out his duties under this Order, including but not limited to, by interfering with the Monitor's efforts to review Documents or claims related to Defendants' marketing, advertising, promotion, offer for sale, or sale of their Covered Goods or Services;

      B.     Destroying, secreting, defacing, transferring, or otherwise altering or disposing of any Documents of Defendants; and

      C.     Refusing to cooperate with the Monitor or the Monitor's duly authorized agents in the exercise of their duties or authority under any order of this Court.

**X.**

**COMPENSATION OF THE MONITOR**

IT IS FURTHER ORDERED that the Monitor and all personnel hired by the Monitor as herein authorized, including counsel to the Monitor and accountants if any, are entitled to reasonable compensation for the performance of duties pursuant to this Order, and for the cost of actual out-of-pocket expenses incurred by them, from the assets now held by or in the possession or control of, or which may be received by, Raging Bull Defendants. The Monitor shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of this Order. The Monitor shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

15

## XI.

## ESCROW ACCOUNT

IT IS FURTHER ORDERED that the owners of Raging Bull will create and fund from their personal assets an escrow account ("Escrow Account") in the amount of $10 million by no later than ten (10) days after the entry of this Order. The Escrow Account shall be accessed by Raging Bull only on an as-needed basis solely for the purpose of covering any shortfalls during the first 180 days after commencement of Phase 1 operations. The Escrow Account shall be maintained for a minimum of 180 days after the commencement of Phase 1 operations. At the conclusion of 180 days, or at any time thereafter, Raging Bull Defendants may move the Court, upon a showing that Raging Bull is profitable as of the close of the immediately preceding quarter, for permission to withdraw from the Escrow Account some or all of the funds remaining in the Escrow Account to return to the contributors.

## XII.

## REFUND AND CANCELLATION REQUESTS

IT IS FURTHER ORDERED that Raging Bull shall provide for the following process for the handling of all requests pending as of the date of this Order from subscribers seeking a refund of amounts paid for services and/or for a cancellation of any auto-renewal for services:

A.    The thirty-one Declarants who submitted declarations in support of the FTC's Motion to Show Cause whose claims for refunds from Raging Bull have not already been paid in full or in part shall be provided a full refund of all monies each such Declarant

16

paid to Raging Bull. (Approximately half of the thirty-one Declarants have already been refunded in whole or in part.)

B.     All remaining requests pending as of the date of this Order from subscribers for a refund of amounts paid for services and/or for a cancellation of any auto-renewal for services shall be handled before the completion of Phase 1 as follows:

1.     All subscribers who have made a pending refund request as of the date of this Order may be offered to continue their service(s) in lieu of a refund. Except as otherwise approved by the Monitor, Raging Bull shall initiate only a single, pressure-free offer to continue services for each subscriber with a pending refund request;

2.     Assuming that subscribers continue to seek a refund, a determination will be made whether they are entitled to a refund under the terms of their service. As a general rule, only subscribers who seek a refund for a service that, by its terms, provide for a refund are eligible for a refund.

3.     Subscribers who seek a refund for a service that, by its terms, does not provide for a refund, or does not provide for a refund in the time period the request was made, will not be provided a refund but in addition to the continuation of their current service for an extended time period will be provided the option to switch to a service of similar value at no additional charge;

4.     The Monitor shall have the authority, in accordance with this Section, to determine, given the particular circumstance of each particular subscriber seeking a refund, whether any refund should be made and, if so, whether such refund should be full or partial;

17

5.     A single button will be added to the online dashboard that will allow subscribers seeking to cancel an auto-renewal to simply cancel the auto-renewal.

Notwithstanding the above, the process for considering and determining the appropriate response to each pending refund or cancellation request shall be conducted by the Monitor and not by Raging Bull or any of its employees, unless the Compliance Monitor elects to utilized Raging Bull or any of its employees.

## XIII.

## PRESERVATION OF RECORDS

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby preliminarily restrained and enjoined from:

A.     Destroying, erasing, falsifying, writing over, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, Documents that relate to: (1) the business, business practices, Assets, or business or personal finances of any Defendant; (2) the business practices or finances of entities directly or indirectly under the control of any Defendant; or (3) the business practices or finances of entities directly or indirectly under common control with any other Defendant; and

B.     Failing to create and maintain Documents that, in reasonable detail, accurately, fairly, and completely reflect Defendants' incomes, disbursements, transactions, and use of Defendants' Assets.

18

## XIV.

## TERMINATION OF TEMPORARY RECEIVER

IT IS FURTHER ORDERED that the appointment of the Temporary Receiver is hereby terminated. Within seven (7) days of the date of this Order, the Temporary Receiver shall take all necessary steps:

(1)     to relinquish, return and/or transfer all power, access, authority, responsibility and obligation that were granted to the Temporary Receiver by the TRO to Raging Bull Defendants;

(2)     to relinquish control of each location from which the Receivership Entities operated their businesses at the time the TRO was entered to Raging Bull Defendants;

(3)     to relinquish and return the custody, control, and/or possession of any Assets, Documents, computers, electronic storage devices or any other property, and records relating thereto, over which the Temporary Receiver took or obtained custody, control and/or possession pursuant to the TRO, to Raging Bull Defendants or to the previous owner if not Raging Bull Defendants;

(4)     to return all copies of all Documents that the Temporary Receiver had taken custody, control, and/or possession of pursuant to Section XIV(E) of the TRO to Raging Bull Defendants;

(5)     to relinquish and return all property, Assets and Documents, and records relating to all such property, Assets and Documents, which the Temporary

Receiver obtained, took or otherwise maintained possession, custody or control of pursuant to Section XV of the TRO;

(6)     to withdraw from and relinquish control of any legal action in state, federal or foreign courts or arbitration proceedings that the Temporary Receiver instituted, compromised, adjusted, appeared in, intervened in, defended, disposed of, or otherwise became party to pursuant to Section XIV(M) of the TRO;

(7)     to cause the return of all funds of the Receivership Entities and closure of all bank accounts opened pursuant to Section XIV(O) of the TRO and/or the renaming of such bank accounts to Raging Bull Defendants;

(8)     to provide copies of all records of all receipts and expenditures incurred as Temporary Receiver and maintained pursuant to Section XIV(P) of the TRO to Raging Bull Defendants; and

(9)     to accomplish the purpose of this Order in terminating all power, access, authority, responsibility, or obligation of the Temporary Receiver that was ordered or authorized in the TRO, and, to the extent possible, to return all Assets, Documents, and any other property to Defendants or to any entity(ies) or person(s) which held such Assets, Documents, or any other property as of the entry of the TRO.

## XV.

## DISTRIBUTION OF ORDER BY DEFENDANTS

IT IS FURTHER ORDERED that Defendants may provide a copy of this Order to any affiliate, telemarketer, marketer, sales entity, successor, assign, member, officer,

director, employee, agent, independent contractor, client, attorney, spouse, subsidiary, division, or representative of any Defendant.

## XVI.

## EXPIRATION OF THE TRO & ASSET FREEZE

IT IS FURTHER ORDERED that, upon the entry of this Order, the TRO and asset freeze have expired and are no longer in effect.

## XVII.

## RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court shall retain jurisdiction of this matter for all purposes.

SO ORDERED, this 26th day of March, 2021, at _10:00_ a.m.

George L. Russell, III
United States District Judge