## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

| | |
|---|---|
| **FEDERAL TRADE COMMISSION**,<br><br>　　　Plaintiff,<br><br>v.<br><br>**RAGINGBULL.COM, LLC**, et al.,<br><br>　　　Defendants. | Case No. 1:20-cv-3538-GLR |

**DEFENDANTS KYLE W. DENNIS, WINSTON RESEARCH, INC., AND WINSTON CORP.'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT AND TO STRIKE THE AMENDED COMPLAINT'S REQUEST FOR MONETARY RELIEF**

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................... 1

RELEVANT BACKGROUND ................................................................................. 2

    I.    The Amended Complaint's Allegations ......................................................... 2

    II.   Procedural History .......................................................................................... 5

LEGAL STANDARD ............................................................................................... 5

ARGUMENT ............................................................................................................ 6

    I.    The Claims Against Mr. Dennis Should Be Dismissed Because the
        Amended Complaint Does Not Allege Facts Sufficient to Establish
        Individual Liability. ....................................................................................... 7

        A.    The Court Should Dismiss Count I and Count II Against Mr. Dennis. .......... 7

                1.    Rule 9(b) Applies to the FTC Act Claims Against Mr. Dennis. ......... 8

                2.    The Amended Complaint Does Not Allege that Any
                     Statements Mr. Dennis Made Are Deceptive. ................................... 10

                3.    The Allegations in the Amended Complaint About Mr.
                     Dennis's Individual Liability Are Conclusory. ................................. 13

        B.    The Court Should Dismiss Count III Against Mr. Dennis. ........................... 15

    II.   The Claims Against the Winston Entities Should Be Dismissed Because the
         Amended Complaint Does Not Allege Facts Sufficient to Establish
         Common Enterprise Liability. ...................................................................... 17

    III.  The Court Should Strike the FTC's Request for Monetary Relief for its
          FTC Act Claims. .......................................................................................... 21

CONCLUSION ....................................................................................................... 25

Defendants Kyle W. Dennis, Winston Research Inc., and Winston Corp. (collectively, the "Dennis Defendants"), hereby move this Court to dismiss the claims against them in the Federal Trade Commission's Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and to strike the Federal Trade Commission's ("FTC") request for monetary relief pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.

## <u>INTRODUCTION</u>

The Amended Complaint concedes, through its own allegations, that Kyle Dennis is only a trading instructor at Ragingbull.com, LLC ("Raging Bull") and not an owner, executive, or officer of the company. Yet, despite this concession, the FTC litters the Amended Complaint with conclusory allegations and improper "group pleading" in a misguided effort to assert that Mr. Dennis participated in or had the authority to control the practices the FTC contends violate the Federal Trade Commission Act ("FTC Act"). What is missing from the Amended Complaint are any specific, well-pleaded allegations relating to Mr. Dennis to support the FTC's accusation that he had any role in deceptive conduct. And the FTC does not even attempt to allege that Mr. Dennis had any role in or control over the negative option features that the FTC contends violate the Restore Online Shoppers' Confidence Act ("ROSCA").

As to Winston Research Inc. and Winston Corp. (the "Winston Entities"), the Amended Complaint contains literally no allegation that they were in any way involved in any of the conduct at the heart of the Amended Complaint. Instead, the Amended Complaint merely alleges in a conclusory manner that the Winston Entities operated as a common enterprise with Raging Bull because they received funds from Raging Bull and because Mr. Dennis owns them. Such allegations are insufficient to give rise to common enterprise liability, and the Winston Entities should be dismissed from the case.

## RELEVANT BACKGROUND

**I.**   **The Amended Complaint's Allegations**

Raging Bull sells online subscription-based services related to stock and options trading. [Amended Complaint ("Am. Compl.") ¶ 21, ECF No. 164-1.]  These services consist of, among other things, online videos and supplemental materials in which instructors provide educational content concerning stock trading fundamentals, various strategic approaches to trading, trade alerts, and other features.  [*Id.* ¶¶ 23, 32.]  Raging Bull directly markets these services through search engine advertisements, social media, and e-mail marketing.  [*Id.* ¶ 29.]  In addition to describing the various services it offers, Raging Bull's advertisements contain disclaimers warning consumers that they should conduct their own research before making investment decisions, that Raging Bull's services are for educational purposes only, that trading is risky, and that subscribers' trading results will vary based on a variety of factors.  [*Id.* ¶¶ 76–84.]

Defendants Jeffrey M. Bishop and Jason Bond co-founded Raging Bull in 2014.  [*Id.* ¶ 22.]  Bishop is Raging Bull's CEO, leads some of Raging Bull's educational services, and owns 65% of Raging Bull through Defendant Sherwood Ventures, LLC, which he owns and controls.  [*Id.* ¶¶ 12, 15.]  Bond is Raging Bull's President, leads some of Raging Bull's educational services, and owns 25% of Raging Bull through Jason Bond, LLC.  [*Id.* ¶¶ 13, 16.][1]  The FTC's initial complaint also sued MFA Holdings Corp., which owns the remaining 10% of Raging Bull, but the FTC voluntarily withdrew its claims against MFA in the Amended Complaint.  [ECF No. 164-2 at 6–7.]

---

[1]      Raging Bull, Bishop, Bond, Sherwood Ventures, LLC, and Jason Bond, LLC are referred to in this brief as the "Raging Bull Defendants."

2

In addition to the Raging Bull Defendants, the FTC has also named Kyle Dennis and the Winston Entities as defendants.  Mr. Dennis was Mr. Bond's student and has made millions of dollars in profit through his own personal trading.  [Am. Compl. ¶¶ 14, 50.]  He joined Raging Bull as a trading instructor in 2016.  [*Id.* ¶ 22.]

