**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

FEDERAL TRADE COMMISSION,       )
       )
       Plaintiff,       )
       )
       v.       )       Case No. 1:20-cv-03538 - GLR
       )
RAGINGBULL.COM, LLC f/k/a       )
LIGHTHOUSE MEDIA LLC, et al.,       )
       )
       Defendants.       )
       )

**<u>NOTICE OF FILING OF MONITOR'S FIRST REPORT</u>**

      Defendant RagingBull.com, LLC ("Raging Bull"), by and through undersigned counsel, respectfully submits this Notice of Filing of Monitor's First Report ("Notice"), and states as follows:

      1.      Pursuant to this Court's instruction and the request by Affiliated Monitors, Inc. (the "Monitor"), Raging Bull files this Notice.

      2.      Raging Bull understands that the Monitor does not presently have access to the Court's ECF system for filing documents, and that the Court instructed the Monitor to request that one of the parties assist the Monitor by filing the Monitor's First Report through the ECF system.

      3.      Upon the Monitor's request, Raging Bull has agreed to provide this administrative assistance and file the Monitor's First Report

      4.      A true and correct copy of the Monitor's First Report is attached to this Notice as **Exhibit A**.

Dated: April 26, 2021                              Respectfully submitted,

                                                   RagingBull.com, LLC

                                                   By: /s/ Brett M. Doran
                                                   David G. Barger (DCB# 469095)
                                                   Greenberg Traurig, LLP
                                                   1750 Tysons Blvd, Suite 1200
                                                   McLean, VA 22102
                                                   Tel: (703) 749-1300
                                                   Email: bargerd@gtlaw.com

                                                   Andrew G. Berg (*admitted pro hac vice*)
                                                   2101 L Street, N.W.
                                                   Suite 1000
                                                   Washington DC 20037
                                                   Tel: (202) 331- 3100
                                                   Email: berga@gtlaw.com

                                                   Miriam G. Bahcall (*admitted pro hac vice*)
                                                   Brett M. Doran (admitted *pro hac vice*)
                                                   Greenberg Traurig, LLP
                                                   77 West Wacker Drive
                                                   Suite 3100
                                                   Chicago, IL 60601
                                                   Tel: (312) 476-5135
                                                   Email: bahcallm@gtlaw.com
                                                   Email: doranb@gtlaw.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 26th day of April 2021 a true and accurate copy of the foregoing Notice of Filing of Monitor's First Report, was properly served on all parties through the ECF system.

/s/ *Brett M. Doran*

Exhibit A



*Federal Trade Commission v. RagingBull.com, et al.*

**Case No. 1:20-cv-03538-GLR (D. MD)**

### MONITOR'S FIRST REPORT

April 26, 2021

I.    **INTRODUCTION**

By its Order entered March 26, 2021 ("Order"), the Court appointed Affiliated Monitors, Inc. as the compliance monitor ("Monitor") in *Federal Trade Commission v. RagingBull.com, et. al.,* Case No. 1:20-cv-03538-GLR (D. MD).   The Monitor is an agent of the Court and is directly accountable to the Court.   The Monitor's duties and authority include those described in the Order and in the Raging Bull Business Plan ("Business Plan") (which is incorporated into the Order), and require the Monitor to monitor Raging Bull Defendants'[1] compliance with the Order and Business Plan.   (Order Sections V and VI).

In its Order, the Court also terminated the appointment of the Temporary Receiver and the asset freeze, previously put in place under the December 8, 2020 and December 17, 2020 Temporary Restraining Orders ("TRO"), effectively returning control over RagingBull.com ("Raging Bull" or "company") business operations back to the company and its principals.   (Order Section XIV).

This submission serves as the Monitor's First Report, describing Raging Bull Defendants' compliance activities and the Monitor's monitoring activities during the first 30 days since the Order (Order Section VI.E.).   During the first 30 days since the Order, Raging Bull Defendants have been, among other activities: (i) transitioning control of the company from the Temporary Receiver back to the company and its principals; (ii) hiring and rehiring staff, including customer support staff and compliance staff, in order to begin its Phase 1 activities under the Business Plan; (iii) working on the company's plan addressing refund and cancellation requests, including sending refund checks to all 31 Declarants on April 26, 2021; (iv) removing certain RagingBull.com

---

[1]    Raging Bull Defendants are RagingBull.com, LLC f/k/a Lighthouse Media, Jeffrey M. Bishop and Jason Bond f/k/a Jason P. Kowalik.

webpages and linked sites that implicate Section I of the Order; and (iv) meeting with the Monitor and responding to the Monitor's information requests.  Our understanding is that, other than a single communication to current subscribers of Raging Bull products and services announcing the termination of the Temporary Receivership, communications responding to subscribers contacting the company's customer support email account and telephone line, and certain legacy content on the RagingBull.com website, YouTube channel and linked social media accounts, Raging Bull Defendants are not yet engaging in any communications with current or potential customers, including any advertising, marketing, promoting or offering for sale of the company's Covered Goods or Services.

