**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

**FEDERAL TRADE COMMISSION**,

      Plaintiff,

v.

**RAGINGBULL.COM, LLC**, et al.,

      Defendants.

Case No. 1:20-cv-03538

**FEDERAL TRADE COMMISSION'S OPPOSITION AND RESPONSE TO THE**
**DENNIS DEFENDANTS' MOTION TO DISMISS AND TO STRIKE**

# **TABLE OF CONTENTS**

FACTUAL BACKGROUND ................................................................................................. 1

PROCEDURAL HISTORY ................................................................................................. 2

LEGAL STANDARD ......................................................................................................... 4

ARGUMENT ....................................................................................................................... 5

I.     Rule 9(b) Does Not Govern the Claims in this Case ................................................ 5

II.    The Complaint Is Well-Pled Under Either Rule 8(a) or 9(b) .................................. 9

       A.     The Complaint Satisfies Rule 9(b) ............................................................... 9

       B.     The Complaint Satisfies Rule 8(a) ............................................................. 14

III.   The Complaint States a Plausible Claim for Relief against Dennis Under
       Section 5 of the FTC Act ....................................................................................... 16

       A.     The Complaint Sufficiently Alleges Dennis' Direct Liability for His Own
              Misrepresentations Under Section 5 of the FTC Act ................................. 17

       B.     The Complaint Sufficiently Alleges Dennis' Individual Liability for
              Raging Bull's Deceptive Practices ............................................................. 20

       C.     Dennis' Purported Defenses are Groundless and Improper for
              Adjudication at This Stage ......................................................................... 27

IV.    The FTC's Response to Dennis Defendants' Motion to Dismiss the Winston Entities
       and Count III against Dennis ................................................................................. 30

V.     The FTC's Response to Defendants' Motion to Strike All Monetary Relief ............... 31

CONCLUSION ................................................................................................................... 32

Plaintiff Federal Trade Commission ("FTC" or "Commission") submits this opposition and response to the Motion to Dismiss and to Strike filed by Defendants Kyle W. Dennis ("Dennis"), Winston Corp. and Winston Research Inc. (collectively, the "Dennis Defendants"). As set forth below, the FTC opposes the Dennis Defendants' motion (ECF No. 225) to the extent it seeks to dismiss any claims against Dennis under Section 5 of the FTC Act (Counts I and II). Despite Dennis' protestation that he is not an "owner" or "executive" of defendant RagingBull.com, LLC ("Raging Bull"), the Complaint sufficiently pleads Dennis' liability for his direct violations of the FTC Act.

The FTC also requests that the Court defer or abstain ruling on the remainder of Dennis Defendants' motion. For the reasons stated below, the FTC has voluntarily dismissed the Winston Corp. and Winston Research Inc. and the additional relief sought by way of the Dennis Defendants' motion, including the request to remove claims for monetary relief against Dennis, is more properly addressed through an amended pleading, which the FTC is taking steps to file by June 7, 2021.[1]

## FACTUAL BACKGROUND

Raging Bull is a closely held enterprise, founded in 2014, that uses deceptive claims about purported profit-generating stock trading strategies and trade alerts to lure consumers to enroll in one or more of Defendants' negative option offers. ECF No. 164-1 ("Complaint" or "Compl."), ¶¶ 2-6, 94. In December 2020, the FTC commenced this action against Raging Bull and certain individuals directly responsible for inflicting substantial financial harm on consumers

---

[1] In light of the U.S. Supreme Court's decision in *AMG Capital Management, LLC v. FTC*, 141 S.Ct. 1341 (2021), the FTC has sought a temporary stay so that it can amend its complaint. The FTC's proposed amended complaint will likely moot many of the issues raised on the Dennis Defendants' present motion to dismiss and to strike, including their request to remove the monetary relief under Sections 13(b) and 19. Since formal merits discovery has not started and no scheduling order has been entered, there is no prejudice to any of the Defendants from a temporary stay so that the FTC can amend its complaint. ECF Nos. 229, 231.

1

through their deceptive sales and marketing practices.  ECF No. 1.  One of those individual defendants, Dennis, has played a vital role in Raging Bull's sales and marketing operations since at least 2016.  Compl., ¶ 22.

Dennis purports to be a "trading instructor" who will teach and deliver lucrative stock trading strategies and stock purchase alerts that consumers can follow and copy to generate consistent market-beating returns and substantial income.  Compl., ¶ 41, 50-52.  Like Raging Bull founders Jeff Bishop ("Bishop") and Jason Bond ("Bond"), Dennis conveys this deceptive message using various types of earnings claims.  For example, Dennis makes claims about the kinds of profits consumers are likely to make using terms like "double your money" and shows various profit percentages or examples of atypical results in his marketing, while conveying the deceptive impression that consumers can realize similar results.  *Id.* ¶¶ 53-54, 56, 60-63.  Dennis also uses atypical or misleading testimonials from purportedly satisfied subscribers to illustrate the kinds of profits consumers can earn from his services.  *Id.* ¶¶ 64-67.  Like Bishop and Bond, Dennis makes misrepresentations that anyone can use his trading strategies irrespective of their level of experience, account size, or time commitment.  *Id.* ¶¶ 68-75.  Dennis is directly involved in the consumer-facing marketing materials, such as narrating sales videos where he repeatedly makes these earnings claims, conducting sales webinar presentations where he is conveying these same deceptive claims, and appearing in numerous written advertisements for these services sent to consumers.  *Id.*, ¶¶ 52, 56-57, 61, 83-84.

## PROCEDURAL HISTORY

On December 7, 2020, the FTC commenced this action and filed its initial complaint, containing more than 100 paragraphs of factual allegations against Dennis and the other Raging Bull Defendants.  ECF No. 1.  Along with the complaint, the FTC filed a 55-page memorandum

seeking a temporary restraining order ("TRO") and citations to over 3,000 pages of evidence against Dennis and the other Raging Bull Defendants. ECF No. 2-1 ("TRO Brief"). On February 4, 2021, the FTC filed an amended complaint (the "Complaint") solely to dismiss MFA Holdings Corp. from this action.[2] ECF No. 164. The Dennis Defendants' answer or response to the Complaint was initially due on February 18, 2021. On February 11, 2021, the Dennis Defendants requested a two-month extension to respond to the Complaint (with the FTC's consent), so that the parties could prepare for the preliminary injunction hearing on March 19, 2021.[3] ECF No. 168.

On or around April 23, 2021, the FTC informed counsel for Raging Bull Defendants and the Dennis Defendants that it would be seeking leave to amend the Complaint, in light of the Supreme Court's recent decision in *AMG*. The FTC also requested the Court enter a temporary stay of all deadlines until an amended pleading is filed. The Raging Bull Defendants agreed to a temporary stay, but counsel for the Dennis Defendants did not, thus requiring the parties to continue briefing this motion. ECF No. 229.

Dennis has had ample notice of the FTC's claims against him since the commencement of this case. Between the filing of the initial complaint in early December 2020 (which has not changed as to the Dennis Defendants from its original form) and the Dennis' present motion to dismiss filed on April 16, 2021, Dennis has submitted to the Court a 17-page opposition to the FTC's TRO Brief (on December 13, 2020) and a 30-page opposition to the same brief along with declarations and exhibits (on January 13, 2021), and has joined in various motions filed by his co-Defendants in this case. ECF Nos. 35, 47, 123, 124. During that time, the Court also entered

---

[2] Since none of the Defendants had answered the initial complaint at that time, the FTC amended as of right under Fed. R. Civ. P. 15(a).

[3] In their request, the Dennis Defendants' advised the Court that "granting this extension will not prejudice any party or unduly delay the proceedings" as there is "no trial date, discovery deadline, or dispositive motion deadline." ECF No. 168.

an initial TRO (on December 8, 2020) and a modified TRO on December 15, 2020 against

Dennis and the other Raging Bull Defendants, finding good cause to do so at the time.  ECF No.

56 ("Dec. 15, 2020 Order"), at p. 8 n. 2 ("Raging Bull states in its Reply that it 'did not put the

merits at issue in [its] Motion.' …  Raging Bull's approach misses the mark, as the TRO was

based, in large part, on the Court's preliminary finding that the FTC was likely to succeed on the

merits").  On March 26, 2021, the Court found that the FTC provided "examples of

misrepresentations" by the individual defendants, including Dennis.  Transcript of Mar. 19, 2021

Ruling on Motion for Preliminary Injunction (App. Tab A),[4] at p. 8.

## LEGAL STANDARD

The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of a plaintiff's

complaint.  *Edwards v. City of Goldsboro*, 178 F. 3d 231, 243 (4th Cir. 1999).  The motion does

not "resolve contests surrounding the facts, the merits of a claim, or the applicability of

defenses."  *Id.*, at 244 (quoting *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir.1992)).

