**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| FEDERAL TRADE COMMISSION | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * Case No. 1:20-cv-03538 GLR |
| | * |
| RAGING BULL, LLC & AFFILIATED | * |
| INDIVIDUALS & ENTITIES. | * |
| | * |
| Defendants. | * |
| | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**TEMPORARY RECEIVER PETER E. KEITH'S RESPONSE
TO DEFENDANTS' OPPOSITION TO HIS
<u>FIRST INTERIM FEE APPLICATION</u>**

Temporary Receiver Peter E. Keith respectfully submits this response to Defendants RagingBull.com LLC's Opposition to Temporary Receiver's First Interim Fee Application dated July 1, 2021 [ECF 254]. Raging Bull recognizes that all but $30,584.50 of the Temporary Receiver's requested fees are valid and appropriate. Raging Bull seeks this reduction for two reasons, neither of which is appropriate: that the Temporary Receiver collaborated with Raging Bull to identify and pay critical expenses ($21,104.00), and that Raging Bull disagrees with the conclusion reached by the Temporary Receiver's forensic accounting expert ($9,480.50). The Temporary Receiver respectfully requests an order that, for good cause shown, Raging Bull pay all fees and costs sought in the first interim fee application.

749669

I.     **The Temporary Receiver assumed substantial risk to serve the Court and the public.**

The United States District Court for the District of Maryland relies on Court-appointed temporary and permanent receivers to effectuate civil law enforcement temporary restraining orders.  Some of the most complex and challenging commercial matters brought before the Court, including wide-ranging business fraud and racketeering criminal enterprises, have been subject to temporary receiverships.  Temporary Receiverships serve critical public needs by supporting the Court's even-handed, informed application of law to facts, while preserving the interests of the parties and the public, pending decision on motion for preliminary injunction.

The Temporary Receiver implemented this temporary receivership to carry out the Court's orders impartially and diligently.  Mr. Keith sought consensus among the parties when possible, to reconcile and preserve all parties' interests and allow the parties to resolve their differences within the framework of the December 8, 2020 Temporary Restraining Order with Asset Freeze & Appointment of a Temporary Receiver [ECF 21] § XXVIII, at 33.  Temporary Receiver Peter E. Keith has served the Court and the public in this capacity on several occasions.

Mr. Keith, his law firm, and his engaged consultants assumed substantial risk, as is the case in many temporary receiverships:

- **Insufficient assets.**  Mr. Keith, his law firm, and his engaged consultants bear the risk that the receivership estate will not contain sufficient assets to compensate him for his work; despite this risk, Mr. Keith immediately returned all assets of Raging Bull to Raging Bull upon termination of the temporary receivership, while other creditors retained amounts sufficient to pay contested obligations;

- **Advancing fees and costs.**  Mr. Keith, his firm, and his engaged consultants advance all costs and fees; time and expenses at issue in the present fee application were incurred seven and eight months ago, in December 2020 and January 2021, so Mr. Keith, his firm, and his consultants have advanced substantial funds for half a year;

- **Capped rates.**  Mr. Keith capped his and his counsel's fees at their hourly rates established at the outset of the engagement, foregoing all subsequent increases; in other cases in which Mr. Keith has served the Court as receiver, this has led to fixed fees continuing over periods extending as long as 6 years;

- **Preparation time.**  Mr. Keith, his law firm, and his engaged consultants seek no compensation for time and expenses incurred prior to appointment, in preparation for carrying out the terms of the receivership;

- **Fee application preparation.**  Mr. Keith, his law firm, and his engaged consultants do not seek compensation for the significant time expended in preparing and defending his interim or final fee applications;

- **Reduced rates.**  Mr. Keith set his fee at a level more than 20% below his regular hourly rate;

- **Discounted rates.**  Mr. Keith's forensic accountants provided a 10% discount on all fees;

- **Written off time.**  Mr. Keith has written off and does not seek to recover more than $93,000 in fees for time incurred, including in the preparation of this response;

- **COVID-19 infection risk.**  Mr. Keith and his lawyers and paraprofessionals assumed personal risk during the height of the COVID-19 pandemic by entering on a near-daily basis an office space in which few COVID-19 protocols were followed by Raging Bull staff, including mask wearing and physical distancing, before COVID-19 vaccinations were available; no individual Defendant sought to enter the premises, nor did its outside counsel or retained consultants;

- **COVID-19 expenditures.**  Mr. Keith's law firm and accounting consultant faced substantial financial challenges during the pandemic, including incurring significant costs for unexpected measures relating to remote work, pandemic safety, and government COVID-19 protocol adherence.  The Temporary Receiver has not sought compensation for any of these COVID-19 increased costs.

