**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cv-03538 – GLR |
| | ) | |
| RAGINGBULL.COM, LLC f/k/a | ) | |
| LIGHTHOUSE MEDIA LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## NOTICE OF FILING OF MONITOR'S THIRD REPORT

Pursuant to this Court's Order dated March 16, 2021, the independent Monitor, Affiliated

Monitors, Inc., by and though its undersigned counsel, files the Monitor's Third Report, which is

attached hereto as **Exhibit A.**

Dated:  August 24, 2021

Respectfully submitted,

Affiliated Monitors Inc.

By: /s/ *David C. Shonka*
David C. Shonka (Bar ID# 21871)
Redgrave LLP
601 Pennsylvania Ave., NW
Washington, DC  20004
Tel: (202) 384-6348
Email: dshonka@redgravellp.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 24th day of August 2021 I have served a true and

accurate copy of the foregoing Notice of Files of Monitor's Third Report on all parties through

the ECF System and by mailing a paper copy to:

Clerk's Office,
Attn: Judge Russell
United States District Court
101 W. Lombard St., 4th Floor
Baltimore, MD 21201

*/s/ David C. Shonka*

# EXHIBIT A



*Federal Trade Commission v. RagingBull.com, et al.*

**Case No. 1:20-cv-03538-GLR (D. MD)**

**MONITOR'S THIRD REPORT**

August 24, 2021

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................................1

II.  BACKGROUND ...................................................................................................2

III. MONITOR'S ACTIVITIES SINCE THE SECOND REPORT AND THE COURT'S
     JUNE 30, 2021 ORDER ........................................................................................3

IV.  CONDITIONS SUBJECT TO MONITORING UNDER THE ORDER ...........................6

     A.  Prohibited Business Activities .....................................................................6

     B.  Simple Mechanism to Cancel Negative Option Feature ...............................11

     C.  Compliance Monitoring Over Defendants ..................................................15

     D.  Raging Bull Business Plan .........................................................................16

     E.  Provision of Information to the Monitor .....................................................16

     F.  Cooperation and Non-Interference with the Monitor ...................................17

     G.  Escrow Account ........................................................................................18

     H.  Refund and Cancellation Requests ............................................................18

V.   CONDITIONS SUBJECT TO CONTINUED MONITORING UNDER THE
     BUSINESS PLAN – PHASE 1 AND NEW MONITORING UNDER THE BUSINESS
     PLAN – PHASE 2 ...............................................................................................21

     A.  Operations Limited to Existing Subscribers ...............................................21

     B.  No Advertising or Marketing to Potentially New Subscribers .......................22

     C.  No Earnings Claims, Consumer Testimonials, Etc. ......................................22

     D.  No Upselling and No Renewals or New Subscriptions from Existing Subscribers .........22

     E.  All Pre-Existing Subscriptions Supported by ROSCA-Compliant Cancellation
         Mechanism ...............................................................................................22

     F.  Investment in Advertising and Compliance Infrastructure ...........................23

     G.  Customer Service, Refund and Cancellation Procedures ..............................29

VI.  INDEPENDENT COMPLIANCE MONITOR AUDIT AND CERTIFICATION ...........33

VII. CONCLUSION ..................................................................................................34



## I.   INTRODUCTION

By its Order entered March 26, 2021 ("Order"), the Court appointed Affiliated Monitors, Inc. as the compliance monitor ("Monitor") in *Federal Trade Commission v. RagingBull.com, et. al.,* Case No. 1:20-cv-03538-GLR (D. MD).  The Monitor is an agent of the Court and is directly accountable to the Court.  The Monitor's duties and authority include those described in the Order and in the Raging Bull Business Plan ("Business Plan") (which is incorporated into the Order) and require the Monitor to monitor Raging Bull Defendants'[1] compliance with the Order and Business Plan.  (Order Sections V and VI).

In its Order, the Court also terminated the appointment of the Temporary Receiver and the asset freeze, previously put in place under the December 8, 2020, and December 17, 2020 Temporary Restraining Orders ("TRO"), effectively returning control over RagingBull.com ("Raging Bull" or "Company") business operations back to the Company and its principals.  (Order Section XIV).

This submission serves as the Monitor's Third Report, describing Raging Bull Defendants' compliance activities and the Monitor's monitoring activities since the Monitor's Second Report filed on June 25, 2021 (Order Section VI.E.) and the Court's subsequent order dated June 30, 2021, granting Raging Bull's Unopposed Motion to Move into Phase 2 Operations Under the Business Plan and March 26, 2021 Order ("Phase 2 Motion").

In the Monitor's Second Report, the Monitor certified that, with the exception of condition "XI. Escrow Account" of the Order, Raging Bull Defendants had substantially complied with the Order and completed the Phase 1 requirements under the Business Plan.  On June 29, 2021, Raging

---

[1]   Raging Bull Defendants are RagingBull.com, LLC f/k/a Lighthouse Media, Jeffrey M. Bishop and Jason Bond f/k/a Jason P. Kowalik.

Raging Bull - Monitor's Third Report
August 24, 2021
Page 2



Bull filed the Phase 2 Motion and on June 30, 2021 the Court granted Raging Bull's motion.  As a result, Raging Bull is permitted to engage in full operations, subject to ongoing compliance and oversight monitoring.  Significantly, those full operations include engaging in sales, marketing, and promotional activity to both current customers and potential new customers.  Since the Monitor's Second Report, the Monitor has focused on monitoring Raging Bull's continuing obligations under both the Order and the Business Plan, and newly permitted activities under Phase 2 of the Business Plan, with a particular focus on the Company's sales, marketing and promotional activities and materials.

## II.    BACKGROUND

On December 7, 2020, the FTC brought an action against Raging Bull Defendants alleging violations of the FTC Act and the Restore Online Shoppers' Confidence Act ("ROSCA").  On December 8, 2020, the Court granted the FTC's *ex parte* motion for a TRO, asset freeze, and appointment of a Temporary Receiver, and on December 17, 2020, the Court entered a modified TRO.  On March 26, 2020, the Court declined the FTC's requested preliminary injunction, but instead entered the Order (consented to by Raging Bull Defendants) which, among other things, sets forth specific activities that Raging Bull Defendants are either prohibited from or required to comply with, incorporates the Company's representations and obligations under the Business Plan, terminates the Temporary Receivership and asset freeze, and appoints Affiliated Monitors, Inc. to monitor Raging Bull Defendants' compliance with the Order.  Under the Order, the Monitor shall report to the Court initially within thirty days of the entry of the Order, and subsequently every sixty days for the duration of the Order.  The Monitor may apply to the Court for any relief necessary or appropriate to ensure the Monitor can carry out its duties, and should the Monitor determine Raging Bull Defendants are not in substantial compliance with the Order, the Monitor

Raging Bull - Monitor's Third Report
August 24, 2021
Page 3

shall notify the Court immediately, and may take any additional action as further described in the Business Plan.

