# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

**FEDERAL TRADE COMMISSION**,

     Plaintiff,

v.

**RAGINGBULL.COM, LLC**, et al.,

     Defendants.

Case No. 1:20-cv-3538-GLR

 

**DEFENDANT KYLE W. DENNIS'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

RELEVANT BACKGROUND ............................................................................................. 1

    I.    The Second Amended Complaint's Allegations ............................................ 1

    II.    Procedural History ........................................................................................ 3

LEGAL STANDARD ........................................................................................................... 4

ARGUMENT ........................................................................................................................ 5

    I.    Rule 9(b) Applies to the FTC Act Claims Against Mr. Dennis. ................... 7

    II.    The Amended Complaint Does Not Allege that Any Statements Mr. Dennis Made Are Deceptive. ................................................................................... 10

        A.    The Second Amended Complaint Does Not Allege that Any Statements Mr. Dennis Made Are Deceptive. ................................... 10

        B.    The Second Amended Complaint Fails to Allege that Mr. Dennis is Jointly and Severally Liable for Statements He Did Not Make. ....................... 16

CONCLUSION .................................................................................................................... 20

Defendant Kyle W. Dennis hereby moves this Court to dismiss the claims against him in the Federal Trade Commission's Second Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## INTRODUCTION

The Second Amended Complaint concedes that Kyle Dennis was only a trading instructor at Ragingbull.com, LLC ("Raging Bull") and not an owner, executive, or officer of the company. Nonetheless, the FTC has filled its Second Amended Complaint with conclusory allegations and improper "group pleading" in a misguided effort to assert that Mr. Dennis participated in or had the authority to control the practices the FTC contends may have been deceptive. Like the FTC's two prior complaints in this matter, what is missing from the Second Amended Complaint are any specific, well-pleaded allegations relating to Mr. Dennis to support the FTC's accusation that he had any role in deceptive conduct that would make him personally liable.

## RELEVANT BACKGROUND

### I.     The Second Amended Complaint's Allegations

Raging Bull sells online subscription-based services related to stock and options trading. [Second Amended Complaint ("SAC") ¶ 19, ECF No. 304.] These services consist of, among other things, online videos and supplemental materials in which instructors provide educational content concerning stock trading fundamentals, various strategic approaches to trading, trade alerts, and other features. [*Id.* ¶¶ 21, 30.] Raging Bull directly markets these services through search engine advertisements, social media, and e-mail marketing. [*Id.* ¶ 27.] In addition to describing the various services it offers, Raging Bull's advertisements contain conspicuous disclaimers warning consumers that they should conduct their own research before making investment decisions, that Raging Bull's services are for educational purposes only, that trading is risky, and that subscribers' trading results will vary based on a variety of factors. [*Id.* ¶¶ 94–103.]

Jeffrey M. Bishop and Jason Bond co-founded Raging Bull in 2014. [*Id.* ¶ 20.] Bishop is Raging Bull's CEO, leads some of Raging Bull's educational services, and owns 65% of Raging Bull through Defendant Sherwood Ventures, LLC, which he owns and controls. [*Id.* ¶¶ 12, 15.] Bond is Raging Bull's President, leads some of Raging Bull's educational services, and owns 25% of Raging Bull through Jason Bond, LLC. [*Id.* ¶¶ 13, 16.][1] The FTC's initial complaint also sued MFA Holdings Corp., which owns the remaining 10% of Raging Bull, but the FTC voluntarily withdrew its claims against MFA in its First Amended Complaint. [ECF No. 164-2 at 6–7.]

In addition to the Raging Bull Defendants, the FTC also decided to sue Kyle Dennis. [ECF No. 1.] Mr. Dennis was Bond's student and has made millions of dollars in profit through his own personal trading. [SAC ¶¶ 14, 48.] He joined Raging Bull as a trading instructor in 2016 and provided educational content to Raging Bull's subscribers. [*Id.* ¶¶ 14, 20.] In the Second Amended Complaint, the FTC does not allege that Mr. Dennis is an owner, officer, or executive of Raging Bull, that he had any other corporate title or managerial role, or that he conducted Raging Bull's business in any way other than as one of many instructors the company employed.

The FTC alleges that Raging Bull violated Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), by making false or unsubstantiated earnings claims in advertising its services that "represent, directly or indirectly, expressly or by implication, that consumers who purchase Raging Bull's services will earn or are likely to earn substantial income." [*Id.* ¶¶ 65–73, 123–25.] The FTC further alleges that Raging Bull made other misrepresentations in its advertising concerning the trading experience required to earn substantial income using Raging Bull's services, the amount

---

[1]     Raging Bull, Bishop, Bond, Sherwood Ventures, LLC, and Jason Bond, LLC are referred to in this brief as the "Raging Bull Defendants."

of time required to earn substantial income using Raging Bull's services, and the amount of money a subscriber would need in a brokerage account to earn substantial income using Raging Bull's services.  [*Id.* ¶¶ 82–93, 126–28.]  Finally, the FTC contends that Raging Bull violated Section 4 of ROSCA, 15 U.S.C. § 8403, for charging consumers for its services using a "negative option feature" – or "a provision under which the consumer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer" – without providing a simple cancellation method to consumers.  [*Id.* ¶¶ 110–16.]  The FTC does not allege the Mr. Dennis violated ROSCA or otherwise had anything to do with the decision-making concerning how customers were billed; it has only brought claims against him under the FTC Act.  [*Id.* ¶¶ 123–34.]

