IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FEDERAL TRADE COMMISSION,          *

     Plaintiff,          *

v.          *          Civil Action No. GLR-20-3538

RAGINGBULL.COM, LLC, et al.,          *

     Defendants.          *

***

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Kyle Dennis's Motion to Dismiss. (ECF Nos. 308). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2021). For the reasons set forth below, the Court will deny the Motion.

## I.  BACKGROUND[1]

### A.  Factual Background

On December 7, 2020, the Federal Trade Commission ("FTC") commenced the above-captioned matter alleging that RagingBull.com ("Raging Bull"), a provider of subscription-based investment training, as well as five corporate Defendants and three individual Defendants connected to Raging Bull, defrauded consumers of more than $137 million by misrepresenting how much money Raging Bull's subscribers could make using its online stock and options trading services. (See generally 2d Am. Compl., ECF No. 304).

---

[1] Unless otherwise noted, the Court takes the following facts from the Second Amended Complaint (ECF No. 304) and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

All other claims and defendants having been dismissed from this action, (see generally Mar. 15, 2022 Stipulated Order for Fees, ECF No. 301), the two remaining claims in this case are brought under Section 5(a) of the FTC Act against Defendant Kyle Dennis. (2d Am. Compl. ¶¶ 1, 121–28). Dennis is a "salesman and trading instructor" who offers several products and services through Raging Bull. (Id. ¶¶ 2, 14). Dennis joined Raging Bull as a salesman and instructor in 2016. (Id. ¶ 20).

Raging Bull "advertises that consumers who sign up for [its] programs will learn . . . simple-to-follow strategies for beating the market or will be able to copy" the stock trades of Raging Bull's instructors, including Dennis, to generate profits. (Id. ¶ 3). Raging Bull also advertises that Dennis and other instructors "made their own millions trading stocks and then joined Raging Bull as instructors to teach their methods." (Id. ¶ 48). The FTC alleges that Dennis uses "high pressure tactics" to induce customers to purchase Raging Bull's products, and that he has the ability to "approve or reject any advertisement or marketing material bearing his name, image, or likeness, which includes all the marketing material used to promote" his products and services. (Id. ¶¶ 61–62).

### 1.    Allegations Regarding False or Unsubstantiated Earnings Claims

In Count I of the Second Amended Complaint, the FTC claims that Dennis violated Section 5(a) of the FTC Act by "represent[ing], directly or indirectly, expressly or by implication, that consumers who purchase Raging Bull's services will earn or are likely to earn substantial income." (Id. ¶ 123). The FTC alleges that Dennis made multiple representations regarding consumers' earnings potential, which the Court condenses below:

- In a promotion for a product called "Fast Five Trades," Dennis states that he intends to "show people how they can hit the ground running and begin to add an extra 250, 500, even 2,000 dollars or more to their account each and every week" and that he will "enable consumers to generate 'fast profits' in 'five days' or less," (id. ¶ 51);

- In a promotion for a product called "Dollar Ace," Dennis states that consumers will be able to "grow their small accounts from '1,000 to 5,000 to 10,000 to 25,000 in a matter of months,'" and that subscribers to this product will "receive access to trades that will generate 100% or more in trading profits in just 'one to three days,'" (id. ¶ 52);

- In a promotional video entitled "Kyle Dennis presents the $100K Heist!" Dennis states that he will "show [customers] how to systematically build" a $10,000 trading account into a $100,000 trading account, (id. ¶ 53);

- Dennis states, in a sales video for a product called "Black Optics," that he will "show [consumers] how to 10X [their] account by mastering [his] simple system and then introducing new profit buckets so that the cash flow never dries up," (id. ¶ 54);

- Dennis "repeatedly made claims" in live webinar presentations that consumers who enrolled in Raging Bull's services were "likely to generate substantial income and consistent trading profits," (id. ¶ 55);

- In a promotional video for a service called "Option Rocket," Dennis states that customers stand a 95 percent chance of doubling their investment using the service, (id. ¶ 56);

- Dennis states, in an another promotion for "Option Rocket," that customers who purchase the service will potentially "generate '500, 600, 1,000, [and] 2,000 percent' returns," and that if customers do not make more than $1,997 using the service, he will give them $1,977 of value for another year of service for free, (id. ¶ 57);

- In a promotional webinar entitled "Fortune Forecaster, the 9-to-5 Killer," Dennis states that customers can create "reliable," "repeatable," and "reproducible" trading profits by using a strategy that "anybody can use" to "quickly generate trading profits like Dennis," (id. ¶ 59);

- In a webinar entitled "The Resolution," which advertises Raging Bull's services, Dennis states that customers can grow their trading accounts from "$5,000 to $50,000 using the services offered" in the webinar, (id. ¶ 60);

- Dennis markets a newsletter entitled "Sniper Report" which contains trading strategies "strategically developed" to deliver returns of between 100 and 300 percent on each trade, (id. ¶ 69);

- Dennis stated in a May 2020 advertisement for a service entitled "Trade With Kyle" that he had found an "exciting opportunity" to make money on stock trades during the COVID-19 pandemic, (id. ¶ 70).