In the Amended Complaint, the FTC does not allege that Mr. Dennis is an owner, officer, or executive of Raging Bull, that he had any other corporate title or managerial role, or that he conducted Raging Bull's business in any way other than as one of many instructors the company employed.  As to the Winston Entities, the FTC alleges that Winston Research Inc. is a Delaware corporation and that Winston Corp. is a California corporation, both with a principal place of business at Mr. Dennis's home in Tennessee.  [*Id.* ¶¶ 17–18.]  The FTC also alleges that each of the Winston Entities "is owned and controlled by Dennis and receives [or has received] funds from Raging Bull."  [*Id.*]  The Amended Complaint says nothing else about the Winston Entities.[2]

The FTC alleges that Raging Bull violated Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), by making false or unsubstantiated earnings claims in advertising its services that "represent, directly or indirectly, expressly or by implication, that consumers who purchase Raging Bull's services will earn or are likely to earn substantial income."  [*Id.* ¶¶ 54–59, 104.]  The FTC further alleges that Raging Bull made other misrepresentations in its advertising concerning the trading experience required to earn substantial income using Raging Bull's services, the amount of time required to earn substantial income using Raging Bull's services, and the amount of money a

---

[2]     The Winston Entities are only ever mentioned in paragraphs 14, 17, and 18 of the Amended Complaint.  Paragraph 19 then defines Raging Bull, Sherwood Ventures, Jason Bond, LLC, and the Winston Entities collectively as the "Corporate Defendants."  The Amended Complaint then makes no effort to differentiate between the Winston Entities – two non-operating entities owned by Mr. Dennis – and Raging Bull itself.

subscriber would need in a brokerage account to earn substantial income using Raging Bull's services.  [*Id.* ¶¶ 68–75, 107.]  Finally, the FTC contends that Raging Bull violated Section 4 of ROSCA, 15 U.S.C. § 8403, for charging consumers for its services using a "negative option feature" – or "a provision under which the consumer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer" – without providing a simple cancellation method to consumers.  [*Id.* ¶¶ 110–16.]

On its face, the FTC's Amended Complaint provides no basis to hold Mr. Dennis and the Winston Entities liable for Raging Bull's alleged conduct.  The FTC states that Bishop and Bond – not Mr. Dennis or the Winston Entities – "direct" Raging Bull and that Mr. Dennis is simply one of Raging Bull's many trading instructors who provides subscribers with educational content relating to trading strategy.  [*Id.* ¶ 2.]  The FTC alleges that Mr. Dennis "is a trading instructor who offers and promotes a number of widely advertised services through Raging Bull," but does not allege that Mr. Dennis actually controls any of Raging Bull's advertising, except in a conclusory allegation: "At all times material to this Complaint, acting alone or in concert with others, Dennis has formulated, directed, controlled, had authority to control, or participated in the acts and practices set forth in this Complaint."  [*Id.* ¶ 14.]

The FTC has not alleged any specific facts demonstrating that Mr. Dennis had any actual or implicit authority or control over Raging Bull's advertising strategies, membership terms, and/or internal policies, or how he is any different from the other (uncharged) instructors who provide similar content.  Rather, the FTC seeks to hold Mr. Dennis liable for Raging Bull's allegedly fraudulent advertising and subscription and cancellation policies based on Mr. Dennis's appearances in Raging Bull's advertising of products or services.  [*Id.* ¶¶ 52, 56–57, 61.]  But the

FTC does not allege that Mr. Dennis directs, controls, or oversees the content or form of Raging Bull's advertisements, either in general or even as to those advertisements featuring Mr. Dennis. Likewise, the FTC has not alleged that Mr. Dennis controls membership subscriptions or cancellations that occur on Raging Bull's webpage.

## II.    **Procedural History**

The FTC filed this action on December 7, 2020, seeking a permanent injunction and other monetary relief based on Raging Bull's alleged violations of Section 5(a) of the FTC Act and Section 4 of ROSCA.  [Complaint, ECF No. 1.]  The FTC also moved for a temporary restraining order ("TRO") on December 7, 2020, requesting that this Court temporarily freeze the assets of the corporate defendants (including the Winston Entities), "preserve" (*i.e.*, freeze) the assets of the individual defendants (including Mr. Dennis), and order all Defendants to show cause why a preliminary injunction should not issue.  [ECF No. 2.]  The Court granted the FTC's motion, entered the TRO with an asset freeze, and appointed a temporary receiver.  [ECF No. 21.]

On February 4, 2021, the FTC filed its Amended Complaint, the operative complaint at issue. [ECF No. 164-1.] Other than dropping MFA Holdings, the Amended Complaint is substantively identical to the original Complaint. [ECF No. 164-2.]

On March 19, 2021, the Court held a preliminary injunction hearing.  In an Order dated March 26, 2021, the Court concluded that the balance of the equities weighed against preliminary injunctive relief.   [ECF No. 214 at 3-4.]   The Order terminated the TRO, the temporary receivership, the asset freeze, and the preservation order.  [ECF No. 214 at 19-21.]

## **LEGAL STANDARD**

Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To survive a motion to

dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation omitted).  But this standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  While a court must accept well-pled facts as true, it need not assume the truth of conclusory allegations.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("labels and conclusions, and a formulaic recitation of the elements of a cause of action" are insufficient to survive a motion to dismiss).  Moreover, a complaint containing "'naked assertion[s]' devoid of 'further factual enhancement'" cannot survive a motion to dismiss.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also id.* (explaining that a well-pled complaint "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation").

Rule 9(b) requires even more from plaintiffs: when a party alleges fraud or mistake, it "must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  A plaintiff alleging claims that sound in fraud "must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  *U.S. ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co*., 612 F.3d 724, 731 (4th Cir. 2010).

## <u>ARGUMENT</u>

The Court should dismiss the FTC's claims against Mr. Dennis.  When the FTC's conclusory allegations and group pleading are set aside, the Amended Complaint fails to allege that he participated in, had control of, or had knowledge of the allegedly deceptive practices in the Amended Complaint.  The Court should also dismiss each of the claims against the Winston Entities as there is not a single factual allegation in the Amended Complaint supporting a plausible

inference that they either participated in the conduct at issue or that they operated as a common enterprise with the Raging Bull Defendants.