During our initial monitoring activities, the Monitor has identified two areas of concern in connection with the company's current compliance with the Order, which the Monitor has raised with the Defendants:  (i) funding of the Escrow Account (Order Section XI); and (ii) the legacy content on the RagingBull.com website, YouTube channel and linked social media accounts that may constitute "Earnings Claims" and other potential "Prohibited Business Activities" that were not removed during the Temporary Receivership and have not been removed as of the date of this Report (Order Section I).  The Company's responses to these areas of concern, and its plans to address them, are discussed in more detail below.

The Monitor's activities during the first 30 days have been, among other things:   (i) reviewing the pleadings, court rulings, and Business Plan  (ii) meeting with the Defendants and their counsel to get better educated on the company, its operations, leadership, and current efforts and plans to comply with the Order and Business Plan; (iii) meeting with the Federal Trade Commission ("FTC") to better understand the issues and concerns involved in this case; (iv) a meeting with the Temporary Receiver to better understand the company and the pre-Order

activities; (v) establishing a RagingBull.com Monitorship website, dedicated email address and telephone number to provide Raging Bull customers with mechanisms for getting information about the monitorship and Order, and to contact the Monitor about refund requests or other issues; (vi) responding to Raging Bull customers who have contacted the Monitor; (vii) requesting and analyzing documents and other information from Raging Bull to assess the company's current compliance with the Order and Business Plan, with a particular focus on the company's obligations relating to refund and cancellation requests; and (viii) establishing and refining the Monitor's methodologies for assessing and monitoring the company's compliance with its obligations under the Order and Business Plan going forward.

The Monitor finds that during the first 30 days since the Order, Raging Bull Defendants are, with the exception of a subset of RagingBull.com website, YouTube Channel, and certain social media accounts content, and the Escrow Account issue, in substantial compliance with the Order and moving forward with their commitments under Phase 1 of the Business Plan.

II.    BACKGROUND

On December 7, 2020, the FTC brought an action against Raging Bull Defendants alleging violations of the FTC Act and the Restore Online Shoppers' Confidence Act ("ROSCA").   On December 8, 2020, the Court granted the FTC's *ex parte* motion for a Temporary Restraining Order ("TRO"), asset freeze, and appointment of a Temporary Receiver, and on December 17, 2020 the Court entered a modified TRO.   On March 26, 2020, the Court declined the FTC's requested preliminary injunction, but instead entered the Order (consented to by Raging Bull Defendants) which, among other things, sets forth specific activities that Raging Bull Defendants are either prohibited from or required to comply with, incorporates the company's representations and obligations under the Business Plan, terminates the Temporary Receivership and asset freeze,

and appoints Affiliated Monitors, Inc. to monitor Raging Bull Defendants' compliance with the Order.  Under the Order, the Monitor shall report to the Court initially within 30 days of the entry of the Order, and subsequently every 60 days for the duration of the Order.  The Monitor may apply to the Court for any relief necessary or appropriate to ensure the Monitor can carry out its duties, and should the Monitor determine Raging Bull Defendants are not in substantial compliance with the Order, the Monitor shall notify the Court immediately, and may take any additional action as further described in the Business Plan.

### III.    MONITOR'S INITIAL ACTIVITIES

The Monitor was appointed on March 26, 2021.  Since that time, the Monitor has met[2] with counsel for Raging Bull Defendants on five occasions, with one meeting including Defendants Bishop and Bond.  The Monitor has met with the FTC on two occasions, and with the Temporary Receiver on one occasion.   On April 9, 2021, the Monitor established its RagingBull.com Monitorship webpage, which provides Raging Bull customers with information about the Order, and a dedicated email address (and subsequently a dedicated telephone number) for customers to contact the Monitor.  Once Raging Bull established its own dedicated customer support email address and phone number, these were tested by the Monitor, and added to the Monitorship webpage.  As of April 24, 2021, the Monitor has received emails or telephone calls from 85 Raging Bull customers and has responded with an acknowledgment and available relevant information to each of them.