When evaluating a 12(b)(6) motion, the court "must accept as true all of the factual allegations

contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor

of the plaintiff."  *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (citations omitted).

Rule 8(a)(2) lays out the general pleading standard, requiring only a "short and plain

statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

Rule 8 does not require "detailed factual allegations," but something more than "an unadorned,

the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009);

*see also In re Sanctuary Belize Litig.*, No. 18-3309, 2019 WL 1934673, *1 (D. Md. Apr. 30,

2019).  To survive a motion to dismiss under Rule 12(b)(6), the plaintiff's statement must contain

---

[4] The FTC is submitting hereto an Appendix ("App.") of unpublished decisions and publicly available court filings cited in this opposition brief.

facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (the plausibility standard is not akin to a "probability requirement"). Stated otherwise, a plaintiff need only plead sufficient facts to "nudg[e]" a claim "across the line from conceivable to plausible." *FTC v. Innovative Marketing*, 654 F. Supp. 2d 378 (D. Md. 2009) (quoting *Twombly*, 550 U.S. at 570).

## **ARGUMENT**

### I.    **RULE 9(B) DOES NOT GOVERN THE CLAIMS IN THIS CASE**

Contrary to Dennis' argument, the claims in this case are not subject to the heightened pleading requirements of Rule 9(b). Rule 9(b) requires that claims of "fraud or mistake" be pled with particularity, but the FTC's counts here do not sound in fraud or rely on proof of fraud.[5] Rather, Counts I and II of the Complaint plead that the named Defendants (including Dennis) made representations that were false, misleading or unsubstantiated, in violation of Section of the FTC Act. Compl., ¶¶ 104-109. Despite the many FTC cases brought in this district and in this Circuit over the years, none has ever applied Rule 9(b) to claims brought under the FTC Act, whether alleging deception or other unlawful conduct. The Court should reject Dennis' invitation to do so here.

Federal courts have long found that prohibited deceptive practices under Section 5 of the FTC Act do not amount to "a claim of fraud as that term is commonly understood or as contemplated by Rule 9(b)." *FTC v. Freecom Communications, Inc.*, 401 F.3d 1192, 1204 (10th

---

[5] Rule 9(b) states that "in alleging a fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Cir. 2005).[6]  This is consistent with both the elements and purpose of FTC actions, which are different from common law fraud claims.[7]  Under the FTC Act, it need only be shown that a defendant engaged in a material misrepresentation or omission that was likely to mislead consumers, and there is no requirement to show actual reliance by the individual consumer, injury, or anything regarding the intent of the defendant.[8]  In addition, FTC enforcement actions serve a public purpose.  As the Tenth Circuit discussed in *Freecom*, an FTC action is "not a private or common law fraud action designed to remedy a singular harm, but a government action brought to deter deceptive acts and practices aimed at the public and to obtain redress on behalf of a large class of third-party consumers…."  *Freecom*, 401 F.3d at 1204 n.7.

---

[6] Most courts outside this circuit have similarly declined to extend Rule 9(b)'s heightened pleading requirements to FTC enforcement actions.  *See, e.g., FTC v. Next-Gen*, Inc., No. 18-cv-00128, 2018 WL 5310414, *5 (W.D. Mo. Sept. 10, 2018) (refusing to adopt the argument that Rule 9(b) applies to FTC deception claims); *FTC v. Hornbeam Special Situations, LLC*, 308 F. Supp. 3d 1280, 1287 (N.D. Ga. 2018) ("[c]ontrasting the elements of fraud with the elements of an FTC Act claim, the difference is palpable and warrants a conclusion that Rule 9(b) does not apply"); *FTC v. Consumer Health Benefits* (E.D.N.Y. 2011) ("most courts that have addressed this issue, including ones in this circuit, have concluded that Rule 9(b) does not apply to deceptive practices claims under the FTC Act"); *FTC v. Sterling Precious Metals, LLC*, No. 12-80597, 2013 WL 595713, *3 (S.D. Fla. Feb. 15, 2013) (finding rationale of the Tenth Circuit in *Freecom* persuasive and not applying Rule 9(b) to FTC deception claims); *FTC v HES Merchant Servcs.*, No. 12-1618, 2014 WL 12611275, *2 (M.D. Fla. Feb. 20, 2014) (same); *FTC v National Testing Services LLC*, No. 05–0613, 2005 WL 2000634, at *2 (M.D. Tenn. Aug. 18, 2005) (same); *FTC v Affiliate Strategies, Inc.*, No. 09-4104 (D. Kan. Jun. 4, 2010) (ECF No. 202) (same) (App. Tab B), at 11-12.

[7] *Cf. Freecom*, 401 F.3d at 1204 n.7 (in the course of rejecting application of Rule 9(b), explaining that "[u]nlike the elements of common law fraud, the FTC need not prove scienter, reliance or injury"); *FTC v. Student Aid Center*, 281 F. Supp. 3d 1324, 1332 (S.D. Fla. 2016) (finding FTC's statutory claims are "distinct from common law fraud" and distinguishing the FTC deception claims from securities fraud claims brought by private investors); *FTC v Communidyne*, No. 93-C-6043, 1993 WL 558754, *2 (N.D. Ill. Dec. 3, 1993) (a "claim under section 5(a) of the FTC Act is not a claim of fraud or mistake, so Rule 9(b) does not apply"); *FTC v. Skybiz.com, Inc.*, No. 01-cv-396, 2001 WL 1673649, *4 (N.D. Okla. Aug. 2, 2001) (same).

[8] Under the FTC Act counts, a deceptive act or practice is established when:  (1) there was a representation, omission, or practice; (2) that was likely to mislead consumers acting reasonably under the circumstances; and (3) the representation, omission, or practice was material.  *FTC v Loma Int'l Bus. Grp. Inc.*, No. 11–1483, 2013 WL 2455986, *3-*4 (D. Md. Jun. 5, 2013) (*citing FTC v. Tashman,* 318 F.3d 1273, 1277 (11th Cir.2003); *In re Sanctuary Belize Litig.*, 482 F. Supp. 3d 373, 397 (D. Md. 2020) (citations omitted).

In *Next-Gen*, a federal court also refused to apply Rule 9(b) to FTC deception claims, finding that the Eighth Circuit and the "Supreme Court has held that federal courts may not apply the heightened pleading standard of Rule 9(b) outside the two specific instances—fraud and mistake—explicitly found in the Rule." *FTC v. Next-Gen, Inc.*, No. 18-cv-00128, 2018 WL 5310414, *5 (W.D. Mo. Sept. 10, 2018) (quoting *In re NationsMart Corp. Securities Litigation*, 130 F.3d 309, 315 (8th Cir. 1997)); *see also CFPB v. Hanna & Associates*, 114 F. Supp.3d 1342, 1372 (N.D. Ga. 2020) ("the United States Supreme Court has consistently cautioned against extending [Rule 9(b)'s] heightened pleading standard beyond claims of fraud or mistake"); *Pelfrey v. Mahaffy*, No. 17-cv-80920, 2018 WL 3110794, at *4 (S.D. Fla. Feb. 2, 2018) (mere passing references to "fraud" in the complaint's allegations "does not make it a fraud-based claim such that heightened pleading standards apply," but rather the claim must be grounded in or rely on the "fraudulent conduct").

In the only case in the Fourth Circuit that has directly addressed this question, which concerned claims predicated on deceptive advertising and marketing as in this matter, the Court acted in concert with the body of caselaw described above and soundly rejected the application of Rule 9(b). *See FTC v. Innovative Marketing, Inc.*, 654 F. Supp.2d 378 (D. Md. 2009) ("Defendant seems to argue for a pleading standard akin to the particularity requirement prescribed for claims of fraud under Fed. R. Civ. P. 9(b) – a heightened standard that does not apply [to] section 5(a) claims under the FTC Act").