Mr. Keith, his law firm, and his engaged consultants willingly undertook these risks for the opportunity to serve the Court and the public.

## II.    The Temporary Receiver's work was necessitated by the terms of the Temporary Restraining Order and extension of the preliminary injunction hearing by more than three months.

The Temporary Receiver's work in carrying out the terms of the Temporary Restraining Order was significant, as a result of the scope of the Temporary Restraining Order and the extensions sought by the parties, including Raging Bull.

The Temporary Restraining Order imposed significant obligations.  In sum, the Temporary Receiver was ordered to assume control over the operations of Raging Bull, including business operations, human resources, vendor relationships, customer relationships, communications with government agencies, and significantly more.  The Temporary Receiver worked closely with Raging Bull and its counsel to minimize all effects on Raging Bull and preserve its business and business relationships to the greatest extent possible.  In this way, the Temporary Receiver sought to preserve the status quo and receivership estate assets to the greatest extent possible, pending the Court's ruling on the Federal Trade Commission's motion for preliminary injunction.

### A.    Delays of the preliminary injunction hearing.

The Temporary Restraining Order scheduled a hearing on the Federal Trade Commission's motion for preliminary injunction for ten days later, December 18, 2020.  December 8, 2020 Temporary Restraining Order with Asset Freeze & Appointment of a Temporary Receiver [ECF 21] § XXVIII, at 33.  Following that, the parties and the Court extended the hearing by more than three months.  At the

request of Raging Bull and the Federal Trade Commission, and by order of the

Court, the temporary restraining order was extended three times:

- **First three-week extension.**  On December 13, 2020, Raging Bull requested an extension to "either December 31, January 5, 2021, or December 29, 2020, "[g]iven the breadth of the TRO and its impact on the Defendants."  December 13, 2021 Motion to Postpone and Reschedule the Preliminary Injunction Briefing Schedule and Hearing Dates [ECF 44 at 1 & 2].

  - The Court granted this request and extended the preliminary injunction hearing to January 13, 2021, with the Temporary Restraining Order to remain in full force and effect through the hearing.  December 14, 2020 Order [ECF 50].

- **Second three week extension.**  On December 29, the Federal Trade Commission, with the consent of Raging Bull, sought to accommodate defendants by requesting an extension to February 5, 2021.  December 29, 2020 Consent Motion to Extend Duration of Temporary Restraining Order [ECF 100].  The motion asserted that "[g]ood cause exists to extend the TRO and reschedule the preliminary injunction hearing and briefing schedule.  Due to the volume of materials filed in this action, defendants have requested additional time to familiarize themselves with the matter and prepare for the preliminary injunction hearing.  All parties agree that the TRO should remain in effect until the preliminary injunction hearing takes place."  *Id.* at 2.

  - The Court granted this request and extended the preliminary injunction hearing to February 5, 2021, with the Temporary Restraining Order to remain in full force and effect through the hearing.  December 30, 2020 Order [ECF 104].

- **Business plan extension.**  On February 3, 2021, the Court held a hearing regarding the preliminary injunction hearing, and the parties agreed to postpone the hearing, pending Raging Bull's submission of a proposed business plan *See* February 4, 2021 Order [ECF 165].  The Court ordered that the Temporary Restraining Order would remain in full force and effect through the hearing.  *Id.*

- **March 19, 2021 hearing.**  Following submission of a proposed business plan and responses by the Temporary Receiver and the Federal Trade Commission, six weeks later, on March 19, 2021, the Court held a hearing on the Federal Trade Commission's motion for

preliminary injunction.  *See* February 4, 2021 Paperless Notice [ECF 211].

- **March 26, 2021 ruling.**  On March 26, 2021, the Court entered an order denying the Federal Trade Commission's motion for preliminary injunction.  March 26, 2021 Order [ECF 218].  The order terminated the temporary receivership and required an orderly transition of management responsibilities to Raging Bull.

At no time did the Temporary Receiver seek an extension of the Temporary Restraining Order or the date for the preliminary injunction hearing.

The Court also declined Raging Bull's requests to modify the Temporary Restraining Order's obligations on the Temporary Receiver.  On December 10, 2020 for instance, Raging Bull moved to stay enforcement of the Temporary Restraining Order or to modify the terms of the receivership.  December 10, 2020 Motion to Stay Enforcement or Modify Temporary Restraining Order [ECF 28].  The Court denied this motion, ordering that the Temporary Restraining Order remain in full force and effect, including all obligations of the Temporary Receiver.  December 15, 2020 Order [ECF 28].

The Court thus repeatedly reinforced and reissued the obligations of the Temporary Restraining Order, including the obligations of the Temporary Receiver. Had Raging Bull proceeded to a preliminary injunction hearing earlier, much of the costs attributable to the receivership would not have been incurred.