Further, Section V.D. of the Raging Bull Business Plan provides that "[u]pon completion of the above steps [Phase 1 activities] in relation to existing subscribers and internal compliance enhancements, and as a condition to moving into Phase 2, these efforts will be subject to an audit by the Compliance Monitor, who must first certify the satisfactory completion of these efforts and compliance with this plan in a written report filed with the Court. The certification shall be made on the basis of the Company's obligations set forth in the Court's order as well as all relevant authority under FTC law including recent case law authority, relevant rules and informal FTC guidance, and such other relevant authority as the Compliance Monitor deems appropriate based on the Compliance Monitor's expertise in the area."

Finally, the Business Plan provides that "[d]uring Phase 2, the Company will be permitted to engage in full operations, subject to ongoing compliance and careful oversight by the Compliance Monitor" (Business Plan at p. 13).

On June 25, 2021, the Monitor filed the Second Report under the Order and certified Raging Bull Defendants' substantial compliance with their Phase 1 obligations. Raging Bull Defendants subsequently filed the Phase 2 Motion and the Court thereafter granted that Motion on June 30, 2021.

## III.   MONITOR'S ACTIVITIES SINCE THE SECOND REPORT AND THE COURT'S JUNE 30, 2021 ORDER

The Monitor's First and Second Reports summarized the monitoring activities during the first 90-day period after the Court's March 26, 2021 Order.

Raging Bull - Monitor's Third Report
August 24, 2021
Page 4



Since submission of the Second Report and the Court's June 30, 2021 Order, the Monitor has engaged in additional multi-faceted activities in monitoring and auditing Raging Bull Defendants' obligations.  These have included:

(i)      Continued weekly scheduled meetings[2] with the Company's outside counsel and Chief Compliance Officer;

(ii)      Additional meetings with outside and in-house counsel and the Chief Compliance Officer as needed[3];

(iii)      A Seventh Request for Information relating to the Company's continuing and new Phase 2 compliance obligations under the Order and Business Plan;

(iv)      Additional email requests for information relating to specific questions or concerns;

(v)      Scheduled calls with the FTC (initially weekly, and then less frequently since commencing Phase 2);

(vi)      Continued verification of the Company's obligations under the Order including: obligations relating to prohibitions on prohibited content; the requirement of a simple mechanism for consumers to avoid new or recurring charges; the requirement that the Company monitor its own compliance with the Court's Orders, including recording all live sales events; the status of the Escrow Account funding; and verification of the Company's handling of refund and cancellation requests pending as of the date of the Order;

---

[2]   All meetings described in this Report are virtual meetings.
[3]   The Monitor originally planned a site visit to Raging Bull's offices in Baltimore, MD, but was informed that because of COVID-19 restrictions and concerns, very few staff were working on-site.  Therefore, the Monitor has postponed an on-site visit until later in September 2021.



(vii)   Verification of the Company's continuing obligations under the Business Plan, including the Company's investment and actions in advertising and compliance infrastructure, and its handling of customer service, refund and cancellation requests;

(viii)   Monitoring of the Company's new activities and obligations under Phase 2 of the Business Plan, with particular focus on the Company's new sales, marketing and promotion activities and materials, including: verifying the Company's compliance with its procedural obligations to vet all sales, marketing and promotion activities and materials both internally and through outside counsel; and the Monitor's independent reviewing of all of the Company's sales, marketing and promotion activities and materials to assess compliance under the Order, Business Plan, and applicable law, rules and regulations;

(ix)   Accepting, responding to and tracking customer emails and phone calls to the Monitor through several channels, including the dedicated Raging.Bull.com Monitorship webpage, dedicated email address, and dedicated phone number;

(x)   Monitoring of public facing websites, including platforms for customers to post reviews of and complaints against the Company; and

(xi)   Review of scores of documents constituting hundreds of pages relating to Raging Bull Defendants' obligations under the Order and Business Plan.

The Monitor's specific monitoring and auditing activities and findings related to each of the Conditions under the Order and the Business Plan are detailed below.



On August 20, 2021, the Monitor sent a draft of this Report to both counsel for Raging Bull Defendants and the FTC, and received comments and/or information from both Raging Bull and the FTC on August 23, 2021.

## IV. CONDITIONS SUBJECT TO MONITORING UNDER THE ORDER

### A. Prohibited Business Activities

Section I of the Order prohibits Raging Bull Defendants from making Earnings Claims, or claims about the experience, time or effort, or capital required for consumers to effectively use the Company's Covered Goods or Services, without an appropriate basis for, or substantiation of such claims.  It also prohibits any misrepresentation of any other fact material to consumers concerning any Covered Goods or Services.

### 1. Monitoring of Raging Bull's Fulfillment Content and Public-Facing Digital Media for Prohibited Business Activities

As set forth in the Second Report, the Monitor began proactively monitoring Raging Bull Defendants' business activities in May 2021.  This effort has continued throughout the sixty days since the Second Report, and includes review of: communications with existing subscribers[4] through an all-access Raging Bull Membership that allows the monitoring team to review all materials on the Raging Bull website, as well as all email communications sent by the Company to its subscribers -- constituting over thirty different subscription services, over twenty different publications, and over a dozen different courses; all public-facing digital media outlets on which the Raging Bull Defendants have a presence, including Facebook, Instagram, Twitter, LinkedIn, YouTube, and Reddit; the individual social media accounts of the Company "gurus"; third-party

---

[4]   Although the Business Plan permits the Company to solicit new subscribers through the use of sales and marketing materials previously approved by the Monitor, Raging Bull has, to date, limited its sales and marketing outreach to existing subscribers.

complaint websites "TrustPilot", the Better Business Bureau, and "tradingschools.org"; and results of Google searches for key words such as "RagingBull Scam," "RagingBull Lawsuit," and "RagingBull Make Money."

In addition, the monitoring team listened to a recording of the one live sales event Raging Bull has conducted since the date of the Order.  The event was a livestream video approximately thirty-five minutes in length, in which Jeff Bishop and Jason Bond promoted the Company's Freedom Pass campaign.  Bishop and Bond described the Freedom Pass product, which is essentially an "all-access" pass to Raging Bull's entire suite of subscription offerings, as well any future offerings, and highlighted the credentials of the participating "gurus".  Based on our review, the video did not contain any Earnings Claims, Consumer Testimonials, or any other content that otherwise violated the Order or Business Plan.

With the exception of this live sales event, which the monitoring team reviewed in its entirety, the methodology of the proactive monitoring described in the Second Report has remained consistent in the past sixty days.  On a weekly basis, members of the monitoring team reviewed a sampling of fulfillment content, inclusive of emails sent by the Company to subscribers, written and video content posted on the Company website, and chat rooms.  In addition, team members reviewed a sampling of the relevant public-facing digital media outlets listed above.  In total, the monitoring team spent dozens of hours reviewing emails, publications, videos, chat room chats, comment threads on social media, webinars and livestreams.