## II.    Procedural History

The FTC filed this action on December 7, 2020, seeking a permanent injunction and monetary relief based on Raging Bull's alleged violations of Section 5(a) of the FTC Act and Section 4 of ROSCA.  [Complaint, ECF No. 1.]  In addition to naming Mr. Dennis, the Raging Bull Defendants, and MFA Holdings, the FTC also originally named two entities Mr. Dennis controls (the "Winston Entities"), which it has since dismissed.  The FTC also sought a preliminary injunction that would have, among other things, placed Raging Bull into receivership and frozen all of the assets of all of the defendants, corporate and personal.  [ECF No. 2.]

Following a hearing, in an Order dated March 26, 2021, the Court denied the FTC's motion for a preliminary injunction, holding that regardless of liability, the equities weighed against any preliminary injunctive relief.  [ECF No. 214.]  As to Mr. Dennis, the Court held "the FTC has not satisfied its burden of demonstrating that the equities weigh in favor of its requested preliminary injunctive relief."  [*Id.* at 3-4.]

3

On June 11, 2021, while Mr. Dennis and the Winston Entities' motion to dismiss the First Amended Complaint was pending, the FTC sought leave to file a Second Amended Complaint that, among other things, dropped the Winston Entities as defendants, dropped the ROSCA claim against Mr. Dennis, and dropped all claims to monetary relief against Mr. Dennis.  [ECF No. 241.]  The Court granted the FTC leave to file that Complaint on March 15, 2022.  [ECF No. 302.]  On the same day, the Court also approved a proposed consent judgment against the Raging Bull Defendants that involved the company's payment of a fine, but otherwise allowed Raging Bull to continue operating under its existing management (*i.e.*, Bond and Bishop).  When it sought approval for that settlement, the FTC announced that it intended to continue pursuing its case against Mr. Dennis, the (now former) Raging Bull employee from whom it seeks no monetary relief and principally only an obey-the-law injunction that has little meaning to the FTC but would label Mr. Dennis a scofflaw for the rest of his life.  Accordingly, Mr. Dennis is the only remaining defendant in this action.

## LEGAL STANDARD

Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted).  But this standard requires "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  While a court must accept well-pled facts as true, it need not assume the truth of conclusory allegations.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("labels and conclusions, and a formulaic recitation of the elements of a cause of action" are insufficient to survive a motion to dismiss).  A complaint containing "'naked assertion[s]' devoid of 'further

4

factual enhancement'" cannot survive a motion to dismiss.   *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also id.* (explaining that a well-pled complaint "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation").

Rule 9(b) requires even more: when a party alleges fraud or mistake, it "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  A plaintiff alleging claims that sound in fraud "must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  *U.S. ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co*., 612 F.3d 724, 731 (4th Cir. 2010).

## ARGUMENT

The FTC's Second Amended Complaint suffers from the same basic problems as its prior pleadings, though the FTC had access to all of the arguments in Mr. Dennis's motion to dismiss at the time it drafted it.  It is clear that the FTC lacks a basis on which to plausibly allege Mr. Dennis's liability.

Section 5 of the FTC Act bars "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a).  "To succeed under section 5(a), the FTC must prove (1) that there was a representation; (2) that the representation was likely to mislead consumers; and (3) that the misleading representation was material."  *FTC v. Ross*, 897 F. Supp. 2d 369, 381 (D. Md. 2012), *aff'd*, 743 F.3d 886 (4th Cir. 2014) (quoting *FTC v. Tashman*, 318 F.3d 1273, 1277 (11th Cir. 2003)).  As to the second requirement, "the Court must consider whether a representation is likely to mislead a reasonable consumer by viewing the representation as a whole and focusing on the impression created, not its literal truth or falsity" and "whether the consumer's interpretation or reaction is reasonable."  *In re Sanctuary Belize Litig*., 482 F. Supp. 3d 373, 397 (D. Md. 2020).

"Puffery, that is 'exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely,' is not actionable under the FTC Act." *Id.* at 422 (quoting *FTC v. Direct Mktg. Concepts, Inc.*, 624 F.3d 1, 11–12 (1st Cir. 2010)).   "Puffery includes promises of a great investment or an amazing return on . . . money." *Id.* (internal quotation marks omitted).