In essence, the FTC alleges that, despite the income-related representations made in Dennis's videos and webinars, Dennis lacks substantiation for any claims that consumers are likely to earn substantial income using Raging Bull's products. (Id. ¶ 67). Indeed, the FTC claims that a "substantial number" of Raging Bull's customers have lost money while attempting to invest based upon the trading advice provided by instructors like Dennis in Raging Bull's products. (Id. ¶ 73).

## 2.    Allegations Regarding Other Misrepresentations

In Count II of the Second Amended Complaint, the FTC claims that Dennis violated Section 5(a) of the FTC Act by representing that consumers will earn, or are likely to earn, substantial income using Raging Bull's services even if they: (1) have little to no experience in securities trading; (2) "spend only a short amount of time each day using the

service[s]"; and (3) "start with a very small balance in their brokerage account." (Id. ¶ 126). The FTC alleges that Dennis made multiple representations regarding Raging Bull's services, which the Court condenses below:

- In a sales video entitled "Fast Five Trades," Dennis describes his trading system to customers as such: "I call these my fast five trades. In on Monday, out by Friday, five days, fast profits. Just like that," (id. ¶ 85);

- Dennis claims in a sales video for a product called "Dollar Ace" that the product "requires just 'minutes per day' to implement'" and that it "finds those big returns in a one to three-day period so you can grow and it works in no matter what market condition is thrown at us . . . ," (id. ¶ 86);

- Dennis claims, in a sales webinar for a product called "Mortal Lock": "I make it easy. . . . Schedule your paycheck. Collect your cash. . . . There's little time commitment on this . . . . With this strategy, it doesn't matter if you have the smallest account in the world and it doesn't matter if you have the largest account in the world. You can make money doing this," (id. ¶ 87).

The FTC alleges that "[n]umerous consumers" have found Dennis's claims "about the level of experience, account size, and time investment" needed to gain income with his "services to be inconsistent with their experiences." (Id. ¶ 89). The FTC also alleges that Dennis continues to commit the alleged violations outlined above. (Id. ¶ 120). As relief, the FTC seeks, among other things, a permanent injunction to prevent Dennis from committing future violations of the FTC Act. (Id. at 41).

## B. Procedural History

The FTC filed this action on December 7, 2020, against Dennis, Raging Bull, and multiple other Defendants. (ECF No. 1). On December 8, 2020, the Court entered a

Temporary Restraining Order against Dennis and other Defendants that, among other things, enjoined Dennis from making misrepresentations and engaging in other acts in violation of the FTC Act. (Dec. 8, 2020 TRO at 3, ECF No. 21).

The FTC filed an Amended Complaint on February 4, 2021. (ECF No. 164). On January 21, 2022, all parties except for Dennis filed a Notice of Proposed Settlement in Principle. (ECF No. 286). On March 15, 2022, the Court entered another Stipulated Order that, among other things, resolved all matters in dispute in this action between the FTC and all Defendants except for Dennis. (Stipulated Inj. Order at 1–2, 4, ECF No. 303). By leave of the Court, the FTC filed a Second Amended Complaint on March 15, 2022. (ECF No. 304).

On April 5, 2022, Dennis filed a Motion to Dismiss the Second Amended Complaint. (ECF No. 308). The FTC filed an Opposition on April 19, 2022, (ECF No. 309), and Dennis filed a Reply on May 5, 2022, (ECF No. 310).

## II.     DISCUSSION

### A.     <u>Standard of Review</u>

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." <u>King v. Rubenstein</u>, 825 F.3d 206, 214 (4th Cir. 2016) (quoting <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v.</u>

Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, accept the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. See Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

**B.    Analysis**

The FTC brings claims against Dennis under Sections 5(a) and 13 of the FTC Act. Section 5(a) prohibits engaging in "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(1). Under Section 13 of the FTC Act, the FTC is empowered to sue in federal district court if the FTC "has reason to believe . . . that any person, partnership, or

corporation is violating, or is about to violate, any provision of law enforced by the Federal Trade Commission." 15 U.S.C. § 53(b)(1).