I.      **The Claims Against Mr. Dennis Should Be Dismissed Because the Amended Complaint Does Not Allege Facts Sufficient to Establish Individual Liability.**

A.      **The Court Should Dismiss Count I and Count II Against Mr. Dennis.**

The Court should dismiss the FTC Act claims – Counts I and II – against Mr. Dennis. Section 5 of the FTC Act bars "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a). "To succeed under section 5(a), the FTC must prove (1) that there was a representation; (2) that the representation was likely to mislead consumers; and (3) that the misleading representation was material." *FTC v. Ross*, 897 F. Supp. 2d 369, 381 (D. Md. 2012), *aff'd*, 743 F.3d 886 (4th Cir. 2014) (quoting *FTC v. Tashman*, 318 F.3d 1273, 1277 (11th Cir. 2003)). As to the second requirement, "the Court must consider whether a representation is likely to mislead a reasonable consumer by viewing the representation as a whole and focusing on the impression created, not its literal truth or falsity" and "whether the consumer's interpretation or reaction is reasonable." *In re Sanctuary Belize Litig.*, 482 F. Supp. 3d 373, 397 (D. Md. 2020). "Puffery, that is 'exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely,' is not actionable under the FTC Act." *Id.* at 422 (quoting *FTC v. Direct Mktg. Concepts, Inc.*, 624 F.3d 1, 11–12 (1st Cir. 2010)). "Puffery includes promises of a great investment or an amazing return on . . . money." *Id.* (internal quotation marks omitted).

Even if a deceptive act or practice is alleged, however, an individual may only be found liable for that practice under Section 5 of the FTC Act if he: "(1) participated directly in the deceptive practices or had authority to control those practices, *and* (2) had or should have had knowledge of the deceptive practices." *F.T.C. v. Ross*, 743 F.3d 886, 892 (4th Cir. 2014) (emphasis added). "Authority to control is evidenced by an individual's ability to review and

7

approve advertisements as well as his or her ability to issue checks, make hiring decisions and personally finance or pay for corporate expenses, whereas direct participation can be demonstrated through evidence that the defendant developed or created, reviewed, altered and disseminated the deceptive marketing materials" or by demonstrating "[a]ctive supervision of employees as well as the review of sales and marketing reports related to the deceptive scheme." *In re Sanctuary Belize*, 482 F. Supp. at 398.

Of the various statements listed in the Complaint that the FTC asserts violate the FTC Act, the FTC only attributes four directly to Mr. Dennis, none of which are false or misleading. As to the remainder of the statements, they are impermissibly attributed to all of the Defendants as a group, not Mr. Dennis, and the allegations regarding Mr. Dennis's individual liability for those statements are conclusory under any pleading standard – whether Rule 9(b) or Rule 8.

1. <u>Rule 9(b) Applies to the FTC Act Claims Against Mr. Dennis.</u>

The Court should apply Rule 9(b)'s heightened pleading standard to the FTC Act claims against Mr. Dennis. Rule 9(b) applies to allegations in a complaint that "sound in fraud." *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig*., 440 F. Supp. 3d 447, 455 (D. Md. 2020); *see also Cozzarelli v. Inspire Pharm. Inc*., 549 F.3d 618, 629 (4th Cir. 2008) (explaining that "Rule 9(b) refers to 'alleging fraud,' not to causes of action or elements of fraud"). Here, the FTC makes specific allegations of fraud in alleging that the Defendants, by using misrepresentations in marketing materials, have "defrauded consumers of more than $137 million" and "concerted and coordinated" to further "Raging Bull's fraudulent enterprise." [Am. Compl. ¶¶ 6, 19.] Other courts have found that the FTC's allegations of deceptive schemes similar to the one alleged here sound in fraud such that Rule 9(b) applies, even though the word "fraud" was absent from the FTC's claims. *FTC v. Ivy Capital, Inc*., No. 2:11-CV-283 JCM GWF, 2011 WL 2118626, at *3

8

(D. Nev. May 25, 2011) ("The instant action 'sounds in fraud,' in that the FTC has alleged that the defendants collectively engaged in a unified course of fraudulent conduct."); *FTC v. Lights of Am., Inc*., 760 F. Supp. 2d 848, 853 (C.D. Cal. 2010) ("The gravamen of these allegations is that [the defendants] engaged in a unified course of fraudulent conduct. The FTC's omission of the 'magic word'— fraud—from its Complaint does not detract from the apparently fraudulent nature of the allegations."); *see also Myers v. Lee*, 1:10CV131, 2010 WL 2757115, at *6 (E.D. Va. July 12, 2010) (finding that Rule 9(b) applies to claims under Virginia consumer protection laws).

Further, although the Fourth Circuit has not decided whether Rule 9(b) applies to claims under the FTC Act,[3] it has held that Rule 9(b) applied to allegations under Sections 11 and 12(a)(2) of the Securities Act relating to false or misleading prospectuses that were allegedly "part of a single, coordinated scheme to defraud investors," even though the claims did not have fraud as an element.  *Cozzarelli*, 549 F.3d at 629; *see also Driver Opportunity Partners I, LP v. First United Corp*., No. CV RDB-20-2575, 2021 WL 82864, at *5 & n.2 (D. Md. Jan. 8, 2021) (applying Rule 9(b) to breach of fiduciary duty claim alleging that defendants' actions were done "with intent to defraud" and unfair competition claim alleging that defendant damaged plaintiff's business "by fraud, deceit, trickery or unfair methods"); *In re Under Armour Sec. Litig.,* 342 F. Supp. 3d 658, 675 (D. Md. 2018) (holding that Rule 9(b) applies to allegations of misleading statements where plaintiffs alleged that statements were knowingly misleading, not merely negligent).  Accordingly, the FTC should not be permitted to allege that Mr. Dennis and the Winston Entities were part of

---

[3]     One court in this District stated in 2009 that Rule 9(b) does not apply to Section 5(a) claims under the FTC Act.  *FTC v. Innovative Mktg., Inc*., 654 F. Supp. 2d 378, 388 (D. Md. 2009).  That decision, however, lacks any analysis of the issue, has not been adopted or endorsed by other courts in this District for that proposition, and is not binding on the Court.

and are responsible for a fraudulent enterprise that defrauded consumers with intentionally false or misleading statements without being subject to the heightened pleading standard of Rule 9(b).