On April 13, 2021, the Monitor sent Raging Bull Defendants its Initial Request for Information requesting, among other information, the information required to be provided to the

---

[2]    All meetings described in this Report are virtual meetings.

Monitor under Section VII of the Order ("Provision of Information to the Monitor"), under Section XII of the Order ("Refund and Cancellation Requests"), and under Phase 1 of the Business Plan ("Customer Service, Refund and Cancellation Procedures").   Also on April 13, 2021, the Monitor reviewed the company's proposed communication to current subscribers notifying them that the Temporary Receivership had been terminated, and after the Monitor approved the communication, it was sent out to current subscribers on that same date.   On April 18, 2021, the Monitor sent Raging Bull Defendants its Second Request for Information requesting information relating to the company's plans with respect to potentially prohibited content on the RagingBull.com website and other sites linked to the website, and the status of the creation and funding of the Escrow Account required by Section XI of the Order.   The Monitor received Raging Bull's responses to the Initial and Second Requests for Information on April 19, 2021 and April 21, 2020, respectively.   The Monitor has established a schedule of regular meetings with both Raging Bull and the FTC, and is implementing its varied compliance monitoring methodologies for assessing Raging Bull's current and future compliance with its obligations under both the Order and Business Plan.

On April 23, 2021, the Monitor sent a draft of this Report to both counsel for Raging Bull Defendants and the FTC, and received comments and/or information from both.

## IV. CONDITIONS SUBJECT TO MONITORING

### A. Prohibited Business Activities

Section I of the Order prohibits Raging Bull Defendants from making Earnings Claims, or claims about the experience, time or effort, or capital required for consumers to effectively use the Defendants' Covered Goods or Services, without an appropriate basis for, or substantiation of such claims.   It also prohibits any misrepresentation of any other fact material to consumers concerning any Covered Goods or Services.   Similarly, the Business Plan provides that under Phase 1, the

company will abstain "from any advertising or marketing to potentially new subscribers," and "all communications with pre-existing subscribers will not contain earnings claims, consumer testimonials, or any misrepresentation of any type regarding the Company's services" (Business Plan p. 9).

Based upon statements by Defendants and their counsel, the Monitor understands that, except for the one communication on April 13, 2021 sent to current company subscribers[3], and any responses to customer emails or calls relating to refunds and cancellations, the company has not been communicating with current customers and has not engaged in any proactive advertising, marketing, promoting, offering for sale or communications with potentially new subscribers, and

---

[3]  The following is the communication that the company sent to its current subscribers:

"It has been a very eventful few months for us at RagingBull (to say the least), and we are so excited to tell you that we will be resuming services very soon!

We plan to roll out our products in stages towards the end of this month. We will get back to you very soon with a firm date that you can look forward to resuming your RagingBull services.

With that in mind, you should know that on March 26, 2021, the Honorable George L. Russell, III, United States District Judge, issued an Order in the lawsuit by the Federal Trade Commission denying the FTC's motion for a preliminary injunction and placed the company under an alternative Order proposed by RagingBull, linked here for your information.

As a part of the Order, the Court terminated the temporary receivership and asset freeze, incorporated the Raging Bull Business Plan submitted by RagingBull, and appointed a third-party compliance monitor. Because the Court has terminated the temporary receivership, the receivership website was removed on April 2 and his involvement in this matter has ended. He is no longer able to respond to any communications about Raging Bull.

Also, please do not contact the Court with any inquiries.

RagingBull will be your point of contact for any issues you have moving forward, just as we always have. Please contact us at support@ragingbull.com and we will handle all of your support issues just as soon as we can and are up and running, so please bear with us just a little longer.

Please note: We do not have our customer support team and technology in place yet so please do not respond back to this email.

Rest assured, we will provide you with more details on everything shortly but we wanted to let you know where things stand today.

In the meantime… get excited because the Bull is back!

We love you guys and gals and our reopening plans will blow your mind.

It is going to be a true reflection of our appreciation of you, our loyal RagingBull family.

You are about to receive an amazing amount of services as our way of saying "thank you" through all of this, so keep an eye out for our next email.

Rage on,

Jeff Bishop & Jason Bond"

that the company will not do so without complying with its obligations under the Order and Business Plan, which the Monitor will verify going forward.