The district court cases from the Fourth Circuit cited by Dennis are inapposite. In *Myers*, the district court found that the elements of the Virginia statute in question required the private plaintiff to allege "fraud and that the consumer relied on the fraud." *Myers v. Lee*, No. No. 10-131, 2010 WL 2757115, *5 (E.D. Va. Jul. 12, 2011). In *Cozzarelli*, the court underscored the fact

that this was a suit brought by private investors and that Congress had passed specific legislation (*i.e.*, Private Securities Litigation Reform Act or "PSLRA") that requires "[e]xacting pleading requirements" and that charges courts to be "vigilant in preventing meritless securities fraud claims from reaching the discovery phase of litigation." *Cozzarelli v Inspire Pharmaceuticals Inc.*, 549 F.3d 618, 623 (2008).  Similarly, *Under Armour* involved a securities fraud class action in which private plaintiffs were required to plead and prove that defendants "acted with a mental state embracing intent to deceive, manipulate or defraud," and thus satisfy the "exacting pleading requirements set forth in the PSLRA as well as Rule 9(b)." *In re Under Armour Sec. Litig.*, 342 F. Supp.3d 658, 689 (D. Md. 2018) (citations omitted).  Lastly, in *Driver Opportunity*, a breach of fiduciary duty suit brought by a minority shareholder, the court applied Rule 9(b) to two counts in the complaint that specifically alleged that defendants' actions were done "maliciously … and with intent to defraud," and that defendants have "engaged in unfair competition … by fraud." *Driver Opportunity Partners v. First United*, No. 20-2575, 2021 WL 82864, *5-6 (D. Md. Jan. 8, 2021) (declining to apply Rule 9(b) to the other counts in the same complaint because "Rule 9(b) applies only to allegations of 'fraud or mistake.'").

Dennis also points to two district court cases from the Ninth Circuit that applied Rule 9(b) to an FTC action.[9]  Dennis Defendants' Memo of Law ("Dennis Mem.") (ECF No. 225-1), at 8-9 (citing *Ivy Capital* and *Lights of America*).  However, it is not a settled question even in

---

[9] In *FTC v. Ivy Capital*, where the court applied Rule 9(b), the court nevertheless found that the FTC's 33-page complaint satisfied the heightened pleading requirement.  *FTC v. Ivy Capital*, No. 11-cv-283, 2011 WL 2118626, *4 (D. Nev. May 25, 2011).  The *Ivy Capital* court also held it was proper to apply a relaxed particularity requirement in an FTC action.  *Id*. (quoting Ninth Circuit authority that a "complaint need only include the roles of individual defendants in corporate fraud cases where possible because such situations make it difficult to attribute particular conduct to each defendant").  In *Lights of America*, while the court granted defendant's motion to dismiss, it did so without prejudice and granted FTC leave to re-plead.  *See FTC v. Lights of America*, 760 F. Supp. 2d 848 (C.D. Cal. 2010).  The court later upheld the FTC's amended pleading under Rule 9(b).  *See FTC v. Lights of America*, No. 10–1333, 2011 WL 1515158, *3 (C.D. Cal. Mar. 31, 2011).

the Ninth Circuit as to whether Rule 9(b) should apply to FTC deception claims. *See, e.g., FTC v. Triangle Media Corp.*, No. 18-cv-1388, 2018 WL 6305675 (S.D. Cal. Dec. 3, 2018) (the "Ninth Circuit has not addressed the issue, but the Court is skeptical that Rule 9(b)'s heightened pleading standard applies to a Section 5 deception claim like the FTC's").

Simply put, the FTC Act does not require a showing of individual reliance or scienter, and unlike all four of the above-referenced cases, the instant case is "a government action brought to deter deceptive acts and practices aimed at the public…." *Freecom*, 401 F.3d at 1204 n.7. In sum, the Dennis Defendants cite to no authority or precedent that would compel this Court to apply Rule 9(b) to the FTC's claims in this case. Further, doing so here would be inappropriate.

## II.     THE COMPLAINT IS WELL-PLED UNDER EITHER RULE 8(A) OR 9(B)

While the FTC need not satisfy Rule 9(b) for the reasons described above, Counts I and II of the Complaint nevertheless meet the pleading standards of both Rules 8(a) and Rule 9(b).

### A.     The Complaint Satisfies Rule 9(b)

Rule 9(b) requires the pleader to plead with particularity the circumstances constituting the fraud, such as the time, place, and contents of the false representations, and the parties involved. *See Harrison v. Westinghouse Savannah*, 176 F.3d 776, 783-84 (4th Cir. 1999). Rule 9(b) allows defendant's knowledge or scienter to be pled generally. *Id*. The Fourth Circuit has also held that a district court should hesitate to dismiss a complaint under Rule 9(b) "if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Id*., at 784.[10]

---

[10] The purposes of Rule 9(b) are to provide the defendant with sufficient notice of the basis for plaintiff's claims, to protect the defendant against frivolous suits, to eliminate fraud actions

*(continued)*

The FTC's Complaint here describes Dennis' role in the Raging Bull common enterprise and when he joined.  Compl., ¶ 14, 22 (Dennis "offers and promotes a number of widely advertised services through Raging Bull," "joined the company in 2016," "serves as an instructor and is also actively involved in Raging Bull's marketing and operations").  The Complaint further alleges that each of the "Individual Defendants Bishop, Bond, and Dennis formulated, directed, controlled, had the authority to control, or participated in" the acts and practices of the Raging Bull enterprise.  *Id*., ¶ 19.

The Complaint goes on to identify the specific types of earnings claims that Dennis and the other Defendants have made and that are prevalent in their marketing.  Compl. ¶23 ("Defendants market these services by touting examples of the instructors' purported success as traders, by sharing consumer testimonials that boast big wins, and by claiming consumers can make consistent and substantial profits regardless of the consumer's experience, wealth or available time"); ¶ 31 ("ads often feature Raging Bull's instructors, talking about highly successful trades"); ¶53 ("Defendants make … claims about the kinds of profits consumers can make, which include statements like 'consistent money,' 'big money,' 'double your money,' and various profit percentages"); ¶¶ 68-70 ("Defendants claim their services can be used successfully by people with little or no stock or options trading experience," "regardless of the balance in consumers' accounts," and "by people who only trade part-time").  The Complaint makes clear that "[a]ds for services offered by instructors other than Bond and Bishop feature similar claims," and that "Defendants' ads portray their instructors," including Dennis, "as able to generate market-beating returns through their trades and able to pick 'winning' stocks on a week-after-

---

where all of the facts are learned only after discovery, and to safeguard the defendant's reputation.  *Harrison,* 176 F.3d at 784; *see also generally* 5A Arthur R. Miller and May Kay Kane, Fed. Prac. & Proc. Civ. § 1296 (3d ed. 2004).  As noted above, the FTC has set forth extensive evidence of Dennis' involvement and Dennis has had ample notice of the claims against him, having already filed multiple briefs during the preliminary injunction stage.  *See supra*, at 3-4.

week basis." *Id.*, ¶¶ 50-51.  The Complaint alleges that "many of Defendants' marketing materials involve their instructors," including Dennis, "highlighting selected winning trades that earned huge percentages," and that consumers are misled by these ads.  *Id.*

The Complaint identifies specific examples of statements from Dennis' sales videos and written communications to consumers, when those claims were made or disseminated, and even pictures of Dennis caught in the act.  *Id.*, at ¶ 61 ("Dennis, in a video for his service Trade with Kyle, shares examples of options or stocks where the price jumped several hundred percent each, which his strategy would purportedly have identified, and claims his own trading returns tens of thousands of dollars of profit on these"); ¶ 52 ("Dennis saying he made 'about $9,100 per day' in 2019" and attaching screenshot of Dennis from his sales video); ¶ 57 (Dennis claimed in April 2020 emails that he was "able to rack up nearly $500K in profits by trading stocks related to the COVID-19 pandemic" and in "May 2020 … Kyle Dennis purported to explain the effects of the pandemic on the stock market and 'why he believes this may be the most exciting opportunity in decades!'").

The Complaint also identifies the names of the products that Dennis promoted and sold and the earnings claims used in promoting those products to consumers.  Compl., ¶ 56 ("Defendants market Sniper Report as a newsletter by Kyle Dennis 'strategically developed to only deliver high probable [sic] trades with the power to make 100%, 200%, 300% return [sic] on each trade'"); ¶ 52 (showing screenshot of sales video for Dennis' Fast Five Trades); ¶¶ 65-66 ("advertising for Fast 5 Trades features many testimonials, including quotes from three individuals who stated they made over $1,000 in three weeks, made $500 in two days, and made nearly 20% on their first trade").