## II.   The Temporary Receiver's work to reach compromise on the critical expenses served the Court and the parties.

The Temporary Receiver worked hard with Raging Bull and its counsel to identify and preserve the business systems identified by Raging Bull as critical expenses during the pendency of the temporary restraining order.  As Raging Bull

recognizes, the Temporary Receiver worked closely with Raging Bull over a period of weeks to determine the critical expenses Raging Bull determined would be necessary to preserve key business programs. As Raging Bull understood, the Temporary Receiver also conferred with the Federal Trade Commission regarding these expenses.

Throughout its discussions with Raging Bull, the Temporary Receiver urged Raging Bull to seek relief from the Court if it sought to have the Temporary Receiver pay substantial employee, vendor, and other business expenses to keep the business operating. Raging Bull declined to do so. The Temporary Receiver was clear that, while he preferred to present an agreed position to the Court, at no time would he stand in the way of any party's seeking relief directly from the Court regarding the payment of expenses. Had Raging Bull sought to keep its operations in place, it could have sought this relief from the Court. Raging Bull did not do so.

Furthermore, Raging Bull unilaterally decided to lay off nearly all staff. The Temporary Receiver did not make this decision, nor did the Temporary Receiver participate in this decision. Rather, Raging Bull, following consultation with its counsel, informed the Temporary Receiver after-the-fact that it had held a company-wide teleconference and laid off all employees. While the Temporary Receiver determined that he was not authorized to fund continued full operations, he sought the payment of substantial employee salaries and repeatedly told Raging Bull that it could apply for leave to fund business operations or legal defense. For

7

instance, counsel to the Temporary Receiver wrote to Raging Bull and its counsel on

December 30, 2021:

> We understand, of course, the hardship that loss of employment imposes. We
> hope that some certainty on payment of salaries may assist present and former
> employees with planning. Review of defendants' financial disclosures and the
> company's finances demonstrate that substantial assets have been transferred to
> the individual defendants and Raging Bull staff members. The individual
> defendants may, of course, move the Court for leave to apply those assets for
> legal defense or employment of any individuals.

Raging Bull decided not to seek release of its funds to cover employment or

business expenses not covered by the Temporary Receiver.  Instead, it sought to

have the Court require the Temporary Receiver to fund its litigation defense.

Defendants' January 5, 2021 Emergency Motion for Clarification of the Temporary

Restraining Order, or in the Alternative to Increase Funds Available to Individual

Defendants to Pay Defense Costs [ECF 107].  The Court ruled that the Temporary

Receiver was not required to pay Raging Bull's defense costs, and it released certain

funds for Raging Bull to do so itself directly: "At this time, the Court finds that

release of receivership funds for the payment of defense costs is not required by the

terms of the TRO. Accordingly, this request will be denied."  January 25, 2021

Order [ECF 138].

Over the Temporary Receiver's weeks of discussion with the parties, Raging

Bull agreed to trim its initial list of "critical expenses" substantially.  During this

time, Raging Bull agreed that a number of expenses it initially sought were not

critical.  Within that group was Zendesk, which Raging Bull now faults the

Temporary Receiver for not paying.  In fact, Raging Bull did not seek to use

Zendesk itself, nor did it cover the minimal costs that would have been required to

maintain access (certainly well less than $10,000 during the pendency of the Temporary Receivership). At no time did Raging Bull inform the Temporary Receiver that failure to pay Zendesk would lead to the adverse consequences described in Raging Bull's present opposition. The Temporary Receiver did not limit Raging Bull's access to Zendesk or any other platform. In sum, had Raging Bull believed Zendesk was critical to its future operations, it could have continued Zendesk on the substantial list of critical expenses to be paid by the Temporary Receiver (rather than removing it), or it could have paid the amount itself. Raging Bull, not the Temporary Receiver, made the decision to remove Zendesk from the list of critical expenses.

III. **Raging Bull takes issue with the conclusion reached by Raymond J. Peroutka, Jr., a highly respected forensic accountant who has served the Court with distinction in numerous receiverships.**

Raging Bull seeks to avoid paying for necessary work performed by the Temporary Receiver's forensic accounting consultant, Raymond J. Peroutka, Jr., because it takes issue with his conclusions. The Court neither adopted nor rejected the testimony of any expert. The Court did not disqualify Mr. Peroutka as an expert or otherwise take issue with his opinion. Raging Bull contests not Mr. Peroutka's credentials, his qualification to form an opinion to a reasonable degree of accounting certainty, or his analysis, but only his conclusion. In support, Raging Bull points to the contrary conclusions of its own hired expert. A party's disagreement with the opinion of a qualified expert is no basis for a reduction in a fee award.