In the past sixty days, the monitoring team found three instances, all on Twitter, of content that contained material prohibited by the Order: Earnings Claims (two instances) and a customer testimonial (one instance).  The Monitor alerted the Company's counsel to these tweets and confirmed that they had been promptly deleted.  In addition, the Monitor identified six potential



"scams" involving non-Company personnel posing as Raging Bull "gurus" in which they attempt to extract money from unwitting Raging Bull customers.[5]   The Monitor alerted Raging Bull's counsel to these scams, and requested the following in its Seventh Request for Information:

> *Please provide any information the Company has relating to potential social media scams targeting its customers, including the efforts RB has undertaken to identify, prevent and mitigate such scams, the number of RB customers who the Company has reason to believe were impacted by such scams, and how such incidents were addressed by the Company.*

In response, counsel for the Company stated:

> *Raging Bull has a pop-up disclaimer that subscribers must acknowledge every day before entering a chat room or the dashboard. This disclaimer prominently includes, in red font, a Social Media Scam Warning. In addition, Raging Bull continues to use social media vendor ZeroFox to help to remove social media items that a normal user is unable to remove. Raging Bull gets weekly reports from ZeroFox.*

In support of this response, the Company provided the Monitor a screenshot of the referenced pop-up disclaimer, as well as a recent report from ZeroFox.

The Monitor's ongoing proactive monitoring effort has yielded a finding that the Company has been disseminating fulfillment content that complies with Section I of the Order. The Monitor's review of public facing digital media has likewise demonstrated that Raging Bull, with few exceptions, has abstained from engaging in activities on public-facing digital media platforms that violate Section I of the Order.

2.   <u>Review and Approval of Raging Bull's Sales, Marketing and Promotional Material</u>

The Court's June 30, 2021 Order permits the Company to engage in full operations under its Business Plan, subject to ongoing compliance and careful oversight by the Monitor. Under the Business Plan, "[f]ull operations will include upselling and solicitation of renewals of pre-existing subscribers as well as the solicitation of new subscribers, but only through the use of sales and

---

[5]   The Monitor provided a detailed description of these "scams" in its Second Report, as well as the results of an investigation the Monitor conducted into one such "scam" involving a Raging Bull customer.

Raging Bull - Monitor's Third Report
August 24, 2021
Page 9



marketing materials previously approved by the Compliance Monitor.  Any modification to those approved materials will be permitted only upon approval of the Company's outside counsel along with prior reasonable notice being given to the Compliance Monitor."  (Business Plan at p. 13).

Immediately upon commencing Phase 2 activities, the Company sought to resume its sales, marketing and promotional activities to existing customers.   To meet the Business Plan requirements that the Company can only use "sales and marketing materials previously approved by the Monitor," the Monitor created a "Protocol for Reviewing and Approving Raging Bull Defendants' Sales and Marketing Materials" for the Company to follow.  This Protocol defines the materials subject to review and approval[6], and sets forth the required documentation and explanations describing the sales campaigns and materials; the process the Company must follow in providing both the materials subject to review; and the necessary documentation and explanations.  The purpose of the Protocol is to facilitate the Monitor's review of not only the content of all sales, marketing and promotional materials, but also to determine whether the Company is following its own policies and procedures for vetting such materials both internally and through their outside counsel, before they are submitted to the Monitor for review and approval.

---

[6]   Under the Protocol, sales and marketing materials include, but are not limited to:
- Radio and television ads;
- Direct mail and emails;
- Search engine advertising, Internet banners advertisements, websites;
- Online videos, webinars, social media;
- Live sales events, recordings of live sales events, including recordings of franchise-owned training centers' events;
- Handouts, slide decks, workbooks;
- Telephone calls (both live and recorded), call logs, call detail records, and reports;
- The content of subscription services;
- Chat room or other related content;
- Scripts or related materials used by customer service, sales, educational or other staff or agents; and
- Modifications to such sales and marketing materials previously approved by the Monitor.



In reviewing and ultimately approving sales, marketing and promotional material, the Monitor assesses whether the materials comply with the Order, the Business Plan, and applicable law, rules, and regulations.  More specifically, the Monitor's review looks at whether the materials include any representations that could be deemed "Earnings Claims," "Testimonials," or claims about the experience, time or effort, or capital required for consumers to effectively use the Company's Covered Goods or Services, without an appropriate basis for, or substantiation of such claims.  The Monitor also assesses whether the sales and marketing materials include any misrepresentation of any other fact material to consumers concerning any Covered Goods or Services.

Over the past sixty days, the Monitor has reviewed and ultimately approved materials in connection with 12 sales and marketing campaigns and/or single marketing communications.  The Monitor returned several initial versions of these proposals to Raging Bull, seeking either clarification of the copy, or requesting that content be modified.  In each case, Raging Bull either provided the requested clarification, or modified the proposed copy as requested.  The Monitor finds that, to date, Raging Bull is only using sales, marketing and promotional material that have been reviewed and approved by the Monitor, and that the Company is following its policies and procedures for vetting such materials both internally and through their outside counsel, before they are submitted to the Monitor for review and approval.

3.    <u>Removal of Prohibited Legacy Content from the Company's Website and Public-Facing Digital Media</u>

As reported in the Second Report, Raging Bull engaged in a vigorous effort to remove all "legacy," or previously existing, content on its website and on all public-facing digital media (*e.g*., Facebook, LinkedIn, YouTube) that contained Earnings Claims or other content prohibited by

either the Order or the Business Plan. On May 24, 2021, the Company reported through its counsel that the effort was complete.

The Monitor's proactive monitoring activities in the past sixty days have confirmed the success of this endeavor.  Since the date of the Second Report, the Monitor has identified one piece of legacy content on the Company's website (an archived article from February, 2020 that contained two Earnings Claims), brought the content to the attention of the Company's counsel, and the content was promptly removed.

In summary, the Monitor finds that Raging Bull Defendants have, for the past sixty days, complied with Section I of the Order.

### B.      Simple Mechanism to Cancel Negative Option Feature

Section II of the Order requires the Company to provide a simple mechanism for consumers to avoid being charged, or charged an increased amount, and to stop any recurring charges for Covered Goods or Services promoted or offered using a Negative Option Feature.  This mechanism must be accessible on the same Internet website or web-based application used by consumers purchasing services over the Internet, and through a phone number and postal address for consumers purchasing through an oral offer and acceptance.

During Phase 1, the Company did not accept new or extended services from current customers and did not auto-renew any subscriptions.  Through its counsel, Raging Bull has represented that it made a decision to permanently deactivate the auto-renewal function on all subscriptions that were in place prior to March 26, 2021, and that any renewal of such subscriptions will require the customer to take affirmative action.  As such, the Company's position is that for these pre-March 26, 2021 subscriptions, there is no need for any mechanism for consumers to stop any new or recurring charges.