Even if a deceptive act or practice is alleged, however, an individual may only be found liable for that practice under Section 5 of the FTC Act if he: "(1) participated directly in the deceptive practices or had authority to control those practices, *and* (2) had or should have had knowledge of the deceptive practices." *FTC v. Ross*, 743 F.3d 886, 892 (4th Cir. 2014) (emphasis added).   "Authority to control is evidenced by an individual's ability to review and approve advertisements as well as his or her ability to issue checks, make hiring decisions and personally finance or pay for corporate expenses, whereas direct participation can be demonstrated through evidence that the defendant developed or created, reviewed, altered and disseminated the deceptive marketing materials" or by demonstrating "[a]ctive supervision of employees as well as the review of sales and marketing reports related to the deceptive scheme." *In re Sanctuary Belize*, 482 F. Supp. at 398.

On its face, the FTC's Second Amended Complaint provides no basis to hold Mr. Dennis liable for Raging Bull's alleged conduct.   The FTC states that Bishop and Bond – not Mr. Dennis – "direct" Raging Bull and that Mr. Dennis is simply one of Raging Bull's many trading instructors who provides subscribers with educational content relating to trading strategy.   [SAC ¶ 3.]   The FTC alleges that Mr. Dennis "is a salesman and trading instructor who offers and promotes a number of widely advertised services through Raging Bull," and that Mr. Dennis "appears in sales and marketing materials." [*Id*. ¶ 14.]   But the FTC cannot allege Mr. Dennis's control over Raging Bull's marketing, and the Second Amended Complaint relies entirely on boilerplate, conclusory

6

allegations of control.  [*Id.* ("At all times material to this Complaint, acting alone or in concert with others, Dennis has formulated, directed, controlled, had authority to control, or participated in the acts and practices set forth in this Complaint.")].

The Second Amended Complaint does not allege any specific facts demonstrating that Mr. Dennis had any actual or implicit authority or control over Raging Bull's advertising strategies and/or internal policies, or how he is any different from the other (uncharged) instructors who provide similar content.  Rather, the FTC seeks to hold Mr. Dennis liable for Raging Bull's allegedly fraudulent advertising based on his appearances in Raging Bull's advertising of products or services.  [*Id.* ¶¶ 50–60.]  The Second Amended Complaint tries to imply that Mr. Dennis has control over sales materials because he has described one of Raging Bull's copywriters as his "right hand man"; but that selective quotation is shorn of all context and meaningless on its own. And even if Mr. Dennis did have direct control over the Raging Bull materials in which he is featured, the FTC has failed to establish that any of *that* marketing constitutes material misrepresentations or deceptive content.

I.    **Rule 9(b) Applies to the FTC Act Claims Against Mr. Dennis.**

The Court should apply Rule 9(b)'s heightened pleading standard to the FTC Act claims against Mr. Dennis.  Rule 9(b) applies to allegations in a complaint that "sound in fraud."  *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 455 (D. Md. 2020); *see also Cozzarelli v. Inspire Pharm. Inc*., 549 F.3d 618, 629 (4th Cir. 2008) (explaining that "Rule 9(b) refers to 'alleging fraud,' not to causes of action or elements of fraud").  Here, the FTC makes specific allegations of fraud in alleging that the Defendants, by using misrepresentations in marketing materials, have "defrauded consumers of more than $197 million" and "concerted and coordinated" to further "Raging Bull's fraudulent enterprise."   [SAC ¶¶ 7, 17.]

Other courts have found that the FTC's allegations of deceptive schemes similar to the one alleged here sound in fraud such that Rule 9(b) applies, even though (unlike here) the word "fraud" was absent from the FTC's claims in those cases. *FTC v. Ivy Capital, Inc*., No. 2:11-CV-283 JCM GWF, 2011 WL 2118626, at *3 (D. Nev. May 25, 2011) ("The instant action 'sounds in fraud,' in that the FTC has alleged that the defendants collectively engaged in a unified course of fraudulent conduct."); *FTC v. Lights of Am., Inc*., 760 F. Supp. 2d 848, 853 (C.D. Cal. 2010) ("The gravamen of these allegations is that [the defendants] engaged in a unified course of fraudulent conduct. The FTC's omission of the 'magic word'—fraud—from its Complaint does not detract from the apparently fraudulent nature of the allegations."); *see also Myers v. Lee*, 1:10CV131, 2010 WL 2757115, at *6 (E.D. Va. July 12, 2010) (finding that Rule 9(b) applies to claims under Virginia consumer protection laws).

Although the Fourth Circuit has not expressly held that Rule 9(b) applies to claims under the FTC Act sounding in fraud,[2] several lines of Fourth Circuit cases demonstrate that the Court should apply Rule 9(b) here.  First, the Fourth Circuit and district courts within the Fourth Circuit have held that analogous state-law consumer protection claims sounding in fraud are subject to Rule 9(b).  *Murphy v. Capella Educ. Co.*, 589 F. App'x 646, 658 (4th Cir. 2014) (applying Rule 9(b) to Virginia Consumer Protection Act claims); *Jones v. Sears Roebuck & Co.*, 301 F. App'x 276, 287 (4th Cir. 2008) (applying Rule 9(b) to West Virginia's Consumer Credit and Protection Act claims); *Lombel v. Flagstar Bank F.S.B.*, No. PWG-13-704, 2013 WL 5604543, at *6 (D. Md.