To succeed in demonstrating an unfair or deceptive act or practice under Section 5(a), the FTC must prove "(1) that there was a representation; (2) that the representation was likely to mislead consumers; and (3) that the misleading representation was material." FTC v. Innovative Mktg., 654 F.Supp.2d 378, 385 (D.Md. 2009) (citing FTC v. Tashman, 318 F.3d. 1273, 1277 (11th Cir. 2003). After establishing corporate liability, individual defendants may be held liable under the FTC Act if they "(1) participated directly in the deceptive practices or had authority to control those practices, and (2) had or should have had knowledge of the deceptive practices." FTC v. Ross, 743 F.3d 886, 892 (4th Cir. 2014). "The second prong of the analysis may be established by showing that the individual had actual knowledge of the deceptive conduct, was recklessly indifferent to its deceptiveness, or had an awareness of a high probability of deceptiveness and intentionally avoided learning the truth." Id.

Here, the FTC alleges that Dennis (along with other defendants previously dismissed from this action) violated Section 5(a) of the FTC Act by: (1) representing that consumers who purchase Raging Bull's services will earn or are likely to earn substantial income and (2) representing that consumers will or are likely to earn substantial income using Raging Bull's services even if they have little to no experience in securities trading, spend only a short amount of time each day using the services, and start with only a small balance in their brokerage account. (2d Am. Compl. ¶¶ 123, 126).

Dennis offers two principal reasons for dismissing the FTC's claims against him. First, Dennis argues that the FTC fails to plausibly allege in the Second Amended Complaint that he made any deceptive statements. (Mot. Dismiss ["Mot."] at 10–15, ECF No. 308). Second, Dennis contends that the FTC fails to plausibly allege that he is jointly and severally liable for statements which he is not alleged to have made. (Id. at 16–20). Additionally, Dennis argues that the Court should apply the pleading standard of Federal Rule 9(b) to the FTC's claims against him. (Id. at 7–10). Because it is necessary to first determine the pleading standard relevant to the FTC's claims in this case, the Court begins its analysis of Dennis's Motion by examining whether Rule 9(b) governs the FTC's claims.

### 1.      Relevant Pleading Standard

Dennis argues that the Court should apply the heightened pleading standard of Rule 9(b) to the FTC's claims against him in this case. (Mot. at 7–10). Under Rule 9(b), a party alleging fraud or mistake must "state with particularity the circumstances surrounding fraud or mistake." Fed.R.Civ.P. 9(b). Specifically, Dennis argues that because "[o]ther courts have found that the FTC's allegations of deceptive schemes similar to the one alleged here sound in fraud such that Rule 9(b) applies," this Court apply the standard of Rule 9(b) to the claims in this case. (Mot. at 8).

Dennis's position is unpersuasive. Although no binding precedent exists on the issue, this Court previously addressed the question of whether Rule 9(b) applies to claims brought under Section 5(a) of the FTC Act. See Innovative, 654 F.Supp.2d at 388 (recognizing that a plaintiff's Section 5(a) claims were not subject to the "unduly stringent pleading standard of" Rule 9(b)). Dennis correctly points out that Innovative (the only case

in which this Court has provided guidance on the issue) lacks extensive analysis of the applicability of Rule 9(b) to Section 5(a) claims. (Mot. at 8). Nonetheless, the decision adopts, through citation, the reasoning of two other courts that have considered the issue and rejected the application of Rule 9(b) to Section 5(a) claims. See Innovative, 654 F.Supp.2d at 388 (first citing FTC v. Freecom Commc'ns, Inc., 401 F.3d 1192, 1203 n.7 (10th Cir. 2005); and then citing FTC v. Med. Billers Network, Inc., 543 F.Supp.2d 283, 314–15 (S.D.N.Y. 2008)).

Because Innovative is this Court's only relevant case law on the issue, and absent contrary direction from the United States Court of Appeals for the Fourth Circuit, the Court declines to apply the "unduly stringent" standard of Rule 9(b) to the FTC's Section 5(a) claims in this case. See id. As such, the Court considers whether dismissal of the FTC's claims is warranted under Rule 12(b)(6) without the heightened Rule 9(b) requirements.

### 2.     Count I (False or Unsubstantiated Earnings Claims)

Having determined that the FTC's claims are governed by the pleading standard of Rule 12(b)(6), the Court turns its analysis to whether the FTC has plausibly alleged a violation of Section 5(a) of the FTC Act in Count I of the Second Amended Complaint. To prove the existence of an unfair or deceptive act or practice under Section 5(a), the FTC must prove "(1) that there was a representation; (2) that the representation was likely to mislead consumers; and (3) that the misleading representation was material." Innovative, 654 F.Supp.2d at 385 (citing Tashman, 318 F.3d at 1277).