    2.  <u>The Amended Complaint Does Not Allege that Any Statements Mr. Dennis Made Are Deceptive.</u>

As to the four statements or claims that the Amended Complaint actually alleges are attributable to Mr. Dennis, they are either not actionable under the FTC Act or the FTC does not allege that they are deceptive in any way. The four statements are as follows:

1. "Dennis claims to be one of Jason Bond's most successful students and a self-made millionaire who made his fortune trading in the stock market." [Am. Compl. ¶ 14.]

2. "Ads for services offered by Kyle Dennis feature, for example, Dennis saying he made 'about $9,100 per day' in 2019, which the image shown in Figure 6, below, displays." [*Id.* ¶ 52.]

3. "Dennis, in a video for his service Trade With Kyle, shares examples of options or stocks where the price jumped several hundred percent for each, which his strategy would purportedly have identified, and claims his own trading returned tens of thousands of dollars of profit on these." [*Id.* ¶ 61.]

4. "In May 2020, Defendants advertised a webinar in which Kyle Dennis purported to explain the effects of the pandemic on the stock market and 'why he believes this may be the most exciting opportunity in decades!'" [*Id.* ¶ 57.]

The first statement – about Mr. Dennis's *own* success as a student of Mr. Bond [*id.* ¶ 14] – is true and the FTC has not alleged otherwise. Thus, this statement cannot possibly give rise to individual liability under the FTC Act because there is no plausible allegation that it is deceptive. Similarly, the second statement – that Mr. Dennis made $9,100 per day in 2019 [*id.* ¶ 52] – is again about Mr. Dennis's own success as a trader, and the FTC does not allege that the statement is false or misleading. Absent well-pleaded allegations that Mr. Dennis's statements are false, the FTC cannot possibly contend that the statements about his own actual trading history and success are

actionable under the FTC Act and subject him to joint and several liability for all of Raging Bull's revenues.[4]

The same is true of the Trade With Kyle video in which Mr. Dennis purportedly shared examples of *his own profitable trades*.  [*Id*. ¶ 61.]  The FTC makes no allegation that those trading examples were false or otherwise untrue.  The fourth statement – that the effects of the COVID-19 pandemic on the stock market creates an "exciting opportunity" to subscribers [*id*. ¶ 57] – is either a non-actionable statement of personal opinion, or puffery and therefore not actionable under the FTC Act.  *See, e.g.*, *Dunn v. Borta*, 369 F.3d 421, 431 (4th Cir. 2004) (puffery includes promises of "a great investment or an amazing return on . . . money"); *In re Under Armour*, 342 F. Supp. 3d at 676 (explaining that statements of optimism are not actionable under the securities laws).[5]

The remainder of the allegations in the Amended Complaint regarding Raging Bull's purportedly false or misleading advertising must be disregarded as to Mr. Dennis regardless of which pleading standard applies. The Amended Complaint simply does not allege how Mr. Dennis supposedly participated in, or was otherwise responsible for, making those statements.  Rather, the FTC lumps Mr. Dennis in with the other Defendants in a conclusory manner that provides no basis

---

[4]     Although outside the pleadings, it is worth noting that the FTC cannot allege that Mr. Dennis's statements are false because they aren't.  Mr. Dennis has put forward affirmative evidence that he is in fact one of Bond's most successful students, and a self-made millionaire who was able to quit his job as a real estate agent in 2015 to become a full-time trader who has made millions in net trading profits.  [ECF No. 124, ¶¶ 3-4.]

[5]     Again, the statements attributed to Mr. Dennis are fact-based.  For example, since Mr. Dennis expressed his view that there was an "exciting opportunity" in the stock market in May 2020, the market (measured by the Dow Jones Industrial Average) has climbed from 23,723.69 at close on May 1, 2020, to 34,200.67 at close on April 16, 2021.  *See* https://tinyurl.com/36hrhanf (Google Finance chart for DJIA).

whatsoever for his personal liability for alleged misleading statements.  The FTC's failure to distinguish how Mr. Dennis's conduct relates to the allegedly deceptive statements plainly runs afoul of Rule 8's prohibition against baseless group pleading and Rule 9(b)'s requirement that a complaint sounding in fraud allege the identity of the person making the misrepresentation and what he obtained thereby.  *See, e.g.*, *McPherson v. Baltimore Police Dep't*, No. CV SAG-20-0795, 2020 WL 6063479, at *5 (D. Md. Oct. 14, 2020) ("While group pleading can be permissible in certain circumstances, it must be plausible that each defendant was involved in *all* of the facts as alleged." (emphasis added)); *Green v. Rosenberg & Assocs., LLC*, No. CV PJM 17-732, 2018 WL 1183655, at *2 (D. Md. Mar. 7, 2018) ("A plaintiff does not satisfy Rule 8 when the complaint lumps all the defendants together and fails to distinguish their conduct because such allegations fail to give adequate notice to the defendants as to what they did wrong." (cleaned up)); *Owens*, 612 F.3d at 731 (Rule 9(b) requires that the complaint allege "at a minimum . . . the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby").[6]

Knowing full well (and in fact alleging) that Mr. Dennis is only a "trading instructor," and not an owner, officer, or executive of Raging Bull, and who offers only a subset of Raging Bull's services [*see* Am. Compl. ¶¶ 12–14], the FTC still equates him with the Raging Bull Defendants, all of whom were in fact owners and executives in the business.  [*See, e.g.*, *id*. ¶ 28 ("*Defendants*

---

[6]      The requirement that the FTC plausibly allege that each defendant is liable for all of the deceptive conduct charged in a particular count is particularly critical in light of the Supreme Court's ruling last term in *Liu v. SEC*, which effectively eliminated joint and several liability in the analogous circumstances of the SEC's equitable authority to enforce the securities laws.  In *Liu*, the Court held that joint and several liability is "at odds with the common-law rule requiring individual liability for wrongful profits."  140 S. Ct. 1936, 1949 (2020)

make parallel claims *across all services* about the possibility of making consistent, substantial profits and about who can use their services effectively." (emphases added)).]  The FTC also fails to plead how Mr. Dennis played a role that was in any way different from the other non-owner "trading instructors" at Raging Bull, none of whom were charged in the Amended Complaint.