However, the Monitor identified legacy content on the RagingBull.com website and other sites on the Internet that may constitute "Earnings Claims" and other potential "Prohibited Business Activities" that were not removed during the Temporary Receivership.   In addition, the website provides links to social media accounts that may include similar content and representations.  Such content, representations and links were found on the "Experts," "Stories," "Publications," and "Social Media" tabs and pages on the RagingBull.com website.  In addition, still active on the Internet is the RagingBull.com YouTube channel, RagingBullTrading facebook page, and other pages which include legacy content promoting the company's Covered Goods and Services using claims that may constitute Prohibited Business Activities.  On April 18, 2021, the Monitor sent the company its Second Request for Information specifically asking for a written explanation and relevant documents addressing the company's review and revision of the RagingBull.com website and linked social media accounts and the company's actions to comply with the Order.  In its response, the company stated that it "is aware that its website and certain social media accounts may contain earnings claims and statements that are arguably inconsistent with the March 26 Order, and Raging Bull is preparing its work in removing such content as more fully described below."  After further meetings between the Monitor and Defendants' counsel, on April 26, 2021 Raging Bull removed the "Experts," "Stories," and "Social Media" tabs and pages, and additional links including, for example, the link to JasonBondPicks.com, from the RagingBull.com website.  The Monitor has verified that these tabs, pages and links have been removed.  Other internet sites, including the Raging Bull YouTube Channel and facebook sites remain.   Raging Bull has committed to eliminating all advertising and marketing content under

the Company's control that is currently on the Internet and that is not in compliance with the requirements of the Business Plan, and to eliminate or modify all non-compliant video and written materials for each service provided by the company.  The company indicates that it is still in the process of hiring and on-boarding the personnel required to complete the task of removing all potentially non-conforming content from the website and social media, and it commits to complete this process by the end of Phase 1.  According to the company, it intends to begin Phase 1 on April 26, 2021.

Under the circumstances, since the company has begun removing website pages, tabs and links that potentially implicate Section I of the Order, and  has committed to eliminating all non-compliant content on its website and social media accounts, the Monitor believes the best course of action is to continue to assess and monitor this issue, and to report to the Court on the company's compliance with this issue in the Monitor's next report.

### B.      Simple Mechanism to Cancel Negative Option Feature

Section II of the Order requires the company to provide a simple mechanism for consumers to avoid being charged, or charged an increased amount, and to stop any recurring charges, for Covered Goods or Services promoted or offered using a Negative Option Feature.  The Monitor's understanding based upon the Business Plan and statements provided by the company's counsel is that the company will not be accepting new or extended services from current customers, or auto-renewing any subscriptions, during Phase 1.  Further, the Monitor was informed that on December 8, 2020, the Company added a button on members' subscription pages for subscribers to cancel the auto-renewal feature of their subscriptions, and provided the Monitor with a screen-shot of the button.  The Monitor believes the best course of action is to continue to assess and monitor this

9

condition, and to report to the Court on the company's compliance with this condition, in the Monitor's next report.

### C.        Compliance Monitoring Over Defendants

Section III of the Order requires the company to take all reasonable steps necessary to monitor and ensure that Raging Bull Defendants and their agents, representatives, employees, and independent contractors act in compliance with this Order, and to record all live sales events in conjunction with the offering for sale of any of the Defendants' Covered Goods and Services.  The Monitor's understanding is that during Phase 1 the company will be establishing its compliance program which will be assessed by the Monitor and be subject to the Monitor's approval.  That compliance program will have to include an effective program for the company to conduct internal monitoring to ensure that its agents, representatives, employees, and independent contractors act in compliance with this Order, and that all live sales events in conjunction with the offering for sale of any of the Defendants' Covered Goods and Services are recorded.  As such the Monitor believes the best course of action is to continue to assess and monitor this condition, and to report to the Court on the company's compliance with this condition, in the Monitor's next report.

### D.        Raging Bull Business Plan

Section IV of the Order incorporates the Raging Bull Business Plan.  The Business Plan includes specific representations and obligations that the company has committed to meeting under Phase 1 and Phase 2, subject to monitoring by, and in some instances the approval of, the Monitor. The company has indicated that it has not yet begun its Phase 1 activities, but intends to do so beginning April 26, 2021.  As such the Monitor believes the best course of action is to continue to

assess and monitor this condition, and to report to the Court on the company's compliance with this condition, in the Monitor's next report.