These descriptions and quotations from specific advertisements Dennis personally appeared in, sales videos that he personally narrated, and products that he personally marketed and sold to consumers should put Dennis on sufficient notice of the content of the false or misleading statements at issue for purposes of Rule 9(b).  Also, when a scheme is pervasive and long-standing as it is here, the pleader is not required to identify every single statement made in the course of the deceptive scheme, even where Rule 9(b) does apply.  *See U.S. ex rel. Franklin v. Parke-Davis*, 147 F. Supp. 2d 39, 49 (D. Mass. 2001) (where allegations are "complex and far-reaching, pleading every instance of fraud would be extremely ungainly, if not impossible"); *In re Cardiac Devices Qui Tam Litig.*, 221 F.R.D. 318, 333 (D. Conn. 2004) ("where the alleged fraudulent scheme involved numerous transactions that occurred over a long period of time, courts have found it impractical to require the plaintiff to plead the specifics with respect to each and every instance of fraudulent conduct").[11]

The Complaint explains the overall net impression that consumers take away from Defendants' advertisements and sales videos.  Compl., ¶ 41 ("[c]onsumers are led to believe they can also make significant money by using the instructor's methods, copying their trades, or both"); ¶ 85 (consumer experiences are inconsistent with "impressions created by Defendants' marketing about consumers' ability to generate substantial income using Raging Bull's services").  The Complaint even identifies Dennis downplaying a fleeting disclaimer during one of his webinars.  *Id.*, ¶ 83 ("Disclaimer here.  Trading is risky…. Heck, going outside is risky nowadays, right?").

---

[11] The Complaint identifies examples of the sales videos and webinars that Dennis has appeared in or conducted since 2016 to promote his services with Raging Bull.  This is just the tip of the iceberg, since Dennis has been featured in and speaks in all of the promotional videos for the Biotech Breakouts brand of products.  Some additional sales videos and webinars featuring Dennis—replete with similarly false and unsubstantiated earnings claims—were cited in the FTC's TRO Brief.  ECF No. 2-1.  Thus, even if a court were to find pleading deficiencies in the present Complaint, the FTC should be permitted an opportunity to present these facts through an amended pleading.

The Complaint also explains why the net impression conveyed in Dennis' various ads is false, misleading or unsubstantiated.  *Id.*, ¶ 66-79 ("Defendants do not provide any strategy that consumers can follow, much less a strategy capable of achieving market-beating returns" and "Defendants have not collected any data to substantiate whether the earnings claim they make … are typical and representative"); ¶ 73 (Defendants' purported training materials and alerts consist of "generic trading concepts and technical indicators that are not sufficiently concrete to be implemented" and thus not "simple and easy to use" as advertised); ¶75 (consumers are required to spend more time than advertised and even then "struggle to make positive investment returns" using Defendants' services).

The Complaint also alleges Dennis' knowledge of complaints from consumers who did not realize the advertised income or lost money, contrary to the net impression conveyed through Dennis' claims.  *Id.*, ¶ 92 ("Bishop, Bond and Dennis all have seen or received such complaints from consumers").

These allegations are sufficient to put Dennis on notice of the particulars of the deceptive statements and practices at issue and do not deprive him of any information needed to answer the Complaint.  In *FTC v. DeVry*, the court, without deciding whether Rule 9(b) should apply to the FTC's deception claims, found that the FTC's complaint would meet this burden because the FTC pled the who ("all three Defendants"), the what ("misrepresentations regarding post-graduation employment rates"), the when ("between 2008 and 2015"), the where ("throughout the United States") and the how ("miscounting three categories of graduates").  *FTC v. DeVry Education Group, Inc.*, No. 16-00579, 2016 WL 6821112, *6 (C.D. Cal. May 9, 2016) ("Rule 9(b) requires no more").

### B.      The Complaint Satisfies Rule 8(a)

For purposes of Rule 8(a)—which is the proper standard—the Complaint, spanning 35 pages and over 100 paragraphs, contains sufficient factual matter against Dennis and the other Defendants that, accepted as true, state a plausible claim for relief under Section 5 of the FTC Act.  *See, e.g.,* Compl., ¶¶ 2-6, 14, 19, 21-93.  The Fourth Circuit has held that "[s]pecific facts are not necessary in a pleading" in order to "give defendant fair notice of what the … claim is and the grounds upon which it rests."  *Miller v. Carolinas Healthcare System*, 561 Fed. Appx. 239, 240-41 (4th Cir. 2014) (unpublished opinion) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).  In any event, the Complaint here goes further and alleges Dennis' direct involvement in Raging Bull's marketing and operations and identifies the earnings claims attributable to Dennis, the deceptive advertisements that Dennis appears in, and the false, misleading or unsubstantiated claims that Dennis expressly uttered and that have been preserved in video recordings.  *See, e.g.,* Compl., ¶¶ 52, 57, 83; *cf. Student Aid Center*, 281 F. Supp.3d at 1331 (finding allegations that the defendants operated an unlawful debt relief enterprise in violation of the FTC Act and TSR satisfied the "exceedingly low notice pleading standard of Rule 8").  While not required, the Complaint contains "detailed factual allegations" against Dennis and the other Raging Bull Defendants, and puts Dennis on sufficient notice of the claims against him and their grounds.

Dennis' dubious contention that he had "nothing to do" with the ads that feature him or tout his purported "expertise," or even the numerous sales videos recording his very own words and actions, goes to the "merits" of his denials and defenses and is entirely inappropriate for adjudication at this stage in the case.  *See, e.g. Edwards*, 173 F. 3d at 243-44; *see also FTC v. Leanspa, LLC*, 920 F. Supp. 2d 270, 278-79 (D. Conn. 2013) (finding individual defendant's

argument regarding his role and involvement in the deceptive practice to be premature on a motion to dismiss).

Contrary to Dennis' argument, group pleading is also entirely proper and permissible under either Rule 8(a) or Rule 9(b), especially in FTC complaints where there is only one type of cause of action alleged against related defendants and it is otherwise clear that an allegation pertains to all defendants. *See Innovative Marketing*, 654 F. Supp. at 388 n.3 (rejecting defendant's contention that every allegation pertaining to all defendants in the complaint should be disregarded); *see also FTC v. Consumer Health Benefits*, No. 10-3551, 2012 WL 1890242, at *9, n. 14 (E.D.N.Y. May 23, 2012) (same).  Even in the absence of any common enterprise theory among the named defendants, courts have permitted group pleading allegations.  In *DeVry*, defendants similarly complained that the FTC's complaint "improperly lump[s]" three corporate defendants, depriving each of adequate notice.  *See DeVry*, 2016 WL 6821112, at *1, *7-8.  The court found group pleading permissible where there were three named defendants that "share an obvious connection with one another," each defendant was on notice of the claims asserted, and the allegation as to each defendant were plausible.  *Id.*, at *8 ("cases that have rejected group pleadings involved multiple claims and a large number of unrelated defendants").[12]

In *Sterling Metals*, the individual defendant complained that group allegations applicable to all defendants did not apply to him because he was not an owner, member, or even a corporate officer.  *Sterling Precious Metals,* 2013 WL 595713, *4 ("the crux of Marshall's argument is that

---

[12] The cases relied on by Dennis on this point are readily distinguishable.  *See McPherson v. Baltimore Police Dep't*, No. 20-0795, 2020 WL 6063479, *5 (D. Md. Oct. 14, 2020) (rejecting plaintiffs' "attempt to use group pleadings to extend their conspiracy allegations" to police officers who had no alleged involvement in the relevant parts of the investigation); *Green v Rosenberg & Assocs., LLC*, No. 17-732, 2018 WL 1183655, *2 (D. Md. Mar. 7, 2018) (finding complaint to be "largely devoid of details that shed light on the relationship of each Defendant to Green's underlying loan"); *U.S. ex rel. Owens v. First Kuwaiti*, 612 F.3d 724, 731 (4th Cir. 2010) (discussing scope of Rule 9(b) as applied to violations of the federal False Claims Act).

the Complaint's references to Defendants *collectively* does not fulfill the FTC's obligation to plead specific acts that Defendant Marshall committed, ordered, or ratified *individually*"). The court held that the individual defendant's argument "misse[d] the mark" because allegations pertaining collectively to all defendants "provide the context that allows this Court to understand and weigh the significance of the claims specifically relating to [him]." *Id.* (quoting *Innovative Marketing*, 654 F. Supp.2d at 388 n.3); *see also FTC v. Modern Technology Inc.*, No. 13-08257, (N.D. Ill. Feb. 5, 2014) (ECF No. 57) (rejecting defendant's argument that complaint does not specify "which defendant did which act" and finding that the complaint identifies actions "committed by all of the Defendants") (App. Tab C); *see also Lackey v. MWR Investigations*, No. 14–3341, 2015 WL 132613, *2 (D. Md. Jan. 8, 2015) (sustaining collective allegations on motion to dismiss challenge and noting that "a complaint against multiple defendants can be read as making the same allegation against each defendant individually").