In any event, the Court did not adopt the analysis Raging Bull now pushes—that of Raging Bull's own hired consultant.  The Court received both experts' opinions and did not adopt, reject, validate, or invalidate either.  Were a difference of expert opinion to be the basis for nonpayment of fees, present and future receivers and bankruptcy trustees would be hard-pressed to engage qualified forensic accountants and thus to serve the Courts that appointed them.

Mr. Peroutka has had a distinguished career as a forensic accountant who has served many courts, including the United States District Court for the District of Maryland.  A more highly qualified forensic accounting expert for this engagement would be difficult to find.

Mr. Peroutka has more than 30 years of consulting and management experience in the public accounting, banking, and professional services industries. He has focused on delivering quantitative and analytical support services to the legal community in the areas of commercial damages, litigation support, valuation, receivership, bankruptcy, construction, and surety claims.  He has provided analytical support and damage assessment for claims including alleged violations of federal and state statutes, breach of contract, and tort-based claims arising from receiverships, bankruptcy, shareholder disputes, and the negligence of directors, officers, and professionals.  These all involve identification and analysis of facts relevant to accounting determinations, application of the facts to appropriate damage models, and support for conclusions through reports, deposition, and trial testimony.

Mr. Peroutka has been appointed by state and federal courts as receiver for and consultant to numerous insolvent entities, including fraudulent enterprises, securities brokerage firms, insurance and surety companies, private foundations, and real estate development ventures.  In each of these situations, Mr. Peroutka has analyzed and assisted in the control of the assets of the insolvent entity, investigated prior business and investment practices, evaluated and pursued potential recoveries against responsible entities, managed the distribution of assets to victims, reported findings to courts and provided expert witness testimony.

In addition, Mr. Peroutka has provided forensic accounting and anti-fraud expert witness testimony services to the Department of Justice and state and local governmental agencies, including the United States Attorney for the District of Maryland and the Attorney General of Maryland.  He has served as accountant to Chapter 11 bankruptcy creditor committees and United States Bankruptcy Trustees and acted as consultant to debtors in possession and others in need of debt restructuring.

Among Mr. Peroutka's broad experience as receiver, consultant to receivers, and forensic consulting expert engaged by government agencies are the following representative engagements:

- Receiver for manufacturers relating to compliance with industry-wide settlement of claims, appointed by the Circuit Court of Maryland;

- Receiver for state licensed provider of services to developmentally challenged individuals, appointed by the Circuit Court of Maryland;

- Receiver for fraudulent securities issuer, appointed by the Circuit Court of Maryland for Prince George's County;

- Forensic accounting consultant to the receiver of a nationwide fraudulent mortgage relief scheme, appointed by the United States District Court for the District of Maryland;

- Forensic accounting consultant to the receiver of a nationwide fraudulent office supplies scheme, identified by the then-Chief Judge as the largest fraud case brought before the United States District Court for the District of Maryland;

- Primary witness for United States Department of Justice in its prosecution of the chief executive of mortgage banking company convicted of $3 billion fraud.

Mr. Peroutka has been accepted as a testifying forensic accounting expert in state and federal courts across the country.  No court ever has rejected Mr. Peroutka's testimony as a testifying expert.

Mr. Peroutka is highly qualified, and disagreement with his conclusions is no basis for nonpayment of his services to the Temporary Receiver and the Court.

On a technical point, Raging Bull overstates the amounts Mr. Peroutka invoiced to the Temporary Receiver, by declining to include the 10% discount Mr. Peroutka voluntarily provided.  This leads to an overstatement of the reduction Raging Bull seeks of $402.55.

## CONCLUSION

The Temporary Receiver respectfully requests that the Court grant his First Interim Application for Fees & Expenses [ECF 183], and issue the attached order, requiring Raging Bull to pay the amounts requested, in full.  The Temporary Receiver attaches a new proposed order, as the initial order contemplated that the Temporary Receiver was in possession of funds with which to satisfy a Court order. The Temporary Receiver subsequently returned all uncontested funds to Raging

Bull.  The revised proposed order reflects that Raging Bull will pay the amounts subject to Court order.

The Temporary Receiver remains available to the Court to address any matters raised in its fee applications or otherwise in this case.

Respectfully submitted,

**GALLAGHER EVELIUS & JONES LLP**

_____/s/_____

Mark S. Saudek (Fed. Bar #23963)
218 North Charles Street, Suite 400
Baltimore MD 21201
phone (410) 727-7702
fax (410) 468-2786
msaudek@gejlaw.com
mcasey@gejlaw.com

_Counsel to Temporary Receiver_
_Peter E. Keith_

Date: July 22, 2021

749669