Raging Bull - Monitor's Third Report
August 24, 2021
Page 12



Both the Monitor and the FTC requested more information from the Company as to how these subscribers were notified that the auto-renewal function for these existing services has been permanently deactivated.   In response, the Company provided examples of emails sent to subscribers on June 21 and June 28, 2021, that included the statement "all recurring billing is disabled."   However, the Monitor communicated to the Company's counsel that unless these subscribers are provided clear and unambiguous notification specifically informing them that auto-renewal of their existing subscriptions has been *permanently* deactivated (which the provided emails did not state), there will continue to be confusion by subscribers as to whether they will be auto-renewed, and frustration that there is no mechanism to stop the auto-renewal.   To address this concern, Raging Bull recently posted a notice to all subscribers on the Company's public website and members' webpages, approved by the Monitor, that clearly provides that the Company has eliminated auto-renewal for all existing recurring subscriptions.   The following is a screen shot of the notice to existing subscribers:





While the Company has eliminated auto-renewal of subscriptions in place as of March 26, 2021, the Company does continue to offer and enroll current subscribers, and intends to offer and enroll new subscribers, into services that do include the auto-renewal function.  For these subscriptions, Raging Bull has represented that the Company does have and will continue to have a button available on the subscriber's Raging Bull subscription page that allows the subscribers to cancel the auto-renewal.   Furthermore, the Monitor has reviewed the individual customer account pages, and has confirmed that the Company has posted the following notice to subscribers when they log-in to their subscription services under "Refund & Cancellation Policy," as well as in their "Terms of Service" (both last updated July 6, 2021):

> To cancel your auto-renewal for your subscription-based service, you can click the "Cancel Subscription" button on your member dashboard. You can also cancel your auto-renewal by contacting the Company by telephone at (800) 380-7072 or via email at Support@RagingBull.com. We must receive your request to cancel your subscription-based service at least forty-eight (48) hours before the next subscription term to avoid further charges. Before each renewal, we will send a reminder with the term and rate then in effect to the email account associated with your account no later than five (5) business days before your subscription expires. If you do nothing, we will charge the payment method you selected.   Unless you cancel auto-renewal for your subscription, the subscription-based service will be automatically extended for successive renewal period of the same duration as the subscription term originally selected, at the then-current non-promotional rate.

The following is a screen shot provided by the Company of the "Cancel Subscription" button that appears on the member's subscription page for those subscriptions with an auto-renewal function:

[CONTINUED ON NEXT PAGE]

Raging Bull - Monitor's Third Report
August 24, 2021
Page 14





The following is the pop-up text that comes up after clicking "Cancel Subscription":



As indicated in the Monitor's Second Report, Raging Bull has represented that it will also continue to send auto-renewal notice emails to customers on a 30-day, 7-day and 2-day schedule.[7] However, that representation is different than the language provided in the updated  "Refund &

---

[7]   Raging Bull revised its template notice email to include a telephone number and a mailing address for customers to contact to terminate an auto-renewal.  The Company provided a template auto-renewal notice email that is consistent with this representation.

Raging Bull - Monitor's Third Report
August 24, 2021
Page 15



Cancellation Policy" and "Terms of Service," which only promises a notice email "no later than five (5) business days before your subscription expires." Raging Bull has represented, through counsel, that despite the less specific language in the "Refund & Cancellation Policy" and "Terms of Service," the Company intends to continue to provide auto-renewal notice emails on the 30-day, 7-day and 2-day schedule.

In summary, the Monitor finds that Raging Bull Defendants are in compliance with Section II of the Order and the related requirements in the Business Plan.  However, the Monitor intends to continue to monitor this condition and report on clarifications, as necessary, going forward.

### C.    Compliance Monitoring Over Defendants

Section III of the Order requires the Company to take all reasonable steps necessary to monitor and ensure that Raging Bull Defendants and their agents, representatives, employees, and independent contractors act in compliance with the Court's Order, and to record all live sales events in conjunction with the offering for sale of any of the Defendants' Covered Goods and Services.

The Monitor's Second Report describes in detail the Monitor's comprehensive assessment of Raging Bull's internal compliance program, including its Compliance Policies, Procedures and Modules designed to ensure that the Company's employees, "gurus," and others act in compliance with the Order, Business Plan, and applicable law, rules, and regulations.

On July 15, 2021, Raging Bull revised Compliance Modules 7, 8, and 18.[8]  The revisions in these modules addressed the role of outside counsel in the review of marketing materials.  Under

---

8    Module 7 – Raging Bull Compliance Communications Review Policy; Module 8 – Raging Bull Compliance Marketing Review Policy; Module 18 – Guidance for Conducting Raging Bull Business Under the Publisher's Exclusion.

the original modules, outside counsel reviewed all materials.  Under the revised modules, outside

counsel will instead conduct spot checks of marketing material.  The changes do not impact the

Monitor's review of all such marketing materials.

With respect to the requirement that Raging Bull record the Company's "live sales events

in conjunction with the offering for sale of any of Defendant's Covered Goods or Services,"[9]  the

Company has represented that it has only held one such live sales event on July 8, 2021, and

provided the Monitor with a video recording of the event.  As described above in Section IV.A.1,

the Monitor reviewed this recording and found no violations of the Order, Business Plan or

applicable laws, rules, or regulations.

### D.       Raging Bull Business Plan

Section IV of the Order incorporates the Raging Bull Business Plan.  The Business Plan

includes specific representations and obligations that the Company has committed to meeting

under Phase 1 and Phase 2, subject to monitoring by, and in some instances the approval of, the

Monitor.  The Monitor's specific findings with respect to the Company's compliance with its

representations and obligation under the Business Plan are detailed in Section V. Conditions

Subject to Continued Monitoring Under the Business Plan – Phase 1, and New Monitoring Under

the Business Plan – Phase 2, below.

### E.       Provision of Information to the Monitor

Section VII of the Order requires Raging Bull Defendants provide the Monitor,

immediately upon request, certain information.  The Monitor's First and Second Reports described

the information requested by, and provided to, the Monitor during the first 90 days of the

monitorship.  Since then, the Monitor has continued to request information covering multiple

---

[9]    "Live sales events" are "educational training session[s] with the purpose of marketing a related product or service."

conditions in the Order and Business Plan.  These requests have included documentation to assess

and approve the Company's processes and materials relating to sales, marketing and promotions

permitted under Phase 2, a Seventh Request for Information, dated August 11, 2021, requesting,

*inter alia*, explanations and materials regarding the Company's continuing and new obligations

under the Order and Business Plan, and numerous email communications regarding specific points

of data and information. Raging Bull Defendants have provided responses, through counsel, to

these requests that the Monitor deems to be consistent with their obligations under Section VII of

the Order.