---

[2]     One court in this District stated in 2009 that Rule 9(b) does not apply to Section 5(a) claims under the FTC Act.  *FTC v. Innovative Mktg., Inc*., 654 F. Supp. 2d 378, 388 (D. Md. 2009).  That decision, however, lacks any analysis of the issue, has not been adopted or endorsed by other courts in this District for that proposition, and is not binding on the Court.

Oct. 11, 2013) (applying Rule 9(b) to Maryland Consumer Protection Act claims). For example, in *Topshelf Management, Inc. v. Campbell-Ewald Co.*, 117 F. Supp. 3d 722 (M.D.N.C. 2015), the court determined that Rule 9(b) applied to claims for unfair or deceptive trade practices under North Carolina law, N.C. Gen. Stat. § 75-1.1, noting that "North Carolina's statute is based on section 5" of the FTC Act; "Section 5 shares its substantive language with section 75-1.1"; and "and North Carolina courts consider federal interpretations of section 5 in construing section 75-1.1." *Id.* at 729 n.4, 731–32. The court also pointed out that "courts frequently require that section 5 claims involving misrepresentations be pleaded with particularity" and, consequently, "Rule 9(b) also applies to state-law equivalents." *Id.* at 729 n.4 (citations omitted).

Second, the Fourth Circuit has held that Rule 9(b) applied to allegations under Sections 11 and 12(a)(2) of the Securities Act relating to false or misleading prospectuses that were allegedly "part of a single, coordinated scheme to defraud investors," even though the claims did not have fraud as an element. *Cozzarelli*, 549 F.3d at 629; *see also Driver Opportunity Partners I, LP v. First United Corp.*, No. CV RDB-20-2575, 2021 WL 82864, at *5 & n.2 (D. Md. Jan. 8, 2021) (applying Rule 9(b) to breach of fiduciary duty claim alleging that defendants' actions were done "with intent to defraud" and unfair competition claim alleging that defendant damaged plaintiff's business "by fraud, deceit, trickery or unfair methods"); *In re Under Armour Sec. Litig.,* 342 F. Supp. 3d 658, 675 (D. Md. 2018) (holding that Rule 9(b) applies to allegations of misleading statements where plaintiffs alleged that statements were knowingly misleading, not merely negligent).

These cases compel the conclusion that the FTC's claims sounding in fraud must be alleged with particularity under Rule 9(b), just like their state-law and securities-law analogs. Because the Second Amended Complaint alleges that Mr. Dennis was part of and is responsible for a

9

"fraudulent enterprise" that "defrauded" consumers with intentionally false or misleading statements, Rule 9(b)'s heightened pleading standard applies.

## II.   The Amended Complaint Does Not Allege that Any Statements Mr. Dennis Made Are Deceptive.

The Second Amended Complaint fails to allege that Mr. Dennis is responsible for any allegedly deceptive advertising practices.  It alleges three broad categories of allegedly actionable advertising practices:  (1) statements that Mr. Dennis allegedly made himself in sales videos; (2) statements that other Defendants made; and (3) statements attributed generally to "Defendants."  None of the statements in the first category – either taken on their own or in context – are actionable as a matter of law, and the Second Amended Complaint is devoid of any non-conclusory allegations that would make Mr. Dennis liable for any statements in the latter two categories.

## A.   The Second Amended Complaint Does Not Allege that Any Statements Mr. Dennis Made Are Deceptive.

All of the statements or claims that the Second Amended Complaint alleges are attributable to Mr. Dennis are either not actionable as a matter of law, or else not false or deceptive.   Instead, each of the statements is either about Mr. Dennis's own trading performance – which is neither about a consumer's expected performance nor alleged to be false – or is inactionable puffery.

As explained above, the FTC must allege that a representation was likely to mislead consumers and was material to state a claim under Section 5(a).  *Ross*, 897 F. Supp. 2d at 381. "[T]here is a category of advertising themes, in the nature of puffing or other hyperbole, which do not amount to the type of affirmative product claims for which either the Commission or the

consumer would expect documentation." *In Re Pfizer Inc*., 81 F.T.C. 23, 30 (1972).[3]  These statements of opinion, hyperbole, or possibilities are nonactionable "puffery." *FTC v. Direct Mktg. Concepts, Inc*., 624 F.3d 1, 11 (1st Cir. 2010) ("exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely" is not actionable under the FTC Act).