A careful review of the allegations in the Second Amended Complaint makes clear that the FTC has plausibly alleged that Dennis made misleading and material

representations regarding customers' potential earnings from Raging Bull's products. First, the FTC plausibly alleges that Dennis made income-related "representations" through electronic means which were directed at consumers. (2d Am. Compl. ¶¶ 19–87, 123).

Second, the FTC plausibly alleges that Dennis's income-related representations would mislead a reasonable consumer into believing that they are "likely to earn substantial income" by using Raging Bull's products. (Id. ¶ 123). In determining whether a representation is "misleading" under Section 5(a) of the FTC Act, the Court considers whether the representation "is likely to mislead a reasonable consumer by viewing the representation as a whole and focusing on the impression created, not its literal truth or falsity." FTC v. Loma Int'l Bus. Grp. Inc., No. MJG-11-1483, 2013 WL 2455986, at *5 (D.Md. June 5, 2013) (citing FTC v. Patriot Alcohol Testers, Inc., 798 F.Supp. 851, 855 (D.Mass. 1992). In making this determination, "it is appropriate to look not to the most sophisticated, but the least sophisticated consumer." Id. (citing FTC v. Five–Star Auto Club, Inc., 97 F.Supp.2d 502, 532 (S.D.N.Y. 2000)).

Here, many of Dennis's statements, taken as true, would plausibly lead an unsophisticated consumer to believe that he or she would likely earn substantial income by purchasing and using Raging Bull's products. For example, two of Dennis's alleged promotional statements contain representations that Dennis will "grow" consumers' accounts and will "show" consumers how to "systemically build" their trading accounts. (2d Am. Compl. ¶¶ 52–53). Both statements put forth specific dollar amounts in connection with these claims. (See id.). Indeed, the FTC alleges that Dennis, in promoting Raging Bull's "Dollar Ace" product, stated that subscribers will "receive access to trades that will

11

generate 100% or more in trading profits in just 'one to three days.'" (Id. ¶ 52). Even a generous reading of these statements would suggest to the unsophisticated consumer that Raging Bull's products would likely generate the income specified.

Dennis's other alleged statements regarding income are even more specific. For example, Dennis allegedly states in a promotional campaign for "Black Optics" that he will "show [consumers] how to 10X [their] account by mastering [his] simple system and then introducing new profit buckets so that the cash flow never dries up." (Id. ¶ 54). The impression created by phrases such as "cash flow [that] never dries up," "simple system," and "profit buckets," would plausibly lead the unsophisticated consumer to believe that substantial income would follow from the purchase and use of this product. Additionally, the FTC alleges that multiple consumers lost money attempting to invest based upon the methods provided or advertised by Dennis. (Id. ¶ 73). As such, the FTC plausibly alleges sufficient facts to show that Dennis's income-related statements are misleading.[2]

Third, the FTC plausibly alleges that Dennis's income-related representations were material. "A material representation is one that involves information that is important to consumers such that it is likely to affect their decisions or actions." Loma Int'l Bus. Grp. Inc., 2013 WL 2455986, at *6 (citing Patriot Alcohol Testers, Inc., 798 F.Supp. at 855;

---

[2] Dennis argues that dismissal of the Second Amended Complaint is nonetheless warranted because many of his alleged statements are about "potential" trading returns, as opposed to actual projections of income. (Mot. at 12). This argument is unavailing. The Second Amended Complaint makes clear that several of Dennis's alleged representations purport to deliver a specific result. For example, Dennis states that he will show customers how to "10X" their accounts and how to "systematically build" their trading accounts to $100,000 in earnings. (2d Am. Compl. ¶¶ 52–54). Neither statement appears to refer to mere "potential" results, as Dennis suggests.

FTC v. Cyberspace.Com LLC, 453 F.3d 1196, 1201 (9th Cir. 2006)). In addition, "[m]isrepresentations concerning anticipated income from a business opportunity generally are material . . . because such misrepresentations strike at the heart of a consumer's purchasing decision." Freecom Commc'ns, Inc., 401 F.3d at 1203 (citing FTC v. Kitco of Nevada, Inc., 612 F.Supp. 1282, 1292 (D.Minn. 1985)). Here, Dennis's statements include descriptions of how using the strategies included in Raging Bull's products will generate income. As such, Dennis's alleged statements would be highly relevant to a customer's decision to purchase Raging Bull's services and are thus material.