Examples of the FTC's improper pleading abound.  The FTC alleges that "*Defendants* describe Total Alpha as teaching consumers 'the options trading strategies that Jeff Bishop has used to make a fortune in the stock market'" while at the same time alleging that Total Alpha is "Bishop's service," [*id.* ¶¶ 34, 56,] with no alleged relationship to Mr. Dennis.  The FTC alleges that "*Defendants* market Jason Bond Picks with statements like 'Don't Just Beat the Market… Crush It,'" while at the same time alleging that Jason Bond Picks is "Bond's."  [*Id.*]   The FTC does not attempt to tie Mr. Dennis to these Raging Bull services in the Amended Complaint, instead relying on group pleading to make the conclusory assertion that Mr. Dennis is just the same as the other Raging Bull Defendants.  But the FTC fails to plead any facts to plausibly establish that link.  Absent any specific allegations that Mr. Dennis participated in making each allegedly deceptive statement in the Amended Complaint (and there are not), the FTC cannot make this baseless leap in the Amended Complaint through improper group pleading.

### 3. The Allegations in the Amended Complaint About Mr. Dennis's Individual Liability Are Conclusory.

Not only does the FTC fail to attribute any actionable statements to Mr. Dennis, but the FTC makes no attempt to allege which Defendants participated in the drafting, creation, review, approval, or dissemination of the statements that the FTC alleges are deceptive.  Once the few non-deceptive statements that are allegedly attributable to Mr. Dennis and the impermissible group pleading allegations are disregarded, all that is left are two conclusory allegations: (1) "At all times

material to this Complaint, acting alone or in concert with others, Dennis has formulated, directed, controlled, had authority to control, or participated in the acts and practices set forth in this Complaint" [Am. Compl. ¶ 14]; and (2) Mr. Dennis is "actively involved in Raging Bull's marketing and operations." [*Id*. ¶ 22.]

These conclusory allegations about Mr. Dennis's purported participation and control are not supported by any factual allegations and fail under both Rule 8 and Rule 9(b). The Amended Complaint, for example, does not allege that Mr. Dennis himself drafted, reviewed, approved, commented on, or edited *any* marketing materials (let alone marketing materials for services offered by other trading instructors other than himself), or what "operations" the FTC contends he was "actively involved in." Thus, the FTC's allegations are typical examples of "formulaic recitation[s] of the elements of a cause of action" that "will not do" under *Iqbal*, 556 U.S. at 678, let alone under Rule 9(b). Similar conclusory allegations have been rejected by courts in other cases where the FTC attempted to utilize this generic approach to pleading. *See, e.g.*, *FTC v. Quincy Bioscience Holding Co., Inc.*, 389 F. Supp. 3d 211, 221 (S.D.N.Y. 2019) (rejecting "conclusory statement" that individual defendant "participated in the acts and practices of [the company] . . . including the acts and practices set forth in this Complaint").

In fact, the FTC appears to routinely use such formulaic, conclusory allegations and generic pleading when it tries to mask its lack of specific evidence against an individual. In *FTC v. Swish Marketing*, the court rejected as conclusory the same exact language that the FTC uses to describe Mr. Dennis here: "At all times material to this Complaint, acting alone or in concert with others, [the individual defendant] has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Swish, including the acts and practices set forth in this Complaint." No. C 09-03814 RS, 2010 WL 653486, at *5 (N.D. Cal. Feb. 22, 2010). The court

14

held that "[t]he Commission's conclusory assertions of authority—untethered to virtually any supportive facts—do not support an inference of [the individual defendant's] involvement" and thus that the complaint failed under both Rule 8 and Rule 9(b). *Id.*; *see also id.* at *6 ("In light of the Commission's broad investigatory power and its ability to obtain discovery prior to the commencement of this litigation, requiring it to advance some factual connection between Benning and the alleged deceptive acts should not represent an unreasonable or impractical expectation.").

Finally, the Amended Complaint contains no allegation that Mr. Dennis had specific knowledge of the allegedly deceptive statements and practices.  Instead, the FTC again relies on conclusory statements or group pleading to mask its lack of actual facts relating to Mr. Dennis. For example, in attempting to allege knowledge, the Amended Complaint relies on allegations that consumers have complained and requested refunds from Raging Bull, without alleging that Mr. Dennis himself received any of those complaints or refund requests, or that Mr. Dennis – a trading instructor – would have plausibly been involved in customer service functions at Raging Bull. [*See* Am. Compl. ¶ 92 ("All of the Individual Defendants are aware of consumer complaints.").] The lack of any factual allegation that Mr. Dennis knew about the allegedly deceptive conduct is an independent reason that the claims against him must fail.

## B.    The Court Should Dismiss Count III Against Mr. Dennis.

The FTC's claim under ROSCA must also be dismissed as to Mr. Dennis.  The FTC claims that "Defendants charge or attempt to charge consumers for Defendants' services through a negative option feature while failing to provide simple mechanisms for consumers to stop recurring charges from being placed on their credit card, debit card, bank account, or other financial account … [in] violation of Section 4(3) of ROSCA, 15 U.S.C. § 8403(3)."  [Am. Compl. ¶¶ 115–16.] Because a violation of ROSCA is treated as a violation of an FTC Act rule, 15 U.S.C. § 8404(a),

15

the standard for individual liability is the same:  the FTC must allege that Mr. Dennis participated directly in the practices or acts or had authority to control them, and that he had knowledge of them.  *See Ross*, 743 F.3d at 892; *FTC v. Hornbeam Special Situations, LLC*, 308 F. Supp. 3d 1280, 1294 (N.D. Ga. 2018) ("[C]ourts are to treat a ROSCA claim by the FTC as an FTC Act claim.").