### E.     Provision of Information to the Monitor

Section VII of the Order requires Raging Bull Defendants provide the Monitor, immediately upon request, certain information relating to Defendants' Earning Claims and other representations, locations where documents are located, and individuals who have been associated or done business with Defendants since December 7, 2017, in connection with the marketing, advertising, promotion, offer for sale or sale of the company's Covered Goods and Services.   On April 13, 2021, the Monitor sent the Defendants the Initial Request for Information specifically requesting the information and documents covered under Section VII of the Order.  On April 19, 2021 the company provided its response committing to providing the information currently available, and indicating that it is compiling information not currently easily accessible.  While the Monitor has not yet received or reviewed this information, the Monitor believes the best course of action is to report to the Court on the company's compliance with this condition in the Monitor's next report.

### F.     Cooperation and Non-Interference with the Monitor

Sections VIII and IX of the Order require Raging Bull Defendants cooperate with the Monitor and not interfere with the efforts to carry out the Monitor's duties under the Order.  To date the Defendants have cooperated with, and have not interfered with, the Monitor in carrying out our duties under the Order.

11

G.      **Escrow Account**

Section XI of the Order requires the owners[4] of Raging Bull to create and fund from their personal assets the Escrow Account in the amount of $10 million by no later than ten days after the entry of the Order.  In the Monitor's Second Request for Information, the Monitor requested written verification that this Escrow Account has been created and funded consistent with the Order, including documentation evidencing the Account, the sources of the funds, the dates on which it was funded, and the current balance.  In its April 21, 2021 response, the Defendants represented that Messrs. Bishop and Bond have made $10 million of their personal assets available to Raging Bull, did so within 10 days of the Order, and have since used approximately $4 million of their personal funds to cover Raging Bull's costs and expenses.  However, they have "been unable to create the $10 million escrow account, despite their efforts to do so."  The explanation given was "the substantial and unexpected difficulty Raging Bull encountered in re-establishing its banking relationship with [its former bank] or establishing a new banking relationship."  In addition, they represented that Mr. Bishop encountered a "significant delay …. in accessing his personal funds with [his bank], which had remained frozen" until the week of April 19, 2021.  In the April 21, 2021 response, and in subsequent written communications and meetings, the Defendants have represented that the company has now been able to re-establish its banking relationship, and is working with at least two banks to potentially and expeditiously establish the Escrow Account required by the Order.

As of this Report, while the company has not yet established the Escrow Account, they are continuing efforts to do so.  The Monitor has advised counsel for Defendants that if they are

---

4   For purposes of this Section, the "owners" are Jeffrey M. Bishop and Jason Bond (*see* Order p. 3, para. C).

unsuccessful in these efforts and intend to seek a modification to the requirement that they create and fund an Escrow Account, that modification request must be made to the Court.  Unless other action is ordered by the Court, the Monitor believes the best course of action is to continue to assess and monitor this condition, and to report to the Court on the company's compliance with this condition, in the Monitor's next scheduled report or earlier.

### H.      Refund and Cancellation Requests

Section XII of the Order requires the company to follow a specific process for handling all requests pending as of the date of the Order from subscribers seeking a refund of amounts paid for services and/or a cancellation of any auto-renewal for services.  That process calls for the company to provide full refunds to the thirty-one Declarants who submitted declarations in support of the FTC's Motion to Show Cause.  All other requests pending as of the date of the Order are to be handled before the completion of Phase I as specifically set forth in the Order.  Under the Order, the Monitor has the authority to determine the particular circumstances of each subscriber seeking a refund, whether any refund should be made and, if so, whether such refund should be full or partial.

Addressing refunds for the 31 Declarants, the refund and cancellation requests received to date, and the company's proposed plans for addressing refunds and cancellations going forward is one of the Monitor's top priorities.  In the Monitor's Initial Request for Information, and in subsequent meetings with Defendants and/or their counsel, the Monitor requested specific information addressing the status and plans for refunding the 31 Declarants, and identifying the other individuals seeking refunds and cancellations, the status of all refund and cancellation requests, relevant documentation, and the process, protocols and criteria the company is using to determine who is entitled to refunds and cancellations, in full, in part, or not at all.  Over the past

10 days, Raging Bull has provided the Monitor with some of this information, and has represented that it is in the process of assembling additional responsive information.