## III. THE COMPLAINT STATES A PLAUSIBLE CLAIM FOR RELIEF AGAINST DENNIS UNDER SECTION 5 OF THE FTC ACT

Dennis argues or suggests that because he is *only* an employee, and not an "owner" or "executive" at RagingBull.com, he is somehow exempt from liability under the FTC Act. This is legally incorrect for two independent reasons. Regardless of Raging Bull's conduct in this case, Dennis is personally liable for his own direct misrepresentations to consumers. Second, even if Dennis lacks ownership or control over the Raging Bull enterprise, Dennis can be found individually liable for Raging Bull's violations of the FTC Act because Dennis directly participated in the deceptive practices at issue. Thus, taking as true the factual allegations and drawing all reasonable inferences therefrom in the FTC's favor, the Complaint states a plausible claim for relief against Dennis.

A.      **The Complaint Sufficiently Alleges Dennis' Direct Liability for His Own Misrepresentations Under Section 5 of the FTC Act**

Section 5 of the FTC Act empowers the FTC to "prevent *persons*, partnerships, or corporations" from using "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(2) (emphasis added). As stated, the statute applies directly and with equal force to individuals as it does to corporate wrongdoers violating the FTC Act. Thus, even if Raging Bull were not a party to this action, the Complaint has sufficiently alleged Dennis' personal liability under FTC Act because he has made (1) representations in connection with the sale and marketing of investment training services, (2) that are or were likely to mislead consumers, and (3) his representations were material. *See FTC v. Ross*, 897 F. Supp. 2d 369, 381 (D. Md. 2012); *see also FTC v. Windward Mktg. Ltd.*, No. 96-cv-615F, 1997 WL 33642380, *13 (N.D. Ga. Sept. 30, 1997) ("individual defendants are directly liable for their own violations of section 5 of the FTC Act"); *Loma Int'l Bus. Grp., Inc.*, 2013 WL 2455986, at *6 (individual defendants who told consumers they were authorized immigration service providers "personally violated [Section 5 of the FTC Act] by their own individual actions").[13]

Dennis himself uttered or conveyed directly to consumers, including through sales videos and webinars, representations about the level of earnings and trading profits that consumers are likely to attain following his trading strategies and trade alerts. *See, e.g.,* Compl., ¶¶ 23, 50-53, 56-57, 61, 65-66, 68-70. In addition to Dennis' express claims about the earnings potential for consumers using his strategies and trade alerts (*see, e.g.*, *id*., ¶ 53-54, 56, 65), Dennis also makes strongly implied claims about consumers' earnings potential by touting his own earnings and trading profits (from using the same system or program that he is now offering to consumers),

---

[13] As courts in this district have held, when "evaluating a tendency or capacity to deceive, it is appropriate to look not at the most sophisticated, but the least sophisticated consumer." *In re Sanctuary Belize*, 482 F. Supp. 3d at 433 (quoting *FTC v. Loma Int'l Bus. Grp., Inc.*, 2013 WL 2455986, at *5)).

thus conveying the misleading impression that these earnings are typical or easily attainable. *See, e.g.*, Compl., ¶¶ 57, 61, 71 ("Defendants advertise that anyone can use their services profitably because it is easy to follow the instructors' alerts and recommendations"); *FTC v. Five-Star Auto Club*, 97 F. Supp. 2d 502 (528 (S.D.N.Y. 2000) (finding it was "reasonable for consumers to have assumed that the promised rewards were achieved by the typical Five Star participant"); *FTC v. Febre*, No. 94-3625, 1996 WL 396117, *2 (N.D. Ill. July 3, 1996) ("it can be presumed that a consumer would reasonably believe that the statements of earnings potential represent typical or average earnings"); *FTC v. Figgie Int'l, Inc.*, 994 F. 2d 595, 604 (9th Cir. 1993 (finding no loophole that exempts defendants "who merely imply" their deceptive claims). These representations are misleading because Defendants (including Dennis) lack any evidence as to what the typical consumer is likely to earn using these services.  Compl., ¶ 81 (admitting that subscribers' trading results have not been tracked or verified); *FTC v. John Beck Amazing Profits*, 865 F. Supp. 2d 1052, 1067 (C.D. Cal. 2012) ("a representation is likely to mislead" where the "advertiser lacked a reasonable basis for its claims," meaning adequate substantiation); *FTC v. Direct Mktg. Concepts, Inc.*, 624 F.3d 1, 8 (1st Cir. 2010) ("[w]here the advertisers lack adequate substantiation evidence, they necessarily lack any reasonable basis for their claims"). Representations about earnings potential are also presumptively material.[14]

In *John Beck*, an analogous case involving deceptive earnings claims , a federal court found individual defendants John Beck, Jeff Paul, and John Alexander personally liable for violating Section 5, even though none of them were owners, executives or even principals of the main corporate defendant.  *John Beck*, 865 F. Supp. 2d at 1059, 1080.  Like Dennis, each of the

---

[14] "Misrepresentations concerning certain central characteristics of a product or service, such as anticipated income from a business opportunity, are material and 'likely to mislead consumers because such misrepresentations strike at the heart of a consumer's purchasing decision."  *See In Re Sanctuary Belize*, 482 F. Supp. 3d at 397.

"guru" defendants in *John Beck* held themselves out as "experts" that developed "wealth creation" products or systems, appeared in sales videos (or infomercials) featuring these products, and expressly claimed that purchasers of their systems easily could earn substantial amounts of money in a short period of time with little investment.[15]  *Id.*, at 1058-59, 1080-81. Like Dennis, one of the "guru" defendants in *John Beck* argued that he could not be held individually liable for his misrepresentations to consumers, because he had no ownership interest in the corporate defendants that developed the infomercials and lacked "management control" over the corporate enterprise.[16]  The district court rejected these arguments and entered summary judgment against the "guru" defendants, finding each of them liable for injunctive relief.[17]  *Id.*, at 1080-82.  The Ninth Circuit affirmed and found that "no reasonable jury could fail to find that defendant John Beck 'participated directly' in the acts in question."  *FTC v. John Beck Amazing Profits*, 644 Fed. Appx. 709, 710 (9th Cir. 2016) ("Beck concedes that he appeared in infomercials as the John Beck product's spokesman and that he wrote at least some of the materials sent to consumers, which were clearly misleading" and that he was "incapable of substantiating his representations").

---

[15] While Dennis and the other Raging Bull "gurus" purport to teach or provide lucrative stock and options trading strategies, methods or recommendations to subscribers (*see e.g.*, Compl., ¶¶ 31-34, 61), the "guru" defendants in *John Beck* purported to teach or provide real estate investment strategies (the "John Beck System" and "John Alexander System") or internet start-up strategies (the "Jeff Paul System").  *John Beck*, 865 F. Supp. 2d at 1058-61.

[16] Dennis appears to take a page out of John Beck's brief to the Ninth Circuit, which stated that Beck "had no ownership or control over the company that bore his name, he had no control over the sale of the products, he had no control over their marketing or advertisement, he had no control over the scripts used in the advertisements, he never saw any of the scripts in their entirety, he was only present for the filming of his parts of the infomercial, and he received only a small percentage of the proceeds from the infomercials as compensation."  *FTC v. John Beck Amazing Profits*, No. 12-56665, 2013 WL 793042, *27 (9th Cir. Feb. 19, 2013) (ECF No. 12) (appellant's brief).

[17] Each of the corporate defendants (John Beck Amazing Profits LLC, John Alexander LLC, Jeff Paul LLC, and Family Products LLC) that developed the infomercials, billed and processed the consumer payments, and oversaw the telemarketers, were founded, owned and controlled by two separate individual defendants, Hewitt and Gravink, who the court also found liable.  *Id.*, at 1080.

Simiarly, in *Burnlounge*, the Ninth Circuit upheld a district court's decision holding an individual participant in a pyramid scheme (DeBoer) directly liable under Section 5 for making misleading income claims to consumers, although he was not an executive, owner, or even an employee of the corporate enterprise.  *FTC v. Burnlounge*, 584 Fed. Appx. 315, 318-19 (9th Cir. 2014) (affirming the entry of a permanent injunction against DeBoer, who "was not an employee, officer, decision maker or shareholder of [Burnlounge]" but "gave presentations at some BurnLounge recruitment events [where] he made misleading income claims to consumers").  Thus, assuming the Complaint's allegations against Defendants (including Dennis) are true for purposes of this motion, the statutory language of the FTC Act and the caselaw clearly support a finding of personal liability against Dennis under Section 5.

### B.     The Complaint Sufficiently Alleges Dennis' Individual Liability for Raging Bull's Deceptive Practices

In addition to personal liability for their own violations, individual defendants may be liable for the corporate defendant's violations if the FTC demonstrates that (1) the corporate defendant violated the FTC Act; (2) the individual defendants participated directly in the wrongful acts or practices _or_ the individual defendants had authority to control the corporate defendants, and (3) individual defendants had or should have had knowledge of the deceptive practices.[18]  *FTC v. Ross*, 743 F.3d 886, 892 (4th Cir. 2014) (emphasis added); *John Beck*, 865 F. Supp.2d at 1080.