### F.      Cooperation and Non-Interference with the Monitor

Section VIII of the Order requires the Raging Bull Defendants and their officers, agents,

employees, and attorneys to "fully cooperate with and assist the Monitor."  The Order further states

that this cooperation and assistance shall specifically include "providing information to the

Monitor that the Monitor deems necessary or appropriate to exercise the authority and discharge

the responsibilities of the Monitor under this Order."

As detailed above under "Provision of Information to the Monitor," the Monitor has made

multiple Requests for Information, by formal letter, by email, and in discussions with the Company

and its counsel.  Neither Raging Bull Defendants nor their counsel have declined to produce any

information requested.  As such, Raging Bull has cooperated with the Monitor as required by

Section VIII of the Order.

Section IX of the Order holds that the Raging Bull Defendants and their officers, agents,

employees, and attorneys are preliminarily restrained and enjoined from directly or indirectly

interfering with the Monitor's efforts to carry out its duties under the Order; destroying or

otherwise altering or disposing of any documents; and refusing to cooperate with the Monitor in

Raging Bull - Monitor's Third Report
August 24, 2021
Page 18



the exercise of the Monitor's duties or authority under any order of the Court. The Monitor has no reason to believe that Raging Bull Defendants or anyone working at their behest has interfered with the Monitor's efforts to carry out its duties under the Order, and believes that Raging Bull has been cooperative with the Monitor in the exercise of those duties.

### G.    Escrow Account

Section XI of the Order requires the owners of Raging Bull to create and fund from their personal assets the Escrow Account in the amount of $10 million by no later than ten days after the entry of the Order.

In the Second Report, the Monitor reported that the Company had established two separate escrow accounts (combined, the "Escrow Account") and that based on the Defendants' representations and supporting documentation, the Monitor was satisfied that the owners had funded the Escrow Account in the amount of $6 million, and had used personal assets totaling $4 million to otherwise assist in the funding of RagingBull.com operations. The Monitor also reported that as of June 17, 2021, the Escrow Account had a balance totaling $3 million. For this Third Report, Raging Bull Defendants have provided documentation showing that as August 17, 2021 the Escrow Account has a balance totaling $1.5 million, and representing that the funds withdrawn from the account since the Second Report were used to fund RagingBull.com operations.

### H.    Refund and Cancellation Requests

Section XII of the Order required the Company to follow a specific process for handling all requests pending as of the date of the Order from subscribers seeking a refund of amounts paid for services and/or a cancellation of any auto-renewal for services. That process called for the Company to provide full refunds to the thirty-one Declarants who submitted declarations in



support of the FTC's Motion to Show Cause.  All other requests pending as of the date of the Order were to be handled before the completion of Phase 1 as specifically set forth in the Order.  Under the Order, "[a]s a general rule, only subscribers who seek a refund for a service that, by its terms, provides for a refund are eligible for a refund," and "subscribers who seek a refund for a service that, by its terms, does not provide for a refund, or does not provide for a refund in the time period the request was made, will not be provided a refund . . .."  Under the Order, "[t]he Monitor has the authority * * * to determine, given the particular circumstances of each particular subscriber seeking a refund, whether any refund should be made and, if so, whether such refund should be full or partial."

Therefore, the Monitor does not have the authority to require that a refund be paid to any subscriber whose request and particular circumstances do not otherwise entitle the subscriber to a refund under the limitations in the Order.  Subscribers who are not eligible for a refund under the Order, but who believe they should be entitled to a refund or other restitution based on Raging Bull Defendants' alleged unfair and deceptive acts and practices that precipitated the FTC lawsuit, or for any other reasons, must seek those refunds or other relief through other avenues, *i.e.,* through the FTC's continuing litigation in this enforcement action, through other legal action, or through appeals directly with the Company.

1.   31 Declarants

As detailed in the Monitor's Second Report, the Company has demonstrated to the Monitor that it sent each of the 31 Declarants a refund check for the proper amount.[10]

---

[10]   On July 20, 2021, the FTC notified the Monitor that one Declarant had not received their refund because it was sent to an old address.  The Monitor informed Raging Bull, a new check was issued and sent, and the Declarant confirmed receipt of the refund on August 5, 2021.



2. <u>Remaining Refund and Cancellation Requests Pending as of the March 26 Order</u>

As described above, under the Order, all remaining requests for refunds or cancellations pending as of the date of the Order were to be handled before the completion of Phase 1 as specifically set forth in the Order. The Monitor does not have the authority to require that a refund be paid to any subscriber whose request and particular circumstances do not otherwise entitle the subscriber to a refund under the limitations in the Order. Instead, the Monitor's responsibility and authority focused on determining whether the Company's decisions as to which of these subscribers were eligible for a refund or not, and if so the amount of the refund they were eligible for, were accurate under the terms of the Order and the specific products or services they purchased.

In order to determine the accuracy of the Company's refund eligibility decisions and refund amounts, the Monitor conducted several audits of the Company's refund eligibility decisions and refund amount calculations that in total covered approximately 587 of the 1,732 subscribers who were identified by Raging Bull as having pending refund or cancellation requests as of the date of the Order, or approximately 34% of all such subscribers. While the Monitor recognized that there may have been subscribers among the 1,732 whose refund requests may not have been accurately determined by Raging Bull, given that the Monitor's final audit found that just 1.7% appeared to be inaccurate, the Monitor determined that the Company had substantially complied with its obligation to handle all remaining refund and cancellation requests pending as of the date of the Order consistent with the specific parameters and limitations set forth in Section XII of the Order.

However, since the Second Report, the Monitor has learned of several subscribers who had requests for refunds or cancellations pending as of the date of the Order who should have been determined eligible to receive a refund, or who were told they were eligible for a refund but did



not receive the refund or the correct amount of the refund.  In each of these instances the Monitor provided the pertinent information to Raging Bull and our understanding is, based on information from the Company and confirmations received from those subscribers who responded to the Monitor, that each of these have been properly rectified.  The Monitor has also requested from Raging Bull a list of subscribers who had refund or cancellation requests pending as of the Order who have contacted the Company contesting either the Company's determination that they were not eligible for a refund, or contesting the amount of the refund calculated, and an explanation as to how each such subscriber's request or objection has been resolved.  The Company provided the Monitor with an updated spreadsheet on August 21, 2021, and the Monitor intends to review and analyze that information during the next reporting period.

**V.    CONDITIONS SUBJECT TO CONTINUED MONITORING UNDER THE BUSINESS PLAN – PHASE 1 AND NEW MONITORING UNDER THE BUSINESS PLAN – PHASE 2**

On June 30, 2021, the Court granted Raging Bull's motion to move into Phase 2, which permits the Company to engage in full operations, subject to ongoing compliance and oversight by the Monitor.  As a result, certain Phase 1 obligations and restrictions no longer apply.  In this section the Monitor reports on Raging Bull's compliance with those continuing Phase 1 obligations and the Company's new obligations under Phase 2.