"[P]uffery lacks, as a matter of law, the materiality to be actionable." *See Raab v. Gen. Physics Corp*., 4 F.3d 286, 289 n.1 (4th Cir. 1993).  Accordingly, courts routinely dismiss claims or complaints that do not contain allegations of any actionable misstatements or misrepresentations at the motion to dismiss stage.  *See, e.g*., *Hillson Partners Ltd. P'ship v. Adage, Inc*., 42 F.3d 204, 220 (4th Cir. 1994) (affirming dismissal of securities fraud claims based on predictions of future growth at motion to dismiss stage); *In re Under Armour Sec. Litig.*, 342 F. Supp. 3d at 676 (D. Md. 2018) (granting motion to dismiss on the basis that statements of optimism are not actionable under the securities laws); *see also Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc*., 911 F.2d 242, 245 (9th Cir. 1990) ("District courts often resolve whether a statement is puffery when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and we can think of no sound reason why they should not do so.").

In its Second Amended Complaint, the FTC highlights statements that Mr. Dennis allegedly made during sales videos about *potential* returns or his own substantiated past successes, contending that these statements were actually promises or guarantees that consumers would immediately be as successful at trading as Mr. Dennis with little or no effort.  But the statements

---

[3]      The FTC has defined "puffing" as "expressions that the consumer clearly understands to be pure sales rhetoric on which he should not rely in deciding whether to purchase the seller's product."  Statement of Basis and Purpose of Trade Regulation Rule, Unfair or Deceptive Advertising and Labeling of Cigarettes in Relation to the Health Hazards of Smoking, 29 Fed. Reg. 8324, 8351 (1964).

the FTC cites in the Second Amended Complaint are all inactionable puffery, statements of opinion, or true statements about Mr. Dennis's own substantiated past performance.

First, many of the statements by Mr. Dennis that the FTC highlights in the Second Amended Complaint are about "potential" trading returns. [*See, e.g.*, SAC ¶ 56 ("And *the target is always* 100 percent." (emphasis added)); ¶ 57[4] ("Dennis then claims that consumers who sign up now for this service will get access to his 'Mortal Lock' trade alerts, which have *the potential* to generate '500, 600, 1,000, 2,000 percent' returns, and that Dennis has 'hundreds' of trade alerts with *the potential* to generate 1000% or more in trading profits." (emphasis added)); ¶ 59 ("Dennis claims that his annual *goal* for the Fortune Forecaster portfolio is at least 100% growth." (emphasis added))]. Such statements about *potential* return on an investment cannot constitute misrepresentations as a matter of law. *See Wilson v. Popp Yarn Corp.*, 680 F. Supp. 208, 214-15 (W.D.N.C. 1988) (describing promises of "potential" sales as statements of opinion and nonactionable puffery). To the extent that these statements can be interpreted as actual projections of investment returns (which they cannot plausibly be), they are clearly the sort of "exaggerated advertising, blustering, and boasting" that constitutes puffery and are not actionable as a matter of law. *Verisign, Inc. v. XYZ.COM LLC*, 848 F.3d 292, 302 (4th Cir. 2017); *see also ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.,* 553 F.3d 187, 206 (2d Cir. 2009) ("The statements are too general to cause a reasonable investor to rely upon them."); *Dunn v. Borta*, 369 F.3d 421, 431 (4th Cir. 2004) (puffery includes promises of "a great investment or an

_____

[4]    As to this video, the FTC also alleges that Mr. Dennis "'guarantees' that his Mortal Lock trades will generate at least $1997 in trading profits on a single trade (approximately a 400% return on a $500 investment), as illustrated in Figure 6B below." [SAC ¶ 57.] But as is evident from Figure 6B itself, the guarantee was that the trade would be successful *or* that Raging Bull would give consumers a free year of the service – the FTC has not alleged that either did not happen. [*Id.*]

amazing return on . . . money"); *In re Sanctuary Belize Litig.*, 482 F. Supp. 3d 373, 421–22 (D. Md. 2020) (property developer's representations to prospective lot purchasers that lot values would greatly appreciate was puffery and did not violate FTC Act); *Carlucci v. Han*, 886 F. Supp. 2d 497, 524 (E.D. Va. 2012) (alleged misrepresentations regarding potential investment return "that Envion would provide Carlucci with the best return he had ever received, possibly up to 50 times his investment" "are the quintessential examples of non-actionable puffery"). Statements about what is possible are simply not promises or guarantees, despite the FTC's mischaracterization of them.