Because these alleged misrepresentations would be relevant to the purchase decisions of Raging Bull's customers, Dennis's argument that some of these statements are inactionable "puffery" is without merit. (Mot. at 12). Puffery is defined as "exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely," and is not actionable under Section 5(a) of the FTC Act. In re Sanctuary Belize Litig., 482 F.Supp.3d 373, 422 (D.Md. 2020) aff'd in part, vacated on other grounds, and remanded in part on other grounds, 53 F.4th 80 (4th Cir. 2022). However, "specific and measurable claims and claims that may be literally true or false are not puffery and may be the subject of deceptive advertising claims." Id. As discussed above, several of Dennis's alleged misrepresentations contained specific claims, as opposed to exaggerated or vague claims, upon which Raging Bull's customers could have reasonably relied. Indeed, Dennis himself acknowledges that "the statements attributed to [him] are fact-based." (Mot. at 13 n.5). As such, these statements do not constitute puffery.

### 3.   Count II (Other Misrepresentations Regarding Raging Bull's Services)

The FTC also plausibly alleges in Count II that Dennis made material representations regarding Raging Bull's services that were likely to mislead consumers. Because of these plausible allegations, the Court will deny Dennis's Motion as to Count II.

First, the FTC plausibly alleges that Dennis made services-related "representations" through electronic means which were directed at consumers. (2d Am. Compl. ¶¶ 82–93). Second, the FTC has plausibly alleged that Dennis's claims would mislead a reasonable consumer into believing that he or she could earn substantial income using Raging Bull's services even if the customer (1) did not possess trading experience, (2) did not spend more than a short amount of time each day using the service, or (3) started with only minimal funds in their brokerage account. (Id. ¶ 126). Dennis's services-related representations contain specific language—specifically, "minutes per day" and "Schedule your paycheck. Collect your cash."—suggesting that customers can utilize the services to earn profits with very little time or effort. (Id. ¶¶ 84, 87). Indeed, Dennis emphasizes that the services will generate profit <u>regardless</u> of a customer's account size or the stock market's condition. (Id. ¶ 87). In addition, phrases such as "no matter what market condition" and "You can make money doing this" create an impression that these services are extremely likely (if not certain) to generate income for users. (Id. ¶¶ 86, 87). Further, as stated above, the FTC alleges that multiple consumers lost money attempting to invest based upon the methods provided or advertised by Dennis. (Id. ¶ 73). Because of the definiteness of these statements, Dennis's argument that they are inactionable "on their face" because they

"simply utilize commonplace terms that are used in advertising . . . for nearly every conceivable product" is without merit. (Mot. at 14).

Third, the FTC has plausibly alleged that Dennis's services-related claims are material because his alleged statements "involve[] information that is important to consumers such that [they are] likely to affect their decisions or actions." Loma, 2013 WL 2455986, at *6 (citation omitted). Taking these factual allegations as true, it is reasonable to infer that Dennis's statements regarding the probability of generating income through Raging Bull's services would inform a reasonable consumer's purchase decision.

In sum, Counts I and II of the Second Amended Complaint contain "factual content that allows the [C]ourt to draw the reasonable inference" that Dennis's statements violated Section 5(a) of the FTC Act. Ashcroft, 556 U.S. at 663 (citing Twombly, 550 U.S. at 556). Accordingly, the FTC has adequately stated claims to survive the 12(b)(6) stage.

### 4.    Dennis's Individual Liability Under Section 5(a)

As a final matter, the Court addresses Dennis's argument that dismissal of the Second Amended Complaint is warranted due to the FTC's failure to "allege any plausible factual basis to infer that" Dennis "participated in or had the authority to control the marketing of any of Raging Bull's services, other than the inactionable statements he himself made during sales videos." (Mot. at 16). Dennis's argument is unavailing. As the FTC points out in its Opposition, and as the Second Amended Complaint makes clear, the FTC seeks to hold Dennis liable solely for his own statements. (Resp't's Resp. Opp'n Mot. Dismiss at 14–15, ECF No. 309). To establish Dennis's liability, the FTC need only show that Dennis "(1) participated directly in the deceptive practices or had authority to control

those practices, and (2) had or should have had knowledge of the deceptive practices."

<u>Ross</u>, 743 F.3d at 892. As discussed above, the Second Amended Complaint is replete with allegations that Dennis <u>himself</u> made deceptive statements which are the subject of the remaining claims in this case. Thus, the FTC has sufficiently alleged Dennis's individual liability under Section 5(a) of the FTC Act.

### III.   CONCLUSION

For the foregoing reasons, the Court will deny Defendant Kyle Dennis's Motion to Dismiss. (ECF No. 308). A separate Order follows.

Entered this 15th day of March, 2023.

_____/s/_____
George L. Russell, III
United States District Judge