But the Amended Complaint does not contain a single factual allegation supporting the inference that Mr. Dennis participated in or had the authority to control Raging Bull's cancellation polices, automatic subscription renewals, consumer refunds, or any other allegedly unlawful conduct under ROSCA.  Again, the Amended Complaint instead alleges that Mr. Dennis is *a trading instructor*, not an owner or executive as the remaining individual defendants are.  [Am. Compl. ¶¶ 12–14.]  Nothing about the allegation that Mr. Dennis is a trading instructor at Raging Bull raises a plausible inference that he participated in or had the ability to control corporate policy, such as cancellation or renewal policies governing all of Raging Bull's products and services, or that he served any customer service role.

The only allegations in the Amended Complaint that could be relevant to the FTC's ROSCA claim as to Mr. Dennis are entirely conclusory or impermissible group pleading.  For example, the Amended Complaint alleges that Mr. Dennis "formulated, directed, controlled, had authority to control, or participated in the acts and practices set forth in this Complaint" [*id*. ¶ 14], and is "actively involved in Raging Bull's marketing and operations."  [*Id*. ¶ 22.]  But for the same reasons that these conclusory allegations must be disregarded in assessing the FTC Act claims against Mr. Dennis, they must be disregarded as to the ROSCA claim.  *See supra* Part I.A.  And to the extent that the FTC seeks to charge Mr. Dennis with an alleged ROSCA violation by referencing "Defendants" in Count III [*id*. ¶¶ 113–16], that is simply impermissible group

16

pleading.  The law is clear that the FTC cannot hold Mr. Dennis individually liable for the ROSCA claim against the Raging Bull Defendants absent factual allegations making it "plausible that [he] was involved in all of the facts as alleged."  *See McPherson*, 2020 WL 6063479, at *5.

Because the FTC has not alleged any facts supporting an inference that Mr. Dennis participated in or had control over Raging Bull's auto-renewal and cancellation policies, or that he even knew about them, the Amended Complaint fails to state a ROSCA claim against him.  The Court should dismiss Count III as to Mr. Dennis.

## II.   The Claims Against the Winston Entities Should Be Dismissed Because the Amended Complaint Does Not Allege Facts Sufficient to Establish Common Enterprise Liability.

The Complaint fails to state any claim against the Winston Entities, and in fact barely mentions them.  The FTC's factual allegations are insufficient to establish that the Winston Entities made any representations that violated the FTC Act or had any role in Raging Bull's negative option features or cancellation methods.  In fact, aside from the Winston Entities' corporate existence, the Complaint only contains two allegations about them: (1) they are owned by Mr. Dennis and (2) they received funds from Raging Bull.  [Am. Compl. ¶¶ 17, 18.]  Thus, there can be no question that the Amended Complaint fails to allege that the Winston Entities themselves engaged in any conduct that violated the FTC Act or ROSCA.

Instead, the Amended Complaint appears to rely on a theory of common enterprise liability to hold the Winston Entities liable for the allegedly deceptive acts and practices of the Raging Bull Defendants.  [*Id.* ¶ 19.]  A common enterprise theory is generally applied in situations involving a "web" or "maze" of interrelated companies.  *See, e.g.*, *FTC v. AmeriDebt, Inc*., 343 F. Supp. 2d 451, 462 (D. Md. 2004) (alleging common enterprise where "Defendants conduct the business

practices through an interrelated maze of companies that have had commons ownership, officers, and business functions").  Accordingly:

> To determine whether a group of [corporate] defendants operated as a common enterprise, courts look to a variety of factors, including: common control, the sharing of office space and officers, whether business is transacted through a maze of interrelated companies, the commingling of corporate funds and failure to maintain separation of companies, unified advertising, and evidence which reveals that no real distinction existed between the Corporate Defendants.

*In re Sanctuary Belize Litig*., 409 F. Supp. 3d 380, 397 (D. Md. 2019) (internal quotation marks omitted).[7]

Although the FTC need not allege with particularity the actual involvement of each entity in the common enterprise, it must allege specific facts relating to the common enterprise factors in order to avail itself of the common enterprise theory of liability.  *See, e.g.*, *FTC v. Tax Club, Inc*., 994 F. Supp. 2d 461, 469 (S.D.N.Y. 2014) ("[A] plaintiff must allege facts plausibly supporting the existence of these factors."); *FTC v. Johnson*, No. 2:10-CV-02203-MMD, 2013 WL 2460359, at *5 (D. Nev. June 6, 2013) (claims against entities alleged to be part of a common enterprise only survive "if plausible and particular allegations of a common enterprise or conspiracy are made"); *see also Stoltz v. Fage Dairy Processing Indus., S.A*., No. 14-CV-3826 MKB, 2015 WL 5579872, at *30 (E.D.N.Y. Sept. 22, 2015) ("Here, Plaintiffs have alleged only that Fage USA, Fage Greece and Fage Holdings 'operate as a single integrated and common enterprise' without setting forth any specific facts to support this allegation.").  The single paragraph in the Amended Complaint containing common enterprise allegations does not explain what renders the Winston Entities part

---

[7]    In light of *Liu's* holding eliminating joint and several liability, it is doubtful that "common enterprise" liability is still good law.  The Court need not reach that question with respect to the Winston Entities, however, because the Amended Complaint simply says nothing about them that would render them liable under a common enterprise theory.

of a common enterprise, but instead relies (again) on impermissible group pleading.  [Am. Compl. ¶ 19.]  The allegation, moreover, is implausible on its face.  As alleged in the Amended Complaint, the "common enterprise" consists of Raging Bull itself, two of the three companies that collectively own 90% of Raging Bull – and the Winston Entities.

Again, there are only two specific allegations about the Winston Entities in the Amended Complaint: (1) that they received funds from Raging Bull, and (2) that they are owned by Mr. Dennis, who is also a trading instructor at Raging Bull.  [Am. Compl. ¶¶ 17, 18.]  Neither is sufficient to allege common enterprise liability.