With respect to refunds for the 31 Declarants, Defendants provided the Monitor with information describing the refunds to be paid to each Declarant, and the communication that the company intended to send to each Declarant in connection with the refund.  After several meetings and communications between the Monitor and the company's counsel, the company has demonstrated to the Monitor that it sent to each of the 31 Declarants on April 26, 2021 an email stating that the Declarant will be receiving a check in the amount of the *greater* of (i) the amount the Declarant actually paid the company for all subscription services (as calculated by the company) or (ii) the amount the Declarant claims to have paid for all subscription services, less any prior refund amount, and also demonstrated that on April 26, 2021 the company sent each of these 31 Declarants their refund check by FedEx.  These refunds do not require or request any release from any of the Declarants.   Furthermore, each of the Declarants' email addresses will be deleted from all of the company's subscriber lists so these individuals will not be receiving any other communications from the company going forward (except in connection with the refunds).

Relatedly, the Monitor has focused attention on making sure that current subscribers who are seeking refunds or cancellations, who want to raise complaints, or who are seeking more information about the status of the company's operations are able to contact the Monitor and the company, and have their communications acknowledged and addressed.  On April 9, 2021, the Monitor established its RagingBull.com Monitorship webpage at https://www.affiliatedmonitors.com/raging-bull-monitorship/, which provides Raging Bull customers with information about the Order, and a dedicated email address.  On April 13, 2021, a dedicated telephone number (617-807-1161) was added for customers to contact the Monitor.  On

April 12, 2021, Raging Bull established its own dedicated customer support email address at support@ragingbull.com and subsequently established a customer support phone number (800-380-7072) which were both tested by the Monitor, and added to the Monitorship webpage. Based on the Monitor's testing, it appears that the company's customer support phone number does direct customers to a live customer support representative.

As of April 23, 2021, the Monitor has received emails or telephone calls from 85 Raging Bull customers, and has responded with an acknowledgment and available relevant information to each of them. The information provided by the Monitor states that RagingBull.com will be addressing customer refund requests and complaints during the first 60 days of the Monitorship, and Affiliated Monitors, Inc. will be monitoring that process. It is suggested that customers should contact Raging Bull at support@ragingbull.com, and if the customer does not have a resolution from RagingBull.com by May 25, 2021, they should email the Monitor at RagingBullMonitor@affiliatedmonitors.com. In addition, the Monitor has provided Raging Bull with the list of customers who have contacted the Monitor, and is requiring the company to report on the status of all refund and cancellation requests on a regular basis going forward.

V.   CONCLUSION

During the first 30 days since the Order, Raging Bull Defendants have been transitioning control, operations and the assets of the company back to company management and ownership, hiring staff, establishing customer support channels, meeting with the Monitor and responding to the Monitor's requests for information. On April 26, 2021 the company sent an email about the refund and checks by FedEx to all 31 Declarants providing them with full refunds of their subscription payments. In the meantime, other than a single communication emailed to current subscribers on April 13, 2021, and communications in response to customer emails or telephone

calls, the company is not engaging in proactive communications or any sales or marketing of Covered Goods or Services.  The company has also begun, as of April 26, 2021, removing certain pages, tabs and links on the RagingBull.com website that included legacy content that may violate Section I of the Order.  As of the Report, the company's website, YouTube channel and certain social media accounts are still active and may include legacy content that  violates Section I of the Order prohibiting certain Business Activities.  The company's counsel has represented that the company will continue to address this issue during Phase 1.  The company owners have not yet established the Escrow Account required by Section XI of the Order, but are continuing efforts to do so; if those efforts are unsuccessful, the Defendants will seek a modification of the Escrow Account requirement from the Court.

The Monitor finds that during the first 30 days since the Order, Raging Bull Defendants are, with the exception of any remaining RagingBull.com website, YouTube channel, or social media content implicating Section I of the Order, and the Escrow Account issue referenced above, in substantial compliance with the Order and moving forward with their commitments under Phase 1 of the Business Plan.

16

## VI.   NEXT STEPS

The Monitor will continue monitoring Raging Bull Defendants' compliance with both the Order and Business Plan and will be reporting to the Court within sixty (60) days of this First Report.   However, consistent with the Order, the Monitor will notify the Court earlier if the Monitor determines that Defendants are not in substantial compliance with the Order or Business Plan.

**Respectfully submitted,**


Jesse M. Caplan
Monitor

Gerald J. Coyne
Monitor

17