Dennis' motion does not dispute that the Complaint sufficiently alleges Raging Bull's violations of the FTC Act.  Instead, Dennis argues that because the Complaint does not allege

---

[18] Where the FTC is seeking only injunctive relief against an individual defendant and not restitution, courts have held that proof of "knowledge of the deceptive acts" is not necessary. *See, e.g., FTC v. Freecom Communications, Inc.*, 401 F.3d 1192, 1204-05 (10th Cir. 2005); *FTC v. Publishing Clearing House, Inc.*, 104 F.3d 1168, 1170 (9th Cir. 1997); *see also Ross*, 743 F.3d at 893 (adopting the test for individual liability articulated in *Freecom* and *Publishing Clearing House*).  In any event, the Complaint sufficiently pleads Dennis' knowledge of the deceptive conduct.  Compl., ¶¶ 92.

Dennis is an "owner, officer, or executive" of Raging Bull—and that he is "only" a trading instructor—the Complaint has not plausibly alleged a claim for individual liability against Dennis.  Dennis Mem., at 12.  Dennis' motion misconstrues the Complaint's allegations and misstates the law.

The Complaint's allegations make clear that, in addition to holding himself out as a "trading instructor," Dennis is also a promoter and salesman for the trading services he sells under the Raging Bull umbrella.  Compl. ¶¶ 14, 22 (Dennis "offers and promotes a number of widely advertised services" and "is actively involved in Raging Bull's marketing and operations").[19]  These alleged facts are sufficient to support a claim of individual liability against Dennis based on his direct participation.  In *Sanctuary Belize*, Judge Messitte denied a motion to dismiss filed by an individual defendant (Santos), who was not an alleged owner or principal of the corporate defendants.[20]  *In re Sanctuary Belize Litig.*, No. 18-cv-3309, 2019 WL 1934673 (D. Md. Apr. 3, 2019).  For purposes of direct participation, Judge Messitte found it sufficient that the complaint alleged that "Santos directly participates in marketing to consumers, personally making misrepresentations directly to consumers, including through various marketing videos." *In re Sanctuary Belize Litig.*, No. 18-cv-3309 (D. Md. Dec. 28, 2018) (ECF No. 114) ("SBE Amended Complaint") (App. Tab D), at ¶ 29.  Apart from this introductory paragraph, the amended complaint made no specific references to Santos and instead used group pleading allegations to describe the defendants' deceptive business scheme.  *See, e.g., id.*, at ¶¶ 43-109.

---

[19] As noted above, the Complaint also identifies several of the products or services that feature Dennis and that Dennis purports to deliver to subscribers—*e.g.*, Fast Five Trades, Sniper Report, and Trade with Kyle.  The Complaint also identifies the sales or promotional videos and webinars that Dennis personally appears in and narrates in order to promote and sell his services. *See supra*, at 11.

[20] The amended complaint in *Sanctuary Belize* names several other individual defendants who were the founders and de facto owners of the Sanctuary Belize enterprise.  *See* App. Tab D (SBE Amended Complaint), at ¶¶ 9, 10.

The Court held, "[w]hether or not, as Santos claims, there is insufficient evidence of his authority to control Sanctuary Belize's marketing efforts, *by appearing in videos promoting the development*, at a minimum there are plausible allegations that he 'participated directly' in the allegedly deceptive practices."[21] *Id.*, at *2 (emphasis added); *see also In re Sanctuary Belize Litig.*, No. 18-cv-3309, 2019 WL 4243079, *1 (D. Md. Sept. 9, 2019) (finding sufficient the FTC's allegations against another individual defendant, Chadwick, who served as the public face in many marketing materials, interacted with consumers on Sanctuary Belize's behalf, including participating in sales tours of Sanctuary Belize and conducting webinars).[22]

For decades, federal courts have imposed liability on individuals that directly participated in the deceptive sales practices, regardless of their ownership interest or operational control over the business affairs of the corporate defendant. In *Publishing Clearing House*, a sales employee defendant (Reed) also argued that he could not be held individually liable for defendant Publishing Clearing House's violations of the FTC Act, because he only worked as a "telephone solicitor for PCH" and "read the script prepared by PCH 'word for word,'" but otherwise "did not write the sales scripts" and "did not participate in the business affairs of PCH." *FTC v. Publishing Clearing House*, 106 F.3d 407, *1 (9th Cir. 1997) (unpublished opinion). The Ninth Circuit rejected the defendant's arguments and affirmed the district court's entry of summary judgment and injunctive relief against this defendant. *Id.*; *FTC v. Publishing Clearing House*,

---

[21] As the Court also noted, "[m]erely because there are other cases in which the FTC may have made allegations against a defendant more detailed than those it makes against Santos in the present case … it does not follow that the allegations it does make against Santos in the Amended Complaint fail to satisfy the plausibility standard." *In re Sanctuary Belize*, 2019 WL 1934673, at *2.

[22] Defendant Santos stipulated to a permanent injunction in January 2020. In August 2020, the Court conducted a bench trial against the other Sanctuary Belize defendants, and ultimately found defendant Chadwick liable. *In re Sanctuary Belize*, 482 F. Supp. 3d at (finding that Chadwick "was deeply enmeshed in SBE marketing and sales efforts" by "appearing in infomercials, starring in a sales webinar, and giving spirited presentations to tour groups in Belize," despite Chadwick's later attempts to "significantly trim his sails" and downplay his role before the court).

No. 94-623, 1995 WL 367901, *4, *10-11 (D. Nev. May 12, 1995) (imposing ban on telephone promotion against Reed and his co-defendants).

In *National Urological*, the district court entered summary judgment against a dietary supplement marketer as well as a medical doctor who promoted and endorsed the deceptive products while lacking substantiation. *FTC v. Nat'l Urological Group*, 645 F. Supp.2d 1167, 1207-08 (N.D. Ga. 2008). While the medical doctor was not an owner, executive or principal of the corporate defendant, the court found individual liability under Section 5 of the FTC Act based on undisputed facts that this doctor "helped develop the products, reviewed the substantiation regarding the ingredients in the products, and reviewed and edited the advertisements before they were disseminated," and even held himself out to consumers as "Chief of Staff" and "Medical Director."[23] *Id.*

In *John Beck*, the court also found individual liability against each of the "guru" defendants for the corporate actor's violations, because each "guru" participated in the deceptive acts. *See John Beck*, 865 F. Supp.2d at 1080 ("Unlike a paid spokesperson, there is no dispute that Beck, Paul and Alexander were the developers of the system that bear their names and gave the impression in the informercials that they were experts in using the system"). Similarly, Dennis' contention that he is not an owner, executive or principal of Raging Bull is irrelevant to the question of whether he directly participated in the deceptive acts.[24] *John Beck*, 644 Fed.

---

[23] One of the deceptive advertisements identified in the summary judgment record concerned a 2-page endorsement letter that was held out as having been written and signed by the medical doctor. *Nat'l Urological Group*, 645 F. Supp. 2d at 1191.

[24] Dennis also complains that the FTC has not alleged "how Mr. Dennis played a role that was in any way different from the other non-owner 'trading instructors' at Raging Bull." Dennis Mem., at 13. As explained here, Dennis is a proper defendant in this case because he actively and directly participated in the deceptive sales and marketing of Raging Bull's products. Also, the FTC need not name and sue every possible defendant involved in Raging Bull's deceptive enterprise. *See, e.g., FTC v. Ranney*, No. 04-1065 (MJW), at *15 (D. Colo. Jan. 11, 2005) (ECF No. 113) (App. Tab E) (the FTC "has no obligation to name every person that may be involved in

(*continued*)

Appx. at 709-10 (rejecting Beck's defense that he cannot be held individually liable because he was not an owner or executive); *see also Leanspa*, 920 F. Supp. 2d at 278 (rejecting the argument that "ownership of a corporation or operation of it for personal benefit" are necessary conditions to establish individual liability).

Dennis' motion appears to recognize that direct participation *can be*—but need not be—demonstrated through evidence that the "defendant developed or created, reviewed, altered and disseminated the deceptive marketing materials."  Dennis Mem., at 8 (*citing In re Sanctuary Belize*, 482 F Supp. at 398).  From this, however, Dennis leaps to the conclusion that because the Complaint does not expressly say that Dennis "drafted, reviewed, approved, commented on, or edited," any specific marketing document, this omission is somehow fatal to the Complaint. Dennis Mem., at 14.  However, even in the case cited by Dennis, the court did not require the FTC to specifically allege or identify any marketing material that an individual defendant reviewed, drafted, approved or edited, in order to survive a motion to dismiss.  *See, e.g., In re Sanctuary Belize*, 2019 WL 1934673 at *2 (finding allegations that the individual defendant narrated the sales videos or conducted the sales presentations to be sufficient).  Moreover, the Complaint here does identify specific marketing materials that Dennis narrated or presented directly to consumers.[25]  Compl., ¶¶ 52, 61.