**A.    Operations Limited to Existing Subscribers**

As described above, under Phase 2 Raging Bull may engage in full operations, including sales, marketing and promotional activities targeting potentially new subscribers, and as such the restriction to existing subscribers under Phase 1 no longer applies.



### B.    No Advertising or Marketing to Potentially New Subscribers

As described above, under Phase 2 Raging Bull may engage in full operations, including sales, marketing and promotional activities targeting potentially new subscribers, and as such the restriction to existing subscribers under Phase 1 no longer applies.

### C.    No Earnings Claims, Consumer Testimonials, Etc.

As discussed in detail in Section IV.A. above, the Monitor finds that the Company has properly vetted new fulfillment content deployed to subscribers and has functionally abstained from making Earnings Claims, using Consumer Testimonials, or deploying content that otherwise violates the Order or Business Plan.  Similarly, the Monitor finds that the Company has satisfactorily removed "legacy" content containing Earnings Claims, Consumer Testimonials, and other content that constitutes Prohibited Business Activities from its subscription services and public facing digital media.

### D.    No Upselling and No Renewals or New Subscriptions from Existing Subscribers

As described above, under Phase 2 Raging Bull may engage in full operations, including upselling, renewals and new subscription from both existing and potentially new subscribers, and as such the restriction under Phase 1 no longer applies.

### E.    All Pre-Existing Subscriptions Supported by ROSCA-Compliant Cancellation Mechanism

As discussed in Section IV.B. above, Raging Bull has eliminated the auto-renewal function on all subscriptions existing as of the Order, and has developed and implemented simple mechanisms to cancel an auto-renewal for new subscriptions for all its products.  These mechanisms provide multiple options, including a button on the member's dashboard, telephone number, and email address.



### F.     Investment in Advertising and Compliance Infrastructure

During Phase 1, Raging Bull committed in its Business Plan to "revamping and expanding its advertising and compliance infrastructure" through what the Plan calls a "concerted focus on additional compliance redundancies."  (Business Plan at p. 9).  The Monitor's Second Report describes the Monitor's assessment of Raging Bull's compliance with these commitments and the viability of the Company's compliance program as of the date of the Second Report.  The Second Report also stated that the assessment was predominantly a paper review, and largely prospective, given that the revamped program is nascent.  Implementation of this revamped and expanded program is largely the responsibility of the Chief Compliance Officer, who only recently joined the Company.  Future Monitor reports will continue to review the developing state of the Program, and assess whether it is real and effective.  To that end, the Monitor intends to provide Raging Bull with an assessment and recommendations to potentially improve the Compliance Program as currently designed and written.

In addition to this commitment, Raging Bull, in its Business Plan, committed to make certain investments in its Advertising and Compliance Infrastructure.  Below is a summary of those investments, and any developments since the Second Report:

1.     <u>The hiring of up to 5 full-time compliance personnel, as needed, based on the Chief Compliance Officer's determination; one of these employees will be designated Chief Compliance Officer and will have sufficient knowledge and expertise in FTC Section 5 advertising and marketing law and policies and will be available to be present in the Baltimore office as needed.</u>

As described in the Monitor's Second Report, Mustafa Hersi joined Raging Bull as its Chief Compliance Officer on June 7, 2021.  The Company represents that there are three additional compliance staff, and "[t]here are plans on hiring further compliance staff in the coming months to remain in alignment with the company's needs."

Raging Bull - Monitor's Third Report
August 24, 2021
Page 24



2. <u>A multi-stakeholder review and revision of the Company's process for analyzing and approving sales and advertising materials before they are posted or communicated externally.</u>

The Monitor's Second Report describes the policies and procedures, including Compliance Manual and Compliance Modules, addressing the Company's process for analyzing and approving sales and advertising materials.  For purposes of this Third Report, the Company represents that "the process for review and revision of sales and advertising materials for the Monitor's review and approval has remained consistent in Phase 2. This process is reflected for sales and advertising materials in the tracking log spreadsheets, which have been provided to the Monitor with all sales and advertising materials. There have been no substantive revisions to policies, procedures or compliance modules relating to the review and revisions to sales and advertising materials."

3. <u>Review and targeted revision of the Company's employee code of conduct, which includes compliance procedures and policies, including disciplinary consequences for compliance violations.</u>

The Monitor's Second Report describes Raging Bull's revised Code of Ethics and Business Conduct that includes compliance procedures and policies.  As noted above, since that Report Raging Bull revised Compliance Modules 7, 8, and 18, and no longer requires outside counsel to review all marketing materials before they are provided to the Monitor or used by the Company.

4. <u>Development of methods for anonymous and confidential internal reporting of employee compliance misconduct, and creation of a process for the investigation of internally reported compliance complaints, with assurance of non-retaliation.</u>

The Monitor's Second Report describes the Company's methods for anonymous and confidential reporting, the process for investigating complaints, and non-retaliation policy.  For purposes of this Third Report, Raging Bull represents that the "Compliance Department has developed an internal process for investigating, documenting, and remediating compliance concerns that come to its attention. In the event the Compliance Department is made aware of a

compliance concern (either through a self-report, employee report or third-party report), it takes the following steps:

> • An internal staffer within the Compliance Department is assigned to investigate the compliance concern and make a determination if a compliance deficiency exists.

> • If such a compliance deficiency is identified, the Compliance Department staff, along with designated Compliance staff and Raging Bull staff, will take appropriate, immediate steps to address the compliance concern.

> • The Compliance Department staffer, at the direction of the Chief Compliance Officer, prepares a memorandum outlining the compliance finding, the steps taken to remediate the finding, including any training or education of Raging Bull staff or other remedial action. A copy of this memorandum will be maintained in the Raging Bull Compliance Department's files as well as the specific employee's Human Resources file."

Raging Bull reported that in July 2021, the Compliance Department investigated two compliance concerns, and that in accordance with its internal practices, the Compliance Department prepared a memorandum for each of these concerns and forwarded a copy to Human Resources to maintain in the specific employee's personnel file.

On August 21, 2021, the Company provided the Monitor with copies of the two memoranda referenced.  One case involved a customer service representative who, in July 2021, asked a caller a question that was contrary to the Company's customer service policy and customer service training that the individual had attended on three different occasions.  According to the memorandum, the individual's supervisor was informed about the individual's actions and the individual signed an acknowledgment that the individual "reviewed the compliance standard at issue and understand[s] the compliance concern at issue . . . [and] will abide by the standard in the



future."  The other case involved a "guru" who, in July 2021, sent a fulfillment email to current subscribers before that email had been approved by the Company's Compliance Department in accordance with the established protocol.  According to the memorandum, the individual was counseled by a member of the Compliance Department, and this individual also signed an acknowledgment that the individual "reviewed the compliance standard at issue and understand[s] the compliance concern at issue . . . [and] will abide by the standard in the future."   The Monitor will continue to assess whether the handling of these and future compliance investigations and issues are consistent with the Company's applicable policies.