Similarly, the FTC points to one statement in which Mr. Dennis purported to explain the effects of the pandemic on the stock market and "why he believes this may be the most exciting opportunity in decades!" [SAC ¶ 70.] But this statement, too, is a non-actionable statement of personal opinion. *See e.g., In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 543 F. Supp. 3d 96, 117 (D. Md. 2021) (finding statements of opinion to be inactionable); *In re Under Armour*, 342 F. Supp. 3d at 676 (explaining that statements of optimism are not actionable under the securities laws).[5] Notably, the Second Amended Complaint alleges that Mr. Dennis offered his opinions on the state of the market during the COVID-19 pandemic alongside a *disclaimer* that "trading is risky" and a warning that Mr. Dennis has "wins and losses." Mr. Dennis used the word "disclaimer" and described it as "super-duper important." [SAC ¶ 101.] The FTC cannot plausibly allege that describing something as an "exciting opportunity" creates a misleading net impression

---

[5]     Again, the statements attributed to Mr. Dennis are fact-based. For example, since Mr. Dennis expressed his view that there was an "exciting opportunity" in the stock market in May 2020, the market (measured by the Dow Jones Industrial Average) has climbed from 23,723.69 at close on May 1, 2020, to 34,641.18 at close on April 5, 2022. *See* https://tinyurl.com/36hrhanf (Google Finance chart for DJIA).

when Mr. Dennis provides a "prominent and unambiguous" disclaimer regarding the risks of trading. *See FTC v. OMICS Grp. Inc.*, 374 F. Supp. 3d 994, 1010 (D. Nev. 2019); *see also Home Box Office, Inc. v. Showtime/The Movie Channel Inc*., 832 F.2d 1311, 1315 (2d Cir. 1987) ("the use of disclaimers [is] an adequate remedy when they are sufficient to avoid substantially the risk of consumer confusion."); *Consumers Union of United States, Inc. v. Gen. Signal Corp.*, 724 F.2d 1044, 1053 (2d Cir. 1983) ("Disclaimers are a favored way of alleviating consumer confusion.").

Second, the FTC points to statements from Mr. Dennis about Raging Bull's services being easy to use, but these are also inactionable. These include statements that a strategy taught through a Raging Bull service is "simple," "easy to use," "requires very little maintenance," and "that anybody can use [it]," or that Raging Bull "will do the research" and provide you "with everything you need." [*See, e.g.*, SAC ¶¶ 52, 54, 56, 59, 86, 87.] *See, e.g.*, *Carlay Co. v. FTC*, 153 F.2d 493, 496 (7th Cir. 1946) ("such words as 'easy,' 'perfect,' 'amazing,' 'prime,' 'wonderful,' 'excellent,' are regarded in law as mere puffing or dealer's talk upon which no charge of misrepresentation can be based"); *Kiddie Acad. Domestic Franchising, LLC v. Wonder World Learning, LLC*, No. CV ELH-17-3420, 2020 WL 4338891, at *21 (D. Md. July 27, 2020) (representations that "owner operators of its franchises did not need any training or experience as [franchisor] provided all training" and that franchisor had a "platform which would guide [franchisee] to success" were mere puffery); *Baney Corp. v. Agilysys NV, LLC*, 773 F. Supp. 2d 593, 609 (D. Md. 2011) (statement that a program would be "easy to use and perfect for a multi-property environment" was "mere puffery" and "is too much like an opinion to constitute a misstatement of fact"). These statements—which simply utilize commonplace terms that are used in advertising across this country every day for nearly every conceivable product—are on their face inactionable.

Third, the FTC attempts to hold Mr. Dennis liable for statements about *his own* trading successes, which the FTC does not and cannot allege are false. [*See, e.g.*, SAC ¶ 14 ("Dennis claims to be one of Jason Bond's most successful students and a self-made millionaire who made his fortune trading in the stock market."); ¶ 50 ("Ads for services offered by Kyle Dennis feature, for example, Dennis saying he made 'about $9,100 per day' in 2019, which the image shown in Figure 6, below, displays.").] The first statement – about Mr. Dennis's *own* success as Mr. Bond's student [*id.* ¶ 14] – is true and the FTC has not alleged otherwise. Thus, this statement cannot possibly give rise to individual liability under the FTC Act because there is no plausible allegation that it is deceptive. Similarly, the second statement – that Mr. Dennis made $9,100 per day in 2019 [*id.* ¶ 50] – is again about Mr. Dennis's own success as a trader, and the FTC does not allege that the statement is false or misleading. The same is true of the Trade With Kyle video in which Mr. Dennis purportedly shared examples of *his own profitable trades*. [*Id.* ¶ 75.] The FTC makes no allegation that those trading examples were false or otherwise untrue. Absent well-pleaded allegations that Mr. Dennis's statements are false, the FTC cannot possibly contend that the statements about his own actual trading history and success are actionable under the FTC Act.[6]

Accordingly, none of the statements that the FTC attributes to Mr. Dennis are actionable as a matter of law.

---

[6]     Although outside the pleadings, the FTC cannot allege that Mr. Dennis's statements are false because they are not. Mr. Dennis has put forward affirmative evidence that he is in fact one of Bond's most successful students, and a self-made millionaire who was able to quit his job as a real estate agent in 2015 to become a full-time trader who has made millions in net trading profits. [ECF No. 124 ¶¶ 3-4.]