The allegation that the Winston Entities received funds from Raging Bull does not support any of the common enterprise factors.  Although the "*commingling* of corporate funds" is one of the common enterprise factors, just "receiving funds" is a different thing altogether.  Commingling funds entails, for example, sharing bank accounts or depositing checks made out to one entity into the bank account of another.  *See, e.g.*, *In re Sanctuary Belize*, 409 F. Supp. 3d at 414–15 (finding common enterprise where "[p]ayments made to one company have been deposited in the bank accounts of others"); *FTC v. Swatsworth*, No. 3:17-CV-340-GCM, 2018 WL 4016312, at *4 (W.D.N.C. Aug. 22, 2018) (finding common enterprise where "both businesses used the same three bank accounts, for which Swatsworth was the exclusive signatory"); *FTC v. Consumer Health Benefits Ass'n*, No. 10-CV-3551 ILG, 2011 WL 3652248, at *6 (E.D.N.Y. Aug. 18, 2011) (common enterprise plausibly alleged where one entity allegedly "[d]eposited consumers' enrollment fees and monthly fees into an account" it maintained and "commingled these fees" with its own funds).

One entity merely receiving funds from another, on the other hand, is not relevant to the common enterprise test, and is just as consistent with an arm's length commercial relationship –

which of course is the case here.  *See, e.g.*, *FTC v. Kuykendall*, 371 F.3d 745, 758-59 (10th Cir. 2004) (reversing finding of liability for deceptive practices where entity's "only apparent relationship to the activities [of the other entity] appears to have been in receiving payment for ancillary services, such as equipment leasing, billing, and collecting"); *FTC v. Vacation Prop. Servs.*, No. 8:11-cv-00595, 2012 WL 1854251, at *5 (M.D. Fla. May 21, 2012) (finding that "the record does not establish that the entities commingled corporate funds," even though one of the corporate defendants "made periodic payments to [the other corporate defendant]").  Here, in merely alleging that the Winston Entities "received funds" from Raging Bull, the FTC makes no specific allegation as to the source of the funds, the funds' connection to the allegedly deceptive conduct, or that the funds were otherwise commingled in a way that makes receipt of the funds relevant to the common enterprise factors.   Thus, this allegation does not support any of the common enterprise factors.

That leaves the second allegation the FTC makes regarding the Winston Entities – that Mr. Dennis owns them.  Although sharing employees can in some cases support a common enterprise theory of liability, this is not one of them.   For example, in *Sanctuary Belize*, the court found that the entity defendants functioned as a common enterprise because the entities "shared common control and officers," "[v]arious combinations of the individual Defendants were or are officers or owners" of the entities, the entities "frequently shared employees," and "it was very difficult to determine which entity a given . . . employee worked for."  482 F. Supp. 3d at 429–30.  Similarly, in *Swatsworth*, "the two businesses [were] so interrelated that Swatsworth first testified that ACDI and STP had the same 22 employees, only to later testify that ACDI had no employees and that the 22 employees worked for STP."  2018 WL 4016312, at *4.  And in *AmeriDebt*, employees of one entity "held themselves out to be employees of" another entity in the common enterprise.  343

F. Supp. 2d at 463.  The FTC does not make any comparable allegations here; it just says that Mr. Dennis owned the Winston Entities. And even if such an allegation could support one of the common enterprise factors, no one factor alone is "dispositive" in the common enterprise analysis. *Consumer Health Benefits*, 2012 WL 1890242, at *8.

In sum, the Amended Complaint fails to sufficiently allege that the Winston Entities and the Raging Bull Defendants operated as a common enterprise, and the Winston Entities should be dismissed from this case.

### III.     The Court Should Strike the FTC's Request for Monetary Relief for its FTC Act Claims.

If the Court does not dismiss the Amended Complaint in its entirety as against Mr. Dennis and the Winston Entities, the Court should strike the FTC's request for monetary relief under Section 13(b) of the FTC Act because that provision does not authorize such relief.  Under Rule 12(f), the "court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Courts in this District have granted motions to strike pursuant to Rule 12(f) where, as here, a complaint requests a form of relief to which the plaintiff is not legally entitled.  *See, e.g.*, *Mitchell v. Lydall, Inc*., 16 F.3d 410, at *4 (4th Cir. 1994) (holding that district court did not err in striking claim for punitive damages under Rule 12(f)); *Hanson v. Hanson*, No. CV GLR-19-2214, 2020 WL 4734313, at *3 (D. Md. Aug. 14, 2020) (Russell, *J*.) (granting motion to strike request for punitive damages).

The FTC is not legally entitled to monetary relief in this action.  Section 13(b) permits the FTC to bring a suit in district court against "any person, partnership, or corporation [that] *is violating*, or *is about to violate*, any provision of law enforced by the Federal Trade Commission" "to enjoin any such act or practice."  15 U.S.C. § 53(b) (emphases added).  Section 13(b) does not permit restitution, disgorgement, or broad equitable relief.  It therefore expressly authorizes only

21

injunctions and temporary restraining orders, which are both forward-looking forms of relief aimed at preventing defendants from violating the law.  It does not allow for backward-looking relief, such as restitution and disgorgement, to penalize defendants for past conduct.[8]

First, "[a]s in any case of statutory construction, [the] analysis begins with the language of the statute.  And where the statutory language provides a clear answer, it ends there as well." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999) (internal citations and quotation marks omitted).  The statutory language of Section 13(b) is clear: it specifically provides that the FTC may sue under Section 13(b) "to enjoin," and that "a temporary restraining order or a preliminary injunction may be granted."  15 U.S.C. § 53(b).  "Injunctive relief constitutes a distinct type of equitable relief; it is not an umbrella term that encompasses restitution or disgorgement." *Owner-Operator Indep. Drivers Ass'n v. Landstar Sys., Inc.*, 622 F.3d 1307, 1324 (11th Cir. 2010). The plain meaning of Section 13(b) therefore provides for only injunctions and temporary restraining orders, and does not provide for broad equitable relief, such as restitution and disgorgement.