Despite examples cited in the Complaint of Dennis appearing in and talking in sales videos and webinars for his services, Dennis contends that because he was "only" a trading instructor, it is not plausible to infer that he was also actively involved in Raging Bull's marketing.  Dennis Mem., at 12.  The Court need not credit these factual challenges at this stage

the alleged violations" and "even if Mr. Ranney is correct that others are responsible, that does not in any ways diminish his personal responsibility").

[25] It would be entirely plausible to infer (and without the need for further dot connecting) that a person who narrates a sales video or conducts sales presentations has at least "reviewed" if not "approved" the materials, before he "disseminated" them to consumers.

in the case.  *Leanspa*, 920 F. Supp. 2d at 278-79 (rejecting defendant's "plausibility" argument at the motion to dismiss stage that he could not have directly participated, because he was only a "division manager … acting in the normal course of the corporation's business").[26]

Because the Complaint sufficiently alleges Dennis' individual liability based on his direct participation, the Court need not assess the second prong—whether Dennis also had the "authority to control" the corporate defendant's practices.  That said, an individual defendant's status as an owner or a corporate officer is not a necessary condition to finding authority to control.[27]

Dennis also contends that the Complaint lacks allegations that he "had specific knowledge of the allegedly deceptive statements and practices."[28]  Dennis Mem., at 15.  This is incorrect.  The Fourth Circuit has held that "knowledge" may be established by sharing that the individual had "actual knowledge of the deceptive conduct, was recklessly indifferent to its deceptiveness, or had an awareness of a high probability of deceptiveness and intentionally avoided learning the truth."  *Ross*, 743 F.3d at 892.   The Complaint pleads sufficient facts to

---

[26] Dennis argues that this Court should disregard any allegations that Dennis "participated" in the deceptive acts as "conclusory," citing *Quincy Bioscience* and *Swish Marketing*.  Unlike Dennis, the individual defendants in those cases did not appear in and narrate deceptive sales videos.  Also, the Complaint here is much more robust and alleges far more details against Dennis than that he just "formulated, directed, controlled… or participated" in the deceptive acts and practices.  *See supra*, at 10-13.  Finally, in both cases, the court granted leave for the FTC to re-plead. *FTC v. Quincy Bioscience Holding*, 389 F. Supp. 3d 211, 221 (S.D.N.Y. 2019) (dismissing with leave to amend); *FTC v. Swish Marketing*, No. 09-03814, 2010 WL 653486, *11 (N.D. Cal. Feb. 22, 2010) (dismissing claim against individual defendant Benning, but granting FTC leave to amend); *FTC v. Benning*, No. 09-03814, 2010 WL 2605178, *5, *16-17 (N.D. Cal. Jun. 28, 2010) (upholding amended pleading and rejecting Benning's "factual arguments" that he did not read the emails he received at the motion to dismiss stage).

[27] *See, e.g., Leanspa,* 920 F. Supp. 2d at 278; *FTC v. Medicor*, 217 F. Supp. 2d 1048 (C.D. Cal. 2002) (rejecting defendant's argument that he lacked control because he was only a consultant and not an owner); *FTC v. Bay Area Bus. Council, Inc*., 423 F.3d 627, 637-38 (7th Cir. 2005) (rejecting argument that a salaried employee cannot have control over and knowledge of corporate affairs).

[28] As explained above, courts have held that the FTC does not need to plead and prove defendant's knowledge where it is only seeking injunctive relief.  *See supra*, at note 18.

show that Dennis knew or should have known of the deceptive practices.  The Complaint also specifically alleges that "Individual Defendants are aware of consumer complaints," "that consumers have complained to … Raging Bull instructors, including the Individual Defendants, by way of email, chat rooms, social media, and messaging services," and describes the kinds of complaints that Dennis saw and received (e.g., "consumers were losing money," "consumers could not understand or implement strategies from the purported educational materials," and "the alerts were not working for consumers").  Compl., ¶ 92.  Dennis' demand for greater specificity is unwarranted.  Even if Rule 9(b) applied here—which it does not—the Complaint need not specify the time, place and content of every consumer complaint that Dennis ever received.  *See Harrison*, 176 F.3d at 784 (defendant's knowledge or scienter can be pled generally).

The Complaint also pleads other facts that would be probative of Dennis' knowledge, including that Dennis made the deceptive statements in his sales videos and webinars.  *See, e.g.*, Compl., ¶¶ 52, 61, 83-84; *see FTC v. Transnet*, 506 F. Supp. 2d 1247, 1271 (S.D. Fla. 2007) ("personal participation underscores knowledge" as does "receipt of consumer complaints").  Even absent any allegations of consumer complaints, Judge Messitte held that, at the motion to dismiss stage, "it would clearly be plausible to infer" that an individual defendant that directly participated in the deceptive acts "knew or should have known" of the corporate defendants' deceptive marketing practices.[29]  *In re Sanctuary Belize*, 2019 WL 1934673, at *3; *see also John Beck*, 865 F. Supp. 2d at 1080-81 (finding that "these 'gurus' participated directly in the advertising of the deceptive products [sic]" and were the "creators" or "developers of the systems

---

[29] As the court said:  "if it is determined that Santos was not aware of the state of affairs at Sanctuary Belize while he was actively promoting the development through marketing videos or through his responsibilities at [the corporate defendants], then the FTC could plausibly claim that Santos was recklessly indifferent to the truthfulness of the marketing claims he made."  *In re Sanctuary Belize*, 2019 WL 1934673, at *3.

that bear their names," and thus "at least were recklessly indifferent to the truth or falsity of the infomercials").

### C.    Dennis' Purported Defenses Are Groundless and Improper for Adjudication at This Stage

Dennis argues that any statements in the Complaint attributable to him are "non-deceptive" because they are true; or if not true, then mere "puffery."  Dennis's motion purports to identify "four" statements directly attributable to him (although there are more).  Dennis then argues that three of these statements (appearing in paragraphs 14, 52 and 61) cannot be deceptive because they relate to Dennis' own purported success as a trader.  Dennis Mem., at 10.  The problem here is that Dennis reads these statements divorced from the context of the overall advertisement or sales videos where these statements were made, and thus fails to discern the overall net impression conveyed to consumers.  As courts have held, even if there are statements in an ad that are literally true, the overall net impression can still be false or misleading, and therefore deceptive.  *See, e.g., FTC v. Stefanchik*, No. 04-1852, 2007 WL 1058579, *6 (W.D. Wash. Apr. 3, 2007) (defendants' argument that all of Stefanchik's representations "are based on his own success" and use of disclaimers such as "these results are not typical" do not overcome the reasonable consumer's net impression that they can make substantial income in a short amount of time); *John Beck*, 865 F. Supp. 2d at 1066 ("[a]dvertisements as a whole may be completely misleading although every sentence separately considered is literally true" because "things are omitted that should be said, or because the advertisements are composed … in such a way as to mislead")[30]; *P. Lorillard Co. v. FTC*, 186 F.2d 52, 58 (4th Cir. 1950) (when "determining whether or not advertising is false or misleading within the meaning of the statute,

---

[30] In *John Beck*, the district court determined (on summary judgment) that the "infomercials' net impression—that a typical consumer can earn fast cash with no financial investment by purchasing and using the [guru's] system—is false," and did so after having "viewed the infomercial and considered all admissible evidence."  865 F. Supp. 2d at 1072.

regard must be had, not to fine spun distinctions and arguments that may be made in excuse, but to the effect which it might reasonably be expected to have upon the general public").

Reading the statements in the context of the Complaint makes clear why the net impression conveyed through these statements is false or misleading.  For example, paragraph 52 (citing Dennis' statement that he made "$9,100 per day") provides an example of an advertisement (or sales video) that "instructors" such as Dennis appeared in, in which they touted their substantial but atypical trading returns *and* conveyed the net impression that consumers who purchase these services are also likely to generate profitable trades and market beating returns.  *See* Compl., ¶¶ 50-51.  Similarly, paragraph 61 identifies a sales video that Dennis narrated, in which he is sharing examples of trades that generated several hundred percent each. *Id*., ¶ 61.  The surrounding paragraphs of the Complaint make clear that this is one of several representative examples of earnings claims that Defendants such as Dennis used to convey the net impression that "consumers can make substantial, market-beating returns by following Defendants' purported trade strategies or by following Defendants' specific trade recommendations and alerts."  *Id*., ¶ 53-63.  Dennis now tries to inoculate these express statements by offering an interpretation divorced from the statement's context.  This is an incorrect approach to evaluating these statements, and does not warrant dismissal of the Complaint.  *DeVry*, 2016 WL 6821112, *5 (denying motion to dismiss where defendants' advertisements "at least plausibly create[d]" a misleading impression and holding that "whether Defendants' advertisements make implicit misleading representations is an issue for the trier of fact").