     5.    <u>Institution of regular reviews of "guru" trading activity and subscriber communications to ensure compliance with this plan</u>.

The Monitor's Second Report describes the Company's policies and procedures for reviewing "guru" trading activity and subscriber communications.

For this Third Report, the Monitor requested specific confirmation that Raging Bull is monitoring the trading activities of its "gurus" as required by the Business Plan.  In response, the Company represented that "Raging Bull Compliance is monitoring guru trading activity in real time, but guru trading activity will also be subject to an internal auditing protocol."  The Monitor has not yet had the opportunity to verify these representations but intends to do so during the next monitoring period.

     6.    <u>Implementation of employee and "guru" compensation and evaluation structures that incentivize compliance and penalize unlawful conduct</u>.

The Monitor's Second Report describes the provisions of the Company's Compliance Manual that address compliance-related incentives. The Monitor intends to assess the Company's implementation of these provisions during future monitoring periods.

Raging Bull - Monitor's Third Report
August 24, 2021
Page 27



> 7. <u>Elimination of all advertising and marketing content under the Company's control that is currently on the Internet that is not in compliance with the requirements of this plan; elimination or modification of all video and written materials for each service provided by the Company to ensure that all such materials offered to subscribers are in compliance with the requirements of this plan.</u>

As described in the Monitor's Second Report, and discussed in Section IV.A. above, Raging Bull has implemented a process to identify and remove all non-compliant advertising and marketing content, as well as video and written materials offered to subscribers, and has been largely successful in meeting this requirement. Furthermore, as described above, Raging Bull has complied with the Order, Business Plan, and the Monitor's Protocol, with respect to the internal, outside counsel, and Monitor's review and approval of all new sales and marketing materials.

> 8. <u>The construction and implementation of new internal and external auditing and monitoring functions.</u>

The Monitor's Second Report describes that Module 1 of the Company's Compliance Program requires both regular internal and external compliance audits overseen by the Chief Compliance Officer, and that the Company has implemented an internal monitoring program to prevent violations of both the law and the Court's Order. For purposes of this Third Report, the Company represents that "[i]n August 2021, the Compliance Department will be conducting an audit into the following activities: Customer Service, Telesales and Chatrooms. The Compliance Department will also be conducting secret shopping activities to assess compliance with online and telephonic sales mandates." The Monitor intends to review and assess the effectiveness of these audits in future reporting periods.

> 9. <u>The Compliance Team will also establish a formal program for the regular and consistent compliance training of Company employees, "gurus" and management.</u>

The Monitor's Second Report describes the Company's training approach and schedule, primarily outlined in Compliance Module 2. For purposes of this Third Report, the Company



represents that "Raging Bull has conducted training sessions since June 25, 2021, conducted by Raging Bull's [Chief Compliance Officer]. All of the training sessions were virtual, attendance was tracked via zoom platform. For these training sessions, no quizzes were conducted. The goal was to educate and socialize training into the Raging Bull culture. In future training sessions, these tools will be incorporated to measure effectiveness.  . . . Monthly training will continue to be conducted by the Raging Bull Compliance Department. Additional training may be provided based on the compliance needs of the Raging Bull organization."  On August 21, 2021 the Company provided the Monitor with a log of July and August 2021 trainings, attendance tracking sheets and copies of the materials for some of these trainings.  According to these materials, the following compliance-related training sessions were held:

- July 8, 2021 - Telesales and Customer Service Compliance Refresher

- July 9, 2021 - Company-Wide Training

- July 22, 2021 - Guru, Product Manager, and Writer's Training

- July 27, 2021 - Boardroom and Angel Investing Compliance Review

- August 4, 2021 - Telesales Training for Making Sales

The Monitor intends to verify trainings and assess their effectiveness in future reporting periods.

10.  <u>The Compliance Team will closely oversee compliance with respect to all Raging Bull advertising and marketing; language on all order forms; subscriber refunds, cancellations and customer service and response, including the resolution of complaints; trading practices of company "gurus"; and communications with subscribers; and all consumer facing communications.</u>

The Monitor's Second Report describes Raging Bull's policies and procedures addressing these compliance program responsibilities.  The Monitor has also required the Company to provide internal review and tracking documentation of sales and marketing material as part of the

Monitor's Protocol for reviewing and approving all marketing materials.  The Monitor intends to monitor and assess the Company's internal compliance functions with respect to these responsibilities in future reporting periods.

### G.   Customer Service, Refund and Cancellation Procedures

1.   <u>Complaints, Refund and Cancellation Requests to Raging Bull</u>

In its Business Plan, Raging Bull stated that it would "commit significant resources during Phase 1 and beyond to customer service," that it would "develop policies and procedures for addressing refunds, renewal cancellations and complaints," and that it would, among other things, "address the backlog of outstanding refund requests that have not been addressed since the TRO was entered."

In the Second Report, the Monitor described in detail the extensive efforts made to monitor the Company's compliance with these commitments.  As of the date of the Second Report, the Monitor found that Raging Bull had committed resources and developed policies and procedures to address refund and cancellation requests, and customer complaints, substantially consistent with its commitments under the Business Plan.

However, the Monitor also reported that it had received, directly to the Monitor's dedicated email address, telephone number, and in some cases individual Monitor's personal cell phone numbers, over 350 inquiries and complaints from Raging Bull customers since the date of the March 25, 2021 Order (most seeking refunds or cancellations).  Further, the Monitor had been tracking customer complaints made to review sites such as the BBB and TrustPilot, and other social media platforms.  The Monitor reported that, based upon these sources, it is clear that many customers had difficulty getting through to Raging Bull customer service, had not received timely



or substantive responses to their inquiries, and remained dissatisfied with how Raging Bull had handled their requests or complaints.

Since the Second Report, the Monitor has continued to receive customer complaints, and has continued to track complaints made to third party customer review sites and social media platforms. Since June 25, 2021, the Monitor has received complaints from more than 112 customers.[11] Also since that date, there have been more than 32 complaints submitted by Raging Bull customers to the Better Business Bureau ("BBB"), TrustPilot, or tradingschools.org.[12] These complaints generally fall into the following categories:

- The service, product or "guru" that the customer had originally subscribed to is no longer being provided by Raging Bull, but the Company refuses to cancel their subscription or refund all or a portion of their subscription price. Some of these subscriptions run into the thousands of dollars. Many of these customers feel that although their subscription may have a "no-refund" policy, or the refund period has expired, they should be entitled to a refund based on "breach of contract". The majority of customers who have complained to the Monitor or to review sites fall within this category.

- Customers are unable to get in contact with Raging Bull, or unable to get a timely response or resolution to their customer complaint. In some cases the customers

---

[11] Many, if not most, subscriber complaints that the Monitor has received have also been received by Raging Bull.