**B.     The Second Amended Complaint Fails to Allege that Mr. Dennis is Jointly and Severally Liable for Statements He Did Not Make.**

To the extent that the Second Amended Complaint contains allegations of claims made by others at Raging Bull that are alleged to be deceptive, there is no basis to impute those deceptive claims to Mr. Dennis.  The Second Amended Complaint alleges that Mr. Dennis should not only be liable for statements that he himself made during promotional videos (which are not actionable for the reasons explained above), but for *all* of Raging Bull's alleged misrepresentations – regardless of whether the misrepresentations were written or spoken by someone else, and regardless of whether Mr. Dennis had any role in drafting or approving the statements.  But an individual may only be found liable under the FTC Act for the conduct of a corporate entity if he "(1) participated directly in the deceptive practices or had authority to control those practices, and (2) had or should have had knowledge of the deceptive practices."  *Ross*, 743 F.3d at 892; *see also FTC v. On Point Glob. LLC*, No. 19-25046-CIV, 2021 WL 4892228, at *11 (S.D. Fla. Sept. 29, 2021) ("The parties dispute whether knowledge is a required showing if the FTC seeks only injunctive relief. The Court holds that knowledge is a required prong.").

The Second Amended Complaint fails to allege any plausible factual basis to infer that Mr. Dennis – a non-owner trading instructor for only a subset of Raging Bull's services – participated in or had the authority to control the marketing of any of Raging Bull's services, other than the inactionable statements he himself made during sales videos.  Instead, the FTC resorts to improper group pleading and conclusory allegations, including the conclusory allegation that Mr. Dennis is "involved in the review and development of the sales scripts and presentation slides used to promote the various Biotech Breakouts services."  [SAC ¶ 62.]  The Second Amended Complaint fails to plausibly demonstrate that Mr. Dennis is liable for anyone's conduct but his own for several

reasons.

First, in an attempt to establish personal liability, the Second Amended Complaint relies on conclusory allegations that Mr. Dennis "has formulated, directed, controlled, had authority to control, or participated in the acts and practices set forth in this Complaint." [SAC ¶ 14.] Such a conclusory allegation about Mr. Dennis's purported participation and control is not supported by any factual allegations and fails under both Rule 8 and Rule 9(b). The Second Amended Complaint, for example, does not allege that Mr. Dennis himself drafted, reviewed, approved, commented on, or edited *any* marketing materials for services offered by other trading instructors. Thus, the FTC's allegations are typical examples of "formulaic recitation[s] of the elements of a cause of action" that "will not do" under *Iqbal*, 556 U.S. at 678, let alone under Rule 9(b). Similar conclusory allegations have been rejected by courts in other cases where the FTC attempted to utilize this generic approach to pleading. *See, e.g.*, *FTC v. Quincy Bioscience Holding Co., Inc.*, 389 F. Supp. 3d 211, 221 (S.D.N.Y. 2019) (rejecting "conclusory statement" that individual defendant "participated in the acts and practices of [the company] . . . including the acts and practices set forth in this Complaint").

In *FTC v. Swish Marketing*, the court rejected as conclusory the same exact language that the FTC uses to describe Mr. Dennis here: "At all times material to this Complaint, acting alone or in concert with others, [the individual defendant] has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Swish, including the acts and practices set forth in this Complaint." No. C 09-03814 RS, 2010 WL 653486, at *5 (N.D. Cal. Feb. 22, 2010). The court held that "[t]he Commission's conclusory assertions of authority—untethered to virtually any supportive facts—do not support an inference of [the individual defendant's] involvement" and thus that the complaint failed under both Rule 8 and Rule 9(b). *Id.*;

*see also id.* at *6 ("In light of the Commission's broad investigatory power and its ability to obtain discovery prior to the commencement of this litigation, requiring it to advance some factual connection between Benning and the alleged deceptive acts should not represent an unreasonable or impractical expectation.").[7]

Second, the remainder of the allegations in the Amended Complaint regarding Raging Bull's purportedly false or misleading advertising similarly fail under both Rule 8 and 9(b). The Second Amended Complaint simply does not allege how Mr. Dennis supposedly participated in, or was otherwise responsible for, making those statements. Rather, the FTC lumps Mr. Dennis in with the other Defendants in a conclusory manner that provides no basis whatsoever for his personal liability for alleged misleading statements. [*See, e.g.*, SAC ¶¶ 21, 26, 40, 41, 43, 47.] The FTC's failure to distinguish how Mr. Dennis's conduct relates to the allegedly deceptive statements plainly runs afoul of Rule 8's prohibition against baseless group pleading and Rule 9(b)'s requirement that a complaint sounding in fraud allege the identity of the person making the misrepresentation and what he obtained thereby. *See, e.g.*, *McPherson v. Baltimore Police Dep't*, No. CV SAG-20-0795, 2020 WL 6063479, at *5 (D. Md. Oct. 14, 2020) ("While group pleading can be permissible in certain circumstances, it must be plausible that each defendant was involved in *all* of the facts as alleged." (emphasis added)); *Green v. Rosenberg & Assocs., LLC*, No. CV PJM 17-732, 2018 WL 1183655, at *2 (D. Md. Mar. 7, 2018) ("A plaintiff does not satisfy Rule 8