Nor can Section 13(b) be read to implicitly allow the FTC to obtain restitution and disgorgement.  "[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Meghrig*

---

[8]     Although the Fourth Circuit has recognized that under the FTC Act, courts may order "'complete relief,' including monetary consumer redress, which is a form of equitable relief," *Ross*, 743 F.3d at 891, intervening Supreme Court precedent holding that monetary redress is not equitable relief if it exceeds a defendant's net profits undercuts the Fourth Circuit's holding in *Ross*.  *Liu*, 140 S. Ct. at 1940 (holding that disgorgement that exceeds a wrongdoer's net profits is not "equitable relief" because disgorgement is a penalty).  This intervening Supreme Court precedent allows the Court to reexamine the Fourth Circuit's holding.  *See Busby v. Crown Supply, Inc.*, 896 F.2d 833, 840–41 (4th Cir.1990) (explaining that Fourth Circuit is not bound by a decision of a prior panel if there is a "superseding contrary decision of the Supreme Court").

*v. KFC W., Inc*., 516 U.S. 479, 488 (1996) (internal quotation marks and citations omitted).  This is especially so "where Congress has provided elaborate enforcement provisions for remedying the violation of a federal statute," as Congress did in the FTC Act.  *See id*. at 487–88.

Second, Section 13(b) is specifically forward-looking.  In addition to expressly authorizing only two types of remedies (injunctions and temporary restraining orders), Section 13(b) requires as a perquisite to those remedies that a person "is violating, or is about to violate" the law.  15 U.S.C. § 53(b).  Restitution and disgorgement are aimed at remedying and penalizing past actions, and therefore do not fit within Section 13(b).  *See, e.g*., *Liu*, 140 S. Ct. at 1940 (holding that disgorgement that exceeds a wrongdoer's net profits is not "equitable relief" because disgorgement is a penalty); *Kokesh v. SEC*, 137 S. Ct. 1635, 1643–44 (2017) (holding that disgorgement is a penalty); *Paroline v. United States*, 572 U.S. 434, 456 (2014) ("The primary goal of restitution is remedial or compensatory . . . but it also serves punitive purposes."); *SEC v. Graham*, 823 F.3d 1357, 1364 (11th Cir. 2016) (holding that disgorgement is a penalty).

The Seventh Circuit recently relied on that reasoning and an analysis of the structure and text of the FTC Act to hold that Section 13(b) authorizes only injunctions.  *FTC v. Credit Bureau Ctr., LLC*, 937 F.3d 764, 774 (7th Cir. 2019) ("Section 13(b) serves a different, forward-facing role: enjoining ongoing and imminent future violations.  This authority aligns with the predicate requirements it imposes—notably, a reasonable belief that a violation is ongoing or imminent and that stopping the violation is in the public interest.").  Overruling prior precedent, the court recognized that permitting restitution and disgorgement under Section 13(b) "allows the Commission to circumvent [the] elaborate enforcement provisions [of the FTC Act] and seek restitution directly through an implied remedy." *Id.* at 767.  The court therefore held "that section 13(b) does not authorize restitutionary relief." *Id.*  And other courts have followed suit.  *See FTC*

23

*v. AbbVie Inc*, 976 F.3d 327, 379 (3d Cir. 2020) ("[W]e hold district courts lack the power to order disgorgement under Section 13(b) of the FTC Act."); *see also FTC v. AMG Capital Management, LLC*, 910 F.3d 417 (9th Cir. 2018) (O'Scannlain, *J.*, concurring) (suggesting that FTC's interpretation of section 13(b) is "no longer tenable").[9]

Finally, "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Nken v. Holder*, 556 U.S. 418, 430 (2009) (internal quotation marks omitted). The FTC Act specifically provides for broader equitable relief in other provisions. For example, if a respondent violates a cease-and-desist order under Section 5(l), courts are "empowered to grant mandatory injunctions *and such other and further equitable relief as they deem appropriate*." 15 U.S.C. § 45(l) (emphasis added). In addition, if any party engages in activity with respect to which a cease-and-desist order was issued, and a reasonable person would know the activity is false or misleading, the FTC may sue for "such relief as the court finds necessary to redress injury to consumers." *Id.* § 57b(b). Section 13(b), by contrast, only provides for temporary restraining orders and injunctions, and contains no language about broader remedies that the FTC deems appropriate. The inclusion of language authorizing broad equitable relief in other provisions, but not in Section 13(b), indicates that "Congress act[ed] intentionally and purposely in the disparate inclusion [and] exclusion." *Nken*, 556 U.S. at 430. The FTC's request for backward-looking relief, including "restitution, the refund of monies paid,

_____

[9]      The Supreme Court granted certiorari in *AMG Capital Management* to review the Ninth Circuit's holding that Section 13(b) permits monetary relief. *AMG Cap. Mgmt., LLC v. FTC*, 141 S. Ct. 194 (2020). The Court heard oral argument in January 2021, with a decision expected before the end of the term.

and the disgorgement of ill-gotten monies," for its FTC Act claims is therefore improper and should be stricken from the Amended Complaint.  [Am. Compl. ¶ 118 & p.35.]

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss the FTC's claims against Defendant Kyle W. Dennis, Winston Research Inc., and Winston Corp.  To the extent the Court does not dismiss the Amended Complaint in its entirety, it should strike the FTC's request for monetary relief.

Dated: April 16, 2021

Respectfully submitted,


/s/ Matthew L. Schwartz
Matthew L. Schwartz (*pro hac vice*)
John T. Zach (*pro hac vice*)
Sabina Mariella (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, New York
Tel.: (212) 446-2300
E-mail: mlschwartz@bsfllp.com
   jzach@bsfllp.com
   smariella@bsfllp.com

Jonathan Shaw (Bar No. 11328)
BOIES SCHILLER FLEXNER LLP
1401 New York Ave, NW
Washington, DC 20005
Tel: 202 274 1123
E-mail: jshaw@bsfllp.com

Brian Levin (*pro hac vice*)
LEVIN LAW, P.A.
2665 South Bayshore Drive Penthouse 2B
Miami, Florida 33133
Tel: (305) 539-0593
E-mail: brian@levinlawpa.com

*Counsel for Defendants Kyle W. Dennis,*
*Winston Corp., and Winston Research Inc.*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 16, 2021 a true and accurate copy foregoing was properly served on all parties through the ECF system.

/s/ Matthew L. Schwartz
Matthew L. Schwartz
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, New York
Tel.: (212) 446-2300
E-mail: mlschwartz@bsfllp.com

26