Dennis also focuses on select statements taken from an ad that Defendants circulated to drum up attendance at a sales webinar that Dennis presented ("Trade with Kyle").  Dennis seems

to argue that because certain statements from this initial ad are non-actionable puffery, the entire sales campaign (including the sales webinar) must somehow be free of misrepresentations. But this is not the law. The "fact that puffery is present cannot serve as a shield for the advertisements' deceptive, factual representations," where the "combination of this puffery with the concrete, factual statements and phrases that also comprise the advertisements results in the claims highlighted in the complaint." *Nat'l Urological Grp.*, 645 F. Supp. 2d at 1206; *FTC v. Trudeau*, 579 F.3d 754, 766 (7th Cir. 2009) ("even if we assume that part of Trudeau's pitch was mere puffery, the infomercials are still loaded with other statements that are patently false"). Moreover, the FTC cited this ad in the Complaint to provide context and illustrate the workings of a campaign that actively sought to exploit the COVID-19 pandemic. Dennis ignores the Complaint's reference to an ad in this same paragraph where Dennis claimed he was "able to rack up nearly $500K in profits by trading stocks related to the COVID-19 pandemic" (Compl., ¶ 57) and found a "hidden bull market," or the Complaint's reference to an ad in the preceding paragraph in which Dennis' Sniper Report is claimed to be "strategically developed to only deliver high probable [sic] trades with the power to make 100%, 200%, 300% return (sic) on each trade." Compl., ¶ 56. In short, Dennis' motion provides no basis for dismissal of the FTC's claim, at the pleading stage, based on his bare assertion of puffery.[31]

---

[31] Dennis relies on the court's holding in *Sanctuary Belize*, but even there, the court weighed the evidence and determined whether puffery applied to certain claims *following* discovery and a bench trial. *In re Sanctuary Belize*, 482 F. Supp. 3d at 422; *see also Dunn v. Borta*, 369 F.3d 421 (4th Cir. 2004) (reversing district court's dismissal of a securities fraud claim based on puffery and finding that the complaint identified specific statements that could be proven true or false). Moreover, the claims at issue in *Sanctuary Belize* are sufficiently distinguishable from the alleged earnings claims attributable to Dennis and the Raging Bull Defendants in the Complaint. *In re Sanctuary Belize*, 482 F. Supp. 3d at 422 (finding that the puffery statements lacked the specificity normally required in real estate transactions, such as details about the type of lot, the location of the lot, or the time period of the investment).

**IV.    THE FTC'S RESPONSE TO DENNIS DEFENDANTS' MOTION TO DISMISS THE WINSTON ENTITIES AND COUNT III AGAINST DENNIS**

The FTC has elected to file a notice of voluntary dismissal (without prejudice) of defendants Winston Corp. and Winston Research Inc.  ECF No. 234.  While the FTC has evidence establishing that the Winston Entities operated as a shell for Dennis, had no employees or owners other than Dennis, had no other clients or customers other than Raging Bull, had no independent business purpose other than serving as a conduit for Dennis to receive his commissions from Raging Bull, and operated as part of the Raging Bull common enterprise during the relevant time period, the FTC also understands that Dennis has abandoned the use of these entities and all assets previously held in the name of the Winston Entities have been transferred to Dennis.  Furthermore, the FTC no longer has the ability to recover those assets as equitable monetary relief under Section 13(b) of the FTC Act, due to the Supreme Court's decision in *AMG*.  Therefore, the FTC has decided to voluntarily dismiss the Winston Entities in the interest of conserving the resources of the agency, the Court and the parties involved.

Further, the FTC does not oppose the present motion to dismiss Count III (ROSCA) against the Dennis Defendants, but requests that the Court defer its ruling on this motion until the FTC has filed an amended pleading, which it hopes to do by June 7.  By proposing to voluntarily withdraw this count as to Dennis from its amended pleading, the FTC hopes to narrow the critical issues going forward in this litigation as they specifically pertain to Dennis—*i.e.*, his liability under Section 5 of the FTC Act for his deceptive earnings representations and the need for appropriate permanent injunctive relief.  Because Rule 41(a) does not provide a mechanism to voluntarily dismiss this count against Dennis, the FTC will need to do so by amending the complaint.  *See, e.g., Iraheta v. United of Omaha Life Ins. Co.*, 353 F. Supp. 2d 592, 595–96 (D. Md. 2005) (explaining that "the Fourth Circuit has indicated that Fed. R. Civ. P. 15 is the

technically proper rule under which to consider a plaintiff's request to drop some, but not all, of the claims asserted in an action").

## V.     THE FTC'S RESPONSE TO DEFENDANTS' MOTION TO STRIKE ALL MONETARY RELIEF

For the reasons described above, to the extent the Dennis Defendants seek to have the FTC withdraw its claim for monetary relief against the Dennis Defendants, either under Section 13(b) or Section 19, the FTC does not oppose that request.  However, the FTC requests that the Court defer ruling on the Dennis Defendants' motion to strike because, by way of amendment, the FTC will be removing its monetary claim under Section 13(b) as to all Defendants and its monetary claim against the Dennis Defendants under Section 19.  What the Dennis Defendants seek to accomplish here—dismissal or withdrawal of FTC's monetary claims against one set of defendants in the case—is more appropriately accomplished through an amended pleading than through a motion to strike.[32]  The FTC cannot simply join the Dennis Defendants' motion to strike because, as currently styled, it seeks to strike any claim for monetary relief from the Complaint, even though the motion provides no basis or argument to strike the monetary claims against the Raging Bull Defendants under Section 19.[33]

---

[32] Under Rule 12(f), a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter."  Fed. R. Civ. P. 12(f).  As the rule's language makes clear, "it is neither an authorized nor a proper way to procure the dismissal of all or part of a complaint.  Wright & Miller, 5C Fed. Prac. & Proc. Civ. § 1380 (3d ed. Apr. 2021); *see also Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (finding that federal rules do not authorize the dismissal of a claim for damages, even if precluded by law, under Rule 12(f) and that such request is better suited on a motion for summary judgment); *Thomas-Byass v. Michael Kors Stores (California), Inc.*, No. 15-369, 2015 WL 13756100, *2-3 (C.D. Cal. Sept. 16, 2015) (rejecting motion to strike claim for disgorgement as an improper use of Rule 12(f)).

[33] Confusingly, while Dennis Defendants' motion is styled as a motion to strike any monetary claim, presumably against all Defendants (ECF No. 225), Dennis Defendants' memorandum of law only sets forth arguments for striking the monetary claim brought under Section 13(b) of the FTC Act.  Dennis Mem., at 21-25.

31

## **CONCLUSION**

For the foregoing reasons, the Court should deny the Dennis Defendants' motion to dismiss claims against Dennis for violations of Section 5 of the FTC Act, and briefly defer or abstain ruling on the remaining parts of the Dennis Defendants' motion to dismiss and to strike, as the FTC will soon seek leave to file an Amended Complaint that will address those issues.

<div style="margin-left: 40%;">

Respectfully submitted,

</div>

Dated:  May 18, 2021

<div style="margin-left: 40%;">

 /s/  Sung W. Kim
Colleen Robbins (D. Md. Temp. Bar No. 92567)
Sung W. Kim (D. Md. Temp. Bar No. 814609)
Gordon E. Sommers (D. Md. Temp. Bar No. 814431)
Laura C. Basford (D. Md. Temp. Bar No. 814888)
Federal Trade Commission
600 Pennsylvania Ave., NW
Mailstop CC-8528
Washington, DC 20580
(202) 326-2548; crobbins@ftc.gov
(202) 326-2211; skim6@ftc.gov
(202) 326-2504; gsommers@ftc.gov
(202) 326-2343; lbasford@ftc.gov
(202) 326-3395 (Facsimile)

*Attorneys for Plaintiff*
*Federal Trade Commission*

</div>

**CERTIFICATE OF SERVICE**

I hereby certify that on May 18, 2021, I electronically filed the foregoing with the Clerk of the Court using CM/ECF which will send a notice of electronic filing to counsel of record for Defendants.  A paper copy of this filing is also being sent via FedEx to the Clerk of the Court.


                */s/* Sung W. Kim
                Sung W. Kim