[12] The Monitor is not commenting on the veracity of customer complaints filed with these websites; this information is just meant to convey the recent customer complaint activity. Raging Bull represents that it endeavors to respond to BBB complaints, and a review of the BBB website indicates that over the past sixty days some complaints have been answered and resolved between the Company and the customer, others have been answered but not resolved, and some have not been answered. A review of the recent complaints filed with TrustPilot and TradingSchools.org indicate that the Company also responds to some of these complaints.

Raging Bull - Monitor's Third Report
August 24, 2021
Page 31



have complained that they could not get a live customer service agent on the phone, or did not receive a call back or substantiative email response.

With respect to customers who feel that they are entitled to a refund based on "breach of contract," the Monitor has no authority to provide any relief.  With respect to all customer complaints, including those customers who claim they are unable to get in contact with the Company, the Monitor has consistently raised the issue of customer service with the Company. For purposes of this Third Report, the Monitor requested specific information relating to the Company's handling of customer service complaints and requests for refunds or cancelations.  In response, the Company has provided the following representations:

- Raging Bull presently has 16 customer service employees, 6 of whom are part time. Raging Bull is working to onboard two new hires to its customer service team.

- Raging Bull customer service has received 1,189 inbound calls and 7,814 inbound emails from July 1 to August 17, 2021.  1,187 out of the 1,189 inbound calls were answered by a customer service agent. The average hold time for these calls is one minute, eight seconds.  All 1,189 inbound calls were responded to by a customer service agent.  The average turnaround time for customer service emails is approximately 33 hours.[13]

While the Monitor does not have the authority to require Raging Bull to provide refunds, cancellations, or other relief to customers (other than those who had submitted requests as of March 26, 2021, as discussed in Section IV.H., above), the Monitor believes it has an obligation to

---

[13]  At this time, it is impossible for the Monitor to reconcile the apparent disconnect between the number of complaints relating to customer service responsiveness, and Raging Bull's customer service metrics.  The Monitor will be looking into this issue in future monitoring periods.

Raging Bull - Monitor's Third Report
August 24, 2021
Page 32



respond to consumers who have contacted the Monitor with objective, pertinent information.  As

such, the Monitor recently sent the following email communication[14] to every Raging Bull

customer who has contacted the Monitor since June 25, 2021:

> Dear Raging Bull Customer:
>
> Thank you for contacting the Monitor about your efforts to get a refund from Raging Bull.
>
> Unfortunately, our ability to help you is limited by the Court's Order.  On March 26, 2021, the Court appointed us only to monitor Raging Bull's compliance with the Court's Order and the Raging Bull Business Plan.  As the Court-appointed Monitor in the case, we have no authority to do anything the Court does not allow us to do.  With respect to refunds, the Court's Order requires Raging Bull to provide refunds only in two circumstances:
>
> 1.  To the 31 subscribers who gave affidavits to the Federal Trade Commission in support of its case; or
>
> 2.  For all other subscribers, only if the product or service, by its terms, provided for a refund.
>
> We have assessed Raging Bull's compliance and determined that as of the end of June 2021, Raging Bull had provided the appropriate refunds under the terms outlined above.
>
> However, that may not mean that you are not entitled to any relief at all.  If you believe you are entitled to a refund or restitution based on Raging Bull's actions that led to the Federal Trade Commission's court case, or for any other reason, you should consider consulting a private attorney.  If you have not already done so, you may also report your complaint with the FTC at reportfraud.ftc.gov.
>
> Also, you may reach out to Raging Bull directly if you have additional information that you have not previously provided showing that you are entitled to a refund under the terms of the March 26, 2021 Order.  Raging Bull can be contacted at support@ragingbull.com or at (800) 380-7072.  If you do not immediately get in touch with a Raging Bull customer support member, please make sure you leave a message, or send an email, with your contact information.
>
> Sincerely,
>
>
> Jesse Caplan            Gerald Coyne
> Monitor                 Monitor

In addition, contemporaneous with the submission of this Third Report, the Monitor has

provided Raging Bull with a list of all customers who have contacted the Monitor since June 2021,

including a description of the complaint or concern so that the Company can compare that to its

---

[14] Some customers who did not provide email addresses have received phone calls either from one of the Monitors, or from a member of the monitoring staff.

Raging Bull - Monitor's Third Report
August 24, 2021
Page 33



own records, and can report back to the Monitor on whether, and how, the complaints were resolved.

Notwithstanding the continued level of frustration by many Raging Bull customers relating to the Company's customer service and handling of refund and cancellation requests, the Monitor believes that Raging Bull has made good faith efforts to meet its commitments in the Business Plan as described above, and that those efforts are continuing and improving. Nonetheless, the Monitor views these shortcomings as significant and in need of further improvement. This is an area that the Monitor will continue to monitor, assess, and report on during the monitoring period.

## VI. INDEPENDENT COMPLIANCE MONITOR AUDIT AND CERTIFICATION

The Business Plan provides that:

> Upon completion of the above steps in relation to existing subscribers and internal compliance enhancements, and as a condition to moving into Phase 2, these efforts will be subject to an audit by the Compliance Monitor, who must first certify the satisfactory completion of these efforts and compliance with this plan in a written report filed with the Court. The certification shall be made on the basis of the Company's obligations set forth in the Court's order as well as all relevant authority under FTC law including recent case law authority, relevant rules and informal FTC guidance, and such other relevant authority as the Compliance Monitor deems appropriate based on the Compliance Monitor's expertise in the area.

In the Second Report, the Monitor described how Raging Bull Defendants' completion of its commitments under Phase 1 of the Business Plan were audited, and the Monitor's decision to certify that, with the exception of condition XI. Escrow Account of the Order, and with the acknowledgement of the significant shortcomings related to customer service responsiveness, Raging Bull Defendants had "substantially complied" with the Order and completed the Phase 1 requirements under the Business Plan.

Nevertheless, the Monitor acknowledged that it was premature to assess whether the Company's Compliance Program is, or will be, properly implemented, and whether it is effective

Raging Bull - Monitor's Third Report
August 24, 2021
Page 34

in practice. To address the uncertainty over the effectiveness of Raging Bull's revamped Compliance Program, the Monitor intends to engage in the following as part of its continuing monitoring duties: (i) Complete an assessment of the design and structure of the Compliance Program and provide recommendations to the Company on areas for possible improvement or modification; and (ii) Assess the implementation and effectiveness of the Compliance Program for the duration of the monitoring period.

The Monitor anticipates reporting to the Court in future reports the Company's progress in implementing the written Compliance Program, and an assessment of the effectiveness of that implementation and of the Program in practice.

## VII.   CONCLUSION

The Monitor submits this Monitor's Third Report for the Court's consideration, and is available for a conference or hearing, at the Court's discretion, to present its finding and to answer any questions. The Monitor will submit its next Report within sixty days, or sooner if necessary.

**Respectfully submitted,**

Jesse M. Caplan
Monitor

Gerald J. Coyne
Monitor