---

[7]    In this case, as the Court is aware, the FTC not only made use of its "broad investigatory power," but it also received a complete copy of Raging Bull's servers from the short-lived receiver appointed prior to this Court's rejection of the preliminary injunction, *and* it had the opportunity to take Mr. Dennis's deposition in advance of the preliminary injunction hearing.

when the complaint lumps all the defendants together and fails to distinguish their conduct because such allegations fail to give adequate notice to the defendants as to what they did wrong." (cleaned up)); *Owens*, 612 F.3d at 731 (Rule 9(b) requires that the complaint allege "at a minimum . . . the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby").[8]

Knowing full well (and in fact alleging) that Mr. Dennis is only a "trading instructor," and not an owner, officer, or executive of Raging Bull, and who offers only a subset of Raging Bull's services [*see* SAC ¶¶ 12–14], the FTC still equates him with the Raging Bull Defendants, all of whom were in fact owners and executives in the business. [*See, e.g.*, *id.* ¶ 26 ("*Defendants* make parallel claims *across all services* about the possibility of making consistent, substantial profits and about who can use their services effectively." (emphases added)).] The FTC also fails to plead how Mr. Dennis played a role that was in any way different from the other non-owner "trading instructors" at Raging Bull, none of whom were charged in the Second Amended Complaint.

Examples of the FTC's improper group pleading abound. It alleges that "*Defendants* describe Total Alpha as teaching consumers 'the options trading strategies that Jeff Bishop has used to make a fortune in the stock market'" while at the same time alleging that Total Alpha is "Bishop's service," [*id.* ¶¶ 69, 32] with no alleged relationship to Mr. Dennis. The FTC alleges that "*Defendants* market Jason Bond Picks with statements like 'Don't Just Beat the Market…

---

[8]      The requirement that the FTC plausibly allege that each defendant is liable for all of the deceptive conduct charged in a particular count is particularly critical in light of the Supreme Court's recent ruling in *Liu v. SEC*, which effectively eliminated joint and several liability in the analogous circumstances of the SEC's equitable authority to enforce the securities laws. In *Liu*, the Court held that joint and several liability is "at odds with the common-law rule requiring individual liability for wrongful profits." 140 S. Ct. 1936, 1949 (2020)

Crush It,'" while at the same time alleging that Jason Bond Picks is "Bond's." [*Id.*]  The FTC does not attempt to tie Mr. Dennis to these Raging Bull services in the Second Amended Complaint, instead relying on group pleading to make the conclusory (and totally false) assertion that Mr. Dennis is just the same as the other Raging Bull Defendants.  Nor does the FTC make any attempt to allege which Defendants participated in the drafting, creation, review, approval, or dissemination of the statements.  Absent any specific allegations that Mr. Dennis participated in making each allegedly deceptive statement in the Second Amended Complaint (and there are none), the FTC cannot make this baseless leap through improper group pleading.

Once the few non-deceptive statements that are allegedly attributable to Mr. Dennis are disregarded, along with the Second Amended Complaint's conclusory allegations and improper group pleading, there is nothing left as against Mr. Dennis.  Accordingly, the Court should dismiss the FTC's claims against him pursuant to Rule 12(b)(6).

## **<u>CONCLUSION</u>**

For the foregoing reasons, the Court should dismiss the FTC's claims against Defendant Kyle W. Dennis.  Because the FTC has now had two opportunities to amend its Complaint, the Court should dismiss the claims in the Second Amended Complaint with prejudice.

Dated: April 5, 2022

Respectfully submitted,

*/s/ Matthew L. Schwartz*
Matthew L. Schwartz (*pro hac vice*)
John T. Zach (*pro hac vice*)
Sabina Mariella (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, New York
Tel.: (212) 446-2300

E-mail: mlschwartz@bsfllp.com
       jzach@bsfllp.com
       smariella@bsfllp.com

Jonathan Shaw (Bar No. 11328)
BOIES SCHILLER FLEXNER LLP
1401 New York Ave, NW
Washington, DC 20005
Tel: 202 274 1123
E-mail: jshaw@bsfllp.com

Brian Levin (*pro hac vice*)
LEVIN LAW, P.A.
2665 South Bayshore Drive Penthouse 2B
Miami, Florida 33133
Tel: (305) 539-0593
E-mail: brian@levinlawpa.com

*Counsel for Defendant Kyle W. Dennis*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 5, 2022 a true and accurate copy foregoing was properly served on all parties through the ECF system.

*/s/ Matthew L. Schwartz*
Matthew L. Schwartz
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, New York
Tel.: (212) 446-2300
E-mail: mlschwartz@bsfllp.com
